IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM A. CLARK, JAMES P. DAVERN, ROBERT E. FREEBURG, WILLIE R. JOHNSON, ROBERT A. MUSTIN, JOHN DOES 1 through 4, and JANE DOES 1 through 3, individually, and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | CASE NO. 00-644C (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSE TO THE GOVERNMENT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Richard T. Dorman
CUNNINGHAM, BOUNDS, YANCE, CROWDER & BROWN, LLC
1601 Dauphin Street
Mobile, AL 36664
(251) 471-6191
Fax (251) 479-1031

Robert Shulman
Helen K. Michael
Rachel A. Adams
Alan B. Sutton
HOWREY SIMON ARNOLD& WHITE, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 783-0800
Fax (202) 383-6610

Charles J. Cooper
David H. Thompson
COOPER & KIRK, PLLC.
1500 K Street, N.W., Ste. 200
Washington, DC 2005
(202) 220-9600
Fax (202) 220-9601

*Counsel for Plaintiffs*

Dated: June 10, 2005

PLAINTIFFS' RESPONSE TO THE GOVERNMENT'S PROPOSED FINDING OF UNCONTROVERTED FACT

1. William A. Clark dually enlisted in the Alabama Army National Guard ("ARNG") and the Army National Guard of the United States ("ARNGUS") on April 28, 1987, in the rank and grade of specialist/E-4. DA 249-51.

**PLAINTIFFS' RESPONSE**

Undisputed.

2. He was promoted to sergeant/E-5 in the ARNGUS on June 2, 1989. DA. 244. He has served continuously in both organizations from that date to the present. DA 246.

**PLAINTIFFS' RESPONSE**

Disputed, to the extent that this proposed finding suggests that Mr. Clark has served simultaneously in both the ARNG and the ARNGUS. As the law of the case established by the Federal Circuit mandates, "[m]embers of the National Guard only serve the federal military when they are formally called into the military service of the United States. At all other times, National Guard members serve solely as members of the State militia under the command of the state governor." *Clark v. United States*, 322 F.3d 1358, 1366 (Fed. Cir. 2003); *see also Perpich v. United States Department of Defense,* 496 U.S. 334, 348 (1990), *aff'g* 880 F.2d 11 (8th Cir. 1989), *aff'g* 666 F. Supp. 1319 (D. Minn. 1987) (holding that National Guard personnel serve as members of the federal military *only* when called into "the active military service of the United States," leaving them at all other times to serve solely as members of the State militia under the command of a State Governor).

Plaintiffs further note that Mr. Clark also was promoted to sergeant/E-5 in the ARNG on the specified date.

3. Mr. Clark holds Military Occupational Specialty ("MOS") 02L30 - Saxophone Player - in

the ARNGUS. DA 246.

**PLAINTIFFS' RESPONSE**

Disputed. Mr. Clark's primary MOS in both the ARNG and the ARNGUS is 02L40—Saxophone Player. *See* Clark Decl. at ¶ 8; App. 3.

4. In July 1995, Mr. Clark attended and completed the U.S. Army Basic Noncommissioned Officer Course ("Basic NCO Course") Phase I for his MOS. DA 244, 254.

**PLAINTIFFS' RESPONSE**

Undisputed.

5. Mr. Clark attended Basic NCO Course in residence at the Regional Training Institute, Mississippi, a component of the Army School System. DA 244.

**PLAINTIFFS' RESPONSE**

Undisputed, with the proviso that this proposed finding refers only to Phase I of the Basic NCO course. Mr. Clark completed Phase II of the Basic NCO course by correspondence. Clark Decl. at ¶ 22; App. 7. Mr. Clark completed Phase III of the Basic NCO course in-residence. Clark Decl. at ¶ 23; App. 7.

6. The Basic NCO Course was, and is, a part of the U.S. Army Noncommissioned Officer Education System. Army Regulation ("Army Reg.") 350-1, Training: Army Training and Education, Chpt. 3, Sec. V (Apr. 9, 2003).

**PLAINTIFFS' RESPONSE**

Undisputed.

7. On May 16, 1997, Mr. Clark enrolled in the U.S. Army Element School of Music ("U.S. Army Soldier Support Institute") Basic NCO Course Phase II, through the U.S. Army Correspondence Course Program (Correspondence Course Program). DA 318.

**PLAINTIFFS' RESPONSE**

Undisputed.

8. The Correspondence Course Program was available to Mr. Clark as a member of the ARNGUS. Dep't of Army Pamphlet ("DA PAM") 350-59, Schools: Army Correspondence Course Program Catalog, i (Oct. 1, 2002).

**PLAINTIFFS' RESPONSE**

Disputed to the extent that that this proposed finding suggests that the Army Correspondence Course Program ("ACCP") was not available to Mr. Clark as a member of the Alabama Army National Guard. Defendant cites to DA PAM 350-59, Oct. 1, 2002. However, this version of the ACCP regulation was promulgated after Congress's December 28, 2001 amendment to 37 U.S.C. § 206, which made discretionary what had been a mandatory obligation to pay members of the National Guard for completing required correspondence courses. *See* Pub. L. No. 107-107, 115 Stat. 1093, 1133 (2001); *see also Clark*, 322 F.3d at 1362, n.1. As the government itself states, Mr. Clark took various ACCP Army courses before 2002.

