**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| WILLIAM A. CLARK, JAMES P. DAVERN, ROBERT E. FREEBURG, WILLIE R. JOHNSON, ROBERT A. MUSTIN, JOHN DOES 1 through 4, and JANE DOES 1 through 3, individually, and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | CASE NO. 00-644C<br>(Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Richard T. Dorman
CUNNINGHAM, BOUNDS, YANCE, CROWDER & BROWN, LLC
1601 Dauphin Street
Mobile, AL 36664
Tel: (251) 471-6191

Robert Shulman
Helen K. Michael
Rachel A. Adams
Alan B. Sutton
HOWREY SIMON ARNOLD & WHITE, L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 783-0800
Fax: (202) 383-6610

Charles J. Cooper
David Thompson
COOPER & KIRK, P.L.L.C.
1500 K Street, N.W., Ste. 200
Washington, DC 20005
Tel: (202) 220-9600

Date: June 10, 2005

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ III

STATEMENT OF THE ISSUES ........ 1

INTRODUCTION ........ 2

ARGUMENT ........ 4

I. GENUINE ISSUES OF MATERIAL FACT REGARDING WHETHER PLAINTIFFS HAVE COMPLETED CORRESPONDENCE COURSES "REQUIRED" BY THE SERVICE SECRETARIES PRECLUDE SUMMARY JUDGMENT MOTION........ 4

A. Correspondence Courses Completed By Plaintiffs Satisfy the Service Secretaries' Standards for What Constitutes "Required" Individual Training........ 5

1. The Secretaries prescribe individual training and correspondence courses as "required training." ........ 7

2. The Secretaries prescribe correspondence courses as prerequisites to and substitutes for "in-resident" training programs........ 13

3. The Secretaries prescribe correspondence courses to satisfy Mission Essential Training requirements. ........ 17

B. Correspondence Courses Completed By Plaintiffs Meet the Government's "Criminal or Administrative Sanction" Standard for What Constitutes "Required" Training. ........ 19

1. Plaintiffs have been ordered to take correspondence courses and were subject to criminal sanctions if they had failed to complete the courses........ 20

2. Plaintiffs are subject to the administrative sanction of involuntary separation from service for failing to complete correspondence courses. ........ 22

3. Plaintiffs have faced the administrative sanction of demotion for failing to complete correspondence courses. ........ 25

4. Plaintiffs have faced the administrative sanction of denial of or removal from positions of responsibility for failing to complete correspondence courses. ........ 26

II. THE LAW OF THE CASE ESTABLISHED BY THE FEDERAL CIRCUIT'S DECISION NECESSITATES REJECTION OF ALL OF THE GOVERNMENT'S OTHER ARGUMENTS. ........ 27

A. The Federal Circuit Soundly Rejected The Government's Contentions That Section 206 Does Not Authorize Payment for National Guard Members' Completion of Required Correspondence Courses. .................. 28

B. The Federal Circuit Soundly Rejected The Government's Contention That The Secretary's Failure To Prescribe Compensation For Correspondence Courses Could Serve To Preclude National Guard Members' Right To Be Paid For Such Courses. .................. 31

C. The Federal Circuit's Decision Necessitates Rejection of the Government's Contention that 37 U.S.C. § 206(a)(2) Mandates Pay Only for Make Up Training. ........ 34

D. The Federal Circuit Unequivocally Has Ruled That Guard Members Take Correspondence Coursework In Title 32 Duty Status. .................. 37

CONCLUSION .................. 39

## TABLE OF AUTHORITIES

### CASES

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144 (1970) .......... 4

*Alabama Power Co. v. FERC,*
160 F.3d 7 (D.C. Cir. 1998) .......... 20

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 4

*Browning v. Navarro*,
887 F.2d 553 (5th Cir. 1989) .......... 28

*Christianson v. Colt Industries Operating Corp.*,
486 U.S. 800 (1988) .......... 28

*Clark v. United States*,
322 F.3d 1358 (Fed. Cir. 2003) .......... *passim*

*Clark v. United States*,
50 Fed. Cl. 727 (2001), *rev'd on other grounds,*
322 F.3d 1358 (Fed. Cir. 2003) .......... 31, 33

*Clark v. United States*,
No. 02-5062, 2003 U.S. App. LEXIS 18638 (Fed. Cir. Aug. 15, 2003) .......... 33

*Diefenderfer v. Merit System Protection Board*,
194 F.3d 1275 (Fed. Cir. 1999) .......... 37

*Doe v. United States*,
47 Fed. Cl. 367 (2000) .......... 4

*Doe v. United States*,
16 Cl. Ct. 412, 424 (1989) .......... 33

*Duncan v. Walker*,
533 U.S. 167 (2001) .......... 36

*Logan v. Original Honey Baked Ham Co.*,
44 Fed. Appx. 484 (Fed. Cir. 2002) .......... 28

*O'Hanlon v. United States,*

11 Cl. Ct. 192 (1986) ........ 35

*Perpich v. Department of Defense*,
496 U.S. 334 (1990) ........ 38

*TRW Inc v. Andrews*,
534 U.S. 19 (2001) ........ 36

*United States v. Menasche*,
348 U.S. 528 (1955) ........ 36

**STATUTES**

10 U.S.C. § 892 ........ 22

19 U.S.C. § 1619 ........ 4

32 U.S.C. § 62 (1952) ........ 30

32 U.S.C. § 502 ........ 5, 6, 30

37 U.S.C. § 101(22) ........ 31

37 U.S.C. § 206 ........ *passim*

37 U.S.C § 231 ........ 32

Armed Forces Reserve Components, Pub. L. No. 80-460, 62 Stat. 87
(Mar. 25, 1948) ........ 30

Career Compensation Act of 1949, Pub. L. No. 81-351, 63 Stat. 802 (1949) ........ 31, 32

Department of Defense Appropriations Act, 2004, Pub. L. No. 108-87,
117 Stat. 1054 (2003) ........ 33

Department of Defense Authorization Act, 1985, Public Law 98-525, §1402(a), 98 Stat.
2492, 2620-2621 (1984) ........ 37

National Defense Authorization Act for Fiscal Year 2002, Pub. L. No. 107-107, 115 Stat.
1012 (2001) ........ 9

Conn. Gen. Stat § 27-231 (2004) ........ 22

Miss. Code Ann. § 33-13-483 (2004) ........ 23

51 Pa. Cons. Stat. § 6016 (2004) ........ 23

**ARMED FORCES MATERIALS**

AFIADL Catalog, Sept. 17, 2003 ........ 16

Air Force Instruction 36-2201, Vol. 2, *Air Force Training Program, Training Management*, Jan. 13, 2004 ........ 6, 10

Air Force Instruction 36-2201, Vol. 3, *Air Force Training on the Job Training Administration*, Feb. 4, 2005 ........ 12

Air Force Instruction 36-2201, Vol. 4, *Air Force Training Program, Managing Advanced Distributed Learning,* Oct. 23, 2002 ........ 6, 9

Air Force Instruction 36-2301, *Professional Military Education*, June 27, 2002 ........ 6, 15

Air Force Instruction 36-2618, *The Enlisted Force Structure,* Apr. 1, 1999 ........ 6, 11, 13, 14, 22

Air Force Instruction 51-604, *Appointment to and Assumption of Command,* Oct. 1, 2000 ........ 13, 22

Air Force Policy Directive 36-22, *Air Force Military Training,* Mar. 22, 2004 ........ 13, 22

Air National Guard Instruction 36-2002, *Enlistment And Reenlistment In The Air National Guard And As A Reserve Of The Air Force*, Mar. 1, 2004 ........ 24

Air National Guard Instruction 36-2502, *Promotion of Airmen*, Aug. 25, 2000 ........ 6

Air National Guard Instruction 36-2504, *Federal Recognition Of Promotion In The Air National Guard (ANG) And As A Reserve Of The Air Force Below The Grade Of General Officer*, July 28, 2004 ........ 24

Air National Guard Instruction 36-2606, *Selective Retention of Air National Guard Officer and Enlisted Personnel*, Feb, 28, 1997 ........ 25

Army Regulation 135-155, *Promotion of Commissioned Officers and Warrant Officers Other Than General Officers* ........ 24

Army Regulation 135-205, *Enlisted Personnel Management*, Sept. 1, 1994 ........ 25

Army Regulation 350-1 *Army Training and Education*, Apr. 9, 2003 ........ 7, 8, 15

Army Regulation 350-10, *Management of Army Individual Training Requirements and Resources*, Sept. 14, 1990 ........ 16

Army Regulation 351-1, *Individual Military Education and Training*, Oct. 15, 1987 ........ 8, 9, 11, 13, 15, 16

Army Safety Program, WASHINGTON DC//DAMO-TRZ//1412242 AUG 02//SAB, Sep. 2, 2003 .......... 15, 27

AUOI-H Study Series NR 16, *History of the Extension Course Institute*, Feb. 1, 1996 .......... 9

CTNG Circular 350-01, Oct. 1, 2000 .......... 19

Department of the Army Pamphlet, 350-58, *Leader Development for America's Army*, Oct. 13, 1994 .......... 6, 14, 15, 27

Department of the Army Pamphlet 350-59, *Army Correspondence Course Program Catalog*, Oct. 1, 2000 .......... 6, 9

Department of the Army Pamphlet 351-20, *Army Correspondence Course Program Catalog*, Apr. 28, 2000 .......... 9, 15, 16, 17

Department of Defense Directive 1035.1, *Telework Policy for Department of Defense*, Sept. 9, 2002 .......... 34, 40

Department of Defense Instruction 4500.9R, *Defense Transportation Regulation* .......... 27

Field Manual 7-0, *Training the Force*, Oct. 22, 2002 .......... 6, 7, 8, 10, 11, 12, 18, 22

Field Manual 22-100, *Army Leadership, Be Know, Do*, Aug. 31, 1999 .......... 22

FORSCOM/ARNG/USAR Regulation 350-2, *Reserve Component Training*, Oct. 27, 1999 .......... 6, 9, 12, 22

Mississippi Army National Guard, *Yearly Training Guidance for Training Year 2003 and Short-Range Planning Calendar for Training Year 2003*, Jan. 25, 2002 .......... 8, 18, 19

National Guard Pamphlet 351-1, *Total Army School System*, Dec. 20, 1996 .......... 6

National Guard Pamphlet 600-3, *Professional Development and Utilization of Commissioned Officers in the Army National Guard*, Dec. 29, 1989 .......... 6

National Guard Regulation 35-6, *Selective Retention of Air National Guard Officers and Enlisted Personnel*, Oct. 15, 1993 .......... 25

National Guard Regulation 350-1, *Army National Guard Training*, Nov. 30, 1983 .......... 6, 12, 17, 21, 33, 38

National Guard Regulation (AR) 350-1, *Army National Guard Training*, June 3, 1991 .......... 6, 7

National Guard Regulation 351-1, *Individual Military Education and Training*, Apr. 15, 19876, 17, 33, 34

National Guard Regulation 600-200, *Enlisted Personnel Management*, Mar. 1, 1997 ......... 23, 24, 26

National Guard Regulation 635-100, *Termination of Appointment and Withdrawal of Federal Recognition*, July 15, 1983 .......... 24

National Guard Regulation 635-102, *Officers and Warrant Officers Selective Retention*, July 1, 1988 .......... 25

National Guard Regulation 680-2, Personnel Information Systems, Automated Retirement Points Accounting System, Mar. 1, 1989 .......... 39

North Carolina, *Yearly Training Guidance for Training Year 1998*, Nov. 1, 1996.......... 18

TRADOC Regulation 350-10, *Institutional Leader Training and Education*, Aug. 12, 2000 .......... 15

TRADOC Regulation 350-70, *Systems Approach to Training, Management, Processes, and Products*, Mar. 9, 1999 .......... 6, 8

**OTHER AUTHORITIES**

AMERICAN HERITAGE COLLEGE DICTIONARY (4th ed. 2002) .......... 37

NEW OXFORD AMERICAN DICTIONARY (2001) .......... 37

Michael G. Shanely *et al.*, ARMY DISTANCE LEARNING: POTENTIAL FOR REDUCING SHORTAGES IN ARMY ENLISTED OCCUPATIONS (Rand 2001) .......... 13, 14

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993 unabridged) .......... 20

John D. Winkler *et al.*, TRAINING REQUIREMENTS AND TRAINING DELIVERY IN THE TOTAL ARMY SCHOOL SYSTEM (Rand 1999) .......... 14

**STATEMENT OF THE ISSUES**

The government's summary judgment motion (or "Def. Br.") correctly quotes the two issues that the Court's March 19, 2004 Order ("March 19 Order") authorizes the government to address. It should be added, however, that the government has conceded the first issue, stating that, it "assumes that Mr. Clark did not work on any correspondence course during any periods of military duty for which he was 'entitled to basic pay,' pursuant to 37 U.S.C. § 204...." Def. Br. at 1, n.1.

