**PROTECTED INFORMATION**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM A. CLARK, JAMES P. DAVERN, ROBERT E. FREEBURG, WILLIE R. JOHNSON, ROBERT A. MUSTIN, JOHN DOES 1 through 4, and JANE DOES 1 through 3, individually, and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | CASE NO. 00-644C (Chief Judge Damich) |
| vs. | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DECLARATION OF ROBERT E. FREEBURG**

I, Robert E. Freeburg, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I joined the Hawaii Air National Guard in July 1991, and retired on March 1, 2004 as a Lieutenant Colonel. I served as the Wing Inspector General from January 28, 2001 until my retirement. Prior to joining the Hawaii Air National Guard I served with the Hawaii Army National Guard from April 1978 to June 1991 and was on active duty with the United States Marines from November 1968 to June 1974. My knowledge of the events described below comes from my recollection, as well as the contents of my personnel file.

2. During my military career, I completed several required correspondence courses including, but not limited to the Aviation Warrant Officer Advance Course and Air Command and Staff College. These courses were required by regulation for promotion and retention. In addition, the correspondence coursework I completed taught me the technical and leadership skills necessary to succeed at the functions I have held within the Army National Guard and Air

PROTECTED
INFORMATION

National Guard, and to excel as a commissioned officer. However, I was not compensated for completing any instruction through correspondence courses.

3. In January 1969, I was appointed as a Second Lieutenant in the Marines upon completion of Officer Candidate School. I attended Air Force flight school, and served as a Marine aviator for five and a half years, flying A-4s and OV-10s. I was honorably discharged from the Marines in June of 1974, having attained the rank of Captain.

4. Soon afterward, I attempted to join the Hawaii Air National Guard, but there were no pilot positions available. I approached the Hawaii Army National Guard, but learned that there were no commissioned officer positions available in aviation. In April 1978, I chose to resign my commission and join the Hawaii Army National Guard as a Chief Warrant Officer 2 ("CW2").

5. In order to be promoted to Chief Warrant Officer 3 ("CW3"), I had to complete the Aviation Warrant Officer Advance Course. NGR 600-101, *Warrant Officers—Federal Recognition and Personnel Actions*, Table 7-2, June 6, 1986, App. 412. I enrolled in the course by correspondence in September of 1982, and completed the course on April 5, 1984. I was promoted to CW3 in June of 1985. A true and correct copy of Declarant's Student History Query is attached hereto as Exhibit A.

6. That same month, a Captain's slot became available in the 29th Brigade, Aviation Branch of the Hawaii Army National Guard. I took that position and was recommissioned as a Captain on June 11, 1985.

7. A few years later, the Hawaii Air National Guard was recognized, and my aviation unit was relocated. I became an Aircraft Maintenance Officer in the 193rd Attack Helicopter Battalion, and was required to attend the Aircraft Maintenance and Test Pilot School in

residence. After I completed the course, I became the Headquarters and Maintenance Company Commander.

8. I wanted to return to fixed-wing aviation, so I interviewed with the Hawaii Air National Guard for a pilot position with the newly-forming 203rd Air Refueling Squadron. I was selected as a candidate, and applied for transfer to the Hawaii Air National Guard. I transferred in early 1991, and was appointed as an Aircraft Maintenance Officer.

9. My appointment as an Aircraft Maintenance Officer was contingent upon me entering required qualification training in my skill area within 18 months. My commanding officers informed me that I needed to complete Aircraft Maintenance and Munitions Officers School. I enrolled in the training in-residence and completed it on April 1, 1992.

10. In addition to completing required technical skills training, Air Force and Air Guard officers are "expected to complete the level of [professional military education or] PME appropriate to their rank, responsibility, and career progression." AFPD 36-23, *Military Education*, ¶ 3, Sep. 27, 1993, App. 270. PME courses provide instruction to commissioned officers in the leadership principles and tactics skills necessary for higher levels of command. For Air Force and Air National Guard officers, required PME courses include: Squadron Officer School, which is required for promotion to Major; Air Command and Staff College, which is required for promotion to Lieutenant Colonel; and Air War College, which is required for promotion to Colonel.

11. When my commanders reviewed my record for promotion to Major, they determined that my completion of Warrant Officer Advanced Course was sufficient to waive the requirement to complete Squadron Officer School. They forwarded my packet to the Promotion Board, and I was promoted to Major in June, 1992.

12. Air Guard members must complete skills-based and PME training requirements in order to be promoted. Failure to be promoted due to failure to complete required coursework has two major consequences. First, an officer who is not promoted is ineligible for the position and pay of the higher rank. Second, because commissioned officers may be involuntarily separated if they are twice non-selected for promotion, failure to complete a course that is required for promotion can result in separation from the Air National Guard. *See* ANGI 36-2504, *Federal Recognition Of Promotion In The Air National Guard (ANG) And As A Reserve Of The Air Force Below The Grade Of General Officer*, ¶ 2.5.3, Jul. 28, 2004, App. 285.

13. Air Guard officers who fail to complete military education requirements also face involuntarily separation from the National Guard by selective retention boards. When a Guard member has served for 20 years, he or she is reviewed by a selective retention board, which determines whether the member will be retained or separated from the Guard. If the member is retained, he or she is re-reviewed by a retention board either annually or bi-annually (depending upon policy by the state Adjutant General) until separation or retirement. One of the primary considerations of selective retention boards is whether the member has completed required "professional military education … (either in-residence or by correspondence)." NGR (AF) 35-6, *Selective Retention of Air National Guard Officers and Enlisted Personnel*, ¶ 2-5, Oct. 15, 1993, App. 396. Retention boards often separate guard members who fail to complete the PME course required for promotion to the next higher rank.

14. Sometime in early 1995, senior officers in my unit informed us that the Commander of the Hawaii Air National Guard, Brigadier General Rodrigues, had directed that all officers must enroll in the professional military education course required for advancement to the next higher rank. General Rodrigues stated that those officers who did not enroll in the

required courses risked being involuntarily separated by a selective retention board. At the time, I was a Major, O-4, and the next higher rank for me was Lieutenant Colonel, O-5. The course designed to prepare Air Guard majors to serve at the rank of Lieutenant Colonel is Air Command and Staff College. AFI 36-2301, *Professional Military Education*, Table 2, Jun. 27, 2002, App. 244. My commanders repeatedly emphasized that a failure to enroll in Air Command and Staff College would count against me by the next selective retention board.

15. I first enrolled in Air Command and Staff College by correspondence in 1995, but could not complete the course due to competing demands on my time and disenrolled. In 1996, I enrolled in the seminar version of the course, which also is a type of correspondence course. Each seminar consists of twenty students who met weekly for one year. Each week a different student would lead the lesson. The course is divided into four phases and begins with a discussion of the history of warfare and modern warfare. It then provides instruction in the leadership and tactical skills necessary to be a squadron commander. The purpose of the course is to prepare senior officers to function within their own commands as well as to work with other commands and other services to plan and execute joint operations. I completed Air Command and Staff College on July 30, 1997, and was not compensated for my participation in the course. A true and correct copy of Declarant's Service School Academic Evaluation Report is attached hereto as Exhibit B.

16. I was promoted to Lieutenant Colonel on June 12, 1999, and served at that rank until my retirement on March 1, 2004.

17. Throughout my military career I have completed a great deal of required individual training both by correspondence and in-residence. I was compensated for my participation in residence courses, but not for my participation in correspondence courses,

**PROTECTED INFORMATION**

although the training I received in each format was equally essential to my professional development and to my capacity to be a successful officer and leader in the National Guard. The correspondence courses I have completed, including the Aviation Warrant Officer Advance Course and the Air Command and Staff College, were also required by regulation for me to advance and remain in the National Guard. It is simply unjust for Guard members to be denied compensation for completing such required training simply because they have taken the courses by correspondence.

