FILE

DEPARTMENT OF THE AIR FORCE
Headquarters US Air Force
Washington DC 20310-2500

CHANGE 1
NATIONAL GUARD REGULATION (AF) 35-6
15 October 1993
Effective 1 January 1994

POSTED 6/11/93

Military Personnel

# SELECTIVE RETENTION OF AIR NATIONAL GUARD OFFICERS AND ENLISTED PERSONNEL

*This regulation describes the responsibilities and provides authority, guidance, and procedures for establishing and conducting the selective retention program for Air National Guard officers and airmen who are retirement eligible (Reserve and Active Duty) as defined by this regulation. Any supplements to this regulation will be sent to NGB/DPP for review and approval. The 1993 Selective Retention program must be completed using previous regulations and guidance.

SUMMARY OF CHANGES: Adds provisions to delay separation/discharge of members who are being processed for misconduct or when a physical disability action has been initiated. Updates office symbols. Permits letters of commendation to be attached to letters to the board. Limits attachments to the member's letter and the period of time covered. Clarifies that there is no appeal beyond the TAG. Adds provisions for conduct of the boards during mobilization. Clarifies ratings on the NGB Form 27. Amends the letter from TAG to the member advising of the boards to include instructions on submitting a letter to the board. Deletes requirement for CBPO to run DESIRE and forward to ST HQ. Requires ST HQ to provide listings to each CBPO and year end statistics to ANGRC. Exempts AGR members in sanctuary zone. Requires states to advise NGB/ANGRC of any litigation resulting from selective retention boards and to provide copies of court documents. Clarifies separation/discharge procedures. Prohibits a non-retention recommendation solely for the member's benefit.

## Chapter 1

## POLICY

**1-1. Policy:**

a. Membership in the ANG is a privilege and confers upon the individual the obligation to serve in the active military service upon mobilization or emergency, or at such other times as the national security may require. A selective retention program within the ANG is essential to avoid the loss of combat readiness resulting from a maturing force. Although other factors will be considered, retention of officers and airmen will be based primarily on the mission needs of the ANG and the USAF as established through the state and unit's overall personnel force management plan. Proper use of the selective retention program will preclude undesired aging of the force and overmanning in the officer and senior NCO grades. It also will ensure a quality force, maintain stable promotion opportunities for lower grade personnel, and maintain a viable combat ready force for mobilization. To allow for the satisfactory career development of all individuals, ANG officers and airmen who are retirement eligible will be periodically considered for selective retention as outlined in this regulation.

b. The state ANG selective retention review boards will be appointed by the TAG each calendar year to recommend for the retention or nonretention of officers and airmen in the ANG of the respective state IAW these policies and procedures. The dates by which actions are to be completed are established to ensure sufficient time for affected members to respond and must be conscientiously followed.

c. All separations as a result of this regulation will be identified as "other than for cause." Separation from the ANG, withdrawal of Federal recognition, and transfer to the Air Force Reserve for members not selected for retention will be effective no earlier than thirty calendar days following notification to the member and no later than 31 December of the year in which the board considered the member for retention, unless the member requests an earlier date and it is approved by the TAG or a designated representative. Any member who does not elect to transfer to ARPC or retire will be discharged as a Reserve of the Air Force. If a member initiates a request for reconsideration and it is not approved, separation/discharge will be effective no earlier than thirty days following notification to the member of the TAG's decision on the request for reconsideration.

d. A recommendation of non-retention solely for the personal financial gain of a military technician or AGR member, or by the request of the member, is prohibited.

e. This regulation does not apply to general officers and officers or airmen who are not

*Supersedes ANGR 35-06, 30 Sep 88
No. of Printed Pages: 19
OPR: NGB/DP
Approved by: Lt Gen Conaway
Edited by: Ms. N. Salch
Distribution: F

203 ARS/MA [illegible]

before the board is convened. Any letter submitted by an individual IAW paragraph 2-2f that contains more than three attachments, criticizes any individual, or reflects on the character, conduct, or motives of any other individual, will be removed with the concurrence of the board president and not furnished to the board. Any letter so removed will be returned to the originator with the board president's explanation of why it was not presented to the board.

b. The board will be furnished a listing of all members to be considered and the following documentation for each member:

(1) NGB Form 27.

(2) A records review RIP.

(3) Letter to the board submitted by the individual IAW paragraph 2-2f.

c. No performance evaluations will be provided to the board.

d. Unsolicited communications will not be considered by the board.

e. Documents prepared or submitted specifically for board use will be disposed of IAW AFR 12-50.

**2-5. Procedures for Conducting ANG Selective Retention Review Boards.** Boards will meet in May or June of each year at the specific time and place designated by the TAG and will proceed as follows:

a. The order appointing the board will be read by the recorder who will then administer the following oath or affirmation (an affirmation is the same as an oath except in an affirmation the words "So help you God" are omitted). The board members will respond "I do." "Do you (swear) (affirm) that you (identify each member by grade and name) will faithfully, without prejudice or partiality, and having in view both the special fitness of individuals and the efficiency of the (State) Air National Guard and the United States Air Force, perform duties imposed upon you, that you understand that no one may dictate, coerce, or attempt to influence your vote except as allowed by NGR (AF) 35-6, and that you will not divulge the proceedings or results of this board except to proper authority? So help you God."

b. The following oath or affirmation will be administered to the recorder by the president of the board: "Do you (swear) (affirm) that you (identify by grade and name) will faithfully, without prejudice or partiality, and having in view both the special fitness of individuals and the efficiency of the (State) Air National Guard and the United States Air Force, perform duties imposed upon you, that you understand that no one may dictate, coerce, or attempt to influence your vote except as allowed by NGR (AF) 35-6, and that you will not divulge the proceedings or results of this board except to proper authority? So help you God."

c. The State Executive Support Staff Officer, personnel officer, or other individual as designated by the TAG will present a personnel force structure briefing to the board. This briefing will present the personnel force status of the State and a comparison among its units along with an evaluation of what is needed to achieve mission effectiveness. As a minimum, this briefing should include the following items: overall State and unit manning with regard to total authorized and assigned strength, grade manning, excess/overgrades, age, retirement eligible personnel, and projected programs affecting UMD changes. The ratio of drill status, military technician, and full-time military duty personnel as it relates to the above topics should also be a part of the briefing.

d. The board will review all documents IAW paragraph 2-4b and determine what future benefits can be expected to accrue to the ANG and the USAF from the continued service of each member it considers. Continued retention must be based on the unit's force management plan and the member's potential for future contributions to the mission of the unit, the ANG, and the USAF.)

e. As a basis for their recommendations, board members will consider, but are not limited to, the following:

(1) Recommendations made on the NGB Form 27.

(2) Future potential based on the individual's record.

(3) Past record of interest and dedication to the ANG. The emphasis here should be on self-improvement efforts within the past five years; e.g., professional military education, recent training (either in-residence or by correspondence), and additional duties.

(4) Individual's availability for military activities in light of the demands of the member's civilian occupation and other responsibilities.

(5) The unit's force management plan which includes:

(a) Availability of a replacement for the member and the member's growth potential.

(b) The number of members in grade/age/service brackets in order to maintain a balanced force by grade/age/service. Careful consideration should be given to preclude the loss of a large group of individuals in any grade/age/service bracket over a short period of time.

(c) Other factors bearing on a plan for assuring a viable combat-ready military unit in future years. The board must be confident that an individual who is recommended for retention is a viable mobilization asset.

(6) An evaluation of demonstrated capabilities and future potential as a crew-member, if the individual is on flying status.

(7) Individual's status as it relates to excess/overgrade situations. Members who are excess or overgrade should be recommended for retention only in unique mission essential cases or when the situation will be resolved within one year. The plan to resolve the situation must accompany the recommendation to retain the member.

f. The recommendations of the board are advisory only. Nevertheless, the members of the

Headquarters
Department of the Army
Washington, DC 20310
30 November 1983

*National Guard Regulation 350-1

Training
**ARMY NATIONAL GUARD TRAINING**


**Summary.**
This revision adds or changes NGB policy guidance on deployment training, CAPSTONE, CAMMS, BTMS, equivalent training, split-unit training, REDTRAIN, JRX/JTX selection, OPFOR, and exchange programs.


**Interim changes.**
Interim changes to this regulation are not official unless authenticated by the Executive, NGB. Interim changes will be destroyed on their expiration dates unless sooner superseded or rescinded.

**Suggested improvements.**
Users of this regulation are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) to NGB-ARO-T, Washington, D.C. 20310.


| | Paragraph | Page |
|---|---|---|
| **Chapter 1** **TRAINING, GENERAL** | | |
| Purpose | 1-1 | 1-1 |
| Scope | 1-2 | 1-1 |
| Mission | 1-3 | 1-1 |
| Policy | 1-4 | 1-1 |
| Explanation of terms | 1-5 | 1-1 |
| Training missions and objectives | 1-6 | 1-2 |
| Training responsibilities | 1-7 | 1-3 |
| Organization and equipment for training | 1-8 | 1-3 |
| Evaluation of training | 1-9 | 1-3 |
| Satisfactory participation | 1-10 | 1-3.1 |
| Use of the ARNG in AT or IDT status to support State missions | 1-11 | 1-3.1 |
| Domestic action program | 1-12 | 1-4 |
| Ammunition management to support training | 1-13 | 1-4 |
| Common military training | 1-14 | 1-5 |
| Joint training exercise/joint readiness exercise selection process | 1-15 | 1-5 |
| Battalion training management system | 1-16 | 1-5 |
| The Army Individual Training Evaluation program | 1-17 | 1-5 |
| Selective Service training | 1-18 | 1-6 |
| Financial | 1-19 | 1-6 |
| **CHAPTER 2** **[illegible]CTIVE DUTY TRAINING** | | |
| [illegible]ive duty training assemblies | 2-1 | 2-1 |
| [illegible]tachment of individuals | 2-2 | 2-1 |
| [illegible]ining authorization | 2-3 | 2-2 |
| [illegible]it unit training assemblies | 2-4 | 2-2 |
| [illegible]tiple unit training assemblies | 2-5 | 2-2 |
| [illegible]endance | 2-6 | 2-2 |
| [illegible]valent training | 2-7 | 2-3 |
| [illegible]tructive attendance | 2-8 | 2-3 |
| [illegible]ning in non-pay duty status | 2-9 | 2-3 |
| [illegible]orm to be worn at assemblies | 2-10 | 2-4 |
| Training assemblies for individuals | 2-11 | 2-4 |
| Additional unit training assemblies for airborne proficiency training | 2-12 | 2-6 |
| **CHAPTER 3** **ANNUAL TRAINING** | | |
| Annual training plan | 3-1 | 3-1 |
| Training authority | 3-2 | 3-1 |
| Attendance | 3-3 | 3-1 |
| Year-round annual training | 3-4 | 3-2 |
| Constructive attendance | 3-5 | 3-3 |
| Medical matters | 3-6 | 3-3 |
| Active Army training support | 3-7 | 3-3 |
| Evaluation of training | 3-8 | 3-3 |
| Additional man-day support for annual training | 3-9 | 3-3 |
| Overseas deployment training | 3-10 | 3-3 |
| CONUS unit exchange program | 3-11 | 3-4 |
| OCONUS small unit exchange program | 3-12 | 3-4 |
| Other AT training programs | 3-13 | 3-4 |
| CAPSTONE training | 3-14 | 3-4 |
| Transportation | 3-15 | 3-4 |
| **CHAPTER 4** **SUPPLEMENTAL TRAINING** | | |
| General | 4-1 | 4-1 |
| Service school training | 4-2 | 4-1 |
| Army area schools | 4-3 | 4-1 |
| Unit school training | 4-4 | 4-1 |
| Other types of supplemental training | 4-5 | 4-2 |
| USAR schools | 4-6 | 4-2 |
| Unprogramed training activities | 4-7 | 4-2 |
| Special tours of active duty support (ADS) or Active Guard/Reserve | 4-8 | 4-2 |
| Non-prior service personnel training program | 4-9 | 4-2 |


*This regulation supersedes NGR 350-1, 31 Oct 1975.



