**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **WILLIAM A. CLARK, et. al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 00-644** |
| **v.** | ) | **(Chief Judge Damich)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' PROPOSED ADDITIONAL FACTS**

Pursuant to Rule 56(h)(2) of the Rules of the United States Court of Federal Claims, the United States respectfully submits the following response to plaintiffs proposed additional facts.

1. The Secretaries have exercised their statutory authority to prescribe individual training, including correspondence course work, as an essential component of the military's comprehensive program for training individuals and units to meet war-time mission requirements.

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 1 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that the Secretary's[1] regulations that prescribe training for the Army National Guard ("ARNG")[2] are consistent with the nearly one-hundred years of legislative history that sets forth the composition, role, and authorized training of the ARNG in the nation's force structure. Defendant further avers that National Guard training is conducted solely pursuant to Title 32 of the U.S. Code, and

---

[1] Throughout this response, the term "Secretary" is used. Depending upon the circumstances, facts and supporting documentation, "Secretary" refers to the Secretary of Defense, Secretary of the Army, Secretary of the Air Force, or any combination of the three.

[2] Because the lead plaintiff, Mr. Clark, is a member of the ARNG, references in this brief generally are to the ARNG, however the discussion is of equal applicability to the plaintiffs who are members of the Air National Guard ("ANG").

is governed by Dep't of Defense Directive 1215.6, Uniform Reserve, Training, and Retirement Categories, (Mar. 14, 1997) ("DODD 1215.6"); Dep't of Defense Directive 1215.13, Reserve Component Member Participation Policy, (Dec. 14, 1995)("DoDD 1215.13"); Dep't of Defense Instruction 1215.19, Uniform Reserve, Training and Retirement Category Administration, (Dec. 12, 2000) ("DODI 1215.19"); and, National Guard Regulation (AR) 350-1, Training: Army National Guard Training, (Jun. 3, 1991) ("NGR(AR) 350-1"). In these regulations, the Secretary has prescribed three types of duty where ARNG soldiers may conduct training: Active Duty ("AD" or active duty training "ADT"), Inactive Duty Training ("IDT"), and Full-Time National Guard duty ("FTNGD").

2. The Secretaries of the Air Force and Army have prescribed correspondence courses as prerequisites to and as substitutes for completing required "in residence" training for which National Guard members are compensated.

**RESPONSE:** Defendant disagrees. The statements contained in paragraph 2 constitutes plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that the document plaintiffs cite for support for the statements contained in paragraph 2, Army Regulation 351-1, Schools: Individual Military Education Training, 15 October 1987 ("AR 351-1"), does not apply to the Secretary of the Air Force. Defendant further avers that the Secretary has prescribed only three types of training: 1) ADT, 2) IDT, and 3) FTNGD. See DODD 1215.6; DODD 1215.13; DODI 1215.19; and, NGR(AR) 350-1. Defendant also avers that completing correspondence courses is not prescribed training for ARNG soldiers in an AD, IDT, or FTNGD status.

3. National Guard training involves required unit training pursuant to 32 U.S.C. 502(a), which "develops critical components of combat readiness."

**RESPONSE:** Defendant agrees that National Guard training involves required unit training pursuant to 32 U.S.C. 502(a). Defendant avers that the Secretary has only prescribed training pursuant to 32 U.S.C. 502(a) in DODD 1215.6; DODD 1215.13; DODI 1215.19; and, NGR(AR) 350-1. Defendant further avers that the sources plaintiffs cite for support for the statements contained in paragraph 3, Army Regulation 350-1, Training: Army Training and Education, 9 April 2003 ("AR 350-1"), and Field Manual 7-0, Training The Force, October 2002, do not prescribe training. Defendant also avers that AR 350-1 does not apply to the ARNG, and FM 7-0 merely establishes overarching general guidance for its members to understand how the Army plans and executes training and develops future leaders.

4. National Guard training also includes required individual training pursuant to 32 U.S.C. 502(f), which "[p]roduces soldiers capable of performing [their] military occupational specialty (MOS)" and other tasks.

**RESPONSE:** Defendant disagrees. The statements in paragraph 4 constitutes plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that 32 U.S.C. 502(f) limits the Secretary to authorizing "full time National Guard" and "other" duty, and section 502(f) has been used as authority for the ARNG in very limited circumstances to allow ARNG members to perform missions or duties other than "training" in a FTNGD status. This duty includes counter-drug duty pursuant to 32 U.S.C. § 112(b) and weapons of mass destruction civil support teams pursuant to 10 U.S.C. § 12310(c)(1). DA 645, Audino Decl. ¶ 4. Defendant

further avers that the source plaintiffs cite for support, AR 350-1, does not prescribe training, nor does it apply to the ARNG.

5. The three pillars of the National Guard training and education include collective training (unit training), individual training, and self-development training.

**RESPONSE:** Defendant disagrees. The statements in paragraph 5 constitutes plaintiffs' legal conclusions, not statements of fact. Defendant further avers that the sources plaintiff cite for support for the statement contained in paragraph 5, AR 350-1 and FM 7-0, do not prescribe training. AR 350-1 does not apply to the ARNG, and FM 7-0 merely establishes overarching general guidance for its members to understand how the Army plans and executes training and develops future leaders.

6. The Commanding General of the U.S. Army Training and Doctrine Command ("TRADOC") is responsible to develop and execute "individual training to meet the Army's individual training goals."

**RESPONSE:** Defendant disagrees. The statements contained in paragraph 6 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant further avers that the authority of the Commanding General of the TRADOC, as set forth in AR 350-1, does not apply to the ARNG.

7. TRADOC has designed the Total Army Training System ("TATS") and has designated the "non-resident" Army Correspondence Course Program ("ACCP") as an essential component of TATS which is "required in support of work place learning".

