training is "unit based," that is conducted pursuant to DODD 1215.6; DODD 1215.13; DODI 1215.19; and, NGR(AR) 350-1. Other training, if completed through correspondence courses, it is voluntary and completed as a member of the ARNGUS or as a civilian.

69. Correspondence instruction completed by Plaintiffs serves to achieve METL proficiency by developing members' leadership capabilities and by qualifying them in their military specialities.

**RESPONSE**: Defendant disagrees. Defendant further avers that ARNG training is "unit based," that is conducted pursuant to DODD 1215.6; DODD 1215.13; DODI 1215.19; and, NGR(AR) 350-1. Other training, if completed through correspondence courses, is completed in a voluntary status.

70. Failure to complete correspondence courses could result in administrative sanctions, including involuntary separation, demotion, restriction of promotable status, and denial or removal from position.

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 70 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that while defendant agrees that in some instances correspondence courses are a qualification for advancement, any soldier who fails to take or complete one of these pre-qualifying courses does not face any adverse action. See NGR 600-200, ¶ 11-36b(1)(member "may decline consideration for promotion without penalty."). Defendant further avers that declining consideration for promotion is only "a declination of consideration for promotion, assignment to a higher graded position, and NCOES training." Id. (emphasis added). Defendant also avers that unlike the soldier who fails to attend or complete command sponsored or ordered training, the soldier who

fails to complete qualifying correspondence courses does not face the statutory and regulatory sanctions for failure to satisfactorily perform mandatory training, or disciplinary action under the Uniform Code of Military Justice. 10 U.S.C. § 10148 (involuntary activation for 45 days); 10 U.S.C. § 12303 (involuntary activation for 24 months); Army Reg. 135-91, Chpt. 6 (providing for discharge, transfer to the Individual Ready Reserve, and grade reduction); DA 640 Kohner Decl. ¶ 11. The only consequence an individual faces for not completing these self-paced programs of study is self-imposed – the soldier **may** not get promoted because unlike weekend drill or active duty training, no statute or regulation requires that a soldier seek promotion or complete self-development training in the Non-Commissioned Officer Education System. Defendant further avers that ARNG enlisted soldiers are not subject to an "up or out" system similar to the active force. NGR 600-200, ¶ 11-36b(1). Finally, Defendant avers that ARNG members may request waiver of any correspondence course qualifying standard. NGR 600-200, ¶ 11-31.

71. Commanders are faced with immense pressure to have their troops trained and qualified for duty.

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 71 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers however that all leaders strive to have "their troops trained and qualified for duty."

72. Plaintiff Brigadier General Johnson instructed members to complete training requirements through correspondence courses.

**RESPONSE**: Defendant agrees that Brigadier General Johnson instructed members to complete training requirements through correspondence courses. Defendant avers that of BG

Johnson did instruct a soldier to "complete training requirements through correspondence courses," to be compensable, the members must have completed the correspondence courses while serving on ADT, IDT or FTNGD because the Secretary has prescribed only three types of training duty for the ARNG: 1) ADT, 2) IDT, and 3) FTNGD. See DODD 1215.6; DODD 1215.13; DODI 1215.19; and, NGR(AR) 350-1. Furthermore, to qualify as equivalent training, the correspondence courses that BG Johnson "instructed members to complete" must have been: (1) similar in nature and quality to the training requirements they missed at weekend drill; (2) performed in uniform; (3) performed within sixty calendar days after the missed period of instruction; and, (4) at least equal in duration to that which was missed. See NGR(AR) 350-1 ¶ 2-1d(7)(a)-(f). Defendant further avers that if the members completed correspondence courses pursuant to BG Johnson's instructions, and they met the standards prescribed at paragraph 2-1d(7)(a)-(f), that unless specifically approved by the National Guard Bureau, they could not perform this training if the combined total of regular periods of instruction or appropriate duty and periods of equivalent training exceeded forty-eight UTAs. Id. ¶ 2-1a(1), (3). Defendant also avers, that if Brigadier General Johnson instructed members to complete training requirements through correspondence courses as IDT, BG Johnson was required to issue competent written orders or letters of authority in advance of training. Id. ¶ 2-1c; Letter to Lieutenant William E. Archer, Jr., B-165712, 1969 Comp. Gen. WL 450 3071 (1969)(equivalent training not compensable in the absence of authorization orders). Defendant avers if any of the requirements set forth above were not met, if plaintiffs did complete correspondence courses pursuant to BG Johnson's instructions, they did so voluntarily in a non-pay status pursuant to 32 U.S.C. § 502(f)(2) or as a civilian.

