No. 00-644C
(Chief Judge Damich)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

WILLIAM A. CLARK, et. al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JAMES M. KINSELLA
Deputy Director

DOUGLAS K. MICKLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 353-7961
Fax: (202) 353-7988

Attorneys For Defendant

OF COUNSEL:
LT. COL. JOSEPH FETTERMAN
MAJOR CHRIS SOUCIE
MAJOR GARY CORN
United States Army Litigation Division
Arlington, VA 22203-1837

LT. COL. JOSEPH WENDLBERGER
United States Air Force
General Litigation Division

CAPTAIN CHRIS BROWN
National Guard Bureau
Office of Chief Counsel

July 18, 2005

## TABLE OF CONTENTS

PAGE(S)

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ........ 1

ARGUMENT ........ 3

I. The United States Is Entitled To Summary Judgment Because The Secretary Has Never Prescribed Regulations That Established Individual Work On Correspondence Courses As Inactive Duty Training ........ 5

A. The Secretary's Prescribed Regulations Governing ARNG Training Do Not Support Plaintiffs' Claims ........ 5

B. The Secretaries Have Never, Nor Could They, Invoke Their Authority Pursuant To Section 502(f) Of Title 32 To Establish ARNG Training That Is Not Unit-Based Training ........ 8

C. Plaintiffs' Opposition Highlights The Fact That The Legislative History Behind Titles 32 And 37 Supports The Secretary's Interpretation That Congress Has Only Authorized Unit-Based Training ........ 11

II. Plaintiffs Have Misread The Federal Circuit's Decision As A Mandate For This Court To Find Liability Against The United States Because Required Training Is Compensable ........ 14

A. Plaintiffs Misread The Federal Circuit's Opinion To Amend The Plain Language Of The Statute By Adding The Word "Required" ........ 16

III. There Is No Basis For Plaintiffs' Contention That The Secretary Has Required Correspondence Courses As ARNG Training ........ 17

CONCLUSION ........ 20

## TABLE OF AUTHORITIES

**FEDERAL CASES** **PAGE(S)**

Augustine v. Principi,
343 F.3d 1334 (Fed. Cir. 2003) ............ 14

Bowen v. Oistead,
125 F.3d .800 (9th Cir. 1997) ............ 8

Doe v. United States,
372 F.3d 1347 (Fed. Cir. 2004) ............ 7

Clark v. United States,
322 F.3d 1358 (Fed. Cir. 2003) ............ 15, 16

O'Hanlon v. United States,
11 Cl. Ct. 192 (1986) ............ 7

Tirado-Acosta v. Puerto Rico National Guard,
118 F.3d 852 (1st Cir. 1997) ............ 8

U.S. v. Harvey,
659 F.2d 62 (5th Cir. 1981) ............ 18

United States v. Clark,
454 U.S. 555 (1982) ............ 11

Wrigglesworth v. Brumbaugh,
121 F.Supp. 2d 1126 (W.D. Mi. 2000) ............ 8

Wronke v. Marsh,
787 F.2d 1569 (Fed. Cir.1986) ............ 11

U.S. v. Wilson,
53 M.J. 327 (CAAF 2000) ............ 19

U.S. v. Wolfson,
36 C.M.R. 722 (ABR 1966) ............ 18

**STATUTES**


10 U.S.C. § 101(d)(5) .......... 8

10 U.S.C. § 101(d)(6)(a) .......... 8

10 U.S.C. § 683 .......... 10

10 U.S.C. § 1475 .......... 9

10 U.S.C. § 12310(c)(1) .......... 9

10 U.S.C. § 12315 .......... 10

10 U.S.C. § 12732 .......... 20

31 U.S.C. § 1341 .......... 4

31 U.S.C. § 1512 .......... 4

31 U.S.C. § 1513 .......... 4

31 U.S.C. § 1517 .......... 4

32 U.S.C. § 101(19) .......... 8

32 U.S.C. § 112(b) .......... 9

32 U.S.C. § 502 .......... 9, 10

32 U.S.C. § 502(a) .......... passim

32 U.S.C. § 502(f) .......... passim

37 U.S.C. § 204 .......... 4, 5

37 U.S.C. § 206 .......... 2

37 U.S.C. § 206(a) .......... 15, 16, 17

37 U.S.C. § 206(b) .......... 3, 6

37 U.S.C. § 206(d) .......... passim

Sen. Rep. No. 1795 1952 U.S.C.C.A.N. 2005 ........ 13

Sen. Rep. No. 1874 1962 U.S.C.C.A.N. 2390 ........ 14

The Career Compensation Act of 1949, ch. 681, § 102(i), 63 Stat. 802 ........ 13

The Armed Forces Reserve Act of July 9, 1952, ch. 608, § 101(d), 66 Stat. 481 ........ 13

**MISCELLANEOUS**

Army Regulation ("AR") 350-1, Training: Army Training And Education, 9 April 2003 ........ 11

Dep't of Defense Directive 1215.6 Uniform Reserve, Training and Retirement Categories (Mar. 14, 1997) ........ 5, 15

Dep't of Defense Directive 1215.13, Reserve Component Member Participation Policy, (Dec. 14, 1995) ........ 5

Dep't of Defense Instruction 1215.19, Uniform Reserve, Training and Retirement Category Administration, (Dec. 12, 2000) ........ passim

Dep't of Defense 7000.14-R, DoD Financial Management Regulation, Vol 7A ("DODD 7000.14-R") ........ 6

Field Manual 7-0, October 22, 2002, Training The Force ........ 17, 18

National Guard Regulation 37-104-3, Financial Administration: Military Pay And Allowances Policy And Procedures - Army National Guard, 24 Oct. 2003 ........ 6

National Guard Regulation (AR) 350-1, Training: Army National Guard Training, (June 3, 1991) ........ passim

Letter to Lieutenant William E. Archer, Jr., B-165712, 1969 Comp. Gen. WL 4500 (1969) ........ 7

