No. 00-644C
(Chief Judge Damich)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

WILLIAM A. CLARK, et. al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S SUPPLEMENTAL APPENDIX AND REGULATORY EXTRACT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JAMES M. KINSELLA
Deputy Director

DOUGLAS K. MICKLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 353-7961
Fax: (202) 353-7988

Attorneys For Defendant

OF COUNSEL:
LT. COL. JOSEPH FETTERMAN
MAJOR CHRIS SOUCIE
MAJOR GARY CORN
United States Army Litigation Division
Arlington, VA 22203-1837

LT. COL. JOSEPH WENDLBERGER
United States Air Force
General Litigation Division

CAPTAIN CHRIS BROWN
National Guard Bureau
Office of Chief Counsel

July 18, 2005

# INDEX TO APPENDIX

Document — Page

Declaration Command Sergeant Major (Retired) McNamara . . . . . . . . . . . . . 415-436

Declaration of Howard Manwiller . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 437-442

Attachment 2 to Manwiller Declaration (Administrative Instructions for IDT) . . . . . . . . . . . . . . . . . . . . . . . . . 548-560

Declaration of Daniel J. Kohner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 633-642

Declaration of Colonel Ernest C. Audino . . . . . . . . . . . . . . . . . . . . . . . . . . 643-647

Department of Defense Directive 1035.1, Telework Policy for the Department of Defense, (Sep. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 651

Dep't of Defense Directive 1215.6, Uniform Reserve, Training, and Retirement Categories, (Mar. 14, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 655

Dep't of Defense Directive 1215.13, Reserve Component Member Participation Policy, (Dec. 14, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6631

Dep't of Defense Instruction 1215.19, Uniform Reserve, Training and Retirement Category Administration, (Dec. 12, 2000) . . . . . . . . . . . . . . 668

Dep't of Defense 7000.14-R, DoD Financial Management Regulation, Vol 7A, Paragraph 5801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 709

National Guard Regulation 37-104-3, Financial Administration: Military Pay and Allowances Policy and Procedures-Army National Guard, 24 Oct. 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 716

National Guard Regulation (AR) 350-1, Training: Army National Guard Training, (Jun. 3, 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 733

National Guard Regulation 635-102, Officer and Warrant Officers Selective Retention, July 1, 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 752

National Guard Regulation 680-2, Automated Retirement Points Accounting System, Mar 1, 1989 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 767

National Guard Regulation 351-1, Individual Military Education and Training, Jun 1, 1987 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 793

National Guard Regulation 635-100, Termination Of Appointment And Withdrawal Of Federal Recognition, July 15, 1983 . . . . . . . . . . . . . . . 806

National Guard Regulation 600-200, Personnel General: Enlisted Personnel Management, Mar 1, 1997 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 819

Air National Guard Instruction 36-2002, Enlistment And Reenlistment In The Air National Guard And As A Reserve of the Air Force, Mar 1, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 898

Air National Guard Instruction 36-2502, Promotion Of Airmen, Aug 25, 2000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 950

Air National Guard Instruction 36-2504, Federal Recognition Of Promotion In The Air National Guard (ANG) And As A Reserve Of The Air Force Below The Grade Of General Officer, July 28, 2004 . . . . . . . . . . . . . 960

Air National Guard Instruction 36-2606, Selective Retention Of Air National Guard Officer And Enlisted Personnel, Feb 28, 1997 . . . . . . . . . . . . . . . . . . 971

Army Regulation 135-155, Promotion Of Commissioned Officers And Warrant Officers Other Than General Officers, 13 July 2004 . . . . . . . . 977

Army Regulation 135-200, Active Duty For Missions, Projects, And Training For Reserve Component Soldiers, 30 June 1999 . . . . . . . . . . . . . . . . . . . . . . . . 999

Army Regulation 135-205, Enlisted Personnel Management, Sept,1 1994 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1010

Army Regulation 350-10, Management Of Army Individual Training Requirements And Resources, Sept 14, 1990 . . . . . . . . . . . . . . . . . . . . . . . 1023

Army Regulation 350-1, Army Training and Education, Apr. 9, 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1036

Army Regulation 351-1, Individual Military Education Training, 15 October 1987 . . . . . 1096

Department of the Army Pamphlet 350-58, Leader Development For America's Army, Oct. 13, 1994 . . . . . 1129

Department of the Army Pamphlet 350-59, Army Correspondence Course Program Catalogue, Oct 1, 2000 . . . . . 1151

Department of the Army Pamphlet 351-20, Army Correspondence Course Program Catalogue, Apr. 28, 2000 . . . . . 1180

Field Manual 7-0, Training the Force, Oct. 22, 2002 . . . . . 1208

Field Manual 22-100, Army Leadership, Be, Know, Do, Aug 31, 1999 . . . . . 1308

Air Force Policy Directive 36-22, Air Force Military Training, Mar 22, 2004 . . . . . 1326

Air Force Instruction 36-2201, vol. 4, Air Force Training Program, Managing Advanced Distributed Learning, Oct. 23, 2002 . . . . . 1331

Air Force Instruction 36-2201, vol. 3, Air Force Training Program, On The Job Training Administration, 4 Feb 2005 . . . . . 1348

Air Force Instruction 36-2301, Professional Military Education, Jun 27 2002 . . . . . 1354

Air Force Instruction 36-2618, The Enlisted Structure, Apr. 1, 1999 . . . . . 1363

Air Force Instruction 51-604, Appointment To And Assumption Of Command, Oct 1, 2000 . . . . . 1377

Air Force Manual 36-8001, Reserve Personnel Participation And Training Procedures, Jan 22, 2004 . . . . . 1382

FORSCOM/ARNG/USAR Regulation 350-2, Reserve Component Training, Oct. 27, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1411

U.S. Army Training and Doctrine Command ("TRADOC") Regulation 350-70-4, Systems Approach to Training, Management Processes And Products, Mar 9, 1999 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1422

TRADOC Regulation 350-10, Institutional Leader Training and Education, Aug. 12, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1455

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM A. CLARK, individually and on behalf of all others similarly situated, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 00-644 (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DECLARATION BY**
**COMMAND SERGEANT MAJOR(RETIRED) THOMAS M. McNAMARA, JR.**

I, Thomas M. McNamara, Jr., Sergeant Major (Retired), United States Army, make the following declaration in accordance with 28 U.S.C. § 1746. I am aware that this declaration will be used in the United States Court of Federal Claims, and that this declaration is the legal equivalent to a statement under oath.

1. I retired on September 1, 2000 from military service. Of the forty years I served in the military, 36 were spent in the Army National Guard ("ARNG")/Army National Guard of the United States ("ARNGUS"). In relevant part, from May 1987 to February 1990, and again from July 1994 to June 2000, I was the Senior Staff Noncommissioned Officer ("NCO") for Enlisted Personnel at the National Guard Bureau ("NGB"). In this position, I was the senior staff NCO working all aspects of policies, programs, processes and procedures for enlisted personnel management for classification, assignment, utilization, professional development, promotion, reduction, reenlistment, separation, and retirement, as well as soldier programs such as individual training, awards, decorations, evaluations, qualitative management, selection boards, and the

Army National Guard Command Sergeant Major Program. Since my retirement, I have been employed as a contract employee with the National Guard Bureau, where I continue to work in the above areas involving enlisted personnel matters.

2. In my forty years of military service, I have extensive experience with and knowledge of National Guard training requirements, the individual military education system, National Guard promotion and retention policies and procedures, and the Army Correspondence Course Program ("ACCP") from both a personal and management perspective. In the twenty-four years from 1976 to 2000, I served two tours at the Army's Recruiting and Retention School as an Instructor and as a Training Development NCO (writing resident and correspondence course materials and supervising teams involved in those efforts); three tours at the National Guard Bureau as a Senior Staff NCO developing future plans for and providing input to The Army School System and NCO course curriculum; and a tour as the State Command Sergeant Major for the New Hampshire Army National Guard responsible for monitoring subordinate units' requirements for and use of all available means for completion of NCO professional development courses, as well as participating in Department of the Army groups and panels to shape the future of these courses and the basic program. I have personally successfully completed over 1,000 hours of correspondence courses in my military career including the four correspondence phases of the U.S. Army Sergeants Major Course. I wrote and helped developed the current ARNGUS enlisted promotion system, which uses the ACCP as one of the areas with which soldiers may broaden their knowledge and earn enlisted "promotion points."

