CORRECTED COPY--DESTROY ALL OTHERS
INCLUDES CHANGE 1

**Headquarters**
Department of the Army
Washington, DC 20310-2500
15 April 1987

National Guard Regulation 351-1

Effective Date: 1 June 1987

**Schools**

# INDIVIDUAL MILITARY EDUCATION AND TRAINING

**Summary.** This regulation covers individual military education and training for Army National Guard personnel. It is general in nature except when required to address matters not adequately covered in related publications, and adopts the term individual readiness training schools (formerly unit schools).

**Applicability.** This regulation applies to the Army National Guard.

**Impact on New Manning System.** This regulation does not contain information that affects the New Manning System.

**Internal Control Systems.** This regulation is not subject to 'the requirements of AR 11-2. It does not contain internal control provisions.

**Supplementation.** Local supplementation of this regulation is prohibited except upon approval of NGB. Send requests for exception, with justification, through command channels to Chief, National Guard Bureau, ATTN: NGB-ARO-E, Bldg E6814, Edgewood Area, Aberdeen Proving Ground, MD 21010-5420.

**Interim changes.** Interim changes are not official unless authenticated by the Executive, NGB. Interim changes will be destroyed on their expiration dates unless sooner rescinded or superseded by a permanent change.

**Suggested improvements.** The proponent of this regulation is the Military Education Branch, Organization and Training Division, National Guard Bureau. Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to the Army National Guard Military Education Branch (NGB-ARO-E), Bldg E6814, Edgewood Area, Aberdeen Proving Ground, MD 21010-5420.

Contents

Chapter 1

Introduction

Section I
General

| | Paragraph | Page |
|---|---|---|
| Purpose | 1-1 | 1-1 |
| References | 1-2 | 1-1 |
| Explanation of abbreviations and terms | 1-3 | 1-1 |

Section II
Concept

| | Paragraph | Page |
|---|---|---|
| Responsibilities | 1-4 | 1-1 |
| Student evaluation | 1-5 | 1-1 |
| Physical fitness and weight standards | 1-6 | 1-1 |
| Medical examinations | 1-7 | 1-2 |
| Security clearances | 1-8 | 1-2 |
| Course information | 1-9 | 1-3 |
| Service obligation | 1-10 | 1-3 |
| Description of an FTTD day | 1-11 | 1-3 |
| Funding | 1-12 | 1-3 |
| Travel status | 1-13 | 1-4 |

Chapter 2

Commissioned Officer Education

| | Paragraph | Page |
|---|---|---|
| Senior service college courses | 2-1 | 2-1 |
| Intermediate college level courses | 2-2 | 2-1 |
| Combined Arms and Services Staff School | 2-3 | 2-1 |
| Officer advanced courses/officer advanced courses - Reserve component | 2-4 | 2-1 |
| Officer basic courses/officer basic courses - Reserve Component | 2-5 | 2-2 |
| Officer candidate schools | 2-6 | 2-2 |

Chapter 3

Warrant Officer Education

| | Paragraph | Page |
|---|---|---|
| General | 3-1 | 3-1 |
| Entry level training | 3-2 | 3-1 |
| Warrant Officer Entry Course | 3-3 | 3-1 |
| Warrant Officer Entry Course - Reserve Component | 3-4 | 3-1 |
| Warrant Officer technical certification | 3-5 | 3-1 |
| Warrant Officer professional development | 3-6 | 3-2 |

Chapter 4

Noncommissioned Officer Education System

| | Paragraph | Page |
|---|---|---|
| Concept for training | 4-1 | 4-1 |
| Reserve Component Noncommissioned officer education system | 4-2 | 4-1 |
| Objectives | 4-3 | 4-2 |
| Responsibilities | 4-4 | 4-2 |
| Accreditation | 4-5 | 4-2 |

Chapter 5

Special Training Programs for Medical Personnel

| | Paragraph | Page |
|---|---|---|
| Continuing Health Education Program | 5-1 | 5-1 |
| Clinical Clerkship Training Program | 5-2 | 5-1 |
| Physician Assistant Program | 5-3 | 5-1 |
| Patient Care Specialist Civilian Education Program | 5-4 | 5-2 |

Chapter 6

Army Area, USARF, DoD, Vo-Tech, and USAF Schools

| | Paragraph | Page |
|---|---|---|
| Army area schools | 6-1 | 6-1 |
| USARF schools | 6-2 | 6-1 |
| Expanded support for ARNG participation in USARF schools | 6-3 | 6-1 |
| Department of Defense schools | 6-4 | 6-2 |
| United States Air Force schools | 6-5 | 6-2 |
| Vocational-Technical schools | 6-6 | 6-2 |

Chapter 7

Selected Additional Qualification Training Courses

| | Paragraph | Page |
|---|---|---|
| Ranger training | 7-1 | 7-1 |
| Airborne training | 7-2 | 7-1 |
| Equal opportunity training | 7-3 | 7-1 |
| Air assault training | 7-4 | 7-1 |
| Eastern Army National Guard Aviation training site | 7-5 | 7-2 |
| Aviation training | 7-6 | 7-2 |

## Chapter 8

### Army Training Requirements and Resource System


| | Paragraph | Page |
|---|---|---|
| General description.... | 8-1 | 8-1 |
| Responsibilities....... | 8-2 | 8-1 |
| ATRRS subsystems. ...... | 8-3 | 8-1 |
| Development of training requirements.......... | 8-4 | 8-1 |


## Chapter 9

### Individual Readiness Training Schools


| | Paragraph | Page |
|---|---|---|
| General............... | 9-1 | 9-1 |
| Procedure for requesting individual readiness training schools....... | 9-2 | 9-1 |


## Appendixes


A. References.................... A-1
B. Individual Readiness Training School Request Format.......... B-1
C. Army National Guard School Training Other than at Army Service Schools (RCS-ARNG-49-R2) Report ......................... C-1
D. Preparation of NGB Form 64, Application for Training........ D-1

Glossary. .....................Glossary-1

# Chapter 1

# Introduction

## Section I
## General

**1-1** Purpose
This regulation sets policies and procedures for Army National Guard (ARNG) personnel in the application procedure for individual military education and training (IMET).

**1-2** References
Required and related publications are listed in appendix A.

**1-3** Explanation of abbreviations and terms
Abbreviations and special terms used in this regulation are explained in the glossary.

## Section II
## Concept

**1-4** Responsibilities
a. National Guard Bureau (NGB).
(1) Manages the ARNG IMET program.
(2) Manages NGB school accounts (BPs 3130, 3140.91, 3140.92) to ensure equitable resourcing for all States.
(3) Forecasts Army Service, Department of Defense (DOD or DD), Army area, and United States Army Reserve Forces (USARF) school resident requirements and obtains quotas.
(4) Processes school applications (NGB Forms 64 (Application for Training), DD Forms 1610 (Request and Authorization for TDY Travel of DOD Personnel), DD Forms 1556 (Request, Authorization, Agreement, Certification of Training and Reimbursement)), and issues authority for States to publish orders for applicants to attend requested training.
(5) Processes applications for waiver related to individual training matters.
b. States (includes Virgin Islands, District of Columbia, Commonwealth of Puerto Rico, and Territory of Guam).
(1) Manage IMET for the State.
(2) Forecast training requirements in Army service, DOD, Army area, and USARF Schools and provide this data to NGB-ARO-E.
(3) Process school applications; ensure applicant eligibility.
(4) Process waiver requests.
(5) Prepare orders directing ARNG personnel to attend schools as authorized by NGB-ARO-E; includes quota source (QS) 28 on all orders.
There are occasions when military technicians may attend a school or course listed to primarily enhance the individual's technician job; therefore, the status of attendance must be determined at State level and be in compliance with NGR 37-111.