Earlier regulations promulgated before the 2001 amendment confirm that the Army Correspondence Course Program applies to members of the "National Guard." *See, e.g.*, DA PAM 350-59, *Army Correspondence Course Program Catalog*, Oct. 1, 2000 ("Applicability. This pamphlet applies to active duty military of all branches, foreign military, Army National Guard, Reserve personnel...."), App. 337; DA PAM 351-20, *Army Correspondence Course Program Catalog*, Apr. 28, 2000 (same), App. 345.

"Consistent with these earlier regulations, the Federal Circuit already has ruled that "Mr. Clark is seeking compensation for correspondence courses taken *while in service to the Alabama National Guard*

and not the National Guard of the United States." *Clark*, 322 F.3d at 1368 (emphasis added). As the Federal Circuit further has ruled:

> Members of the National Guard only serve the federal military when they are formally called into the military service of the United States. At all other times, National Guard members serve solely as member of the State militia under the command of a state governor.

*See Clark*, 322 F.3d at 1366; *See also* Response to Finding of Fact No. 2.

9. The Basic NCO Course Phase II was, and is, composed of ten subcourses: MU 1300, MU 1305, MU 1709, MU 3200, MU 3210, MU 3310, MU 3320, MU 3322, MU 4214, MP 1031. Id. ¶ 2-217.

**PLAINTIFFS' STATEMENT**

Undisputed.

10. Mr. Clark was not ordered to enroll in Basic NCO Course Phase II. DA 562 (Mills Decl. ¶ 3.)

**PLAINTIFFS RESPONSE**

Disputed. Mr. Clark was ordered to take this course by being automatically enrolled in the Phase II of the Basic NCO Course by his unit training NCO on August 11, 1994. *See* Clark Decl. at ¶ 10; App. 3 - 4. During the spring of 1994, Mr. Clark's commander, Chief Warrant Officer Roy Rush Gavin, informed Mr. Clark's unit that the unit Non-Commissioned Officer would automatically enroll each member of the unit in a required correspondence course. *See* Clark Decl. at ¶ 9; App. 3. After being automatically enrolled, each guard member was responsible for completing the correspondence course on their own time. Id.

Moreover, regulations requiring individual training, including the completion of NCO education courses, also constitute orders by military officials to complete training before promotion will be awarded.

*See, e.g.*, AR 135-155, *Promotion of Commissioned Officers and Warrant Officers Other Than General Officers*, Table 2-2, September 1, 1994; App. 292. Had Mr. Clark not taken the Basic NCO course, he would not have been regained his promotion to E-6 nor would he have been eligible for future promotion. *See* Clark Decl. at ¶ 21; App. 7. Had Mr. Clark refused to seek promotion and advance in his military career, he could have faced severe administrative sanctions, such as involuntary separation from the Army National Guard. Clark Decl. at ¶ 27; App. 9 - 10.

11. Promotion in the ARNGUS is a matter of Federal law. National Guard Regulation ("NGR") 600-200, Personnel-General: Enlisted Personnel Management, Chpt. 11 (Mar. 1, 1997).

**PLAINTIFFS' RESPONSE**

Undisputed but immaterial.

12. Promotion within the Alabama National Guard is a matter of state law. Alabama Code 31-2-73.

**PLAINTIFFS' RESPONSE**

Disputed to the extent that this proposed finding suggests that regulations promulgated by the Secretary of the Army do not require members of the Alabama Army National Guard to complete correspondence courses to be promoted. Promotion within the Alabama Army National Guard is governed by, among other regulations, National Guard Regulation ("NGR") 600-200, *Enlisted Personnel Management*, Mar. 1, 1997. NGR 600-200, which was issued "By Order of the Secretary of the Army," specifically applies to both the "Army National Guard and the Army National Guard of the United States." *See* NGR 600-200 at Applicability paragraph. App. 412a. The government itself cites NGR 600-200 as the authority for the Basic NCO course requirement for promotion to E-6. *See* Response to Government Proposed Finding of Fact No. 15.

Further disputed to the extent that this proposed finding suggests that promotion in the Alabama

Army National Guard is not also a function of federal law. Defendant itself acknowledges that federal promotion policies are followed. (*See* Government Proposed Finding of Fact No. 13, stating "Alabama has adopted Federal promotion procedures.") The Alabama National Guard, like other state Guard organizations, is federally recognized.

The Secretary of the Army defines the "Army National Guard" as the "portion of the recognized militia of the several states, commonwealth of Puerto Rico and District of Columbia whose units and members are federally recognized." Army Regulation 600-20, *Army Command Policy*, May 13, 2002, definitions. Mr. Clark, as a member of the federally recognized Alabama Army National Guard, must satisfy promotion requirements imposed by the Secretary of the Army:

> To be eligible for Federal recognition as an enlisted member of the National Guard, a person must have the qualifications prescribed by the Secretary concerned for the grade, branch, position, and type of unit or organization involved. He becomes federally recognized upon enlisting in a federally recognized unit or organization of the National Guard.

32 U.S.C. § 301. Because of these requirements, the Alabama statute cited by Defendant provides that promotion of a guard member within the Alabama National Guard must conform to federal requirements:

> The appointment, promotion or reduction in grade or rank of noncommissioned officers and other enlisted personnel of the National Guard *shall be in conformity with the National Defense Act and regulations of the Department of Defense.*

Alabama Code § 31-2-73 (emphasis added).