It also should be added that the second issue identified in the March 19 Order[1] must be read consistently with the Federal Circuit's decision, which determined as the law of this case that the government must compensate Guard members for completing required correspondence courses. *See Clark v. United States*, 322 F.3d 1358, 1368 (Fed. Cir. 2003) (*reh'g denied, suggestion for reh'g en banc declined*, Aug. 15, 2003). In making this determination, the Federal Circuit necessarily concluded that, to the extent National Guard members have been "required" to complete particular correspondence courses, such courses qualify as "equivalent training, instruction, duty or appropriate duties" for which Section 206(a)(2) mandates pay. *Id.* at 1365. For purposes of the instant summary judgment proceedings, the Federal Circuit's decision dictates that the only liability questions[2] remaining to be resolved are "which classes the Secretary of the Army required, if any, and which classes he [Mr. Clark] took to satisfy those requirements." *Id.* at 1368. Because the Complaint in this action now has been amended to add eleven plaintiffs, including a number of Air National Guard members, these same two questions apply to these individuals, and also call for a determination of whether these individual have completed correspondence courses required by

---

1 This issue is "[w]hether, as a matter of law, the correspondence courses Mr. Clark took to qualify as a 'regular period of instruction, or period of appropriate duty' under 37 U.S.C. § 206(a)(1) or 'equivalent training, instruction, or duty, or appropriate duties' under 37 U.S.C. 206(a)(2)." March 19 Order at 1.

2 The Federal Circuit also left open the question of damages, stating that Mr. Clark "must establish the amount of compensation he is due under the statute." *Id*. at 1368.

Secretary of the Air Force.[3]

## INTRODUCTION

The government predicates its request for summary judgment motion on incurably flawed arguments failing to provide any support for the drastic relief it seeks. One incurably flawed series of arguments contravene the law of the case established by the Federal Circuit's decision. As discussed in detail in Section II below, all of these arguments attempt to support the erroneous contention that 37 U.S.C. § 206(a)(2) does not mandate pay for National Guard members' completion of required correspondence coursework. Because the Federal Circuit already has rejected each and every one of these arguments expressly or by necessary implication, the arguments cannot support the granting of summary judgment.

The government's other incurably flawed arguments underscore that, with respect to the sole remaining liability issue left open by the Federal Circuit's decision, there are, at the very least, material factual disputes precluding summary judgment about whether Plaintiffs have completed required correspondence courses.[4] As demonstrated in Section I below, the evidence unequivocally refutes the government's contentions that correspondence courses supposedly involve "voluntary" training. This evidence overwhelmingly confirms that the Service Secretaries have prescribed correspondence courses as required individual training that is necessary to enable National Guard members to perform their individual military functions and to ensure that their units are able to satisfy mission requirements. The government's own regulations, manuals, and websites, as well as the declarations submitted on Plaintiffs' behalf by

---

3 For purposes of this Opposition, Plaintiffs treat Defendant's arguments regarding the Army National Guard as applicable to the Air National Guard as well.

4 With this brief, as required by Local Rule 56, Plaintiffs also file their Responses to Defendant's Proposed Findings of Uncontroverted Fact ("PFF") and Plaintiffs' Statement of Additional Material Facts Preventing Summary Judgment ("SAMF"). As demonstrated in Plaintiffs' Responses, the government's PFF relies heavily on argument unsupported by evidence or on factual assertions that are disputed. The SAMF presents 103 additional material facts, all supported by citation to record evidence, demonstrating that the government is not entitled to summary judgment.

distinguished officers and other service personnel all confirm this central reality. Any part of this evidence would be sufficient to defeat the government's summary judgment motion. Taken together, the evidence shows that the government's position is completely untenable, and that only Plaintiffs could be entitled to summary judgment on the sole remaining liability issue left open by the Federal Circuit's decision.

Reconfirming that the government is not entitled to summary judgment, Plaintiffs have completed correspondence courses that satisfy even the government's own formulation of what constitutes "required" training. According to the government, "required" courses are only those as to which Guard members may be "criminally or administratively sanctioned for not enrolling or successfully completing…." McNamara Declaration ¶ 9, Def. App. 420. This overly narrow formulation erroneously conflates (1) the requirements that have been imposed on National Guard members to complete correspondence courses, and (2) the penalties for failing to satisfy these requirements. Nonetheless, the correspondence courses completed by Plaintiffs have been "required" even under this unduly restrictive formulation because Plaintiffs would have faced criminal and administrative sanctions, including but not limited to separation from the National Guard, for failing to complete such courses.

Even on the incomplete record that Plaintiffs have been available to develop without the benefit of deposition and other discovery to which they are entitled,[5] the government has failed to meet its burden of

---

5 In its July 15, 2004 Order, the Court denied Plaintiffs' request for an opportunity to depose the various individuals that submitted declarations in support of the government's summary judgment motion, as well as to conduct deposition and written discovery, by limiting Plaintiffs to propounding requests to produce on a specified number of topics. Pursuant to the Court's Order of July 15, 2004, Plaintiffs served document requests on Defendant on July 19, 2004. Defendant responded on October 4, 2004 with a preliminary set of documents, mostly regulations that Plaintiffs had previously obtained. In the ensuing months, Plaintiffs reiterated their requests and identified specific documents required as responsive to the original document requests. While the Defendant produced specifically identified documents, it did not produce other documents responsive to Plaintiffs' requests. Each time Defendant produced documents, Plaintiffs noted references to other responsive documents, which Plaintiffs then specifically requested. This piecemeal production process continued until the close of the discovery period on February 11, 2005. Because Plaintiffs have been denied deposition discovery, they have been unable to determine whether Defendant fully complied even with the limited discovery obligations imposed by the Court's July 15, 2004 Order. Plaintiffs also have been unable to develop the factual record regarding numerous regulations that Plaintiffs

demonstrating that judgment can be entered as a matter of law. The Court should deny the government's motion and direct this case to proceed, consistent with the Federal Circuit's mandate that the sole remaining liability question to be resolved is which required correspondence courses have been completed by Plaintiffs.

## ARGUMENT

### I. GENUINE ISSUES OF MATERIAL FACT REGARDING WHETHER PLAINTIFFS HAVE COMPLETED CORRESPONDENCE COURSES "REQUIRED" BY THE SERVICE SECRETARIES PRECLUDE SUMMARY JUDGMENT MOTION.

Well-settled standards dictate denial of the government's summary judgment motion. The Supreme Court has directed that, in reviewing summary judgment motions, courts are not to "weigh the evidence and determine the truth of the matter but [should] determine [only] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Supreme Court further has directed that any doubt regarding the existence of a genuine issue of material fact must be resolved in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). Contrary to the government's contentions, these standards apply with equal force to disposition of the question of statutory construction presented here and preclude the granting of summary judgment. *See, e.g., Doe v. United States*, 47 Fed. Cl. 367 (2000).

This Court's decision in *Doe* is instructive. In *Doe*, on remand from the Federal Circuit, the Federal Claims Court denied cross-motions for summary judgment in a case principally involving statutory interpretation. *Id*. at 374. The Federal Circuit had reversed and remanded the court's initial dismissal of the plaintiff's statutory claim, made under 19 U.S.C. § 1619, for compensation provided by informers furnishing "original information" leading to recovery of property by the United States. *Id*. at 369. Upon remand, the trial court found that summary judgment was not proper because there was a dispute between

---

might have cited in this Opposition, in their Responses to Defendant's PFF and in Plaintiffs' SAMF. In addition, Plaintiffs have been unable to examine any of the government's witnesses about the factual assertions made in the declarations filed in support of the government's summary judgment motion.

the parties regarding whether information supplied by plaintiff qualified as "original" information within the meaning of the statute. *Id*. at 374. Summary judgment similarly is inappropriate here because there is, at the very least, a material dispute about whether the statutory terms at issue have been satisfied: whether the courses completed by Plaintiffs were "required" or, in the synonymous terms of the statute at issue, "prescribed" by the Secretaries within the meaning of 37 U.S.C. § 206(a)(2).

### A. Correspondence Courses Completed By Plaintiffs Satisfy the Service Secretaries' Standards for What Constitutes "Required" Individual Training.

When it focuses on the liability question properly before this Court, rather than on impermissibly rearguing liability issues already decided by the Federal Circuit, the government relies heavily on the erroneous contention that Guard members ostensibly are required to perform only unit-based training, and that correspondence courses supposedly are voluntary and need not be taken to satisfy mandatory training requirements. *See* Def. Br. at 20-31. In endeavoring to support these contentions, the government erroneously cites 32 U.S.C. § 502(a) as providing the Secretary's sole authority to prescribe training (Def. Br. at 20-21). Section 502, in fact, authorizes the Secretaries to require both unit training *and* individual training or instruction. Section 502(a) provides the authorization for requiring unit training,[6] while Section 502(f) provides the authorization for requiring other types of training or instruction, including paid, individual training or instruction performed without the Guard member's consent in addition to the unit

---

[6] This statute provides as follows:

(a) Under regulations to be prescribed by the Secretary of the Army or the Secretary of the Air Force, as the case may be, each company, battery, squadron, and detachment of the National Guard, unless excused by the Secretary concerned, shall—

(1) assemble for drill and instruction, including indoor target practice, at least 48 times each year; and

(2) participate in training at encampments, maneuvers, outdoor target practice, or other exercises, at least 15 days each year.

32 U.S.C. § 502(a).

training required under Section 502(a).[7]

In keeping with its refusal to acknowledge Section 502(f), the government also mischaracterizes NGR (AR) 350-1, which expressly applies only to "policies and procedures for training units," as the one regulation in which the Secretary of the Army "has prescribed training of the National Guard." Def. Br. 21. Consistent with the authorization to require individual training provided by 32 U.S.C. § 502(f), and as further demonstrated in Section I.A.1 below, there are, in fact, a host of regulations demonstrating that the Secretaries have exercised their statutory authority to prescribe individual training, including correspondence coursework, as an essential component of the military's comprehensive program for training individuals and units to meet war-time mission requirements.[8] Indeed, NGR (AR) 350-1, upon which the government itself misleadingly relies, refers to other regulations, such as NGR 351-1, as governing required forms of individual training. *See* NGR (AR) 350-1, *Army National Guard Training*, ¶¶ 1-

---

7 Section 502(f) provides as follows:

(a) Under regulations to be prescribed by the Secretary of the Army or Secretary of the Air Force, as the case may be, *a member of the National Guard* may—

(1) without his consent, but with the pay and allowances provided by law; or

(2) with his consent, either with or without pay and allowance; be ordered to *perform training or other duty in addition to that prescribed under subsection (a)*. Duty without pay shall be considered for all purposes as if it were duty with pay.