**PROTECTED INFORMATION**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 8, 2005.

Robert E. Freeburg

**EXHIBIT A**

STU181

# STUDENT HISTORY QUERY

23-NOV-2004 6:30

*** PERSONAL DATA--PRIVACY ACT OF 1974 (5 U.S.C. 552A) ***

**SSN:** 347368629
**CURRIC ID:** 00038
**LNAME:** FREEBURG
**EDITN:** 03
**FNAME:** ROBERT
**MI:** E
AIR COMMAND AND STAFF COLLEGE MULTIMEDIA SEMINAR PROGRAM

**TYPE:** C CORR PROG/MULTICOURSE
**CATEGORY:** C
**REASON:** N
**ENRL DATE:** 12-JUL-1996
**MOS EXTN:** 0
**RANK/GRADE:** 04
**TCF ID:** 988535246 5
**CONCL DATE:** 30-JUL-1997
**CONCL CODE:** CC
**MAJCOM:**
**DAFSC:**
**TAFCS:**
**ITAFS**
**SESSION:**
**AVERAGE:** 67
**RATING:**
**CONT HRS:**

**COURSE:** 00038B
**ENRL DATE:** 12-JUL-1996
**MOS EXTN:** 0
**EDITN:** 03
**CONCL DATE:** 25-MAR-1997
**CONCL CODE:** CC
AIR COMMAND AND STAFF COLLEGE MULTIMEDIA
**SCORE:** 66
**RATING:**
**VOL CNT:** 1
**SEM HRS:** 0

| | EDITN | CNT | DATE SENT | DATE RECEIVED | SCORE | P/F | | VOLS | CE | CRSE |
|---|---|---|---|---|---|---|---|---|---|---|
| CE 1: | 04 | 1 | 28-OCT-1996 | 25-MAR-1997 | 66 | P | HRS: | 0 | 180 | 180 |
| CE 2: | | 0 | | | 0 | | PTS: | 0 | 60 | 60 |

Page 2 of 6

[redacted]

Please read this privacy and security notice.
This Site Maintained by AFIADL/DOD
updated: 01/14/02
Ms. Alice F. Spano | (334) 416-5344 | DSN 596-5344 | alice.spano@maxwell.af.mil

**PROTECTED INFORMATION**

STU181

# STUDENT HISTORY QUERY

23-NOV-2004 6:29

*** PERSONAL DATA—PRIVACY ACT OF 1974 (5 U.S.C. 552A) ***

SSN: 347366629 LNAME: FREEBURG FNAME: ROBERT MI: E
CURRIC ID: 00038 EDITN: 03 AIR COMMAND AND STAFF COLLEGE MULTIMEDIA SEMINAR PROGRAM

TYPE: C CORR PROG/MULTICOURSE
CATEGORY: C RANK/GRADE: 04 MAJCOM: SESSION:
REASON: N TCF ID: 968535248 5 DAFSC: AVERAGE: 67
ENRL DATE: 12-JUL-1996 CONCL DATE: 30-JUL-1997 TAFCS: RATING:
MOS EXTN: 0 CONCL CODE: CC /TAFS CONT HRS:
COURSE: 00038A EDITN: 03 AIR COMMAND AND STAFF COLLEGE MULTIMEDIA
ENRL DATE: 12-JUL-1996 CONCL DATE: 28-OCT-1996 SCORE: 72 VOL CNT: 1
MOS EXTN: 0 CONCL CODE: CC RATING: SEM HRS: 0

| | EDITN | CNT | DATE SENT | DATE RECEIVED | SCORE | P/F | | VOLS | CE | CRSE |
|---|---|---|---|---|---|---|---|---|---|---|
| CE 1: | 04 | 1 | 12-JUL-1996 | 28-OCT-1996 | 72 | P | HRS: | 0 | 180 | 120 |
| CE 2: | | 0 | | | 0 | | PTS: | 0 | 60 | 40 |

Page 1 of 6

[redacted]

Please read this privacy and security notice.
This Site Maintained by AFIADL/DOD
*updated: 01/14/02*
Ms. Alice F. Spano | (334) 416-5344 | DSN 596-5344 | alice.spano@maxwell.af.mil

PROTECTED
INFORMATION

STU181

# STUDENT HISTORY QUERY

23-NOV-2004 6:30

*** PERSONAL DATA—PRIVACY ACT OF 1974 (5 U.S.C. 552A) ***

SSN: 347368629 LNAME: FREEBURG FNAME: ROBERT MI: E
CURRIC ID: 00038 EDITN: 03 AIR COMMAND AND STAFF COLLEGE MULTIMEDIA SEMINAR PROGRAM

TYPE: C CORR PROG/MULTICOURSE

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| CATEGORY: | C | RANK/GRADE: | 04 | MAJCOM: | | SESSION: | |
| REASON: | N | TCF ID: | 968535246 5 | DAFSC: | | AVERAGE: | 67 |
| ENRL DATE: | 12-JUL-1996 | CONCL DATE: | 30-JUL-1997 | TAFCS: | | RATING: | |
| MOS EXTN: | 0 | CONCL CODE: | CC | /TAFS | | CONT HRS: | |
| COURSE: | 00038C | EDITN: | 03 | AIR COMMAND AND STAFF COLLEGE MULTIMEDIA | | | |
| ENRL DATE: | 12-JUL-1996 | CONCL DATE: | 03-JUN-1997 | SCORE: | 60 | VOL CNT: | 1 |
| MOS EXTN: | 0 | CONCL CODE: | CC | RATING: | | SEM HRS: | 0 |

| | EDITN | CNT | DATE SENT | DATE RECEIVED | SCORE | P/F | | VOLS | CE | CRSE |
|---|---|---|---|---|---|---|---|---|---|---|
| CE 1: | 04 | 1 | 25-MAR-1997 | 03-JUN-1997 | 60 | P | HRS: | 0 | 180 | 180 |
| CE 2: | | 0 | | | 0 | | PTS: | 0 | 60 | 60 |

Page 3 of 6

[redacted]

Please read this privacy and security notice.
This Site Maintained by AFIADL/DOD
updated: 01/14/02
Ms. Alice F. Spano | (334) 416-5344 | DSN 596-5344 | alice.spano@maxwell.af.mil

**PROTECTED INFORMATION**

STU181

# STUDENT HISTORY QUERY

23-NOV-2004 6:30

*** PERSONAL DATA—PRIVACY ACT OF 1974 (5 U.S.C. 552A) ***

**SSN:** 347368629 **LNAME:** FREEBURG **FNAME:** ROBERT **MI:** E
**CURRIC ID:** 00038 **EDITN:** 03 AIR COMMAND AND STAFF COLLEGE MULTIMEDIA SEMINAR PROGRAM

**TYPE:** C CORR PROG/MULTICOURSE

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **CATEGORY:** | C | **RANK/GRADE:** | 04 | **MAJCOM:** | | **SESSION:** | |
| **REASON:** | N | **TCF ID:** | 988535246 5 | **DAFSC:** | | **AVERAGE:** | 67 |
| **ENRL DATE:** | 12-JUL-1996 | **CONCL DATE:** | 30-JUL-1997 | **TAFCS:** | | **RATING:** | |
| **MOS EXTN:** | 0 | **CONCL CODE:** | CC | **ITAFS** | | **CONT HRS:** | |
| **COURSE:** | 00038D | **EDITN:** | 03 | AIR COMMAND AND STAFF COLLEGE MULTIMEDIA | | | |
| **ENRL DATE:** | 12-JUL-1996 | **CONCL DATE:** | 30-JUL-1997 | **SCORE:** | 70 | **VOL CNT:** | 1 |
| **MOS EXTN:** | 0 | **CONCL CODE:** | CC | **RATING:** | | **SEM HRS:** | 0 |

| | EDITN | CNT | DATE SENT | DATE RECEIVED | SCORE | P/F | | VOLS | CE | CRSE |
|---|---|---|---|---|---|---|---|---|---|---|
| CE 1: | 04 | 1 | 03-JUN-1997 | 30-JUL-1997 | 70 | P | HRS: | 0 | 180 | 180 |
| CE 2: | | 0 | | | 0 | | PTS: | 0 | 60 | 60 |

Page 4 of 8

[redacted]

Please read this privacy and security notice.
This Site Maintained by AFIADL/DOD
*updated: 01/14/02*
Ms. Alice F. Spano | (334) 416-5344 | DSN 596-5344 | alice.spano@maxwell.af.mil

PROTECTED INFORMATION

EXHIBIT B

Scott 1213 15 Oct 84

## SERVICE SCHOOL ACADEMIC EVALUATION REPORT

For use of this form, see AR 623-1; the proponent agency is MILPERCEN

[illegible] TBP-065

DATE: 18 MAY 84 BS

| 1. LAST NAME—FIRST NAME—MIDDLE INITIAL | 2. SSN | 3. GRADE | 4. BRANCH | 5. SPECIALTY/MOSC | 6. COMPONENT |
|---|---|---|---|---|---|
| FREEBURG ROBERT E JR | [illegible] | CW2 | AV | | 00 |

| COURSE TITLE | 7. NAME OF SCHOOL |
|---|---|
| AVIATION WARRANT OFFICER ADVANCED COURSE | THE ARMY INSTITUTE FOR PROFESSIONAL DEVELOPMENT - AIPD |

9. TYPE OF REPORT: ☐ RESIDENT ☒ NON-RESIDENT

10. PERIOD OF REPORT (Year, Month, Day): From: Thru: ☒

11. DURATION OF COURSE (Year, Month, Day): From: 04 SEP 82 Thru: 18 MAY 84

12. EXPLANATION OF NON-RATED PERIODS

3320801

13. PERFORMANCE SUMMARY

*a. ☐ EXCEEDED COURSE STANDARDS (Limited to 20% of class enrollment)

*b. ☒ ACHIEVED COURSE STANDARDS

*c. ☐ MARGINALLY ACHIEVED COURSE STANDARDS

*d. ☐ FAILED TO ACHIEVE COURSE STANDARDS

*Rating must be supported by comments in item 16.