The Pentagon Library
Rm 1A518, Pentagon
Washington, D.C. 20

# CHAPTER 1

# TRAINING, GENERAL

**1–1. Purpose.** This regulation, in addition to chapter IV, AR 350–1 and FORSCOM REG 350–2, establishes guidance for the execution of policies and procedures for training units and individuals of the Army National Guard not in active military service.

**1–2. Scope.** This regulation governs the type of training and duty that may be performed in accordance with Federal statutes (title 32, U.S.C., sections 502–505) relating to fulltime training (e.g.; annual training, school attendance, command post exercise or maneuver participation), inactive duty training and other supplemental training (e.g.; training conferences and training seminars). Commanders are authorized to issue orders for Army National Guard members to pursue these training programs in either a pay or nonpay duty status. Authority for such participation is announced in appropriate National Guard Bureau directives.

**1–3. Mission.** Units of the Army National Guard have a dual mission as follows:

*a. Federal or state.* To provide units organized, equipped and trained to function efficiently at existing strength in the protection of life and property and the preservation of peace, order, and public safety under competent orders of Federal or State authorities.

*b. Federal.* To provide units with qualified individuals available for active duty in time of war or national emergency in support of the Army's war plans and at such times as the National Security may require augmentation of the active forces.

**1–4. Policy.** *a.* All federally recognized units will conduct not less than 48 paid unit training assemblies (UTA) each fiscal year and a minimum of 15 days annual training (AT) each calendar year.

*b.* Training of the Army National Guard, within the scope of this regulation, is conducted under the command of State authorities. Such training will be conducted as prescribed by the respective Army National Guard commanders in accordance with Department of the Army, NGB, and FORSCOM training criteria, standards, goals, and programs. Training of units for which training programs are not available will be as directed by the State Adjutant General. State headquarters and headquarters detachments will conduct training in accordance with formal training programs established by the State Adjutant General in consonance with the missions prescribed in NGR 10–2 and appropriate TDA.

**1–5. Explanation of terms.** The following terms, in addition to those outlined in AR 350–1, are applicable in this regulation:

*a. Active duty for training (ADT).* Fulltime duty in the active military service of the United States, with or without pay, for training purposes. This duty is performed in a Federal status and includes—

(1) The initial period of training required by title 10, U.S.C., section 511(d) for enlisted members of the Army National Guard of the United States (initial active duty training, IADT).

(2) Training conducted in a foreign nation by members of the Army National Guard of the United States, title 10 U.S.C. section 672(b) or (d).

(3) Special tours of ADT conducted under title 10, U.S.C., section 672(d), e/g.; 2-year ADT tour at an Active Army installation.

*b. Additional training assemblies (ATA) for individuals.*

**CHAPTER 4**
**SUPPLEMENTAL TRAINING**

**4-1. General**
In addition to IDT and AT, units may conduct and personnel may participate in additional supplemental training as prescribed in this chapter.

**4-2. Service school training**
a. Individuals may be authorized to attend any approved service school and pursue a regular course of study at the school, provided such instruction is MOS-awarding; is specialty skill identifier (SSI), or alternate skill identifier (ASI) awarding; is required for career progression, or is required for improved proficiency in the individual's current assignment. Courses conducted at service schools are listed in DA Pam 351-4 and other publications. Prerequisites for attendance at these courses are included in appropriate school catalogs. The Commander, TRADOC publishes TRADOC Pam 350-1, which is a schedule of classes at Army service schools. Participation in resident service school courses will have funding priority over Army area schools, USAR schools, or unit schools.

b. Individual application of enrollment in a course of instruction will be made on NGB Form 64 (Application for Training), which will be submitted through channels to the Military Education Branch, ARNG Operating Activity Center, Building E6812, Edgewood Area, Aberdeen Proving Ground, Maryland 21010.

c. Each Army service school commandant will render an academic efficiency report to both the Military Education Branch and each State Adjutant General concerned for each student enrolled in a service school course in accordance with section II, chapter 2, AR 623-1.

d. An enlisted member desiring to attend a service school (other than an officer candidate course and civilian education programs) must have the following time remaining on his or her current term of enlistment or extend his or her enlistment to meet the following criteria:

(1) One year remaining on enlistment following completion of a school of less than 60-days duration.

(2) Two years remaining on enlistment following the completion of a school of 60- to 120-days duration.

(3) Three years remaining on enlistment following completion of a school of 121 to 179 days.

(4) Four years remaining on enlistment following completion of a school of 180 days or more in duration.

e. Upon completion of the 011A Physicians Assistant Course, graduates incur a 6-year service obligation.

f. Officers must have a minimum of 2 years service remaining before becoming subject to removal under the provisions of title 10, U.S.C., section 3848 or 3851 to be eligible to attend a service school course. Senior service college eligibility requires a service remaining period of at least 3 years prior to mandatory removal date.

g. Funding for individuals attending in FTTD status will be from BP 3130 funds available to each State. Funding for travel and per diem costs for title 10 recruiters, and AGR personnel will be from BP 3130 funds available to each State.

h. AMEDD officers will be allowed to attend one continuing health education (CHE) session, seminar, conference, or AMEDD post-graduate short course of his or her choice per fiscal year. A brochure/letter must accompany the NGB Form 64.

i. Individuals desiring to participate in airborne training must be in an airborne unit or a unit with a designated position requiring airborne status. Individual must be able to maintain proficiency through normal unit of assignment training programs.

**4-3. Army area schools**
a. Individuals may be authorized to participate as students in courses of instruction conducted by the CONUSA or overseas commander (if applicable), provided such instruction meets the criteria established in para 4-2a. CONUSA command publications announcing quotas/spaces at courses for ARNG personnel will indicate whether such courses are being conducted under the provisions of this paragraph. Use of BP 3130 funds allocated the State is not authorized without prior approval of CNGB. The procedure outlined in para 4-2b applies.

b. Individuals who attend courses of instruction at Army area schools must meet the service remaining requirement indicated in para 4-2d.

**4-4. Unit school training**
a. Unit commanders may conduct unit schools in FTTD status within funds available, which will qualify the individual for present or planned military assignments or will increase the military proficiency of the individual's unit. Unit schools must be approved in advance by the CNGB. Requests to establish unit schools should be submitted to the Military Education Branch not later than 45 days before the starting date of proposed course of instruction.

b. Unit schools that provide training of the following types should be submitted for approval:

(1) Training in methods of instruction and training management.

(2) Critical hard-skill MOS training.

(3) Correction of individual training deficiencies.

(4) Initial training requirements for new equipment or programs.

(5) Leadership training.

c. Unit schools generally should meet the following criteria:

(1) The course should be either MOS-producing, MOS-enhancing, mission-related, or should provide training in a required specialty; e.g., NBC, opposing force, operations security, survival, evasion, resistance and



000399

scape, jumpmaster, winter warfare, mountaineering, and leadership.

(2) The school must have a developed program of instruction (POI) with supporting lesson plans, scenarios, etc.

(3) The school must be at least 2 days (16 hours, including travel time) in length. When appropriately justified, schools of not less than 8 hours' duration (excluding travel time) may be approved by the CNGB as outlined in a above.

(4) The course must be ARTEP related, mission-enhancing, and directly related to the individual's or unit's Federal mission.

d. In cases where the scope of unit schools for several units in a State is the same, the State Adjutant General should endeavor to combine these schools and designate a host unit.

e. State adjutants general may conduct any of the accredited RCNCOES courses as unit schools within funds available to the State, subject to the approval of the CNGB. The procedures for securing course approval are contained in a above.

**4-5. Other types of supplemental training**

a. Small arms schools and competition. Personnel may participate in small arms schools, Army area, all Army, and national competitive marksmanship matches. Such participation cannot be in lieu of attending AT with the individual's parent unit. Participation with pay will be subject to fund availability and guidance published in NGB Pam 350-6.

b. Participation in Active Army JTX, CPX, FTX, and LSSF missions by ARNG units or personnel, as approved by the State Adjutant General, will be coordinated with CONUSA. Participation must be within funds available to the respective State. Funds to support the LSSF mission must be programed in advance. The specific classified LSSF mission will not be identified in the budget request. (See paragraph 1-15.)

c. Special exercises. ARNG personnel may attend special exercises conducted by the Active Army (such as conferences, demonstrations, orientations, and field exercises) in FTTD status, subject to availability of funds and approval of the CNGB.

d. Training with the Active Army.

(1) In special cases, the CNGB may authorize individuals to be attached to Active Army organizations to secure training not available in schools, such as participation in the Tactical Intelligence Readiness Training Program (REDTRAIN) IAW AR 350-3.

(2) Units that have been designated by the CNGB as affiliated, and Active component/Reserve component (AC/RC) partnership units, do not require additional authorization to train with their Active Army, ARNG, or USAR sponsor or associated units. Funding in support of these programs will be as announced by the CNGB. Mutual support of Active Army, ARNG, and USAR units (AR 11-22) is encouraged.

e. Personnel may enroll in Army correspondence courses in accordance with AR 351-1 and DA Pam 351-20.

**4-6. USAR schools**

When successful completion of USAR school courses requires attendance at one or more 2-week ADT phases, ARNG personnel may be authorized by the State Adjutant General to attend these phases in lieu of annual training. Use of BP 3130 funds allocated the State is not authorized without prior approval of CNGB.

**4-7. Unprogramed training activities**

Requests submitted to NGB-ARO-T for support of unprogramed training activities should include the following information:

a. Type activity.

b. Justification.

c. Designation of unit(s) scheduled for training.

d. Number of individuals (off, WO, and EM).

e. Estimated cost:

(1) Pay and allowances.

(2) Per diem.

(3) Travel.

f. Additional funds (if any) required by specific budget program (BP) number to cover above costs.

g. Proposed date of the performance of the training activity.