**RESPONSE:** Defendant disagrees. Defendant avers that the sources plaintiffs cite for support, Army Regulation 351-1, Schools: Individual Military Education and Training, 15

October 1987 ("AR 351-1"), and TRADOC Regulation 350-70, Systems Approach to Training, Management, Process, and Products, 9 March 1999 ("TRADOC Reg 350-70"), do not support the statements contained in paragraph 7. Defendant further avers that AR 351-1 has been superseded by AR 350-1, and AR 350-1 does not apply to the ARNG.

8. The "nonresident" training or programs are synonymous with correspondence work.

**RESPONSE:** Defendant disagrees. The statements contained in paragraph 8 are plaintiffs legal conclusions and not statements of fact. Defendant avers that the source plaintiffs cite for support for the statement contained in paragraph 8, AR 351-1, does not support the statements contained in paragraph 8. Defendant further avers that AR 351-1 has been superseded by AR 350-1, and AR 350-1 does not apply to the ARNG.

9. Through TATS guard members receive required individual training which provides "standard resident and nonresident (distance learning) training and education...."

**RESPONSE:** Defendant disagrees. The statements in paragraph 9 constitutes plaintiffs' legal conclusions, not statements of fact. Defendant avers that the source plaintiffs cite for support for the statements in paragraph 9, FM 7-0, does not support the statements contained in paragraph 9.

10. The Secretary of the Army has differentiated ACCP courses taken from by active Guard members from voluntary programs.

**RESPONSE:** Defendant disagrees. The statements contained in paragraph 10 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that the source plaintiffs cite for support of the statements contained in paragraph 10, AR 351-1, does not support the statements contained in paragraph 10. Defendant further avers that plaintiffs have

asserted that they were not "active Guard members" for the purposes of this lawsuit. Accordingly, defendant also avers that the statements contained in paragraph 10 are irrelevant.

11. Plaintiffs completed military correspondence courses to satisfy on-duty National Guard training requirements.

**RESPONSE:** Defendant disagrees. The statements in paragraph 11 constitutes plaintiffs' legal conclusions, not statements of fact. Defendant avers that the Secretary has only prescribed training pursuant to 32 U.S.C. 502(a) in DODD 1215.6; DODD 1215.13; DODI 1215.19; and, NGR(AR) 350-1. Defendant further avers that pursuant to section 37 U.S.C. § 206(b), the Secretary has prescribed strict requirements for compensating ARNG training. See NGR(AR) 350-1, Chapter 2.

12. Regulations promulgated before 37 U.S.C. § 206 was amended provide that the Army Correspondence Course Program applies to members of the "National Guard."

**RESPONSE**: Defendant lacks sufficient information to agree or disagree with the statements contained in paragraph 12 because plaintiffs do not explain which time 37 U.S.C. § 206 was amended that they are referring to in paragraph 12. Defendant does agree that Department of the Army Pamphlet 351-20, Schools: Army Correspondence Course Program Catalog, 28 April 2000 ("DA PAM 351-20"), applies to the Army National Guard. Defendant does not agree that Department of the Army Pamphlet 350-59, Schools: Army Correspondence Course Program Catalog, 26 October 2001 ("DA PAM 350-59"), applies to the Army National Guard. DA PAM is specifically limited to the Army National Guard of the United States ("ARNGUS"). Defendant avers however that both DA PAM 351-20 and DA PAM 350-59 establish that the Army Correspondence Course Program is only available to "U.S. Active and

Reserve military officers, warrant officers, and enlisted personnel . . ." See DA PAM 351-20, ¶ 1-6; DA PAM 350-59, ¶ 1-6. Defendant further avers that if plaintiffs completed correspondence courses pursuant to these regulations, they did so in their ARNGUS status, or as civilians.

13. The Air Force Extension Course Program ("ECP") is a mandatory training program.

**RESPONSE**: Defendant disagrees. The statements in paragraph 13 constitutes plaintiffs' legal conclusions, not statements of fact. Defendant avers that the source plaintiffs cite for support of the statements contained in paragraph 13, Air Force Instruction 36-2201, Vol. 4, Air Force Training Program, Managing Advanced Distributed Learning, October 23, 2002 ("AFI 36-2201"), does not support the statements contained in paragraph 13. Defendant further avers that the Secretary has only prescribed training pursuant to 32 U.S.C. 502(a) in DODD 1215.6; DODD 1215.13; DODI 1215.19; and, NGR(AR) 350-1.

14. A report entitled the "History of the Extension Course Institute" provides that since 1963 the ECP is a mandatory program.

**RESPONSE**: Defendant disagrees. The statements in paragraph 14 constitutes plaintiffs' legal conclusions, not statements of fact. Defendant avers that the source plaintiffs cite for support of the statements contained in paragraph 14, does not support the statements contained in paragraph 14.

15. "Duty" qualification is a priority for National Guard members.

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 15 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that the sources plaintiff cite for support of the statements contained in paragraph 15, paragraphs 1-49 and 4-22 of FM 7-0, do not support the statements contained in paragraph 15. The sources

plaintiffs cite for support apply only to Reserve Component unit-commanders, and not members of the ARNG.

16. Advancement training can be achieved by correspondence course work and is another form of individual training to ensure unit readiness.

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 16 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that the sources plaintiff cites for support of the statements contained in paragraph 16; FORSCOM/ARNG/USAR Regulation 350-2, Training Reserve Component Training, 27 October 1999 ("FORSCOM Reg 350-2") and FM 7-0, do not support the statements contained in paragraph 16. Paragraph 1-3, of FORSCOM Reg 350-2 states:

> The goal of Army training is to produce **trained units** capable of executing wartime or other assigned missions; the objective of Army training is **ready units**; the foundation of unit readiness are: Duty Military Occupational Specialty Qualified (DMOSQ) soldiers, developed leaders, and unit cohesion.