73. Several plaintiffs received orders to complete specific correspondence courses.

**RESPONSE**: Defendant does not disagree that several plaintiffs allege they received orders to complete specific correspondence courses. Defendant avers that if plaintiffs did receive orders to "complete specific correspondence courses," to be compensable, the members must have completed the correspondence courses while serving on ADT, IDT or FTNGD because the Secretary has prescribed only three types of training duty for the ARNG: 1) ADT, 2) IDT, and 3) FTNGD. See DODD 1215.6; DODD 1215.13; DODI 1215.19; and, NGR(AR) 350-1. Furthermore, to qualify as equivalent training, the correspondence courses plaintiffs allege to have been ordered to complete must have been: (1) similar in nature and quality to the training requirements they missed at weekend drill; (2) performed in uniform; (3) performed within sixty calendar days after the missed period of instruction; and, (4) at least equal in duration to that which was missed. See NGR(AR) 350-1 ¶ 2-1d(7)(a)-(f). Defendant further avers that if the members completed correspondence courses as they allege, and they met the standards prescribed at paragraph 2-1d(7)(a)-(f), that unless specifically approved by the National Guard Bureau, they could not complete this work if their combined total of regular periods of instruction or appropriate duty and periods of equivalent training exceeded forty-eight UTAs. Id. ¶ 2-1a(1), (3). Defendant also avers, that if plaintiffs were ordered to complete correspondence courses, the ordered were required to be issued in writing in advance of training. Id. ¶ 2-1c; Letter to Lieutenant William E. Archer, Jr., B-165712, 1969 Comp. Gen. WL 450 3071 (1969). Defendant avers if any of the requirements set forth above were not met, if plaintiffs did complete correspondence courses pursuant to alleged orders, they did so voluntarily in a non-pay status pursuant to 32 U.S.C. § 502(f)(2) or as a civilian.

74. The Secretaries have authorized commanders to "order" members of the National Guard to complete "supplemental training," which includes correspondence courses within the Army Correspondence Course Program.

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 74 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that the reference cited by plaintiffs, paragraph 1-2 of NGR 350-1, states "Commanders are authorized to issue orders for Army National Guard members to pursue these training programs in either a pay or nonpay duty status." Additionally, NGR (AR) 350-1 (30 NOV 83) was superseded by NGR 350-1, in June 1991. Pursuant to 32 U.S.C. § 502f(2) a commander may only order a member of the National Guard to perform training in addition to that in 502(a) in a non-pay status with the member's consent. Thus, defendant avers that the plaintiffs consented to performing this additional training in a non-pay status. Defendant further avers that the superseding and current regulation, NGR (AR) 350-1 of June 1991, has no such referenced language. Defendant also avers that "supplemental training" is not an authorized training status for members of the ARNG. The only authorized training statuses are ADT, IDT and FTNGD as prescribed in DODD 1215.6; DODD 1215.13; DODI 1215.19; and, NGR(AR) 350-1.

75. Orders to complete correspondence courses can be issued orally and there is no requirement that orders be written to have legal effect.

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 75 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant agrees that orders can be given orally, however, members have no obligation to follow instructions issued in a military status while the member was in a civilian status, which defendant avers is the status the

member agreed to complete correspondence courses without pay. Defendant further avers that the Secretary has prescribed that advanced written orders must be issued for members to conduct equivalent training as IDT. NGR(AR) 350-1, ¶ 2-1c; Letter to Lieutenant William E. Archer, Jr., B-165712, 1969 Comp. Gen. WL 450 3071 (1969).

76. Commanders have inherent authority to order correspondence courses based on the Secretaries' directives that commanders facilitate the specialty qualification and leader development of members in their units.