**INDEX TO APPENDIX**

Document Page

Declaration Command Sergeant Major (Retired) McNamara . . . . . . . . . . . . . 415-436

Declaration of Howard Manwiller . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 437-442

Attachment 2 to Manwiller Declaration
(Administrative Instructions for IDT) . . . . . . . . . . . . . . . . . . . . . . . . . . . 548-560

Declaration of Daniel J. Kohner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 633-642

Declaration of Colonel Ernest C. Audino . . . . . . . . . . . . . . . . . . . . . . . . . . . 643-647

Department of Defense Directive 1035.1, Telework Policy for the Department of Defense, (Sep. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 651

Dep't of Defense Directive 1215.6, Uniform Reserve, Training, and Retirement Categories, (Mar. 14, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 655

Dep't of Defense Directive 1215.13, Reserve Component Member Participation Policy, (Dec. 14, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6631

Dep't of Defense Instruction 1215.19, Uniform Reserve, Training and Retirement Category Administration, (Dec. 12, 2000) . . . . . . . . . . . . . . 668

Dep't of Defense 7000.14-R, DoD Financial Management Regulation, Vol 7A, Paragraph 5801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 709

National Guard Regulation 37-104-3, Financial Administration: Military Pay and Allowances Policy and Procedures-Army National Guard, 24 Oct. 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 716

National Guard Regulation (AR) 350-1, Training: Army National Guard Training, (Jun. 3, 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 733

National Guard Regulation 635-102, Officer and Warrant Officers Selective Retention, July 1, 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 752

National Guard Regulation 680-2, Automated Retirement Points Accounting System, Mar 1, 1989 . . . . . 767

National Guard Regulation 351-1, Individual Military Education and Training, Jun 1, 1987 . . . . . 793

National Guard Regulation 635-100, Termination Of Appointment And Withdrawal Of Federal Recognition, July 15, 1983 . . . . . 806

National Guard Regulation 600-200, Personnel General: Enlisted Personnel Management, Mar 1, 1997 . . . . . 819

Air National Guard Instruction 36-2002, Enlistment And Reenlistment In The Air National Guard And As A Reserve of the Air Force, Mar 1, 2004 . . . . . 898

Air National Guard Instruction 36-2502, Promotion Of Airmen, Aug 25, 2000 . . . . . 950

Air National Guard Instruction 36-2504, Federal Recognition Of Promotion In The Air National Guard (ANG) And As A Reserve Of The Air Force Below The Grade Of General Officer, July 28, 2004 . . . . . 960

Air National Guard Instruction 36-2606, Selective Retention Of Air National Guard Officer And Enlisted Personnel, Feb 28, 1997 . . . . . 971

Army Regulation 135-155, Promotion Of Commissioned Officers And Warrant Officers Other Than General Officers, 13 July 2004 . . . . . 977

Army Regulation 135-200, Active Duty For Missions, Projects, And Training For Reserve Component Soldiers, 30 June 1999 . . . . . 999

Army Regulation 135-205, Enlisted Personnel Management, Sept,1 1994 . . . . . 1010

Army Regulation 350-10, Management Of Army Individual Training Requirements And Resources, Sept 14, 1990 . . . . . 1023

Army Regulation 350-1, Army Training and Education, Apr. 9, 2003 . . . . . 1036

Army Regulation 351-1, Individual Military Education Training, 15 October 1987 . . . . . . . . . . 1096

Department of the Army Pamphlet 350-58, Leader Development For America's Army, Oct. 13, 1994 . . . . . . . . . . 1129

Department of the Army Pamphlet 350-59, Army Correspondence Course Program Catalogue, Oct 1, 2000 . . . . . . . . . . 1151

Department of the Army Pamphlet 351-20, Army Correspondence Course Program Catalogue, Apr. 28, 2000 . . . . . . . . . . 1180

Field Manual 7-0, Training the Force, Oct. 22, 2002 . . . . . . . . . . 1208

Field Manual 22-100, Army Leadership, Be, Know, Do, Aug 31, 1999 . . . . . . . . . . 1308

Air Force Policy Directive 36-22, Air Force Military Training, Mar 22, 2004 . . . . . . . . . . 1326

Air Force Instruction 36-2201, vol. 4, Air Force Training Program, Managing Advanced Distributed Learning, Oct. 23, 2002 . . . . . . . . . . 1331

Air Force Instruction 36-2201, vol. 3, Air Force Training Program, On The Job Training Administration, 4 Feb 2005 . . . . . . . . . . 1348

Air Force Instruction 36-2301, Professional Military Education, Jun 27 2002 . . . . . . . . . . 1354

Air Force Instruction 36-2618, The Enlisted Structure, Apr. 1, 1999 . . . . . . . . . . 1363

Air Force Instruction 51-604, Appointment To And Assumption Of Command, Oct 1, 2000 . . . . . . . . . . 1377

Air Force Manual 36-8001, Reserve Personnel Participation And Training Procedures, Jan 22, 2004 . . . . . . . . . . 1382

FORSCOM/ARNG/USAR Regulation 350-2, Reserve Component Training, Oct. 27, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1411

U.S. Army Training and Doctrine Command ("TRADOC") Regulation 350-70-4, Systems Approach to Training, Management Processes And Products, Mar 9, 1999 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1422

TRADOC Regulation 350-10, Institutional Leader Training and Education, Aug. 12, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1455

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **WILLIAM A. CLARK, et. al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 00-644** |
| **v.** | ) | **(Chief Judge Damich)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits this reply in response to plaintiffs' opposition to our motion for summary judgment ("Pl. Opp.").