00416

National Guard Training

3. ARNG training is conducted pursuant to Title 32 of the U.S. Code, and is governed by National Guard Regulation (AR)("NGR") 350-1, Training: Army National Guard Training. Although this training is performed while in a state status, it is federal training performed for the purpose of maintaining current unit readiness in anticipation of post-mobilization requirements–that is, federal active duty as a reserve force. The ARNG/ARNGUS is an integral part of the first line defenses of the United States, as stated in section 102 of Title 32. This training is conducted to meet both the Militia clause requirements of the ARNG, as well as reserve component requirements prescribed in Title 10 of the U.S. Code for the ARNGUS. Present examples of this are the several ARNGUS units that are serving in Iraq.

4. Per NGR(AR) 350-1, there are three basic types of training duty that ARNG/ARNGUS soldiers perform: Inactive Duty Training ("IDT"), Annual Training ("AT") and Active Duty for Training ("ADT") (also referred to as "full time National Guard duty"). ARNG members performing AT and ADT are paid active duty pay, and so I will limit my discussion to IDT. IDT is otherwise known as "Armory drill training" or "weekend drill," although certain ARNG units may schedule IDT periods on several days throughout the month. IDT is broken down into three sub-categories: regularly scheduled Unit Training Assemblies ("UTA"), which are the forty-eight assemblies for drill and instruction that all ARNG units and their members must complete annually under 32 U.S.C. § 502(a)(1); additional IDT; and equivalent training. In my forty years of service, I have never seen nor understood ARNG IDT to have been conducted pursuant to any other statutory authority. NGR(AR) 350-1, Table 1-2 defines the limited types of IDT that may be authorized. All ARNG training, whether performed in a pay or non-pay status, must be pre-

approved by the command on either published orders or Unit Training Schedules in a detailed process. Within the framework of that schedule, a number of individuals and small groups of individuals may do a number of different things for their IDT. For instance, while one or more recent enlistees may have instruction on selected subjects as part of their accession orientation, the food service section might prepare and serve the noon meal (their training is the repetition of the tasks of the section mission–FEED SOLDIERS–they will perform as part of the unit in any environment), while the major combat element of the unit (for example, the howitzer sections of a firing battery) will run the many different steps of gunnery drill so the several soldiers in each of the sections can function smoothly, safely and efficiently as teams. The focus of IDT assemblies is to build the current readiness skills of the lowest echelon elements of units–crews, teams, squads, sections, and maybe platoons–in preparation for the collective training of larger elements–companies, battalions, etc.–at annual training. Ultimately, the goal of Title 32 ARNG training is to provide trained and ready forces available to the National Command Authority when needed to mobilize. These IDT assemblies are the regularly scheduled training periods for each ARNG unit.

5. There are in the budget a number of additional training assemblies such as Readiness Management Assemblies, Additional Training Assemblies, and Additional Unit Training Assemblies but these, too, must be pre-approved and scheduled and are strictly controlled by NGB and parceled out for planned, approved and scheduled duties by the type of activity or training to be performed. These additional periods of IDT are Section 502(a)(2) duties performed above the minimum forty-eight. Annually, NGB allocates to each state a limited amount of funds to support all IDT and AT for each of the state's units. Because this funding is

limited, each state further controls the allocation of authorized periods of additional IDT. Finally, not all periods of duty are paid. IDT and FTNGD can both be performed without pay. NGR 350-1 paragraph 2-1e(1), states that "Battalion and higher commanders are authorized to order IDT nonpay assemblies to conduct appropriate training . . . . "

6. "Equivalent training" is allowed only in the following situation: "When an individual misses the regularly scheduled period of instruction or duty due to unforeseen emergency situations of a personal nature, the training may be made up with pay according to the following guidelines….." as stated in NGR 350-1 para 2-1d(7) (based on 37 USC 206(e)). Each soldier is limited to four equivalent training assemblies per fiscal year. In addition, the soldier must be in uniform, and the training must be of a "similar nature" to the missed training. In other words, like all IDT, this is a formal, supervised period of training. In my forty years of service, I have never known equivalent training to be anything other than training performed in lieu of regularly scheduled training assemblies in accordance with the criteria set forth in NGR 350-1. To perform ET, in addition to the training schedule, the soldier's commander must specifically authorize the ET in writing, and certify the successful performance of the training.

Individual Military Education

7. Distinct from the mission oriented unit training described above, individual military education and training ("IMET") focuses not on current unit readiness, but has as its primary goal the development of ARNGUS soldiers and leaders. With the exception of Initial Active Duty for Training ("IADT")–basic training and advanced individual training ("AIT")–all IMET is aspirational, voluntary training. The primary component of IMET is conducted through the Army Institutional Training and Education System ("AITES"), governed by Army Reg. 350-1.

IMET is achieved through operational assignments, self-development, and formal military education conducted by accredited Army and DoD training institutions.

8. The training and education offered through AITES is configured in several forms depending on the course content and structure. That is, IMET may be performed in residence at an active component school, in residence at a Regional Training Institute of The Army School System ("TASS"), through non-resident instruction, to include the Army Correspondence Course Program ("ACCP"), or in some circumstances, a combination of these. The courses taught through the AITES can be generally divided into three categories: 1) Functional courses, which are general or additional skills training in nature, such as the Master Fitness Trainers Course; 2) Military Occupational Specialty ("MOS") related courses, such as Unit Administration or Light Wheeled Vehicle Mechanic course; and 3) leader professional development courses. Within this last category are Officer, Warrant Officer, and Noncommissioned Officer Education Systems courses and professional development courses.

9. As discussed in more detail below, of the courses just described, only those grouped in the OES, WOES, and NCOES categories are linked to promotion or advancement as pre-qualifications. The remainder of the courses are purely self developmental in nature. They enhance an individual's knowledge and skills, afford him the opportunity of earning retirement points and promotion points, and make him more competitive with his peers. No one is required to take these courses and no can be criminally or administratively sanctioned for not enrolling or successfully completing these courses.

10. As noted above, members of the ARNGUS who wish to obtain IMET can do so through a variety of means. First, they may apply to attend a full resident course at an Army school. While

funding for these courses, and thus quotas, are limited, this possibility always exists. Quotas vary yearly, and within a state as well as across the entire National Guard, yearly quotas may change or be shifted from MOS to MOS. For example, while a state may have 100 quotas in a given year to send MOS 11B (Basic Infantryman) to a Primary Leadership Development Course, and only two such quotas allocated for MOS O2B (Bandsman) such as Staff Sergeant Clark ("SSG"), due to contingency operations, trading of quotas, or lack of qualified or willing infantryman, quotas can and often do come available through the Structured Manning Decision Review process. Specifically, the States participate in the quarterly Training Requirements Arbitration Panel to obtain class quotas for both active and reserve component schools for one or more soldiers who were not originally projected to attend. The second option available is to attend the course in residence at a Regional Training Institute–regionally located Reserve Component schools that are part of The Army Schools System. This option generally entails briefer periods of full time duty, such as two weeks of ADT, and may have non-resident phases incorporated into the course. Finally, ARNGUS members may enroll in courses through the ACCP. Some courses are offered in their entirety via correspondence, while some may involve a combination of residence and correspondence phases as mentioned.

Non-commissioned Officer Education System

11. The Noncommissioned Officer Education System (NCOES) began taking form towards the end of the Vietnam War and with the advent of the All Volunteer Force. At the same time, the Armed Forces embarked on a program called Total Force. During the Vietnam War, the Army experienced great difficulty in maintaining a highly qualified noncommissioned officer (NCO) corps and reverted for a while to training NCOs in a short, high pressure course to meet

the needs for small unit leaders. Over time, the Army developed the NCOES to prepare Army, ARNGUS, and U.S. Army Reserve NCOs to lead and train soldiers who work and fight under their supervision, and to assist their leaders to execute missions. NCOES courses are developmental–they focus on tasks in the next higher level. Only soldiers who display the capability and desire to progress and succeed at each successive rank are identified for participation in the NCOES.

12. As originally configured, NCOES was available to reserve component soldiers only through in residence training at Army schools. Because of the difficulty and pressures these extended periods of training placed on RC soldiers, the Army developed what was once called "Reserve Components-Configured Courses" and "Courseware." Essentially, the courses were broken down into varying combinations of resident and non-resident phases to minimize disruption on RC members and provide them with greater flexibility in achieving the desired IMET. As an example, the RC Basic Non-commissioned Officer Course ("BNCOC") for Army Band Members, is today broken down into three Phases: Phase I is a core of common subjects applicable to all MOSs and is conducted only in a two-week resident ADT phase at designated Regular or RC schools; Phase II for the active duty course is MOS specific training developed by the proponent school, such as the U.S. Army Element School of Music, and may be performed in-residence when quotas and funding are available. For the RC soldier who cannot attend the active duty Phase II, the correspondence Phase II is available for selected MOS specific subjects. Not all MOSs offer correspondence phases to NCOES courses. Phase III is also MOS specific training, but is performed exclusively in another two-week resident ADT mode. The components of the RC BNCOC for Army Bandsmen are listed in paragraph 2-217 of DA Pamphlet 350-59.