**1-5** Student evaluation
a. See AR 351-1, paragraph 1-12.
b. ARNG students attending NGB or State-conducted or -sponsored training will be evaluated in the following manner.
(1) All courses. Personnel who satisfactorily complete the course will be awarded an NGB Form 007 (NGB Certificate of Training) or DA Form 87 (Certificate of Training).
(2) Courses longer than 4 days. DA Forms 1059 (Service School Academic Evaluation Report) will be completed on each student attending all or part of the course indicating whether or not the student successfully completed the course and met course standards.

**1-6** Physical fitness and weight standards
a. See AR 351-1, paragraph 1-13.
b. ARNG personnel are expected to meet the standards of AR 600-9 when reporting for resident training. Failure to meet these standards is sufficient cause for the student to be denied enrollment.
c. Individuals exceeding AR 600-9 screening table standards will have in their possession a current (completed within the previous 12 months) DA Form 5500-R (Body Fat Content Worksheet) for males or DA Form 5501-R (Body Fat Content Worksheet) for females upon reporting for resident training, however, prospective students are still subject to being denied enrollment if they exceed the standards of AR 600-9 as determined at the training site.

**1-7** Medical examinations

a. Certain courses require that the applicant have taken a medical examination of the prescribed scope (e.g., initial appointment; retention; airborne) at an active military installation, medical examining and processing station (MEPS), National Guard or USAR examining station, Veterans' Administration (VA) hospital, or US Public Health Service hospital within 1 year of the class report date. When Army aviators or those whose duties require them to participate in regular and frequent flights as nonrated personnel, or when personnel apply for training leading to such designations, medical examinations must be given by qualified flight surgeons. Courses requiring medical examination within one year are listed below.

(1) Undergraduate pilot training.

(2) Flight medical aidman training.

(3) Aircraft technical inspectors.

(4) Rotary Wing Qualification Course.

(5) Army Flight Surgeon Course.

(6) Airborne training.

(7) Ranger training.

(8) Pathfinder training.

(9) Military freefall training.

(10) Special Forces training.

(11) Officer candidate training.

(12) Physician assistant training.

(13) Warrant Officer Entry Course training.

(14) Warrant Officer Entry Course Over 40 Years of Age, Medical Screening.

b. Courses which do not require medical examinations within an otherwise specified time may be attended by any applicants who have examinations of the appropriate scope that are current as defined by NGR 40-501.

c. If the course announcement document requires that a copy of a current medical examination be submitted with the school application, a copy of the SF 88 and SF 93 reflecting the results of an appropriate medical examination taken within the prescribed timeframe will suffice.

d. Before NGB-ARO-E issues a letter authorizing an applicant's attendance at a course listed in a above, the applicant's medical examination must be approved by a specific agency. This action is accomplished by the appropriate agency's reviewing the applicant's SFs 88 and 93 and any required supporting documents and stamping their determination, e.g., approved; disapproved, in the "NOTES" block of the applicant's SF 88. Courses, procedures, and reviewing agencies are indicated below:

(1) Paragraphs a(1), (2), (3), (4), and (5) above. States will forward medical records to the Aeromedical Center, Fort Rucker, AL for determination and return to the State. A copy of the approved medical examination will be forwarded to NGB-ARO-M with the applicant's NGB Form 64.

(2) Paragraphs a(6), (7), (8), (9), and (10) above. Medical records will be forwarded to NGB-ARO-E with the applicant's NGB Form 64. NGB-ARO-E will forward the applicant's medical records to either the host school or NGB-ARS for determination and return to NGB-ARO-E. As an exception, States authorized to conduct any of these courses as IRTS will be responsible for determining the applicant's medical fitness and qualification to attend the course. Applicant's medical records will be forwarded to the host State in order to accomplish this action.

(3) Paragraphs a(11), (12), and (13) above. Determination will normally be made by NGB-ARS, however, Aeromedical Center-approved medical examinations are accepted. If States do not submit NGB-ARS- or Aeromedical Center-approved medical examinations with the applicant's NGB Form 64, NGB-ARO-E will forward medical records to Army National Guard Surgeon (NGB-ARS) for determination and return to NGB-ARO-E.

**1-8** Security clearance

Prior to reporting for training, students will have a security clearance equal to or higher than that required to attend the course (see course announcement document) or for award of a resulting

military occupational specialty (MOS)/specialty skill identifier (SSI)/additional skill identifier (ASI) code. Preferably, the applicant will have the appropriate level clearance before applying for training, otherwise, authority to .attend training will be withheld pending receipt of required security clearance.

**1–9 Course information**
DA Pam 351-4 and QUALS Report contains pertinent information about Army service school courses and should be reviewed by personnel preparing NGB Forms *64*. Included is such data as course prerequisites, school location, reporting information, transportation means available, etc. In addition, documents that announce available courses often include information similar to that found in DA Pam 351-4. These course announcement documents should also be reviewed when applications are being processed for course information not otherwise available,

**1–10 Service obligation**
a. ARNG personnel attending Army service schools, Army area schools, USARF schools, IRTS, or civilian institutions must have the following time remaining before their mandatory removal date (MRD) or erpiration of term of service (ETS). Enlisted personnel are not required to ertend their enlistment until after they have been confirmed for enrollment, however, States will not publish orders directing school attendance until the prospective student's ETS meets or erceeds the standards listed below, erceptions may be granted by CNGB for cogent reasons.

(1) One year following completion of a school of less than 30 days.

(2) Two years following completion of a school of 31 to *90* days.

(3) Three years following completion of a school of 91 to 139 days.

(4) Four years following completion of a school of 140 days or more.

b. Undergraduate pilot training graduates and rotary wing qualification course graduates of the Civilian Aviator Accession Program incur a 5-year service obligation.

c. Upon completion of Phase I and Phase II of the 011A Physicians Assistant Course, graduates incur an 8-year service obligation with promotion to CW3.

d In cases when an individual attends successive courses, the combined length of the courses will be used to determine service obligation.

**1–11 Description of an FTTD day**
a. For purposes of this regulation, FTTD is defined as full-time training duty, with or without pay, authorized for ARNG members under Title 32, United States Code, sections *504* and 505. This duty is performed under State jurisdiction as opposed to Federal jurisdiction, and includes attendance at the schools and courses listed in the regulation. FTTD is considered to be not less than *8* hours of duty each day of duty.

b. Attendance of ARNG personnel at IRTS or at USARF schools conducted in other than an AT/ADT status will conform to the following standards:

(1) Not less than 8 hours of POI training will be conducted on each day during the training period except that not less than 7 hours of POI training will be conducted on both the first day and the last day of training periods which are of 2 or more days' duration.

(2) For purposes of this regulation, orientations, critiques, and graduation ceremonies are considered to be legitimate POI subjects as long as none of them exceed 1 hour duration. Travel, sign-in or sign-out, issue or turn-in of equipment, administrative time, commandant's time, and time allowed for troop messing/rest periods are not considered legitimate POI subjects.

**1–12 Funding**
a. Courses listed below are centrally funded by CNGB:

(1) Resident senior service college courses to include fellowship programs.

(2) Resident intermediate level college courses, but only that portion of the course exceeding 20 weeks.

(3) Resident sergeants major courses.

(4) Physicians assistant training courses.

(5) Undergraduate pilot training courses.

(6) Eastern ARNG aviation training school courses.

(7) ARNG regional school RC-PLDS.

(8) ARNG centralized school RC-ANCOC.

(9) ARNG battle skills course.