13. Alabama has adopted Federal promotion procedures. Id.; Alabama State Military Dep't Regulation ("SMDR") 600-200, Enlisted Personnel Promotion System EPPS), ¶ 1-1a (Feb. 1, 2003).

**PLAINTIFFS' RESPONSE**

Undisputed.

14. Pursuant to National Guard Regulation ("NGR") 600-200 and SMDR 600-200, in 1997,

Mr. Clark volunteered to be considered for promotion to staff sergeant in the ARNGUS and ARNG respectively by signing NGB Form 4100-1-R-E. NGR 600-200, ¶ 11-36; SMDR 600-200, ¶ 3-7, Fig. 3.

**PLAINTIFFS' RESPONSE**

Disputed to the extent that this proposed finding suggests that enlisted members of the Army National Guard may choose to not seek promotion without facing adverse administrative sanctions. If enlisted members of the Army National Guard fail to seek promotion by failing to perform the training necessary to qualify them for duties they are subject to involuntary separation in two ways. First, they may be barred from re-enlistment. *See* NGR 600-200 ¶ 7-22(c)(9). Second, they may be involuntarily separated from service after 20 years upon recommendation by qualitative retention boards. *See* AR 135-205, *Enlisted Personnel Management*, Chap. 4, Sep. 1, 1994, App. 299; *see also* Clark Decl. at ¶ 27; App. 9 - 10. *See also* Response to Government Finding of Fact Nos. 16, 17 and 42.

Mr. Clark agreed to be considered for promotion in the ARNGUS and ARNG by signing NGB Form 4100-1-R-E in 1997. Mr. Clark, however, did not "volunteer" to perform military duty without pay. *See* Clark Decl. at ¶¶ 27, 28; App. 9 – 10. A promotion in rank in either the ARNGUS or ARNG does not require the soldier who does not consent to complete correspondence courses without military pay. *See* 32 U.S.C. §502(f).

15. Since 1993, the Army has linked promotion to the rank and grade of staff sergeant/E-6, in the ARNGUS to completion of the Basic NCO Course. Army Reg. 350-1, ¶ 3-43b; NGR 600-200, ¶ 11-28.

**PLAINTIFFS' RESPONSE**

Disputed. Army regulations provide that, at least as far back as October 1, 1992, completion of the Basic NCO Course has been required for promotion to the rank and grade of staff sergeant/E-6 in both the Army National Guard and the Army National Guard of the United States. *See* NGR 600-200 at Applicability paragraph and ¶¶ 11-28(a)(3) and (c)(3); App. 412a and 416 - 417.

16. To be considered for promotion, Mr. Clark consented to fulfilling applicable military educational qualifications, to wit, completing the Basic NCO Course II, and beginning the Basic NCO Course Phase III, within two years of completion of Basic NCO Course Phase I, in order to retain a promotion to staff sergeant. Army Reg. 350-1, ¶ 3-43d; NGR 600-200, ¶¶ 11-28, 11-36; SMDR 600-200, ¶ 3-7 (Feb. 1, 2003).

**PLAINTIFFS' RESPONSE**

Disputed. Mr. Clark never "consented " to fulfilling the above-referenced military requirements or completing any other required correspondence coursework without payment. To be considered for promotion, Mr. Clark was required to complete applicable individual military education requirements. The government's own witness, Chief Warrant Officer 2 Mark Mills, Mr. Clark's Commander, also refers to required correspondence courses. Mr. Mills states that "[i]t is now common knowledge and as required by National Guard Regulation 600-200, Enlisted Personnel Management, that an enlisted soldier *must complete* the Basic Non-Commissioned Officer's Course (BNCOC) to retain the rank of SSG if promoted before completion of BNCOC and before consideration by a Sergeant First Class (SFC) promotion board." (Mills Decl. ¶ 2 (emphasis added)). BNCOC is the course offered through the Army correspondence course program that Mr. Clark took in order to maintain his rank and grade. (*See* Complaint ¶¶ 15-17.)

Also disputed to the extent this proposed factual finding suggests that completion of these courses was required only for purposes of promotion. Mr. Clark was required to take correspondence courses to qualify for and enhance his skills in his military specialties. Such courses included RC-BNCOC, ANCOC, and subcourses of both the Basic Enlisted Development Course and the Advanced Enlisted Development Course. (*See also* Clark Decl. at ¶¶ 23-25; App. 7 - 9.) Moreover, guard members must be qualified to perform their military jobs. A member who does not meet his/her respective individual, military training requirements risks involuntary separation from the Guard. *See* Response to Government Proposed Finding of Fact Nos. 14, 17 and 42.

The government's own witness, Command Sergeant Major (Retired) McNamara, has also referred

to the fact that Guard members may be *involuntarily discharged* if they have failed to complete the correspondence courses associated with professional military education. At the time Guard members reach the twenty-year point in their careers, those who are not current with this required training may be selected for discharge by a Qualitative Retention Board ("QRB"). (*See* McNamara Decl. ¶ 40 ("Choosing to avoid promotion does not place the soldier in jeopardy of losing rank, grade, or current position *until considered by the State Enlisted QRB described above*, and even then may be retained.") (emphasis added).