32 U.S.C. § 502(f) (emphasis added).

8 A non-exhaustive list of additional regulations governing required individual training of Guard members includes: (1) AFI 36-2201, Vol. 2, *Air Force Training Program, Training Management*, Jan. 13 2004; (2) AFI 36-2618, *The Enlisted Force Structure*, Apr. 1, 1999; (3) AFI 36-2301, *Professional Military Education*, Jun. 27, 2002; (4) ANGI 36-2502, *Promotion of Airmen*, Aug. 25, 2000; (5) DA Pam 350-58, *Leader Development for America's Army*, Oct. 13, 1994; (6) DA Pam 350-59, *Army Correspondence Course Program Catalog*, Oct. 1, 2000; (7) Field Manual 7-0, *Training the Force*, Oct. 22, 2002; (8) FORSCOM/ARNG/USAR Regulation 350-2, *Reserve Component Training*, Oct. 27, 1999; (9) National Guard Pamphlet 351-1, *Total Army School System*, Dec. 20, 1996; (10) National Guard Pamphlet 600-3, *Professional Development and Utilization of Commissioned Officers in the Army National Guard*, Dec. 29, 1989; (11) NGR 350-1, *Army National Guard*, Nov. 3, 1983; (12) NGR 351-1, *Individual Military Education and Training*, Apr. 15, 1987; and, (13) TRADOC Regulation 350-70, *Systems Approach to Training, Management, Processes, and Products*, Mar. 9, 1999.

1, 2-3, Jun. 3, 1991, App. 403,406.

Moreover, at least two additional considerations also contradict the government's contention that correspondence courses purportedly do not constitute a required form of training. First, and as demonstrated in Section I.A.2, the Secretaries of the Air Force and Army have prescribed correspondence courses as prerequisites to and as substitutes for completing required "in residence" training for which National Guard members are compensated. Second, and as demonstrated in Section I.A.3, the Secretary of the Army has included correspondence courses as part of the training that Guard members must complete to gain proficiency in their mission essential task lists ("METL"), and has defined METL training as "training requirements." Field Manual 7-0 at Glossary-16, App. 382.

**1. The Secretaries prescribe individual training and correspondence courses as "required training."**

Contrary to the government's contentions, numerous regulations demonstrate that National Guard training, involves not only required unit training pursuant to 32 U.S.C. § 502(a), which "develops critical components of combat readiness,"[9] but also required individual training pursuant to 32 U.S.C. § 502(f), which "[p]roduces soldiers capable of performing [their] military occupational specialty (MOS)" and other tasks. AR 350-1 ¶¶ 1-8.d(1) and 1-8.d(2)(c), App. 303. In fact, National Guard training and education, which is the "top peacetime mission" for National Guard commanders, has three "pillars:" collective training (unit training); individual training; and self-development training. *See* AR 350-1 ¶¶ 1-7.b, 1-9.a, App. 302,304; *see also* Field Manual 7-0 ¶¶ 1-19, 1-20, App. 368-69 (discussing the importance of each pillar to "force readiness" and successful execution of "any assigned mission"). The government's unsupportable contention that unit training is the only type of required military training ignores the individual training and self-development training pillars of the National Guard training and education system and the function these

9 AR 350-1, *Army Training and Education*, Apr. 9, 2003, ¶ 1-8.d, App. 303; *see also* Field Manual 7-0 ¶ 1-1, App. 366. Field Manual 7-0 constitutes the "Army's capstone training doctrine and is applicable to all units, at all levels, and in all components [including the National Guard]." (*Id*. preface at iv.), App. 365.

pillars serve as "the foundation on which" the military "build[s] and conduct[s] [its] collective training program." Mississippi Army National Guard, *Yearly Training Guidance for Training Year 2003 and Short-Range Planning Calendar for Training Year 2003*, at p.4, ¶ 9.d, Jan. 25, 2002, App. 390.

Underscoring the importance of individual training, including correspondence courses, to fulfilling military education requirements, regulations disregarded by the government establish that the Secretary of the Army has assigned to the Commanding General of the U.S. Army Training and Doctrine Command ("TRADOC") the task of developing and executing "individual training to meet the Army's individual training goal[s]." AR 350-1 ¶ 2-20.x, App. 305. To ensure that service personnel receive such required "individual training" and instruction, (AR 350-1 ¶ 1-8.d(2)(c), App. 303 (emphasis added)), TRADOC has designed the Total Army Training System ("TATS"), and has designated the "non-resident" Army Correspondence Course Program ("ACCP") as an essential component of TATS, which is "*required* in support of work place learning" (emphasis added).[10] AR 351-1, Individual Military Education and Training Oct. 15, 1987 ¶ 7-6.a, App. 322. *See* TRADOC Regulation 350-70, *Systems Approach to Training, Management, Processes, and Products*, Mar. 9, 1999, Chapter VI-9-1 at Introduction, App. 445. The required individual training that Army Guard members obtain through TATS includes "standard resident and nonresident [correspondence course] training and education...." Field Manual 7-0 at Glossary-15, App. 381.

Also contrary to the government's contention that correspondence courses supposedly are voluntary (Def. Br. at 51-53), the Secretary of the Army has differentiated ACCP courses taken by active Guard members from voluntary programs, by noting that, in contradistinction to the ACCP: 1) "[t]he Army's *voluntary* off-duty education programs are provided through ACES [the Army Continuing Education System;

---

10 The "nonresident" training or programs are synonymous with correspondence work. *See, e.g.*, AR 351-1, AR ¶ 7-6.a., App. 322 ("Nonresident (correspondence) programs provide knowledge ... required in support of work place learning.").

and 2) "[e]nrollment for retirees in ACCP instruction *is voluntary*." AR 351-1 ¶¶ 7-7.b, 7-8.a, App. 322 (emphasis added). In contrast to retirees, Plaintiffs completed ACCP correspondence courses to satisfy on-duty Guard training requirements.[11]

The Secretary of the Air Force likewise explicitly has recognized that the Air Force correspondence course program, currently known as the Air Force Extension Course Program ("ECP"), is a mandatory training program. *See* AFI 36-2201, Vol. 4, Air Force Training Program, Managing Advanced Distributed Learning, ¶ 1.4, Oct. 23, 2002, App. 239. As one report explains, ECP, when created in 1953, was considered a "voluntary" program, but, owing to the important role ECP plays in satisfying essential training requirements, has, since 1963, been "mandatory." AUOI-H Study Series NR 16, *History of the Extension Course Institute*, Feb. 1, 1996, at 2-3, App. 327-28.

Among the required forms of individual training satisfied by correspondence courses, duty qualification has been identified a particular "priority" for National Guard members. Field Manual 7-0, ¶ 1-49, App. 373; *see id.* at ¶ 4-22, App. 379. For Army Guard members, such required correspondence coursework involves task-based training for particular military occupational specialties (or "MOS"). *See, e.g.,* Clark Decl. ¶ 7, App. 2-3; Jane Doe 1 Decl. ¶ 8, App. 84-85.

---

11 The government argues that the ACCP applies to members of the National Guard of the United States, but not to members of the "National Guard." *See* Def. Br. at 28. For support it cites DA PAM 350-59, Oct. 1, 2002. However, this version of the ACCP regulation was promulgated after Congress's December 28, 2001 amendment to 37 U.S.C. § 206, which made discretionary what had been a mandatory obligation to pay members of the National Guard for completing required correspondence courses. *See National Defense Authorization Act for Fiscal Year 2002,* Pub. L. No. 107-107, 115 Stat. 1012, 1133 (2001); *see also Clark*, 322 F.3d at 1362, n.1. Regulations promulgated before the 2001 amendment confirm that the Army Correspondence Course Program applies to members of the "National Guard." *See, e.g.*, DA Pam 350-59, *Army Correspondence Course Program Catalog*, Oct. 1, 2000 ("Applicability. This pamphlet applies to active duty military of all branches, foreign military, Army National Guard, Reserve personnel…."), App. 337; DA Pam 351-20, *Army Correspondence Course Program Catalog*, Apr. 28, 2000 (same), App. 345. That the ACCP applies to members of the "National Guard" is consistent with the Federal Circuit's ruling that "Mr. Clark is seeking compensation for correspondence courses taken *while in service to the Alabama National Guard* and not the National Guard of the United States." *Clark*, 322 F.3d at 1368 (emphasis added).

For Air Guard members, this type of required task-based individual training is achieved through Career Development Courses ("CDCs"), which are available only as correspondence courses and instruct Air Guard members in their job specialties, identified by Air Force Specialty Codes ("AFSCs"). *See, e.g.,* Davern Decl. ¶ 5, App. 23; Jane Doe 1 Decl. ¶¶ 7- 9, App. 84-85. In describing enrollment procedures for these courses, the Air University website explains that only those members who are required to take these courses may sign up:

> Air Force Active Duty, National Guard, and Air Reserve enlisted personnel *may not enroll voluntarily in a CDC…* . All CDC enrollments for Active Duty Air Force, Air National Guard and Air Force Reserve enlisted personnel will be submitted through the training office utilizing the MILPDS and PC III, *and must be mandatory*.

*See* Air Force Institute for Advanced Distributed Learning Catalog, Apr. 21, 2005, http://www.maxwell.af.mil/au/afiadl/curriculum/catalog/html/restrictions.htm (emphasis added). The Air University website[12] also lists a significant number of Air Force job specialties that can be satisfied only by taking CDCs. *See* AFSC listing, Jan. 31, 1997, updated May 5, 2005, http://www.maxwell.af.mil/au /afiadl/ curriculum/ catalog/combafsc_fr.htm; AFIADL Career Development courses, Apr. 25, 2005 http://www.maxwell.af.mil/au/afiadl/ curriculum/catalog/ html/cdc00.htm.

Advancement training, as well as professional and leadership development, which also are achieved through correspondence coursework, represent additional forms of individual training that have been identified as vital to ensuring unit readiness. *See, e.g.,* Field Manual 7-0 ¶ 1-24, App. 370 ("leader training and leader development are integral parts of unit readiness."). Such professional military education courses, which Guard members must complete to advance in rank, are required forms of individual training because such courses serve to "develop[] Army leaders," and "to ensure [leaders] are prepared for success in their next assignment and higher-level responsibility." Field Manual 7-0 ¶ 1-29, App. 371-72. The Secretary of

12 Air Force Institute for Advanced Distributed Learning ("AFIADL") posts official guidance and policy on its website. *See* AFI 36-2201, Vol. 4 ¶ 1.4.11, App. 239.

the Army accordingly has prescribed that all Army Guard personnel are responsible "for improving their professional knowledge" and has identified "nonresident instruction" achieved through correspondence coursework as the primary method to accomplish this task. AR 351-1 ¶ 7-7.a., App. 322 Air Force regulations similarly mandate that Air Guard members are required to "[s]ecure and promote professional military education … for themselves and subordinates to develop and skills and professional development." AFI 36-2618, *The Enlisted Force Structure* at 4.1.3, April 1, 1999, App. 259; *see* Davern Decl. ¶ 9, App. 25.

For officers, professional development education provided through correspondence courses also gives "indispensable" training in the skills necessary to fulfill responsibilities as officers and leaders within the Guard. John Doe 2 Decl. ¶¶ 8, 11-13, App. 162. These professional development courses improve "each officer's ability to analyze and solve military problems … to interact and coordinate as a member of a staff … to communicate," and to understand "Army organization, operations and procedures." Jane Doe 3 Decl. ¶ 10, App. 140. Both the Secretaries of the Army and Air Force, therefore, have directed that all Guard officers, including noncommissioned officers, warrant officers and commissioned officers, are "responsible for training themselves through personal self-development." Field Manual 7-0, ¶ 1-19, App. 368-69; *see also* AFI 36-2618 ¶¶ 4.1, 4.1.2 and 4.1.3, App.259.

The service Secretaries require Guard members to complete all of these types of individual training provided through correspondence courses because Guard members need this training to perform their military functions. As Plaintiff Brigadier General Willie R. Johnson explains, Guard members would not be qualified to perform their duties and "could not be deployed with their units to meet wartime requirements" without the individual training provided through military correspondence courses. Johnson Decl. ¶31, App. 66; *see also* Jane Doe 1 Decl. ¶ 2, App. 82-83; John Doe 4 Decl. ¶ 2, App. 182 (explaining that "[t]he Army required me to take [military correspondence courses] because without them I could not do my job," and that, without such required correspondence course training, John Doe 4's "effectiveness as an officer and a leader would" have been "diminished and the lives of the men and women under [his] command would

be placed at greater risk”).