14. DEMONSTRATED ABILITIES

a. WRITTEN COMMUNICATION: ☒ NOT EVALUATED ☐ UNSAT ☐ SAT ☐ SUPERIOR

b. ORAL COMMUNICATION: ☒ NOT EVALUATED ☐ UNSAT ☐ SAT ☐ SUPERIOR

c. LEADERSHIP SKILLS: ☒ NOT EVALUATED ☐ UNSAT ☐ SAT ☐ SUPERIOR

d. CONTRIBUTED TO GROUP WORK: ☒ NOT EVALUATED ☐ UNSAT ☐ SAT ☐ SUPERIOR

e. EVALUATION OF STUDENTS RESEARCH ABILITY: ☒ NOT EVALUATED ☐ UNSAT ☐ SAT ☐ SUPERIOR

(SUPERIOR/UNSAT rating must be supported by comments in item 16)

15. HAS THE STUDENT DEMONSTRATED THE ACADEMIC POTENTIAL FOR SELECTION TO HIGHER LEVEL SCHOOLING/TRAINING?

☒ YES ☐ NO ☐ N/A (A "NO" response must be explained by comments in item 16)

16. COMMENTS (This item is intended to obtain a word picture of each student that will accurately and completely portray academic performance, intellectual qualities, and communication skills and abilities. The narrative should also discuss broader aspects of the student's potential leadership capabilities, moral and overall professional qualities. In particular, comments should be made if the student failed to respond to recommendations for improving academic or personal affairs.)

STUDENT HAS COMPLETED AND BEEN GIVEN A DIPLOMA, WHICH ATTESTS TO THE SERVICE MEMBER BEING A GRADUATE OF THE NONRESIDENT COURSE INDICATED ABOVE

ITEM 6: COMPONENT 00-ACTIVE DUTY OFFICER, 03-ACTIVE DUTY ENLISTED, 07-USAR OFFICER, 08-NGUS OFFICER, 09-USAR ENLISTED AND 10-NGUS ENLISTED.

ITEM 13: EVALUATED ON A PASS/FAIL BASIS.
ITEM 14: A, B, C, D, E: INFORMATION OMITTED BECAUSE OF INSUFFICIENT OPPORTUNITY FOR INDIVIDUAL OBSERVATION.

17. AUTHENTICATION

TYPED NAME, GRADE, BRANCH AND TITLE OF PREPARING OFFICER: MARGARET S. BARTON, CHIEF, STUDENT SERVICES DIVISION — SIGNATURE: [signature]

TYPED NAME, GRADE, BRANCH AND TITLE OF REVIEWING OFFICER: DENNIS R. [illegible], COL, AG, DIRECTOR — SIGNATURE: [signature]

18. MILITARY PERSONNEL OFFICER

FORWARDING ADDRESS (Rated Student):
2266 ANE NIU PL
HONOLULU HI 96821

b. DISTRIBUTION: ☒ STUDENT ☒ UNIT CDR (P/8) NCOES only) ☒ STUDENT'S OFFICIAL MILITARY RECORDS

DA Form 1059 (TRADOC), Apr 78 — [illegible] Class Number 3000 — Source of Supply: HQ TRADOC

**PROTECTED INFORMATION**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM A. CLARK, JAMES P. DAVERN, ROBERT E. FREEBURG, WILLIE R. JOHNSON, ROBERT A. MUSTIN, JOHN DOES 1 through 4, and JANE DOES 1 through 3, individually, and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | CASE NO. 00-644C (Chief Judge Damich) |
| vs. | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DECLARATION OF WILLIE R. JOHNSON**

I, Willie R. Johnson, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I joined the North Carolina Army National Guard on June 1, 1963, served for 38 years, and retired as a Brigadier General on September 16, 2001. I served as commander of the 60th Troop Command, North Carolina Army National Guard from in or about March 1998 until my retirement. Prior to that, I served as Deputy to the Adjutant General for the North Carolina National Guard from March 1996 to on or about March 1998. My knowledge of the events described below comes from my recollection, as well as the contents of my personnel file.

2. As commander of the 60th Troop Command, I was responsible for one of three brigades in ‘he North Carolina Army National Guard. My organization was comprised of approximately 3300 soldiers in 27 units, dispersed across North Carolina from the coast to the mountains. My overarching responsibility was to prepare all units under my command to go to war. As such, I was responsible for all aspects of troop readiness, including training, soldier

PROTECTED
INFORMATION

professional development, recruitment, employer and community relations, military justice, family support activities, the budget, and safety programs.

3. As Deputy to the Adjutant General for the North Carolina National Guard, I represented and stood in for The Adjutant General ("TAG") of the North Carolina National Guard, the highest National Guard position in the state, when required. While Deputy Adjutant General, I chaired several professional boards, including officer promotion boards. I also oversaw the safety, equal opportunity, and readiness programs for the North Carolina National Guard.

4. Prior to serving as Deputy TAG, I commanded the 30th Combat Service Support Group as a Colonel, Officer Grade 6 or "O-6." As a Group Commander, I had responsibility for leading five battalions, which in total was approximately 1650 soldiers, roughly half the size of a brigade. As with my Troop Command, my primary responsibility was to ensure my Group was ready to go to war if necessary. Accordingly, I was responsible for all aspects of troop readiness, which included the same responsibilities I had as a Brigade Commander, only at the Group level.

5. I also have served as a commander at the battalion, company and detachment levels. I commanded the 690th Combat Support Battalion during the first Gulf War in the early 1990's. A battalion is generally comprised of approximately three to five companies. A company is usually comprised of two detachments and has approximately 200 soldiers. I served as battalion commander when I was a Lieutenant Colonel, or O-5, company commander when I was a Captain, or O-3, and detachment commander when I was a First Lieutenant, or O-2. At each level of command, my overarching responsibility was essentially the same – to ensure our troops were prepared to be successful in combat.

**PROTECTED INFORMATION**

6. In addition to commander positions, I served as a staff officer at the Battalion, Group and Troop command levels. There are four general categories of staff positions in the Army: personnel, intelligence, training and logistics. I held each of these positions at various times in my career.

7. In times of peace, training is the first priority of the National Guard. Every Guard member performs a role in furtherance of the organization's mission. Whether serving in a support capacity, such as in a hospital, a chapel or an administrative office, or serving at the tip of the spear in engaging enemy combatants, each Guard member individually must know his or her duties and how those serve to enable the larger organization to realize its mission. This knowledge can only come from training that focuses on both individual capabilities developed through unit training and group implementation achieved through unit training. As described by Army and Army National Guard doctrine, "training is WHAT we do, not SOMETHING we do." FM 7-0, *Training the Force*, ¶ 1-51, App. 374.

8. One of the primary means used by Guard members to satisfy individual training requirements is the Army Correspondence Course Program ("ACCP"). During my 38 years in the Army National Guard, my involvement with Army correspondence courses was nearly continuous. At any given time, I was engaged in completing correspondence courses myself, counseling other members to complete individual training requirements through the ACCP, or sanctioning those who failed to satisfy individual training requirements.

9. I completed several correspondence courses throughout my career, including the Officer Advanced Course, Command and General Staff College, the Associate Logistics Executive Development Course and Army War College. Along with the Officer Basic Course, which I completed in-residence, the Officer Advanced Course, Command and General Staff

**PROTECTED INFORMATION**

College and Army War College comprise the Army's Officer Education System ("OES"), which focuses on the professional development of Army and Army National Guard officers. These courses provide commissioned officers with the skills necessary to perform their assigned duties and prepare them for service at the next higher level of responsibility. When I entered the Guard, I was instructed in no uncertain terms that completion of these courses was required of officers and that each course was a prerequisite for promotion. For instance, completion of an Officer Basic Course is required by regulation for promotion to Captain, O-3. I completed the in-resident version of Ordnance Officer Basic Course when I was a Second Lieutenant, O-1.

10. I completed the correspondence course version of the Ordnance Officer Advanced Course ("OAC"), which is required by regulation for promotion to Major, officer grade O-4, when I was a Captain. At the time I took the correspondence course version of OAC between 1973 and 1975, the course was divided into four phases and took two years to complete. Phases I and III were correspondence phases that had to be completed in the wintertime. Phases II and IV could be taken either as correspondence phases or as two two-week in-residence phases during the summer. I completed all four phases of the OAC by correspondence and I received no compensation for doing so. A true and correct copy of Declarant's Correspondence Course Completion Certificate is attached hereto as Exhibit A.