**4-8. Special tours of Active Duty Support (ADS) or Active Guard/Reserve (AGR)**

a. ARNG personnel ordered to duty under the AGR program (see para 1-5c) will be placed on active duty using orders format 174. Orders format 290, NGR 310-10, will continue to be used to place individuals on tours of active duty (ADS) of less than 140 days.

b. Special tours will be as authorized by the CNGB. These tours are not authorized for personnel in the following categories:

(1) School training.

(2) Annual training.

(3) Attendance at conferences, seminars, symposiums, etc.

(4) Tours in connection with personal interviews.

c. The conditions of ADS and/or AGR differ from FTTD as follows:

(1) Individuals who are Federal Civil Service employees are entitled to reemployment rights and Civil Service retirement credit.

(2) Individuals are subject to the Federal Uniform Code of Military Justice.

(3) Individuals ordered to duty on these tours are required to have a medical examination of the scope (type A) as prescribed in chapter 3, AR 40-501, if the tour is over 150 days and if no medical examination (type A) was taken within 1 year preceding expected entry on active duty.

**4-9. Nonprior service personnel training program**

a. This training program is designed for nonprior service personnel (NPS) who have not yet departed for the their IADT. This training

NOTES:
1. NGB film (27 minutes) available from the State public affairs officer. States should follow up the film with detailed briefing on specific State units and a tour of the State museum.
2. The TRADOC Basic Training POI, dated March 1978, contains lesson plans for the indicated subjects. It is available from the State training officer.
3. Commander's Briefing is a slide script package developed by NGB-PA. With questions and answers, it lasts about 20-30 minutes. It is distributed to each company size unit.
4. Appropriate State regulations and applicable publications.
5. Physical fitness training and identification and wearing of military uniforms are identified weaknesses of ARNG personnel at BT. If the State/unit determines that these subjects are weaknesses of previous trainees, appropriate action should be taken to include such training in this POI.
6. Preairborne school training is designed to prepare personnel scheduled to attend the basic airborne course (and if required, Special Forces, Ranger, or Pathfinder courses) by rigorous physical and psychological testing and toughening. Units requiring only airborne training should administer to the recruit the Army Physical Readiness Test (APRT) at each paid or nonpaid MUTA-4 he/she attends before departure for IADT. NPS as well as prior service personnel scheduled to attend the Special Forces or Ranger course after BT and/or airborne training should be administered the Ranger/Special Forces Physical Fitness Qualification Test in lieu of the APRT. Testing for the Special Forces applicant should include the 50-meter swim in fatigue shirt, trousers, and combat boots. Those individuals who cannot pass the swim test should participate in remedial water survival training in accordance with appendix C, FM 21-20.

**4-10. Basic Training Program for women under the Civilian Acquired Skills Program**
The basic training (BT) program is designed as an optional BT program for NPS woman with civilian acquired skills (CAS). Completion of this BT program will allow a women to become a mobilization asset, and a deployable overseas asset. The provisions of 10 U.S.C. 671 are only satisfied by attendance at the full 8-week basic training for the CAS personnel, and such completion of the IDT requirement in chap 8, NGR 600-800.

**4-11. Training conferences**
a. Training conferences, training seminars, training symposiums, or other similar meetings may be conducted as a result of State requirements or at the request of Active Army commanders or agencies (FORSCOM, TRADOC, DARCOM, WESTCOM, INSCOM, CONUSA, ARMR, ARG, etc). Attendance at each meeting will be supported from available funds (BP 3140/3170) allocated to the State. The intent of the event must result in the improvement of training or readiness.

b. State adjutants general are encouraged to determine the man-day requirements needed to support State requirements and those resulting from Active Army-sponsored conferences. Attendance at such conferences must be approved in advance by the CNGB, either as part of the State operating budget or on a case-by-case basis as outlined in paragraph 4-7.

**4-12. Civilian Education Programs**
Individuals may be authorized to participate in a course of instruction at accredited civilian institutions provided such participation leads to the award of an MOS/SSI, or is MOS/SSI enhancing, subject to the approval of the Chief, National Guard Bureau.

**4-13. Physical fitness**
Physical fitness is essentially an individual responsibility of each ARNG soldier since the frequency with which training is required far exceeds available training days. Unit commanders are responsible to ensure that their personnel are physically fit and must closely monitor the physical readiness of their command. Scheduled physical training should be conducted whenever possible and integrated into other unit activities wherever feasible. However, it should not be conducted at the expense of mission essential training. States are encouraged to sponsor physical fitness enhancing programs and to foster physical fitness through competitive sports at unit level. Physical fitness training programs will be administered in accordance with FM 21-20, and AR 350-15. Physical fitness testing will be in accordance with AR 350-15.

**4-14. Opposing Force (OPFOR) Training**
a. Opposing force (OPFOR) training (AR 350-2) will be integrated, wherever possible, into ARNG individual and unit training in order to enhance the realism and effectiveness of the training. OPFOR awareness should increase the capability of units to exploit weaknesses of potential opposing forces.

b. State adjutants general, where appropriate, should develop OPFOR cadre teams knowledgeable of how to integrate the doctrine, organization, tactics, and weapons systems of potential opposing forces into individual and collective training. Assistance in training OPFOR cadre personnel is available from AC partnership, affiliation, and associated units as well as FORSCOM, TRADOC, INSCOM, DARCOM, CONUSA, WESTCOM, ARMRs, and RGs.

c. Units may request foreign material for training (FMT) (Soviet Bloc) weapons through channels. Priority of issue will go to States/units with established OPFOR programs. Change to TDA must be approved prior to request for weapons.

**4-15. Language training**
a. ARNG personnel and units are authorized

Headquarters
Department of the Army
Washington, DC 20310-2500
3 June 1991

National Guard Regulation (AR) 350-1

# Training

# ARMY NATIONAL GUARD TRAINING

**Summary.** This regulation establishes Army National Guard guidance for the execution of policies and procedures for training units not in active service.

**Applicability.** This regulation applies to the 54 States, Territories, and the District of Columbia who execute policies and procedures for training units of the Army National Guard (ARNG) not in active military service. It does not apply to the Active Army or U.S. Army Reserve (USAR).

**Supplementation.** Supplementation is not authorized without prior approval of the National Guard Bureau (NGB-ARO-M), Washington, DC, 20310-2500.

**Interim changes.** Interim changes to this regulation are not official unless they are authenticated by the Executive, NGB. Users will destroy interim changes on their expiration dates, unless sooner superseded or rescinded.

**Internal control systems.** This regulation is not subject to the requirements of AR 11-2.

**Suggested improvements.** The proponent for this regulation is the National Guard Bureau (NGB-ARO-M). Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to NGB-ARO-M, Washington, DC 20310-2500.

**Contents** *(Listed by paragraph number)*

| | Para |
|---|---|
| **CHAPTER 1** | |
| **GENERAL** | |
| Purpose | 1-1 |
| References | 1-2 |
| Explanation of abbreviations and terms | 1-3 |
| Responsibilities | 1-4 |
| Mission | 1-5 |
| Training philosophy | 1-6 |
| **CHAPTER 2** | |
| **TRAINING ADMINISTRATION** | |
| Inactive Duty Training | 2-1 |
| Annual Training | 2-2 |
| Schools | 2-3 |
| Minimum personnel and training standards | 2-4 |
| **CHAPTER 3** | |
| **SPECIFIC SUBJECT GUIDANCE** | |
| General | 3-1 |
| Medical | 3-2 |
| Maintenance | 3-3 |
| Training conferences | 3-4 |
| **CHAPTER 4** | |
| **SPECIAL TRAINING PROGRAMS** | |
| General | 4-1 |
| Key Personnel Upgrade Program | 4-2 |
| Selective Service Training | 4-3 |
| National Guard Bureau Biathlon Program | 4-4 |
| Army National Guard Marathon | 4-5 |
| Army National Guard participation in International Ski Championships for Alpine Troops (CaSTA) | 4-6 |
| Army National Guard International parachute Competition (LEAPFEST) | 4-7 |
| Council International Du Sport Militaire (CISM) Ski Championship | 4-8 |
| **CHAPTER 5** | |
| **TRAINING SUPPORT** | |
| General | 5-1 |
| Financial | 5-2 |
| Equipment | 5-3 |
| Maintenance Services | 5-4 |
| Transportation | 5-5 |
| Subsistence | 5-6 |
| Local training sites (LTS) | 5-7 |
| Major training sites (MTS) | 5-8 |
| Topographic products | 5-9 |
| Ammunition | 5-10 |

| | Para |
|---|---|
| Target support for ADA Units (non-missile) | 5-11 |
| Petroleum, oil, and lubricants | 5-12 |
| Other support | 5-13 |

**TABLES**
1-1. - Duty Status
1-2 - Training Status
2-1 - Phases of Development Annual Training Plans
2-2 - Non-prior Service Training Program
2-3 - Minimum Personnel and Training Readiness Standards
5-1 - Determination of Number of Meals While in Travel Status
5-2 - Determination of Number of Meals During Assemblies


## Chapter 1
## General

### 1-1. Purpose
This regulation establishes guidance for the execution of policies and procedures for training units of the Army National Guard not in active service. Conflicts in direction between this regulation and others will be referred to the Chief, National Guard Bureau (CNGB), ATTN: NGB-ARO, for resolution.

### 1-2. References
Related references are listed in **appendix A.**

### 1-3. Explanation of abbreviations and terms
Special terms and abbreviations used in this regulation are listed in the **glossary.**

### 1-4. Responsibilities
Training is the responsibility of the commander. Each commander under the supervision of the next higher commander is responsible for technical and tactical proficiency of his/her command. This training responsibility is inseparable from, and exercised in conjunction with, other command responsibilities to ensure the ability of the unit to execute its assigned missions.

*a. **FORSCOM.*** Commander, FORSCOM, will assist the TAGs in training the ARNG. In this capacity, he will--

*(1)* Oversee all training in the ARNG.

*(2)* Evaluate the training of the ARNG.

*(3)* Manage the advisory structure for Reserve Components of the Army.

*(4)* Budget and fund Active Army support provided to the ARNG.

*(5)* Command the Continental United States Armies (CONUSA). The Army will provide assistance to the ARNG on a geographical basis within CONUS, but will not be in the resource management chain.

*(6)* Prepare and execute plans for mobilization of ARNG units IAW the FORSCOM Mobilization and Deployment Planning System (FORMDEPS).

*b. **State Adjutants General.*** State Adjutants General will train all ARNG units within their state or territory. As such, TAGs will implement the policies and instructions contained here and ensure that training is conducted according to DA doctrine, NGB directives, and FORSCOM training criteria. In addition, State Adjutants General will plan, program, and budget for AT, IDT, ADSW, AGR, and supplemental training of personnel and units under their jurisdiction. Annual budget (fiscal year) requests will include consideration for all training activities, training conferences, reconnaissances, and other man-day requirements. Funds to support approved State training programs will be allotted on an annual basis by the NGB in the annual funding guidance. State Adjutants General should submit requests for support of training requirements to the CNGB, either on a case-by-case basis or as part of the program and budget review.