Defendant avers that FORSCOM Reg 350-2 also states that unit training is executed during IDT. FORSCOM Reg, ¶¶ 1-4f.(3), 4-2. Paragraph 1-24 of FM 7-0 discusses why "[c]ompetent and confident leaders are a prerequisite to the successful training of ready units." Defendant further avers that the words "advancement training" do not appear in either FORSCOM Reg 350-2 or FM 7-0. Similarly, the words "correspondence course work" do not appear in FM 7-0. Defendant also avers that the words "correspondence courses" only appears once in FORSCOM Reg 350-2, when the regulation discusses "self-development." FORSCOM Reg 350-2, ¶ 5-1.c. Noteworthy, is the fact that the words "correspondence courses" do not appear in FORSCOM

Reg 350-2's discussion on Institutional or Operational training. See FORSCOM Reg 350-2, ¶¶ 5-1.a & 5-1.b.

17. Professional military education courses are required forms of individual training.

**RESPONSE**: Defendant disagrees. The statement in paragraph 17 constitutes plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that the source plaintiffs cite for support of the statements contained in paragraph 17, paragraph 1-29 of FM 7-0, does not support the statements contained in paragraph 17. Defendant further avers that the Secretary has prescribed only three types of training duty for the ARNG: 1) ADT, 2) IDT, and 3) FTNGD. See DODD 1215.6; DODD 1215.13; DODI 1215.19; and, NGR(AR) 350-1.

18. Professional military education courses develop Army leaders and prepare leaders for their next assignment and higher-level responsibility.

**RESPONSE**: Defendant agrees.

19. Individual training provided through correspondences is necessary for Guard members to be qualified within their military specialty.

**RESPONSE**: Defendant disagrees. The statement in paragraph 19 constitutes plaintiffs' argument and legal conclusions, not a statement of fact. Defendant avers that there is no regulatory basis for the statements contained in paragraph 19. Defendant further avers that members of the ARNG who are non-prior service enlistees receive their qualifying military occupational specialty ("MOS") training in an Initial Active Duty for Training ("IADT") status. See Army Regulation 135-200, Active Duty for Missions Projects and Training for Reserve Component Soldiers, ("AR 135-200") 1 Sep 1994 ¶ 5-2; AR 135-200 30 JUN 99, ¶¶ 5-2, 5-3.

20. Guard members must be qualified within their specialty to be deployed.

**RESPONSE**: Defendant disagrees. The statement in paragraph 20 constitutes plaintiffs' argument and legal conclusions, not statements of facts. Plaintiffs fail to cite to any regulation or directive to support the legal conclusions plaintiffs assert in paragraph 20 as fact. Defendant avers that members of the ARNGUS must be MOS qualified to be deployed and may only be deployed while in a Federal status; however, members of the ARNG are not deployed.

21. Professional development education provided through correspondence courses gives officers indispensable training by providing them with skills necessary to fulfill responsibilities as officers and leaders within the Guard.

**RESPONSE**: Defendant disagrees. The statement in paragraph 21 constitutes plaintiffs' argument and legal conclusions, not statements of facts. Defendant avers that the only members eligible to enroll in correspondence courses are "U.S. Active and Reserve military officers, warrant officers, and enlisted personnel . . ." See DA PAM 351-20, ¶ 1-6. Defendant further avers that if plaintiffs completed correspondence courses pursuant to these regulations to acquire "skills necessary to fulfill responsibilities as officers and leaders within the Guard," they did so in their ARNGUS status, or as civilians.

22. Professional development courses, including the Combined Arms and Services Staff School, improve "each officer's ability to analyze and solve military problems ... to interact and coordinate as a member of a staff ... to communicate," and to understand "Army organization, operation and procedures."

**RESPONSE**: Defendant disagrees. The statement in paragraph 22 constitutes plaintiffs' argument and legal conclusions, not statements of facts.

23. Task-based correspondence courses, such as Army MOS-based courses and Air Force Career Development Courses, provide members the skills necessary to perform their functions within the National Guard.

**RESPONSE**: Defendant disagrees. The statement in paragraph 23 constitutes plaintiffs' argument and legal conclusions, not statements of facts. Defendant avers that while Jane Doe 1 might believe correspondence courses provided her with the "skills necessary to perform [her] functions within the National Guard," the only members eligible to enroll in correspondence courses are "U.S. Active and Reserve military officers, warrant officers, and enlisted personnel . . ." See DA PAM 351-20, ¶ 1-6. Thus, defendant further avers that if Jane Doe 1 acquired "skills necessary to perform [her] functions within the National Guard" by completing correspondence courses, then Jane Doe 1 acquired those skills in her ARNGUS capacity or as a civilian.

24. Military correspondence courses are required to assist guard members perform their job.

**RESPONSE**: Defendant disagrees. The statement in paragraph 24 constitutes plaintiffs' argument and legal conclusions, not a statement of fact. Defendant avers that while John Doe 4 might personally believe that he "requires" correspondence courses to perform his job in the ARNG, the only members eligible to enroll in correspondence courses are "U.S. Active and Reserve military officers, warrant officers, and enlisted personnel . . ." See DA PAM 351-20, ¶ 1-6. Thus, defendant further avers that if John Doe 4 acquired skills to assist him perform his job in the ARNG by completing correspondence courses, then John Doe 4 acquired those skills in his ARNGUS capacity or as a civilian.