**RESPONSE**: Defendant does not disagree that commanders may order that correspondence courses be completed as training if performed in an prescribed training status, i.e. ADT, IDT, or FTNGD. Defendant avers that the Secretary has prescribed that written orders must be issued for members to conduct equivalent training as IDT. See NGR(AR) 350-1, ¶ 2-1c; 2-1d(2); DoDI 1215.19, ¶ 6.2.2.1; See also National Guard Regulation 37-104-3, Financial Administration: Military Pay And Allowances Policy And Procedures - Army National Guard, 24 Oct. 2003 ("NGR 37-104-3"), ¶¶ 1-4, 1-8, 3-1, 3-2. Defendant further avers that to qualify as equivalent training, if the commander orders that correspondence courses be completed, the courses must be: (1) performed in uniform; (3) performed within sixty calendar days after the missed period of instruction; and, (4) at least equal in duration to that which was missed. See NGR(AR) 350-1 ¶ 2-1d(7)(a)-(f)

77. Air National Guard noncommissioned officers must as mandatory requirements attain and maintain a skill level commensurate with their rank, maintain a high degree of proficiency in their awarded career field specialty, and secure and promote professional military education (PME) for themselves and subordinates.

**RESPONSE**: Defendant does not disagree.

78. Air Force Instruction 36-2618 specifies that failure to comply with mandatory training requirements constitutes a violation of Article 92 of the Uniform Code of Military Justice.

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 78 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that, pursuant to 10 U.S.C. § 802, the Uniform Code of Military Justice does not apply to National Guard members unless in a federal status at the time of the offense and at trial. See 10 U.S.C. § 802(a)(3). Defendant further avers that source plaintiffs cite for support for the statement contained in paragraph 78, Air Force Instruction 36-2618, The Enlisted Force Structure, April 1, 1999 ("AFI 36-2618 (1999 version)"), does not support the statement contained in paragraph 78. AFI 36-2618 does not prescribe training. AFI 36-2618 also states that only paragraphs 3.1.3 and 4.1 are punitive, and paragraphs 3.1.3, 4-1, 4.1.2 and 4.1.3 do not discuss "mandatory training," let alone specify "that failure to comply with mandatory training requirements constitutes a violation of Article 92 of the Uniform Code of Military Justice."

79. Failure to complete training for leadership and task-based skill required to perform a guard member's function would constitute a failure to obey the mandatory provisions of AFI 36-2618.

**RESPONSE:** Defendant disagrees. The statements contained in paragraph 79 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that the reference cited by plaintiffs, AFI 36-2618, does not apply to Guard members unless the member is on active status. Defendant further avers that it is well settled law that the members of the ANG are subject to the Uniform Code of Military Justice only when in Federal service. 10 U.S.C. § 802 (a)(3). Defendant further avers that source plaintiffs cite for support for the statement contained in paragraph 79, Air Force Instruction 36-2618, The Enlisted Force Structure, April 1, 1999 ("AFI 36-2618 (1999 version)"), does not support the statement contained in paragraph 79. AFI 36-2618 does not prescribe training. AFI 36-2618 also states that only paragraphs 3.1.3 and 4.1 are punitive, and paragraphs 3.1.3, 4-1, 4.1.2 and 4.1.3 do not state that "[f]ailure to complete training for leadership and task-based skill[s] required to perform a guard member's function" constitutes a violation of Article 92 of the Uniform Code of Military Justice."

80. Guard members may be criminally sanctioned if they disobey a regulation or a lawful order to take a correspondence course.

**RESPONSE**: Defendant agrees that members of the ARNG and ANG could possibly face criminal sanction pursuant to their state's military justice codes for violating a lawful order. Defendant avers that the punitive sections only apply to Guard members in a military duty status, and that correspondence course work is completed in a civilian status. Defendant further avers that ARNG and ANG members are not subject to criminal sanction pursuant to the Federal Uniform Code of Military Justice because it does not apply to plaintiffs unless they are in Federal service at both the time of the offense and at the time of the trial. U.S. v. Wilson, 53 M.J. 327,

328 (CAAF 2000), 10 U.S.C. § 802(a)(3). Defendant further avers that there is no record of any members of the ARNG or ANG being prosecuted for failing to complete correspondence courses.