In our opening motion, we demonstrated that the Secretary[1] has never prescribed work on correspondence courses as a "regular period of instruction, or period of appropriate duty," or "equivalent training, instruction, or duty, or appropriate duties." We also set forth the historical development of the present day service directives and regulations governing the training of the Army National Guard ("ARNG")[2] to clearly show that the completion of correspondence courses does not now, nor has it ever, qualified as either a regular period of instruction or appropriate duty or the equivalent thereof. The Secretary's prescribed directives and regulations do not include an individual's self-paced, unsupervised and off-duty work on correspondence courses,

[1] Throughout this Reply, the term "Secretary" is used. Depending upon the circumstances, facts and supporting documentation, "Secretary" refers to the Secretary of Defense, Secretary of the Army, Secretary of the Air Force, or any combination of the three.

[2] Because the lead plaintiff, Mr. Clark, is a member of the ARNG, references in this brief generally are to the ARNG, however the discussion is of equal applicability to the plaintiffs who are members of the Air National Guard ("ANG").

either as a regular period of instruction or appropriate duty, or equivalent training, instruction, duty or appropriate duties.

Struggling to avoid the clear import of the Government's arguments, plaintiffs seek to foreclose their consideration by mistakenly invoking the law of the case doctrine. Plaintiffs strained reading of the Federal Circuit's opinion in this case is simply not supported. Clearly, the Federal Circuit's decision was limited to the specific and narrow issue of whether Mr. Clark's undisputed membership in the Army National Guard of the United States ("ARNGUS") precluded him from seeking compensation for completing correspondence courses based upon the bar in 37 U.S.C. § 206(d). Accepting as true Mr. Clark's well-pled allegations as to his status, the Federal Circuit reversed this Court's RCFC 12(b)(6) dismissal of Mr. Clark's claim, and determined only that Mr. Clark's status, vice his membership, at the time he allegedly completed correspondence courses controlled the issue of section 206(d)'s applicability. The Federal Circuit made no ruling, as to what training the Secretary prescribed as "equivalent training." Moreover, plaintiffs' understanding of the Federal Circuit's opinion rejects the plain language of 37 U.S.C. § 206, and substitutes the word "required" for "as the Secretary may prescribe." Plaintiffs then provide a tortured interpretation of "equivalent training" and ignore the clear meaning of equivalent training and the requirement that it be prescribed by the Secretary.

Plaintiffs' opposition concedes that 32 U.S.C. § 502(a) does not provide authority for the Secretary to prescribe individual training for ARNG members. Instead, plaintiffs assert that 32 U.S.C. § 502(f) establishes the Secretary's authority. Plaintiffs are wrong. Section 502(f) does not establish a new training status for members of the ARNG. Moreover, even assuming that

section 502(f) did provide that authority, the Secretary has only prescribed regulations that define the nature and scope of equivalent training that ARNG soldiers may perform in a Federally compensable status: Active Duty, Inactive Duty Training, and Full-Time National Guard duty.

For the reasons stated in our opening motion, and in this reply, the Court should grant our motion for summary judgment because there are no genuine issues of material fact and the United States is entitled to judgment as a matter of law.

## ARGUMENT

The primary issue before this Court is a narrow legal issue: what training has the Secretary prescribed for the ARNG. Plaintiffs have conceded that they did not complete correspondence courses during their regular drill periods, as additional unit drill periods, or as equivalent training to "make-up" missed regular periods or drill. Instead, plaintiffs' case now rests upon their belief that 32 U.S.C. § 502(f) provides for another type of equivalent training, one that allows the Secretary to prescribe individual training for members of the ARNG that is in additional type of equivalent training. The plaintiffs have misinterpreted section 502(f), and this is fatal to their case.

Section 502(f) establishes the Secretary's authority to prescribe full-time National Guard duty. It does not affect equivalent training. The Secretary has prescribed regulations defining equivalent training, and established "minimum standards that must be met" before this training is compensable. See 37 U.S.C. § 206(b). None of the plaintiffs have shown that they have met these standards.

Thus, having conceded a lack of equivalency with regularly scheduled IDTs, the only equivalent training contemplated by Section 206, plaintiffs now must struggle to find some form

of equivalency where none exists. Plaintiffs primary argument in this regard is that correspondence courses are equivalent to in-residence military education for which ARNG members are paid. This argument is fundamentally flawed however, and highlights the lack of merit to plaintiffs' claims. ARNG members attending in residence training receive basic pay for their periods of in residence duty, pursuant to 37 U.S.C. § 204. They are not compensated pursuant to Section 206. Conspicuously absent from Section 204, however, is any equivalent training provision. If correspondence courses are equivalent to in-residence training as plaintiffs state, there is simply no congressional authorization to pay them. Plaintiffs' are now effectively urging this Court to somehow cross-breed these two distinct pay statutes to produce a hybrid mix of the two so ARNG members can be compensated. This is a plainly an invitation for impermissible judicial legislation.

Plaintiffs' opposition, at best, demonstrates that they merely disagree with the Secretary's longstanding interpretation of the applicable statutes and the scope of the governing directives. The Court should reject plaintiffs' understanding, uphold the Secretary's reasonable interpretations, and reject plaintiffs' claims.[3]

---

[3] We will not reiterate in this brief our alternative position that bars plaintiffs claims pursuant to section 206, i.e. Congress has not appropriated money, nor has DoD obligated and apportioned money, to pay a member of the ARNG for completing correspondence courses. See generally Defendant's Appendix ("DA") 438-41, Manwiller Decl. ¶¶ 5-8. Indeed, if the plaintiffs' claims are accepted upon this point, there would be absolutely no Federal control over the public fisc, because individual state actors would now be in control of a significant aspect of the defense budget. Plaintiffs' position blows a hole through the Anti-Deficiency Act, 31 U.S.C. § 1341, because it leaves an individual state actor in control of obligating funds, regardless of the amount Congress has made available in an appropriation or fund. Likewise, if DoD had prescribed correspondence courses as IDT, DoD would have subjected itself to numerous violations the Federal apportionment statute, 31 U.S.C. §§ 1512-1513, 1517, because DOD would not have overall control of its budget, since individuals in the ARNG would be in control of how many compensable courses they took at any time during the fiscal year. See DA 548-560.