The phases are sequential, and an enrollee must complete each phase before becoming eligible to continue in the next. However, if certain sub-courses are common to other IMET course, they will be constructively credited toward completion of the particular NCOES course.

13. The first course developed in the NCOES was the Sergeants Major Course. The resident course was twenty-three weeks long until recent years when it grew to approximately nine months. The nonresident or corresponding studies course is approximately two years in duration with four nonresident phases of correspondence courses, which are prerequisite to attending the two week resident phase at the Sergeants Major Academy. For at least the last ten years, the resident course has been required for Regular Army soldiers; but optional for ARNGUS and USAR soldiers. Regardless of the route taken, the Sergeants Major Course is pre-qualification for promotion to Sergeant Major, as described below.

14. The Sergeants Major Course is the capstone of the NCOES. Since the mid-1970s, there have been other courses added for the other NCO grades all of which were along the lines of the courses we have today. Since 1993, the Army has linked NCOES to certain ARNGUS and USAR NCO promotions to ensure these NCOs have the appropriate skills and knowledge required before assuming the duties and responsibilities of the next higher grade. NCOES is now linked as a pre-qualification for promotion as follows: the Primary Leadership Development Course (PLDC) for promotion to Sergeant; the Basic Noncommissioned Officer Course (BNCOC) for promotion to Staff Sergeant; and the Advanced Noncommissioned Officer Course (ANCOC) for promotion to Sergeant First Class, as set forth in NGR 600-200, para. 11-28. In certain circumstances, regulations permit conditional promotion of NCOs prior to completion of the qualifying NCOES course. Soldiers who accept such conditional promotions do so under the

stipulation and understanding that they must successfully complete the course within the allotted time periods in order to retain the promotion.

15. The BNCOC for years had two phases: Phase 1, the Common Core of basic military leadership subjects common to every NCO in the grade of Staff Sergeant (this is true for the active duty as well as the Reserve Components courses), and Phase 2, the Technical Phase particular to the MOS of the NCOs being trained. A common problem for many RC units is the low number of soldiers in a particular grade and MOS in a State or Command. The Trainer's Guide for each NCOES Course states the minimum number of students it takes to conduct a class (the group that will start and finish together as a training entity). The BNCOC depends heavily on peer training as being able to train one's soldiers as a core competency for NCOs, and there must be enough NCOs to meet the class training objective. In the case of the Army Bands, there are typically about forty to fifty musicians in the MOS 02-series in each State. Of those only a few might be promoted to SSG each year and, thus, require BNCOC. The easy solution would be to send all Musician NCOs to the School of Music for their NCOES, but that is not feasible for many RC NCOs.

16. The School of Music identified a workable solution for a difficult task: To train RC, ARNGUS and USAR Musicians in the critical tasks of the eight-week active duty Phase 2, it added to the RC BNCOC a self-paced correspondence Phase 2 as a bridge from the Common Core Phase 1 to what is now the two-week technical Phase 3. This has two benefits which I have heard from a number of NCOs over the years. One is the self-paced aspect which allows the student to devote as little or as much time as he or she has available at one or an infinite number of sittings without watching a clock, and the soldier does not have to take additional time to

travel to a training site such as an Armory or a Regional Training Institute to take the courses in uniform. Two is a benefit of self-pacing in that the soldier can take as much time as needed to re-do any lesson any number of times to assure task mastery and that he or she understands the information presented. Students can also consult with other, more experienced individuals when the course guidelines permit. The only challenges in the correspondence phase are to finish the courses in the time allotted, and to pass the examination on each correspondence course without assistance.

Army Correspondence Course Program

17. The Army Correspondence Course Program (ACCP) is a self-paced, self-study program designed to be worked on at a time and location of the student's choosing with the only educational structure provided by the design of each subcourse. There are no minimums or maximums on the time a student must spend on a lesson, a subcourse or a series of subcourses or correspondence courses, such as the RC BNCOC, other than the progress requirements in DA Pam 350-29 or the phase requirements of a specific course. The ACCP has often been used when there was no other education or training medium available. In the case of the RC BNCOC, it was an educational decision to provide difficult material that leant itself to self-pacing and self-study while satisfying the ARNGUS and USAR requirements to reduce the amount of time students spend away from their normal pursuits in a formal educational environment. Correspondence courses support the objectives and elements described in DA Pam 350-58, Leader Development for America's Army (chapter 4 and figure 8) and in DA Pam 600-25, U.S. Army Noncommissioned Officer Professional Development Guide, (chapter 2 plus inclusion throughout.) As stated in these documents, self study is important to self development.

18. From almost the month I enlisted in the ARNG/ARNGUS, my full-time support administrator told me of the availability of the ACCP and its application: Self-study, own time, own place, not done on duty or during training periods. However, I would earn retirement points, would get a diploma from the service school for completing subcourse series, then called correspondence courses or correspondence course series, a permanent entry would be made in the military education and training block of my Personnel Qualification Record, and I would get promotion points, all for successful completion. I was never led to believe that I would be entitled to pay or financial compensation for engaging in these professional development opportunities, and in my years of experience, it has always been commonly understood that correspondence course work is not done in a pay status.

19. Correspondence courses provide valuable instruction for members of all RC components. A soldier of any grade who feels a need to take a subcourse for a particular purpose, such as how to complete and maintain a Duty Roster or how to prepare military correspondence, may do so through correspondence instructions. Individuals authorized to reclassify from one MOS to another may, with proper approval, couple on the job training with a subcourse series (correspondence course for a particular MOS and skill level.) Of particular value to NCOs are the Basic and Advanced Professional Development (Sustainment) Courses. These are designed with two purposes: First to prepare individuals to attend their NCOES course with a better assurance of their competency; and, second, to help those who graduated from a course some time ago to sustain their technical and tactical proficiency at that level. Both purposes are necessary as NCOs often work on only a limited number of the total tasks for their MOSs and grades for extended periods. Because an MOS at any skill level covers every situation which one

may encounter in any component of the Army, the sustainment courses allow soldiers to brush up on their discipline when they feel they need it or want it. Unlike NCOES courses, these courses are not linked to promotion to any rank, but are proven to help NCOs toward their promotion goals and increase their professional knowledge. An example of these courses is the Basic Enlisted Professional Development Course ("BEPDC").

20. Correspondence courses are voluntary. The only possible penalty for not doing subcourses is self-imposed: lack of competitiveness with peers and/or ineligibility to progress to the next higher rank. Correspondence courses require no special resources on the part of the soldier or his unit. The ACCP is centrally funded through the Army Training Support Center. Many are done electronically and all will probably be in that mode sooner than later. Members of the ARNGUS and USAR not in active service (either active duty or full-time National Guard duty) receive one retirement point for each three credit hours of correspondence course work successfully completed. These are awarded in the Miscellaneous subcategory of Inactive Duty points. Inactive Duty points are in the subcategories of Training Assemblies, Membership (fifteen points per year simply for being a member), Miscellaneous and Military Funeral Honors. The Miscellaneous subcategory also includes such activities as Lesson Preparation for training assignments for drill, attendance at meetings, conferences and symposia related to the profession of arms and furtherance of one's overall military knowledge, and others all of which are authorized in component regulations such as NGR 680-2, Table 2-5, Rules 4 through 14.

21. Correspondence courses cannot qualify as a regularly scheduled Unit Training Assembly ("UTA") and may not be used to substitute for missed drills. By their very nature, correspondence courses are performed at the soldier's discretion. A soldier can spend five

minutes on a course one day, thirty minutes the next, an hour the day after, and fifteen minutes or ten hours the next day, depending upon the time he has available. The standard is successful completion without regard to the time it takes. There is no requirement that he wear a military uniform or report to any particular location, and there is no command supervision of his activities. To the best of my knowledge and experience, the ARNG has never understood correspondence course work to meet the definition of permissible regular or equivalent training.