(10) ARNG RC tank commanders' course.

b. Attendance at courses by personnel serving in the Active Guard/Reserve (AGR) Long-Tour Program (Title 10 AGR)-related TDY erpenses are centrally funded by NGB. Applicants authorized TDY support will submit DD Forms 1610 with their NGB Forms 64. DD Forms 1610 will be completed through item 18 at the originating office, and NGB-ARO-E will complete the remaining items.

c. States entitled to receive central funding support will submit cost estimate sheets similar to that shown at figure 1-1 to NGB-ARO-E for each member attending a course listed in paragraphs a(1), (2), (3), and (4) above. Sheets for paragraphs a(1), (2) and (3) above will be submitted after the course selection has been announced. Sheets for paragraph a(4) above will be submitted with the application. Markup for students attending courses in paragraphs a(5) and (6) above are computed by NGB-ARO-E. Students attending courses listed in paragraphs a(7), (8), (9), and (10) above are funded by the USPFO of the host State. State budgets will be appropriately marked up after processing of cost estimate sheets by NGB-ARO-E.

**1-13 Travel status**

The following policy will be observed unless superseded by joint travel regulations (JTR).

a. When school training is conducted at a location other than the permanent duty station to which assigned, ARNG students will normally attend in temporary duty (TDY) or permanent change of station (PCS) status.

(1) Courses of 19 weeks 6 days (139 days) or less are attended in TDY status.

(2) Courses of 20 weeks (140 days) or more are normally attended in a PCS status.

b. Course length is determined by counting calendar time starting with the reporting day and ending with the close day. Normal weekend days are included in determining course length.

(1) Travel days occurring prior to the reporting day or after the close day are not included when computing course length.

(2) Federal holidays and holiday breaks (e.g., Christmas -. New Year break) are not included when computing course length. Courses normally less than 20 weeks long that are extended to 20 or more weeks long because of having holidays or because holiday breaks fall within the course dates are still considered TDY courses.

c. Personnel whose training period is ertended from less than 20 weeks to 20 or more weeks as a result of recycle action will not change from a TDY to PCS status. The State will amend original orders to reflect that the training period is extended in order for the student to receive additional training; e.g., "Additional period of instruction authorized", and indicate the amended close date of the ertended period of instruction.

d. Personnel attending training in a PCS status who are released from the course prior to the 20th week do not change status based on early release.

e. Personnel who schedule attendance at training courses conducted on consecutive days for which the accumulative period of time equals or erceeds 20 weeks (140 days) after applying the provisions of paragraph b(2) above, will attend in a PCS status even though one or both courses would normally be attended in a

TDY status. If there is a one or more day break in training between the courses, the student will attend in accordance with a above.

f. ARNG personnel attending training courses in a TDY status will not normally be authorized more than one day of travel prior to the course report date or after the course close date regardless of the travel mode actually used. The amount of travel days authorized for PCS moves is dependent upon time, distance, and travel mode as outlined in JTR volume 1.

STATE____________________

COURSE TITLE____________________ COURSE NO. ____________________

NAME (last, first, MI)____________________ REPORT DATE__________CLOSE DATE__________

PAY GRADE____________________ TVL TIME AUTH IN DAYS____________________

PEBD____________________ NO. OF DEP TO ACCOMPANY PCS____________________

MARITAL STATUS____________________

HOR____________________

UNIT ADDRESS____________________

| | BASIC PAY | BAQ | BAS | FICA | *OTHER(1) | TRAVEL INDIV | TRAVEL DEP | **TVL(1) THINGS | QUARTER TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| FY_____ | | | | | | | | | |
| 1st Qtr | | | | | | | | | |
| 2d Qtr | | | | | | | | | |
| 3d Qtr | | | | | | | | | |
| 4th Qtr | | | | | | | | | |
| FY Total | | | | | | | | | FY |
| FY_____ | | | | | | | | | |
| 1st Qtr | | | | | | | | | |
| 2d Qtr | | | | | | | | | |
| 3d Qtr | | | | | | | | | |
| 4th Qtr | | | | | | | | | |
| FY Total | | | | | | | | | FY |
| 1st Qtr | | | | | | | | | |
| 2d Qtr | | | | | | | | | |
| 3d Qtr | | | | | | | | | |
| 4th Qtr | | | | | | | | | |
| FY Total | | | | | | | | | FY |
| FY_____ | | | | | | | | | |
| 1st Qtr | | | | | | | | | |
| 2d Qtr | | | | | | | | | |
| 3d Qtr | | | | | | | | | |
| 4th Qtr | | | | | | | | | |
| FY Total | | | | | | | | | FY |
| FY_____ | | | | | | | | | |
| 1st Qtr | | | | | | | | | |
| 2d Qtr | | | | | | | | | |
| 3d Qtr | | | | | | | | | |
| 4th Qtr | | | | | | | | | FY |
| FY Total | | | | | | | | | |

GRAND TOTAL__________

*Tuition, books, uniforms, etc.
**Includes excess baggage, auto, boat, etc.
(1) REQUIRE DETAILED LIST OF EXPENDITURES ATTACHED AS ENCLOSURE

Figure 1-1. Cost Sheet for School Training

## Chapter 3

## Warrant Officer Education

**3-1. General**

a. The purpose of the Warrant Officer Training System (WOTS) is to establish and provide training at the appropriate time to develop warrant officers that are technically and tactically competent for positions in which they serve.

b. WOTS is a three-level system incorporating entry, advanced, and master level training. Career development is based on progression through the levels with functional training opportunities provided as needed.

**3-2. Entry level training**

a. The purpose of entry level training is to--

(1) Qualify selected ARNG personnel to be appointed as warrant officers in the ARNG and in the Reserve of the Army.

(2) Equip candidates with skills and knowledge needed for successful performance in their specialties.

b. Entry level training incorporates the check three system.

(1) Check one is the selection process centralized at the State level. Determination of eligibility, selection and boarding is accomplished during check one in accordance with National Guard Regulation 600-101.

(2) Check two is the Warrant Officer Entry Course as described in paragraphs 3-3 and 3-4 below.

(3) Check three is the Warrant Officer Technical Certification Courses as described in paragraph 3-5 below.

c. Types of programs that provide training which enable ARNG personnel to meet minimum military education requirements for a warrant officer candidate in the *ARNG* are as follows:

(1) Warrant Officer Entry Course (WOEC).

(2) Warrant Officer Entry Course - Reserve component (WOEC-RC).

(3) Warrant Officer Technical Certification Courses (WOTCC).

**3-3. Warrant Officer Entry Course (check *two)***

a. The WOEC is taught at three location: Aberdeen Proving Ground, Maryland; Fort Sill, Oklahoma; and Fort Rucker, Albabma. Course length is *6* weeks, *4* days. WOEC is "check two" of the entry level training check three system.

b. Resident attendance at one of the schools listed in paragraph a above is the preferred method of training ARNG warrant officer candidates (WOC) for appointment.

c. WOEC is an MOS immaterial basic skills course which provides standardized training and evaluation to all WOC. This training is taught in a high-stress environment where candidates are evaluated by TAC (teach, advise, counsel) officers. Candidates are also evaluated by performance oriented (hands-on) and written eraminations.

d. Eligibility, prerequisites and other pertinent information is contained in NGR 600-101.

**3-4. Warrant Officer Entry Course - Reserve Component (check two)**

a. WOEC-RC is designed for ARNG WOC who are limited by time constraints from attending WOEC. The course will be conducted at training sites as determined by NGB.

b. The WOEC-RC consists of 135 hours of correspondence courses (Phase I) which must be completed within one year followed by 134 hours of resident training (Phase II) to validate the ACCP. Phase I must be completed before applying for/entering Phase II.

c. Course scope is the same as described in paragraph 3-3c above.

d. Eligibility, prerequisites and other pertinent information is contained in NGR 600-101.