17. Mr. Clark could have declined consideration for promotion, assignment to a higher graded position, and enrollment in the NCO Education System without any penalty. NGR 600-200, ¶ 11-36b(1); SMDR 600-200, ¶ 10-1; DA 562 (Mills Decl., ¶ 3).

**PLAINTIFFS' RESPONSE**

Disputed. The Government's proposed finding is not supported by the cited evidence and, in fact, is contradicted by evidence upon which the government itself relies. Guard members who fail to complete required NCOES courses or who decline to be promoted face negative consequences, including but not limited to reduction in rank, loss of pay, loss of time-in-grade, and limitations on assignments. *See* Clark Decl. at ¶ 20; App. 6 - 7. Additionally, and as the government's own declarant, Command Sergeant Major (Retired) McNamara acknowledges, guard members may be *involuntarily discharged* if they have failed to complete the correspondence courses associated with professional military education.

Non-Commissed Officers ("NCOs") like Mr. Clark are subject to two forms of involuntary separation for failure to complete required courses or advance in rank: bars to reenlistment and selective nonretention. NCOs enlist for a term of years in the Guard, and when the term ends, must reenlist to remain in the Guard. If a Guard member repeatedly declines promotions and does not continue to advance in rank and position, he risks being barred from reenlistment, which results in separation from the Guard. When a Guard member completes twenty years in service, he will face a Qualitative Retention Board. Such Boards may involuntarily discharge members for failure to complete required course or failure to advance in grade and rank. *See* Clark Decl. at ¶ 27; App. 9 - 10. *See also* Response to Government Findings of Fact

Nos. 14, 16 and 42.

18. Pursuant to NGR 600-200 and SMDR 600-200, Mr. Clark was conditionally promoted in the ARNGUS and ARNG respectively to the rank of staff sergeant by order dated 7 November 1997, with an effective date of 20 October 1997. DA 240; DA 562 (Mills Decl., ¶ 2).

**PLAINTIFFS' RESPONSE**

Disputed. At the time the promotion was given, it was not communicated to Mr. Clark that the promotion, in fact, was conditional. *See* Clark Decl. at ¶¶ 14, 17; Promotion Order 168-01, App. 19. Mr. Clark's Promotion Order granting his promotion to Staff Sergeant, Army Enlisted Grade 6 or "E-6" does not indicate that the promotion was conditional. *Id.* at ¶ 17; App. 5. Only when Mr. Clark's commanding officer placed him on the list for promotion to E-7 did Mr. Clark become aware that his promotion had been conditional. Clark Decl. at ¶14; App. 4.

19. Mr. Clark did not complete Phase II of the Basic NCO Course. DA 318.

**PLAINTIFFS' RESPONSE**

Disputed. After Mr. Clark completed the time in grade E-5 necessary to be eligible for promotion to E-6, Mr. Clark was conditionally promoted back to Staff Sergeant, E-6, in January of 2002, pending his completion of RC-BNCOC. Mr. Clark completed the remaining sub-courses of RC-BNCOC Phase II by correspondence, without pay, in May of 2002. (*See* Clark Decl. at ¶ 13; *See* Mr. Clark's ACCP Correspondence Course History, App. 13) Additionally, in 2000, Mr. Clark completed the Basic Enlisted Professional Development course, which contains several subcourses that are identical to subcourses included in RC-BNCOC Phase II. *See* Clark Decl. at ¶ 24; App. 7 - 8.

20. Mr. Clark's Army Training Requirements and Resources System record ("training record") indicates he completed only one subcourse of Phase II of the Basic NCO course - MU 1709 - on September

3, 1997. DA 318.

**PLAINTIFFS' RESPONSE**

Disputed. Mr. Clark completed the following subcourses of Phase II of the Basic NCO course: MU1300 (completed July 21, 1995, completed May 22, 2002); MU1305 (completed May 16, 2002); MU1709 (completed Sept. 3, 1997, completed May 21, 2002); MU3200 (completed Oct. 7, 1999); MU3210 (completed Oct. 8, 1999); MU3310 (completed June 26, 2000); MU3320 (completed July 24, 2000); MU3322 (completed Aug. 13, 2000); MU4214 (completed September 24, 2000); MP1031 (completed October 15, 2000). *See* Mr. Clark's ACCP Correspondence Course History, App. 13.

21. On May 17, 1999, Mr. Clark was disenrolled from the Basic NCO Course Phase II for failure to satisfy minimum progress requirements. DA 318.

**PLAINTIFFS' RESPONSE**

Undisputed.

22. Mr. Clark did not request a constructive credit waiver of Phase II. DA 434 (McNamara Decl. ¶ 37). That is, he could have sought a waiver of this qualification pursuant to regulation, but he did not request the Army to waive the requirement that he complete Phase II of the Basic NCO Course. NGR 600-200, ¶ 11-3 1; U.S Army Training and Doctrine Command Regulation 350-10, ¶ 2-16 (Aug. 12, 2002).

**PLAINTIFFS' RESPONSE**

Disputed. Mr. Clark could not have requested a "constructive waiver" of the BNCOC Phase II requirements because that option did not exist at the time of his demotion. *See* Clark Decl. at ¶ 19; App. 6. In fact, regulations that Defendant itself cites provide that such a waiver is "not authorized." (*See* NGR 600-200, Enlisted Personnel Management para. 11-28(b), March 1, 1997, stating "The NCOES

courses for promotion are the Army standard. Waivers and exceptions to policy are not authorized.") Moreover, Mr. Clark did not know at the time of his promotion, that it was in fact conditional. (*See also* Response to Government Finding of Fact No. 18; Clark Decl. at ¶ 14; Promotion Order 168-01, App. 19.)