Both the Secretary of the Army and Air Force have placed responsibilities on Guard commanders to ensure that their subordinates complete the individual training required for duty qualification and to achieve other necessary competencies. Army Guard and Air Guard commanders are responsible for ensuring all unit personnel are trained to perform their respective functions.[13]

To ensure that individual training requirements are satisfied, the Secretary of the Army further has authorized commanders to “order” Army Guard members to perform “supplemental training.” NGR 350-1 ¶ 1-2, App. 398. Supplemental training includes training conferences, training seminars, and, most notably, the correspondence courses within the Army Correspondence Course Program. *Id*. ¶¶ 1-2, 4-5.e., 4-11, App. 398,400-01. The Secretary of the Air Force similarly has delegated authority to Air Guard officers and noncommissioned officers to give lawful orders in the exercise of their duties, which specifically includes completion of proficiency training and professional military education courses through correspondence coursework. *See* AFI 36-2618 ¶¶ 3.1.1-3.1.3, 4.1.1-4.1.3, App.258-59; AFI 51-604, *Appointment to and Assumption of Command*, ¶ 4.2.12, Oct. 1, 2000, App. 265; Air Force Policy Directive 36-22, *Air Force Military Training*, ¶ 3.6, Mar. 22, 2004, App. 269.

Mr. Clark and other Plaintiffs as members of the Army National Guard and Air National Guard have completed numerous correspondence courses to satisfy the foregoing individual training requirements. *See* Plaintiffs’ Declarations, App. 1 – 213. Plaintiffs’ completion of such courses precludes the granting of the government’s summary judgment motion.

---

13 *See* FORSCOM/ARNG/USAR Regulation 350-2, at ¶ 1-4.c, App. 387; AFI 36-2201, *Air Force Training Program on the Job Training Administration*, Vol. 3, ¶ 4.1, Feb. 4, 2005, App. 236. *See also* Field Manual 7-0, ¶¶ 1-51, App. 374 (commanders must integrate “institutional, operational, as well as individual self-development resources to train combat ready units”); ¶ 1-19, App. 368-69 (commanders have the “responsibility” to “train soldiers and develop leaders” to ensure their units can perform their mission). Consistent with this responsibility, Army Guard commanders have been directed to ensure that their “command climate” reflects training as the “number one priority.” Field Manual 7-0, ¶ 1-31, App. 372.

**2. The Secretaries prescribe correspondence courses as prerequisites to and substitutes for "in-resident" training programs.**

The regulations establishing that the Secretaries have prescribed correspondence courses as prerequisites to and substitutes for obtaining the competencies achieved in required in-resident training programs also refute the government's contention that correspondence courses supposedly are voluntary. As these regulations make clear, Army correspondence courses provide an "equal level of attainment with resident instruction" and are "required" to:

> (1) Enable personnel of all Army components to obtain or further their military education.
>
> (2) Provide education which must be completed as a prerequisite for promotion of ARNG and USAR personnel not on active duty.
>
> (3) Accommodate and supplement skill progression and MOS functional courses. These courses provide for "training up" of soldiers to support duty position specific skills in career assignments prior to attendance at resident schools or when resident school is not available or feasible.

AR 351-1 ¶ 7-6.a, App. 322.[14]

Air Force correspondence courses similarly satisfy training requirements. Indeed, Air Guard noncommissioned officers have been directed to "seek every opportunity for continued professional development (by in-resident and/or correspondence)" courses, and have been authorized to satisfy these training requirements through completion of correspondence courses. AFI 36-2618 ¶¶ 5.1.2, 5.2.2, 6.2.2, App. 260-63.

The service Secretaries utilize correspondence courses to complement resident instruction because resident training alone is insufficient to satisfy all training requirements for all Guard members. As one Defense Department regulation explains, "[i]nstitutional training and education" must … "[p]rovide the

---

[14] Army studies have also found that distance education technologies produce students with equivalent or superior levels of knowledge than students of in-resident instruction for many subject areas. MICHAEL G. SHANELY *ET AL.*, ARMY DISTANCE LEARNING: POTENTIAL FOR REDUCING SHORTAGES IN ARMY ENLISTED OCCUPATIONS 22 (Rand 2001), App. 436.

right mix of resident and nonresident education. We cannot afford to educate everyone or teach everything in the institution." DA Pamphlet 350-58 at 3, App. 334. As a study commissioned by the Army similarly found, many students cannot satisfy individual training requirements through in-resident courses because "not enough school seats were allocated to their unit...." JOHN D. WINKLER, *ET AL.,* TRAINING REQUIREMENTS AND TRAINING DELIVERY IN THE TOTAL ARMY SCHOOL SYSTEM 60 (Rand 1999), App. 446. By serving as substitutes for in-resident programs, correspondence courses, along with other types of distance learning programs, make up for the chronic shortage of available in-resident slots for enlisted professional development courses. *See* MICHAEL G. SHANELY, *supra*, at xix, App. 435; *see also* Johnson Decl. ¶ 24, App. 63 ("Resident slots are not available in sufficient quantity to meet the demand of all of the Guard members who are required to complete these courses.").

As another means of addressing the chronic shortage of in-resident slots, the Service Secretaries also have prescribed individual training courses of instruction that are available only as correspondence courses. For example, the CDCs that must be completed by Air Guard members can be taken only through correspondence coursework. There similarly are numerous required Army correspondence courses for which there is no in-resident option.[15]

The service Secretaries treat correspondence courses as educational "equivalents" to required in-resident courses for which Guard members always have received compensation. *See, e.g.*, Johnson Decl. ¶ 22, App.

---

15 These courses include, among others: (1) the Commander's Safety Course, which must be completed by company grade Guard commanders prior to assuming their commands in the Army National Guard (*see* Army Safety Program, Sep. 2, 2003, App. 323-25); (2) a "mandatory nonresident course [for warrant officers] that must be completed prior to attending the resident" portion of the Warrant Officer Advanced Course (AR 350-1 ¶ 3-40.a, App. 307-8; DA Pam 351-20 ¶ 4-99.b, App. 358); (3) Phase I of the Battalion/Brigade Pre-Command Course (*see U.S. Army Human Resources Command, Pre-Command Smart Book, June 2005*, Oct. 13, 1994, at https://www.perscom.army.mil/ Opmsc/PCC-Descriptions.htm); DA Pam 350-58 at 17; and (4) several mandatory correspondence courses for Army Guard paralegals. *See* DA Pam 351-20 ¶¶ 4-76, 4-77, 4-78, App. 345 (requiring completion of three separate courses for Army Guard paralegals before attendance at the basic noncommissioned officer and advanced commissioned officer courses designed for their MOS).

62; Jane Doe 2 Decl. ¶¶ 9, 28, App. 110,115.[16] To safeguard this equivalent status, the Secretary of the Army has prescribed that "[d]iplomas and certificates issued will not reflect nonresident [training]. They will contain only the title of the course, to preclude resident courses from being recognized more favorably than other courses." AR 351-1 ¶ 1.9.a.7, App. 314. Army Guard members taking nonresident courses also are evaluated using the same form used to evaluate students of resident courses. *Id*. ¶ 1-12.a, App. 315. The Secretary of the Air Force similarly has directed that "nonresident programs mirror resident programs to the extent practical." AFI 36-2301 ¶ 2.7.9, App. 242.

Also underscoring that correspondence courses are a required form of individual training is the fact that correspondence courses, like in-resident courses, are identified as "training requirements" in the "Army Individual Training Requirements and Resources System." ("ATRRS"). The Secretary of the Army has specified that courses representing training requirements be loaded into ATRRS, and this "training requirements" system contains a catalog of resident and nonresident training courses. *See* AR 350-10, *Management of Army Individual Training Requirements and Resources*, Sept. 14, 1990, ¶ 2-5.a, App. 311 ("Individual training requirements will be developed and entered directly into the ATRRS database….")

That correspondence courses serve the same training purposes as other required forms of military training likewise is demonstrated by the fact that, as with in-residence programs and other types of schooling, the Secretary of the Army does not permit Guard members to sign up for nonresident or correspondence courses if the member has already attained the competencies taught in the course by some other means. *See* AR 351-1 ¶ 3-8.a(2), App. 320 ("Persons who receive constructive or equivalent credit

---

16 *See also*, *e.g.*, AR 350-1 ¶ 3-28.b ("The nonresident CGSOC [Command and General Staff Officer Course] is *equivalent* to the resident course for satisfying career schooling *requirements*.") (emphasis added); AR 351-1 ¶ 3-6.c(2)(a) ("The Corresponding Studies Course curriculum [of Army War College] closely parallels the content of the Resident Course.") and 3-6.c(8)(e) ("Graduates of the Corresponding Studies Course are given equal consideration with Resident Course graduates for assignments."); TRADOC Regulation 350-10, *Institutional Leader Training and Education*, Aug. 12, 2002, ¶ 3-5.b ("Nonresident (correspondence and distributed classroom). "The nonresident version is *equivalent to* the resident course for satisfying career *schooling requirements*.") (emphasis added).

for a course are *not eligible or required* to attend the respective resident or nonresident, or correspondence course.") (emphasis added). Indeed, the Secretaries have failed to treat correspondence courses as "equivalent to" these other forms of required individual training in only one respect: while members receive pay for completing individual training in classrooms, they receive no pay for completing individual training by correspondence, contrary to the mandate of 37 U.S.C. § 206(a)(2).

Both the Army and Air Guard plaintiffs have completed required leadership development courses through correspondence coursework as full substitutes to resident courses.[17] Since 2000, ATTRS training requirements have been maintained on an on-line database. *See* https://www.atrrs.army.mil/atrrscc/historical.asp. 17 of 24 of correspondence courses completed by the Army Guard Plaintiffs, including numerous subcourses, are listed in this online ATRRS database. *See* App. 447-469. Other correspondence courses completed by Army Guard plaintiffs are identified in previously maintained ATTRS paper records. In addition to the leadership courses discussed above, these courses include several multi-phased leadership development courses prescribed by the Secretary of the Army that involve both resident phases of instruction and phases available only through correspondence coursework.[18] The Army Guard Plaintiffs also have completed correspondence courses that are prerequisites to

---

17 These correspondence course substitutes for required leadership development taught in resident courses include: Command And General Staff College, DA Pam 351-20 ¶ 4-60, App. 352-53, Noncommissioned Officer Academy Course, AFIADL Catalog, pp. 20-24, App.215-19, Senior Noncommissioned Officer Academy Course, AFIADL Catalog, pp. 25-28, App. 220-23, Squadron officer School, AFIADL Catalog, pp. 28-31, App. 223-27, and Air Command and Staff College, AFIADL Catalog, pp. 32-35, App. 227-230. The Secretary of the Air Force has also prescribed a nonresident version of Air War College. *See* AFIADL Catalog, pp. 35-37, App. 230-232.

18 These correspondence course include: RC Basic Noncommissioned Officer Course (Phase II of III), DA Pam 351-20 ¶ 2-244, App. 349, Advanced Noncommissioned Officer Course (Phase II of III), DA Pam 351-20 ¶ 2-243, App. 349, Warrant Officer Advanced Course (prerequisite), DA Pam 351-20 ¶ 4-99, App. 358, RC AMEDD Officer Advanced Course (Phase I of II), DA Pam 351-20 ¶ 4-13, App. 350-51, RC Infantry Officer Advanced Course (Phase I of II), DA Pam 351-20 ¶ 2-125, App. 346, RC Ordnance Officer Advanced Course (Phase I of II), DA Pam 351-20 ¶ 2-194, App. 347, and Army War College (Phases I and III of IV), DA Pam 351-20 ¶ 4-96, App. 357-58.

participating in required in-resident training programs. John Doe 1 Decl. ¶ 7, App. 150. The Air and Army Guard Plaintiffs' completion of these courses also necessitates denial of the government's summary judgment motion.[19]

**3. The Secretaries prescribe correspondence courses to satisfy Mission Essential Training requirements.**

Also demonstrating the fallacy of the government's contention that correspondence courses ostensibly are voluntary are the regulations establishing that the Secretary of the Army has required National Guard members to complete such courses to achieve proficiency in the METL for the Guard unit to which each member belongs. A METL is a list of collective tasks "in which an organization has to be proficient to accomplish an appropriate portion of its wartime operational mission." Field Manual 7-0, ¶ 3-1, App. 376. The Secretary of the Army has characterized training that is "necessary to achieve and sustain METL task proficiency" as a "training requirement." Field Manual 7-0, ¶ 4-5, App. 378; *see also* Clark Decl. ¶ 5, App. 2 ("In order to achieve competency in the tasks specified on the METL, each soldier must complete individual training and unit training.").