11. I completed the correspondence course version of Command and General Staff Officer Course ("CGSOC") in 1978. Completion of the first half of Command and General Staff Officer Course ("CGSOC") is required for promotion to Lieutenant Colonel, O-5. Completion of the second-half of the CGSOC is required by regulation for promotion to Colonel, O-6. The CGSOC provides Army and Army National Guard officers essential knowledge in resource planning, force management, leadership principles, and battlefield tactics and planning, among

other topics. The CGSOC was divided into six phases and took three years to complete. Phases I, III and V of the CGSOC were correspondence phases that had to be completed in the fall of each year, which for me was 1975-1977. Phases II, IV and VI could be taken either as two-week in-residence phases or as correspondence phases. I completed the six phases of the CGSOC by correspondence. The CGSOC correspondence course was structured such that students had to complete each phase before being allowed to proceed to the next phase. For Phases I, III and V, the other students and I were required to meet in uniform, one night a week for 4 months. In those meetings we discussed the school prepared lessons and completed homework, practical exercises, and preparation for exams. For Phases II, IV and VI, the other students and I were required to meet in uniform every Monday night for three years. The Monday night meetings were structured much the same way as our other nightly meetings, but with a different focus in subject matter. After successful completion of the six phases, the instructor assigned each student a 3,000-word research paper that had to be completed by the spring of 1978. I completed this writing requirement and received a diploma in the spring of 1978. In total, the CGSOC took three and a half years (from 1975 until late spring 1978) to complete. A true and correct copy of Declarant's Service School Academic Evaluation Report is attached hereto as Exhibit B. I received no compensation for any of the work that I performed completing the CGSOC.

12. I next completed the Associate Logistics Executive Development Course ("ALEDC") by correspondence in 1981. Only graduates of the CGSOC are allowed to take the ALEDC correspondence course. The ALEDC, which requires two years to complete, provides senior officers with critical knowledge in multifunctional and international logistics of the sort involved in complex operations such as Desert Storm. The course provides officers who were trained in combat branches, such as Infantry and Ordnance, with needed qualification training in

**PROTECTED INFORMATION**

other disciplines, including the quartermaster and transportation branches. Completing the ALEDC required two years of continuous effort on nights and weekends. A true and correct copy of Declarant's Memorandum for Award of Additional Skill Identifier is attached hereto as Exhibit C. I received no compensation for completing this required instruction.

13. The capstone of the commissioned officer training in the Army National Guard is Army War College ("AWC"). I completed the AWC by correspondence in May 1997. Completion of the AWC is required for promotion to Brigadier General, officer grade "O7," because this course provides instruction that is essential to senior officers in the Army and Army National Guard. The AWC is organized into three primary areas of study: Command, Leadership, and Management; National Policy, War, and Strategy; and Military Planning, Doctrine, and Operations. *See* DA Pam 351-20 ¶ 4-96, App. 357-58. This course addresses such topics as military leadership at high echelons, contemporary management theory and philosophy, problems of communication, incentives, assessment and evaluation, and adoption of new technology, to name just a few. *See* DA Pam 351-20 ¶ 4-96, App. 357-58.

14. The AWC takes approximately two and a half years to complete and is divided into ten very intense correspondence course phases and two in-residence phases (one each at the mid-point and at the end of the course). Unlike the OAC or the CGSOC, neither in-resident phase of AWC could be done by correspondence. For the correspondence phases of the AWC, I was required to review course material, conduct independent research and submit one research paper per month (with a postmark deadline) to the War College. Students who successfully performed coursework from January to May during my first year in AWC were allowed to attend the first two-week in-resident phase in July 1996. Successful completion of the correspondence phases was mandatory to remain enrolled in the course. After the mid-term two-week in-resident

phase of AWC, course materials began arriving in August 1996, and I continued to receive a course packet each month from then until May of 1997. After satisfactory completion of the second year of correspondence coursework, I was invited to attend the 1997 summer in-residence phase. After completing this second in-residence phase, I graduated from the AWC. A true and correct copy of Declarant's Record of Army Extension Courses Completed is attached hereto as Exhibit D.

15. To complete the correspondence phases of the AWC, I worked roughly 20 to 30 hours per week for approximately 70 weeks from January 1996 until May 1997. Because of the rigorous effort required to complete the AWC, 20 percent of my AWC class did not graduate. I was not compensated for the roughly 1,400 hours I spent completing the correspondence phases of AWC.

16. As a commander and senior officer, I also have counseled subordinate members within my chain of command on their obligation to satisfy individual training requirements through the ACCP. Training requirements ultimately originate with the Secretary of the Army who delegates responsibility to U.S. Army Forces Command ("FORSCOM") and Training and Doctrine Command ("TRADOC") for developing specific training requirements for members of the Army National Guard. FORSCOM is responsible for preparing the reserves and the National Guard to serve along side the regular Army in combatant commands to fight wars and defend the homeland. TRADOC is responsible for setting standards, establishing doctrine and institutional training programs to develop leaders and to educate members of the Army, including the National Guard, in job-related tasks. The National Guard Bureau communicates these training directives to state Guard organizations. State Guard organizations, in turn, communicate these

requirements in a variety of ways down through the chain of command and ultimately to individual Guard members.

17. Training requirements are communicated through a variety of means, including training guidance memoranda, commanders' meeting, periodic reviews and performance evaluations. As a Brigade and Support Group Commander, I helped to implement the training requirements issued by the TAG of the North Carolina National Guard in short-range planning documents called Yearly Training Guidance ("YTG") memoranda. YTG memoranda specify the types of training that are to be emphasized for that year. YTG memoranda are directed to the commanders at the Support Group level. Support Group commanders then implement the guidance within their commands.

18. YTG memoranda are based on each organization's Mission Essential Task List ("METL"). A METL contains the tasks in which an organization is required to become proficient. Individual and unit training performed to gain proficiency on METL tasks is required training. As a commander, I emphasized the importance of these training requirements to my subordinates. I counseled members of my command on the need to complete the individual training, identified in YTG memoranda, which included training to be carried out through military courses for military occupational specialty qualification and professional development courses.

19. The North Carolina National Guard Yearly Training Guidance for Training Year 2002 specifies that training for duty military occupational specialty ("MOS") qualification has "priority over any other type [of] training." App. 432 ¶ 6.a. To achieve duty MOS qualification, Guard members must complete Army MOS qualification courses, which in many cases are only

available to the member as correspondence courses. As a commander, I instructed my subordinates that it was their duty to complete these correspondence courses.

20. YTG memoranda also identify instruction in military professional development education as required training. App. 432-43 ¶¶ 7.a. – 7.c. Military professional development education is leadership training that is provided as part of the noncommissioned officer education system ("NCOES"), the warrant officer education system ("WOES") and the OES, which I was required to complete. Courses in the NCOES include the Primary Leadership Development Course, the Basic NCO Course, the Advanced NCO Course, and the Sergeants Major Academy. Courses in the WOES include the Warrant Officer Basic Course, the Warrant Officer Advanced Course, the Warrant Officer Staff Course and the Senior Warrant Officer Staff Course. Like the courses in the OES, courses in the NCOES and WOES constitute required training that must be completed for promotion. The goal of each education system is provide progressive levels of instruction (primary, basic, advanced and senior) to prepare Guard members for positions of increasing responsibility that is compatible with their career development and grade progression. As with MOS qualification and sustainment courses, the Army National Guard requires Guard members to complete these courses because, without the knowledge soldiers obtain from them, the National Guard could not effectively perform its mission. Correspondence instruction serves to achieve METL proficiency by developing members' leadership capabilities and by qualifying members in their military specialties.

21. Army National Guard leaders track compliance with these training requirements very closely. As a battalion staff officer responsible for training programs, I was responsible for tracking our readiness levels and for scheduling annual training and weekend training at armories and. To ensure that our members were prepared to perform their missions, I was responsible for

PROTECTED
INFORMATION

maintaining a spreadsheet that tracked the level of individual training of each of the 700-plus members of the battalion. I provided this data to the battalion leadership, which had to have an accurate account of the number of members who had not received individual training and were not educationally qualified to perform their assignments.

22. As a senior leader, I held junior commanders responsible for ensuring their members received the necessary individual training. At commanders' meetings, company commanders brief superior officers on the training status of members of their units. Junior commanders must report and explain any deficiencies in training readiness and must identify whether their non-qualified soldiers are enrolled in schools or are working to get in schools. During these meetings, I and other senior commanders instructed company commanders to push their non-qualified soldiers to get training, whether by in-residence or correspondence instruction. As a commander, I instructed my subordinates that it was their duty to complete Army correspondence courses that were necessary for promotion and duty qualification. Correspondence versions of required courses satisfy the same training requirements as and provide an equivalent level of instruction to in-resident instruction. The important consideration for senior leaders is that the training is performed and the soldier is qualified, not whether the member completes the training through an in-residence course or a correspondence course.