*c. **ARNG unit/organization commanders.*** Training responsibilities of ARNG unit/organization commanders are contained in AR 350-1, FORSCOM/ARNGR 350-2, FM 25-3, and NGB resource management guidance.

### 1-5. Mission
*a. **Federal.*** To provide units organized, equipped, and trained to fight and win in time of war or national emergency in support of the Army's war plans.

*b. **Federal/State.*** To provide units organized, equipped, and trained in the protection of life and property and the preservation of peace, order, and public safety, under competent orders of Federal or State authorities.

### 1-6. Training philosophy

*a.* Training to perform the dual mission of the Army National Guard is the primary task of Army National Guard units in peacetime. Unit leaders are directly responsible for training by developing and executing sound and challenging training programs.

*b.* Eighty percent of IDT and AT time will be dedicated to critical soldier, leader, and collective training.

## Chapter 2
## Training Administration

### 2-1. Inactive Duty Training.

***a. Inactive duty training assemblies:***

*(1)* All federally recognized units will conduct at least 48 UTAs each fiscal year in a paid IDT status, except that--

*(a)* Units newly federally recognized and units returned to State control from a period of active duty during the fiscal year will participate in a proportionate share of the required assemblies based on the number of weeks the unit has held Federal recognition or has been under State control during the fiscal year.

*(b)* The Chief, National Guard Bureau may authorize a unit to conduct less than the minimum number of training assemblies. Units requiring such authority will submit requests and justification through command channels to NGB-ARO.

*(2)* An individual may participate in and be paid for more than the maximum number of paid UTAs authorized each unit during the fiscal year when, due to reassignment or attachment, his/her attendance at all ordered assemblies results in his/her individually exceeding the unit's maximum. Rated ARNG aviators, flight surgeons, and non-aviator crewmembers on flying status are authorized additional paid IDT assemblies (Additional Flight Training Periods (AFTP)) according to NGR (AR) 95-210.

*(3)* RMAs, ATAs and AUTAs, as authorized in a pay status above the required 48, or proportionate share for new units, will be announced when authorized by NGB. ATA/RMA will not be performed on the same day as a scheduled UTA/MUTA.

*(4)* All units are authorized and encouraged to develop training programs using any combination of training assemblies defined in **table 1-2.** No more than two UTAs may be credited for pay purposes in any one calendar day. Programs will be developed to take maximum advantage of all available outdoor training areas, should strive to train in an environment similar to their CAPSTONE assignment area, and should stress unit training at the highest level the unit is capable of conducting.

*(5)* When units conduct training on Sunday or the Sabbath, unit commanders are authorized to schedule religious services (maximum of 1 hour) as a part of such assemblies.

*(6)* Unit formations will be conducted at the beginning and end of each training day. The primary purposes of these formations is to verify attendance and make necessary announcements. Attendance will be verified by the chain of command and recorded on DA Form 1379. Constructive credit will be granted to those soldiers with other official duties.Though formations are not required in a field environment, the chain of command will account for all personnel.

*(7)* Funeral details are not authorized to be performed in a paid UTA status. IDT without pay is the appropriate status for units.

*(8)* Except for Army Bands, not more than one paid UTA will be used each fiscal year for participation in parades and ceremonies of a civic nature.

*(9)* The State Adjutant General may approve participation in Military Support to Civilian Authorities (MSCA) programs for ARNG units, elements, or individuals in a paid drill status or nonpay duty status according to AR 135-200 and as outlined below:

*(a)* MSCA projects may be performed by entire units in conjunction with unit training when appropriate training is derived for the entire unit and such training contributes to Federal mission readiness.

*(b)* MSCA projects may be performed by elements of a unit when the element represents an organized group (platoon, squad, or section) that normally trains together. The training must contribute to the skill enhancement of all group members and to the readiness of their unit.

*(c)* MSCA projects may be performed by individuals when the project has a training benefit toward the unit's MTOE/TDA mission; e.g., medical service support.

*(d)* Constructive credit for participation in the MSCA program, as outlined above, may be granted according to paragraph 2-1c.

*(10)* When determined appropriate by the unit commander, a maximum of one UTA before and one UTA after AT may be utilized for preparation for loading, unloading, care and cleaning, maintaining, inventory, etc., of the unit's equipment.

*(11)* AUTAs are authorized for officers and enlisted personnel in airborne positions assigned to airborne units, pathfinder detachments, special forces units, infantry ranger companies, long range surveillance units, or TOE/TDA positions requiring the maintenance of parachute proficiency. These are in addition to the normal 48 UTAs and will be allocated by NGB-ARO annually based on funding availability. The use of AUTAs for parachute proficiency should emphasize night tactical operations with combat equipment followed by tactical assembly of troops. Two AUTAs may be performed on the same day if necessary for safety reasons. This is an exception to policy which restricts all other AUTAs to one per day.

*(12)* Other AUTAs may be performed for special mission, projects, or assignments authorized in advance by CNGB.

***b. Attachment of individuals.***

*(1)* The State Adjutant General may attach

individuals (NGR 600-100, NGR 600-101, and NGR 600-200) as follows:

*(a)* For training administration, and/or pay with or without military justice authority.

*1.* To attend USAR schools, State military academy, or other special training.

*2.* To attend college-level institutions at another location.

*3.* For individuals whose place of duty differs from the place of duty for which the position is authorized (e.g., division surgeon assigned to a medical battalion; place of duty-division headquarters).

*4.* Individuals attached to a State military academy staff and faculty.

*5.* Individuals absent from the vicinity of the parent unit for an extended time.

*6.* Members of the ARNG full-time recruiting force serving on AD or AGR tours.

*(b)* If the period of attachment is for 30 days or more, the attachment must include attachment for pay.

*(c)* If the period of attachment is less than 30 days, the attachment will not include pay.

*(d)* The use of attachment procedures will not be used to circumvent the unit IDT attendance procedures for participation in special unit training programs.

*(2)* For training and/or administration in another State.

*(a)* Students attending college-level institutions in another State may be attached to a unit of another State during the academic year only with the concurrence of the State Adjutant General concerned. Individuals so attached will train in accordance with the training program of the unit to which attached.

*(b)* Individuals attached to a unit in another State will process their pay entitlements through their parent unit (NG Pam (AR) 37-104-3).

***c. Training authorization.*** Authorization of pay, entitlement to retirement points, and any claims or benefits arising as a result of military service require documentary evidence that the individual was in a duty status as authorized by Federal law or regulations. Accordingly, to protect the interests of the individual and those of the government commanders will issue written orders or letters of authority governing training in a pay or nonpay duty status in advance of such training.

*(1)* The issuance of the training schedule in advance satisfies the requirements for adequate written authorization, provided the date, time, and place of each UTA is indicated thereon and such schedules are issued in the form of an order containing a phrase worded essentially as follows: "All members of Company X, 1st Bn, 380th Infantry are hereby ordered to attend all periods of training shown on this training schedule."

*(2)* The schedule will be posted in a conspicuous place so all members of the unit may be informed in advance of the necessary details pertaining to unit training.

***d. Unit Training Assembly, Scheduled Training Assembly, and Rescheduled Training Assembly.***

*(1)* All ARNG members will participate in at least 48 Unit Training Assemblies (UTA) each fiscal year. All training activities of a unit will be scheduled into a comprehensive plan that will depict all training activities actually taking place. When possible, training will be conducted with complete entities to emphasize teamwork and unit integrity. Unit commanders are specifically encouraged to ensure that the maximum number of personnel are present for scheduled mandatory training (weapons qualification, physical fitness training, field training exercise, etc.). All elements of the unit must be included in the series within 30 consecutive days from the date the first element performs duty. This procedure will provide the accountability of personnel according to NGR (AR) 680-1. Attendance may be substituted as outlined herein.

*(2)* Scheduled Training Assemblies. Training can be conducted at times and or places other than at the Unit Training Assembly by individuals or parts of the unit. The unit has 30 consecutive days to have all parts or individuals complete the assembly. The time starts when the 1st individual or part performs a Scheduled Training Assembly. The minimum period of training for a Scheduled Training Assembly is 4 hours. Scheduled Training Assemblies may be authorized by the unit commander to facilitate training and the accountability of individuals who perform duty as directed by the commander. Personnel will be accounted for IAW NGR (AR) 680-1.

*(3)* Rescheduled Training Assemblies. Scheduled training that cannot be conducted due to changing circumstances and requirements will be cancelled and/or rescheduled. Examples are--

*(a)* When a soldier's regular scheduled training assembly is preempted by higher headquarters demands, e.g., conferences or special work.

*(b)* A training resource is not available as planned; e.g., equipment, training area, supported unit, or training assistance team.

*(c)* Training that cannot be conducted due to an act of God, civil disturbance, or other compelling reason.

Rescheduled Training Assemblies must be accomplished within the 30 consecutive days established by law. If this is not possible or if there is funding

in advance by NGB. As an exception, additional periods of AT are authorized in the following instances:

*(a)* Enlisted personnel and warrant officers who are qualified and accepted as officer candidates may attend AT with their unit of assignment before starting the SMA AT periods and then the SMA during the same fiscal year. They may not attend their unit AT periods after first attending SMA AT periods, except SMA graduates who have been commissions or awarded certificates of eligibility may attend AT with their new unit and the SMA during the same fiscal year.

*(b)* Individuals who have attended AT with their unit and are later reassigned to another unit that has not attended AT may attend with the new unit of assignment when approved by the State Adjutant General.

*(c)* Individuals may participate in Overseas Deployment Training (ODT) (Title 10) status as part of a unit cell (element) upon approval of NGB. Participation by unit cells in ODT/readiness exercises, and/or in performance of contingency mission training with CAPSTONE gaining commands, IAW AR 350-9, must be approved by NGB.

*(d)* Individuals may attend an additional AT period, when authorized by NGB, to participate in special training programs designed to contribute to the improvement of unit readiness.

*(e)* All AMEDD personnel assigned to temporary TDA positions in State headquarters will be placed in year-round training status and will attend AT at the discretion of the State Adjutant General.

***e. Year-Round Annual Training.*** Year-round AT should be performed by units that require personnel to conduct AT from time to time throughout the year in varying time periods that will total 15 days for the fiscal year. Safety briefings should be held at least quarterly for units performing year round AT IAW AR 385-10.

*(1)* Units that normally may conduct year-round training are—

*(a)* State HHD, and STARC.

*(b)* Training Site units.

*(c)* Public Affairs Detachments.

*(d)* Army Bands.

*(2)* The following units may perform incremented AT in order to provide maximum on-the-job training for hard-skill MOS personnel and to provide support for the overall ARNG program:

*(a)* Combat service support units and organizations such as the Aviation Classification and Repair Activity Depot, Army Aviation Support Facility, Army Flight Activity, Mobilization and Training Equipment Site, and Consolidated State Maintenance Shop.

*(b)* ADP units.

*(c)* Military Intelligence units.