25. The Secretary of the Army has prescribed that Guard personnel are responsible for improving their professional knowledge and has identified nonresident instruction achieved through correspondence course work as the primary method to accomplish this task.

**RESPONSE**: Defendant disagrees. The statements in paragraph 25 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that the source plaintiff cites for support, AR 351-1, does not prescribe training for members of the ARNG. AR 351-1, ¶ 2-8 states that the Chief, National Guard Bureau "is responsible for military and education and training concepts, policies and programs for personnel and units of the ARNG . . ." The Chief, National Guard Bureau has only prescribed training policies for the ARNG in NGR (AR) 350-1. Defendant also avers that AR 351-1, ¶ 1-11 states that DA Pam 351-20 outlines the Army's correspondence course program. DA PAM 351-20 explains that the only members eligible to enroll in correspondence courses are "U.S. Active and Reserve military officers, warrant officers, and enlisted personnel . . ." See DA PAM 351-20, ¶ 1-6. Furthermore, defendant avers that the Secretary has prescribed only three types of training duty for the ARNG: 1) ADT, 2) IDT, and 3) FTNGD. See DODD 1215.6; DODD 1215.13; DODI 1215.19; and, NGR(AR) 350-1

26. The Secretary of the Army and Air Force have directed that all Guard members, including noncommissioned officers, warrant officers and commissioned officers, are responsible for training themselves through personal self-development.

**RESPONSE**: Defendant does not disagree that members of the military "are responsible for training themselves through personal self-development." Defendant disagrees that the Secretary of the Army or the Secretary of the Air Force have "directed" that members "are responsible for training themselves through personal self-development." Defendant avers that

the sources plaintiffs cite for support for the statement contained in paragraph 26 do not support the statement contained in paragraph 26.

27. The Secretary of the Air Force requires Guard members to complete Career Development Courses ("CDCs"), which are correspondence courses that instruct Air Guard members in their job specialties identified by Air Force Specialty Codes ("AFSCs").

**RESPONSE**: Defendant disagrees. The statements in paragraph 27 constitutes plaintiffs' argument and legal conclusions, not statements of fact. Additionally, defendant avers that airmen are never required to take a correspondence course.

28. The CDC courses are available only as correspondence courses.

**RESPONSE**: Defendant disagrees. The statements in paragraph 28 constitutes plaintiffs' argument and legal conclusions, not statements of fact.

29. The Air University website provides that only those members who are required to take CDC courses may sign up.

**RESPONSE**: Defendant disagrees. Defendant avers that Airmen are not required to take CDC courses. Defendant further avers that the website uses the word 'required' in the context of eligibility; that is, the airman is eligible to take the CDC because it is a prerequisite to satisfy a certain skill level in the airman's specialty. Airmen volunteer to complete these prerequisites.

30. Only taking CDCs can satisfy a significant number of Air Force job specialties.

**RESPONSE**: Defendant disagrees. Air Force Specialties can be obtained without CDCs. Defendant agrees that CDCs may be a prerequisite to advance within a Specialty, for example, to achieve a 5-skill level. Defendant further avers that a prerequisite to complete a CDC for a particular skill level can be waived.

31. Army Guard and Air Guard Commanders are responsible for ensuring all unit personnel are trained to perform their respective functions.

**RESPONSE**: Defendant does not disagree. Defendant avers however, that the sources plaintiff cites for support of the statements contained in paragraph 31, FORSCOM Reg 350-2 and FM 7-0, do not support the statements contained in paragraph 31. Paragraph 1-4, of FORSCOM Reg 350-2 discusses training strategy. Defendant notes that paragraph 1-4 of FORSCOM Reg 350-2 establishes that training will occur during periods of IDT or active duty. Paragraph 1-14 of FM 7-0 discusses joint training at the strategic level and does not involve ARNG training. Paragraph 1-19 discusses strategic training philosophy. The relevant sentence in paragraph 19 is: Commanders have the ultimate responsibility to train soldiers and develop leaders who can adjust to change with confidence and exploit new situations, technology and developments to their advantage.

32. Army Guard commanders have been directed to ensure that training is a number one priority.

**RESPONSE**: Defendant disagrees. The statements in paragraph 27 constitutes plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that the source plaintiffs cite for support for the statements contained in paragraph 32, FM 7-0, does not support the statements contained in paragraph 32. Defendant does agree that training is the number one priority of any commander, however, defendant avers that it is "unit" training that is a number one priority. Defendant further avers that FM 7-0 does not prescribe training. FM 7-0 merely establishes overarching general guidance for its members to understand how the Army plans and executes training and develops future leaders.

33. The Secretary of the Army has authorized commanders to order Army Guard members to perform supplemental training to ensure that individual training requirements are satisfied.

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 33 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that the source plaintiffs cite for support for the statements in paragraph 33, paragraph 1-2 of National Guard Regulation 350-1, Training: Army National Guard Training, 30 Nov. 1983 ("NGR 350-1 (obsolete version"), does not support the statements contained in paragraph 34. Paragraph 1-2 of NGR 350-1 (obsolete version) allows for supplemental training in a full-time status. Moreover, paragraph 1-2 of NGR 350-1 (obsolete version) makes clear that the cited regulation "established guidance for the execution of policies and procedures for training units," not individuals. Defendant further avers however that plaintiffs source for the statement contained in paragraph 33, National Guard Regulation 350-1, Army National Guard Training, 30 NOV 83 ("NGR 350-1"), was superseded in June 1991. The June 1991 version of NGR 350-1, which is still in effect, does not contain the referenced language. Defendant also avers that any training ordered by ARNG commanders must be in a duty status prescribed by the Secretary and in accordance with standards established by the Secretary. The Secretary has prescribed only three types of training duty for the ARNG: 1) ADT, 2) IDT, and 3) FTNGD. See DODD 1215.6; DODD 1215.13; DODI 1215.19; and, NGR(AR) 350-1.