81. Army Guard and Air Guard officers face an "up or out" policy, in which they will be involuntarily separated from service if they are not selected for promotion within a specified time period.

**RESPONSE:** Defendant disagrees. The statements contained in paragraph 81 constitute plaintiffs' argument and legal conclusions, not statements of fact. Despite the failure of promotion, involuntary separation is not required. National Guard officers may be selectively retained on the Reserve Active Status List pursuant to 10 U.S.C. 14701.

82. Guard officers will not be selected for promotion if they fail to complete the requisite professional military education courses for the next higher rank, including correspondence courses.

**RESPONSE:** Defendant disagrees. The statements contained in paragraph 82 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that one of the document plaintiffs cite for support of the statements in paragraph 82, Army Regulation 135-155, Promotion of Commissioned Officers and Warrant Officers Other Then General Officers, 13 July 2004 ("AR 135-155"); applies to the ARNGUS and not the ARNG. Defendant further avers that paragraph 5.a.10 of National Guard Regulation 635-100, Termination of Appointment and Withdrawal of Federal Recognition, 15 July 1983 ("NGR 635-100"), is inapplicable to plaintiffs because paragraph 5.a.10 only applies if the non–selection for promotion is in a members ARNGUS status, i.e. consistent with AR 135-155. Similarly, paragraph 5.a.20 of NGR 635-100 is inapplicable because it refers to 2nd Lieutenant branch qualifying courses, which must

be completed on ADT. Defendant further avers that paragraph 2.5.3 of Air National Guard Instruction 36-2504, Federal Recognition Of Promotion In The Air National Guard (ANG) And As A reserve Of The Air Force Below The Grade Of General Officer, July 28, 2004 ("ANGI 36-2504"), does not support the statement contained in paragraph 82.

83. Members enlist for a term in the guard and upon expiration of the term, the member must apply for an extension (for up to four years) or for re-enlistment (for up to six years).

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 83 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that service in the United States military in any component is voluntary and pursuant to statute. Defendant further avers that enlistment and reenlistment terms vary.

84. The member's commander has the authority to approve the reenlistment request or the member will be separated from the National Guard.

**RESPONSE**: Defendant does not disagree. Defendant avers that only soldiers and airman of high moral character, personal competence, and demonstrated adaptability to the requirements of the professional soldier's moral code may be reenlisted, immediately reenlisted or extended. Defendant further avers that if a soldier or airman does not volunteer to reenlist or extend his or her enlistment, that soldier or airman will be discharged at the expiration of his or her term of service ("ETS").

85. If the member has failed to complete training necessary for promotion and skill qualification, the commander may separate the member by denying the extension or re-enlistment application.

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 85 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that if a soldier or airman does not volunteer to reenlist or extend, or is denied reenlistment or extension for appropriate reasons, the member is discharged at ETS. Defendant also avers that the regulatory source that plaintiffs cite for support for the statement contained in paragraph 85, National Guard Regulation 600-200, Personnel: General Enlisted Personnel Management, 1 March 1997 ("NGR 600-200"), does not support the statement contained in paragraph 85. Paragraph 7-22 of NGR 600-200 sets forth guidance for a commander to bar a solder for reenlistment, and does not discuss separation. Defendant avers that a bar to reenlistment is a non-punitive probationary device intended to serve notice that a soldier is not a candidate for reenlistment, immediate reenlistment or extension and may be discharged if the circumstances that led to the bar are not overcome. See NGR 600-200 ¶ 7-21. A bar to reenlistment a motivational tool to improve a soldier's performance.

86. Both enlisted and officer Guard members may be involuntarily separated under Selective or Qualitative Retention Board procedures for failing to complete correspondence courses that are prerequisites for promotion to the next higher grade.

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 86 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that both enlisted and officer Guard members may be separated for a variety of reasons that a service member does or does not do in his civilian and military status prior to and after reaching 20 years of service. Defendant further avers that the failure "to complete correspondence courses that are

prerequisites for promotion to the next higher grade" is not specified as a reason for separation in any of the sources plaintiffs cite for support for the statements contained in Paragraph 86.

87. Annual selective retention boards in each state and territory to [sic] consider whether enlisted and officer members of the National Guard with over 20 years of serve should be retained in the Guard.