## I. The United States Is Entitled To Summary Judgment Because The Secretary Has Never Prescribed Regulations That Established Individual Work On Correspondence Courses As Inactive Duty Training

### A. The Secretary's Prescribed Regulations Governing ARNG Training Do Not Support Plaintiffs' Claims

Consistent with Congressional authority, the Secretary has promulgated regulations that define the nature and scope of equivalent training for the United States Army Reserves, Air Force Reserves, ARNG, and ANG. The Secretary's training regulations are consistent with the nearly one-hundred years of legislative history that sets forth the composition, role, and authorized training of the National Guard in the nation's force structure. National Guard training is conducted solely pursuant to Title 32 of the U.S. Code, and is governed by Dep't of Defense Directive 1215.6, Uniform Reserve, Training, and Retirement Categories, (Mar. 14, 1997) ("DODD 1215.6"); Dep't of Defense Directive 1215.13, Reserve Component Member Participation Policy, (Dec. 14, 1995)("DoDD 1215.13"); Dep't of Defense Instruction 1215.19, Uniform Reserve, Training and Retirement Category Administration, (Dec. 12, 2000) ("DODI 1215.19"); and, National Guard Regulation (AR) 350-1, Training: Army National Guard Training, (Jun. 3, 1991) ("NGR(AR) 350-1").[4] DA 637-41, Kohner Decl. ¶¶ 6-12; DA 644-46, Audino Decl. ¶¶ 3-8. In these regulations, the Secretary has prescribed three types of training duty for the ARNG: Active Duty ("ADT"), Inactive Duty Training ("IDT"), and Full-Time National Guard duty ("FTNGD").[5] DA 637, Kohner Decl. ¶ 6; DA 645, Audino Decl. ¶ 5.

---

[4] Extracts of the directives and instructions are found in the supplemental appendix.

[5] Plaintiffs cannot contend that they completed correspondence courses while on ADT or FTNGD. ARNG members performing ADT or FTNGD are paid active duty pay pursuant 37 U.S.C. § 204. Accordingly, our discussion in this reply will explain why plaintiffs cannot complete correspondence courses pursuant to the Secretary's governing regulations as IDT.

Assuming plaintiffs were completing correspondence courses as members of the ARNG, the only duty status they could have been in was IDT. The Secretary has defined IDT to include three sub-categories: regularly scheduled Unit Training Assemblies ("UTA"), which are the forty-eight assemblies for drill and instruction that all ARNG units and their members must complete annually under 32 U.S.C. § 502(a)(1); additional IDT; and equivalent training. DODI 1215.19, ¶ 6.2.2; DA 638-40, Kohner Decl. ¶¶ 8-10. Furthermore, NGR (AR) 350-1, Table 1-2 defines the limited types of IDT that may be authorized. All ARNG training, whether performed in a pay or non-pay status, must be pre-approved by the command on either published orders or Unit Training Schedules in a detailed process. DODI 1215.19 ¶ 6.2.2.1; Dep't of Defense 7000.14-R, DoD Financial Management Regulation, Vol 7A ("DODD 7000.14-R") ¶ 580101; NGR(AR) 350-1 ¶ 2-1C, 201(d)(2); See also National Guard Regulation 37-104-3, Financial Administration: Military Pay And Allowances Policy And Procedures - Army National Guard, 24 Oct. 2003 ("NGR 37-104-3"), ¶¶ 1-4, 1-8, 3-1, 3-2.

Plaintiffs have not directly stated what IDT status they were in when completing correspondence courses. However, the only possible status they could claim is equivalent training. Pursuant to section 206(b), the Secretary has prescribed strict requirements for Commander's to authorize "equivalent training," and plaintiffs have not met them. Equivalent training is allowed only in the following situation: "When an individual misses the regularly scheduled period of instruction or duty due to unforeseen emergency situations of a personal nature, the training may be made up with pay according to the following guidelines . . ." NGR (AR) 350-1, ¶ 2-1.d.(7); DA 640-41, Kohner Decl. ¶¶ 10-11. Furthermore, the Secretary, consistent with Congress' guidance, has strictly limited each soldier to four equivalent training

assemblies per fiscal year. Id. In addition, when performing equivalent training, the soldier or airman must be in uniform, and the training must be of a "similar nature" to the missed training. Id. In other words, like all IDT, this is a formal, supervised period of training. Finally, to perform equivalent training, in addition to the training schedule, the soldier's commander must specifically authorize the equivalent training in writing, and certify the successful performance of the training. Id.

Plaintiffs' opposition completely fails to assert any facts to show that the plaintiffs met any of the standards the Secretary established for their individual work upon correspondence courses to qualify as IDT training. First, despite contending they were "required" to complete correspondence courses, nowhere in their opposition do plaintiffs provide copies of any signed orders from their commanders that authorize them to take the correspondence courses as equivalent training.[6] Second, none of the plaintiffs contend that their completed correspondence course work was "similar" to the regularly scheduled unit training requirement that they missed. Third, none of the plaintiffs have alleged that when they were working upon correspondence courses that they were in uniform. Fourth, none of the plaintiffs have alleged that they worked upon their correspondence courses for a minimum of two hours at a time. Finally, none of the plaintiffs have provided any credible discussion that refutes the United States' well-supported position that ARNG training is unit, and not individually based. The plaintiffs' failure to provide any evidence that demonstrates compliance with the standards mandated by the Secretary in

---

[6] The failure to provide any evidence that plaintiffs were on written orders by a competent authority is fatal. O'Hanlon v. United States, 11 Cl. Ct. 192, 196-97 (1986); Letter to Lieutenant William E. Archer, Jr., B-165712, 1969 Comp. Gen. WL 4500 (1969); cf. Doe v. United States, 372, F.3d 1347, 1362-63 (Fed. Cir. 2004) (rejecting claim by DoJ attorneys for overtime pay because written orders by a competent authority were not issued).