Army Enlisted Promotion System

22. Each of the components of the U.S. Army–the active component ("AC"), ARNGUS, and USAR–has one or more promotion systems used to identify the best qualified for advancement to and within the noncommissioned officer ranks. For members of the ARNG, the decision of whether or not to promote a particular soldier is a matter of state law and command authority. However, under Section 301 of Title 32, anyone promoted by the state command must meet the qualifications set by the Secretary of the Army for the grade, branch, position, and type of unit to which he or she belongs in order to be federally recognized in the promoted grade in a federally recognized unit. On the other hand, the Army regulates the process and sets the qualifications for promotion of all members of the reserve components, to include members of the ARNGUS. The enlisted promotion system for the ARNGUS is currently set forth in NGR 600-200, Chapter 11. In order to ensure that all promotions of ARNG members are federally recognized, each state and territory has adopted the promotion criteria of NGR 600-200.

23. Developed between 1992 and 1996, the current system is based on the same principles as those of the AC: To identify the best qualified individuals with the potential to perform at the next higher grade. The system established and administered in NGR 600-200, chapter 11,

provides for individuals to compete for promotion to the noncommissioned grades. Every eligible individual who does not decline consideration or is not denied consideration for cause, will be considered equally on the sum of his or her qualities and qualifications for the next higher rank and pay grade subject to the availability of a position vacancy in a unit, for which that soldier is ranked highest on the promotion list and is eligible and available for that position. One of the hallmarks of this system is the requirement for the soldier to elect or decline consideration for military education and promotion.

24. The promotion system is a mixed objective and subjective process that determines the sum of a soldier's qualifications and qualities. There are two major components to the promotion system: 1) The soldier's administrative and performance points in which a point value is set in each of eight areas in which soldiers may accrue up to 75 points for a total of 600 points. These include: Time in Grade (months), Time in Service (years), Military Awards, Weapons Qualification Score, Army Physical Fitness Test Score, Other Resident Courses (points per week), Self-Development Courses (ACCP credit hours), and Post-Secondary (semester hours and similar measures). Time in Grade and Time in Service show accrual of service. Military Awards generally show excellence in performance and certain types of difficult duty. Weapons Qualification is required at a stated minimum, but is scored and recognized as (from least to most competent) Marksman, Sharpshooter and Expert. The Army Physical Fitness Test has a stated minimum to continue in the Army. It is scored over a scale with the highest achievers recognized with the Army Physical Fitness Badge. Other Resident Courses gain promotion points based on the number of weeks of authorized military courses. Self-Development Courses gain promotion points for each 5 credit hours of successfully completed subcourses (correspondence courses)

that are not part of AC or RC-NCOES courses. Post-Secondary Education gains promotion points for undergraduate work. Regarding these last two categories, both of which are self-developmental as stated in DA Pam 350-58, Leader Development, there is no requirement for an NCO to complete any stated level. For civilian education, the only requirement for an NCO is to have a high school diploma or an equivalent.

25. There is no right to a promotion or a guarantee that if someone does a certain number of things and attains a certain score in any of the areas a promotion will follow. The eight areas identified above present the opportunity to accrue 600 promotion points. The promotion board convened by the State Adjutant General can then award up to 400 points based on a qualitative review and evaluation of each soldier's past performance and future potential. No one has to be evaluated by the promotion board. The only mandatory requirement of soldiers is to review their NGB Form 4100-R-1-E, Enlisted Promotion Point Worksheet, to verify all the entries and elect either "I do" or "I do not" want to be considered for military education and promotion, to sign the form and date it. Soldiers who check "I do" also may be required to elect one or more options that signal their desire to serve in different units, localities in the State, or both, in order to fill an open vacancy, but these are choices in which the soldier signals his willingness and ability to serve in the higher grade.

26. One major difference between the ARNGUS and the Regular Army systems is that the ARNGUS promotion system recognizes that traditional ARNG/ARNGUS soldiers will serve where they feel they can participate satisfactorily and be able to discharge fully their duties as noncommissioned officers. It recognizes the voluntary aspect of participation in the promotion system and all that goes with it. In other words, no enlisted soldier in the ARNG/ARNGUS is

required to seek promotion and unlike the Regular Army, there is no "up or out" system limiting the length of time an ARNG soldier may serve in a particular grade. Throughout my career I have known many ARNG soldiers who have declined promotions in order to remain in a particular unit or position, or because they did not want the increased responsibility that comes with increased rank. Being a NCO under any circumstances is a challenge. Being one in a traditional drill-status member of the ARNG/ARNGUS is especially challenging. It is widely understood that it requires significant extra time, very little of which is compensated. It is neither impossible, nor unheard of, for someone to remain in the ARNG for a full twenty years and retire as a specialist/E-4.

27. Once a member of the ARNGUS attains twenty qualifying years of reserve service, he or she is eligible for a non-regular retirement from the U.S. Army. Soldiers may elect to separate from the ARNG, to be transferred into a Title 10 retired reserve status, subject to recall, but earning additional years of credit toward retirement benefits that vest at age sixty. Others prefer to separate from the military altogether so as not to be subject to recall. Others choose to continue in an active drilling status in the ARNG/ARNGUS to earn additional retirement points and possible continued advancement. In accordance with Army Reg. 135-205, Chapter 4, the file of every enlisted member of the ARNGUS is reviewed at least every two years by the Enlisted Qualitative Retention Board ("QRB"). Everyone reviewed by a QRB is considered fully qualified with only two exceptions: weight control and Army Physical Fitness Test failures. Like a promotion board, the QRB considers a range of factors, looking at the "whole person" to determine those with the greatest potential for continued service. Those found to possess the least potential for continued service are separated from the ARNG to the retired reserve unless

they request to be discharged altogether. The QRB does not recommend soldiers for separation for failure to complete NCOES or other correspondence courses, but all other things being equal, completion of those courses makes a soldier more competitive for retention than his or her peers.

Staff Sergeant Clark's Records

28. In preparation for this declaration I have reviewed SSG Clark's complaint in this case and his military personnel records, to include his finance records, training records, retirement records, and his Army Training Requirements and Resources System ("ATRRS") records.

29. SSG Clark dually enlisted in the Alabama ARNG and the ARNGUS on April 28, 1987 in the rank and grade of specialist/E-4. He was promoted to sergeant/E-5 on June 2, 1989. He has served continuously in both organizations from that date to the present.

30. SSG Clark completed BNCOC Phase I (Resident) for his MOS 02J–Course Number 514 M01–in July 1995. On May 16, 1997, he enrolled in BNCOC Phase II (correspondence). Phase II was and is composed of ten subcourses: MU 1300, MU 1305, MU 1709, MU 3200, MU 3210, MU 3310, MU 3320, MU 3322, MU 4214, MP 1031.

31. In 1997 SSG Clark was considered for promotion. He was selected and was conditionally promoted in the ARNGUS to the rank of Staff Sergeant ("SSG") by order dated 7 November 1997, with an effective date of 20 October 1997. In order to retain his promotion to SSG, he was required per regulation to complete BNCOC Phase II and begin BNCOC Phase III within two years of completion of Phase I. SSG Clark did not complete BNCOC Phase II. His ATRRS record indicates no subcourses completed. As a result, he was administratively reduced to his previous rank of Sergeant (pay grade E-5) by order dated 7 October 1999, with an effective date of 1 October 1999.

32. SSG Clark enrolled in the Basic Enlisted Professional Development Course–Course Number 514 M05–for his MOS on September 21, 1999. At the time, because he had completed BNCOC Phase I more than two years prior, he was ineligible to enroll in BNCOC Phase II. As mentioned earlier, this course is not linked to promotion. Course Number 514 M05 contains seventeen subcourses, seven of which are shared with BNCOC Phase II: MU 3200, MU 3210, MU 3310, MU 3320, MU 3322, MU 4214, and MP 1031. SSG Clark completed all seventeen subcourses between September 21, 1999 and October 18, 2000.

33. SSG Clark enrolled in the Advanced Enlisted Professional Development Course ("AEPDC")–Course Number 514 M07–on October 24, 2000. SSG Clark did not complete this course.

34. On January 5, 2002, SSG Clark reenrolled in BNCOC Phase I. He completed the two-week residence phase on January 17, 2002. SSG Clark was again conditionally promoted to SSG by order dated 25 February 2002, with an effective date of 16 January 2002. He again enrolled in BNCOC Phase II (correspondence) on March 6, 2002. Because he had already completed seven of the ten required subcourses as part of the BEPDC, SSG Clark was constructively credited (shown as "exempt" in his ATTRS/ACCP record) with completion of those subcourses and needed complete only MU 1300, MU 1305, MU 1709. He completed these three subcourses between March 6, 2002 and May 21, 2002. SSG Clark completed BNCOC Phase III (resident) in June, 2002.

35. In late 2001 or early 2002, SSG Clark was again considered and selected for promotion. He was conditionally promoted to the rank of SSG in the ARNGUS effective January 16, 2002.