**3-5. Warrant Officer Technical Certification Courses (WOTCC) (check three)**

a. WOTCC responsibilities and authority for ARNG WOC are erclusively assigned to the MOS personnel proponents identified in AR 600-3. Before appointment, WOC will be technically certified by one of the following methods.

(1) Successful completion of eristing resident entry level technical certification courses.

(2) Technical certification testing using eristing entry level functional eraminations.

(3) Periodic technical certification boards convened under the authority of the MOS proponent and conducted at the proponent school.

b. Additional information is contained in TRADOC Reg 351-13.

**3-6. Warrant Officer** Professional Developgent

Training for warrant officers above the entry level is designed to develop individuals to their maximum potential. The two training levels involved are advanced level training and master level training.

a. Advance level training is accomplished by mandatory attendance at warrant officer advanced courses (WOAC). Advanced level training must be completed between 3 and 9 years of warrant officer service. The aim of WOAC is to refresh common skills and leadership, update technical and tactical training to keep pace with doctrinal changes, and provide additional training as determined by the proponent branch based on future requirements.

b. Master warrant officer training (MWOT) is the highest level of military training available to the warrant officers. MWOT is required to prepare warrant officers assigned to MWO positions for the erpected role of systems integrator, trainer, manager, and developer. MWOT will consist of the appropriate master warrant officer course (MWOC) followed by additional master level functional training modules for specific assignments.

c. For a detailed outline of warrant officer training on an MOS basis, refer to NGR 600-101.

Chapter 4

## Noncommissioned Officer Education System (NCOES)

**4-1.** Concept for training

a. The concept of NCOES training is outlined in chapter 6, AR 351-1 and explains career MOS training plans, individual training programs (ITP) of proponent service schools, training programs and products, soldiers manuals (SM), training guide (TG), and individual training evaluation program (ITEP).

b. Types of training that support the NCOES--

(1) Resident training taught in NCO academy/service schools.

(2) Nonresident training that may be developed by service schools to support individuals training in units.

(3) On-the-job experience (OJE) and supervised on-the-job training (SOJT) that may be used to sustain NCO training in units if organized around tasks, conditions, and standards stated in the SM and TG.

(4) ACCP developed for individual study/self-improvement. Correspondence courses will not be substituted for training available in resident modes.

c. The active component noncommissioned officer education system (ACNCOES) provides leader and MOS skill training in an integrated system of resident and nonresident training at the levels in table 4-1.

(Table 4-1)

Generalized ACNCOES Structure

| Soldiers in Grade | NCOES Level | NCOES Level NCOES Training Available | Train to Grade Level Duty Position |
|---|---|---|---|
| E-4(P) | 2 | Primary | E-5 |
| E-5(P) | 3 | Basic | E-6 |
| E-6, E-6(P), E-7 | 4 | Advanced | E-7 |
| E-8, E-8(P), E-9 | 5 | Senior | E-9 |

d. Chapter 6, AR 351-1 applies to all ARNG attending ACNCOES.

e. To apply for ACNCOES, soldiers submit NGB Forms 64 through normal channels to NGB-ARO-E.

f. NGR 351-15 outlines the procedures for the nomination, selection, and enrollment of ARNG enlisted personnel in the resident or the corresponding studies program at the U.S. Army Sergeants Major Academy (USASMA).

**4-2.** Reserve Component Noncommissioned Officer Education System (RCNCOES)

a. The RCNCOES is a career development program for enlisted members of the ARNG beyond entry level training.

b. NGR 351-3 establishes and prescribes procedures for conducting NCO training for ARNG enlisted personnel under RCNCOES. NGR 351-3 is applicable to all State military academies (SMA) and NGB regional NCO schools conducting RCNCOES courses.

c. The RCNCOES provides career development instruction to actual and potential NCOs of the ARNG. The RCNCOES is as follows:

(1) Reserve component primary leadership development course (RCPLDC). RCPLDC is a non-MOS specific program of instruction designed to train sergeants and prospective sergeants in leadership, NCO responsibility, training subjects, and battlefield survival skills. RCPLDC is designed to be taught in a small group environment. This method allows all students, fast or slow, to be engaged continuously in the process of receiving or giving feedback regarding course materials, personal experiences, or fellow student performance. This process also fosters team building, and provides training reinforcement based on a wide range of backgrounds and professional experiences including combat arms, combat support, and combat service support. The course requires students to demonstrate proficiency by performing tasks required to train and lead their subordinates.

★(2) RCBNCOC. RCBNCOC is a two phase course. Phase I consists of 47 hours of common leader training that builds on the leader/trainer skills taught in RCPLDC. The common leader portion of RCBNCOC was developed by the U.S. Army Sergeants Major Academy and approved by HQ TRADOC. Phase II of

RCBNCOC will consist of a series of MOS specific courses. The MOS specific portions of RCBNCOC are being developed by appropriate Army Service Schools and will be phased in as they are approved by HQ TRADOC. Milestones indicate that all MOS specific courses will be complete by FY89. RCBNCOC will be attended by staff sergeants who are PLDC graduates and sergeants who are PLDC graduates assigned to staff sergeant leadership positions. If available, Phase II (MOS Specific Training) must be completed before enrolling in the Advanced NCO Course. Reassignment to a new duty position that includes Phase II requires completion of the Phase II portion without regard to prior MOS specific BNCOC training.

★(3) RCANCOC is a two-phase course. Phase I consists of 109 hours of common leader training, including field training erercises designed to train to standards, the knowledge and skills required to become an effective platoon sergeant or senior section sergeant. Phase II of the RCANCOC consists of MOS specific courses being developed by appropriate Army service schools and will be phased into the system as they are approved by HQ TRADOC. RCANCOC will be attended by sergeants first class and staff sergeants who are graduates of RCBNCOC and occupying sergeant first class positions. If no MOS specific (Phase 11) course is developed by the proponent service school, the course is complete upon graduation from Phase I. Reassignment to a new duty position that includes Phase II requires completion of Phase II without regard before ANCOC MOS specific training.

(4) Reserve component first sergeant course (RCFSC). RCFSC is a functional course designed to provide instruction on selected topics deemed to be most critical to the duties of the unit first sergeant. The objective of this course is to train soldiers that are first sergeants or assigned to first sergeant positions to be more proficient and knowledgeable in these topics. In doing so, it will enable first sergeants to perform better and more ably assist the commanders in planning, coordinating, and supervising those activities that are the key to mission accomplishment.

**4-3. Objectives**

The RCNCOES objectives are to provide progressive career development instruction by instilling--

a. A thorough understanding of responsibilities.

b. A willingness to assume those responsibilities.

c. Confidence to apply technical knowledge.

d. Leadership techniques that apply to duty position.

e. Personal and professional standards that must be maintained in the NCO Corps.

f. A thorough knowledge of NCO responsibilities for training and leading soldiers.

**4-4. Responsibilities**

a. State adjutants general, in concert with the Chief, National Guard Bureau, are responsible for conducting the RCNCOES program.

b. Training status of RCNCOES participants may be IDT, AT, or FTTD. States submitting requests for designation of individual readiness training schools (IRTS) should submit their requests in accordance with chapter 9.