23. Mr. Clark was administratively reduced to his previous rank of sergeant (pay grade E-5) by order dated 7 October 1999, with an effective date of 1 October 1999, because he failed to complete Phase II within the prescribed time limits. DA 241; DA 562 (Mills Decl. ¶ 4).

**PLAINTIFFS' RESPONSE**

Undisputed.

24. Mr. Clark's reduction in rank was an administrative action required by regulation. Id.

**PLAINTIFFS' RESPONSE**

Undisputed, with the proviso that this correct statement contradicts the Government's contention that there are no administrative sanctions for failure to complete required correspondence courses. *See* McNamara Decl. at ¶ 9.

25. Mr. Clark's command took no other actions against him due to his failure to complete the Basic NCO Course Phase II. DA 563 (Mills Decl. ¶ 5).

**PLAINTIFFS' RESPONSE**

Undisputed with the proviso that Mr. Clark suffered a substantial pay reduction and lost the required time in grade at E-6 to become eligible for a promotion to E-7. (Clark Decl. at ¶ 20; App.6 - 7) Mr. Clark also was not eligible for the pay he could have earned if he had been allowed to complete ANCOC and been timely promoted to E-7. (*Id.*)

26. On September 21, 1999, Mr. Clark voluntarily enrolled in the U.S. Army Soldier Support Institute's Basic Enlisted Professional Development Course Number 514 M05 ("Basic Skills Course"), for his MOS through the Army's Correspondence Course Program. DA 320. The Basic Skills Course is a personnel development course that is used to prepare for the resident Basic NCO Course. DA PAM 350-59, ¶ 2-219.

**PLAINTIFFS' RESPONSE**

Disputed. The Basic Skills Course is a required course consisting of many subcourses that are identical to those subcourses contained in RC-BNCOC, which is required by regulation for promotion to E-6. In fact, when Mr. Clark reenrolled in RC-BNCOC Phase II, he was given constructive credit for seven of the subcourses he had completed while enrolled in the Basic Skills Course. *See* Clark Decl. at ¶ 24; App. 7 - 8. Mr. Clark also was required to enroll in the Advanced Enlisted Professional Development Course and the Basic Enlisted Professional Development Course to ensure that he could perform his military occupational specialty and military responsibilities. *See* Clark Decl. at ¶ 25; App. 8 - 9. In addition, Mr. Clark never consented not to be paid for performing this required training. *Id.* at ¶ 29; App. 10 - 11.

27. The Basic Skills Course is not a component course of the U.S. Army NCO Education System. Army Reg. 350-1, Chpt. 3, Sec. V.

**PLAINTIFFS' RESPONSE**

Disputed. As stated above in Response to Government Proposed Finding of Fact No. 26, most of subcourses of the Basic Skills Course are identical to the subcourses contained in RC-BNCOC, which the government acknowledges is a component course of the U.S. Army NCO Education System.

28. Mr. Clark was not ordered to enroll in the Basic Skills Course. DA 561 (Mills Decl. ¶ 2).

**PLAINTIFFS' RESPONSE**

Disputed. As stated above, the Basic Skills Course contains numerous subcourses that are identical to the subcourses contained in RC-BNCOC Phase II a course that the government concedes is required by regulation for promotion. *See* Response to Government Proposed Findings of Fact No. 16, 24, 26 and 27; *see also* Clark Decl. at ¶ 24; App. 7 - 8. The regulations requiring completion of courses satisfying NCO training requirements for promotion constitutes orders by military officials to complete training before promotion will be awarded. *See* Response to Government's Proposed Fining of Fact No. 10. Regulations also establish that Army Guard personnel are responsible for training themselves through personal self-developed courses and for improving their professional knowledge through individual training obtained through non-resident instruction. *See* Plaintiffs' Statement of Additional Material Facts Precluding Summary Judgment ("SAMF") Nos. 25-26. Had Mr. Clark refused to seek promotion and to develop the skills necessary to advance in his military career, he could have faced administrative sanctions. *See* Response to Government's Proposed Findings of Fact Nos. 10, 27 and 48.

29. At the time Mr. Clark enrolled in the Basic Skills Course, he was ineligible to enroll in Phase II of the Basic NCO Course because he had completed Phase I of the Basic NCO Course more than two years prior to that date. NGR 600-200, ¶ 11-28; DA 563 (Mills Decl. ¶ 6); DA 433 (McNamara Decl. ¶ 32).

**PLAINTIFFS' RESPONSE**

Undisputed.

30. The Basic Skills Course contains seventeen subcourses, seven of which are shared with the basic NCO Course Phase II: MU 3200, MU 3210, MU 3310, MU 3320, MU 3322, MU 4214, and MP 1031. DA PAM 350-59, ¶ 2-219.

**PLAINTIFFS' RESPONSE**

Undisputed.

31. Mr. Clark completed all seventeen subcourses in the Basic Skills Course between October 7, 1999, and October 18, 2000. DA. 320-21.

**PLAINTIFFS' RESPONSE**

Undisputed.