The Secretary of the Army has delegated its authority to require or direct members of the National Guard to perform training or instruction based on each unit's METL to Guard commanders. Field Manual 7-0, ¶ 2-2, App. 375 ("Commanders are responsible for the training and performance of their soldiers and units."), ¶ 3-30, App. 377 ("The METL provides the foundation for the organization's training plans"). Commanders must ensure that collective and individual training focuses on the unit METL. Field Manual 7-0, ¶ 1-4, App. 367; *see also* John Doe 1 Decl. ¶ 3, App. 149. To satisfy achieve and sustain METL proficiency, Army regulations require commanders to develop training plans that "result in proficient

---

19 For example, Plaintiff John Doe 1 was required to complete a mandatory prerequisite correspondence phase of the Warrant Officer Advanced Course before he could attend the resident portion of the course, which all Army and Army National Guard warrant officers are required to complete between three and nine years of warrant officer service. John Doe 1 Decl. ¶ 10, App. 150; *see also* NGR 351-1, *Army National Guard Training*, ¶ 3-6, Apr. 15, 1987, App. 410.

individuals, leaders, and units." Field Manual 7-0 ¶ 2-2, App. 375. Commanders prioritize and refine their training plans in Yearly Training Guidance ("YTG") memoranda that specify collective, individual and institutional training that members are required to perform in the following year. Field Manual 7-0 ¶ 4-44, App. 380; *see also* John Doe 1 Decl. ¶ 4, App. 149.

YTG memoranda, in turn, specify that Guard members must complete correspondence courses for duty qualification and leadership development. *See e.g.*, Mississippi Army National Guard, *Yearly Training Guidance for Training Year 2003 and Short-Range Planning Calendar for Training Year 2003*, Jan. 25, 2002, at 4, ¶ 9.d, App. 389. In fact, YTG documents identify duty qualification and leadership development courses as *higher in priority* than unit and "collective training." *See, e.g.,* North Carolina *Yearly Training Guidance for Training Year 1998,* Nov. 1, 1996, at 1, ¶ 5.a. App. 430 ("[Duty MOS qualification] training *must and will take priority over all other types of training*." (emphasis added); Connecticut National Guard, Circular 350-01-01, *Training Year 2002 & Training Year 2003 Command Training Guidance and Five Year Training Calendar,* Oct. 1, 2000, at ¶ B-2, App. 330 ("All Connecticut units must strive to achieve maximum DMOS qualification. To achieve this objective, units must … [e]nroll non-MOSQ soldiers in an MOS producing course."); Mississippi ARNG YTG for 2003, at 4, ¶ 9.d(1), App. 390.

As Plaintiff Brigadier General Johnson similarly attests, commanders satisfy METL training requirements primarily by instructing Guard members to complete the relevant correspondence course(s). Johnson Decl. ¶ 31, App. 66. As Brigadier General Johnson further explains, correspondence instruction completed by Army Guard members serve to achieve METL proficiency by developing members' leadership capabilities and by qualifying them in their military specialties. *See* Johnson Decl. ¶ 20, App. 61; *see also* Clark Decl. ¶ 7, App. 2-3 ("Task specific education is taught in qualification and upgrade courses designed specifically for the Military Occupational Specialty ("MOS") relevant to each member's position. Members complete these courses so that the unit can accomplish the tasks set out in the METL."); John Doe 1 Decl. ¶ 12, App. 151. The fact that correspondence courses also serve to satisfy METL requirements, which

constitute required training, reconfirms that the government's summary judgment motion should be denied.

**B. Correspondence Courses Completed By Plaintiffs Meet the Government's "Criminal or Administrative Sanction" Standard for What Constitutes "Required" Training.**

The government's own formulation of what constitutes "required" military training underscores that it is not entitled to summary judgment. According to the government, the only forms of "required training" are those for which criminal or administrative sanctions may be imposed if the training is not successfully completed. As Command Sergeant Major ("CSM") (Ret) Thomas McNamara perhaps most clearly expresses this formulation (*see* Def. App. at 415-436), correspondence courses are ostensibly not required because no Guard member "can be criminally or administratively sanctioned for not enrolling or successfully completing these courses." Def. App. at 420, ¶ 9. The government's overly narrow formulation confuses two distinct concepts: (1) the making of a rule, which is what is denoted by both the term "require" utilized by the Federal Circuit in its *Clark* decision and the term "prescribe" utilized in 37 U.S.C § 206; and (2) the consequences of failing to comply with a rule, the sanctions alluded to by the government.[20] As the regulations and other evidence discussed above also demonstrate, correspondence courses constitute a required form of individual training, wholly apart from the sanctions may be imposed upon Guard members for failing to complete them.

Nonetheless, even under the government's unduly restrictive formulation of what constitutes "required training," there is a material fact dispute necessitating denial of the government's summary judgment

---

[20] The term "prescribe," which means "[t]o lay down authoritatively as a guide, direction, or rule of action; to impose as a peremptory order; to dictate; appoint; direct," is synonymous with the term "require." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1792 (1993 unabridged). Black's Law Dictionary confirms that "prescribe" means to "To lay down authoritatively as a guide, direction, or rule; to impose as a peremptory order; to dictate; to point, to direct; to give as a guide, direction, or rule of action; to give law. To direct; define; mark out." The DC Circuit similarly has concluded that the "verb 'prescribe' - mean[s] to 'lay down . . . [a] rule." *Alabama Power Co. v. FERC*, 160 F.3d 7, 12 (D.C. Cir. 1998).

motion. As demonstrated below, Plaintiffs have received orders to complete correspondence courses through regulations and otherwise, and would have been subject to criminal sanctions if they had not complied with these orders. As also demonstrated below, Plaintiffs also have been subject to "administrative sanctions" for failing to complete correspondence courses that by regulation are prerequisites to promotions, particular positions and/or qualification in military specialties. These administrative sanctions include involuntary separation, demotion, restriction of promotable status, and denial of or removal from position. *See* Johnson Decl. ¶ 26, App. 63-64; Jane Doe 2 Decl. ¶ 28, App. 10-11; Jane Doe 3 Decl. ¶ 4, App. 138 ("Guard members who fail to complete educational requirements and advance with their peers are not qualified to perform the functions required of them. As a result, they risk separation from the Guard."); John Doe 2 Decl. ¶ 11, App. 163 ("The [Federal Recognition] Board also notified me that if I did not complete the [Officer Advanced] course within the designated period my branch recognition would be withdrawn and I could be separated from the Guard.").

#### 1. Plaintiffs have been ordered to take correspondence courses and were subject to criminal sanctions if they had failed to complete the courses.

National Guard members undeniably may be subject to criminal sanctions for failure to complete required correspondence courses. As Plaintiff Brigadier General Johnson explains, there is immense pressure all the way down the chain of command for Guard members to take correspondence courses to satisfy promotion and position qualification prerequisites. *See* Johnson Decl. ¶ 23, App. 62; see also Jane Doe 2 Decl. ¶¶ 19-21, App. 112-13. As a consequence, Plaintiff Brigadier General Johnson on more than one occasion in his career instructed members to complete training requirements through correspondence courses. *Id*. at ¶ 22, App. 62. Consistent with Brigadier General Johnson's experience, other officer Plaintiffs have given orders to members under their command to complete correspondence courses (*see e.g.*, Jane Doe 2 Decl. ¶ 19, App. 112-13), and Plaintiffs themselves have received orders to complete specific correspondence courses. *See, e.g.* John Doe 4 Decl. ¶ 20, App. 187 ("In addition to the Battalion Motor

Officer Course, my Battalion Executive Officer instructed me to take the Combat Logistics Supply and Support correspondence course and the Hazardous Materials Handling correspondence course in order to acquire skills necessary for the position of Battalion Logistics Officer.").

Plaintiffs unquestionably were obligated to comply with these orders, which were given under the authority of the service Secretaries. As stated above in Section I.A.1, the Secretaries have, among other things, authorized commanders to "order" members of the National Guard to complete "supplemental training," which includes correspondence courses within the Army Correspondence Course Program. NGR 350-1 ¶¶ 1-2, 4-5.e, App 398, 400.[21] Moreover, commanders have inherent authority to order the completion of correspondence courses based on the Secretaries' directives that commanders facilitate the specialty qualification and leader development of members in their units. *See* Field Manual 7-0, ¶¶ 1-14, 1-19, App. 368-69; FORSCOM/ARNG/USAR Regulation 350-2 ¶ 1-4.c, App. 387; Field Manual 22-100, *Army Leadership, Be, Know, Do*, Aug. 31, 1999, ¶¶ A-8 – A-10, App. 385 (commanders have inherent authority to issue orders to subordinates to accomplish assigned missions); AFI 36-2618 ¶¶ 3.1.1-3.1.3, 4.1.1-4.1.3, App. 258-59; AFI 51-604 ¶ 4.2.12, App. 265; AFPD 36-22 ¶ 3.6, App. 268.

Air Force regulations further provide that Air National Guard noncommissioned officers must, as "mandatory requirements," "attain and maintain a skill level commensurate with their rank," "maintain a high degree of proficiency in their awarded [career field specialty]," and "secure and promote professional military education (PME) for themselves and subordinates." AFI 36-2618 ¶¶ 4.1, 4.1.2 and 4.1.3, App. 259. AFI 36-2618 specifies that failure to comply with these requirements constitutes a violation of Article 92 of the Uniform Code of Military Justice, *id.* at 1, App. 257, which provides that failure to obey an order or regulation shall be punished by court martial. 10 U.S.C. § 892. Because military correspondence courses are necessary for Air Guard members to attain the leadership and task-based skills required to

---

21 Orders to complete correspondence courses can be issued orally and there is no requirement that orders be written to have legal effect. *See also* Johnson Decl. ¶ 24, App. 63.

perform their functions, failure to complete the training would constitute a failure to obey the mandatory provisions of AFI 36-2618. *See* Jane Doe 1 Decl. ¶¶ 3, 26, App. 83, 89.

The law is clear that Guard members may be criminally sanctioned if they disobey a regulation or a lawful order requiring the completion of a correspondence course. *See* Conn. Gen. Stat § 27-231 (2004) ("Failure to obey orders or regulations." Guard members are subject to such sanctions when they: "(1) Violate[ ] or fail[ ] to obey any lawful general order or regulation; (2) having knowledge of any other lawful order issued by a member of the state military forces which it is his duty to obey, fail[ ] to obey the order or (3) [are] derelict in the performance of [their] duties…"). *See also* Miss. Code Ann. § 33-13-483 (2004) (same); 51 Pa. Cons. Stat. § 6016 (2004) (same). The criminal sanctions to which Plaintiffs who were obligated by regulation or order to take correspondence courses demonstrate that Plaintiffs have completed "required" correspondence coursework that is "required" even under the government's overly restrictive formulation.