23. During my career in the National Guard, we could not deploy members overseas who were not MOS-qualified. Thus, training and duty qualification are serious readiness issues that commanders monitor very carefully. Recently, the deployment rule may have been relaxed somewhat because of manning shortages in the National Guard. Nevertheless, as a result of the readiness concern, there was a lot of pressure applied up and down the chain of command to have individuals trained and ready to go.

24. It is often difficult for National Guard members to obtain in-residence training at Army schools. Individual units are responsible for monitoring the Army Training and Resources System ("ATRRS") to ensure that the maximum number of members attends these courses in-residence. Because the need for the training exceeds the number of in-resident slots allotted to members of the National Guard, however, members are required to complete this training by correspondence. Correspondence instruction is equivalent to resident instruction provides When in-resident slots were not available, our solution was to instruct the Guard member to enroll in the equivalent correspondence course to satisfy the training requirement. As a commander, I instructed my subordinates during group meetings and individual performance reviews that it was their duty to complete required training through correspondence courses. Though I issued these instructions orally, there is no requirement that orders of a superior officer be written to have legal effect.

25. In drafting performance evaluation reports Guard soldiers, commanders and supervisors are required to include a note regarding members' educational status. For members who are not current in their military education, commanders and/or supervisors include negative comments in members' evaluation reports. These comments ensure that soldiers know that their leadership takes training requirements very seriously.

26. Despite the efforts of their commanders and supervisors, certain Guard members fail to complete required individual training through in-residence or correspondence courses. Commanders, however, are not without recourse. Several administrative actions may be taken against those who fail to complete required training. Because any given members will lack the necessary qualifications in such circumstances, a Guard member who fails to complete correspondence courses may become ineligible for promotion or for assignments to certain

**PROTECTED INFORMATION**

positions. These restrictions on a member's promotable status and duty status, in and of themselves, represent administrative sanctions. Enlisted members who receive conditional promotions but fail to complete the necessary training will be demoted. Finally, Guard members who fail to progress and meet promotion and duty qualifications can be involuntarily separated from the Guard.

27. When I entered the Guard or shortly thereafter I was provided a copy of a National Guard Pamphlet, entitled *How to Succeed in the Army National Guard By Really Trying*. *See* App. 391. This pamphlet explains that there are minimum time-in-grade and military education requirements for promotion. App. 392. It also explains that officers meet mandatory selection boards and that "[o]fficers must advance to the next higher grade within a set number of years or be discharged." App. 393. Under this "up or out" policy, if a commissioned officer is not promoted because the officer failed to complete the professional development course required for the promotion, the member would be discharged for failure to complete the course. Though I received this pamphlet at the beginning of my career, the "up or out" policy has remained in place. OES courses are still required for promotion and members can still be discharged for failing to complete promotion requirements. *See* AR 135-155, *Promotion of Commissioned Officers and Warrant Officers Other Than General Officers*, ¶¶ 2-8, 4-33 and Table 2-2, Jul. 13, 2004, App. 290-91, 293, 295-96.

28. Similarly, enlisted guard members are required to complete courses in the NCOES for promotion. *See* NGR 600-200 ¶ 11-28.a, App 416-17. Completion of courses required for qualification in a member's MOS is also a requirement for promotion. *See* NGR 600-200, ¶¶ 11-26 (Specialist, E-4), 11-27.e (Sergeant through Sergeant Major, E-5 – E-9) App. 415-16. Enlisted members who fail to complete these training requirements may be involuntarily

separated from the Army National Guard through the re-enlistment process. Enlisted members sign on to the Army National Guard for a set number of years. At the end of this term of enlistment, the member requests an extension or re-enlistment. The member must submit the request to his or her commander. The commander, who is responsible to ensure that all members in his or her unit are fully qualified to perform their duties, has the authority to approve or disapprove of the request. As a commander, I recall disapproving requests for reenlistment by members who did not seek duty qualification through correspondence courses or otherwise. Because of the pressure to ensure that all unit members are duty qualified, other commanders do the same. National Guard regulations support the decision to not allow the reenlistments of soldiers who fail to seek qualification and upgrade training. *See* NGR 600-200 ¶ 7-22.c(9), App. 414.

29. Commissioned officers, warrant officers and enlisted members also may face involuntary separation from Qualitative Retention Boards ("QRB") after 20 years of service if they are have not completed the professional development and duty qualification courses commensurate with their rank. Under this process, if Guard members cannot demonstrate continued military educational advancement they may face separation from the Guard. I am familiar with the qualitative retention process because I chaired enlisted retention boards on two occasions as an O-6 in the 1993-1996 time frame.

30. QRBs review on a biennial basis the records of each Guard member who has attained 20 or more years of service to determine whether the member is fit to be retained in the Guard. QRBs can reconsider those members it determines are borderline cases in the following year. The first requirement for retention is whether the member has completed the professional development course required for promotion to the next higher rank. If the member has

completed the course, the board looks at other factors for retention. If the member has not completed the professional development course required for the next higher rank, the board gives the member one chance to complete his or her education. Our practice was to send a letter warning the member of the need to complete the professional development course commensurate with their rank. If the member does not complete his or education the next time the board meets (usually the following year in such cases), the board recommends the member not be retained. The board's recommendation then goes to the TAG, who makes the final decision. In my experience the TAG always agreed with our recommendations. Boards that I chaired separated many Guard members for failing to complete the professional development courses commensurate with their rank.

31. Individual training through Army correspondence courses is essential to the proper functioning of the Army National Guard. Without this necessary training, Guard members would not be qualified in their military occupational specialties, could not properly perform their duties pursuant to their unit METL, and could not be deployed with their units to meet wartime requirements. The Army and the Army National Guard have come to rely upon the ACCP program as a primary method of meeting these individual training requirements. Guard members must work very hard to complete these requirements and there is no reason that they should not receive compensation for doing so.

PROTECTED
INFORMATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 7, 2005.

Willie R. Johnson

PROTECTED INFORMATION

EXHIBIT A

DEPARTMENT OF THE ARM.
U. S. ARMY ORDNANCE CENTER AND SCHOOL
ABERDEEN PROVING GROUND, MARYLAND 21005

ATSL-TER-O
Johnson, Willie R. 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

27 September 1974

SUBJECT: Completion of the USAR School Ordnance Branch Officer Advanced Course

THRU: Adjutant General of North Carolina
PO Box 26268
Raleigh, North Carolina 27611

TO: Captain Willie R. Johnson
1614 Boyette Drive
Goldsboro, North Carolina 27530

1. Effective 30 August 1974, you satisfactorily completed the USAR School Ordnance Branch Officer Advanced Course of the US Army Ordnance Center and School.

2. In accordance with current regulations, you are awarded a diploma which is inclosed. The office of record will make appropriate entry on your DA Form 66. A copy of this letter should be placed in your 201 file.

FOR THE COMMANDER:

Original signed

JACK C. STUCKEY
LTC, OrdC
Dir, Dept of Army Wide Tng Spt

1 Incl
as

Copies furnished:
HQDA (NGB-ZA)
Cdr, RCPAC
Student

PROTECTED INFORMATION

EXHIBIT B

# SERVICE SCHOOL ACADEMIC EVALUATION REPORT

For use of this form, see AR 623-1; the proponent agency is MILPERCEN.

DATE: 78 04 28

| 1. LAST NAME - FIRST NAME - MIDDLE INITIAL | 2. SSN | 3. GRADE | 4. BR | 5. SPECIALTY/MOSC |
|---|---|---|---|---|
| JOHNSON WILLIE R | 243 70 2763 | CPT | OD | |

| 6. COURSE TITLE | 7. NAME OF SCHOOL | 8. COMP |
|---|---|---|
| COMMAND AND GENERAL STAFF OFFICER COURSE (1-250-C3) [4] | US ARMY COMMAND AND GENERAL STAFF COLLEGE | NG |

9. TYPE OF REPORT: ☐ RESIDENT ☒ NONRESIDENT

10. PERIOD OF REPORT (Year, month, day) From: N/A Thru: N/A [X]

11. DURATION OF COURSE (Year, month, day) From: 75 02 07 Thru: 78 04 28

12. EXPLANATION OF NONRATED PERIODS: N/A

13. PERFORMANCE SUMMARY

*a. ☐ EXCEEDED COURSE STANDARDS (Limited to 20% of class enrollment)

b. ☒ ACHIEVED COURSE STANDARDS

*c. ☐ MARGINALLY ACHIEVED COURSE STANDARDS

*d. ☐ FAILED TO ACHIEVE COURSE STANDARDS

*Rating must be supported by comments in ITEM 16.