*(d)* Rear Operations Centers (RAOC).

*(e)* Medical units.

*(f)* Special forces units.

***f. Responsibility of the unit commander.*** Unit commanders will be responsible for individual or group inspection of all personnel under their command immediately before departure for AT. ARNG individuals exhibiting signs of obvious medical, mental, or physical conditions that are likely to interfere with or be aggravated by attendance at AT will be referred to a military medical officer for a determination of fitness to perform AT.

***g. Additional man-day support for AT.***

*(1)* All man-days required for support of AT must be justified in the State's AT plan.

*(2)* Guidelines for ARNG annual training support man-days are provided in NGB Pam 350-1. The number of support man-days utilized will not exceed total allocation.

*(3)* Pre-camp/site reconnaissance, advance/rear detachment, and administrative/logistical support man-days are not authorized for units conducting year-round training.

*(4)* Man-days required for travel. Units or cells moving to and from the AT site may be authorized by CNGB to exceed the 15 day AT period as follows:

*(a)* Units that require 12 hours or less actual travel time during a given 24-hour period, exclusive of meal stops, to reach the TS will be authorized the normal 15 days AT period.

*(b)* Units that require more than 12 hours travel time and will bivouac overnight will be authorized one additional man-day for each 12 hours of travel time per 24 hour period and night bivouac; e.g., if a unit requires 30 hours driving time to reach the TS and bivouacs 2 nights enroute, 2 additional days would be authorized.

**2-3. Schools**

In addition to IDT and AT, personnel may participate in additional training by attending schools and other training programs. NGR 351-1 sets policies and procedures for ARNG personnel for Individual Military Education and Training (IMET). This regulation should be consulted for information on Service, Army Area, USARF, DoD, USAF, Vo-Tech, and Individual Readiness Training Schools, as well qualification training courses.

**2-4. Minimum personnel and training standards**

All ARNG unit (except State headquarters and headquarters detachments, Alaska ARNG arctic reconnaissance and scout units, and training site

CORRECTED COPY--DESTROY ALL OTHERS
INCLUDES CHANGE 1

Headquarters
Department of the Army
Washington, DC 20310-2500
15 April 1987

National Guard Regulation 351-1

Effective Date: 1 June 1987

# Schools

## INDIVIDUAL MILITARY EDUCATION AND TRAINING

**Summary.** This regulation covers individual military education and training for Army National Guard personnel. It is general in nature except when required to address matters not adequately covered in related publications, and adopts the term individual readiness training schools (formerly unit schools).

**Applicability.** This regulation applies to the Army National Guard.

Impact on New Manning System. This regulation does not contain information that affects the New Manning System.

Internal Control Systems. This regulation is not subject to 'the requirements of AR 11-2. It does not contain internal control provisions.

Supplementation- Local supplementation of this regulation is prohibited except upon approval of NGB. Send requests for exception, with justification, through command channels to Chief, National Guard Bureau, ATTN: NGB-ARO-E, Bldg E6814, Edgewood Area, Aberdeen Proving Ground, MD 21010-5420.

Interim changes. Interim changes are not official unless authenticated by the Executive, NGB. Interim changes will be destroyed on their expiration dates unless sooner rescinded or superseded by a permanent change.

Suggested improvements. The proponent of this regulation is the Military Education Branch, Organization and Training Division, National Guard Bureau. Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to the Army National Guard Military Education Branch (NGB-ARO-E), Bldg E6814, Edgewood Area, Aberdeen Proving Ground, MD 21010-5420.

Contents

Chapter 1

Introduction

Section I
General

| | Paragraph | Page |
|---|---|---|
| Purpose | 1-1 | 1-1 |
| References | 1-2 | 1-1 |
| Explanation of abbreviations and terms | 1-3 | 1-1 |

Section II
Concept

| | Paragraph | Page |
|---|---|---|
| Responsibilities | 1-4 | 1-1 |
| Student evaluation | 1-5 | 1-1 |
| Physical fitness and weight standards | 1-6 | 1-1 |
| Medical examinations | 1-7 | 1-2 |
| Security clearances | 1-8 | 1-2 |
| Course information | 1-9 | 1-3 |
| Service obligation | 1-10 | 1-3 |
| Description of an FTTD day | 1-11 | 1-3 |
| Funding | 1-12 | 1-3 |
| Travel status | 1-13 | 1-4 |

military occupational specialty (MOS)/ specialty skill identifier (SSI)/additional skill identifier (ASI) code. Preferably, the applicant will have the appropriate level clearance before applying for training, otherwise, authority to .attend training will be withheld pending receipt of required security clearance.

**1-9 Course information**
DA Pam 351-4 and QUALS Report contains pertinent information about Army service school courses and should be reviewed by personnel preparing NGB Forms 64. Included is such data as course prerequisites, school location, reporting information, transportation means available, etc. In addition, documents that announce available courses often include information similar to that found in DA Pam 351-4. These course announcement documents should also be reviewed when applications are being processed for course information not otherwise available,

**1-10 Service obligation**

a. ARNG personnel attending Army service schools, Army area schools, USARF schools, IRTS, or civilian institutions must have the following time remaining before their mandatory removal date (MRD) or erpiration of term of service (ETS). Enlisted personnel are not required to ertend their enlistment until after they have been confirmed for enrollment, however, States will not publish orders directing school attendance until the prospective student's ETS meets or erceeds the standards listed below, erceptions may be granted by CNGB for cogent reasons.

(1) One year following completion of a school of less than 30 days.

(2) Two years following completion of a school of 31 to 90 days.

(3) Three years following completion of a school of 91 to 139 days.

(4) Four years following completion of a school of 140 days or more.

b. Undergraduate pilot training graduates and rotary wing qualification course graduates of the Civilian Aviator Accession Program incur a 5-year service obligation.

c. Upon completion of Phase I and Phase II of the 011A Physicians Assistant Course, graduates incur an 8-year service obligation with promotion to CW3.

d In cases when an individual attends successive courses, the combined length of the courses will be used to determine service obligation.

**1-11 Description of an FTTD day**

a. For purposes of this regulation, FTTD is defined as full-time training duty, with or without pay, authorized for ARNG members under Title 32, United States Code, sections 504 and 505. This duty is performed under State jurisdiction as opposed to Federal jurisdiction, and includes attendance at the schools and courses listed in the regulation. FTTD is considered to be not less than 8 hours of duty each day of duty.

b. Attendance of ARNG personnel at IRTS or at USARF schools conducted in other than an AT/ADT status will conform to the following standards:

(1) Not less than 8 hours of POI training will be conducted on each day during the training period except that not less than 7 hours of POI training will be conducted on both the first day and the last day of training periods which are of 2 or more days' duration.

(2) For purposes of this regulation, orientations, critiques, and graduation ceremonies are considered to be legitimate POI subjects as long as none of them exceed 1 hour duration. Travel, sign-in or sign-out, issue or turn-in of equipment, administrative time, commandant's time, and time allowed for troop messing/rest periods are not considered legitimate POI subjects.

**1-12 Funding**

a. Courses listed below are centrally funded by CNGB:

(1) Resident senior service college courses to include fellowship programs.

(2) Resident intermediate level college courses, but only that portion of the course exceeding 20 weeks.

(3) Resident sergeants major courses.

(4) Physicians assistant training courses.

(5) Undergraduate pilot training courses.

(6) Eastern ARNG aviation training school courses.

(7) ARNG regional school RC-PLDS.

(8) ARNG centralized school RC-ANCOC.

(9) ARNG battle skills course.

(10) ARNG RC tank commanders' course.

b. Attendance at courses by personnel serving in the Active Guard/Reserve (AGR) Long-Tour Program (Title 10 AGR)-related TDY expenses are centrally funded by NGB. Applicants authorized TDY support will submit DD Forms 1610 with their NGB Forms 64. DD Forms 1610 will be completed through item 18 at the originating office, and NGB-ARO-E will complete the remaining items.

c. States entitled to receive central funding support will submit cost estimate sheets similar to that shown at figure 1-1 to NGB-ARO-E for each member attending a course listed in paragraphs a(1), (2), (3), and (4) above. Sheets for paragraphs a(1), (2) and (3) above will be submitted after the course selection has been announced. Sheets for paragraph a(4) above will be submitted with the application. Markup for students attending courses in paragraphs a(5) and (6) above are computed by NGB-ARO-E. Students attending courses listed in paragraphs a(7), (8), (9), and (10) above are funded by the USPFO of the host State. State budgets will be appropriately marked up after processing of cost estimate sheets by NGB-ARO-E.

## 1-13 Travel status

The following policy will be observed unless superseded by joint travel regulations (JTR).

a. When school training is conducted at a location other than the permanent duty station to which assigned, ARNG students will normally attend in temporary duty (TDY) or permanent change of station (PCS) status.

(1) Courses of 19 weeks 6 days (139 days) or less are attended in TDY status.

(2) Courses of 20 weeks (140 days) or more are normally attended in a PCS status.

b. Course length is determined by counting calendar time starting with the reporting day and ending with the close day. Normal weekend days are included in determining course length.

(1) Travel days occurring prior to the reporting day or after the close day are not included when computing course length.

(2) Federal holidays and holiday breaks (e.g., Christmas - New Year break) are not included when computing course length. Courses normally less than 20 weeks long that are extended to 20 or more weeks long because of having holidays or because holiday breaks fall within the course dates are still considered TDY courses.

c. Personnel whose training period is extended from less than 20 weeks to 20 or more weeks as a result of recycle action will not change from a TDY to PCS status. The State will amend original orders to reflect that the training period is extended in order for the student to receive additional training; e.g., "Additional period of instruction authorized", and indicate the amended close date of the extended period of instruction.

d. Personnel attending training in a PCS status who are released from the course prior to the 20th week do not change status based on early release.

e. Personnel who schedule attendance at training courses conducted on consecutive days for which the accumulative period of time equals or exceeds 20 weeks (140 days) after applying the provisions of paragraph b(2) above, will attend in a PCS status even though one or both courses would normally be attended in a

(1) Successful completion of eristing resident entry level technical certification courses.

(2) Technical certification testing using eristing entry level functional eraminations.

(3) Periodic technical certification boards convened under the authority of the MOS proponent and conducted at the proponent school.

b. Additional information is contained in TRADOC Reg 351-13.

**3-6. Warrant Officer** Professional Developgent

Training for warrant officers above the entry level is designed to develop individuals to their maximum potential. The two training levels involved are advanced level training and master level training.

a. Advance level training is accomplished by mandatory attendance at warrant officer advanced courses (WOAC). Advanced level training must be completed between 3 and 9 years of warrant officer service. The aim of WOAC is to refresh common skills and leadership, update technical and tactical training to keep pace with doctrinal changes, and provide additional training as determined by the proponent branch based on future requirements.

b. Master warrant officer training (MWOT) is the highest level of military training available to the warrant officers. MWOT is required to prepare warrant officers assigned to MWO positions for the erpected role of systems integrator, trainer, manager, and developer. MWOT will consist of the appropriate master warrant officer course (MWOC) followed by additional master level functional training modules for specific assignments.

c. For a detailed outline of warrant officer training on an MOS basis, refer to NGR 600-101.