34. Supplemental training includes training conferences, training seminars, and the correspondence courses within the Army Correspondence Course Program.

**RESPONSE**: Defendant does not disagree. Defendant avers that NGR 350-1 (obsolete version) allows for supplemental training in a full-time status. Moreover, paragraph 1-2 of NGR 350-1 (obsolete version) makes clear that the cited regulation "established guidance for the execution of policies and procedures for training units," not individuals. Defendant further avers that if plaintiffs obtained supplemental training, it had to have been accomplished in a full-time duty status for unit-based missions. Defendant also avers that the plaintiffs source for the statement contained in paragraph 34, National Guard Regulation 350-1, Army National Guard Training, 30 NOV 83 ("NGR 350-1"), was superseded in June 1991. The June 1991 version of NGR 350-1, which is still in effect, does not contain the referenced language.

35. The Secretary of the Air Force has delegated authority to Air Guard officers and noncommissioned officers to give lawful orders in the exercise of their duties, which specifically includes completion of proficiency training and professional military education courses through correspondence course work.

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 35 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that Air Force Instruction, 51-604, Appointment and Assumption of Command, 1 October 2000 ("AFI 51-604), on applies to plaintiffs as members of the Air National Guard of the United States. Defendant further avers that the Secretary does not "delegate" authority to issue orders because that authority is inherent in the rank of the individual.

36. Mr. Clark and other Army Guard members Plaintiffs have completed numerous correspondence courses to satisfy individual training requirements.

**RESPONSE**: Defendant does not disagree that plaintiffs have completed correspondence courses. Defendant avers however, that the Secretary has prescribed only three types of training for the ARNG: 1) ADT, 2) IDT, and 3) FTNGD. DODD 1215.6; DODD 1215.13; DODI 1215.19; and, NGR(AR) 350-1. Furthermore, DA PAM 351-20 explains that the only members eligible to enroll in correspondence courses are "U.S. Active and Reserve military officers, warrant officers, and enlisted personnel . . ." See DA PAM 351-20, ¶ 1-6. Thus, defendant disagrees that Mr. Clark and the other Army plaintiffs who have elected to complete correspondence courses, completed correspondence courses as members of the ARNG. Defendant further avers that if plaintiffs completed correspondence courses "to satisfy individual training requirements," they did so in their ARNGUS status, or as civilians.

37. The Air Guard member Plaintiffs have also been required to complete CDCs as required individual training for duty qualification.

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 37 constitute plaintiffs' argument and legal conclusions, not statements of fact.

38. Army correspondence courses provide an "equal level of attainment with resident instruction" and are "required"to:

(1) Enable personnel of all Army components to obtain or further their military education.

(2) Provide education which must be completed as a prerequisite for promotion of ARNG and USAR personnel not on active duty.

(3) Accommodate and supplement skill progression and MOS functional courses. These courses provide for "training up" of soldiers to support duty position specific skills in career assignments prior to attendance at resident schools or when resident school is not available or

feasible.

**RESPONSE**: Defendant agrees that paragraph 7-6 of AR 351-1 states that "successful completion of Army nonresident instruction is considered on an 'equal level of attainment with resident instruction.'" Defendant disagrees that correspondence courses are "required" by the Secretary for the purposes asserted by plaintiffs in paragraph 38. Defendant avers that the source plaintiff cites for support, AR 351-1, does not prescribe or "require" training for members of the ARNG. Defendant further avers that AR 351-1 states that the Chief, National Guard Bureau "is responsible for military and education and training concepts, policies and programs for personnel and units of the ARNG . . ." The Chief, National Guard Bureau has only prescribed training policies for the ARNG in NGR (AR) 350-1. Defendant also avers that AR 351-1, ¶ 1-11 states that DA Pam 351-20 outlines the Army's correspondence course program. DA PAM 351-20 explains that the only members eligible to enroll in correspondence courses are "U.S. Active and Reserve military officers, warrant officers, and enlisted personnel . . ." See DA PAM 351-20, ¶ 1-6.

39. An Army study concluded that distance education technologies produce student with equivalent or superior levels of knowledge than students of in-resident instruction for many subject areas.

**RESPONSE**: Defendant agrees.

40. An Army study also concluded that distance education provides other advantages over resident courses, including: 1) greater flexibility and shorter instruction time; 2) reduced equipment and infrastructure costs; and, 3) elimination or reduction in travel costs.

**RESPONSE**: Defendant agrees.

41. Air Guard noncommissioned officers have been directed to "seek every opportunity for continued professional development (by in-resident and/or correspondence)" courses, and have been authorized to satisfy these training requirements through completion of correspondence courses.

**RESPONSE**: Defendant does not disagree that ANG "noncommissioned officers have been directed to 'seek every opportunity for continued professional development (by in-resident and/or correspondence)'" courses. Defendant disagrees that members of the ANG have been "authorized to satisfy these training requirements through completion of correspondence courses." Defendant further avers that if plaintiffs completed correspondence courses as contended in paragraph 41, they did so based on their membership in the Air National Guard of the United States ("ANGUS"), or as a civilian. Defendant also avers that if plaintiffs did complete correspondence courses, they did so in a voluntary, non-compensable status.

42. Resident training alone is insufficient to satisfy all training requirements for all Guard members.

**RESPONSE**: Defendant disagrees. The statement contained in paragraph 42 constitutes plaintiffs' argument and legal conclusion, not a statement of fact. Defendant avers that the source plaintiffs cite for support of the statements contained in paragraph 42, Department of the Army Pamphlet 350-58, The Enduring Legacy: Leader Development for America's Army, 13 October 1994 ("DA Pam 350-58"), does not support the statements contained in paragraph 42.