**RESPONSE**: Defendant does not disagree. The defendant avers that the Governor of each state is the commander of his or her state militia, and the Governor can establish rules that govern that force.

88. Guard members who have not completed the professional military education course required for the next higher grade face a substantial likelihood of being involuntarily discharged under the Selective or Qualitative Retention Board program.

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 88 constitute plaintiffs' argument and legal conclusions, not statements of fact.

89. Failure to complete professional education courses may result in a Guard member's involuntary discharge.

**RESPONSE**: Defendant does not disagree. Defendant avers that both enlisted and officer Guard members may be separated for a number of reasons that a service member does or does not do in his civilian or military status.

90. Regulations establish that Guard members under review must be current in military education to support being retained in the military.

**RESPONSE**: Defendant neither agrees or disagrees with the statement contained in paragraph 90. Defendant is unaware of "[r]egulations [that] establish that Guard members under

review must be current in military education to support being retained in the military" because defendant does not know what plaintiffs are referring to when plaintiffs use the words "under review." Defendant avers that in appendix C to National Guard Regulation 635-102, Officers and Warrant Officers Selective Retention, 1July 1998 ("NGR 635-102"), several factors for ARNG officers and warrant officers are set forth that selective continuation boards should consider when the board deliberates. NGR 635-102 does not say that "Guard members under review must be current in military education;" however, NGR 635-102 does say that an officers evaluation reports are the single most important document for the board to consider.

91. Guard members are subject to the administrative sanction of demotion in rank for failing to complete required correspondence courses.

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 91 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that Guard members may receive a non-punitive administrative reduction in rank due to failure to complete the military education required of the rank. By accepting a conditional promotion, soldiers agree to the conditions of the promotions and subsequent reduction without board action or appeal for failure to meet these conditions. See NGR (AR) 600-200, para. 11-28d (Change 1). Defendant avers that the servicemember who does not qualify for the conditional promotion, however, is able to keep the extra pay received by the member in the higher rank regardless of qualification. NGR (AR) 600-200, para. 11-56e.

92. Regulations establish that certain military courses are required for promotion.

**RESPONSE**: Defendant does not disagree. Defendant avers that there are many criteria a soldier or airman must satisfy to be competitive for promotion, and military education is one of those factors.

93. If a guard member receives a conditional promotion he or she is required by regulation to complete the applicable noncommissioned officer education system course and if the Guard member fails to complete the required course, he or she will be demoted.

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 93 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that a soldier's conditional promotion is void if the soldier fails to satisfy any of the conditions of a conditional promotion, to include any educational requirements. Defendant further avers that enlisted soldiers who accept a conditional promotion do so voluntarily, and thus, volunteer to meet the conditions of the promotion.

94. Certain positions in the Army National Guard and Air National Guard have course prerequisites that must be satisfied before a member can qualify for the position in question or assume command.

**RESPONSE**: Defendant disagrees. The statements contained in paragraph 94 constitute plaintiffs' argument and legal conclusions, not statements of fact. Defendant avers that the source plaintiffs cite for support of the statement contained in paragraph 94, page 17 of DA Pam 350-58, only refers to active and Reserve component, and not the ARNG. Defendant further avers that if plaintiffs satisfied course prerequisites to qualify for a "position in question or assume command," they did so as members of the ARNGUS or in a civilian status.

95. Guard members who assume command must take Phase I of the Pre-Command course which is only offered as a correspondence course.

**RESPONSE**: Defendant disagrees. The statement contained in paragraph 95 constitutes plaintiffs' argument and legal conclusion, not a statement of fact. Defendant avers that the source plaintiffs cite for support of the statement contained in paragraph 95, does not support the statements contained in paragraph 95. The cited message that discusses Phase I of the Pre-Command Course is addressed to the active component, and not the ARNG. Defendant further avers that if plaintiffs completed Phase I of the Pre-Command Course, they did so as members of the ARNGUS or in a civilian status.

96. In the Army Guard, company grade commanders must complete a correspondence course called the Commander's Safety course.