DoDI 1215.19 and NGR(AR) 350-1 is fatal to their claims, and accordingly, the United States is entitled to summary judgment.

**B. The Secretaries Have Never, Nor Could They, Invoke Their Authority Pursuant To Section 502(f) Of Title 32 To Establish ARNG Training That Is Not Unit-Based Training**

Faced with the overwhelming evidence in the historical legislative record that supports the Secretary's governing regulations that mandate unit based training, or the equivalent thereof, for members of the ARNG, plaintiffs' opposition rightfully concedes that 32 U.S.C. § 502(a) only authorizes unit-based training. See Pl. Opp. p. 5, 33. This candid concession is fatal to plaintiffs' claims, because it leaves plaintiffs grasping for an authorizing training statute. However, the statute upon which plaintiffs choose to rely, 32 U.S.C. § 502(f), does not support their claims. See Pl. Opp. pp. 5-12.

The plaintiffs' contention that section 502(f) allows the Secretary to prescribe individual training fails because the Secretary has never prescribed an individual's self-paced work completing correspondence courses as the "Full-Time National Guard" or "other duty"[7] that 32 U.S.C. § 502(f) is intended to cover.[8] DA 637, Kohner Decl. ¶ 6. Section 502(f) has been specifically used as authority in very limited circumstances to allow ARNG members to perform

[7] Other sections of Title 10 and Title 32 use the term "other duty" in similar fashion. The definition of "full-time National Guard duty" in both 10 U.S.C. § 101(d)(5) and 32 U.S.C. § 101(19) includes the term "other duty." Also, the definition of "Active Guard and Reserve duty" in 10 U.S.C. § 101(d)(6)(a) includes the term "Other duty."

[8] See also Bowen v. Oistead, 125 F.3d .800, 802 (9th Cir. 1997) (noting section 502(f) service as full-time duty); Tirado-Acosta v. Puerto Rico National Guard, 118 F.3d 852, 853 (1st Cir. 1997) (same); Wrigglesworth v. Brumbaugh, 121 F.Supp. 2d 1126, 1128 (W.D. Mi. 2000) (USERRA claim by ANG member serving upon full-time duty pursuant to section 502(f)).

missions or duties other than "training" in a FTNGD status.[9] DA 644, Audino Decl. ¶ 4. Indeed, the inherent dangerous nature of these types of missions explains why section 502(f) was promulgated in 1964: to ensure members of the National Guard would be authorized the same benefits as members of the Regular Army and Air Force if "they were disabled in line of duty" while performing missions other than "training."[10] It most certainly was not promulgated to provide members of the National Guard a vehicle to earn pay that Reservists performing similar activities were specifically precluded from receiving.

The 1964 amendment to 32 U.S.C. § 502 authorized the Secretary to prescribe additional training or other duty for ARNG members. However, the Secretary's prescription authority pursuant to this section is still limited. According to the legislative history, the amendment establishing section 502(f) was intended to "permit . . . members of the National Guard to be ordered to perform training or other duty that is in addition to the regularly scheduled drills of their units."[11] Moreover, the amendment was designed to authorize hospital benefits, pay, and allowances to protect "members of the National Guard who incur disability while they are . . . performing training or other authorized duty that is in addition to the regularly scheduled drills of

---

[9] This duty includes counter-drug duty pursuant to 32 U.S.C. § 112(b) and weapons of mass destruction civil support teams pursuant to 10 U.S.C. § 12310(c)(1).

[10] DoD has also recognized the limited purpose of section 502(f) and ensured that work on correspondence courses is not considered "duty" for expanded medical benefits of National Guard members performing FTNGD training and "other duty" in addition to that in 32 U.S.C. § 502(a). DoDD 1241.1, para. E1.1.3. Likewise, 10 U.S.C. § 1475 allows no death gratuity for a "reservist" who dies while performing work or study in connection with correspondence course work.

[11] S. Rep. 1584, 109 Cong. Rec. 3801 (1964).

their units, or the annual periods of 15 days of active duty for training."[12]

This amendment to 32 U.S.C. § 502 was clearly not designed to create a new category of authorized duties that ARNG soldiers could perform, but rather to permit compensation and medical coverage for ARNG soldiers who were conducting training that was already authorized when the amendment was proposed, i.e. as plaintiffs admit, unit based training pursuant to section 502(a). Indeed, the Senate Armed Services Committee stated:

> The committee amendment is not intended to encourage any additional training with pay; instead, its purpose is to make consistent the comparable [training] provisions applicable to the [U.S. Army] Reserve and to the National Guard.

Id. (referring to U.S. Army Reserve training authorized "with or without pay" in 10 U.S.C. § 683 (now 10 U.S.C. § 12315)).

Furthermore, then Secretary of the Army Cyrus Vance[13] gave several examples of the limited types of additional training or duties that the amendment would permit. Secretary Vance's examples included such additional unit training or duty as a commanders' scheduled inspection of their units, command post exercises, and the assembly of units for additional needed instruction and cleaning of equipment. Id. at 3803.

At bottom, there is nothing in the language of the statute or legislative history, and there is certainly no governing directive or regulation, that supports plaintiffs' assertion that section

---

[12] Id. at 3800.

[13] Secretary Vance was delegated authority to express the views of the Department of Defense regarding this amendment to 32 U.S.C. § 502.

502(f) authorizes compensation for completing correspondence courses.[14] At best, it shows that plaintiffs and the Secretary simply disagree upon how this statute should be interpreted. It is well-settled that when the meaning of military regulations and instructions are at issue, the armed service's own interpretation must be given controlling weight and deference, especially when it has been consistently interpreted, like here, over a long period of time. United States v. Clark, 454 U.S. 555, 565 (1982); Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir.1986), cert. denied, 479 U.S. 853 (1986). If the applicable regulations are interpreted by the armed services in a reasonable manner, any challenge to it, even if the plaintiffs may present another reasonable interpretation of the regulations, must fail. Wronke v. Marsh, 787 F.2d at 1573. Thus, where a military regulation is susceptible to equally reasonable constructions, a court may not substitute an alternative interpretation for the interpretation of the military service. Id.