36. In each fiscal year in which SSG Clark was enrolled in correspondence courses which he

completed–1999, 2000, 2001, and 2002–he attended and was paid for his maximum forty-eight regularly scheduled Unit Training Assemblies. SSG Clark's records do not indicate that he was ever authorized to perform Code 21 Equivalent Training periods of IDT.

37. SSG Cark claims that he was required by the Alabama ARNG to complete correspondence courses to maintain his status in the Army National Guard or to advance in rank. There is no support for this assertion because there was, and is, no such requirement. Like all ARNG members, SSG Clark should have understood that as an Army Band Member, if he wanted to be promoted to the next higher rank and grade he had to complete the BNCOC prescribed by the U.S. Army Element School of Music, as the Army standard for all Army Band members, active ARNGUS, and USAR. In fact, he enrolled in Phase II prior to his promotion in 1997. He also should have known that he did not have to be promoted, and that he could decline both the IMET requirements and promotion. To complete BNCOC he had two choices: He could apply for the full resident Basic NCO Course at the School of Music, a course that is ten weeks long. The other option, the one the typical ARNGUS soldier chooses to pursue, is to take the RC-phased version of the course designed with three phases as described above. This is the way SSG Clark chose to go. There is no indication in his records that he ever requested a quota to attend BNCOC in a full residence mode, or that he sought waiver of the Phase II requirements based on constructive credit in accordance with TRADOC Reg. 350-10.

38. SSG Clark completed the two-week resident Phase I at the Regional Training Institute NCO Academy in Mississippi, the school prescribed for his region of The Army School System. Phase II comprised 10 subcourses that equal 112 credit hours. The number of credit hours assigned to a subcourse is the estimated time required for an average student to read the material

and complete all exercises and the examination. Credit hours are awarded upon successful completion of the subcourse. These 10 subcourses are roughly equivalent to two weeks of resident training (112 hours divided by 8 hours per day equals 14 days). As noted above, it is common practice for subcourse proponents to reuse subcourses constructed for various segments of their target populations. When a soldier completes one extension course that has one or more subcourses of another subcourse series, as happened here, the school verifies the edition date to ensure there has been no significant change in content or that a significant period (four years) has not passed, and exempts the student from re-taking the same course. In SSG Clark's case, he completed the seven exempt subcourses when he earlier opted to complete the BEPDC for MOSs 02B through 02U (Course Number: 514 M05).

39. Regardless of how little or much time SSG Clark spent completing his correspondence course work, the ARNG did not schedule IDT for him and he did not meet the participation requirements for IDT. The ACCP in my nearly forty years of experience has essentially been the military equivalent of a community college or other post-secondary institution. I was not required to take college courses or subcourses as they were beneficial to me in quantifiable (promotion points) measure and unquantifiable (the potential superiors on selection boards saw in me) as both a soldier and as a person. Compensation for these self study efforts was not offered and none sought. I and every other soldier who sought improvement and advancement chose to put in the extra effort outside of normal duties and work hours, on our own, and without direct compensation, of our own volition. This is just part of the professional development soldiers undertake to be the best soldiers and leaders that they can.

40. Promotions in every component of the Army are based on individual desire and ability to

meet a number of criteria. Many cannot, or will not, pay the price of leadership for a variety of reasons. In some cases, the individual is perfectly content to serve in the current grade for a number of years, an entire enlistment, or a career. Some fear, or know, they cannot or will not be able to complete the NCOES course or courses required. Choosing to avoid promotion does not place the soldier in jeopardy of losing his rank, grade, or current position until considered by the State Enlisted QRB described above, and even then many are retained. However, soldiers who accept the challenge, and for some, a promotion that has conditions attached to it such as an NCOES course, do so freely after being informed of the conditions and increase their potential value to the unit and the organization thus enhancing their retainability.

I have read the foregoing 22 page declaration and I certify under penalty of perjury that it is true and correct.

Thomas M. McNamara, Jr.
Sergeant Major (retired), United States Army

Executed this 22nd day of April, 2004.



00436

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM A. CLARK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 00-644<br>(Chief Judge Damich) |

**DECLARATION BY HOWARD J. MANWILLER, JR.**

I, Howard Y. Manwiller, Jr., make the following declaration in accordance with 28 U.S.C. § 1746. I am aware that this declaration will be used in the United States Court of Federal Claims, and that this declaration is the legal equivalent to a statement under oath.

1. I am the Financial Manager of the Army National Guard ("ARNG"), at the National Guard Bureau ("NGB"). The ARNG is comprised of the National Guards of all the states, territories, and the District of Columbia. I am responsible for all budget functions including budget formulation and execution, accounting processes and payment procedures for ARNG bills. I have performed this function since 1990. From 1984 to 1990, I was the Budget Officer for the ARNG, and from 1980 to 1984 I was a Budget Analyst and Chief of Budget for the ARNG.

2. The ARNG budget process is a continuous process. Each year, the ARNG begins its request for appropriations through the Program Objective Memorandum ("POM"). The POM is the Department of Defense's request for resources to carry out its long-range plan. The ARNG provides input to the POM for resources to carry out its part of the overall plan.

The budget funding request travels from the ARNG to the Department of Army, then to the DoD and the Office of Management and Budget ("OMB"). For the DoD and OMB review, the ARNG builds "justification books" which provide details on the request. OMB and DoD conduct simultaneous reviews of the request, and provide comments back to the ARNG. The ARNG receives those comments, and develops new justification books for Congressional review.

3. Congressional staff of the House Armed Services Committee, Senate Armed Services Committee, House Appropriations Committee, and Senate Appropriations Committee receive and review the budget request and justification books. ARNG leadership also provides testimony upon request. The Congressional staffers work with the ARNG Legislative Offices to resolve issues raised by the budget request. The resulting Appropriation Act gives the ARNG specific authority to expend funds for the specific items it has requested. On occasion, Congress funds activities that DoD does not request.

4. I have reviewed the budget request for the fiscal years 1997-2002, and can say that the ARNG did not request appropriations to pay soldiers to do correspondence course work in those years. (See as an example Attachment 1) In fact, the ARNG has never requested such appropriations. Congress has never appropriated funds for that purpose. The budget funding request by the ARNG is developed based on a series of models using historic information of actual costs and the number of personnel being requested to be supported, to include growth. The budget is to provide for pay, allowances, travel and subsistence while on specific duty, undergoing training, or while performing drills or equivalent training, pursuant to Titles 10 or 32, U.S. Code. None of these models have ever considered pay to personnel for correspondence

course work completed. These appropriations thus fund the military pay requirements of the ARNG to operate and train. These funds are not available to compensate soldiers for correspondence coursework performed in a non-duty status because performance of these courses is not "required" of the ARNG to operate or train.

5. In my 20 years as Budget Officer and Financial Manager, no state, territory, or the District of Columbia has ever requested this type of funding. The Adjutants General of each state or territory National Guard are given the opportunity to provide input into the appropriations process and funding models. The National Guards of the several states and territories are provided funding guidance by various offices in the Army National Guard in a budget document based on models, much like the development of the budget request, e.g., number of personnel assigned per state, training or operations being assigned and projected costs for such things as uniforms and subsistence. The Adjutant General (TAG) of each state is then afforded the opportunity to comment on his budget funding by reply to the Director of the Army Guard. This dialogue between the state and Army National Guard staff occurs during the spring/summer prior to execution of the budget and after all legislative initiatives have been presented to the Congress. Funding is provided based on what has been requested, authorized and appropriated. To my knowledge, no TAG has ever requested the models be changed or provided input that would cause the ARNG to consider requesting appropriations for funding of soldiers performing correspondence course work.

6. In order to control the expenditure of appropriated funds and to ensure they are expended only for the purposes and in the amounts appropriated, NGB prescribes through regulation and policy memorandum eleven specific pay codes corresponding to the only categories of IDT that

members of the ARNG may perform. These codes are: 1) Code 11–Regularly Scheduled Unit Training Assembly ("UTA"); 2) Code 21–Equivalent Training; 3) Code 31–Additional Flight Training Periods; 4) Code 41–Additional Unit Training Assembly ("AUTA"); 5) Code 42–Jump Proficiency Training Periods; 6) Code 51–Junior Leader Civil Disturbance Training; 7) Code 61–Additional Artillery Training; 8) Code 71–Readiness Management Period (Training Support); 9) Code 81–Unit Leader Development Periods; 10) Code 82–Additional Simulator Training (Gunnery); 11) Code 91–Readiness Management Period (Management Support). Per NGR 37-104-3, NGR 680-1, and annual NGB administrative instructions (attachment 2), all training must be certified on a DA Form 1379, which must identify each period of training with one of the eleven codes listed above. With the exception of Codes 11 (UTA) and 21 (ET), which may not exceed a combined total of forty-eight in any fiscal year, the remaining nine codes correspond to additional IDT periods which are individual or unit paid assemblies above and beyond the forty-eight authorized UTAs. These additional IDT periods all fall under one of three categories, as designated by Department of Defense Directives and Instructions: Additional Flight Training Periods, Additional Training Periods, and Readiness Management Periods. All additional IDT periods must be specifically authorized by NGB. Completion of correspondence courses does not meet the criteria of any of the three categories of additional IDT and NGB has never authorized the use of additional IDT periods to complete correspondence courses.