**4-5. Accreditation**

Recommendation of accreditation will be made when RCNCOES courses meet the following standards:

a. All RCNCOES courses conducted by States and NGB regional schools will be conducted in accordance with prescribed TRADOC programs of instruction (POI).

b. RCNCOES courses are eligible for NGB accreditation when they contain the minimum POI subjects and hours as prescribed by the TRADOC-approved RCNCOES course. Core POI hours may be increased by not more than 20 percent to meet State needs.

c. The staff and faculty used to conduct RCNCOES courses will consist of qualified ARNG, United States Army Reserve, or AC NCOs. RCNCOES instructors will be selected from highly qualified, motivated, and erperienced NCOs who are graduates of the course they are instructing or a higher level resident NCOES

course and certified as graduates of the appropriate approved instructor or cadre trainer course. USAR and AC instructors will be supported by resources from their respective commands.

d. Necessary facilities for conducting RCNCOES courses are the responsibility of the State and should include--

(1) Classrooms and outdoor training facilities suitable for effective instruction.

(2) Suitable facilities for storing supplies, equipment, and weapons as may be authorized. Adequate protection of Federal property must be provided.

(3) Adequate facilities or arrangements for messing.

(4) Administration facilities, including adequate secure storage for safeguarding of publication, examination and instructional materials.

e. State adjutants general that desire RCNCOES course accreditation should forward a request for course evaluation of a specific RCNCOES course (e.g., RC-PLDC, RC-RNCOC, RC-ANCOC, RC-SNCOC, RC-FSC) 60 days before course start date. The accreditation request, will be sent through command channels to NGB-ARO-E, Bldg E6814, Edgewood Area, Aberdeen Proving Ground, MD 21010-5420. Upon receiving the accreditation request, the military education branch will assign an evaluator to review the course of instruction. When the course has been reviewed and accreditation granted, NGB-ARO-E will issue to the State an NGB Form 005 (National Guard Bureau NCO School Accreditation) for the RCNCOES course that has been accreditated.

NATIONAL GUARD REGULATION
No. 635-100

HEADQUARTERS
DEPARTMENT OF THE ARMY
WASHINGTON, DC, 8 September 1978

1980

# PERSONNEL SEPARATIONS

## TERMINATION OF APPOINTMENT AND WITHDRAWAL OF FEDERAL RECOGNITION

This is a complete revision of NGR 635-100. Major changes are summarized as follows: Incorporates all previous changes; removes the requirement for an officerdirectly appointed in the Women's Army Corps to be separated if she has not completed the WAC Officer Orientation Course; allows 2LTs 18 months to complete the Officer Basic Course, with the Adjutant General authorized to grant an additional 6 months waiver; changes the requirement for completion of a technical waiver to that of completing educational stipulations determined by the Officer Personnel Classification Board or the Federal Recognition Board; provides provision for a student who 'fails the Officer Basic Course to reverse those failures by extension courses within 6 months of ending date of OBC when recommended by the school faculty review board; deletes the C&GSC Phase FL requirement; deletes the 30 June 78 date from retentions beyond MRD, and adds an appendix to show all information required for a request beyond MRD. State adjutants general may supplement this regulation, if desided. If supplements to this regulation are issued by major Army commanders and US Army commanders, they are not applicable to the ARNG. One copy of each supplement will be forwarded to NGB-ARP-O, Wash DC 20310. Wherever the word "he" is used in this regulation, it is intended to include both the masculine and feminine genders, unless otherwise indicated.


| | Paragraph | Page |
|---|---|---|
| Purpose | 1 | 1 |
| Authority | 2 | 1 |
| Policy | 3 | 1 |
| Definitions | 4 | 1 |
| Criteria | 5 | 2 |
| Retentions beyond mandatory removal date | 6 | 4 |
| Reserve of the Army status | 7 | 6 |
| Records | 8 | 6 |
| APPENDIX A. SAMPLE LETTERS | | 7 |
| B. INFORMATION REQUIRED FOR RETENTION BEYOND MANDATORY REMOVAL DATE | | 9 |


**1.** Purpose. This regulation prescribes the policies, criteria and procedures governing the separation of commissioned officers of the Army National Guard.

**2.** Authority. Sections 323 and 324, title 32, United States Code.

*a.* The termination of an officer's appointment in the Army National Guard is a function of the State.

*b.* The withdrawal of Federal recognition of an officer is a function of the Chief, National Guard Bureau, acting for the Secretary of the Army.

*c.* The discharge of an officer from his appointment as a Reserve of the Army is a function of the Secretary of the Army.

**3.** Policy. *a.* All personnel actions prescribed in this regulation will be made without regard to race, color, religion, sex, and national origin.

*b.* In this regulation reference to individuals or personnel include both male and female unless otherwise specified.

*c.* All appointments are automatically terminated upon death.

**4.** Definitions. a. *Years of service.*

(1) A Reserve commissioned officer's years of service are the greater of—

*(a)* The sum of—

1. The officer's years of service as a commissioned officer of any component of the Armed Forces or of the Army without specification of component; and

*This regulation supersedes NGR 635-100, 22 Sep 76.

*2.* The years of constructive service accredited to the officer; or

(*b*) The number of years by which the officer's age exceeds 25 years.

(2) No service may be counted more than once. For an officer credited with constructive service, no actual service before appointment may be counted for this purpose.

(3) Service accrued while holding an appointment as a commissioned officer of the National Guard of the United States under the provisions of former Section 111, National Defense Act, but serving us an enlisted person or warrant officer is not creditable in computing years of service.

b. *Constructive service.* The gears of servicc in an active status constructively credited upon appointment as a Reserve commissioned officer of the Army to reflect the officer's combined years of experience and education. If appointed with assignment to the Medical Corps, Dental Corps, Judge Advocate General's Corps, or Chaplain, tlie officer will, for the purpose of this regulation, be credited with such constructive service in an active status to which he is entitled in accordance with AR 135–100 or AR 135–101, as applicable.

*5.* **Criteria.** *a. Termination of State appointment.* Unless contrary to State law and regulations, the appointment of an Army National Guard officer should be terminated for the reasons listed below. If termination of appointment is contrary to State law nnd regulations, the Chief, National Guard Bureau, will be notified in advance and Federal recognition will be withdrawn.

(1) Attainment of maximum age.

(a) An Army National Guard of the United States officer occuping one of the following positions must be removed from an active status in the Army National Guard of the United States no later than the date he attains age 64.

*1.* The Chief, National Guard Bureau.

*2.* The Chief of the State Military Department. (Normally the title of this position is State Adjutant General, but the exact title is governed by the laws of the State.)

*3.* The Commanding General of tlie District of Columbia National Guard and the adjutants general of the Commonwealth of Puerto Rico and the Virgin Islands Army National Guard.

(b) Except as provided in (a) above, all officers who are not earlier removed from active status by reason of time in grade, length of service, or other reason must be removed from an active status in the Army National Guard of the United States on the last day of the month in which they atain age 60. The Secretary of the Army may approve retention beyond age 60 for major generals when a valid requirement exists and for whom there is no qualified replacement. Such retention will not exceed age 62 (para 61).

(c) Officers removed from an active status by reason of attainmrnt of maximum age may be transferred to the Retired Reserve if they are qualied and apply therefor (para 8).

(2) Completion of maximum service.

(*a*) Except as otherwise indicated, officers in the grades shown below who nre not earlier removed from an active status will be removed from an active status in the Army National Guard of the United States on the date that is 30 days after completion of the total years of service, or on the anniversary date indicated, whichever is later.

*1.* Major General—35 total years of service or on the fifth anniversary of officer's date of appointment in that grade, unless otherwise retained under the provisions of AR 135–156.

*2.* Brigadier General or Colonel—30 total years of service or on the fifth anniversary of officer's date of appointment in that grade.

3. Lieutenant Colonel and below, all branches—28 total years of service.

(b) Officers removed from an active status by reason of completion of maximum service may be transferred to the Retired Reserve if they are qualified and apply therefor (para 8).