32. On October 24, 2000, Mr. Clark voluntarily enrolled in the U.S. Army Soldier Support Institute's Advanced Enlisted Professional Development Course Number 514 M07 ("Advanced Skills Development Course"), through the Army's Correspondence Course Program. DA 322.

**PLAINTIFFS' RESPONSE**

Disputed. Mr. Clark did not voluntarily enroll in the Advanced Enlisted Professional Development Course. Mr. Clark was required to complete a portion of the content of this course for promotion to E-7. In addition, the regulations requiring completion of this part of the course content constitute orders to complete these courses for purposes of promotion. *See* Response to Government's Proposed Finding of Fact No. 10. Moreover, regulations also establish that Army Guard personnel are obligated to train themselves through personal self-development courses and for improving their professional knowledge through individual training obtained through non-resident instruction. *See* SAMF Nos. 25-26; *see* Clark Decl. at ¶ 25 ("As with the Basic Enlisted Professional Development Course and RC-BNCOC, many subcourses of the Advanced Enlisted Professional Development Course are also included as subcourses in the correspondence phase of RC-ANCOC."); App. 8 – 9.

33. The Advanced Skills Development Course is not a component course of the Army NCO Education System. Army Reg. 350-1, Chpt. 3, Sec. V. The Advanced Development Skills Course is another personnel development course that may be used to prepare for the resident Advanced NCO Course. DA PAM. ¶ 2-218.

**PLAINTIFFS' RESPONSE**

Disputed to the extent that this proposed finding is intended to suggest these courses are not required. As set forth in Response to Government's Proposed Finding of Fact No. 32, several of the subcourses of the Advanced Enlisted Professional Development Course are subcourses of the correspondence phase of RC-ANCOC, which is required by regulation for promotion to E-7. *See* Clark Decl. at ¶ 25, App. 8 - 9. To be eligible for enrollment in RC-ANCOC, a member must be on the promotion list for Master Sergeant, enlisted grade E-7. Clark Decl. at ¶ 16, App. 5. At the time Mr. Clark enrolled in Advanced Enlisted Professional Development, he was not on the E-7 promotion list. By taking the Advanced Enlisted Professional Development Course, Mr. Clark completed some of the subcourses required for promotion to E-7. Clark Decl. at ¶ 25, App. 8 - 9. Additionally, the Secretary of the Army has directed that all Guard members, including noncommissioned officers, warrant officers and commissioned officers, are "responsible for training themselves through personal self-development." Field Manual 7-0, ¶ 1-19; *see also* AFI 36-2618, *The Enlisted Force Structure*, ¶¶ 4.1, 4.1.2 and 4.1.3, Apr. 1, 1999, App. 259; SAMF 25-26.

34. Mr. Clark completed subcourse MU 1715 on October 26, 2000. DA 322.

**PLAINTIFFS' RESPONSE**

Undisputed but immaterial.

35. Mr. Clark completed no other subcourses of the Advanced Skills Development Course. DA 322-23.

**PLAINTIFFS' RESPONSE**

Undisputed.

36. Mr. Clark did not complete the Advanced Skills Development Course. DA 244, 311a.

**PLAINTIFFS' STATEMENT**

Undisputed.

37. Mr. Clark was not ordered to enroll in the Advanced Skills Development Course. DA 561 (Mills Decl. ¶ 2).

**PLAINTIFFS' RESPONSE**

Disputed. Many of the subcourses of the Advanced Skills Development Course are identical to the subcourses contained in the correspondence phase of RC-ANCOC, which is required by regulation for promotion to E-7. *See* Response to Government Proposed Finding of Fact No. 33; *see also* Clark Decl. at ¶ 25; App. 8 - 9. Moreover, regulations established that Army Guard members are obligated to train themselves through personal self-development courses and for improving their professional knowledge through individual training obtained through non-resident instruction. *See* SAMF Nos. 25-26. Additionally, Mr. Clark did not consent not to be paid for participating in the Advanced Skills Development Course. *See* Response to Government Finding of Fact No. 32.

38. From January 5, 2002, to January 17, 2002, Mr. Clark once again attended and completed the Basic NCO Course Phase I for his MOS. DA 256, 311A.

**PLAINTIFFS' RESPONSE**

Undisputed.

39. Mr. Clark attended this course in residence at the Third Region NCO Academy, Camp Shelby, Mississippi, an Army school. Id.

**PLAINTIFFS' RESPONSE**

Undisputed.

40. In late 2001 or early 2002, pursuant to NGR 600-200, Mr. Clark requested again to be considered for promotion to staff sergeant in the ARNGUS. DA 430, 433 (McNamara Decl. ¶¶ 25, 35).

**PLAINTIFFS' RESPONSE**

Disputed to the extent that the government's proposed finding suggests that seeking promotion is voluntary. *See* Response to Government Proposed Findings of Fact Nos. 14, 16, 17 and 42.

41. Once again, to be considered for promotion, Mr. Clark consented to fulfilling applicable military educational qualifications by signing NG Form 4100-1 -R-E. Army Reg. 350-1, ¶ 3-43d; NGR 600-200, ¶ 11-28; SMDR 600-200, ¶ 3-7.