**2. Plaintiffs are subject to the administrative sanction of involuntary separation from service for failing to complete correspondence courses.**

Guard members undeniably also are subject to administrative sanctions for failure to take correspondence courses that the government itself acknowledges are required for promotion. Def. Br. at 27.[22] Contrary to the government's contention that Guard members make a purely "voluntary" choice to

---

[22] There is no merit to the government's contention that the regulations requiring the completion of military education courses as prerequisites for promotion apply to members of the National Guard of the United States and not to members of the "National Guard." Def. Br. at 29, n.24. Numerous regulations requiring individual training, including correspondence coursework, apply to the National Guard. See footnote 8, *supra*; *see also* NGR 600-200, *Enlisted Personnel Management*, ¶¶ 11-27.e, 11-28.a, Mar. 1, 1997, App. 416. As mandated by the dual enlistment system, moreover, the Federal Circuit unequivocally has ruled that Guard members, who are dually-enlisted in the National Guard of the United States, train in their state status when not in active federal service. *Clark v. United States*, 322 F.3d at 1366. Thus, it is irrelevant that some Army regulations requiring the completion of certain courses as prerequisites for promotion apply specifically to members of the "National Guard," while some others apply to members of the "National Guard of the United States."

seek promotion (*id.* at 32), Army Guard and Air Guard officers face an "up or out" policy, in which they will be involuntarily separated from service if they are not selected for promotion within a specified time period. *See, e.g.*, Johnson Decl. ¶ 27, App. 64; Jane Doe 2 Decl. ¶ 28, App. 115-16; John Doe 3 Decl. ¶ 11, App. 177-78. Guard officers will not be selected for promotion if they fail to complete the requisite professional military education courses for the next higher rank, including correspondence courses. Members subject to the "up or out" policy include Army Guard and Air Guard officers in the grades of Chief Warrant Officer 2, Chief Warrant Officer 3, Second Lieutenant, First Lieutenant, Captain, Major and Lieutenant Colonel.[23]

Enlisted members in the Air National Guard and the Army National Guard are exposed to a similar administrative sanction of involuntary separation for not completing correspondence courses that are necessary for promotion and skill qualification. Members in the enlisted ranks of National Guard "enlist" for a specified number of years, usually three or six. *See* ANGI 36-2002, *Enlistment And Reenlistment In The Air National Guard And As A Reserve Of The Air Force*, Mar. 1, 2004, Table 1.5, App. 272. Upon the expiration of a given term of enlistment, the member must apply for an extension (for up to four years) or for re-enlistment (for up to six years). *Id*. ¶¶ 4.1.1-2, App. 273. Unless the member's commander approves the re-enlistment request, the member will be separated from the National Guard. *Id*. ¶ 4.1, App. 273. Guard commanders, in turn, may separate such members by denying the extension or re-enlistment application if the member has failed to complete training necessary for promotion and skill qualification. NGR 600-200,

---

23 *See, e.g.,* AR 135-155, *Promotion of Commissioned Officers and Warrant Officers Other Than General Officers*, Oct. 24, 2001, ¶ 4-33, App. 295-96 (Warrant Officers, First Lieutenants, Captains, Majors and Lieutenant Colonels may be discharged for failure to be selected for promotion); ANGI 36-2504, *Federal Recognition Of Promotion In The Air National Guard (ANG) And As A Reserve Of The Air Force Below The Grade Of General Officer*, July 28, 2004, ¶ 2.5.3, App. 285 (First Lieutenants, Captains, Majors and Lieutenant Colonels may be discharged for failure to be selected for promotion); NGR 635-100, *Termination of Appointment and Withdrawal of Federal Recognition*, July 15, 1983, ¶ 5.a.10, App. 422 (First Lieutenant, Captain, Major may be discharged for failure to be selected for promotion), ¶ 5.a.20, App. 423 (Second Lieutenant may be discharged for failure to complete a branch officer basic course), ¶ 5.a.23, App. 423 (Lieutenant Colonel may be discharged for failure "to complete Command and General Staff College or equivalent course").

Mar. 1, 1997, ¶ 7-22.c(9), App. 414; ANGI 36-2002 ¶ 4.1, App. 273; *see also* Clark Decl. ¶ 27, App. 9-10; Johnson Decl. ¶ 28, App. 64-65.

Moreover, *both* enlisted and officer Guard members may be involuntarily separated under Selective or Qualitative Retention Board procedures for failing to complete correspondence courses that are prerequisites for promotion to the next higher grade. The Secretaries convene biennial selective retention boards in each state and territory to consider whether enlisted and officer members of the National Guard with over 20 years of service should be retained in the Guard. *See* NGR 635-102, *Officers and Warrant Officers Selective Retention*, July 1, 1988, ¶ 4, App. 425; AR 135-205, *Enlisted Personnel Management*, ¶ 4-4.b, Sep. 1, 1994, App. 299; ANGI 36-2606, *Selective Retention of Air National Guard Officer and Enlisted Personnel*, Feb 28, 1997, ¶ 2.1, App. 287; NGR (AF) 35-6, *Selective Retention of Air National Guard Officers and Enlisted Personnel*, ¶ 2-5e(3), Oct. 15, 1993, App. 296. As Brigadier General Johnson explains, Guard members who have not completed the professional military education course required for the next higher grade face a substantial likelihood of being involuntarily discharged under this program. *See* Johnson Decl., ¶ 30, App. 66 ("If the member does not complete his or education the next time the board meets [after the member has received one warning], the board recommends the member not be retained.").

This fact is further supported by regulations, which establish that Guard members under review must be current in military education to support being retained in the military. Instructions to board members who are tasked with making the retention decision provide that officers are "required to demonstrate" a current level of military education:

> Officers will be required to demonstrate continued military educational advancement and refresher training, as appropriate. Attendance at resident courses, satisfactory progress in appropriate level correspondence courses, or attendance at USAR schools is evidence of efforts to improve military educational status.

NGR 635-102 ¶ C-5.d, App. 426; *see* NGR (AF) 35-6 ¶ 2-5.e(3), App.396. If Guard members cannot "demonstrate continued military educational advancement," they may face being discharged from the Guard. *See* Johnson Decl. ¶ 29, App. 65; Freeburg Decl. ¶¶ 13-14, App. 44-45.

Indeed, testimony from the government's own witnesses confirms that failure to complete professional education courses may result in a Guard member's involuntarily discharge from military service. As Command Sergeant Major (Ret) Thomas McNamara acknowledges in his declaration, "[c]hoosing to avoid promotion" may place the enlisted soldier in jeopardy of losing rank, grade, or current position when "*considered by the State Enlisted*" *Quality Retention Board.* Def. Br. App. 436 ¶ 40 (emphasis added). This concession that National Guard members are subject to the administrative sanction of involuntary separation for failing to complete required correspondence courses underscores that the government's summary judgment motion cannot properly be granted even under the government's formulation of what constitutes "required training."

**3. Plaintiffs have faced the administrative sanction of demotion for failing to complete correspondence courses.**

Guard members also indisputably are subject to the administrative sanction of demotion in rank for failing to complete required correspondence courses. *See* Johnson Decl. ¶ 26, App. 64; Clark Decl. ¶20, App. 6. Indeed, the government itself relies on regulations permitting the imposition of this administrative sanction.

These regulations establish that certain military courses are required for promotion. *See* Def. Br. App. 423 ("NCOES [noncommissioned officer education system] is now linked as a prequalification for promotion as follows: the Primary Leadership Development Course (PLDC) for promotion to Sergeant; the Basic Noncommissioned Officer Course (BNCOC) for promotion Staff Sergeant; and the Advanced Noncommissioned Officer Course (ANCOC) for promotion to Sergeant First Class."). These regulations also establish that Guard noncommissioned officers may be promoted early on the condition that they

complete "the qualifying NCOES course." Def. Br. App. 423. The regulations further establish that, once a Guard member receives a conditional promotion, he or she is, like Mr. Clark, "required per regulation to complete" the applicable noncommissioned officer education system course (Def. Br. App. 432), and that, if a Guard member fails to complete the required course, he or she will be demoted. *See* NGR (AR) 600-200 ¶ 11-56.e, App. 419 ("Reduce soldiers, without board action or appeal … [w]ho fail to complete an NCOES course that is a condition of promotion….") The existence of this administrative sanction for failing to complete required correspondence courses also necessitates denial of the government's summary judgment motion.

#### 4. Plaintiffs have faced the administrative sanction of denial of or removal from positions of responsibility for failing to complete correspondence courses.

Loss or denial of positions of responsibility constitutes an additional administrative sanction to which National Guard members are subject for failing to complete required correspondence courses. *See* Johnson Decl. ¶ 26, App. 62-64. Certain positions in the Army National Guard and Air National Guard have course prerequisites that Guard members must satisfy, in addition to those that must be satisfied to obtain a particular rank, before a member can qualify for the position in question. For example, before an Army National Guard member can assume command of a brigade, group, battalion or battalion-level organization, the member must complete the appropriate Pre-Command Course related to the type of organization over which the member will command. DA Pam 350-58 at 17, App. 335. As discussed above, Phase I of this course is a correspondence course that is not available in any other form. *See* https://www.perscom.army.mil/OPmsc/PCC-Descriptions.htm. Guard members who are selected to command these types of organizations must complete this course or they will lose their position.

Guard members also may be assigned to a position and given a certain amount of time to complete the required course of instruction. For example, prior to assuming the position of "commander" in the Army Guard, company grade commanders must complete a correspondence course called the Commander's

Safety Course. *See Army Safety Program*, Sep. 2, 2003 WASHINGTON DC//DAMO-TRZ//1412242 AUG 02//SAB, App 323-25; *see also* Jane Doe 2 Decl. ¶ 22, App. 113. Guard members who are selected to command must complete this course or will lose their position.[24] The fact that National Guard members are subject to such administrative sanctions for failing to complete correspondence courses likewise necessitates denial of the government's motion.

## II. THE LAW OF THE CASE ESTABLISHED BY THE FEDERAL CIRCUIT'S DECISION NECESSITATES REJECTION OF ALL OF THE GOVERNMENT'S OTHER ARGUMENTS.

The government also is not entitled to summary judgment based on the various arguments it advances in an attempt to support its unfounded contention that 37 U.S.C § 206(a)(2) does not entitle National Guard members to compensation for required correspondence coursework. In reversing this Court's ruling that 37 U.S.C. § 206(d) bars National Guard members from being paid for compulsory correspondence courses under Section 206(a)(2), the Federal Circuit framed the sole remaining liability issue as turning upon which correspondence courses have been "required, if any" and "which correspondence courses" Mr. Clark "took to satisfy those requirements." *Clark*, 322 F.3d at 1368. The Federal Circuit's formulation of the only remaining liability issue to be resolved establishes as the law of the case that Section 206(a)(2) entitles National Guard members to payment for completing correspondence courses that have been required by the service Secretaries.

This law of the case must be followed in all subsequent proceedings in the same case at both the trial and appellate levels. *See, e.g., Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 815-16 (1988)

---

24 Another example of a position which requires the completion of specialized courses is Battalion Logistics Officer. The Army and Army National Guard have designated the position of Battalion Logistics Officer as one that requires training in handling hazardous materials. DODI 4500.9R, *Defense Transportation Regulation*, Chapter 204, ¶ D.1.a., App. 363, Nov. 2004 ("[a]ll personnel involved with the preparation and shipment of HAZMAT for surface transportation."). *See also* John Doe 4 Decl. ¶ 21, App. 187. Guard members can satisfy this training requirement by completing the Hazardous Materials Handling correspondence course. *See also* John Doe 4 Decl. ¶ 26, App. 188. Guard members who are selected to be Battalion Logistics Officers must take the Hazardous Materials Handling correspondence course or other sufficient course or will lose their position. John Doe 4 Decl. ¶ 26, App. 188.

("'[T]he doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'") (citations omitted); *Logan v. Original Honey Baked Ham Co.*, 44 Fed. Appx. 484, 485 (Fed. Cir. 2002) (coordinate court's ruling on jurisdiction was "law of the case" precluding the Federal Circuit's reconsideration); *see Browning v. Navarro*, 887 F.2d 553, 556 (5th Cir. 1989) (under the law of the case doctrine, "[l]ater courts may not consider matters which were 'decided by necessary implication as well as those decided explicitly.'") (citations omitted). As demonstrated further below, the Federal Circuit's decision, therefore, forecloses further debate on every argument advanced by the government in an effort to show the Section 206(a)(2) does not entitle Guard members to be paid for completing required correspondence courses.

**A. The Federal Circuit Soundly Rejected The Government's Contentions That Section 206 Does Not Authorize Payment for National Guard Members' Completion of Required Correspondence Courses.**

The government commits one of several manifest violations of the law of the case doctrine in devoting a large section of its brief to a prolix and inaccurate reexamination of the legislative history underpinning 37 U.S.C. § 206 and other statutes. The government engages in this impermissible exercise in an effort to support its previously-rejected contention that Section 206(a)(2) does not authorize compensation to National Guard members for completing required correspondence course work. The government predicated its prior motion to dismiss on this very same erroneous contention that "Subsection 206(a)(2) does not mandate compensation for work performed in connection with correspondence courses." Defendant's Motion to Dismiss at 6, filed Feb. 6, 2001. This issue now has been conclusively resolved in Plaintiffs' favor because, in reversing this Court's decision granting the government's motion to dismiss, the Federal Circuit unequivocally has ruled that Section 206 mandates compensation for such required correspondence coursework. *See Clark*, 322 F.3d at 1368.