14. DEMONSTRATED ABILITIES

a. WRITTEN COMMUNICATION: ☐ NOT EVALUATED ☐ UNSAT ☒ SAT ☐ SUPERIOR

b. ORAL COMMUNICATION: ☒ NOT EVALUATED ☐ UNSAT ☐ SAT ☐ SUPERIOR

c. LEADERSHIP SKILLS: ☒ NOT EVALUATED ☐ UNSAT ☐ SAT ☐ SUPERIOR

d. CONTRIBUTION TO GROUP WORK: ☒ NOT EVALUATED ☐ UNSAT ☐ SAT ☐ SUPERIOR

e. EVALUATION OF STUDENT'S RESEARCH ABILITY: ☐ NOT EVALUATED ☐ UNSAT ☒ SAT ☐ SUPERIOR

(SUPERIOR/UNSAT rating must be supported by comments in ITEM 16)

15. HAS THE STUDENT DEMONSTRATED THE ACADEMIC POTENTIAL FOR SELECTION TO HIGHER LEVEL SCHOOLING/TRAINING?

☒ YES ☐ NO ☐ N/A (A "NO" response must be supported by comments in ITEM 16)

16. COMMENTS (This item is intended to obtain a word picture of each student that will accurately and completely portray academic performance, intellectual qualities, and communication skills and abilities. The narrative should also discuss broader aspects of the student's potential; leadership capabilities, moral and overall professional qualities. In particular, comments should be made if the student failed to respond to recommendations for improving academic or personal affairs)

STUDENT COMPLETED THE COMMAND AND GENERAL STAFF OFFICER COURSE, NONRESIDENT (1-250-C3). STUDENT WAS PRESENTED WITH A DIPLOMA WHICH ATTESTS TO HIS BEING A GRADUATE OF THE CGSC, NR COURSE.

ITEM 14: A & E: EVALUATED ON A PASS/FAIL BASIS.
B, C & D: INFORMATION OMITTED BECAUSE OF INSUFFICIENT OPPORTUNITY FOR INDIVIDUAL OBSERVATION.

17. AUTHENTICATION

| a. TYPED NAME, GRADE, BRANCH, AND TITLE OF PREPARING OFFICER | SIGNATURE |
|---|---|
| DAVID I. DRUMMOND, CPT, SC REGISTRAR | [signature] |
| **b. TYPED NAME, GRADE, BRANCH, AND TITLE OF REVIEWING OFFICER** | **SIGNATURE** |
| HERSCHEL E. CHAPMAN, COL, IN SECRETARY | [signature] |

a. FORWARDING ADDRESS (Rated student)

PO BOX 518
KENANSVILLE NC 28349

18. MILITARY PERSONNEL OFFICER

b. DISTRIBUTION: ☒ STUDENT ☐ UNIT CDR (P/B NCOES only) ☒ STUDENT'S OFFICIAL MILITARY RECORDS

DA FORM 1 NOV 77 1059 EDITION OF 1 JUL 73 IS OBSOLETE.

8-0478-003

PROTECTED INFORMATION

EXHIBIT C

401

STATE OF NORTH CAROLINA
DEPARTMENT OF CRIME CONTROL AND PUBLIC SAFETY
OFFICE OF THE ADJUTANT GENERAL
4105 REEDY CREEK ROAD
RALEIGH, NORTH CAROLINA 27607-6410

OTAGNC-AGPO

16 March 1995

MEMORANDUM FOR COL Willie R. Johnson 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 HHC 30th Spt Gp NCARNG Durham NC 27704-0280

SUBJECT: Award of Additional Skill Identifier

1. In accordance with AR 611-101 and completion of below listed special training, you have completed the requirements for award of the following Additional Skill Identifier (ASI):

Functional Area 90 (FA 90)
Special Training: Associate Logistics Executive Development Course

2. This letter will have the authority of an order. Appropriate entries will be made on your DA Form 2-1 at your unit of assignment.

BY ORDER OF THE SECRETARY:

OFFICE OF THE ADJUTANT GENERAL OFFICIAL N.C.

JOHN H. CREECH
MAJ, IN, NCARNG
Chief, Plans & Actions Branch

CF:
Unit of Assignment
OTAGNC-AGPO (Individual's File)

# DEPARTMENT OF THE ARMY

UNITED STATES ARMY WAR COLLEGE AND CARLISLE BARRACKS
CARLISLE, PENNSYLVANIA 17013-5218

**EXHIBIT D**

REPLY TO ATTENTION OF

ATWC-AAS-R 29 March 2004

MEMORANDUM FOR BG Willie R. Johnson, P.O. Box 934, Roseboro, NC 28342

SUBJECT: Record of Army Extension Courses Completed

1. BG Willie R. Johnson, 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, is a graduate of the United States Army War College, Distance Education Program, Class of 1997. Following is a list of courses, completion dates, credit hours, and retirement points accrued as of 21 July 1997.

| Course Number | Completion Date | Credit Hours | Retirement Points |
|---|---|---|---|
| 1 | 08/18/1995 | 27 | 9 |
| 2 | 10/24/1995 | 27 | 9 |
| 3 | 01/05/1996 | 27 | 9 |
| 4 | 03/20/1996 | 27 | 9 |
| 5 | 05/02/1996 | 27 | 9 |
| 6 | 09/04/1996 | 27 | 9 |
| 7 | 12/09/1996 | 27 | 9 |
| 8 | 02/20/1997 | 27 | 9 |
| 9 | 04/10/1997 | 27 | 9 |
| 10 | 05/22/1997 | 27 | 9 |
| Total | | 270 | 90 |

2. Please make sure that you provide your unit, if applicable, and personnel officer with a copy of this document for record

Anita Satterlee

ANITA G. SATTERLEE
Registrar
U.S. Army War College

**PROTECTED INFORMATION**

**PROTECTED INFORMATION**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM A. CLARK, JAMES P. DAVERN, ROBERT E. FREEBURG, WILLIE R. JOHNSON, ROBERT A. MUSTIN, JOHN DOES 1 through 4, and JANE DOES 1 through 3, individually and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | CASE NO. 00-644C (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DECLARATION OF ROBERT A. MUSTIN

I, Robert Mustin, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I joined the Alabama Army National Guard as a Private, Grade E-1, on January 6, 1975. I recently retired from the Guard as a Sergeant First Class, Grade E-7. Prior to my retirement I served for four years as a Ground Communications Supervisor with the 711th Signal Battalion. My knowledge of the events detailed below comes from my recollection, as well as from the contents of my personnel file.

2. As a ground communications supervisor for the 711th Signal Battalion, I had the responsibility to oversee unit members involved in the installation, operation and maintenance of point-to-point communications devices. In addition to my functions as a ground communications supervisor, I also had a leadership responsibility as a noncommissioned officer ("NCO"). Enlisted members of the Army and Army National Guard become NCOs once they reach the rank of Sergeant, enlisted grade E-5. Promotion to the NCO ranks demonstrates the placement of a high degree of trust by the Army National Guard in my judgment and my ability to function as

PROTECTED
INFORMATION

a leader. As an NCO, I am required to focus on accomplishment of my mission and the welfare of my soldiers and to remain tactically and technically proficient in my career specialty.

3. To perform my functions as an NCO and as a ground communications supervisor, I am required to complete individual and unit training. Individual training includes military professional development training and task-based instruction, including training relating to my MOS. Military professional development training focuses on the leadership and management skills necessary to function as an NCO. The core of professional development training is the Noncommissioned Officer Education System ("NCOES"). The NCOES consists of four courses: the Primary Leadership Development Course ("PLDC"); the Basic Noncommissioned Officer Course ("BNCOC"); the Advanced Noncommissioned Officer Course ("ANCOC"); and the Sergeants Major Course ("SMC"). Completion of each of these courses is required by regulation for promotion to a particular rank: the PLDC is required for promotion to Sergeant; E-5; the BNCOC is required for promotion to Staff Sergeant, E-6; the ANCOC is required for promotion to Sergeant First Class, E-7, and Master Sergeant, E-8; and, the SMC is required for promotion to Sergeant Major, E-9. NGR 600-200, *Enlisted Personnel Management*, ¶ 11-28.a, Mar. 1, 1997, App. 416. I completed the PLDC, BNCOC, and ANCOC in-residence, and was compensated for completing the coursework.

4. The second type of training is skills-based training, which is designed to give Guard members the technical skills to perform their functions. Skills-based training consists of military occupational specialty ("MOS") qualification training, sustainment training and position-related training. Members must be qualified in their primary or career MOS to be eligible for promotion to the ranks of E-4 through E-9. NGR 600-200, ¶¶ 11-26 (Specialist, E-4), 11-27.e (Sergeant through Sergeant Major, E-5 – E-9), App. 415. Skills-based training requirements are

PROTECTED
INFORMATION

determined by a member's military occupational specialty and position. If a Guard member does not complete the necessary skills-based training he or she will not be qualified for his or her job and will not have the skills to perform their duty. If a Guard member cannot perform his or her function, the member will not advance and risks being involuntarily separated from the Guard.