HEADQUARTERS
DEPARTMENT OF THE ARMY
Washington, DC 20310-2500
1 October 1996

*NATIONAL GUARD REGULATION 600-101

Personnel - General

# WARRANT OFFICERS - FEDERAL RECOGNITION AND RELATED PERSONNEL ACTIONS

By Order of the Secretary of the Army:

EDWARD D. BACA
Lieutenant General, USA
Chief, National Guard Bureau

Official:

DEBORAH GILMORE
Chief
Administrative Services

**Summary.** This regulation is a revision of policies and procedures for Army National Guard warrant officer personnel management. This revision incorporates previously published changes, to include, All States Memorandums relative to warrant officer management policies and procedures. It also includes those issues imposed by the Warrant Officer Management Act of 1992 that relate to the ARNG warrant officer.

**Applicability.** This regulation applies only to the Army National Guard.

**Internal control systems.** This regulation is not subject to the requirements of AR 11-2. It does not contain internal control provisions.

**Supplementation.** Supplementation of this regulation is prohibited without prior approval from the Chief, National Guard Bureau, ARNG Readiness Center, **ATTN:** NGB-ARP-PO, 111 South George Mason Drive, Arlington, VA 22204-1382.

**Interim changes.** Interim changes to this regulation are not official unless they are authenticated by the Chief, Administrative Services. Users will destroy interim changes on their expiration dates unless sooner superseded or rescinded.

**Suggested improvements.** Users of this regulation are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to National Guard Bureau, Director of Personnel, **ATTN:** NGB-ARP-PO. 111 South George Mason Drive, Arlington, VA 22204-1382.

**Distribution:** A

**Contents** *(Listed by paragraph number)*

| Chapter 1 Introduction | Para |
|---|---|
| Purpose | 1-1 |
| References | 1-2 |
| Explanation of abbreviations and terms | 1-3 |
| Responsibilities | 1-4 |
| Policy | 1-5 |
| Rank relativity | 1-6 |
| Powers and duties | 1-7 |
| Commissioning of Chief Warrant Officers | 1-8 |
| Exceptions | 1-9 |

| Chapter 2 Appointments | Para |
|---|---|
| General | 2-1 |
| Federal recognition | 2-2 |
| Temporary Federal recognition | 2-3 |
| Appointment Policy | 2-4 |
| Appointment as a Reserve Warrant Officer of the Army | 2-5 |
| Procurement sources | 2-6 |
| Eligibility criteria | 2-7 |
| Predetermination | 2-8 |

*This regulation supersedes NGR 600-101, 1 April 1989

'able 7-2.
**Minimum Military Educational Requirements for Promotion and Time in Current Grade Required or Course Enrollment**

| 'or promotion o | Military education requirement is: | Time In Current Grade requirement for course enrollment is: |
|---|---|---|
| cw2 | Warrant Officer Basic Course (WOBC), or equivalent certification within 2 years from date of initial appointment as WO1. | NA |
| cw3 | Completion of the common core pre-requisite correspondence studies administered by the Total Army Warrant Officer Career Center, Fort Rucker, Alabama, and the duty MOS Warrant Officer Advance Course (WOAC), or equivalent. Note 1 | 3 years TIG as CW2 |
| cw4 | Duty MOS Warrant Officer Advance Couse (WOAC), or equivalent. Note 2 | 3 years TIG as CW3 |
| *CW4 | Warrant Officer Staff Course (WOSC). | 4 years TIG as CW3 |
| CW5 | Warrant Officer Senior Staff Course (WOSSC). | 4 years TIG as CW4 |

This course requirement is effective two (2) years from the effective date of this regulation and will supersede ›revious requirement for promotion to CW4.

Note 1. This is the minimum military education requirements for promotion to CW3 for all MOS specialties. As an exception, for those specialties which do not have courses for either SWOT or WOAC, the minimum requirements for promotion to CW3 is the completion of WOTTC or WOBC and the common core prerequisite studies administered by the WOCC.

Note 2. Effective with implementation of this regulation, the minimum military education requirements for promotion of warrant officers to the grade of CW4 who have not completed a WOAC or SWOT due to lack of such courses in their MOS is the completion of WOTTC or WOBC and the Warrant Officer Staff Course (WOSC).

**7-10. Physician Assistant (PA) warrant officer educational requirements for promotion**

PA's must successfully complete the AMEDD Officer Advanced Course or AMEDD Reserve Component Officer Advanced Course for promotion to CW3. The PA military education requirements for promotion to CW4 are as stated bove.

**7-11. Promotion of ARNG warrant officers serving on Title 10 AGR Tours**

*a.* Upon determining that a warrant officer serving on Title 10 AGR tour managed by NGB is eligible for promotion, a Memorandum prepared by the first line supervisor IAW Figure 7-1 herein, will be forwarded to Chief, Tours Management Office, ATTN: NGB-ARP-T, 111 So. George Mason Dr., Arlington, VA 22204-1382. Memorandum will include as Enclosures documents required as shown in Appendix B.

*b.* The Title 10 AGR Tour Management Office will review the request and if determined to be valid will forward correspondence to the warrant officer's parent State recommending promotion action to the next higher grade. Tour Management Office will grant an additional TDA allocation comensurate to the recommended grade, and withdraw the current grade. If the State concurs with the requested action and the officer is determined qualified for promotion by a Federal Recognition Board, the State will publish orders citing this regulation as the promotion authority.

*c.* If the State does not desire to promote the warrant officer, the NGB Tour Management Office, will be notified in writing and the promotion action terminated upon notification of the soldier.

# CHAPTER 7
# Extension, Immediate Reenlistment, and Bar to Reenlistment/Immediate Reenlistment/Extension

## Section I
## Introduction

### 7-1. Purpose

*a.* This chapter prescribes policies and procedures for extension, immediate reenlistment, and bar to reenlistment/immediate reenlistment/ extension.

*b.* NGR 601-280 outlines the staffing, support duties, responsibilities, and administrative procedures of retention personnel.

### 7-2. Objectives

The objectives of this chapter are to:

*a.* Retain, on a long-term basis, the greatest number of highly qualified soldiers consistent with personnel needs.

*b.* Obtain maximum command involvement at each level of command.

### 7-3. Terms

*a.* Extension of enlistment (see Glossary). Extension of enlistment enables the soldier to continue on the present enlistment or reenlistment contract for the specified period of time notes in the extension agreement.

*b.* Immediate reenlistment (see Glossary). The execution of a separate enlistment contract without a break in service. Immediate enlistment must be executed within 24 hours after date of discharge in order to qualify for continuous military service. Immediate reenlistment is authorized to correct errors (other than minor administrative) made on previous enlistment, reenlistment, immediate reenlistment, or extension or with approval of NGB-ARP-PE to correct an illegal or erroneous discharge. In the later case award of pay and retirement points for duty not performed requires a petition of the ABCMR.

*c.* Bar to reenlistment, immediate reenlistment or extension of enlistment or reenlistment. The intent of a bar is to deny continued service and future entrance into the ARNGUS. A bar is a procedure to deny reenlistment, immediate reenlistment or extension of enlistment or reenlistment to soldiers who would otherwise be eligible but whose continuation of service beyond ETS, without improvement, is not in the best interests of the ARNGUS.

## Section II
## Reserved

### 7-4. Reserved

## Section III
## Extension of Enlistment

### 7-5. General

*a.* ARNGUS soldiers, including those granted waivers, may be given the opportunity to extend their current enlistment. This will provide continuous service when extension is authorized.

*b.* When it is determined that it is in the best interest of the ARNGUS, the unit commander may authorize extensions.

*c.* Standards and criteria for extension of enlistment are a continuation of the requirements for enlistment or reenlistment in accordance with chapter 2.

*d.* Table 7-1 lists authorized periods of extension.

*e.* Table 7-2 lists basic eligibility standards and waiver authorities.

*f.* Retention beyond ETS is authorized in accordance with paragraph 7-2.

*g.* Soldiers enlisted under Try One in the Guard with a remaining service obligation, and soldiers who enlist in the 3x3, 3x5 4x2, 4x4, or 6x2 enlistment option, and desire to continue service in an active drill status at the end

initiated under the provisions of this chapter unless the soldier possesses a disqualification that can be waived. If otherwise qualified, may not be arbitrarily denied reenlistment, immediate reenlistment or extension.

**7-21. Standards and guidelines for BAR to reenlistment, immediate reenlistment or extension**

*a.* Standards. Only soldiers of high moral character, personal competence, and demonstrated adaptability to the requirements of the professional soldier's moral code may be reenlisted, immediately reenlisted or extended. Soldiers who cannot or will not measure up to such standards, but whose discharge under proper administrative procedures is not now warranted, will have a BAR from further service under the provisions of this chapter. Even though a BAR has been initiated, a soldier can still be administratively discharged if it is warranted. The BAR is a non-punitive probationary device intended to serve notice that a soldier is not a candidate for reenlistment, immediate reenlistment or extension and may be discharged if the circumstances that led to the bar are not overcome.

*b.* Guidelines for use of a BAR.

*(1)* BAR procedures will not be used instead of discharge actions under this regulation.

*(2)* A BAR will not be initiated solely because a soldier refuses to reenlist, immediately reenlist or extend.

*(3)* A BAR will not be used instead of trial by courts-martial, nonjudicial punishment, or other administrative action.

*(4)* Disciplinary and administrative actions that do not result in discharge do not prevent initiation or continuation of a BAR.

*(5)* The fact that a soldier may be issued an honorable or general discharge for the current period of service does not prevent initiation of a BAR to deny the soldier later service in the ARNGUS.

*(6)* Honorable service for a number of years is considered in the evaluation of the soldier's service. However, it does not prohibit the initiation of a BAR if appropriate.

**7-22. Criteria**

A soldier's unfitness or unsuitability may show up soon after entry into the service, or only become apparent after many years of service. A soldier performing in a substandard manner may have been permitted to remain in the ARNGUS for a number of years. This should not stop a current commander from taking action under the provisions of this chapter. Commanders must evaluate the advisability and desirability of affording continued military service to soldiers of the following or similar categories:

*a.* Untrainable soldiers. These soldiers will be identified as soon as possible with a view toward eliminating them from service. When discharge under administrative procedures is not warranted, action will be taken under this chapter to bar the soldier from further service with the ARNGUS. These soldiers are often identified by failure to achieve individual weapons qualifications; failure of the APFT; obtaining low evaluation results from Army education activities; failure to submit an approved family care plan; and failure to make satisfactory progress on Army Weight Control Program.

*b.* Unsuitable soldiers. These soldiers will be identified early in their military service with a view toward elimination from the service. When administrative discharge is not warranted, action will be taken under this chapter to bar the soldier from further service with the ARNGUS.