43. A study commissioned by the Army determined that many students cannot satisfy individual training requirements through in-resident courses because "not enough school seats were allocated to their unit ..."

**RESPONSE**: Defendant agrees.

44. Shortages of in-resident course availability have prevented Plaintiffs from completing required individual training through in-resident programs, and required the completion of correspondence courses instead.

**RESPONSE**: Defendant disagrees. The statement contained in paragraph 44 constitutes plaintiffs' argument and legal conclusion, not a statement of fact. Defendant avers that plaintiffs have not provided any evidence that demonstrates that they, their units, or their respective state guard bureaus, have ever requested slots for plaintiffs to attend the in-resident military courses they assert they could not get slots to attend.

45. By serving as substitutes for in-resident programs, correspondence courses, along with other types of distance learning programs, make up the chronic shortage of available in-resident slots for enlisted professional development courses.

**RESPONSE**: Defendant disagrees. The statement contained in paragraph 45 constitutes plaintiffs' argument and legal conclusion, not a statement of fact. Defendant avers that there is no legal basis for plaintiffs' contention that correspondence courses are "substitutes for in-resident programs."

46. The Commander's Safety Course, a portion of the Warrant Officer Advanced Course Phase I of the Battalion/Brigade Pre-Command Course, and several mandatory correspondence courses for Army Guard paralegals are required Army Correspondence courses with no in-resident option.

**RESPONSE**: Defendant disagrees. The statement contained in paragraph 46 constitutes plaintiffs' argument and legal conclusion, not a statement of fact. Defendant avers that the

sources plaintiffs cite for support of the statement contained in paragraph 46, do not support the statements contained in paragraph 46. The August 14, 2003 message that discusses the Commander's Safety Course is addressed to the active component, and not the ARNG. DA PAM 351-20 explains that the Army Correspondence Course Program is only available to "U.S. Active and Reserve military officers, warrant officers, and enlisted personnel . . ." See DA PAM 351-20, ¶ 1-6. Defendant further avers that DA PAM 350-58 is inapplicable as cited. Defendant also disagrees that the course plaintiffs mention in paragraph 46 are "mandatory" or "required." Finally, defendant avers that if plaintiffs completed correspondence courses to attain credit for any of the courses listed in paragraph 46, they did so voluntarily, as members of the ARNGUS or as civilians.

47. The service Secretaries treat correspondence courses as educational "equivalents" to required in-resident courses for which Guard members always have received compensation.

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 47 constitute plaintiffs' argument and legal conclusion, not a statement of fact. Defendant avers that the sources plaintiffs cite for support of the statements contained in paragraph 47, AR 350-1, AR 351-1, and TRADOC Regulation 350-10, Institutional Leader Training and Education, 12 Aug 2003, do not support the statements contained in paragraph 47. AR 350-1 does not apply to plaintiffs because AR 350-1 only applies to the ARNGUS. AR 351-1 applies to the ARNG, but AR 351-1, does not prescribe training for members of the ARNG. AR 351-1, ¶ 2-8 specifically states that the Chief, National Guard Bureau "is responsible for military and education and training concepts, policies and programs for personnel and units of the ARNG . . ." The Chief, National Guard Bureau has only prescribed training policies for the ARNG in NGR (AR) 350-1.

Defendant also avers that AR 351-1, ¶ 1-11 states that DA Pam 351-20 outlines the Army's correspondence course program. DA PAM 351-20 explains that the only members eligible to enroll in correspondence courses are "U.S. Active and Reserve military officers, warrant officers, and enlisted personnel . . ." See DA PAM 351-20, ¶ 1-6. Defendant avers that correspondence courses address similar areas of instruction as in-resident training and members who complete correspondence courses for self-development do receive recognition for doing so, correspondence courses are not "equivalent" for "equivalent training" purposes.

48. The Secretary of the Army has prescribed that "[d]iplomas and certificates issued will not reflect nonresident [training]. They will only contain the title of the course, to preclude resident courses from being recognized more favorably than other courses.

**RESPONSE**: Defendant agrees.

49. Army Guard members taking nonresident courses are also evaluated using the same form used to evaluate students of nonresident courses.

**RESPONSE**: Defendant does not disagree if plaintiffs contention in paragraph 49 is that as members of the ARNGUS, members taking nonresident courses are also evaluated using the same form used to evaluate students of nonresident courses. Defendant avers that the source plaintiffs cite for support for the statements contained in paragraph 49, AR 351-1, states that DA Pam 351-20 outlines the Army's correspondence course program. DA PAM 351-20 explains that the only members eligible to enroll in correspondence courses are "U.S. Active and Reserve military officers, warrant officers, and enlisted personnel . . ." See DA PAM 351-20, ¶ 1-6. Army National Guard members enroll in correspondence courses as members of the ARNGUS.

50. The Secretary of the Air Force has directed that "nonresident programs mirror resident programs to the extent practical."

**RESPONSE**: Defendant agrees.

51. Correspondence courses are required as "training requirements" in the "Army Individual Training Requirements and Resources System" (ATRRS), AR 350-10…"

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 51 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that the document plaintiffs cite for support for the statements in paragraph 51, Army Regulation 350-10, Army Individual Training Requirements and Resources System, 14 September 1990 ("AR 350-10"), does not support the statements asserted in paragraph 51. Defendant further avers that the words "correspondence courses" are not contained in AR 350-10.

52. The Secretary of the Army has specified that courses representing training requirements be loaded into ATRRS, and this "training requirements" system contains a catalog of resident and nonresident training courses.