**RESPONSE**: Defendant disagrees. The statement contained in paragraph 96 constitutes plaintiffs' argument and legal conclusion, not a statement of fact. Defendant avers that the source plaintiffs cite for support of the statement contained in paragraph 96, does not support the statements contained in paragraph 96. The August 14, 2003 message that discusses the Commander's Safety Course is addressed to the active component, and not the ARNG. Agree, however Command is not required and completion of the course in a civilian status is a noncompensable status. Defendant further avers that if plaintiffs completed the Commander's Safety Course, they did so as members of the ARNGUS in a civilian status.

97. The position of Battalion Logistics Officer in the Army and Army Guard requires specialized training in handling hazardous materials that can be satisfied by completing the Hazardous Materials Handling correspondence course.

**RESPONSE**: Defendant disagrees. The statement contained in paragraph 97 constitutes plaintiffs' argument and legal conclusion, not a statement of fact. Defendant avers that the source plaintiffs cite for support of the statement contained in paragraph 97, does not support the statements contained in paragraph 97. DoD Instruction 4500.9R, Defense Transportation Regulation, that discusses transportation and handling of hazardous materials does not prescribe training. Defendant further avers that if plaintiffs completed any training for the Battalion Logistics Officer's position, they did so as members of the ARNGUS in a civilian status.

98. Guard members who are selected to be Battalion Logistics Officers must take the Hazardous Materials Handling correspondence course or other sufficient course or will lose their position.

**RESPONSE**: Defendant disagrees. The statement contained in paragraph 98 constitutes plaintiffs' argument and legal conclusion, not a statement of fact. Defendant avers that if plaintiffs completed any training for the Battalion Logistics Officer's position, they did so as members of the ARNGUS or in a civilian status. Defendant further avers that John Doe 4's declaration does not support the statement contained in paragraph 98. Defendant also avers that John Doe 4 states in his declaration that his "Battalion Executive Officer instructed [him] to take the … Hazardous Materials Handling course in order to acquire skills necessary for the position of Battalion Logistics Officer." (emphasis added). John Doe 4 does not state the training was "required" by his commander.

99. Training funds are appropriated for the National Guard.

**RESPONSE**: Defendant does not disagree. Defendant avers that the ARNG has never requested nor received appropriations for the purposes of funding correspondence course work

while in a civilian status. The budget is to provide for pay, allowances, travel and subsistence while on specific duty, undergoing training, or while performing drills or equivalent training, pursuant to Titles 10 or 32, U.S. Code. See DA 438, Manwiler Decl. ¶ 4. Defendant further avers that if training funds are obligated to pay members for completing correspondence course, the Anti-Deficiency Act, 31 U.S.C. § 1341 would be violated. Likewise, if commanders ordered correspondence courses as IDT, they have violated the Federal apportionment statute, 31 U.S.C. §§ 1512-1513, 1517. See also DA 548-560.

100. Plaintiffs have performed "duty" when they complete required correspondence courses since regulations dictate that only "duty" status entitles a Guard member to retirement points.

**RESPONSE**: Defendant disagrees. The statement contained in paragraph 100 constitutes plaintiffs' argument and legal conclusion, not a statement of fact. Defendant avers that members of the ARNG do not earn retirement points in relation to their membership in the ARNG. Retirement points are awarded based upon an individuals membership in the ARNGUS, pursuant to 10 U.S.C. § 12732. Defendant avers that the source plaintiffs cite for support of the statement contained in paragraph 100, paragraph 2-1 of NGR (AR) 350-1, also requires that in order to receive compensation and retirement credit for inactive duty training, the Secretary requires "documentary evidence that the individual was in a[n] [IDT] duty status as authorized by Federal law or regulations. Accordingly, to protect the interests of the individual and those of the government commanders will issue written orders or letters of authority governing training in a pay or nonpay duty status in advance of such training." NGR (AR) 350-1, para. 2-1c. Defendant also avers that the plaintiffs were not performing IDT, nor were they performing military duties

while on written orders under letters of authority governing training in advance of such training, when they completed correspondence courses.

101. The service secretaries have prescribed that Guard members can earn retirement points for performing the duty of completing correspondence courses.