### C. Plaintiffs' Opposition Highlights The Fact That The Legislative History Behind Titles 32 And 37 Supports The Secretary's Interpretation That Congress Has Only Authorized Unit-Based Training

The detailed historical overview set forth in our opening brief demonstrates that the Secretary has been consistent with Congressional guidance for 100 years when prescribing training for the ARNG. Plaintiffs again are wrong when they assert that the Government made "numerous mischaracterizations of the legislative history." Pl. Opp. p. 29. Indeed, it the plaintiffs who mischaracterize the legislative history behind the Secretary's regulations.

[14] Plaintiffs imply on page 7 of their opposition that Army Regulation ("AR") 350-1, Training: Army Training And Education, 9 April 2003, is such a regulation; however, this regulation does not provide that support. Indeed, it does not apply to the Army and Air National Guard, nor does it ever mention section 502(f) anywhere in the regulation.

Plaintiffs' first error is when they argue that contrary to the Government's position that the Secretary's authority is limited to drill training for members of the ARNG, "section 5(a) of the 1948 Act expressly authorized the Secretary to prescribe additional, paid training for Guard member beyond drill and assembly." Id. Plaintiffs then, however, contradict themselves, and actually make the Government's case upon this issue when they quote the language of section 5(a), noting that it specifically applies to "members of the National Guard of the United States." Id. Of course, this is the status the plaintiffs have run from because of the preclusion of section 206(d), so it ironic that they now seek this status for support.

Furthermore, plaintiffs deem irrelevant the Government's accurate portrayal of the legislative history that states Congress defined the global term "inactive duty training" to specifically exclude correspondence courses by arguing that this definition only applies to physical disability payments. Pl. Opp. p. 30. A reading of that definition demonstrates that the plaintiffs are wrong here too. In 1949, Congress defined inactive duty training, which has remained to this day, as:

> any of the training, instruction, duty, or appropriate duties, or equivalent training, instruction, duty, or appropriate duties, or hazardous duties performed with or without compensation by members of the reserve components of the uniformed services as may be prescribed by the Secretary concerned pursuant to section 501 of this Act, or any other provision of law, and in addition thereto shall include the performance of special additional duties, as may be authorized by competent authority, by such members on a volunteer basis in connection with the prescribed training or maintenance activities of the unit to which the members are assigned: **Provided**, That the term "inactive duty training" shall not include work or study performed by such members in connection with correspondence courses of the uniformed services.

The Career Compensation Act of 1949 ("Act of 1949"), ch. 681, § 102(i) (emphasis in original), 63 Stat. 802, 805. Furthermore, section 501 of the Act of 1949 specifically dealt with training duty of members of the National Guard, to include provisions governing IDT without pay. Id., § 501(b), 63 Stat. at 826. It is difficult to see from the plain language of the legislative history how the United States mischaracterized these terms. It is even more difficult to see how this definition of IDT was merely a "gap-filling" provision pertaining solely to the disability provisions of "Section 402(c)" when the definition refers not to section 402, but section 501. Compare Pl. Opp. pp. 30-31 N. 27 with the Act of 1949, ch. 681 at §§ 102(i), 402(c), 501; 63 Stat. 802, 805, 817, 825.

Plaintiffs also misunderstand the scope and applicability of the Armed Forces Reserve Act of 1952 ("AFRA of 1952"). Pl. Opp. p. 31. While the plaintiffs' are correct that AFRA of 1952 did not amend the compensation provisions of the Act of 1949, the plaintiffs are wrong by implying that Congress did not continue to evidence a clear intention that completion of correspondence courses was not compensable duty,[15] and that duty included only military service performed in response to competent orders.[16] The Armed Forces Reserve Act of July 9, 1952, ch. 608, 66 Stat. 481. Indeed, this language, that has been found in statutes and regulation since 1949, remains unchanged to the present.[17]

---

[15] The Armed Forces Reserve Act of July 9, 1952, ch. 608, § 101(d), 66 Stat. 481 ("Work or study performed by [members of the reserve components and the Army and Air National Guards] shall be deemed inactive-duty training for which compensation is not authorized under the provisions of section 501 of the Career Compensation Act of 1949, as amended.").

[16] Id. § 101(a); Sen. Rep. No. 1795 1952 U.S.C.C.A.N. 2005, 2017.

[17] For example, in 1962, when Congress enacted and codified the provisions of the Career Compensation Act of 1949 into Title 37 of the U.S. Code, Congress's stated purpose was

The legislative history set forth in our opening brief is accurate, and reflects Congress' intent that IDT by the ARNG must be conducted in unit assemblies, with other minimum standards as the Secretary determines. The Secretary, consistent with this history, has done just that for the past 100 years, most recently in DoDI 1215.19 and NGR(AR) 350-1. DA 638-40, Kohner Decl. ¶¶ 7-10; DA 644-46, Audino Decl. ¶¶ 3-8. The Secretary's determination regarding this training role should be respected, and the plaintiffs different understanding of these statues and regulation should not supplant the Secretary's considered interpretation.