7. Further, federal funding of IDT requires both approval and a scheduling by the command authority for training events for both drill periods and additional training periods. Performance of authorized duty is then certified by the commander or designee. For example, for drill periods, the commander publishes a detailed training schedule for the unit's training and certifies

on the DA Form 1379 the completion of that training by the attending unit members. Additional training assemblies must be approved by the commander, then certified upon completion, allowing for payment. Active duty other than mobilization is requested by the unit or individual. A unit order is produced if the unit is performing annual training (AT) as a unit, and a DA Form 1379 is completed upon completion of the duty. Individual active duty is certified as performed by an individual having knowledge of the duty performance.

8. Staff Sergeant Clark claims that he is due pay for correspondence subcourse work completed between the years of 1997-1999, and possibly in subsequent years. However, as described herein, there is no authority in Title 32 or its implementing regulations to allow the completion of correspondence courses--a self-paced course of non-resident study performed at the time and place of the soldier's choosing--to qualify as a period of Title 32 IDT. SSG Clark was never in a Title 32 status while completing correspondence courses. No federal funds have been appropriated to compensate ARNG members for completion of correspondence courses. Further, federal appropriations are not available to fund training or operations conducted by members of the ARNG in their status as members of their states' militias under direction of the governors. Such duty--State Active Duty ("SAD")--is funded only by the individual State. Service on SAD does not provide a National Guardsman with federal legal protection, nor does it allow for federal funding. Consequently, if the laws of the State of Alabama provide that SSG Clark was in a SAD status when performing correspondence coursework in his status as a member of the Alabama National Guard, SSG Clark's claim lies only against the State of Alabama.

I have read the foregoing __6___ page declaration and I certify under penalty of perjury

that it is true and correct.

Howard Y. Manwiller, Jr.
Financial Manager
Army National Guard

Executed this 19th day of April, 2004.

DEPARTMENTS OF THE ARMY AND THE AIR FORCE
NATIONAL GUARD BUREAU
1411 JEFFERSON DAVIS HIGHWAY
ARLINGTON, VA 22202-3231

NGB-ARH 8 October 2002

MEMORANDUM FOR SEE DISTRIBUTION

SUBJECT: Administrative Instructions for Inactive Duty Training (IDT) including Additional Training Periods (ATP), Readiness Management Periods (RMP) and Additional Flight Training Periods (AFTP)

1. **Reference.** All States Log Number I01-0058, dated 19 April 2001, Subject: Implementation Guidance for Additional Training Periods (ATPs) and Readiness Management Periods (RMPs).

2. **Purpose.** Provide administrative instructions for the ARNG IDT, ATP, RMP, and AFTP programs.

3. **Applicability.** These instructions are applicable to all states and territories. This memorandum will expire 30 September 2003, unless sooner rescinded or superseded.

4. **General.** Funding for this program was issued under Budget Activity 1 (BA1). Each state/territory must use Automated Funds Control Order System (AFCOS) Future Cost Report (ORD880P) to determine funding requirements for the statutory 48 drill periods. The Future Cost Report is a total of both 1B10 Pay Group A and 1E30 Pay Group P accounts. The two accounts may require cross leveling as the year progresses. After identifying the funds required to meet statutory IDT requirements, the balance of funds can be applied to the regulatory programs AFTPs, ATPs and RMPs.

a. Any combination of officer and enlisted mandays may be used as long as the total dollar allocation is not exceeded. Dollar values will be based on actual cost related variables (i.e. pay grade, time in service, FICA, etc.) of the individuals concerned.

b. Use of the Automated Funds Control System (AFCOS), Unit IDT Performance Report (ORD855P) will be of great benefit to you in tracking your usage of ATPs and RMPs. This report has a wealth of information and can assist you in managing your rescheduled training.

c. As a minimum, additional IDT periods (ATP/RMP/AFTP) will be at least four (4) hours in duration, excluding travel time. Travel is not covered as a part of ATP/RMP/AFTP funding allocations.

005.18

ATT 2

d. Non-Prior Service (NPS) soldiers in Pay Group P and Simultaneous Membership Program (SMP) personnel are not authorized to perform ATP/RMP/AFTP duty until completion of initial entry training.

e. Additional IDT Periods are individual paid assemblies above and beyond the authorized 48 Unit Training Assemblies (UTA). UTAs are divided into three categories: Additional Flight Training Periods, Additional Training Periods, and Readiness Management Periods. IAW DoD Instruction Manual 1215.19, soldiers **may not** exceed ***fifty-four (54)*** ATP/RMP periods in a single fiscal year. The 54 period limitation does not apply to Additional Flight Training Periods.

**5. Additional Flight Training Periods (AFTP) Code 31.** AFTPs are authorized for primary aircrew members and aviation support personnel for conducting aircrew training and combat crew qualification training to attain and maintain aircrew proficiency and sustain required readiness. IAW DoD Instruction 1215.19, soldiers may not exceed ***forty-eight (48)*** periods in a single fiscal year. AFTPs are not in addition to the other ATPs referenced above. Refer to NGR (AR) 95-210 for individual AFTP authorizations.

**6. Additional Training Periods (ATP).** ATPs are authorized for accomplishing additional required training as defined by post-mobilization mission requirements. IAW DoD Instruction 1215.19, soldiers may not exceed ***thirty (30)*** periods in a single fiscal year, unless restricted otherwise under separate type duty description listed below.

**a. Additional Unit Training Assemblies (AUTA) Code 41.** AUTAs are additional paid unit assemblies for the entire unit over and above the currently authorized 48 UTAs.

(1) A formal request for AUTA Code 41 with appropriate lead time and justification (who, what, when, where, why and how many officer and enlisted mandays) must be submitted to NGB-ART for approval prior to execution and must be for the purpose of conducting training activities that enhance unit training readiness.

(2) A unit executing an AUTA will record it on the automated DA Form 1379 as a Code 41.

(3) At this time there are no additional funds available for AUTA Code 41.

**b. Jump Proficiency Training Periods (JPTP) Code 42:** JPTPs are authorized for Airborne, Ranger, Special Operations Forces, Long Range Surveillance (LRS), and

Pathfinder units to maintain jump proficiency. Additionally, airborne qualified personnel, occupying NGB authorized jump billets, which require periodic training/proficiency jumps (to include parachute riggers), may use Code 42s. Code 42s may support jump refresher training, drop zone preparation for jumps, jumpmaster refresher, positioning of parachutes for the jump, as well as the actual jump.

(1) JPTPs are for individuals who missed a scheduled IDT or AT parachute jump due to aircraft cancellation or inclement weather. They should not be used as the primary means of maintaining jump proficiency but as additional assemblies over and above regularly scheduled periods.

(2) An individual is authorized to perform only six (**6**) JPTPs per fiscal year. Two (2) JPTPs may be performed on the same day.

**c. Junior Leader Training for Civil Disturbance (JLTCD) Periods Code 51.** JLTCDs are authorized for company grade officers and noncommissioned officers in leadership positions in units designated by TAG to conduct training in preparation for a unit civil disturbance training event.

(1) States may allocate Code 51s to units with a designated civil disturbance mission.

(2) Individual use is limited to one (1) per day and fifteen (**15**) per fiscal year. A Code 51 **cannot** be used by an individual on the same day they perform any other type IDT/Additional IDT period (UTA/AUTA/RMP/ATP/AFTP).

**d. Additional Artillery Gunnery Periods (AAGP) Code 61.** AAGPs are periods authorized for artillery **digital operators** to maintain proficiency using Improved Fire Support Automated System (IFSAS) and/or Army Field Artillery Tactical Digital System (AFATDS). An individual is authorized to perform only eight (**8**) AAGPs per fiscal year.

**e. Unit Leader Development Periods (ULDP) Code 81.** ULDPs are periods designed to assist Enhanced Brigade leaders (battalion commanders, company commanders, platoon leaders, platoon sergeants, squad leaders, and/or track commanders) to improve training readiness. States with Enhanced Separate Brigades may be resourced with specific target dollars to support approved development programs.