(*c*) Each officer in the reserve grnde of lieutenant colonel who has been recommended for promotion and who would otherwise be removed from nn active status under this paragraph, shall be retained in thnt status until he is appointed or refused appointment to the next higher grade. To be considered "recommended for promotion," individual must meet the following criteria within the meaning of section 3848 (b) title 10, United States Code with effective date as indicated below:

*1.* For officers not possessing certificates of eligibility in the higher grade, on the date tlie Federal Recognition Board adjourns.

*2.* For officers possessing certificates of eligibility for Federal recognition in the higher grade, on the date of assignment to the position for which granted tlie Certificate of Eligibility or on the date of promotion in the State if officer is already assigned to the position.

(3) ***Resignation***

(a) An officer may tender a resignation through channels to tlie State adjutant general. If accepted, the State adjutant general will publish orders separating the officer from his Army National Guard appointment and furnish copies to the Chief, National Guard Bureau. The resig-

nation may also be concurrent from the Army National Guard and Reserve of the Army for officers without a remaining service obligation.

(b) When the resignation of an Army National Guard officer has been accepted and Federal recognition withdrawn, revocation of the separation order will not be considered as a basis for restoration of Federal recognition, If the officer desires to be reinstated, he/she must apply for reappointment to the Army National Guard.

(c) Resignation should not be accepted from officers against whom flagging action has been initiated under AR 600-31 or NGR 635-10, or those in default of property or funds.

(4) Absence without leave for 3 months.

(5) When dismissed pursuant to an approved sentence of a court-martial.

(6) Upon conviction of a felony or sentence to confinement in a Federal or State Penitentiary or correctional institution after having been found guilty of an offense by a court (other than a court-martial, other military court, or foreign court) and whose sentence has become final.

(7) Upon acceptance of a commission or appointment in another Armed Force, US Public Health Service, Environmental Science Services Administration, US Military Academy, US Naval Academy, US Air Force Academy, or US Coast Guard Academy, or upon enlistment in the National Guard. These actions are normally a vacation of appointment.

(8) Upon becoming a member of the Army Reserve.

(9) As a result of screening under any criteria contained in AR 135-133.

(10) Upon failure of a first lieutenant, captain, or major to be selected for promotion to the next higher grade after second consideration under AR 135-155, except as provided in paragraph 6a. Removal from an active status must be accomplished within 90 days after the selection board submits its report to the convening authority. Removal may be delayed, if necessary, until final determination is made with respect to a valid request for reconsideration under the Standby Board of provisions of AR 135-155.

(11) When ecclesiastical indorsement of a chaplain is withdrawn.

(12) When officers of the Army Medical Department or of the Judge Advocate General's Corps lose the privilege to practice their profession because of misconduct, unethical practice, or other similar reasons.

(13) Employment with any foreign government or any concern controlled in whole or in part by a foreign government, unless prior approval is granted by the Secretary of the Army.

(14) When the officer becomes medically disqualified for further military service (NGR 635-101).

(15) Upon the expiration of the authorized period of time an officer has. been--

(a) In an overstrength status.

(b) Carried as an additional active duty officer under the release from active duty provisions of NGR 600-100.

(c) Assigned to the Inactive Army National Guard (NGR 614-1).

(d) Permitted to decline a promotion after mandatory consideration and selection, except as provided in paragraph 6a.

(e) Given to complete educational stipulations determined by a State Officer Personnel Classification Board or Federal Recognition Board for qualification in primary SSI/MOS or duty SSI/MOS pursuant to NGR 600-100 if he failed to fulfill the requirements for completion of the stipulation.

(f) Retained in an active status beyond mandatory removal date, except as provided in paragraph 6a.

(16) Upon failure to qualify for permanent or continued flying status and not transferred to an authorized nonflying position for which otherwise qualified or transferred to the Inactive Army

National Guard.

(17) Failure to accept appointment as a Reserve officer of the Army.

(18) When a student Army National Guard officer with less than 3 years commissioned service in an active status fails to complete a branch or basic entry specialty qualification course at a service school for disciplinary reasons, academic deficiencies, or deficiencies of leadership. Academic deficiencies may not be reversed by correspondence courses, except when school faculty review board recommends that student be authorized to complete extension courses to reverse failures. When authorized by the faculty review board, extension courses must be completed within 6 months following the ending date of OBC.

(19) Individuals appointed as second lieutenant before 29 February 1976, who fail to complete a branch or basic entry specialty qualification course before completing 3 years of commissioned service in an active status.

(20) Failure to complete a branch or basic entry specialty qualification course if appointed after 29 February 1976 as follows:

(a) When a second lieutenant fails to complete a branch or basic entry specialty qualification course (NGR 600-100, Appendix D Group III Courses) before completing 18 months of commissioned service in an active status.

(b) State adjutants general are authorized to waive the requirements in paragraphs (a) and (b) above for a period not to exceed 6 additional months on a case-by-case basis when fully justified. Notification of each waiver granted will be provided the Army National Guard Personnel Center, Columbia Pike Office Building, 5600 Columbia Pike, Falls Church, Virginia 22041.

(21) When a second lieutenant is not promoted on or before the date he completes 3 years of promotion service. Names of second lieutenants who will not be promoted will be reported to the Army National Guard Personnel Center 60 days before completing 3 years of promotion service.

(22) As a result of failure of selective retention (NGR 635-102).

(23) Failure of a lieutenant colonel to complete Command and General Staff College or equivalent course.

(a) When a lieutenant colonel fails to complete Command and General Staff College or equivalent course before the third anniversary of the effective date of his/her promotion or appointment to that grade. If the individual has a 50 percent completion certificate with an expiration date, the CGSC course must be completed before the expiration date of the certificate.

(b) AMEDD (excluding the SC 67 series) officers are exempt from this requirement. Staff Specialist branch officers assigned to Selective Service positions are exempt, unless they have not satisfied the military education requirement of NGB 600-102.

(c) The Chief, National Guard Bureau, may waive the time requirement in (a) above for a maximum of 6 months. Request for waiver with complete justification should be forwarded to NGB-ARP-O no later than 60 days before the third anniversary of the effective date of Federal recognition as lieutenant colonel. Waiver will be granted only when the best interest of the Army is served.

(24) When a general officer ceases to occupy a position commensurate with his grade or a higher grade within 30 days from the date he ceases to occupy such position.

(25) In accordance with State laws or regulations,

(26) Failure to achieve satisfactory progress after participation in an established weight control program (see AR 600-9).

b. Withdrawal of Federal recognition. Federal recognition of an officer of the Army National Guard will be withdrawn by the Chief, National Guard Bureau, for the following reasons:

(1) Separation or discharge from the State appointment as an officer of

the Army National Guard.

(2) Any reason in a above that would require discharge or removal from an active status as a Reserve officer of the Army.

(3) When an officer on active duty is selected for promotion and is not promoted in the Army National Guard of the State. Federal recognition will be withdrawn effective the date individual was notified by the State or the day before the promotion eligibility date, whichever is earlier, and the officer will be transferred to the Army reserve to permit promotion.

(4) As a result of a determination of ineligibility for permanent Federal recognition. Temporary Federal recognition, if granted, will be withdrawn.

(5) When an officer is assigned to a position for which there is no provision for Federal recognition, or ceases to occupy a TOE, MTOE, or TDA position appropriate to his grade. (Not applicable to officers in an authorized overstrength status).

(6) Pursuant to the findings of a board of officers convened under the provisions of NGR 635-101 or NGR 635-102.

(7) Acceptance of promotion as Reserve commissioned officer of the Army resulting from mandatory consideration when no appropriate position vacancy or provision exists for Federal recognition in the higher grade.

(8) When a second lieutenant appointed after 29 February 1976 fails to complete a branch or basic entry specialty qualification course before completing 24 months of commissioned service in an active status.