**PLAINTIFFS' RESPONSE**

Disputed. By regulations signed by the Secretary of the Army, Mr. Clark was required to complete applicable military educational qualifications in order to become eligible for promotion. NGR 600-200, *Enlisted Personnel Management*, ¶ 11-28, Mar. 1, 1997. This proposed fact also is disputed to the extent that it suggests that fulfilling applicable military educational requirements for promotion is voluntary or that Mr. Clark consented not to be paid for satisfying any such military education requirements. *See* Response to Government's Proposed Findings of Fact Nos. 14, 16, 17 and 42.

42. Mr. Clark could have declined, without penalty, consideration for promotion, assignment to a higher graded position, and enrollment in the NCO Education System. NGR 600-200, ¶ 11-36b(1).

**PLAINTIFFS' RESPONSE**

Disputed. Mr. Clark's declination of any promotion or failure to enroll in required NCOES courses would have resulted in several penalties, including, but not limited to, demotion, a lower pay grade

for performing his military duties, possible loss of retirement benefits and possible limitations on the maximum length of his career in the military. *See* Clark Decl at ¶ 20. Moreover, and as stated in response to the Government's Proposed Findings at Fact No. 17, Mr. Clark was subject to two forms of involuntary separation for declining to complete the correspondence courses necessary to advance in rank and position, bars to reenlistment and selective non-retention. *See* also McNamara Decl. ¶ 40, DA App. 436; Response to Government's Proposed Findings of Fact Nos. 14, 16.

43. As before, Mr. Clark was conditionally promoted in the ARNGUS to the rank of staff sergeant by order dated 25 February 2002, with an effective date of 16 January 2002. DA 242; DA 563 (Mills Decl. ¶ 6).

**PLAINTIFFS' RESPONSE**

Disputed. Mr. Clark was not informed that his first promotion was conditional until over two years after a promotion. *See* Clark Decl. at ¶¶ 14, 17; App. 4 - 5. The government's reference to "as before" is inaccurate because the Clark's original promotion order to E-6, Promotion Order 168-01, does not explicitly state that the promotion was conditional. *Id.* at 14; App. 4. Only upon being demoted did Mr. Clark learn that the first promotion was conditional upon his completion of RC-BNCOC Phase II. *Id.* at 17; App. 5. Moreover, Mr. Clark was also promoted in the ARNG as a result of his dual enlistment. *See* Response to Government's Proposed Finding of Fact No. 1.

44. On March 6, 2002, Mr. Clark again enrolled in the U.S. Army Soldier Support Institute's Basic NCO Course Phase II through the Army's Correspondence Course Program. DA 311A, 324.

**PLAINTIFFS' RESPONSE**

Undisputed.

45. Mr. Clark received constructive credit for seven of the ten required subcourses in Phase II

of the Basic NCO Course because he had already completed these subcourses as part of the Basic Skills Course. DA PAM 350-59, ¶ 1-18; DA 433,435 (McNamara Decl. ¶¶ 34, 38).

**PLAINTIFFS' RESPONSE**

Undisputed.

46. In light of this constructive credit, Mr. Clark was only required to complete three additional subcourses in Phase II: MU 1300, MU 1305, MU 1709. Id.

**PLAINTIFFS' RESPONSE**

Disputed to the extent that the government's assertion incorrectly implies that the subcourses for which Mr. Clark received constructive credit were not required because they were taken as part of the Basic Enlisted Professional Development Course. Personal development courses provide required training for guard members. Indeed, the Secretary of the Army has prescribed that Guard personnel are responsible for improving their professional knowledge" and has identified "nonresident instruction" achieved through correspondence coursework as the primary method to accomplish this task. AR 351-1 ¶ 7-7.a; App. 322. Other regulations reconfirm that the Secretaries have directed that all Guard members, including noncommissioned officers, warrant officers and commissioned officers, "responsible for training themselves through personal self-development." Field Manual 7-0, ¶ 1-19; *see also* AFI 36-2618, *The Enlisted Force Structure*, ¶¶ 4.1, 4.1.2 and 4.1.3, Apr. 1, 1999, App. 259.

47. Mr. Clark completed these three subcourses between May 16, 2002 and May 22, 2002. DA 324.

**PLAINTIFFS' RESPONSE**

Undisputed.

48. Again, Mr. Clark was not ordered to enroll in or complete Phase II, nor did he seek a

constructive credit waiver for this course. DA 562 (Mills Decl. ¶ 3); DA 434 (McNamara Decl. ¶ 37).

**PLAINTIFFS' RESPONSE**

Disputed. Pursuant to both his demotion and promotion order, as well as governing regulations, Mr. Clark was required to complete Phase II of BNCOC to be repromoted to E-6. *See* Alabama Army National Guard Orders 280-009, October 7, 1999, App. 20; National Guard Regulation 600-200, Enlisted Personnel Management, Mar. 1, 1997, 11-28a. As stated in Response to the Government's Finding Proposed of Fact No. 22, Mr. Clark could not request a "constructive waiver" of the BNCOC Phase II requirements because that option did not exist at the time of his demotion. Additionally, the Government's use of the word "[a]gain" is disputed because Clark also was ordered on previous occasions to complete correspondence courses. *See* Response to Government's Proposed Finding of Fact Nos. 10.

Had Mr. Clark not taken and completed Phase II of BNCOC, he would not have been eligible for future promotion. Additionally, had Mr. Clark refused to seek promotion and advance in his military career, he could have faced administrative sanctions. *See* Response to Government's Proposed Findings of Fact Nos. 10, 27 and 28.