Moreover, the government's erroneous analysis serves to underscore that, as the Federal Circuit already has ruled, there is no merit to the government's interpretation of Section 206(a)(2). In an effort to

support the contention (which is foreclosed by the Federal Circuit's decision) that Congress "only authorized pay for unit-based training" in 37 U.S.C. § 206 (Def. Br. at 19), the government purports to review the legislative history of various statutes governing the National Guard, commencing with the 1903 Dick Act, and continuing through the National Defense Act of 1916 ("1916 Defense Act") and subsequent enactments culminating with Section 206 itself. *See* Def. Br. 5–19. In the process, the government's conveniently disregards the legislative history establishing that Congress long has authorized compensation for required forms of training other than drill or unit training, and relies heavily on legislation that was never codified.

Notable among the government's numerous mischaracterizations of the legislative history are its representations about the Act of March 25, 1948 ("1948 Act"). According to the government, the "compensation authority" of the 1948 Act was limited to drill training, which the government equates to unit training, and this authority was reenacted in the 1949 Career Compensation Act "without any substantial change." Def. Br. 14. But section 5(a) of the 1948 Act expressly authorized the Secretary to prescribe additional, paid training for Guard members beyond drill and assembly. Section 5(a) provides that: "members of the National Guard of the United States may be given additional training or other duty, either with or without pay, as may be authorized, with their consent, by direction of the Secretary of the Army." Armed Forces Reserve Components, Pub. L. No. 80-460, 62 Stat. 87, 90 (1948). This language, authorizing additional training or duty beyond unit training, is a precursor to language now found in 32 U.S.C. § 502(f).[25]

The government's contention that the 1948 Act authorized compensation only for drill or unit training also disregards section 5(b) of the 1948 Act, which, in addition to "drills" and "regular periods of instruction," mandates compensation for the "performance of such other equivalent training, instruction, or

25 Section 5(a) was later codified in section 62 of Title 32, which ultimately became part of what is now 32 U.S.C. § 502. *See* 32 U.S.C. § 62 (1952); 70A Stat. at 610; 32 U.S.C. § 502.

duty or appropriate duties, as may be prescribed by the Secretary of the Army." 62 Stat. at 91, § 5(b). This language amended Section 109 of the 1916 Defense Act, which the government acknowledges became part of 37 U.S.C. § 206.[26] Def. Br. at 20.

The 1948 Act reconfirms the fallacy of the government's contention that Congress always has authorized compensation only for drill or unit training. Sections 5(a) and 5(b) of the 1948 Act, in fact, provided authorization to require and compensate National Guard members for performing duties in addition to drill and other regular periods of instruction. As discussed in greater detail in section IIB, *infra*, these complimentary authorizations now are reflected in both 32 U.S.C. § 502(f) (authority to prescribe training in addition to unit training) and 37 U.S.C. § 206 (obligation to pay for such additional prescribed training).

The government's reliance on the compensation provisions of the 1949 Career Compensation Act also provides no support for its position. As does 37 U.S.C. § 206, the 1949 Act authorized compensation for both drill training and for "other equivalent training, instruction or duty or appropriate duties." The Career Compensation Act of 1949, Pub. L. No. 81-351, ¶ 501(a), 63 Stat. 802, 825. Contrary to the government's characterization, moreover, the 1949 Act contained no provision prohibiting compensation for correspondence coursework.[27]

---

[26] The government erroneously relies on a number of multiple Comptroller General decisions from the 1920's that interpret Sections 109 and 110 of the 1916 Defense Act. These decisions, however, predate the 1948 Act amendments to the 1916 Defense Act authorizing compensation for training in addition to drill training, and are not valid authority for interpreting 37 U.S.C. § 206.

27 It is irrelevant that the 1949 Act defined the term "inactive duty training" not to include correspondence coursework. *See* Def. Br. at 14. The Federal Circuit already has ruled as the law of the case that the "inactive duty training" definition, which ultimately was incorporated into 37 U.S.C. § 101(22), does not preclude Guard members from being compensated for completing required correspondence coursework. In so ruling, the Federal Circuit agreed with this Court's determination that the definition "applies only to [entitlement to] physical disability payments because the term is found only in § 206(a)(3). *Clark v. United States*, 50 Fed. Cl. 727, 734 (2001), *rev'd on other grounds,* 322 F.3d 1358 (Fed. Cir. 2003). *See also Clark*, 322 F.3d at 1368-69. The legislative history of the "inactive-duty training" definition underscores the soundness of the conclusion reached by the Federal Circuit, as well as this Court, that the definition applies

The Armed Forces Reserve Act of 1952 ("AFRA") likewise provides no support for the government's contention that Congress did not intend Guard members to receive compensation for completing correspondence courses. *See* Def. Br. at 15 (citing the Armed Forces Reserve Act of July 9, 1952, ch. 608, § 101(d), 66 Stat. 481). The government admits that AFRA did not amend any of the provisions of the 1949 Career Compensation Act that ultimately were incorporated in 37 U.S.C. § 206. Def. Br. at 15. In fact, the AFRA definition of "inactive duty training" upon which the government relies was never even codified into law. *See* 37 U.S.C. § 231(i) (Supp. 4 v.2 1951); 37 U.S.C. § 231(i) (Supp. 5 v.2 1952); 37 U.S.C. §101(22) (1958); 37 U.S.C. § 101(22) (Supp. 4 1962); 37 U.S.C.A. § 101 (2001).

**B. The Federal Circuit Soundly Rejected The Government's Contention That The Secretary's Failure To Prescribe Compensation For Correspondence Courses Could Serve To Preclude National Guard Members' Right To Be Paid For Such Courses.**

The government again contravenes the law of the case doctrine in arguing at length about the supposed significance of the legally irrelevant fact that the Secretary has not prescribed payment to Army National Guard members for compulsory correspondence courses. The government's Motion is replete with citations to pay regulations, declarations from financial and budget officers and related documents proffered to show that the Secretary of the Army has not required the completion of correspondence courses as

---

only to Guard members' entitlement to disability benefits. The purpose of the Career Compensation Act in which the definition first appeared was principally "[t]o provide pay, allowances, and physical disability retirement for members of the Army, … the reserve components thereof, [and] the National Guard … ." 63 Stat. 802. The disability provisions for part-time service people originally were contained in Section 402(c) of the Act. The grant of benefits provided by Section 402(c) applied only to part-time members of "the uniformed services" and did not include the National Guard. 63 Stat. 817. The "inactive-duty training" definition contained in Section 101(i) of the Act filled in this gap by providing that, for the purpose of disability benefits, inactive-duty training by personnel "of the National Guard of the United States or of the Air National Guard of the United States, while in their status as members of the National Guard, or the Air National Guard" is considered inactive-duty training in the service of the United States. 63 Stat. 805. This gap-filling provision ultimately became part of the definition of "inactive-duty training" in 37 U.S.C. § 101(22), and the only operative provision of 37 U.S.C. § 206 in which this definition is employed is section § 206(a)(3), a provision limited solely to disability benefits.

"*compensable*" training. Def. Br. at 24; *see, e.g., id.* at 21, 22, 23, 26.[28] In reversing and remanding the case with instructions to determine which required, if any, correspondence courses had been completed by Mr. Clark, the Federal Circuit flatly rejected this very same argument, that "the Secretary did not prescribe payment for time spent taking the required correspondence courses and that, therefore, Mr. Clark should not be compensated."[29] *Clark*, 322 F.3d at 1368. The Federal Circuit unequivocally ruled that "Section 206(a)(2) requires payment for equivalent training that the Secretary prescribes. It does not require that the Secretary prescribe payment." *Id.*[30]

The government reasserts the same previously rejected and erroneous argument in contending that the Secretaries supposedly have authorized compensation only for "unit training." *See* Def. Br. at n.18 & 23-24.

---

28 Pay regulations cited in the Summary Judgment Motion include DOD Financial Management Regulation 7000.14, Military Compensation Background Papers, and NGR 37-104-3, Financial Administration. The declarations of Command Sergeant Major (Retired) Thomas McNamara, Howard Manwiller, Daniel J. Kohner and Colonel Ernest C. Audino all relate, in whole or in part, to the types of training for which the Secretary has prescribed payment. The government attaches two documents to the declaration of Mr. Manwiller, both of which relate to the types of training for which the Secretary has prescribed payment.

29 This Court previously had reached the same conclusion, ruling that "it is clear from the structure of sections (a) and (b) that a member *must* be paid (under (a)); if the Secretary *elects* to prescribe the performance of equivalent training, instruction, duty, or appropriate duties (under (a)(2))." *Clark v. United States*, 50 Fed. Cl. 727, 733 (2001), *rev'd on other grounds*, 322 F.3d 1358 (Fed. Cir. 2003).

30 The government also sought rehearing and rehearing *en banc* on the ground that "the absence either of implementing regulations or of appropriations providing for compensation bars a claim under Section 206." Gov't Petition at 14-15, filed on May 23, 2003. The Federal Circuit summarily denied the petition for rehearing and rehearing *en banc*. *Clark*, 322 F.3d at 1368; *Clark v. United States,* No. 02-5062, 2003 U.S. App. LEXIS 18638 (Fed. Cir. Aug. 15, 2003). Moreover, training funds indisputably are appropriated for the National Guard. *See, e.g.,* Department of Defense Appropriations Act, 2004, Pub. L. No. 108-87, 117 Stat. 1054, 1056 (2003) (authorizing appropriations for (1) National Guard Personnel, Army, "For pay, allowances, …, and related expenses for personnel of the Army National Guard while on duty under…or *while undergoing training, or while performing drills, or equivalent duty or other duty,….*"; and (2) National Guard Personnel, Air Force, "For pay, allowances, …, and related expenses for personnel of the Air Force National Guard on duty under…or while undergoing training, or *while performing drills or equivalent duty or other duty*,….") (emphasis added). *See also Doe v. United States*, 16 Cl. Ct. 412, 424 (1989) (rejecting contention that payment of judgment against government could be deferred because funds had not been appropriated to pay judgment).

This contention simply restates the argument that the Secretaries have not prescribed compensation for "individual" training, such as the completion of correspondence courses. The Federal Circuit's explicit ruling that Section 206(a)(2) provides an entitlement to payment for required correspondence courses forecloses any argument that rests upon the assertion that, when it is required or "prescribed," "individual correspondence courses" cannot, as a matter of law, constitute training of the type that must be compensated under Section 206(a)(2). *See Clark*, 322 F.3d at 1368-69.[31]

Section 206 mandates the compensation that must be paid for unit training required pursuant to 32 U.S.C. § 502(a), and for all other additional types of training or instruction that Guard members are required to perform pursuant to 32 U.S.C. § 502(f). Section 206(a)(1) requires the Secretaries to compensate Guard members "for each regular period of instruction, or period of appropriate duty, at which the member is engaged for at least two hours, including that performed on a Sunday or holiday." 37 U.S.C.§ 206(a)(1). By its own express terms, Section 206(a)(1) applies to unit training undertaken pursuant to 32 U.S.C. § 502(a) *and* all other types of required training or instruction performed in addition to unit training, including individual training or instruction undertaken pursuant 32 U.S.C. § 502(f) "at which" a Guard member "is engaged for at least two hours." *Id.* Section 206(a)(2), in turn, requires the Secretaries to compensate Guard members for all other individual training or instruction that they are required to perform pursuant to 32 U.S.C. § 502(f). Such individual training or instruction includes all tasks that Guard members are required to perform, in addition to unit training, which do not constitute a

[31] Regulations that the government itself cites demonstrate that the assertion that Guard members are never compensated for *individual training* is, in all events, false. *See, e.g.*, AR 351-1 ¶ 5-36, App. 321 (identifying fund citations for costs associated with attendance at professional military education courses) (cited at Def. Br. at 29); NGR 350-1, *Army National Guard Training*, Nov. 30, 1983 (identifying individual training prescribed by the Secretary of the Army, including but not limited to service school training (*id*. ¶ 4-2, App. 399), Army area schools (*id*. ¶ 4-3, App. 399), USAR schools (*id*. ¶ 4-5, App. 400), and training conferences (*id*. ¶ 4-11, App. 401)); NGR 351-1 ¶ 1-12, App. 408-9 (identifying funding for attendance at various in-resident and other courses); Department of Defense Directive 1035.1, *Telework Policy for Department of Defense*, Sept. 9, 2002, App. 359-61 (individual training duty performed at home is compensable).