5. Between 1998 and 2000, I completed three correspondence courses: the Automated Logistical Specialist Course; the Mechanical Maintenance Senior NCO Course; and the Aviation Maintenance Management Course. True and correct copies of Declarant's Course Completion Certificates are attached hereto as Exhibit A. I took all these courses in order to perform my job functions at the level required by my commanders.

6. From 1988 to 2000, I served as a Maintenance NCO in the 226th Area Support Group. The mission of my Area Support Group was to provide logistics support for an area of operation, which typically consisted, at a minimum, of between 25,000 to 30,000 troops. During times of war, the area of operation can be up to four times that size. My unit was responsible for ensuring that the maintenance units within the area of operation had the supplies, equipment, and personnel they needed to perform their maintenance and repair functions. We monitored supply inventory and staffing between organizations, and if there was a shortage, we routed the necessary supplies and/or personnel to where they were needed.

7. In order to manage the movement of supplies, equipment and personnel for such large-scale maintenance operations, and to perform our mission pursuant to our Mission Essential Task List ("METL"), the 13 members of my unit needed to understand how maintenance operations functioned. A METL identifies what that organization must do to perform its mission. One of the items on our METL was "Direct logistical operations." Knowledge of the functions of maintenance operations was essential to directing logistical

operations, because the members of my unit had to understand how the maintenance units we supported performed their functions.

8. In order to gain this critical knowledge, I completed three correspondence courses: the Automated Logistical Specialist Course; the Mechanical Maintenance Senior NCO Course; and the Aviation Maintenance Management Course between 1998 and 2000. *See* Exhibit A hereto. These courses collectively taught me how maintenance units are managed, giving me the knowledge to understand what supplies and manpower are required for particular maintenance and repair operations.

9. The Automated Logistical Specialist Course also taught me how to use Army computing systems to perform logistics management. The Army has its own proprietary computer system, which the Army National Guard uses to initiate and track requisitions. If I had not learnedhow to use the automated system, I would not have been able to function as a logistics maintenance manager. The Mechanical Maintenance Senior NCO Course instructed me in how a maintenance unit functions within the army, how parts are procured, delivered and inventoried, and how repair operations are managed, another key area of knowledge for my MOS and position. The Aviation Maintenance Management Course was targeted specifically to the maintenance of aviation unit. Because aviation units have specialized parts and repair operations, I also had to understand how repair and maintenance functioned in the aviation environment in order to fulfill my military responsibilities. Further, I had to understand what resources would be needed for different maintenance shops, so that I could ensure that resources were efficiently allocated. If I had not taken these correspondence courses, I would not have had the necessary skills to enable my unit accomplish its mission of large-scale logistics management.

**PROTECTED INFORMATION**

10. Throughout my military career, I have taken several required courses, both in-residence and by correspondence. I was compensated for completing only the in-residence coursework, and not the correspondence courses. Correspondence coursework is essential to promotion, retention, and skill acquisition. If I had not completed the Automated Logistical Specialist Course, the Mechanical Maintenance Senior NCO Course and the Aviation Maintenance Management Course, all of which I took by correspondence, I would not have had the skills necessary to assist my unit in its critical logistics and maintenance management mission. Correspondence versions of required skill-based courses give National Guard soldiers the same training that the Army soldiers are compensated for completing in-resident training programs in-residence. Guard members must meet the same training standards as their regular Army counterparts, and therefore should receive the same compensation.

**PROTECTED INFORMATION**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 10, 2005.

Robert A. Mustin

EXHIBIT A

PCN: TBP-P21

PERSONAL IN NATURE
ARMY CORRESPONDENCE COURSE PROGRAM
STUDENT STATUS
DATE: 17 NOV 2004

PAGE: 4

SSN: 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
BRANCH:
RANK: SFC
STUD CAT: 10 ATRRS CAT: 4EG

MUSTIN ROBERT A
106 BRENTWOOD DR

DAPHNE AL 36526

COURSE TITLE

AUTOMATED LOGISTICAL SPECIALIST (MOS 92A40)
SCHOOL: 101
AIPD CODE: 101 M3098
ATRRS ENROLL:
QUOTA SOURCE:

AUTHORIZED ISSUE: CURRENT ISSUE:
TERMINATION DATE: 11 JUN 1998 TERMINATION CODE: 3
HISTORY TRANSFER DATE: 09 SEP 1998

| ENROLLMENT DATE | EYE DATE | YEARLY HRS REQ | CUM HRS | YTD HRS | TERM WARN | EXT CNT |
|---|---|---|---|---|---|---|
| 24 APR 1998 | | | 8 | | | |

| SUBCRS CD | E D | TEST VERSION | PH NR | DUE OUT | CR HR | ISSUE DATE | GRADE DATE | TEST GRADE | STAT CODE |
|---|---|---|---|---|---|---|---|---|---|
| QM2907 | A | | | | 5 | 24 APR 1998 | 11 JUN 1998 | 100 | C |
| MANAGE WAREHOUSE OPERATIONS | | | | | | | | | |
| QM2908 | A | | | | 3 | 24 APR 1998 | 04 JUN 1998 | 95 | C |
| MANAGE SUBSISTENCE SUPPLY SUPPORT | | | | | | | | | |

PROTECTED
INFORMATION

P E R S O N A L I N N A T U R E

PCN: TBP-P21 ARMY CORRESPONDENCE COURSE PROGRAM PAGE: 5

STUDENT STATUS

DATE: 17 NOV 2004

SSN: 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
BRANCH:
RANK: SFC
STUD CAT: 10 ATRRS CAT: 4EG

MUSTIN ROBERT A
106 BRENTWOOD DR

DAPHNE AL 36526

COURSE TITLE

MECHANICAL MAINTENANCE SENIOR NCO COURSE
SCHOOL: 091
AIPD CODE: 091 D1599
ATRRS ENROLL:
QUOTA SOURCE:

AUTHORIZED ISSUE: CURRENT ISSUE:
TERMINATION DATE: 20 DEC 1999 TERMINATION CODE: 3
HISTORY TRANSFER DATE: 19 MAR 2000

| ENROLLMENT DATE | EYE DATE | YEARLY HRS REQ | CUM HRS | YTD HRS | TERM WARN | EXT CNT |
|---|---|---|---|---|---|---|
| 18 NOV 1998 | | | 150 | | | |

| SUBCRS CD | E D | TEST VERSION | PH NR | DUE OUT | CR HR | ISSUE DATE | GRADE DATE | TEST GRADE | STAT CODE |
|---|---|---|---|---|---|---|---|---|---|
| OD0450 MAINTENANCE MANAGEMENT I | A | | | | 9 | 18 NOV 1998 | 12 FEB 1999 | 100 | C |
| OD0451 MAINTENANCE MANAGEMENT II | A | | | | 9 | 18 NOV 1998 | 09 FEB 1999 | 72 | C |
| OD0452 MAINTENANCE MANAGEMENT III | A | | | | 6 | 09 FEB 1999 | 24 MAR 1999 | 77 | C |
| OD0453 MAINTENANCE MANAGEMENT, IV | 7 | | | | 8 | 09 FEB 1999 | 29 APR 1999 | 95 | C |
| MM0499 ARMY CALIBRATION SYSTEM | 0 | | | | 3 | 22 OCT 1999 | 22 NOV 1999 | 92 | C |
| QM2275 SUPPLY MANAGEMENT RESPONSIBILITIES | 9 | | | | 7 | 09 FEB 1999 | 05 MAY 1999 | 88 | C |
| IS7034 ROLE OF THE NCO IN LEADERSHIP, PART I | C | | | | 7 | 12 FEB 1999 | 20 APR 1999 | 97 | C |
| IS7035 ROLE OF THE NCO IN LEADERSHIP, PART II | C | | | | 6 | 24 MAR 1999 | 29 APR 1999 | 100 | C |
| IS7036 ROLE OF THE NCO IN LEADERSHIP, PART III | D | | | | 6 | 08 JUN 1999 | 30 JUL 1999 | 92 | C |
| IS1705 SAFETY MANAGEMENT FOR THE SUPERVISOR | 7 | | | | 9 | 03 MAY 1999 | 08 JUN 1999 | 84 | C |
| AG0021 DA PUBLICATIONS MANAGEMENT | A | | | | 7 | 08 OCT 1999 | 17 NOV 1999 | 83 | C |
| QM2004 PREPARE A MATERIEL CONDITION STATUS REPORT | A | | | | 2 | 05 MAY 1999 | 08 JUN 1999 | 86 | C |