*c.* Soldiers against whom BARS are initiated often have written documents that disclose the recurrence of one or a combination of the following:

*(1)* Late for formations, details, or assigned duties.

*(2)* Unexcused absences and unsatisfactory participation.

*(3)* Loss of clothing and equipment.

*(4)* Substandard personal appearance.

*(5)* Substandard personal hygiene.

*(6)* Recurrent nonjudicial punishment.

*(7)* Recurrent sickness on drill days without medical justification.

*(8)* Cannot follow orders; shirks; takes too much time; is recalcitrant.

*(9)* Cannot or will not train for a job; apathetic; disinterested; avoids training.

*(10)* Cannot adapt to military life; uncooperative; involved in frequent difficulties with fellow soldiers.

*(11)* Failure to manage personal, marital, or family affairs. This includes failure to respond to duty requirements because of parenthood or custody of dependents (minor or adult) (AR 600-20, Paragraph 5-5).

*(12)* Causes trouble in civilian community.

*(13)* Involved in immoral activities.

*(1)* Initially, when the soldier attains eligibility and is not recommended, and:

*(2)* Periodically (at least every three months) until advanced or separated.

*(3)* Commanders who elect not to advance soldiers at normal number of months TIS will submit DA Form 4187 for each soldier prior to the effective date of advancement. In Section III, Other, enter X and "Adv to (grade) Denied"; in Section IV, enter "Soldier denied advancement to (grade) at (number) months TIS per NGR 600-200, paragraph (number)".

*g.* Prepare DA Forms 4187 for all advancements other than automatic advancements.

*(1)* Effective date and DOR will be the same except for soldiers advanced late using the procedures in paragraph 11-6.

*(2)* Unit commander or the S1 will sign all DA Forms 4187 advancing soldiers. The battalion or comparable commander or administrative officer may sign in the unit commander's absence (other than absence which requires an Acting Commander).

*h.* File a copy of each DA Form 4187 affecting the soldier's latest advancement status in the MPRJ, and process a copy to the State MPMO (SIDPERS).

**11-24. Advancement to PV2**

*a.* The eligibility criterion is 6 months TIS waivable to 4 months.

*b.* Advance PV1 to PV2 automatically using automated advancement report at 6 months TIS, except for soldiers who are flagged or not recommended.

*c.* Use DA Form 4187 only to advance soldiers:

*(1)* With a waiver (accelerated advancement.)

*(2)* Who were flagged or not recommended at 6 months TIS.

*(3)* Who were previously reduced to PV1.

*d.* On DA Form 4187 for advancement to PV2, cite paragraph 11-24 as well as any other applicable paragraph.

**11-25. Advancement to PFC**

*a.* The eligibility criteria for PFC are --

*(1)* 12 months TIS waivable to 6 months, and --

*(2)* 4 months TIMIG waivable to 2 months.

*b.* On DA Form 4187 for advancement to PFC, cite paragraph 11-25 as well as any other applicable paragraph.

**11-26. Advancement to SPC**

*a.* The eligibility criteria for SPC are:

*(1)* 26 months TIS waivable to 14 months, and --

*(2)* 6 months TIMIG waivable to 3 months, and --

(3) Qualified in the MOS to which advanced.

b. Commanders may waive the position vacancy requirement for PFC with 26 months TIS who are otherwise fully qualified.

*c.* A PFC may be advanced to SPC, with the concurrence of the unit commander, for soldiers on short tours of active duty not under State control (IADT, TTAD, ADSW or ADT). The advancement may be accomplished by the appropriate Regular Army promotion authority as discussed in AR 600-8-19, paragraph 2-5, for IADT soldiers, or this paragraph for all others.

*d.* For PFC in positions graded for SGT, advance them to SPC and concurrently appoint them to CPL on DA Form 4187.

*e.* On DA Form 4187 for advancement to SPC, cite paragraph 11-26 as well as any other applicable paragraph.

**Section IV**
**Promotion to SGT through SGM**

**11-27. Criteria**

To be eligible for consideration, selection and promotion to SGT through SGM soldiers must:

*a.* Be in promotable status. A soldier with a suspension of favorable personnel action (SFPA) in effect will be considered by the board unless completely ineligible for consideration, but cannot be placed on the promotion list or promoted until the suspension has been removed. This requirement is not waivable. The flagging action will not be seen by the board. Soldiers who have been removed from promotion lists per paragraphs 11-48 and 11-49 and who are pending separation action per AR 135-178 or AR 635-200 will not be considered for promotion. If not separated, they may be considered by the next regularly scheduled promotion board unless they are eligible for a standby advisory board per paragraph 11-53 of this chapter. Soldiers enrolled in officer and warrant officer producing programs (including those attending in a permissive TDY status), although eligible for special advancements or promotions in section II of this chapter, are not eligible for consideration for promotion, NCOES training, assignment, or promotion per the other provisions of this chapter.

*b.* Be participating satisfactorily in the active ARNGUS in the next lower grade.

*c.* Meet the following times by the date announced in the board memorandum of instruction (waivers are not authorized): (See paragraph 11-8 for computation rules.)

| For | TIMIG | TIS | CES |
|---|---|---|---|
| SGT | 6 months | NA | NA |
| SSG | 8 months | NA | NA |
| SFC | 11 months | 9 years | 6 years |
| MSG | 12 months | 13 years | 8 years |
| SGM | 14 months | 16 years | 10 years |

*d.* Have a HS diploma, HS-GED equivalent, alternate credential, or an associate or higher degree. Eskimo Scouts are exempt from this criterion.

*e.* Be qualified in the Career Progression MOS (CPMOS), promotion MOS or a feeder MOS for the position into which assigned and promoted unless another standard is authorized in this chapter, chapter 3, chapter 5, or in a special training program, such as those for CMF 18 and 96, the CASP, or AGR Management Program governed by NGR 600-5 and NGR 600-10. NOTE: Commanders and personnel managers must ensure promotion of SRIP participants only in their primary or CPMOS to avoid violating the terms of incentives contracts. CPMOS must be in the same CMF as the bonus MOS to retain entitlement.

*(1)* SQI, ASI and LIC classified positions on some MTOE/TDA identify additional skills. Unless a soldier cannot perform the duties of the position due to lack of SQI, ASI and or LIC training, such as in certain airborne or Special Forces positions, this training is not a criterion in determining MOS qualification for promotion. For organizations with units in two or more states, the organization leadership and state MPMOs should coordinate consistent standards to the maximum practical extent.

*(2)* Soldiers being involuntarily reclassified into another MOS due to unit reorganization or inactivation, will be treated according to State reorganization instructions. They may remain MOS qualified for promotion purposes up to 1 year after the effective date of the reorganization or inactivation, or until reclassified into the new MOS, whichever occurs sooner. State reorganization instructions should provide for the selection, assignment, qualification and reclassification. Soldiers promoted under these rules into a new MOS must become qualified in the time required or be reduced per paragraph 11-56g.

*(3)* Soldiers are considered physically qualified in their MOS for promotion purposes when they have been found qualified by a State MDRB, Medical Evaluation Board (MEB), or Physical Evaluation Board (PEB), and will retain promotion status. Currency of the soldier's physical examination is a function of eligibility for immediate reenlistment or extension in chapter 7 of this regulation and of NGR (AR) 40-501.

*f.* For consideration for promotion to SGM with concurrent appointment to CSK individual should not yet be the objective age of 51 as of the last day of the month of the DA (NGB) ARNGUS CSM Selection Board per paragraph 9-3d of this regulation. However, State AGs may nominate individuals above the objective age without waiver or exception when the soldier is clearly the best qualified of all eligible candidates.

*g.* For consideration for promotion, including concurrent appointment to CSM, 1SG and MSG who are not graduates of the U.S. Army Sergeants Major Course (USASMC) must be eligible to attend and complete the course. Individuals who were selected to attend but did not complete the course for any reason other than hardship are not eligible to attend the course again and, therefore, are not eligible for consideration or promotion to SGM. This criterion is not waivable and exceptions to policy will not be considered.

**11-28. NCOES requirements for promotion**

NOTE: The promotions in a(2) through (5), (8) and (9) below are conditional promotions. The rules to administer these promotions are in c below.

*a.* Consider soldiers for promotion without regard to their current levels of NCOES. When selected for promotion and listed in the selection objective of the promotion lists, they are eligible for training and, provided they are in or will be concurrently assigned to positions authorized the higher grade, promotion as shown below. See paragraph 11-42 for discussion of the selection objective, who may attend NCOES courses, and when they may attend.

*(1)* SPCs and CPLs with PLDC credit are promotable to SGT.

*(2)* SGTs with PLDC credit are promotable to SSG after they complete BNCOC Phase I. They must start Phase II (or the next resident phase prescribed by the proponent) within two years after the complete Phase I. They must successfully complete all phases before consideration by a SFC promotion board.

*(3)* SGTs without PLDC credit are promotable to SSG after they complete PLDC and BNCOC Phase 1. They must start BNCOC Phase II (or the next resident phase prescribed by the proponent) within two years after they complete Phase I. They must successfully complete all phases before consideration by a SFC promotion board. SGTs with DORs before 1 Oct 92 do not need PLDC to attend BNCOC.

*(4)* SSGs with BNCOC credit (all phases), but without ANCOC credit, are promotable to SFC after they complete ANCOC Phase 1. They must start ANCOC Phase II (or the next resident phase prescribed by the proponent) within two years after they complete Phase I. They must successfully complete all phases before consideration by a MSG promotion board.

*(5)* SSGs without BNCOC or ANCOC credit are promotable to SFC after they complete BNCOC (all phases) and ANCOC Phase I. They must start ANCOC Phase II (or the next resident phase prescribed by the

proponent) within two years after they complete Phase I. They must successfully complete all phases before consideration by a MSG promotion board. SSGs with DORs before 1 Oct 92 do not need PLDC or BNCOC to attend ANCOC.

*(6)* SSGs with ANCOC credit are promotable to SFC.

*(7)* SFCs with ANCOC credit (or the USASMC) are promotable to MSG. There is no new training requirement.

*(8)* SFCs without ANCOC credit are promotable to MSG after they complete ANCOC Phase I . They must start Phase II (or the next resident phase prescribed by the proponent) within two years after they complete Phase I. They must successfully complete all phases before consideration by a SGM promotion board. (NOTE: BNCOC is not a factor.)

*(9)* MSGs (this includes 1SGs) with ANCOC credit, but without USASMC credit, and who are in the selection objective of the SGM promotion list or CSM selection list, are only promotable after they are enrolled in the USASMC by CNGB(NGB-ART-I) as follows. This is the only means to enroll in the USASMC.

*(a)* For the nonresident course, State AGS (MPMOs only) will submit to CNGB (NGB-ARH-E) DA Form 4187 (only the original or copy 1) and its enclosed Statements of Agreement and Coordination per the sample at figure 11-6. Receipt of the NGB endorsement is authority to conditionally promote the soldier to SGM then or upon assignment to a SGM or CSM position, whichever is later.