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 52 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that the document plaintiffs cite for support for the statements in paragraph 52, AR 350-10, does not support the statements asserted in paragraph 52. Defendant further avers that the word "nonresident" is not contained in AR 350-10.

53. The Secretary of the Army does not permit Guard members to sign up for nonresident or correspondence courses if the member has already attained the competencies taught in the course by some other means.

**<u>RESPONSE</u>**: Defendant disagrees. The statements contained in paragraph 53 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that paragraph 3-8.a.(2) of AR 351-1 actually states:

> Persons who receive constructive or equivalent credit for a course are not eligible or required to attend the respective resident or nonresident, or correspondence course."

Defendant further avers that paragraph 3-8.b.(1) - (3) sets forth a list of reasons that allow credit to be granted, and completing correspondence courses is not on that list.

54. Both the Army and Air Guard plaintiffs have completed required leadership development courses through correspondence course work as full substitutes to resident courses, these courses include: See, e.g., Command and General Staff College, ACCP ¶ 4-60, App.___, Noncommissioned Officer Academy Course, AFIADL Catalog, pp. 20-24, App.___, Senior Noncommissioned Officer Academy Course, AFIADL Catalog, pp. 25-29, App.___, Squadron Officer School, AFIADL Catalog, pp. 29-34, App.____, and Air Command and Staff College, AFIADL Catalog, pp. 34-38, App.___.

**<u>RESPONSE</u>**: Defendant disagrees. The statements in paragraph 54 constitutes plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that the Secretary has prescribed only three types of training: 1) ADT, 2) IDT, and 3) FTNGD. While correspondence courses may be prerequisites for certain positions and advancement in their units, correspondence courses are not prescribed as ADT, IDT, or FTNGD. Defendant further avers that ARNG members who choose to complete correspondence courses, do so as members of the ARNGUS or as civilians.

55. The Secretary of the Air Force has also prescribed a nonresident version of the Air War College.

**RESPONSE**: Defendant agrees that the Secretary has established a nonresident Air War College. Defendant disagrees that the Secretary has "prescribed a nonresident version of the Air War College." Defendant avers that at this senior level of professional military education, selection for in-residence attendance is competitive and selections are made on a best-qualified basis. See Air Force Instruction 36-2301, Personnel, Professional Military Education, 27 June 2002, para 3.2 ("AF 36-2301"). Defendant further avers that the Air Force Personnel Center is tasked to select those officers "who have potential to be in key leadership positions" to attend resident PME schools. The courses are sufficiently different that completing nonresident PME programs will not affect eligibility for resident PME programs. See AFI 36-2301, para 3.2.1.

56. There are several multi-phased leadership development courses prescribed by the Secretary of the Army that involve both resident phases of instruction and phases available only through correspondence course work, these correspondence courses include: RC Basic Noncommissioned Officer Course (Phase II of III).

**RESPONSE**: Defendant disagrees. The statements in paragraph 56 constitutes plaintiffs' argument and legal conclusions, not statements of fact. Defendant does not disagree that there are military courses that are conducted in phases. Defendant avers that because the Secretary has prescribed only three types of training: 1) ADT, 2) IDT, and 3) FTNGD; if plaintiffs chose to complete correspondence courses for these courses, they did so as members of the ARNGUS or as civilians. Defendant also notes that the course plaintiffs specifically note in

paragraph 56, "RC Basic Noncommissioned Officer Course (Phase II of III)," specifically applies to the Reserve Component.

57. The Army Guard plaintiffs also have completed correspondence courses that are prerequisites to participating in required in-resident training programs.

**RESPONSE**: Defendant disagrees. The statement in paragraph 57 constitutes plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that the Secretary has prescribed only three types of training duty for the ARNG: 1) ADT, 2) IDT, and 3) FTNGD. See DODD 1215.6; DODD 1215.13; DODI 1215.19; and, NGR(AR) 350-1. Defendant further avers that John Doe 1 chose, or volunteered, to become a Warrant Officer, which certain correspondence course work was a prerequisite for eligibility to become a warrant officer. Defendant also avers that the military did not require John Doe 1 to become a Warrant Officer. Defendant maintains that if John Doe 1 did volunteer and complete work on correspondence courses, he did so as a member of the ARNGUS or as a civilian and not as IDT.

58. To ensure that each unit is prepared to accomplish its primary and secondary missions, every unit in the Army National Guard is required to develop a Mission Essential Task List ("METL").

**RESPONSE**: Defendant does not disagree that units in the Army National Guard develop METLs. Defendant avers however that the documentary source plaintiffs cites for support of the statements contained in paragraph 58, FM 7-0, does not prescribe training or "require" that Army National Guard units develop METLs. FM 7-0 merely establishes overarching general guidance for its members to understand how the Army plans and executes training and develops future leaders.

59. A METL consists of a list of collective tasks "in which the organization has to be proficient to accomplish an appropriate portion of its wartime operational mission."

**RESPONSE**: Defendant does not disagree that units in the Army National Guard develop METLs or that a "METL consists of a list of collective tasks." Defendant avers however that the documentary source plaintiffs cites for support of the statements contained in paragraph 59, FM 7-0, does not prescribe training or "require" that Army National Guard units develop METLs. FM 7-0 merely establishes overarching general guidance for its members to understand how the Army plans and executes training and develops future leaders.

60. The Secretary of the Army has characterized training that is "necessary to achieve and sustain METL task proficiency" as a "training requirement."

**RESPONSE**: Defendant does not disagree. Defendant avers however that the source plaintiff cites for support of the statements in paragraph 60, paragraph 4-5 of FM 7-0, actually states that for planning purposes, "[t]he training requirement is the training necessary to achieve and sustain METL task proficiency within the Band of Excellence." The term "Band of Excellence" is defined in FM 7-0 as the "range of proficiency within which a unit is capable of executing its critical wartime tasks, with minimal refresher training, using appropriate repetitions of critical task training. FM 7-0 Glossary-9.