**RESPONSE**: Defendant disagrees. The statement contained in paragraph 101 constitutes plaintiffs' argument and legal conclusion, not a statement of fact. Defendant avers that members of the ARNG do not earn retirement points in relation to their membership in the ARNG. Retirement points are awarded based upon an individuals membership in the ARNGUS, pursuant to 10 U.S.C. § 12732. Defendant avers that the governing regulation, NGR (AR) 350-1, requires that in order to receive compensation and retirement credit for inactive duty training, the Secretary requires "documentary evidence that the individual was in a[n] [IDT] duty status as authorized by Federal law or regulations. Accordingly, to protect the interests of the individual and those of the government commanders will issue written orders or letters of authority governing training in a pay or nonpay duty status in advance of such training." NGR (AR) 350-1, para. 2-1c. Defendant also avers that the plaintiffs were not performing IDT, nor were they performing military duties while on written orders under letters of authority governing training in advance of such training, when they completed correspondence courses.

102. Pursuant to NGR 680-2, Automated Retirement Points Accounting System, the Secretaries grant to Guard members one retirement point for each three correspondence course credit hours satisfactorily completed.

**RESPONSE**: Defendant disagrees. The statement contained in paragraph 102 constitutes plaintiffs' argument and legal conclusion, not a statement of fact. Defendant avers

that National Guard members may earn Federal retirement points under 10 U.S.C. 12732 because "service in the National Guard shall be treated as if it were service in the reserve component, if the person concerned was later appointed in the National Guard of the United States, the Army National Guard of the United States, the Air National Guard of the United States ..." Consequently, National Guard members can only receive Federal military retirement points due to their membership in the ARNGUS/ANGUS.

103. National Guard members may perform official duties via "telework" while at home and such activity is appropriate for the performance of "web-based distance and continuous learning, including educational requirements required by law or regulation."

**RESPONSE**: Defendant disagrees. The statement contained in paragraph 103 constitutes plaintiffs' argument and legal conclusion, not a statement of fact. Defendant avers that the source plaintiffs cite for support for support of the statements contained in paragraph 103, Department of Defense Directive 1035.1, Telework Policy for the Department of Defense, 9 Sept. 2002 ("DoDD 1035.1"), does not apply to the ARNG. See DoDD 1035.1 ¶ 3.4. Defendant further avers that the states National Guards and its military members do not fall under the Department of Defense until serving in their status as members of the Reserve Components. The Federal law under which the DoDD derives, Section 359 of PL 106-346, states "Each executive agency shall establish a policy under which eligible employees of the agency may participate in telecommuting to the maximum extent possible without diminished employee performance. Not later than 6 months after the date of the enactment of this Act, the Director of the Office of Personnel Management shall provide that the requirements of this section are applied to 25 percent of the Federal workforce, and to an additional 25 percent of such workforce each year

thereafter." The National Guard of each state is not an executive agency of the Federal Government, nor are its military members employees of the federal workforce. Defendant also avers that the term "work-at-home" telework means "an approved arrangement whereby an employee performs his or her official duties in a specified work or office of his or her home that is suitable for the performance of official Government business." See DoD Telework Guide, para. 2.2.1. The further requirements as stated in the DoD telework Guide do not apply to correspondence courses completed in a civilian, non-duty status.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ James M. Kinsella by Todd M. Hughes
JAMES M. KINSELLA
Deputy Director

s/ Douglas K. Mickle
DOUGLAS K. MICKLE
Trial Attorney
National Courts
Commercial Litigation Branch
Civil Division
United States Department of Justice
Washington, D.C. 20530
Tel. (202) 353-7961
Fax (202) 353-7988

Attorneys for Defendant

OF COUNSEL:
LT. COL. JOSEPH FETTERMAN
MAJOR CHRIS SOUCIE
MAJOR GARY CORN
United States Army Litigation Division
Arlington, VA 22203-1837

LT. COL. JOSEPH WENDLBERGER
United States Air Force
General Litigation Division

CAPTAIN CHRIS BROWN
National Guard Bureau
Office of Chief Counsel

July 18, 2005

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on July 18, 2005, a copy of the foregoing **"DEFENDANT'S RESPONSE TO PLAINTIFFS' PROPOSED ADDITIONAL FACTS"** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Douglas K. Mickle
Douglas K. Mickle