## II. Plaintiffs Have Misread The Federal Circuit's Decision As A Mandate For This Court To Find Liability Against The United States Because Required Training Is Compensable

Plaintiffs are wrong when they contend the law of the case has all but decided how much the United States should pay the plaintiffs. See Pl. Opp. pp. 27-39. The Federal Circuit has instructed that to be the "law of the case," a matter must have "actually been decided." Augustine v. Principi, 343 F.3d 1334, 1339 (Fed. Cir. 2003). The Federal Circuit's opinion was not entered in response to any ruling upon what duties or training the Secretary has prescribed for members of the ARNG. Instead, it was in response to this Court's ruling regarding the Court's jurisdiction and whether section 206(d) applied to members of the ARNGUS when not serving in Federal service. See Clark, 322 F.3d at 1360-61. Indeed, to rule upon the Government's motion

---

to "restate in comprehensive and cohesive form, without substantive change, the laws applicable to the pay and allowances of members of the uniformed services . . . ." Sen. Rep. No. 1874 1962 U.S.C.C.A.N. 2390. The IDT provisions of former section 501 were split between section 206 (compensation for IDT) and section 1002 (additional training or duty without pay). Section 101(22) restated, in substance, the definition of IDT excluding work or study in connection with a correspondence course of a uniformed service performed by either members of a reserve component or the National Guard. Pay and Allowances of the Uniformed Services, Pub. L. No. 87-649, § 101(22), 76 Stat. 451 (1962).

that section 206(d) precluded Mr. Clark from bringing his suit, the Federal Circuit accepted all well-pleaded factual allegations as true and drew all reasonable inferences in Mr. Clark's favor. Clark, 322 F.3d at 1363. Thus, when Mr. Clark asserted he completed correspondence courses in his ARNG status, the Federal Circuit assumed that assertion was true for the purposes of deciding the narrow issue before it. While this procedure was perfectly appropriate in the context of the Government's motion on appeal, it does not establish the law of the case for the purposes of the present dispositive motion challenging those claims.

In this case, the Federal Circuit remanded the matter to this Court with specific instructions to consider conducting a "proceeding on the merits of [plaintiffs'] claim for compensation under section 206(a)." Clark, Id. at 1369. Pursuant to this directive, the Court is now properly determining what, if any, regulation the Secretary has prescribed as Federally recognized ARNG or ANG inactive duty training. As we demonstrated in our opening brief, and above, the answer to the Federal Circuit's remand question as to whether Secretary prescribed "any" training is: the Secretary has prescribed three types of training and duty for members of the ARNG: 1) active duty, 2) inactive-duty for training, and 3) full-time National Guard duty. DODI 1215.6 ¶ 4.3; DODI 1215.19 ¶ 6.2.2.; NGR(AR) 350-1 ¶¶ 2-1, 2-2, 2-3. Self-paced work, by an individual that is not in a unit-based setting, and not on written orders, is not a subset of these duty/training statuses.[18]

---

[18] Contrary to plaintiffs' assertion, the Federal Circuit did not "unequivocally" hold, as plaintiffs claim, "that Guard members take correspondence course work in [a] Title 32 duty status." Pl. Op. p. 37, citing Clark, 322 F.3d at 1368. Indeed, what the Court did state was:

> [a]t the same time, Mr. Clark's well-pled complaint alleges that he was required to take correspondence courses in order to maintain his status in the National Guard or to advance in rank.

**A. Plaintiffs Misread The Federal Circuit's Opinion To Amend The Plain Language Of The Statute By Adding The Word "Required"**

Not only do plaintiffs ignore the scope of the Federal Circuit's opinion, they attempt to extrapolate rulings unsupported by either the language of section 206 or the court's opinion itself. Plaintiffs contend throughout their opposition that the Federal Circuit has already decided the merits of this case, and in doing so, determined that "required" training, is compensable. Pl. Opp. pp. 27-39. Thus, plaintiffs believe that if they were required to complete a correspondence course, they must be paid for doing so. The Federal Circuit obviously did not reach this merits-based question; instead, it remanded the matter to this Court for it to make a merits finding. Clark v. United States, 322 F.3d at 1368.

Plaintiffs base their position upon the language in the Federal Circuit's opinion, where the panel stated:

> On remand, of course, Mr. Clark must establish which classes the Secretary of the Army required, if any, and which classes he took to satisfy those requirements. Moreover, he must establish the amount of compensation he is due under the statute.

Id. However, that language is taken out of context, considering the posture of the case at that time and other language in the statute. Moreover, it ignores the Federal Circuit's holding that "[s]ection 206(a)(2) requires payment for **equivalent training** that the Secretary prescribes." Clark v. United States, 322 F.3d 1358, 1368 (Fed. Cir. 2003) (emphasis added). Once those factors are considered, it can be of little doubt that the Federal Circuit meant that Mr. Clark must establish the training the Secretary required as equivalent training.

---

Id. It is difficult to see how this sentence is an "unequivocal" holding by the Federal Circuit that the plaintiffs completed correspondence courses in a Title 32 status.

The plain language of the statute controls, and thus, whether a correspondence course is "required" is irrelevant. Section 206(a)(2) of Title 37 only requires pay for "other equivalent training, instruction, duty, or appropriate duties, as the Secretary may prescribe." It does not require pay simply for actions that may be required for a variety of reasons; it only requires pay for activities that the Secretary prescribes as IDT. Thus, the key question is whether the Secretary has prescribed regulations that establish as IDT for members of the ARNG to train on his own, in his home, without pre-approved written orders, without being in uniform, and without any relationship to his unit's published training schedule. That answer is a resounding "no."

## III. There Is No Basis For Plaintiffs' Contention That The Secretary Has Required Correspondence Courses As ARNG Training

In light of their misunderstanding of the scope of the Federal Circuit's opinion, the majority of plaintiffs' opposition is centered around plaintiffs' attempts to explain that the Secretary has required ARNG members to complete correspondence courses. See Pl. Opp. pp. 6-8, 20-27. The snippets of regulations plaintiffs rely upon for arguing this point have been either taken out of context; only apply to members of the ARNGUS, and not members of the ARNG; or have been simply misunderstood by the plaintiffs. Indeed, plaintiffs' reliance upon Field Manual 7-0, October 22, 2002, Training The Force ("FM 7-0"), provides an excellent representative example of how the plaintiffs are simply misapplying several military publications to this issue.