NGB-ARH
**SUBJECT:** Administrative Instructions for Inactive Duty Training (IDT) including Additional Training Periods (ATP), Readiness Management Periods (RMP) and Additional Flight Training Periods (AFTP)

(1) Code 81s will be used exclusively for leader training (leader training, terrain walks, rehearsals, or validations). They will not be used for IDT or annual training (AT) preparation.

(2) Code 81s will be used in support of IDT events. When used in this capacity, the battalion commander must be the designated trainer.

**f. Additional Simulation Training Periods (ASTP) Code 82.** ASTPs are periods authorized for Tank/Bradley commanders and gunners to maintain gunnery proficiency using the Unit or Mobile Conduct of Fire Trainers (UCOFT/MCOFT) and/or the Abram's Full Crew Interactive Simulator/Trainer (AFIST). An individual is authorized to perform only six (6) ASTPs per fiscal year.

**7. Readiness Management Periods (RMP).** RMPs are used to support the ongoing day-to day operations of a unit, accomplishing unit administration, training preparation, support activities, and maintenance functions. IAW DoD Instruction 1215.19, soldiers may not exceed ***thirty (30)*** periods in a single fiscal year. RMPs are divided into two categories, Training Support (**Code 71**) and Management Support (**Code 91**). NGB-Individuals of any grade may use a RMP, although General officers, Colonels, E1s, and E2s should use RMP, only as an exception. The duties performed should be commensurate with the individual's grade, training and experience.

**a. Training Support (Code 71).** Training Support periods are authorized for individuals to plan, coordinate, assist, prepare and supervise the preparation and conduct of training in units or staffs and other preparation and execution activities clearly related to the direct improvement of military training during IDT. They cannot be utilized for individuals to receive or participate in training and cannot be utilized to travel to IDT locations. Their use should be directly related to improving the training conducted during IDT.

**b. Management Support (Code 91).** Management Support periods are authorized for individuals to accomplish the required administrative and management workload in an Army National Guard unit. They may be used at any echelon (staff or unit) for individuals to accomplish the following; preparation of correspondence to include memorandums and orders, review of personnel records, maintenance of unit library, board actions, preparation of OERs/NCOERs, typing support for supply, maintenance and administrative actions, inventories, preparation for issue of clothing and equipment, preparation and update of maintenance management forms and clothing forms, preparation and update of mess management administration, menu preparation and food service meetings, files maintenance, counseling, Promotion Boards, USR/2406

preparation, IG/CLRT preparation and conduct of reports of survey. Their use should be directly related to reducing administrative and management tasks that would have to be conducted during IDT and would be a distracter to IDT.

c. The following guidance is applicable to the usage of Code 71 and 91 RMPs:

(1) A code 71/91 is limited to one (1) per day and **cannot** be used by an individual on the same day they perform any other type IDT/Additional IDT period (UTA/AUTA/RMP/ATP/AFTP).

(2) RMPs may be adjusted by the unit between Code 71 and Code 91 in a manner that best supports the mission.

(3) RMPs may not be used for conference attendance or support, make presentations, awards or speeches, attend retirement ceremonies, drive senior officer or noncommissioned officers to funerals or attend funerals, to perform vehicle maintenance PMCS checks, conduct armory maintenance and repair or accomplish tasks at STARC or unit level headquarters that should be performed by full-time personnel.

8. The following chart contains maximums by code and code combinations as discussed above.

| TYPE CODE | CODE MAXIMUM | COMBINATION MAXIMUM |
|---|---|---|
| ATP | 30 | ATP/RMP |
| RMP | 30 | 54 |
| ATP | 30 | ATP/AFTP |
| AFTP | 48 | 48 |

9. Certification. The certification of the performance of duty for RMP, ATP, AUTA and AFTP(s) can be accomplished by any of the following:

a. Commanders.

b. Administrative Officer or Training Officer.

c. Senior member present for duty.

d. Individuals will not certify and verify their own performance certificates.

e. Both the authorization to use the additional period and the certification of duty being satisfactorily accomplished should be documented on the same form. The form can be accessed with the AFCOS RFO IDT Module and should include the following information:

(1) The type of additional IDT period being used (71, 81, etc).

(2) Soldier(s) performing the duty.

(3) A brief description of the duty to be performed.

(4) The date and location of the duty to be performed.

(5) The Authorizing Officials signature.

(6) Certification signature, with the duty date.

10. In all cases, states have the ability to increase or decrease funding allocations between all drill codes in MDEP PRID 1B10. However, the movement of any funds must not reduce the ability to fund statutory requirements.

11. To assist in the management of your IDT program, it is highly recommended that each state IDT manager utilize the Automated Fund Control Order System (AFCOS). The IDT Attendance Monitoring and Reporting module is an effective tool to manage rescheduled training. **Rescheduled training ties up a significant amount of IDT funds monthly. Prudent management will reap benefits in additional funds for ATP/RMPs.**

12. Information contained in this memorandum should be disseminated to the unit level. Each state is encouraged to develop internal controls to manage and monitor the ATP, RMP, AUTA, and AFTP programs.

13. Points of contacts:

a. IDT MDEP Manager: CW4 John F. Hinkle, NGB-ARH-P, DSN 327-0637 or 703

607-0637.

b. AFTP Manager: LTC Dan Newcomb, NGB-AVN-I, DSN 357-4117 or 703-607-4117.

c. ATP/RMP Manager: MAJ Phillip Johnson, NGB-ART-R, DSN 327-7690 or 703-607-7690.

d. AFCOS Training and Tech Support: CPT Stanley Kuntz, NGB-ARC-F, DSN 699-1355 or 317-510-1355.

FOR THE CHIEF, NATIONAL GUARD BUREAU:

ROSS B. DEBLOIS
COL, GS
Chief, Personnel Policy, Programs
and Manpower Division

DISTRIBUTION:
NGB-ARO
NGB-ART
NGB-AVN
Each State CoS
Each State DCSOPS
Each State IG
Each State MILPO
Each State USPFO

0055[illegible]

DEPARTMENTS OF THE ARMY AND THE AIR FORCE
NATIONAL GUARD BUREAU
1411 JEFFERSON DAVIS HIGHWAY
ARLINGTON, VA 22202-3231

NGB-ARZ-COO 19 April 2001

MEMORANDUM FOR THE ADJUTANTS GENERAL OF ALL STATES, PUERTO RICO, THE VIRGIN ISLANDS, GUAM AND THE COMMANDING GENERAL OF THE DISTRICT OF COLUMBIA

SUBJECT: (All States Log Number I01-0058) Implementation Guidance for Additional Training Periods (ATP) and Readiness Management Periods (RMP)

1. Department of Defense Instruction (DoDI) 1215.19 now authorizes a maximum of 30 ATPs and 30 RMPs for each soldier per year. A soldier is now authorized to accrue a total of 54 ATP/RMP periods per year.

2. Enclosed is the revised implementation guidance for ATP/RMP.

3. To facilitate this change and assist in implementing these programs the Inactive Duty Training Attendance Monitoring and Reporting module for Automated Fund Control Orders System is scheduled for release on 20 April 2001. I encourage the use of this tool to maximize the effectiveness of the ATP/RMP program.

4. The intended purpose of each ATP/RMP is to improve our readiness by providing the ability to conduct required and necessary training. The change in the DoDI allows more flexibility to execute our training plans and sustain unit readiness. I urge you to use this precious resource in a manner that maximizes the benefits to your units and soldiers.

5. This memorandum expires 30 April 2002, unless sooner rescinded or superseded.

6. Point of contact is Colonel John D. Taylor, Chief, Operating Officer, at DSN 327-5345 54 or 703-607-5354.

FOR THE CHIEF, NATIONAL GUARD BUREAU:

David Germain

Encl
as

ROGER C. SCHULTZ
Major General, GS
Director, Army National Guard

CF w/encl:
NGB-IG
NGB-PL
Each State CoS
Each State DCSOPS
Each State IG
Each State MILPO
Each State USPFO

00555

1. This document provides the administrative instructions for the Army National Guard (ARNG) ATP, RMP and AFTP programs. It supersedes previous memorandums concerning this subject.

2. Any combination of officer and enlisted Mandays may be used as long as the total dollar allocation is not exceeded. Dollar values will be based on actual cost related variables (i.e., pay grade, time in service, FICA, etc.) of the individual concerned.