6. Retentions beyond mandatory removal date. a. An officer whose State appointment is to be terminated or whose Federal recognition is to be withdrawn under the provisions of 5a(2), 5a(10), 5a(15) (d), and/or (f) shall be retained in an active status to qualify for retirement for the following reasons:

(1) On the date prescribed for discharge, the officer who is entitled to be credited with 18 or more years but less than 19 years of qualifying Federal service for retired pay under 10 U.S.C. 1331-1337 (AR 135-180) shall be retained to the end of the retirement year during which he will be credited with 20 years of satisfactory Federal service or until the third anniversary of the date on which the officer would have been discharged, whichever is earlier, unless sooner separated for physical disability, cause, by reason of attaining maximum age, or discharge at officer's own request.

(2) On the date prescribed for discharge, the officer is entitled to be credited with 19 years or more but less than 20 years of qualifying Federal service for retired pay under 10 U.S.C. 1331-1337 (AR 135-180) shall be retained to the end of the retirement year during which he will be credited with 20 years of satisfactory Federal service, or until the second anniversary of the date on which the officer would have been discharged, whichever is earlier, unless sooner separated for physical disability, cause, by reason of attaining maximum age, or discharge at the officer's own request.

■ b. Army Medical Specialties.

(1) An officer of the Medical Corps, Dental Corps, Veterinary Corps, Army Nurse Corps, or Army Medical Specialist Corps may be retained in an active status beyond the mandatory removal date, provided he/she is otherwise fully qualified, but not beyond age 60.

(2) As an exception to (1) above, Medical Corps officers who are eligible for retired pay under 10 U.S.C. 1331 (20 years of qualifying Federal Service and 60 years of age) may be retained beyond age 60 on a case-by-case basis until they attain age 64 (10 U.S.C. 676). Further, Medical Corps officers retained in an active status until age 60 under (1) above who are qualified for retired pay under 10 U.S.C. 1331 may also be retained in an active status under 10 U.S.C. 1003 until they attain age 64. Requests will be submitted at least 120

days before their 60th birthday.

(3) All requests for retention under this paragraph will be submitted to NGB-ARP-O, Washington, DC 20310 with complete justification based on the needs of the service and the qualifications of the individual for continued service to meet service requirements.

c. A chaplain may be biennially retained in an active status beyond mandatory removal date provided he is otherwise qualified, but not beyond age 60. This authority is not applicable to those chaplains whose removal is required by paragraph 5a(10). Requests for extensions will be coordinated for recommendation with the Office, Chief of Chaplains.

d. United States Property and Fiscal Officers may be retained in an active status beyond mandatory removal date but not beyond the end of the month they attain age 60 (NGR 130-6).

e. Officers assigned to Selective Service Sections, State Headquarters and Headquarters Detachment:

(1) Officers assigned to Selective Service Section may be retained in an active status beyond their mandatory removal date on a year-by-year basis provided they are otherwise fully qualified, but not beyond age 60.

(2) Policies and procedures contained in paragraph 6f apply to officers assigned to Selective Service Sections who are Army National Guard technicians or fulltime State employees administering the Army National Guard program.

(3) Policies and procedures in paragraph 6b or 6c apply to officers of the Medical Corps, Dental Corps, Army Nurse Corps, Army Medical Specialist Corps, or Chaplains who are assigned to the Selective Service Section.

f. Army National Guard Technicians or full-time State employees administering the Army National Guard program may be retained in an active status beyond mandatory removal date, but not beyond age 60-

(1) To achieve eligibility for an immediate Civil Service retirement annuity (Federal or State), provided they are otherwise fully qualified. Army National Guard technicians achieve this eligibility with a combination of 20 years creditable service for Civil Service retirement of age 55. Retention under this provision is for those personnel whose eligibility for annuity requires an Army National Guard military status as a basis for continued employment. Individual must be able to achieve eligibility for an immediate annuity by or before age 60.

(2) If applicable, for a period not to exceded 2 years beyond mandatory removal date, if it is clearly demonstrated that an adequate replacement is not available and that his service is essential to maintaining unit readiness and/or the operation of the State Headquarters. Retention under this provision will not be authorized as a matter of convenience or as a reward for long and faithful service.

(3) As an exception beyond (2) above on a year-by-year basis, only upon specific approval of the Secretary of the Army. Retention under this provision must meet the requirement of (2) above. All requests will be reviewed and evaluated by the Chief, National Guard Bureau on a case-by-case basis. Only those cases that are fully justified and worthy of consideration by Secretary of the Army will be forwarded.

(4) Requests for retention must include information as outlined in appendix B.

(5) An officer retained under (2) and (3) above is not eligible for change in military, ARNG technician, or full-time State employment status without prior approval of the Chief, National Guard Bureau.

g. Except as indicated in paragraph 5a(1) and j, below, general officers assigned to State Headquarters and Headquarters Detachments may be retained in an active duty status beyond mandatory removal date but not beyond age 60.

h. An officer retained under provisions of b, c, e, or f above is not eligible to be considered for Federal recognition in a higher grade without prior

specific approval of the Secretary of the Army (NGR 600-100).

i. Requests for retention under b throught g above must be completely justified and submitted to the Chief, National Guard Bureau, at least 6 months before the date the officer would otherwise be removed from an active status. Requests will specify the State concerned and include the specific military and, if applicable, ARNG technician, or full-time State employment status in which the office is to serve if retained beyond mandatory removal date.

j. State adjutants general and officers in the grade of colonel or above occupying the position of Assistant Adjutant General in accordance with State codes are not subject to removal from an active status by virtue of maximum years of service.

k. An officer who is qualified for retirement pay may, with his/her consent and by order of the Secretary of the Army, be retained as provided in AR 135-32.

l. Requests for retention of major generals beyond age 60 must be completely justified and submitted to the Chief, National Guard Bureau, at least 6 months before attainment of age 60.

m. Officers currently in a retained status may continue in an active status in accordance with the terms of their retention authority.

7. Reserve of the Army status. a. Unless discharged as a Reserve of the Army Officer, an officer of the Army National Guard of the United States becomes a member of the Army Reserve when Federal recognition is withdrawn.

b. Officers who are not extended permanent Federal recognition and hold no Reserve of the Army appointment do not become members of the Army Reserve upon withdrawal of temporary Federal recognition.

c. An officer who is separated from the Army National Guard of one State and concurrently appointed an officer in the Army National Guard of another State remains a member of the Army National Guard of the United States and does not become a member of the Army Reserve.

d. Upon separation from the Army National Guard (ARNG), State orders will specify the USAR unit or the control group in AR 140-10 to which the officer is to be assigned. Further, reassignments between control groups will be made by the Commanding General, US Army Reserve Components Personnel and Administration Center.

e. Officers who are extended permanent Federal recognition but who, upon withdrawal of Federal recognition, have not executed the Reserve of the Army Oath of Office (DA Form 71), hold no Reserve of the Army appointment and do not become members of the Army Reserve.

8. Records. Records will be forwarded to the gaining ARNG/USAR unit or RCPAC, as appropriate (NGR 640-100), whenever an officer continues to hold an appointment in the Army National Guard or Army Reserve.

a. Resignations or requests from officers for assignment to a specific USAR control group or to the Retired Reserve will be forwarded by indorsement through the State Adjutant General to the Commander, RCPAC, with appropriate records inclosed. Resignations will be prepared in accordance with appropriate formats contained in appendix A.

b. If an officer is separated from the Army National Guard for cause (other than by unqualified resignation, age, expiration of status, or lack of TOE or TDA position), copies of appropriate documents supporting the separation will be included in the Military Personnel Records Jacket.

c. NGB Form 22 (Report of Separation and Record of Service) will be prepared in triplicate on each officer and warrant officer being separated from the Army National Guard. The original will be the officer's copy; however, #is copy must be requested in writing. If the officer does not request this copy, it will be retained in the State Adjutant General's office in the event the officer later re-

quests a copy. A written request is established by the notation "Individual requests a copy of NGB Form 22." The duplicate copy will be filed in the Military Personnel Records Jacket, and the triplicate copy will be forwarded to the State Adjutant General. Items on NGB Form 22 which are applicable only to enlisted personnel should be completed by entering "N/A." "he reason and authority for separation will be on all copies except the original. When it has been determined from official records that the NGB Form 22 issued to an officer contains an error or omission of pertinent facts, correction may be made by preparing an NGB Form 22a.