49. Mr. Clark attended Phase III of the Basic NCO Course in residence at the U.S Army Band NCO Academy, U.S. Army Element School of Music, Norfolk, Virginia. DA 255.

**PLAINTIFFS' RESPONSE**

Undisputed.

50. Mr. Clark attended and was paid for the maximum of forty-eight regularly scheduled Unit Training Assemblies ("UTAs") in each fiscal year in which he was enrolled in correspondence courses which he completed. DA 34-106; DA 433 McNamara Decl. ¶ 36.

**PLAINTIFFS' RESPONSE**

Undisputed but immaterial.

51. Mr. Clark's commander never authorized Mr. Clark to perform correspondence courses while on duty. DA 563 (Mills Decl. ¶ 7).

**PLAINTIFFS RESPONSE**

Disputed to the extent that this proposed finding of fact implies that the completion of required correspondence courses by Guard members is not "duty." Regulations, require documentation that individual was in a "duty status" before the Guard member can receive retirement points. E.*g.*, NGR (AR) 350-1, ¶ 2-1.c. , *Army National Guard Training.* The Secretary of the Army has prescribed that Guard members earn retirement points for performing the duty of completing correspondence courses. Pursuant to NGR 680-2, *Automated Retirement Points Accounting System*, the Secretaries grant to Guard members one retirement point for each three correspondence course credit hours satisfactorily completed. *Id.* at 2-17, Item 6, Table 2-5. Work on official correspondence course prescribed by the Secretaries, therefore, plainly constitutes "duty" that is performed in "duty status."

Any contrary contention by the government also disregards the law of the case established by the Federal Circuit's decision. *See Clark,* 322 F.3d 1368. In remanding the case with instructions that the sole remaining liability question to be decided was which correspondence courses completed by Clark, if any, had been "required" by "the Secretary of the Army." The Federal Circuit necessarily determined that Mr. Clark was performing a "duty" for which 37 U.S.C. § 206 mandates pay when he completed required correspondence courses. *Clark*, 322 F.3d at 1368. Consistent with this conclusion, the Federal Circuit also ruled that "[i]t thus is clear that Mr. Clark is seeking compensation for correspondence courses taken while in service to the Alabama National Guard" *Id.* at 1368.

52. Mr. Clark's commander never placed Mr. Clark on orders to complete correspondence courses. <u>Id.</u>

**PLAINTIFFS' RESPONSE**

Disputed to the extent that the government's proposed finding suggests that completing individual training requirements required by regulation or other forms of order are "voluntary." *See* Response to Government's Proposed Findings of Fact Nos. 17, 40 and 41.

53. Mr. Clark's commander never scheduled time in his unit's training schedules for Mr. Clark or any other unit soldier to complete correspondence courses while in a duty status. Id.

**PLAINTIFFS' RESPONSE**

Undisputed but immaterial. *See also* Response to Government Proposed Finding of Fact No. 51.

54. Mr. Clark has never alleged that he was told that he would be paid for working on any correspondence courses.

**PLAINTIFFS' RESPONSE**

Undisputed but immaterial. As the Federal Circuit has ruled, 37 U.S.C.§ 206 (a) (2) mandates pay for the completion of required correspondence coursework and Mr. Clark never volunteered to perform any required duty without pay. *See* Clark Decl. at ¶ 29; App. 10 - 11.

55. Mr. Clark worked on these correspondence courses in his civilian status. Compl. ¶¶ 4, 7.

**PLAINTIFFS' RESPONSE**

Disputed. As evidenced by the fact that the Secretary awards retirement points for the successful completion of subcourses completed by correspondence, Mr. Clark worked on and completed these correspondence courses in a duty status. *See* William A. Clark, Current Army National Guard Annual Statement Retirement Points , DA 397-414; *See also* Response to Government Proposed Finding of Fact No. 51.

This is also supported by the Federal Circuit's statement that "[i]t thus is clear that Mr. Clark is seeking compensation for correspondence courses taken while in service to the Alabama National Guard." *Clark*, 322 F.3d at 1368.

Respectfully submitted,

/s Helen K. Michael

Robert H. Shulman
Helen K. Michael
Rachel A. Adams
Alan B. Sutton
HOWREY, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 783-0800
Fax: (202) 383-6610

Counsel for Plaintiffs

Richard T. Dorman
CUNNINGHAM, BOUNDS, VANCE,
CROWDER, and BROWN, LLC
1601 Dauphin Street
Mobile, Alabama 36660
Tel: (334) 471-6191
Fax: (334) 479-1031

Charles J. Cooper
David Thompson
COOPER & KIRK, P.L.L.C.
1500 K Street, N.W., Ste. 200
Washington, DC 2005
Tel: (202) 220-9600
Fax: (202) 220-9601

Dated: June 10, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Plaintiffs' Response to the Government's Proposed Findings of Uncontroverted Fact was served by regular United States mail, postage prepaid, this 10th day of June, 2005 upon the following:

Douglas K. Mickle
Department of Justice
Commercial Litigation Branch
Civil Division
Attn: Classification Unit
8th Floor, 1100 L St., N.W.
Washington, D.C. 20530

/s Alan B. Sutton
Alan B. Sutton