"regular period of instruction, or period of appropriate duty," but which also satisfy individual instructional requirements.[32]

32 U.S.C. § 502(f) underscores the soundness of the Federal Circuit's decision that 37 U.S.C. § 206(a)(2) mandates payment for compulsory correspondence courses. When these statutes are read together, it is clear that the phrase "such other equivalent training or instruction" utilized in Section 206(a)(2) refers to training or instruction that satisfies the same requirements as other training prescribed *in addition to unit training* under 32 U.S.C. § 502(f), that does *not* involve, "a regular period of instruction" of "at least two hours'" duration as specified in Section 206(a)(1). Consistent with the Federal Circuit's decision, correspondence coursework that is required to ensure that Guard members attain required military competencies that also may be obtained through regular periods of instruction of at least two hours duration necessarily constitutes "equivalent training" or "instruction" within the meaning of Section 206(a)(2).

### C. The Federal Circuit's Decision Necessitates Rejection of the Government's Contention that 37 U.S.C. § 206(a)(2) Mandates Pay Only for Make Up Training.

The government also has contravened the law of the case doctrine in arguing (Def. Br. at 24-25) that the phrase "equivalent training, instruction, duty or appropriate duty" as used in Section 206(a)(2) supposedly refers only to make-up training undertaken pursuant to Section 206(e). Def. Br. at 24-25. Such make-up training is performed "instead of the member's regular period of instruction or regular period of appropriate duty during that fiscal year," and is limited to four make-up periods during the fiscal year. The Federal Circuit rejected this erroneous contention by necessary implication in remanding the case for a

[32] The trial court decision in *O'Hanlon v. United States*, 11 Cl. Ct. 192 (1986) (*see* Def. Br. at 25), provides no support for the government's contrary contention. *O'Hanlon* addressed the inapposite situation in which a reservist, and not a Guard member, sought compensation "for additional drills at USAR schools [that] [wa]s specifically prohibited." *Id.* at 199. That decision has utterly no bearing here where Guard Members are entitled by statute to receive pay for completing required correspondence courses.

determination of which required correspondence courses have been completed by Mr. Clark. *See Clark*, 322 F.3d at 1368. The Federal Circuit could not have remanded the case with this instruction about the showing required to establish liability if that court had interpreted the "equivalent training" language in Section 206(a)(2) to be limited to "make-up training." Instead, the Federal Circuit would have required Plaintiffs also to establish that they took the correspondence courses as make-up training and satisfied the other requirements of Section 206(e).

The government's interpretation also flouts the settled principles of statutory construction that the Federal Circuit applied in reaching its decision. Section 206(e) authorizes compensation only for "four periods" of "equivalent training, "instruction," or "duty" "performed" "instead of" regular periods of instruction. 37 U.S.C. § 206(e).[33] Section 206(a)(2) imposes no such limitations on the entitlement to payment. Section 206(a)(2) mandates pay, *without qualification*, for "the performance of such other equivalent training, instruction, duty, or appropriate duties, as the Secretary may prescribe … ." *Id*. § 206(a)(2). When full meaning is given to each of the terms in Section 206(a)(2), as bedrock principles of statutory construction applied by the Federal Circuit require,[34] the phrase "such other equivalent training,

---

[33] Section 206(e) provides:

> A member of the National Guard or of a reserve component of the uniformed services may not be paid under this section for more than four periods of equivalent training, instruction, duty, or appropriate duties performed during a fiscal year *instead of the member's regular period of instruction or regular period of appropriate duty during that fiscal year*.

37 U.S.C.§ 206(e) (emphasis added).

[34] *See Clark*, 322 F.3d at 1365; *see also TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001); *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (It is "'a cardinal principle of statutory construction'" that "'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant. '") (citations omitted); *see also* United States v. *Menasche*, 348 U.S. 528, 538-39 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute'….") (citations omitted).

instruction, duty, or appropriate duties" must be read as referring to training that is (1) similar to;[35] (2) additional to; and, (3) equal in value to other forms of required training.[36] As the Federal Circuit already has concluded, these statutory provisions mandate compensation for National Guard members' performance of required correspondence coursework.

The legislative history also provides no support for the government's attempt to read Section 206(a)(2) as being limited to make-up training. The government makes the *ipsi dixit* assertion that it was "well understood" at the time subsection (e) was added to Section 206 that "the equivalent training provisions of Section 206(a)(2) referred solely to training in lieu of regular periods of instruction or appropriate duty." Def. Br. at 17. Subsection (e) was not added to Section 206 until 1984,[37] while Subsection 206(a)(2) originated in Section 5(b) of the 1948 Act. *See, supra*, § II.A. The government's argument that the later-added Section 206(e) could serve to restrict Section 206(a)(2) disregards the settled rule that "a subsequent amendment to legislation by a later Congress is not a reliable indication of the intent of a prior Congress that enacted the original legislation." *Diefenderfer v. MSPB*, 194 F. 3d 1275, 1279 (Fed. Cir. 1999).

---

35 In its argument regarding what constitutes "equivalent training," the government asserts that Plaintiffs cannot show that correspondence courses are "similar in nature and quality" to "any unit training requirement." Def. Br. at 26 (citing NGR 350-1 ¶ 2-1(7)(b)). The government completely ignores the fact that correspondence courses are "similar in nature and quality" to various "individual training requirements," which also must be satisfied by National Guard members.

36 "Such" means "of this kind." AMERICAN HERITAGE COLLEGE DICTIONARY 1378 (4th Ed. 2002). "Other" means "additional; extra." *Id*. at 985. "Equivalent" essentially means of comparable value. NEW OXFORD AMERICAN DICTIONARY 575 (2001) (defining "equivalent," *adj.*, as "equal in value, amount, function, meaning, etc."); AMERICAN HERITAGE COLLEGE DICTIONARY at 474 (defining "equivalent," *adj.*, as "a. Equal, as in value, force, or meaning. b. Having similar or identical effects.").

37 Department of Defense Authorization Act, 1985, Public Law 98-525, §1402(a), 98 Stat. 2492, 2620-2621 (1984).

**D. The Federal Circuit Unequivocally Has Ruled That Guard Members Take Correspondence Coursework In Title 32 Duty Status.**

The law of the case doctrine also forecloses further proceedings on the government's arguments about the training status of Guard members when completing correspondence courses. In seeking to justify dismissal of Mr. Clark's complaint on appeal, the government argued that Guard members complete correspondence courses as members of the National Guard of the United Status, a federal reserve component. *See, e.g., Clark*, 322 F.3d at 1362. In its summary judgment motion, the government instead argues that Guard members complete correspondence courses while in civilian status (Def. Br. at 39), or while in a status the government refers to as "pure militia" (Def. Br. at 35), in which Guard members presumably are not subject to direction of the service Secretaries. Although the government's new positions contradict its prior position, the Federal Circuit's decision remains dispositive of the issue.

Rejecting the government's current arguments, the Federal Circuit unequivocally ruled that Mr. Clark took "correspondence courses in order to maintain his *status in the National Guard* or to advance in rank." *Clark*, 322 F.3d at 1368 (emphasis added). The Federal Circuit further ruled that "[i]t thus is clear that Mr. Clark is seeking compensation for correspondence courses taken while *in service to the Alabama National Guard* ...." *Id*. (emphasis added). In so ruling, the Federal Circuit relied, *inter alia*, on the United States Supreme Court's decision in *Perpich v. Department of Defense*, 496 U.S. 334 (1990), which construed the dual enlistment and the militia clauses to the Constitution on which that system was based. *Perpich* established that, except when called into active federal service, National Guard members train not as civilians or under the sole authority of the State Governor, but in their capacity as state militia, "'*according to the discipline prescribed by Congress*,'" which has been delegated to the service Secretaries. 322 F.3d at 1366 (quoting *Perpich*, 496 U.S. at 347) (emphasis added). The Federal Circuit also relied on the statutes comprising the dual enlistment system. These statutes prescribe that all of the Plaintiff Guard members train in their status as members of their respective state National Guard subject to the control vested in the federal government:

> When not on active duty, members of the Army National Guard of the United States shall be administered, armed, equipped, and trained in their status as members of the Army National Guard.

322 F.3d at 1368 (quoting 10 U.S.C § 10107).

Also refuting the government's current contentions, it is clear that National Guard members are performing "duty" when they complete required correspondence courses. Regulations dictate that only "duty" can entitle a member of the Guard to retirement points. For example, NGR (AR) 350-1*, Army National Guard Training*, requires documentation that individual was in a "duty status" before the Guard member can receive retirement points. *Id*. ¶ 2-1.c, App. 405. The service Secretaries, in turn, have prescribed that Guard members earn retirement points for performing the duty of completing correspondence courses. Pursuant to NGR 680-2*, Automated Retirement Points Accounting System*, Mar. 1, 1989, the Secretaries grant to Guard members one retirement point for each three correspondence course credit hours satisfactorily completed. *Id*. at 2-17, Item 6, Table 2-5, App. 429. Work on official correspondence courses prescribed by the Secretaries, therefore, plainly constitutes "duty" that is performed in "duty status."

As discussed above, Guard members also complete correspondence courses pursuant to orders of their commanders and the service Secretaries' directives. By definition, compliance with these orders and directives qualifies as military duty.

There is no merit to the government's contention that correspondence courses do not qualify as "duty" because a member can complete them at home wearing civilian clothing. As purported support, the government cites an Army regulation and an Alabama statute that prohibit the wearing of uniforms while in a civilian status. Def. Br. at 27 n.22. But neither the regulation nor the statute support the government's assertion that a Guard member cannot perform military duty while in civilian clothing. In fact, performance of duty at home while in civilian clothing is expressly authorized for telecommuting. The Secretary of Defense has permitted members of the armed forces, including the National Guard, to perform official

duties via "telework." *See* DoDD 1035.1, *Telework Policy for Department of Defense*, Sept. 9, 2002, App. 360. Telework is defined as "a[n] arrangement that a … member of the Armed Forces performs assigned official duties at an alternative worksite on either a regular and recurring, or on an ad hoc basis …." *Id.* ¶ 3.2, App. 360. Alternative worksites include a member's home. *Id.* ¶ 3.3, App. 360. Telework is limited to official duties, and is appropriate for the performance of "*web-based distance and continuous learning*, including educational requirements required by law or regulation," such as correspondence coursework. *Id.* ¶ 4.5, App. 361 (emphasis added)

**CONCLUSION**

For the foregoing reasons, the government's summary judgment motion should be denied.

Respectfully submitted,

/s Helen K. Michael

Robert H. Shulman
Helen K. Michael
Rachel A. Adams
Alan B. Sutton
HOWREY SIMON ARNOLD
& WHITE, L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 783-0800
Fax: (202) 383-6610

Charles J. Cooper
David Thompson
COOPER & KIRK, P.L.L.C.
1500 K Street, N.W., Ste. 200
Washington, DC 2005
Tel: (202) 220-9600
Fax: (202) 220-9601

Richard T. Dorman
CUNNINGHAM, BOUNDS, VANCE,
CROWDER, and BROWN, LLC
1601 Dauphin Street
Mobile, Alabama 36660
Tel: (334) 471-6191
Fax: (334) 479-1031

Dated: June 10, 2005

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment was served by electronic mail, this 10th day of June, 2005 upon the following:

Douglas K. Mickle
Department of Justice
Commercial Litigation Branch
Civil Division
Attn: Classification Unit
8th Floor, 1100 L St., N.W.
Washington, D.C. 20530

/s Alan B. Sutton
Alan B. Sutton