**PROTECTED INFORMATION**

PCN: TBP-P21

P E R S O N A L I N N A T U R E
ARMY CORRESPONDENCE COURSE PROGRAM
STUDENT STATUS
DATE: 17 NOV 2004

PAGE: 6

SSN: 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
BRANCH:
RANK: SFC
STUD CAT: 10 ATRRS CAT: 4EG

MUSTIN ROBERT A
106 BRENTWOOD DR

DAPHNE AL 36526

| SUBCRS CD | E D | TEST VERSION | PH NR | DUE OUT | CR HR | ISSUE DATE | GRADE DATE | TEST GRADE | STAT CODE |
|---|---|---|---|---|---|---|---|---|---|
| AV3052 | A | | | | 2 | 08 JUN 1999 | 28 JUL 1999 | 88 | C |
| PREVENTION OF SEXUAL HARASSMENT | | | | | | | | | |
| IS1401 | 2 | | | | 32 | 28 JUL 1999 | 17 AUG 1999 | 83 | C |
| EFFECTIVE ARMY WRITING | | | | | | | | | |
| OD1403 | 9 | | | | 5 | 30 JUL 1999 | 23 AUG 1999 | 80 | C |
| SHOP SAFETY | | | | | | | | | |
| IS7006 | A | | | | 4 | 17 AUG 1999 | 14 SEP 1999 | 90 | C |
| MILITARY OPERATIONS OTHER THAN WAR | | | | | | | | | |
| IT0661 | A | | | | 4 | 23 AUG 1999 | 29 SEP 1999 | 80 | C |
| R&S MANAGING,REQUEST,MONITOR AND COMMUNICATION | | | | | | | | | |
| IS8718 | A | | | | 5 | 14 SEP 1999 | 08 OCT 1999 | 86 | C |
| TRAINING/TRAINING MANAGEMENT PART 1 | | | | | | | | | |
| IS8719 | A | | | | 5 | 29 SEP 1999 | 22 OCT 1999 | 82 | C |
| TRAINING/TRAINING MANAGEMENT, PART II | | | | | | | | | |
| IS1803 | B | | | | 4 | 17 NOV 1999 | 20 DEC 1999 | 72 | C |
| BASIC PRINCIPLES OF MILITARY JUSTICE | | | | | | | | | |
| OD0473 | 8 | | | | 10 | 09 FEB 1999 | 03 MAY 1999 | 83 | C |
| RECOVERY OPERATIONS | | | | | | | | | |

**PROTECTED INFORMATION**

PCN: TBP-P21

P E R S O N A L I N N A T U R E
ARMY CORRESPONDENCE COURSE PROGRAM
STUDENT STATUS
DATE: 17 NOV 2004

PAGE: 7

SSN: 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
BRANCH:
RANK: SFC
STUD CAT: 10 ATRRS CAT: 4EG

MUSTIN ROBERT A
106 BRENTWOOD DR

DAPHNE AL 36526

COURSE TITLE

AVIATION MAINTENANCE MANAGEMENT COURSE
SCHOOL: 552
AIPD CODE: 552 D1100
ATRRS ENROLL:
QUOTA SOURCE:

AUTHORIZED ISSUE: CURRENT ISSUE:
TERMINATION DATE: 08 MAY 2000 TERMINATION CODE: 3
HISTORY TRANSFER DATE: 06 AUG 2000

| ENROLLMENT DATE | EYE DATE | YEARLY HRS REQ | CUM HRS | YTD HRS | TERM WARN | EXT CNT |
|---|---|---|---|---|---|---|
| 21 FEB 2000 | | | 28 | | | |

| SUBCRS CD | E D | TEST VERSION | PH NR | DUE OUT | CR HR | ISSUE DATE | GRADE DATE | TEST GRADE | STAT CODE |
|---|---|---|---|---|---|---|---|---|---|
| AL9001 AVIATION MAINTENANCE FILES | 6 | | | | 4 | 21 FEB 2000 | 21 MAR 2000 | 80 | C |
| AL9002 PRODUCTION CONTROL | A | | | | 6 | 21 FEB 2000 | 14 MAR 2000 | 96 | C |
| AL9003 UNIT MOVES | 7 | | | | 5 | 14 MAR 2000 | 10 APR 2000 | 100 | C |
| AL9006 MAINTENANCE OPERATIONS IN UNUSUAL ENVIRONMENTS | 7 | | | | 5 | 14 MAR 2000 | 10 APR 2000 | 97 | C |
| AL9007 DIRECT PREPARATION OF AIRCRAFT FOR WEIGHING | B | | | | 2 | 21 MAR 2000 | 18 APR 2000 | 96 | C |
| AV0181 AVIATION MAINTENANCE MANAGEMENT AND OPERATIONS | A | | | | 6 | 10 APR 2000 | 08 MAY 2000 | 90 | C |

**PROTECTED INFORMATION**

**PROTECTED INFORMATION**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM A. CLARK, JAMES P. DAVERN, ROBERT E. FREEBURG, WILLIE R. JOHNSON, ROBERT A. MUSTIN, JOHN DOES 1 through 4, and JANE DOES 1 through 3, individually and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | CASE NO. 00-644C (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DECLARATION OF**

I, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a in the Pennsylvania Air National Guard and currently serve as

My knowledge of the events described below comes from my recollection, as well as the contents of my personnel file.

PROTECTED
INFORMATION

Without the training that I have received through military correspondence courses, I would have been unable to perform the functions that my unit relies upon me to perform.

3. Additionally, I would have been subject to criminal sanctions had I not completed these courses. Air Force regulations provide that Air National Guard noncommissioned officers like myself must, as "mandatory requirements," "attain and maintain a skill level commensurate with their rank," "maintain a high degree of proficiency in their awarded [career field specialty]," and "secure and promote professional military education (PME) for themselves and subordinates." Air Force Instruction 36-2618, *The Enlisted Force Structure*, ¶¶ 4.1, 4.1.2 and 4.1.3, April 1, 1999, App. 257. Failure to comply with these requirements is a violation of Article 92 of the Uniform Code of Military Justice, *id.* at 1, which provides that failure to obey an order or regulation shall be punished by court martial. 10 U.S.C. § 892, Art. 92 (2004). Because the instruction I received through military correspondence courses was necessary for me to attain the skills required to perform the task-based and leadership functions of my job, failure to complete the training would have constituted a failure to obey the mandatory provisions of AFI 36-2618.

PROTECTED INFORMATION

6. Each member of the Air Guard has a military specialty or skill area that they are qualified to perform.

In order to hold certain positions within a specialty, a Guard member must have the necessary Air Force Specialty Code ("AFSC"), which can only be acquired by completing certain required courses.

7. The entry-level position in the specialty is

In order to hold this apprentice position, a guard member must earn the AFSC designation To be awarded AFSC guard members must complete a required Career Development Course ("CDC"), called the 3-level course, which focuses on the technical skills and knowledge necessary to be an apprentice The number "3" in AFSC correlates to completion of the 3-level course. *See* Exhibit A at ¶ 5.1.

8. This and other CDCs are correspondence courses offered by the Air Force Extension Course Institute, and are designed to train Air Guard members in specific tasks and on knowledge-based skills that are required for advancement within the specialty's Career Field Education and Training Plan. It is mandatory for Air Guard noncommissioned officers to

advance in and maintain a "high degree of proficiency in their specialty as outlined in their Career Field Education and Training Plan (CFETP)." AFI 36-2618 ¶ 4.1.2.

9. CDCs are offered only as correspondence courses. At the time that I took the 3-level course required for AFSC it was a CDC. I understand that the 3-level course is currently offered only as a residence course.

10. Each CDC, including the 3-level course that I completed, must be completed at a prescribed pace. In this case, I had to complete one volume of the 3-level course each month. If a Guard member does not complete a CDC at the prescribed pace, the member will be discharged from the Guard.

11. Completing the 3-level course gave me the knowledge and task-based skills that I needed to understand how functions. It also taught me the basics of When I was first appointed as an I did not have the required AFSC to perform my function because I had not taken the 3-level course. I was appointed to the position on the condition that I complete the 3-level course as soon as possible in order to acquire the necessary AFSC to perform my apprentice function.

12. Air Guard members have two chances to pass their 3-level course. If I had not completed and passed the 3-level course on my second try, then I would have had to either cross-train in another AFSC or be separated from the Air Guard because I would not have met the requirements to hold my position. *See* AFI 36-2201, Volume 3, *Air Force Training Program On The Job Training Administration*, Table 8.1, Line 11, Feb. 4, 2005, App. 237. If I chose to cross-train, then I would have to take the 3-level course in the new AFSC. If I did not complete and