*(b)* For the resident course, State AGs (POTO only) will submit AATAS applications through ATRRS to CNGB(NGB-ART-I), Action Officer 012. Receipt of Code R (Reserved) on ATRRS is authority to conditionally promote the soldier then or upon assignment to a SGM or CSM position, whichever is later.

*(c)* Title 10 AGR Program soldiers will submit their forms through their local chains of command directly to CNGB (NGB-ARZ-T) for action by NGB-ARH-E and NGB-ART-I.

*(d)* Submit forms for SGM selectees immediately upon approval of the board results. Submit forms with CSM nomination packets per paragraph 9-6 of this regulation for CSM nominees.

*(10)* MSGs with USASMC credit are promotable. There is no new training requirement.

*(11) SGMs (this includes CSMs) with DORs before 1 Oct 92 will not attend the USASMC.*

*b.* The NCOES courses for promotion are the Army standard. Waivers and exceptions to policy are not authorized. Title XI of the National Defense Authorization Act for Fiscal Year 1993 (P.L. 102-484), as amended, provides in -- *"Sec. 1114. Noncommissioned Officer Education Requirements. (a) Nonwaivability. Any standard prescribed by the Secretary of the Army establishing a military education requirement for noncommissioned officers that must be met as a requirement for promotion to a higher noncommissioned officer grade may be waived only if the Secretary determines that the waiver is necessary in order to preserve unit leadership continuity under combat conditions."*

*c.* All categories of soldiers will complete NCOES courses only in their CPMOS (primary or career progression MOS).

*(1)* Traditional soldiers (this term includes Military Technicians effective 1 Dec 93) may complete any TATS-configured or AC- or RC-NCOES course for their grade.

*(2)* AGR soldiers will complete only AC or TATS-configured NCOES courses prescribed as their promotion requirement unless otherwise authorized in this paragraph or an exception is granted by CNGB (NGB-ARH-E or NGB-ARM-P).. Effective 1 Apr 95, AGR soldiers may complete either AC- or RC- PLDC. Also, soldiers who enter the AGR program fully qualified in the NCOES for their next promotion (for BNCOC and ANCOC, this requires Phases I and II) will retain their qualification. Those selected to enter AGR tours who have started any portion of their required NCOES course may complete it and will be fully qualified. When selected for their next promotions, they must attend the course, and in the manner, prescribed for their grade and duty status (AGR must attend AC courses.) However, SSGs who completed RC-ANCOC in IDT status and entered AGR status, may be promoted to SFC under this position when selected by a SFC promotion board in AGR status and assigned to a SFC position. They are then fully NCOES-qualified for promotion to MSG based on that course when selected by a MSG promotion board in AGR status and assigned to a MSG (this includes 1SG) position. The prior qualification carryover factors in this paragraph who entered AGR status before 5 October 1992 and were required to complete AC-NCOES courses as a condition of continuation in AGR status. nor to the soldiers who are Military Technicians discussed in paragraph 11-31f below.

*(3)* SGTs through SFC who do not have credit for NCOES at the current levels as shown in a above when selected for promotion must complete a double NCOES training requirement, the first as the prerequisite for the second, which is the training required for the promotion. This required for all soldiers with dates of rank of 1 October 1992 and later. Soldiers with dates of rank before that date are considered NCOES-qualified in their current grades for entry to the next higher level NCOES course.

*(4)* Soldiers must start the next resident phase of their NCOES courses as prescribed by the proponent for their promotion requirement within two years after completing Phase I and before they may be considered by promotion boards for their next higher grades. NOTE: The basic premise of RC-NCOES courses is that NCOs complete Phase I and then enter the next resident phase of their NCOES course for their promotion within two years after completing Phase I. Then they must complete all phases of that course to satisfy the conditions of that promotion, and before consideration for promotion to their next higher grades. The Basic and Advanced NCO courses each comprise two or more phases. A one year waiver may be authorized per *d(1)* below. For courses with three or more phases. specific timelines are set in the course prerequisites by the course proponent. Waivers

transcript must have been submitted into channels within three months before the board to be recorded on qualification records, or submitted to the board president in hard copy with the soldier's memorandum to the president to warrant standby consideration.

*(7)* An award of a State or Federal Commendation Medal or higher award presented within three months before the date of the board was not recorded on official records, seen by the board in not recorded on official records, or not presented to the board when hard copy, or not presented to the board when provided in the soldier's memorandum to the president to warrant standby consideration.

*(8)* An annual or change of rater NCOER that was processed to the custodian of records in time to be filed before the date the board convened was not reviewed. NCOERs received on time but returned for administrative reasons may warrant standby consideration.

*(9)* Consideration in an MOS other than the soldier's PMOS or designated CPMOS.

*j.* The following reasons do not constitute material error and are not reasons for reconsideration.

*(1)* Omission of commendatory, congratulatory or service memoranda, certificates, letters or similar correspondence.

*(2)* Absence of documents written, prepared or computed after the date the board convened.

*(3)* Incorrect data on DA Form 2-1, NGB Form 4100-1-R-E, PQR and other records which the soldier reviewed prior to the date the board convened.

*(4)* Absence of official photograph or presence of an outdated one which the soldier did not update, when current photographs were required in the board MOI.

*(5)* Absence of an award lower than a commendation medal.

*(6)* Absence of documents not authorized for filing in records by AR 600-8-104.

*(7)* Absence of the completion document for an NCOES course, unless it was required for consideration and was completed before the date the board convened.

*(8)* A complete the record NCOER is an optional report and the absence of this report will not, under any circumstances, be a basis for reconsideration.

*k.* Correspondence such as letters and memoranda of commendation, appreciation, documents from third parties, and documents dated on or after the date the STAB convened will not be forwarded.

## Section XII
## Reductions in Grade

### 11-54. General

*a.* Sergeants and above are entitled to a board unless exempt per this section when being considered for reduction for inefficiency, misconduct, or due to civil conviction. They are not entitled to a board for administrative reduction or separation in a lower grade for failure to meet a condition or requirement for a promotion or assignment in this chapter such as NCOES training or a service remaining requirement for the promotion, or for loss of authorized grade due to reorganization or release from active duty. The reduction board will be convened unless the soldier waives the requirement in writing.

*b.* A commander who has the authority to advance or promote a soldier to a grade per paragraph 11-2 also has the authority to reduce a soldier from that grade.

*c.* The authority in this paragraph will not be used to reduce soldiers for actions of which they were acquitted as a result of courts-martial proceedings.

*d.* Revocation of illegal or erroneous promotion orders is not a reduction action in the meaning of this section. See paragraph 11-11 for revocation and related actions.

### 11-55. Voluntary reduction

If approved by the unit commander, a soldier may volunteer in writing on DA Form 4187 for reduction to any lower grade for reassignment to another position, another program, or to continue in service. The promotion authority may then administratively reduce the soldier without board action. Establish DOR as prescribed in paragraph 11-6j(1).

### 11-56. Failure to complete training

Reduce soldiers, without board action or appeal:

*a.* Who fail to complete OCS or Warrant Officer training to the grade held on the day before appointment to Candidate status as a SGT or SSG effective the date after they are no longer enrolled. Promotion authorities may reduce these soldiers to PFC or SPC only when they were appointed from grade PV2 and would have otherwise been eligible for advancement.

*b.* Who complete OCS or Warrant Officer training program, without accepting appointment or

commission, to the grade held before entering candidate status effective the date after they complete the program.

*c.* SMP participants who withdraw or who are eliminated from the ROTC Advanced Course to the grade held on the day before appointment to Cadet status as Sergeant or the grade to which the soldier would be entitled if enlisting under the provisions of chapter 2, but not below PV2.

*d.* Who accept commission or appointment, to the grade held on the day before entering candidate or cadet status effective on the day before commission or appointment. Soldiers will not be separated in special pay grades E5 or E6.

*e.* Who fail to successfully complete an NCOES course that is a condition of a promotion due to their failure to apply for, enter, meet standards, or through misconduct or voluntary withdrawal. Reduce these soldiers automatically effective on the date the soldier fails to apply for, enroll or be enrolled in a class for which selected, fails a course, withdraws from the course, or on expiration of the time set for completion at promotion. This service does not require a *de facto* determination; the soldier will retain the higher pay and allowances through the day before the effective date of reduction in a *de jure* status (by right.) However, TIMIG in the higher grade is not satisfactory service for future adjusted DOR if promoted again to the grade nor is it creditable towards retired pay in the higher grade or any other determination dependent upon the higher grade. This includes soldiers whose training was delayed or deferred when ordered to active duty for service during combat or contingency operations such as the one year completion requirement for NCOES after release from the period of active duty.

*f.* Promoted in their former MOS under reorganization guidance but who have refused or failed to qualify in the MOS for the new position to which assigned per the guidance in chapter 5 of this regulation.

*g.* Who were promoted per the rules in paragraph 11-27e(2).

**1-57. Reduction upon return from active duty.**

*a.* Soldiers returning to their ARNG units after being released from active duty (IADT, TTAD and Title 10 AGR, etc.) in a higher grade than held at the time of entry into such service, other than authorized advancements to grades that would have been gained per this chapter, may be retained in their higher grade for 6 months. Upon termination of the 6 months, soldiers not assigned to MTOE or TDA vacancies commensurate with their grade are reduced, reclassified, transferred to the ING, IRR, Retired Reserve, or discharged in accordance with chapter 8.

*b.* Waivers. One waiver for an additional 6 months may be approved by the State AG for Title 32 AGR. One waiver for an additional 6 months may be approved by NGB for Title 10 AGR personnel.

*c.* Soldiers released from active duty in a higher grade than held at time of entry into active Federal service, who are transferred to the ING or the IRR, are transferred in the higher grade.

**11-58. Other reasons for reduction**

Reduce soldiers without board action or appeal:

*a.* Who enlist or reenlist in a grade above those authorized by chapter 2, to the grade to which then entitled, effective the date of enlistment or reenlistment.

*b.* Who, 2 years after date of enlistment or reenlistment into lower graded positions in the Try One in the Guard program, have not been reassigned to a grade vacancy position commensurate with their grade.

*c.* Who involuntarily lose their positions due to unit reorganization, inactivation, full-time support utilization requirements or downgrading SPMD positions, and therefore cannot be properly utilized per chapter 5.

*(1)* If immediate reassignment is not appropriate, retain them in current grade for up to one year before involuntarily reducing or reclassifying them to fill valid positions.

*(2)* When it is not possible to properly assign these soldiers, transfer them to the ING or IRR. NOTE: Full time soldiers not affected by force structure changes may not be involuntarily moved to lower graded AGR positions or reduced because of that assignment.

*d.* Failure to meet the service remaining requirement in paragraph 11-10.

*e.* To enter a training program that requires a lower entry grade to qualify for another position in the same or another unit.

*f.* Reduction for failure to meet the criteria of a conditional promotion other than training, such as prior authority to use interim clearances for promotion, etc.

**11-59. Enlistment in lower grade**

Enlistment or reenlistment at a lower grade in the