61. The Secretary of the Army has delegated its authority to require or direct members of the National Guard to perform training or instruction based on each unit's METL to Guard commanders.

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 61 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that the

sources cited by plaintiffs for support of the statement contained in paragraph 61, paragraphs 2-2 and 3-30 of FM 7-0, do not support plaintiffs' contention that the "Secretary of the Army has delegated its authority to require or direct members of the National Guard to perform training or instruction based on each unit's METL to Guard commanders." Defendant agrees that commanders are responsible for training their units upon METL tasks; however, FM 7-0 merely establishes overarching general guidance for its members to understand how the Army plans and executes training and develops future leaders. The Secretary has only prescribed training requirements for the ARNG in DODD 1215.6; DODD 1215.13; DODI 1215.19; and, NGR(AR) 350-1.

62. In order to achieve competency in the tasks specified on the METL, each soldier must complete individual and unit training.

**RESPONSE**: Defendant does not disagree that METL training is conducted as unit or collective training and as individual training. Defendant avers that ARNG training is "unit based," and METL training is accomplished using individual and collective training techniques, done while a member is on ADT, IDT, or FTNGD. These are the only three prescribed training statuses for members of the ARNG.

63. Individual training that guard members are required to complete for the METL includes instrument practice, school instruction and other institutional training that instructs members in leadership and task responsibilities for their jobs.

**RESPONSE**: Defendant does not disagree. Defendant avers that ARNG training is "unit based," and METL training that is accomplished using individual training techniques, is done

while a member is on ADT, IDT, or FTNGD. These are the only three prescribed training statuses for members of the ARNG.

64. Commanders develop training plans that focus on collective and individual training to "result in proficient individuals, leaders and units."

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 64 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that the sources cited by plaintiffs for support of the statements contained in paragraph 64, paragraphs 1-4 and 2-2 of FM 7-0, do not support plaintiffs' contention that "Commanders develop training plans that focus on collective and individual training to 'result in proficient individuals, leaders and units.'" The words "collective and individual training" are not contained in plaintiffs cited paragraphs. Defendant further avers that the source plaintiff cites for support, FM 7-0, does not prescribe training. FM 7-0 merely establishes overarching general guidance for its members to understand how the Army plans and executes training and develops future leaders.

65. Yearly Training Guidance ("YTG") memoranda specify collective, individual and institutional training that members are required to perform in the following year.

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 65 constitute plaintiffs' legal conclusions, not statements of fact. Defendant avers that the source cited by plaintiffs for support of the statements contained in paragraph 65, paragraph 4-4 of FM 7-0, does not support plaintiffs' contention that "Yearly Training Guidance ("YTG") memoranda specify collective, individual and institutional training that members are required to perform in the following year." The words "collective, individual and institutional training" are not contained in plaintiffs cited paragraph. Defendant further avers that the source plaintiff cites for support,

FM 7-0, does not prescribe training. FM 7-0 merely establishes overarching general guidance for its members to understand how the Army plans and executes training and develops future leaders.

66. YTG memoranda specify that Guard members must complete correspondence courses for duty qualification and leadership development.

**RESPONSE**: Defendant disagrees. Defendant avers that the Mississippi ARNG YTG for 2003 does not mention correspondence courses let alone "specify that Guard members must complete correspondence courses for duty qualification and leadership development." Defendant further avers that ARNG training is "unit based," that is conducted pursuant to DODD 1215.6; DODD 1215.13; DODI 1215.19; and, NGR(AR) 350-1. Other training, if completed through correspondence courses, it is voluntary and completed as a member of the ARNGUS or as a civilian.

67. Duty qualification and leadership development courses are higher in priority than unit and collective training.

**RESPONSE**: Defendant agrees this is stated in the cited YTGs. Defendant avers that ARNG training is "unit based," that is conducted pursuant to DODD 1215.6; DODD 1215.13; DODI 1215.19; and, NGR(AR) 350-1. Other training, if completed through correspondence course work, it is voluntary and completed as a member of the ARNGUS or as a civilian.

68. Commanders satisfy MOS and leadership development training requirements by instructing Guard members to complete the relevant correspondence course(s).

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 68 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that ARNG

training is "unit based," that is conducted pursuant to DODD 1215.6; DODD 1215.13; DODI 1215.19; and, NGR(AR) 350-1. Other training, if completed through correspondence courses, it is voluntary and completed as a member of the ARNGUS or as a civilian.

69. Correspondence instruction completed by Plaintiffs serves to achieve METL proficiency by developing members' leadership capabilities and by qualifying them in their military specialities.

**RESPONSE**: Defendant disagrees. Defendant further avers that ARNG training is "unit based," that is conducted pursuant to DODD 1215.6; DODD 1215.13; DODI 1215.19; and, NGR(AR) 350-1. Other training, if completed through correspondence courses, is completed in a voluntary status.

70. Failure to complete correspondence courses could result in administrative sanctions, including involuntary separation, demotion, restriction of promotable status, and denial or removal from position.

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 70 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that while defendant agrees that in some instances correspondence courses are a qualification for advancement, any soldier who fails to take or complete one of these pre-qualifying courses does not face any adverse action. See NGR 600-200, ¶ 11-36b(1)(member "may decline consideration for promotion without penalty."). Defendant further avers that declining consideration for promotion is only "a declination of consideration for promotion, assignment to a higher graded position, and NCOES training." Id. (emphasis added). Defendant also avers that unlike the soldier who fails to attend or complete command sponsored or ordered training, the soldier who