Initially, it must be noted that FM 7-0, like all Army Field Manuals, by its very nature is merely general guidance. U.S. v. Wolfson, 36 C.M.R. 722, 726 (ABR 1966); U.S. v. Harvey, 659 F.2d 62, 64 (5th Cir. 1981). Furthermore, FM 7-0 does not prescribe training activities, it

merely establishes overarching general guidance for its members to understand how the Army plans and executes training and develops future leaders.[19]

Again, plaintiffs are simply wrong when they point to isolated general statements in FM 7-0 and boldly assert that the Army has "required National Guard members to complete [correspondence course] to achieve proficiency in the METL for the Guard unit to which each member belongs." See Pl. Opp. p. 17-19. Nowhere in FM 7-0 is there any language where the Secretary has mandated an individuals work completing correspondence courses as a separate and distinct duty and training status from those set forth in DODI 1215.19 and NGR(AR) 350-1. Similarly, nothing in any of the Yearly Training Guidance states that "[g]uard members must complete correspondence courses" as a substitute for the specific training and duty requirements the Secretary has set forth in DODI 1215.19 and NGR(AR) 350-1.

The Secretary has interpreted Title 32 to provide him with the authority to issue training directives that are guided by the over-arching principal that ARNG training is unit-based. DA 636-40, Kohner Decl. ¶¶ 5-10; DA 417, McNamara Decl. ¶ 4; DA 644, Audino Decl. ¶ 3. Plaintiffs have presented nothing more than their personal interpretations, which are based upon snippets of regulations that not only do not say what plaintiffs interpret them as saying, they also do not alter the uncontroverted record that the Secretary has not prescribed individualized work completed correspondence courses as IDT.

In an attempt to demonstrate that the service secretaries have prescribed correspondence courses as equivalent training, plaintiffs also contend that they would have been subject to

[19] Moreover, if FM 7-0 had the binding effect of regulations, it would mandate dismissal of the plaintiffs' claims pursuant to section 206(d), because FM 7-0 defines the Reserve Component to include ARNG members. DA 1326, 1305, FM 7-0 ¶ 1-47, p. Glossary-15.

discipline pursuant to the Federal Uniform Code of Military Justice ("UCMJ") or their respective states' military code of justice if they had failed to complete correspondence courses, in their civilian status, if ordered to do so by someone in a military status. Pl. Op. pp. 20-27. The Federal UCMJ does not apply to plaintiffs unless they are in Federal service at both the time of the offense and at the time of the trial. U.S. v. Wilson, 53 M.J. 327, 328 (CAAF 2000). Similarly, the state military justice codes do not apply because they only authorize criminal sanctions for offenses committed in a state military duty status. Consequently, failure to complete correspondence courses while in a civilian status, even if ordered to do so while in a military duty status, is a non-punishable offense due to lack of jurisdiction, nor could the theoretical existence of state legislated criminal sanctions bind the service secretaries. Thus, regardless of whether a member of the state ARNG does, or does not, complete correspondence courses, that member could not face any criminal sanction at the Federal or state level.[20]

Plaintiffs also mistakenly claim that language in certain regulations requires them as members of the ARNG to complete correspondence courses to maintain certain standards. First, these regulations do not establish that correspondence courses are IDT. The language in these regulations merely underscores the professional standards a member of the military must aspire to meet. This language does not mandate any training, nor provide the authority for compensation.

---

[20] Plaintiffs also are wrong when they state that they are subject to administrative sanctions like an "up or out" policy, denial or reenlistment, or demotion if they don't compete correspondence courses. Pl. Opp. pp. 22-27. Once again, they misstate the law as it applies to members of their chosen status, the ARNG. ARNG members do not face these sanctions, as we established in our opening motion, these sanctions, if they apply, do so in their state status.

Furthermore, if plaintiffs' interpretation was actually adopted, it would effectively mandate compensation for all tasks a service member must do to maintain the professional standards of the military. For example, under plaintiffs' understanding of the law, a member of the ARNG must be compensated for the time spent exercising and dieting to maintain the proper physical standards. Similarly an ARNG soldier must be paid for time spent polishing his boots, pressing his uniforms, and getting his haircut to maintain proper personal appearance standards. Additionally, an ARNG soldier must be compensated for bathing and shaving, to maintain established personal hygiene standards. These examples are actually more valid than plaintiffs' claims here, because unlike failing to take correspondence courses, failing to maintain the proper physical and personal appearance, and personal hygiene standards can lead to punitive sanctions.

Finally, plaintiffs also are wrong when they assert that because they can earn retirement points for completing correspondence courses, they are obviously in a duty status. Pl. Op. p. 38. Members of the ARNG do not earn retirement points in relation to their membership in the ARNG. Retirement points are awarded based upon an individuals membership in the ARNGUS, pursuant to 10 U.S.C. § 12732.

**CONCLUSION**

Accordingly, for the reasons stated above, and in our opening motion, we respectfully request that the Court uphold the Secretary's determinations and grant the Government's motion for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ James M. Kinsella by Todd M. Hughes
JAMES M. KINSELLA
Deputy Director

s/ Douglas K. Mickle
DOUGLAS K. MICKLE
Trial Attorney
National Courts
Commercial Litigation Branch
Civil Division
United States Department of Justice
Washington, D.C. 20530
Tel. (202) 353-7961
Fax (202) 353-7988

Attorneys for Defendant

OF COUNSEL:
LT. COL. JOSEPH FETTERMAN
MAJOR CHRIS SOUCIE
MAJOR GARY CORN
United States Army Litigation Division
Arlington, VA 22203-1837

LT. COL. JOSEPH WENDLBERGER
United States Air Force
General Litigation Division

CAPTAIN CHRIS BROWN
National Guard Bureau
Office of Chief Counsel

July 18, 2005

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on July 18, 2005, a copy of the foregoing "**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**" with its accompanying appendix was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Douglas K. Mickle
Douglas K. Mickle