3. Use of ATP/RMP/AFTP funding is subject to the availability of funds. The Training Division will annually publish a memorandum identifying funding targets for each code. Individual performance will be monitored via the Automated Funds Control System (AFCOS), Unit IDT Performance Report (ORD855P).

4. As a minimum, additional IDT periods (ATP/RMP/AFTP) will be at least four hours in duration, excluding travel time. Travel is not covered as a part of ATP/RMP/AFTP funding allocations.

5. Non-Prior Service soldiers and Simultaneous Membership Program personnel are not authorized to perform any ATP/RMP/AFTP duty until completion of initial entry training obligations.

6. Additional IDT Periods are individual paid assemblies in addition to the authorized 48 Unit Training Assemblies (UTA) and are divided into 3 categories: Additional Flight Training Periods, Additional Training Periods, and Readiness Management Periods. The DoD Instruction (DoDI) Manual 1215.19 stipulates that soldiers **may not** exceed ***54*** ATP/RMP periods in a fiscal year. The 54 period limitation does not apply to Additional Flight Training Periods.

a. **Additional Flight Training Periods (AFTP) (Code 31)** are authorized for primary aircrew members to conduct aircrew and combat crew qualification training. Also, for the maintenance of aircrew flying proficiency and to sustain required readiness. The DoDI 1215.19 stipulates that soldiers may not exceed ***48*** periods in a fiscal year. These AFTPs are not in addition to the other ATPs referenced above. Refer to NGR (AR) 95-210 for individual authorization of an AFTP.

b. **Additional Training Periods (ATP)** are authorized to accomplish additional training required to meet post-mobilization mission requirements. The DoDI 1215.19 stipulates that soldiers may not exceed ***30*** periods in a fiscal year, unless specifically restricted under a separate type duty description listed below.

(1) Additional Unit Training Assemblies (A) **Code 41** are additional paid unit assemblies for the entire unit over and above the currently authorized 48 UTA's.

00556

(a) To secure authorization for AUTA Code 41 a formal request must be submitted to NGB-ART prior to the execution of the planned training. The request must provide detailed justification (who. what, when, where, why and how many officer and enlisted Mandays) and identify the purpose and the expected benefit to unit training readiness.

(b) A unit executing an AUTA will record it on the automated DA Form 1379 as a Code 41.

(c) Currently no additional funds are available for AUTA Code 41.

(2) Jump Proficiency Training Periods (JPTP) **(Code 42)** are authorized for Airborne, Ranger, Special Operations Forces, Long Range Surveillance (LRS), and Pathfinder units to maintain jump proficiency. Additionally, airborne qualified personnel, occupying NGB authorized jump billets that require periodic training/proficiency jumps (to include parachute riggers), may use Code 42's. Code 42's may support jump refresher training, drop zone preparation for jumps, jumpmaster refresher, positioning of parachutes for the jump, as well as the actual jump.

(a) The JPTP's are for individuals who missed a scheduled IDT or AT parachute jump due to aircraft cancellation or inclement weather. They should not be used as the primary means of maintaining jump proficiency but as additional assemblies over and above regularly scheduled periods.

(b) An individual is authorized to perform only 12 JPTP's per fiscal year. Two JPTP's may be performed on the same day.

(3) Junior Leader Training for Civil Disturbance (JLTCD) Periods **(Code 51)** are authorized for company grade officers and noncommissioned officers in leadership positions in units designated by The Adjutants General to conduct training in preparation for a unit civil disturbance training event.

(a) States may allocate Code 51's to units with a designated civil disturbance mission.

(b) Individual use is limited to 1 per day and **15** per fiscal year. A Code 51 **cannot** be used by an individual on the same day they perform any other type IDT/Additional IDT period (UTA/AUTA/RMP/ATP/AFTP).

(4) Additional Artillery Gunnery Periods (AAGP) **(Code 61)** are periods authorized for artillery <u>**digital operators**</u> to maintain proficiency using Improved Fire Support Automated System <u>and/or</u> Army Field Artillery Tactical Digital System. An individual is authorized to perform only eight AAGP's per fiscal year.

00557

(5) The Leader Development and Preparation Periods (LDPP) (**Code 81**) are periods designed to assist Commanders at the Company/Troop/Battery and Detachment level (company commanders, platoon leaders, platoon sergeants, squad leaders, team leaders, and/or track commanders) to improve collective training readiness. Code 81 will be used to focus on First Line Leader Training (leader training, terrain walks, rehearsals, or validations). These codes will be used to meet requirements in support of planning, preparation, execution, and assessment of collective training events.

(6) Additional Simulation Training Periods (ASTP) (**Code 82**) are periods authorized for Tank/Bradley commanders and gunners to maintain gunnery proficiency using the Unit or Mobile Conduct of Fire Trainers and/or the Abram's Full Crew Interactive Simulator/Trainer. An Individual is authorized to perform only six ASTP's per fiscal year.

c. **Readiness Management Periods (RMP)** are used to support the ongoing day-to day operation of a unit, accomplishing unit administration, training preparation, support activities, and maintenance functions. In accordance with DoDI 1215.19, soldiers may not exceed ***30*** periods in a fiscal year. The RMP's are divided into 2 categories, Training Support (**Code 71**) and Management Support (**Code 91**). Individuals of any grade may use a RMP, although general officers, colonels, and privates (E-1's and E-2's) should use RMP, only as an exception. The duties performed should be commensurate with the individual's grade, training, and experience.

(1) Training Support (**Code 71**) periods are authorized for individuals to plan, coordinate, assist, prepare and supervise the preparation and conduct of training in units or staffs and other preparation and execution activities clearly related to the direct improvement of military training during IDT. They cannot be utilized for individuals to receive or participate in training and cannot be utilized to travel to IDT locations. Their use should be directly related to improving the training conducted during IDT.

(2) Management Support (**Code 91**) periods are authorized for individuals to accomplish the required administrative and management workload in an Army National Guard unit. They may be used at any echelon (staff or unit) for individuals to accomplish the following: preparation of correspondence to include memorandums, orders, etc; review of personnel records; maintenance of unit library; board actions; preparation of OER's/NCOER's; typing support for supply, maintenance and administrative actions inventories; preparation for issue of clothing and equipment; preparation and update of maintenance management forms, clothing forms, etc; preparation and update of mess management administration; menu preparation and food service meetings; files maintenance; counseling; promotion and enlisted Select/Train/Promote/Assign Boards, USR/2406 preparation; IG/CLRT preparation; and conduct of reports of survey Their use should be directly related to reducing

00558

administrative and management tasks that would have to be conducted during IDT and would be a distracter to IDT.

(3) The following guidance in applicable to the usage of Codes 71 and 91 RMP:

(a) The Codes 71/91 are limited to 1 per day and **cannot** be used by an individual on the same day they perform any other type IDT/additional IDT period (UTA/AUTA/RMP/ATP/AFTP).

(b) The RMP's may be adjusted by the unit between Code 71 and Code 91 in a manner that best supports the mission.

(c) The RMP's may not be used for conference attendance or support; to make presentations, awards or speeches; to attend retirement ceremonies; to drive senior officer or noncommissioned officers to funerals or attend funerals; to perform vehicle maintenance PMCS checks; armory maintenance and repair; or accomplish tasks at STARC or unit level headquarters that should be performed by full-time personnel.

7. The following chart contains maximums by code and code combinations as discussed above:

| TYPE CODE | CODE MAXIMUM | COMBINATION MAXIMUM |
|---|---|---|
| ATP | 30 | ATP/RMP |
| RMP | 30 | 54 |
| ATP | 30 | ATP/AFTP |
| AFTP | 48 | 48 |

8. Certification: Certification of duty performance by type of duty for RMP, ATP, AUTA and AFTP(s) is required. Commanders, Administrative Officer, Training Officer or the senior member present for duty may certify the completion of duty. However, individual soldiers will not certify and verify their own performance certificates.

a. Both, the authorization for the additional period and certification of duty being satisfactorily accomplished should be documented on the same form. This form can be accessed with the AFCOS RFO IDT Module and should include the following information:

(1) The type of additional IDT period being used (71, 81, etc).

(2) Soldier(s) performing the duty.

00559

(3) A brief description of the duty to be performed.

(4) The date and location of the duty to be performed.

(5) The authorizing officials' signature.

(6) Certification signature, with the duty date.

9. It is imperative that this memorandum and information be disseminated below State level and each State is encouraged to have an internal control system to monitor and control the ATP, RMP, AUTA, and AFTP programs.

10. The ability to increase or decrease funding allocations among drill codes within the MDEP 1B10PNID is delegated to the States/Territories. All statutory obligations must be met within the States/Territories specified allotment.