# APPENDIX A
## SAMPLE LETTERS

---

SUBJECT: Resignation from the Army National Guard and as a Reserve of the Army

TO:

1. I, John Doe, CPT, SSN 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, hereby tender my concurrent resignation as an officer of the ________ (State) Army National Guard and as a Reserve of the Army, under the provisions of ________ (para) NGR 635-100, effective ____________. I do (not) have a remaining reserve obligation.

2. I understand that my separation as a Reserve Officer of the Army is contingent upon its acceptance by the Commander, RCPAC.

*Figure 1. Resignation from the Army National Guard and as a Reserve of the Army.*

SUBJECT: Resignation from the Army National Guard to Transfer to the US Army Reserve Control Group

TO:

I, John Doe, 2LT, Infantry, SSN 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, hereby tender my resignation as an officer of the ________ (State) ARNG, under the provisions of ________ (para), NGR 635-100 and request transfer to the Army Reserve with assignment to the USAR Control Group ____________________ (specify annual training or reinforcement) under the provisions of AR 140-10. I do (not) have a remaining reserve obligation.

*Figure 2. Resignation from the Army National Guard to transfer to the US Army Reserve Control Group.*

SUBJECT: Resignation from the Army National Guard to Transfer to the Retired Reserve

TO:

1. I, John Doe, LTC, Infantry, SSN 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, hereby tender my resignation as an officer of the ________ (State) Army National Guard under the provisions of ________ (para), NGR 635-100, and request that I be transferred to the Army Reserve with assignment to the USAR Control Group (Retired) effective ________. I do (not) have a remaining reserve obligation.

2. In electing this transfer, I am awar that I am (not) qualified for retired pay at age 60 under the provisions of AR 135-180, and have (not) been issued a letter of notifying me of such eligibility.

*Figure 3. Resignation from the Army National Guard to transfer to the Retired Reserve.*

# APPENDIX B
# INFORMATION REQUIRED FOR RETENTION BEYOND MANDATORY REMOVAL DATE

| Item number | Legend:<br>A—Request under the provisions of paragraph 6f(1) (Annuity).<br>B—Request under the provisions of paragraphs 6f(2) and (3) (Essentiality).<br>C—Common information required for both A and B above. | Legend code |
|---|---|---|
| 1 | Paragraph reference and provision in policy on which request is based. | C |
| 2 | Date officer subject to removal from an active status as a Reserve Commissioned Officer of the Army (ARNGUS). | C |
| 3 | Prior action, if any, by Chief, National Guard Bureau and/or Secretary of the Army under previous or current retention policy. | C |
| 4 | Technician assignment and grade (Federal or State). | C |
| 5 | Military TOE or TDA assignment. | C |
| 6 | Discussion regarding military background and qualifications. | C |
| 7 | Civil service retirement status (Federal or State) | C |
| 8 | Signature of the State Adjutant General. | C |
| 9* | The period required for an officer to complete the 20 years necessary to qualify for a Federal civil service annuity under 5 USC 8336 (d). | A |
| 10* | The period required for an officer to achieve eligibility for State civil service retirement. | A |
| 11* | Information regarding the State retirement program considered essential to support the request to include but not limited to:<br>a. Whether membership in the Army National Guard is a mandatory requirement for continued employment.<br>b. Whether individual would be eligible for retirement with full annuity if removal from his military status necessitated termination of his employment.<br>c. If provision in b above exists, the minimum service and age requirements. | A |
| 12 | An unequivocal statement that the request is based on circumstances that are totally beyond the control of the State Adjutant General and are emergency in nature. | B |
| 13 | Substantive discussion to support the statement in requirement 12 above, as well as full justification and documentation worthy of Secretarial consideration outlining why an adequate replacement is not available and that the service of the officer is essential to maintaining unit readiness and/or the operation of the State Headquarters. | B |
| 14 | How the State personnel management program applies to the individual concerned, status of identifying and training potential replacement, and probable time factor involved. | B |
| 15 | Other circumstances or factors considered essential to support favorable adjudication on individual merits. | B |

* *Note.* Provide information requested by either 9 or 10 and 11 depending on whether request is to achieve Federal or State annuity.

Users of this regulation are invited to send comments and suggested improvements on DA form 2028 (Recommended Changes to Publications and Blank Comms) to NGB–ARP–O, Washington, DC 20310.

By Order of the Secretary of the Army:

LA VERN E. WEBER
*Major General, USA*
*Chief, National Guard Bureau*

Official
ROBERT H. NEITZ
*Colonel, USAF*
*Executive, National Guard Bureau*

Distribution : A

NATIONAL GUARD BUREAU
No. 635-100
CHANGE 5

HEADQUARTERS
DEPARTMENT OF THE ARMY
WASHINGTON, DC 20310-2500, 15 July 1987

Personnel Separations

# TERMINATION OF APPOINTMENT AND WITHDRAWAL OF FEDERAL RECOGNITION

1. NGR 635-100, 8 September 1978, is changed as follows:

Page 2. paragraph 5a(2)(a)1. Change to "Major General- 35 total years of service or on the fifth anniversary of officer's date of appointment in that grade, unless otherwise retained under the provisions of AR 135-156, or 10 USC 3852."

Page 2. paragraph 5a(2)(a)2. Change to "Brigadier General or Colonel- 30 total years of service or on the fifth anniversary of officer's date of appointment in that grade, unless retained under 10 USC 3851."

Page 6.1. Add "n. Brigadier generals and major generals may be retained in an active status in accordance with 10 USC 3851 and 3852."

2. File this change in front of the publication for reference purposes.

Users of this regulation are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) to NGB-ARP-O, Washington, DC 20310-2530.

By Order of the Secretary of the Army:

HERBERT R. TEMPLE, JR.
Lieutenant General, USA
Chief, National Guard Bureau

Official

HARRY M. LESLEY
Colonel, USAF
Executive, National Guard Bureau

Distribution: A

HEADQUARTERS
Department of the Army
Washington, DC 20310-2500
7 June 1989

**NGR 635-100**
Change 6

Personnel Separations

# TERMINATION OF APPOINTMENT AND WITHDRAWAL OF FEDERAL RECOGNITIOM

---

Summary. This is a change to NGR 635-100, 8 September 1978. This change implements the separation authority for those officers who fail to complete the civilian education requirements established by NGR 600-100, chapter 9.

Suggested improvements. The proponent agency of this regulation is the National Guard Bureau. Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to NGB-ARP-O, Washington, DC 20310-2500.

---

1. NGR 635-100 dated 8 September 1978 is changed as follows:

Page 4, paragraph 5a. Add the following subparagraph:

(27) Failure to complete civilian education requirements established by NGR 600-100, chapter 9.

2. File this change page in front of the publication for reference purposes

By Order of the Secretary of the Army:

HERBERT R. TEMPLE, Jr.
Lieutenant General, USA
Chief, National Guard Bureau

Official:

DONALD A. HAUS
Major, USA
Acting Executive, National Guard Bureau

Distribution: A