16

Army Regulation 135–155

Army National Guard and U.S. Army Reserve

# Promotion of Commissioned Officers and Warrant Officers Other Than General Officers

Headquarters
Department of the Army
Washington, DC
13 July 2004

UNCLASSIFIED

# SUMMARY of CHANGE

AR 135-155
Promotion of Commissioned Officers and Warrant Officers Other Than General Officers

This revision dated 13 July 2004--

- o Replaces U.S. Army Reserve Personnel Command with U.S. Army Human Resources Command St. Louis throughout the regulation.
- o Replaces AR-PERSCOM with HRC St. Louis throughout the regulation.
- o Changes U.S. Army Personnel Command with U.S. Army Human Resources Command throughout the regulation.
- o Changes PERSCOM to HRC throughout the regulation.
- o Replaces ODCSPER with DCS, G-1 throughout the regulation.
- o Replaces DCSPER with DCS, G-1 throughout the regulation.
- o Changes supplementation statement to reflect a different office.
- o Changes suggested improvements statement with a different office.

This revision dated 24 October 2001--

- o Incorporates Reserve Officer Personnel Management Act provisions throughout the regulation.
- o Revises promotion TIG dates (table 2-1).
- o Eliminates time-in-service requirement for promotion (table 2-1).
- o Eliminates Senate confirmation for promotion to lieutenant colonel (para 4-10).
- o Establishes competitive categories for mandatory promotions (para 2-5).
- o Provides for Active Guard Reserve and troop program unit position vacancy promotions (paras 2-13 and 2-14).
- o Adds new policy on special selection board consideration versus promotion advisory board consideration (para 3-19).
- o Addresses entry on active duty during promotion consideration (para 3-18).
- o Adds policy on voluntary delay of promotion (para 4-22).

- Discusses declination of promotion (para 4-28).
- Replaces unit vacancy promotions with position vacancy promotion (paras 2-13 and 2-14).
- Restricts promotion of Army Medical Department in below-grade positions and overstrength position to Medical Corps and Dental Corps officers (para 4-9).
- Requires a baccalaureate degree for promotion to captain except in certain cases (para 2-9).
- Provides for evidence of required civilian and military education not later than the day before the selection board convening date (paras 2-8 and 2-9).
- Revises requirements for de facto status (para 3-18).
- Changes requirements for transfer procedures (para 3-17 and throughout).
- Establishes an involuntary delay procedure for AGR officers(para 4-9).
- Establishes date of rank and effective date of promotion after an involuntary delay (para 4-9).
- Revises requirements for promotion on transfer to the Retired Reserve (para 4-20).
- Adds procedures for promotion ceremonies that specifically preclude frocking for the Reserve of the Army (para 5-3).
- Includes revised formats for promotion memorandums (figs 4-3 through 4-15).
- Lists a format for voluntary delay endorsement (figs 4-16 and 4-17)).
- Revises format for declination endorsement (figs 4-18 and 4-19).
- Changes format for second nonselection for promotion to captain, major, and lieutenant colonel (figs 4-23 through 4-25).
- Prescribes a format for promotion ceremonies (fig 5-1)

Headquarters
Department of the Army
Washington, DC
13 July 2004

***Army Regulation 135–155**

**Effective 13 August 2004**

**Army National Guard and U.S. Army Reserve**

# Promotion of Commissioned Officers and Warrant Officers Other Than General Officers

By order of the Secretary of the Army:

PETER J. SCHOOMAKER
*General, United States Army*
*Chief of Staff*

Official:

JOEL B. HUDSON
*Administrative Assistant to the Secretary of the Army*

**History.** This publication is an administrative revision. The portions affected by this administrative revision are listed in the summary of change.

**Summary.** This regulation provides policy for selecting and promoting commissioned officers of both the Army National Guard of the United States (ARNGUS) and the U.S. Army Reserve (USAR), and warrant officers of the USAR. This regulation also covers promotion eligibility and qualification requirements, board schedules and procedures, and procedures on processing selection board recommendations.

**Applicability.** This regulation applies to commissioned officers (except commissioned warrant officers) of the ARNGUS and the USAR on the Reserve Active Status List (RASL), and to warrant officers (whether or not commissioned) of the USAR who are in an active status. The regulation does not apply to warrant officers (including commissioned warrant officers) of the ARNGUS, nor does it apply to promotion to Reserve general officer grades. Policies concerning promotions and Federal recognition of ARNGUS officers within their State vacancy promotion systems will be under NGR 600-100. Promotion of warrant officers (including commissioned warrant officers) of the ARNGUS will be per NGR 600-101. Promotion to Reserve general officer grades will be per AR 135-156.

**Proponent and exception authority.** The proponent of this regulation is the Deputy Chief of Staff , G-1. The Deputy Chief of Staff, G-1 has the authority to approve exceptions or waivers to this regulation that are consistent with controlling law and regulations. The proponent may delegate this approval authority, in writing, to a division chief within the proponent agency or its direct reporting unit or field operating agency, in the grade of colonel or the civilian equivalent. Activities may request a waiver to this regulation by providing justification that includes a full analysis of the expected benefits and must include formal review of the activity's senior legal officer. All waiver requests will be endorsed by the commander or senior leader of the requesting activity and forwarded through their higher headquarters to the policy proponent. Refer to AR 25–30 for specific guidance.

**Army management control process.** This regulation contains management control provisions in accordance with AR 11–2, but it does not identify key management controls that must be evaluated.

**Supplementation.** Supplementation of this regulation and establishment of command and local forms are prohibited without prior approval from HQDA, Deputy Chief of Staff, G-1. Submit requests to Deputy Chief of Staff, G-1, ATTN: DAPE-MPO-D, 300 Army Pentagon, Washington, DC 20310–0300.

**Suggested improvements.** Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to Deputy Chief of Staff, G-1, ATTN: DAPE-MPO-D, 300 Army Pentagon, Washington, DC 20310–0300.

**Distribution.** This publication is available in electronic media only and is intended for command levels B, C, D, and E for the Active Army; and A, B, C, D, and E for the Army National Guard of the United States and for the U.S. Army Reserve.

**Contents** (Listed by paragraph and page number)

**Chapter 1**
**Introduction,** *page 1*
Purpose • 1–1, *page 1*
References • 1–2, *page 1*
Explanation of abbreviations and terms • 1–3, *page 1*

980

*This publication supersedes AR 135–155, dated 24 October 2001.



UNCLASSIFIED

**Contents—Continued**

Responsibilities • 1–4, *page 1*
Approving promotion board recommendations • 1–5, *page 1*
Promotion authority • 1–6, *page 1*
Employment and volunteer work of officers' spouse • 1–7, *page 1*

**Chapter 2**
**Promotion Eligibility and Qualification Requirements,** *page 2*

*Section I*
*General, page 2*
Consideration without board action • 2–1, *page 2*
Service computation • 2–2, *page 2*

*Section II*
*Eligibility for Consideration and General Qualifications for Selection, page 2*
Precedence or relative rank of commissioned officers • 2–3, *page 2*
Date of rank of 1LTs and above on placement on the RASL • 2–4, *page 2*
Eligibility for consideration • 2–5, *page 3*
Inactive and active status • 2–6, *page 3*
Selection criteria • 2–7, *page 3*
Military educational requirements • 2–8, *page 3*
Civilian education requirements • 2–9, *page 4*

*Section III*
*Board Considerations, page 5*
Mandatory selection boards • 2–10, *page 5*
Consideration for promotion to colonel • 2–11, *page 5*
Consideration or promotion to CW5 • 2–12, *page 6*
USAR troop program unit position vacancy selection boards • 2–13, *page 6*
USAR AGR position vacancy selection boards • 2–14, *page 7*
Exceptions • 2–15, *page 9*

**Chapter 3**
**Board schedules and procedures,** *page 10*

*Section I*
*General, page 10*
Convening authority • 3–1, *page 10*
Zone of consideration lists • 3–2, *page 11*
Furnishing records • 3–3, *page 11*
Notice of consideration • 3–4, *page 11*

*Section II*
*Selection Board Procedures, page 12*
Board schedules • 3–5, *page 12*
Responsibilities • 3–6, *page 12*
Selection • 3–7, *page 12*
Composition of selection boards • 3–8, *page 12*
Appointment of recorders • 3–9, *page 13*
Instructions to the board • 3–10, *page 13*
Conduct of board members • 3–11, *page 14*
Information provided to boards • 3–12, *page 14*
Individual communications with the board • 3–13, *page 16*
Method of selection • 3–14, *page 16*
Guidance for the board • 3–15, *page 16*
Selection board recommendations • 3–16, *page 17*

**Contents—Continued**

Removal from a selection board report • 3–17, *page 17*
Removal from a promotion list • 3–18, *page 18*

*Section III*
*Promotion Reconsideration Boards, page 20*
General • 3–19, *page 20*
Information provided to special selection boards • 3–20, *page 21*
Processing requests for special selection board consideration for all Reserve officers nonselected under statutory procedures on or after 1 October 1996 (not applicable to warrant officers) • 3–21, *page 21*
Correction of military records as a result of a special selection board action • 3–22, *page 22*
Processing requests for promotion advisory board consideration • 3–23, *page 22*

**Chapter 4**
**Processing Selection Board Recommendations,** *page 22*

*Section I*
*General, page 22*
Promotion lists • 4–1, *page 22*
Release of selection board reports • 4–2, *page 22*
Change of address or Reserve component status • 4–3, *page 22*
Entry on active duty during promotion consideration • 4–4, *page 23*
Army National Guard of the United States promotion • 4–5, *page 23*
Promotion on transfer • 4–6, *page 23*
Posthumous promotion • 4–7, *page 23*
Promotion after initially being found not qualified • 4–8, *page 23*
Officers selected for promotion • 4–9, *page 23*
Promotion requiring U.S. Senate confirmation • 4–10, *page 24*

*Section II*
*Selected for Promotion, page 24*
General • 4–11, *page 24*
Medical examination • 4–12, *page 25*
Security screening • 4–13, *page 25*
Promotion announcement • 4–14, *page 25*

*Section III*
*Dates of Promotion, page 26*
General • 4–15, *page 26*
Promotion to first lieutenant • 4–16, *page 26*
Promotion eligibility date and date of rank • 4–17, *page 26*
Date of rank and effective date of promotion after an involuntary delay • 4–18, *page 26*
Selection after first nonselection • 4–19, *page 27*
Selection and transfer to the Retired Reserve • 4–20, *page 27*
Effective dates • 4–21, *page 27*

*Section IV*
*Voluntary Delay of Promotion, page 28*
Policy • 4–22, *page 28*
Approval authority • 4–23, *page 28*
Period of voluntary delay • 4–24, *page 28*
Promotion lists • 4–25, *page 28*
Procedures • 4–26, *page 29*
Expiration of voluntary delay period • 4–27, *page 29*
General • 4–28, *page 29*

**Contents—Continued**

*Section V*
*Nonselection for Promotion, page 29*
General • 4–29, *page 29*
Mandatory consideration nonselection policy • 4–30, *page 29*
Not qualified for promotion • 4–31, *page 30*
Nonselection notification procedures • 4–32, *page 30*
Action resulting from nonselection • 4–33, *page 30*
Selective continuation • 4–34, *page 31*

**Chapter 5**
**Issuance of Promotion Commission Certificates,** *page 81*
General • 5–1, *page 81*
Procedures for requesting certificates • 5–2, *page 81*
Promotion ceremonies • 5–3, *page 81*
Frocking • 5–4, *page 81*

**Appendixes**

**A.** References, *page 83*

**B.** Position Vacancy Promotion to the Grade of Colonel of Lieutenant Colonels Previously Not Selected for Promotion by a Mandatory Promotion Board, *page 84*

**Table List**

Table 2–1: Time in grade requirements commissioned officers, other than commissioned warrant officers, *page 9*
Table 2–2: Military educational requirements commissioned officers, other than commissioned warrant officers grade, *page 9*
Table 2–3: Warrant officer time in grade and military education requirements, *page 10*

**Figure List**

Figure 4–1: Format For Furnishing Reserve Selection Board Results To Gaining Command (Selection), *page 33*
Figure 4–2: Format For Furnishing Reserve Selection Board Results To Gaining Command (Nonselection), *page 34*
Figure 4–3: Format For Promotion Memorandum (IRR And IMA Officers, Excluding Commissioned Warrant Officers), *page 35*
Figure 4–3: Format For Promotion Memorandum (IRR And IMA Officers, Excluding Commissioned Warrant Officers) — Continued, *page 36*
Figure 4–4: Format For Promotion Memorandum (Unit Officers, Excluding Commissioned Warrant Officers), *page 37*
Figure 4–4: Format For Promotion Memorandum (Unit Officers, Excluding Commissioned Warrant Officers) — Continued, *page 38*
Figure 4–5: Format for Promotion Memorandum (AGR Officers, Excluding Commissioned Warrant Officers), *page 39*
Figure 4–5: Format for Promotion Memorandum (AGR Officers, Excluding Commissioned Warrant Officers) — Continued, *page 40*
Figure 4–6: Format for Promotion Memorandum as a Reserve Commissioned Warrant Officer of the Army: CW2, CW3, or CW4, *page 41*
Figure 4–6: Format for Promotion Memorandum as a Reserve Commissioned Warrant Officer of the Army: CW2, CW3, or CW4 — Continued, *page 42*
Figure 4–7: Format for Promotion Memorandum as a Reserve Commissioned Warrant Officer of the Army: CW5, *page 43*
Figure 4–7: Format for Promotion Memorandum as a Reserve Commissioned Warrant Officer of the Army: CW5 — Continued, *page 44*
Figure 4–8: Memorandum Format for Notification of Selection for Promotion—AGR Officers to the Grade of CPT, MAJ and LTC, *page 45*
Figure 4–8: Memorandum Format for Notification of Selection for Promotion—AGR Officers to the Grade of CPT, MAJ and LTC — Continued, *page 46*

**Contents—Continued**

Figure 4–9: Memorandum Format for Notification of Selection for Promotion—AGR officers to the grade of COL, *page 47*
Figure 4–9: Memorandum Format for Notification of Selection for Promotion—AGR officers to the grade of COL — Continued, *page 48*
Figure 4–10: Memorandum Format for Notification of Selection for Promotion—AGR Warrant Officers to the Grade of CW3, CW4, *page 49*
Figure 4–10: Memorandum Format for Notification of Selection for Promotion—AGR officers to the grade of COL — Continued, *page 50*
Figure 4–11: Memorandum Format for Notification of Selection for Promotion—TPU Officers to the Grade of CPT, MAJ, LTC, *page 51*
Figure 4–11: Memorandum Format for Notification of Selection for Promotion—TPU Officers to the Grade of CPT, MAJ, LTC — Continued, *page 52*
Figure 4–12: Memorandum Format for Notification of Selection for Promotion—TPU Officers to the Grade of COL, *page 53*
Figure 4–12: Memorandum Format for Notification of Selection for Promotion—TPU Officers to the Grade of COL — Continued, *page 54*
Figure 4–13: Memorandum Format for Notification of Selection for Promotion—TPU Warrant Officers to the Grade of CW3, CW4, *page 55*
Figure 4–13: Memorandum Format for Notification of Selection for Promotion—TPU Warrant Officers to the Grade of CW3, CW4 — Continued, *page 56*
Figure 4–14: Memorandum Format for Notification of Selection for Promotion—Officers Assigned to Control Group (Dual Component), *page 57*
Figure 4–15: Memorandum Format for Notification of Selection for Promotion—CW5, *page 58*
Figure 4–15: Memorandum Format for Notification of Selection for Promotion—CW5 — Continued, *page 59*
Figure 4–16: Format for voluntary promotion delay endorsement—TPU Officer CW2, CW3, CW4, 1LT, CPT, MAJ, LTC, *page 60*
Figure 4–16: Format for voluntary promotion delay endorsement—TPU Officer CW2, CW3, CW4, 1LT, CPT, MAJ, LTC — Continued, *page 61*
Figure 4–17: Format for voluntary promotion delay endorsement—IRR/IMA Officer CW2, CW3, CW4, 1LT, CPT, MAJ, LTC, *page 62*
Figure 4–17: Format for voluntary promotion delay endorsement—IRR/IMA Officer CW2, CW3, CW4, 1LT, CPT, MAJ, LTC — Continued, *page 63*
Figure 4–18: Format for Promotion Declination Endorsement CW2, CW3, 1LT, CPT, MAJ, *page 64*
Figure 4–19: Format for Promotion Declination Endorsement CW4 and LTC, *page 65*
Figure 4–20: Memorandum Format: First Nonselection for Promotion to CW3, CW4, CPT, MAJ and LTC—Reasons Other Than Not Educationally Qualified, *page 66*
Figure 4–20: Memorandum Format: First Nonselection for Promotion to CW3, CW4, CPT, MAJ and LTC—Reasons Other Than Not Educationally Qualified — Continued, *page 67*
Figure 4–21: Memorandum Format: First Nonselection for Promotion to CW3, CW4, CPT, MAJ and LTC—Not Educationally Qualified, *page 68*
Figure 4–21: Memorandum Format: First Nonselection for Promotion to CW3, CW4, CPT, MAJ and LTC—Not Educationally Qualified — Continued, *page 69*
Figure 4–22: Memorandum Format for Second Nonselection for Promotion to CW3 and CW4, *page 70*
Figure 4–22: Memorandum Format for Second Nonselection for Promotion to CW3 and CW4 — Continued, *page 71*
Figure 4–23: Memorandum Format for Second Nonselection for Promotion to CPT, MAJ, and LTC—Continuation Not Authorized, *page 72*
Figure 4–23: Memorandum Format for Second Nonselection for Promotion to CPT, MAJ, and LTC—Continuation Not Authorized — Continued, *page 73*
Figure 4–24: Memorandum Format for Second Nonselection for Promotion to MAJ and LTC—Continuation Authorized, Officer Not Recommended, *page 74*
Figure 4–24: Memorandum Format for Second Nonselection for Promotion to MAJ and LTC—Continuation Authorized, Officer Not Recommended — Continued, *page 75*
Figure 4–25: Memorandum Format for Second Nonselection for Promotion to MAJ and LTC — Continuation Authorized, Officer Recommended, *page 76*
Figure 4–25: Memorandum Format for Second Nonselection for Promotion to MAJ and LTC — Continuation Authorized, Officer Recommended — Continued, *page 77*

**Contents—Continued**

Figure 4–26: Memorandum Format for Nonselection for Promotion to CW5 and COL—Reasons Other Than Not Educationally Qualified, *page 78*
Figure 4–27: Memorandum Format for Nonselection for Promotion to COL—Not Educationally Qualified, *page 79*
Figure 4–27: Memorandum Format for Nonselection for Promotion to COL—Not Educationally Qualified —Continued, *page 80*
Figure 5–1: Recommended format for promotion ceremonies, *page 82*

**Glossary**

## Chapter 1
## Introduction

### 1–1. Purpose

*a.* This regulation prescribes policy and procedures used for selecting and promoting commissioned officers (other than commissioned warrant officers) of the Army National Guard of the United States (ARNGUS) and of commissioned and warrant officers (WO) of the U.S. Army Reserve (USAR). This regulation supports the objectives of the Army's officer promotion system that provides for career progression based on recognition of an officer's potential to serve in positions of increased responsibility. Special provisions that apply to active, retired, and discharged soldiers of the U.S. Army are indicated in paragraph 5-1.

*b.* Commissioned officers appointed to or from assignment to the Army Medical Department (AMEDD), Chaplains (CH), and the Judge Advocate General's Corps (JAGC) will not be promoted if, before promotion, the officer receives a new original appointment with assignment to a branch other than the branch or corps to which assigned when considered for promotion.

*c.* NGR 600-100 and NGR 600-101 govern Federal recognition of State position vacancy promotions of ARNGUS officers and WOs.

*d.* Promotions to chief warrant officer two (CW2), chief warrant officer three (CW3), chief warrant officer four (CW4), or chief warrant officer five (CW5) as a Reserve of the Army will be made by commission by the Secretary of the Army.

### 1–2. References

Required and related publications and prescribed and referenced forms are listed in appendix A.

### 1–3. Explanation of abbreviations and terms

Abbreviations and terms used in this regulation are explained in the glossary.

### 1–4. Responsibilities

*a.* The Secretary of the Army (SA) will serve as the senior official on matters concerning officer promotions. Unless otherwise specified in this regulation, the Assistant Secretary of the Army (Manpower and Reserve Affairs) (ASA (M&RA)) is the designee of the SA.

*b.* The Deputy Chief of Staff, G-1 (DCS, G-1) will serve as the senior Army policy official for the Reserve of the Army officer promotion system and will provide Army supervision of the Reserve of the Army officer promotion policy formulation, procedures, goals, architecture, and standards.

*c.* The Chief, National Guard Bureau (CNGB) and the Chief, Army Reserve (CAR) will recommend desired changes of promotion policy to the DCS, G-1.

*d.* The Judge Advocate General (TJAG) will, on request, review Department of the Army (DA) promotion policy to verify the legality of proposed changes and inquiries.

### 1–5. Approving promotion board recommendations

Promotion boards make recommendations to the President of the United States, who is the approval authority for all commissioned officer (except commissioned warrant officer) promotions. Promotions to the grade of colonel (COL) and approved by the President must be confirmed by the Senate (10 USC 12203(a)). The SA has authority to approve or disapprove promotion board reports for warrant officer promotions and for all selective continuation boards.

### 1–6. Promotion authority

Authority to administratively issue Reserve of the Army promotion memoranda for officers serving in an active status on the Reserve Active Status List (RASL) and USAR warrant officers (to include commissioned warrant officers), serving in an active status, not on the Active Duty List (ADL) is assigned to—

*a.* HRC St. Louis (AHRC-PSP-A), for officers (to include USAR warrant and commissioned warrant officers) under their jurisdiction, except for promotion to CW5.

*b.* CDR, HRC, Office of Promotions, (Reserve Components) (RC), (AHRC-MSL), for—

(1) USAR officers serving on Active Guard Reserve (AGR) status.

(2) Individual Ready Reserve and Control Group Standby Reserve (Active Status List) officers.

(3) USAR officers released from AD in the grade of COL and below, and not under the jurisdiction of an area commander.

(4) USAR officers selected for promotion to CW5.

*c.* Chief, National Guard Bureau, for ARNGUS officers, to include ARNGUS AGR officers.

### 1–7. Employment and volunteer work of officers' spouse

Neither the marital status of an officer by itself, nor the employment, educational pursuits, or volunteer service

activities of the officer's spouse may be considered in determining whether or when to recommend an officer for promotion. Commanders, board members, or others involved in promotion determinations will not consider information in personnel files regarding such factors.

# Chapter 2
# Promotion Eligibility and Qualification Requirements

## Section I
## General

### 2–1. Consideration without board action
An officer in the grade second lieutenant (2LT) or a USAR warrant officer in the grade of WO1 will be considered for promotion without review by a selection board. The officer's records will be screened to determine eligibility for promotion to the next higher grade far enough in advance to permit promotion on the date promotion service is completed (table 2-1 or table 2-3). The records of ARNG unit officers will be screened and promotions accomplished by the CNGB. The records of USAR unit officers will be screened and promotions accomplished by CDR, HRC St. Louis, ATTN: AHRC-PSP. For USAR nonunit and AGR officers, records will be screened and promotions accomplished by CDR, HRC, Office of Promotions, (RC), ATTN: AHRC-MSL.

### 2–2. Service computation
Service requirements listed in tables 2-1 and 2-3 will be computed according to the following—

*a. Warrant officers.* Promotion service is computed based on time-in-grade (TIG) performed in the current permanent WO grade. As of 1 October 1986, service performed in the equivalent temporary (AUS) WO grade held at the time of the individual's most recent appointment in the Reserve of the Army will be credited.

*b. Commissioned officers.* Promotion to captain (CPT) and above requires a minimum number of years TIG. If an officer received service credit for prior commissioned service and/or constructive service credit on appointment, the officer's date of rank was determined under AR 135-100, and therefore controls the computation of the officer's TIG.

## Section II
## Eligibility for Consideration and General Qualifications for Selection

### 2–3. Precedence or relative rank of commissioned officers
*a.* Precedence or relative rank of commissioned officers, whether or not on active duty, is based first on grade. Rank among officers of the same grade is determined by comparing date of rank (DOR). An officer whose DOR is earlier than that of another officer of the same or equivalent grade is senior to that officer. The rules allow determination of precedence and relative rank among different categories of commissioned officers (for example, retired, ADL, and RASL).

*b.* Except as provided in c, below, precedence or relative rank among commissioned officers on the RASL is based on the following criteria, in the order given—

(1) Current grade in which serving on the RASL.

(2) Current DOR.

(3) Previous grade's date of rank or, if the same, the date of rank in an earlier grade.

(4) Previous active status grade relative seniority, if applicable. This rule maintains the relative precedence and seniority, as it existed in a prior service grade.

(5) Total active commissioned service.

(6) Total Federal commissioned service or date of appointment as a commissioned officer.

(7) Date of birth (age takes precedence).

(8) Alphabetical order.

*c.* The governing regulation for establishing DOR for all officers serving on the ADL is AR 600-8-29.

### 2–4. Date of rank of 1LTs and above on placement on the RASL
*a.* An officer's date of rank on original appointment is determined per AR 135-100.

*b.* An officer on the active duty list (ADL) who has been selected for promotion but who has not been promoted by the time the officer transfers to the Reserve active—status list (RASL) in the same competitive category, will be placed on an appropriate Reserve of the Army promotion list. The effective date of promotion and date of rank will be the same as if the officer had been selected to the same grade by a promotion board for RASL officers. However, the Secretary of the Army may set the date of rank if he or she determines an inequity in the foregoing procedure exists.

*c.* Commissioned officers in the grade of 1LT or above who received entry grade credit at the time of their most

CDR, HRC, Chief, Office of Promotions (RC), ATTN: AHRC-MSL-NS, 9700 Page Avenue, St. Louis, MO 63132-5200.

### 3–22. Correction of military records as a result of a special selection board action

If the report of a special selection board, approved by the President, recommends for promotion to the next higher grade an officer not currently eligible for promotion, or a former officer whose name was referred to it, the SA may act through the Army Board for Correction of Military Records (ABCMR) to correct the military record of the officer or former officer to correct an error or remove an injustice resulting from not being selected for promotion by the board which should have considered, or which did consider, the officer (10 USC 14502(e)(3)).

### 3–23. Processing requests for promotion advisory board consideration

*a.* Paragraphs 3-19 through 3-21 also apply to all Reserve officers nonselected for mandatory promotion before 1 October 1996 and all warrant officers, regardless of the date nonselected for promotion to CW3, CW4 or CW5. Promotion consideration and promotion selection requires ABCMR action. A DD Form 149 (Application for Correction of Military Record per Title 10, U.S. Code, Section 1552) will be used to request promotion advisory board consideration.

(1) ARNGUS officers may obtain the DD Form 149 from the Chief, National Guard Bureau, ATTN: NGB-ARP-C, 111 South George Mason Drive, Arlington, VA 22204-1382. The completed DD Form 149 will be forwarded through the Chief, National Guard Bureau for further processing and referral to the CDR, HRC, Chief, Office of Promotions (RC), ATTN: AHRC-MSL-NS, 9700 Page Avenue, St. Louis, MO 63132-5200.

(2) USAR officers may obtain the DD Form 149 from their unit of assignment or by writing to CDR, HRC, Chief, Office of Promotions (RC), ATTN: AHRC-MSL-NS, 9700 Page Avenue, St. Louis, MO 63132-5200. Forward the completed DD Form 149 to the above address for further processing and referral to the ABCMR.

*b.* Nonselection by a promotion advisory board will not be considered a failure of selection unless the officer was considered and not selected by the regularly convened board. In this event, action by the promotion advisory board will be considered confirmation of the action of the regularly convened board.

## Chapter 4
## Processing Selection Board Recommendations

## Section I
## General

### 4–1. Promotion lists

*a.* The names of those officers recommended and approved for promotion are placed on promotion lists published by the Office of Promotions (RC). Separate lists will be published and retained for each mandatory and USAR position vacancy board.

*b.* Only the President may remove from a promotion board report or promotion list the name of an officer erroneously considered and selected for promotion. For warrant officers, the approval authority is the SA.

*c.* An officer who is on a promotion list and is removed from the RASL before the effective date of promotion will not be promoted. A subsequent return to the RASL does not warrant a return to the promotion list. This does not apply if the officer has been placed on the ADL.

### 4–2. Release of selection board reports

*a.* The names of the officers recommended for promotion may be disseminated on or anytime after, the transmittal of the report to the President for approval.

*b.* On final approval of the promotion board report and before the report's formal release, the Office of Promotions (RC) will provide advance notice of the results of mandatory Reserve of the Army promotion selection boards. These reports may be sent to selected Pentagon officials, commanders of major Army commands, and other commands/agencies as appropriate. Premature disclosure of promotion selection board results, except as expressly approved by the SA, is prohibited. Recipients are advised to retain the board results as "close-hold" information until the official established release date. The release date will be announced in an Army-wide message.

*c.* Promotion lists are subject to additional administrative review and are not to be construed as promotion orders. Accordingly, individuals will not assume that the structure of a list or the presence of a name on a list constitutes a firm forecast for promotion.

### 4–3. Change of address or Reserve component status

An officer whose name has been submitted to a mandatory selection board (para 2-10), and who changes residence from one area command to another, or changes status from unit to nonunit, or who moves from ARNGUS to USAR or

USAR to ARNGUS, or who transfers from the RASL to the ADL, will be monitored by the promotion authority submitting his or her name until board consideration is concluded. The losing command will notify the gaining command of the selection board results so that the officer may be informed at the proper time. The names of selected officers will be furnished in the format outlined in figure 4-1. The names of nonselected officers will be furnished in the format outlined in figure 4-2.

### 4–4. Entry on active duty during promotion consideration

*a.* The area commander or the Office of Promotions (RC) will monitor an ARNGUS or USAR officer who enters on the ADL subsequent to mandatory promotion selection (para 2-10). Area commanders will submit the name of the officer and the findings of the selection board to CDR, HRC, Chief, Office of Promotions (RC), ATTN: AHRC-MSL, 9700 Page Avenue, St. Louis, MO 63132-5200 for further action.

*b.* An officer who is not on the ADL and who is ordered to active duty in time of war or national emergency may, if eligible, be considered for promotion by a mandatory Reserve of the Army selection board or a special selection board for not more than 2 years from the date the officer is ordered to active duty unless the President suspends the operation of 10 USC 14317(e).

### 4–5. Army National Guard of the United States promotion

*a.* An ARNGUS officer extended Federal recognition in a higher grade will be appointed in the same grade as a Reserve commissioned officer of the Army by memorandum published by the Chief, National Guard Bureau.

*b.* ARNGUS commissioned officers (other than commissioned warrant officers) who are on a promotion list resulting from a mandatory promotion board will be extended Federal recognition in the higher grade. This will be without examination by a Federal recognition board when the officer is appointed in the State in that higher grade to fill a vacancy in the Army National Guard.

### 4–6. Promotion on transfer

An ARNGUS officer with honorable service who is transferred to the USAR may be transferred in grade to the USAR (10 USC 12213(a)).

### 4–7. Posthumous promotion

*a.* The SA may posthumously promote an officer, to include warrant officer, in the Reserve of the Army. The officer must have been officially recommended for appointment or promotion and approved for promotion by the promotion authority but was unable to accept the appointment or promotion because of death in the line of duty. Therefore, a posthumous promotion may be issued only if the officer was serving on AD, ADT, or engaged in inactive duty training (IDT) at the time of death.

*b.* The SA is the approving authority for posthumous Reserve of the Army promotions. Commanders will furnish the following information through channels and CDR, HRC, Chief, Office of Promotions (RC), (AHRC-MSL), to the SA—

(1) Date and cause of death.

(2) A statement that death was or was not in the line of duty.

(3) The date of official recommendation and selection for promotion.

*c.* No person will receive any bonus, gratuity, pay, or allowance because of a posthumous promotion; however, the officer's name will be carried on military records in the higher grade and that grade may be included on the burial marker in recognition of the officer's lifetime accomplishments and contributions to the nation.

### 4–8. Promotion after initially being found not qualified

An officer found not qualified for promotion to 1LT or CW2 who was retained in an active status (para 4-30) may be promoted if later determined qualified. The promotion will not be earlier than the date the officer is determined qualified for promotion. A memorandum for record will be prepared to explain the later promotion date. A copy of the promotion notice and the memorandum for record will be placed in the officer's Official Military Personnel File (OMPF). A copy of each will be sent to CDR, HRC, Chief, Office of Promotions (RC), ATTN: AHRC-MSL, 9700 Page Avenue, St. Louis, MO 63132-5200.

### 4–9. Officers selected for promotion

*a.* A USAR TPU officer who is considered and selected by a mandatory promotion board will be promoted and transferred from the unit to the IRR. The officer will be promoted within 60 days of receipt of promotion notification or the normal established promotion eligibility date, whichever is later. Transfer to the IRR will not occur when the officer—

(1) Fills a vacancy in the unit in a higher grade.

(2) Is an officer, other than an AMEDD officer (except Medical Corps or Dental Corps officers), retained in the unit in an overstrength status as authorized by AR 140-1.

(3) Is an authorized position per AR 140-10, and—

*(a)* Is an AMEDD officer of either the Medical Corps or Dental Corps assigned to a position up to two grades below the grade to which promoted.

*(b)* Is a Chaplain or Judge Advocate General Corps officer assigned to a position up to one grade below the grade to which promoted.

(4) Requests delay of promotion (para 4-22).

(5) Declines promotion (para 4-28).

*b.* A TPU (or AGR, when authorized) officer who is considered and selected by a position vacancy selection board will not be promoted if he or she transferred from the assignment or attachment before the promotion is accomplished. Nor will the officer be promoted if the vacancy no longer exists due to reorganization. Officers selected for a position vacancy but who are not promoted will be deleted from the recommended list (para 3-18), and will not be considered to have failed of selection for promotion.

*c.* A USAR AGR officer considered and selected by a mandatory promotion board, but who cannot be promoted due to strength and/or position limitations will be forwarded a memorandum from the Chief, Army Reserve that will give the officer two options. The officer can voluntarily leave the AGR program and accept promotion in the higher grade (but not before the date of completion of maximum TIG in the current grade); or the officer can remain in the current grade in the AGR program. Officers who remain in the USAR AGR program will be considered to be in an indefinite involuntary delay status per 10 USC 14311(e) and will remain on the promotion list.

### 4–10. Promotion requiring U.S. Senate confirmation

Officers selected for promotion to the grade of COL will require Senate confirmation (10 USC 12203(a)).

*a.* The Office of Promotions (RC) will produce lists of officers recommended for appointment or promotion to COL by mandatory, position vacancy, special selection, or promotion advisory boards (see chap 3, sec III), or those nominated for promotion to colonel based on selection by a Federal Recognition Board for Federal recognition in that grade. The lists will be forwarded through channels to the U.S. Senate for confirmation.

*b.* HQDA DCS, G-1 (DAPE-MPO) will notify the Office of Promotions (RC) on Senate confirmation. That agency will in turn notify area commanders and CNGB.

## Section II
## Selected for Promotion

### 4–11. General

*a.* An officer who has been recommended for promotion to the next higher grade must meet the requirements listed below before being promoted in the Reserve components. The officer must—

(1) Be on the RASL or, if a WO of any grade, serving in an active status.

(2) Be in the zone of consideration listed in tables 2-1 or 2-3, as appropriate.

(3) Be medically qualified.

(4) Have undergone a favorable security screening.

(5) Meet standards of the Army Body Composition Program (AR 600-9).

(6) Be a satisfactory participant as defined in paragraph 2-7.

*b.* The effective date of the promotion will be computed as prescribed in section III.

*c.* An officer's promotion is automatically delayed when the officer is—

(1) Absent without leave, in custody of or confined by law enforcement authorities (civil or military), a deserter, injured, or sick not in line of duty.

(2) Serving a court-martial sentence or being punished under Article 15, UCMJ. He or she is considered to be serving a sentence or undergoing punishment (including suspended punishments), and therefore nonpromotable, through the last day of any forfeiture or detention of pay, or the date the entire fine is paid (if required). This is even if all other parts of the punishment have been served.

(3) Under undisposed courts-martial charges (that is, the charges have been preferred, but not dismissed or withdrawn, nor has the officer been tried and acquitted or sentenced).

(4) Under investigation that may result in disciplinary action of any kind being taken against them.

(5) Under proceedings that may result in administrative elimination or discharge under other than honorable conditions. This includes resignation for the good of the service.

(6) Under, or should be under, suspension of favorable personnel actions (AR 600-8-2).

(7) The subject of a criminal proceeding pending in a State or Federal court.

(8) The recipient of a referred academic evaluation report, a referred OER, or a memorandum of reprimand (directed for filing in the official military personnel file before the date he or she would otherwise have been promoted) which was not considered by the board that selected them for promotion.

(9) Enrolled in the Army Drug and Alcohol Prevention Control Program.

(10) Documented as overweight as defined in AR 600-9 or has failed the Army Physical Fitness Test (APFT) most recently administered. Or, through his or her own fault (as determined by the first commander who is senior to the officer concerned), has not taken and passed an APFT within the period required. (Officers having a valid permanent or temporary medical profile that, as determined by appropriate medical personnel, precludes administration of the APFT, even in an authorized modified form, are deemed not to have taken the APFT through no fault of their own.)

*d.* A promotion will not be delayed under this paragraph unless the officer is given written notice of the grounds for delay before the intended date of promotion or as soon as possible thereafter. If promotion is delayed, the officer must be given an opportunity to make a written statement to the Secretary of the Army for their consideration.

*e.* Automatic delays under this provision will be resolved within 6 months of the date the officer would have been promoted. An officer's promotion will not be delayed more than 6 months unless the SA, or the Secretary's designee, grants a further delay. The Office of Promotions (RC) will monitor cases involving delay and will grant a further period of delay in cases involving nonpromotable overweight officers and in extraordinary cases. Additionally, a "further period of delay" is deemed to have been granted in any case that has been referred to a promotion advisory board; the delay in such cases extends until final action. In no case may an officer's promotion be delayed more than 90 days after final action in any courts-martial or criminal case against the officer in Federal or State court, or more than 18 months after the date on which the officer would otherwise have been appointed, whichever is later.

*f.* If within 6 months after the effective date of promotion, new information results in a determination by CDR, HRC, Chief, Office of Promotions (RC) that an officer was, on the effective date of the promotion, in a nonpromotable status, that promotion will be deemed to have been automatically involuntarily delayed. In such a case, the officer's promotion is voided and the memorandum announcing the promotion will be revoked. The officer must be immediately notified of this fact. Also, immediate steps will be taken to resolve the case or seek further delay. However, if the determination is made more than 6 months after the effective date of the promotion, the officer will be deemed to have been in a promotable status on the effective date of the promotion and treated as though the involuntary delay had not been imposed. This is unless the officer possessed a nonwaivable statutory disqualification for promotion consideration or selection.

### 4–12. Medical examination

Each Ready Reserve officer is required to undergo a medical examination (AR 40-501) at least once every 5 years. A partial or temporary physical disability resulting from a disease, wound, or injury will not disqualify an officer for promotion.

### 4–13. Security screening

Promotion authorities will ensure that a favorable security screening is completed before announcing a promotion.

*a. Screening.*

(1) The military personnel records Jacket (MPRJ) or Personnel Electronic Management System (PERMS) will be screened to ensure that derogatory or unfavorable suitability information is not contained therein. If the results of this screening are favorable, final promotion action may proceed.

(2) If the screening of the MPRJ or PERMS reveals derogatory or suitability information, the promotion authority will cause a National Agency Check (NAC) to be conducted. Final action of the promotion will be withheld until the results of the NAC are received.

*b. Processing unfavorable information.*

(1) The following procedures apply when suitability or unresolved derogatory information is found in the MPRJ or PERMS, or is received from any other reliable source.

*(a)* Process cases involving unresolved derogatory information of a security nature as prescribed per AR 604-10 and NGR 604-10. The area commander with jurisdiction over the USAR officer will take appropriate action.

*(b)* Cases involving suitability information will be resolved by the CNGB (NGR 604-10) or, for USAR officers, per AR 600-37.

(2) If the information bars promotion, decisions of the CNGB or the evaluation board will be processed as prescribed per AR 135-175 or NGR 635-100. If the information is not a bar to promotion and the officer is otherwise qualified, they will be promoted.

### 4–14. Promotion announcement

Promotion authorities will complete the promotion memorandums (figs 4-3 through 4-15) and distribute them as shown below—

*a. USAR officers.* Send the original copy of the promotion memorandum to the officer through command channels and file copies in the OMPF and the MPRJ. Furnish an additional copy to—

(1) CDR, HRC St. Louis, ATTN: AHRC-PRO-D, 1 Reserve Way, St. Louis, MO 63132-5200 for officers not in the Active Army end strength.

(2) CDR, HRC St. Louis, ATTN: AHRC-OPM-PD, 1 Reserve Way, St. Louis, MO 63132-5200, and Commander,

U.S. Army Enlisted Records Center, ATTN: PCRE-R, Fort Benjamin Harrison, IN 46249-5301 for dual component soldiers (AR 600-39).

*b. ARNGUS officers.* Send the original and two copies of the promotion memorandum to the officer through the adjutant general. Furnish an additional copy to—

(1) Chief, National Guard Bureau, ATTN: NGB-ARP-C, 111 South George Mason Drive, Arlington, VA 22204-1382;

(2) CDR, HRC St. Louis, ATTN: AHRC-PRD-MP, 1 Reserve Way, St. Louis, MO 63132-5200; or

(3) Commander, Total U.S. Army Human Resources Command, ATTN: AHRC-PDI, 200 Stovall Street, Alexandria, VA 22332-0400, for officers in the Active Army end strength.

## Section III
## Dates of Promotion

### 4–15. General

Procedures in section IV will be followed for officers who delay promotion. Follow the procedures in this section in computing effective promotion dates for all other RC commissioned officers serving on the RASL and WOs. do not antedate effective dates of promotion unless required by law.

*a.* Except as noted in subparagraph c below, or in parts of this regulation, the effective date of promotion for commissioned officers (except commissioned warrant officers) may not precede the date on which the promotion memorandum is issued. Do not issue the promotion memorandum before the date the promotion board results are approved and confirmed by the Senate (if required). In addition, the officer must already be assigned/attached to a position in the higher grade or, if an IRR/IMA officer selected by a mandatory promotion board, have completed the maximum years of service in grade in the current grade.

*b. For warrant officers.* The effective date is the later of the date of the promotion memorandum or the day following the date the officer completes the TIG requirements, as in paragraph a, above. A USAR WO, who received AUS promotion while on active duty, will be promoted the day after release from AD to a permanent Reserve grade. The grade will be equal to the highest temporary AUS grade satisfactorily held on AD.

*c. For commissioned officers and warrant officers serving in an AGR status.* Officers serving on AD in an AGR status may be promoted to or extended Federal recognition in a higher grade provided the duty assignment/attachment of the officer requires a higher grade than that currently held by the officer. Effective date of promotion of AGR officers will be as shown in paragraph 4-21. AGR officers who have been selected for promotion and are not assigned/ attached to a position calling for a higher grade will receive a delay of promotion without requesting such action. AGR officers will remain on the promotion list and serve on AD in the AGR program until they are—

(1) Removed from the promotion list under paragraph 3-18.

(2) Promoted to the higher grade following assignment/ attachment to an AGR position calling for the higher grade.

(3) Promoted to the higher grade, if eligible, following release from AD.

### 4–16. Promotion to first lieutenant

A qualified 2LT will not be promoted before the date of completion of 2 years of promotion service. Promotion service of ROTC graduates who accept appointment in May or June of any year is computed from the date of graduation of cadets of the United States Military Academy for that year.

### 4–17. Promotion eligibility date and date of rank

*a. Promotion eligibility date (PED).* The date a WO or 2LT meets the eligibility criteria for promotion to the next higher grade.

(1) WO must meet the mandatory service requirements (table 2-3) and promotion eligibility requirements (chap 2).

(2) In computing the PED for a WO, 1 day will be added to the date established.

(3) 2LTs must meet the TIG requirements (table 2-1) and promotion eligibility requirements (para 2-5).

*b. Date of rank (DOR).* The DOR is the date the officer actually or constructively was appointed or promoted to a specific grade. It is the date used to determine the relative seniority for officers holding the same grade.

(1) A WOs DOR will be used to establish the PED to the next grade.

(2) An officer's DOR will be used to establish TIG requirements to the next grade.

### 4–18. Date of rank and effective date of promotion after an involuntary delay

*a.* Except as provided in paragraph 4-18c below, only the Secretary of the Army is authorized to determine whether an officer was unqualified for promotion during any part of an involuntary delay of promotion. Accordingly, except as provided herein, only the Secretary of the Army may determine whether an adjustment must be made to an officer's date of rank and effective date of promotion.

*b.* Forward requests for an adjustment to date of rank and/or effective date of promotion **through** HRC St. Louis, CDR, HRC, Chief, Office of Promotions (RC), (for AGR and nonunit officers), or CDR, HRC St. Louis, ATTN:

AHRC-PSP-A (for unit officers, to include ARE officers), to the Office of the Secretary of the Army. Include the following information as appropriate for requests for adjustment—

(1) Full explanation of the basis for the delay.

(2) Disposition of the underlying basis. If basis is misconduct/alleged misconduct, include information such as the date the case was closed, type of punishment received, date all punishment will be completed (including all periods of suspension and date all fines were paid).

(3) Other information as provided for in AR 600-8-2.

*c.* HRC St. Louis, CDR, HRC, Chief, Office of Promotions (RC), is authorized to adjust the date of rank and effective date of promotion for an officer whose promotion has been delayed. This is only if the basis for the officer's delay of promotion is as found in paragraphs (1) through (5) below, and a determination is made that the basis for delay no longer exists. Adjustment to the officer's date of rank and effective date must be per the guidance established below. Under paragraph a above, if the basis for an officer's delay of promotion is not as established below, the determination regarding adjustment may only be made by the Secretary of the Army.

(1) Noncompliance with the height/weight standards of AR 600-9; then the DOR and effective date will be the day the officer complies with the standards.

(2) Failure to pass the most recent APFT or failure to take and pass the APFT within the period required by AR 350-1 because of the fault of the officer concerned. The DOR and effective date will be the day the officer passes the APFT.

(3) Disciplinary action under Article 15 of the UCMJ; The DOR and effective date will be the day after all punishment is complete, to include the expiration of any period of suspension.

(4) Any adverse administrative action (for example, memoranda of reprimand). The date of rank and effective date will be the day after the date a filing of determination is made.

(5) The officer's enrollment in and successful completion of the Army Drug and Alcohol Prevention Control Program. The DOR and effective date will be the date the officer would have been promoted had there been no delay.

*d.* For commissioned officers (other than commissioned warrant officers), the DOR and effective date of promotion following an involuntary delay may be earlier than the date of the promotion memorandum. However, it cannot be earlier than the approval date of the board that selected the officer. For warrant officers (including commissioned warrant officers), the DOR and effective date may not be earlier than the date of the promotion memorandum. That is unless the officer concerned obtains correction of his or her records from the Army Board for Correction of Military Records.

### 4–19. Selection after first nonselection

The promotion of an officer selected after having been failed of selection on a first mandatory consideration cannot be earlier than the approval date of the second mandatory board by which the officer is considered (para 4-21).

### 4–20. Selection and transfer to the Retired Reserve

A Reserve officer (other than a commissioned warrant officer), on transfer to the Retired Reserve, will be transferred in the highest grade in which he or she served satisfactorily, as determined by the Secretary of the Army per 10 USC 1370.

### 4–21. Effective dates

Except as provided elsewhere in this regulation, the effective date of promotion may not precede the date of the promotion memorandum. An officer is promoted after selection if all qualifications for promotion are met (chap 2 and para 4-11). When an officer does not meet the qualifications for promotion (para 4-11), the effective date of promotion will not be earlier than the later date all qualifications are met. In no case, will the date of rank or effective date of promotion be earlier than the date the board is approved, or, if required, the date of Senate confirmation.

*a. Promotion of nonunit officers.* The effective date and date of promotion, to include officers recommended on a second or subsequent mandatory board, will be no earlier than the approval date of the board, the date of Senate confirmation (if required), or the date the officer meets maximum TIG, whichever is later. (See d, below for AGR officers.)

*b. Promotion of unit officers.*

(1) Promotion to fill USAR position vacancies (para 2-13). The effective date and date of promotion will be no earlier than the approval date of the board, the date of Senate confirmation (if required), or the date the officer is assigned to the position, whichever is later. If not occupying the position, assignment of selectees to position vacancies will take place immediately on announcement of the results of the board.

(2) Unit officers selected by a mandatory board will have a promotion date and effective date no earlier than the date the board is approved or the date of Senate confirmation (if required), provided they are assigned to a position in the higher grade. When the board approval or, if required, Senate confirmation is before assignment to the position in the higher grade, the effective date and the date of promotion will be the date of assignment to the higher graded

position. If the officer voluntarily delays promotion and is later assigned to a higher graded position during the period of delay, the effective date and date of promotion become the date of assignment to the higher graded position.

*c. Promotion of unit officers selected by mandatory boards who transfer to a nonunit status to accept promotion.*

(1) Officers who transfer from a unit to nonunit status before reaching maximum TIG are promoted effective on attaining maximum TIG.

(2) Officers who transfer from a unit on or after reaching maximum TIG (during a period of voluntary delay) are promoted effective on the date of transfer to a nonunit status.

(3) Officers who transfer from the ARNGUS to USAR nonunit status before reaching maximum TIG are promoted effective on attaining maximum TIG.

(4) Officers who transfer from the ARNGUS to USAR nonunit status on or after reaching maximum TIG are promoted effective on the date of transfer to a nonunit status.

(5) Officers who transfer from the ARNGUS to USAR nonunit status at the expiration of an approved period of delay are promoted effective on the date of transfer.

*d. Promotion of AGR officers.* AGR officers selected by a mandatory board will be promoted provided they are assigned/attached to a position in the higher grade. An AGR officer who is selected for promotion by a mandatory promotion board, but who is not assigned/attached to a position in the higher grade will be promoted on the date of assignment/attachment to a higher graded position or the day after release from AGR status. The date of rank will be the date the officer attained maximum TIG or the date on which assigned/attached to a position in the higher grade, whichever is earlier.

*e. Promotion of officers with maximum TIG before the date of the board.*

(1) If an officer selected by a mandatory promotion board has a maximum TIG date that is before the approval date of the board, the officer's promotion date and effective date will be no earlier than the date of approval of the mandatory board by which recommended or the date of Senate confirmation (if required).

(2) If an officer is selected by a promotion advisory board/special selection board, the officer's date of rank and effective date for pay and allowances would be the same as if the officer had been recommended for promotion to the grade by the mandatory board that should have considered, or that did consider, the officer. Therefore, the officer may have a maximum TIG date that is before the approval date of the promotion advisory board/special selection board that recommended the officer for promotion. Example: Provided Senate confirmation of the 1998 mandatory board result would, if required, have been obtained by that date, an officer with a PED of 4 June 1999, recommended under 1998 mandatory selection board criteria by a 2000 promotion advisory board/special selection board would have a DOR and effective date not later than 4 June 1999.

## Section IV
## Voluntary Delay of Promotion

### 4–22. Policy

Officers who are selected for promotion to the next higher grade may voluntarily request delay of the promotion for a period authorized in this section. Delay beyond the maximum period is not authorized unless approved by DCS, G-1. Request for an exception will not be considered unless the area commander or adjutant general recommends approval. Denial of a voluntary request for delay will not be considered to be a failure of selection for promotion unless the officer declines to accept the promotion. This section does not apply to officers serving in an AGR status (see para 4-15c), to officers selected through the Federal recognition process, or to officers selected by USAR position vacancy boards.

### 4–23. Approval authority

Authority to approve delays of promotion is assigned to—

*a.* Area commanders for USAR unit officers.

*b.* The CDR, HRC St. Louis for nonunit USAR officers.

*c.* State adjutants general for ARNGUS officers.

### 4–24. Period of voluntary delay

*a.* Unless an exception is authorized (see para b, below), the period of delay will not exceed 1–year. The period will be computed from the date on which the officer would otherwise be promoted.

*b.* The period of delay may be extended, in 1-year increments, to a maximum of 3 years from the date on which the officer would otherwise be promoted for—

(1) ARNGUS officers (including technicians), with the consent of the adjutant general.

(2) An officer who is employed as a civilian in a USAR technician position.

### 4–25. Promotion lists

The names of ARNGUS and USAR officers requesting delay of promotion to the next higher grade will be retained on

the promotion list for the maximum period authorized, unless promoted to the grade for which selected or removed under some other provision of law or regulation.

### 4–26. Procedures

Officers recommended for promotion by mandatory selection boards will be notified of their selection. If the officer's request for delay is approved, it will be processed as follows.

*a. Nonunit USAR officers.* The reason and approval date of the delay will be entered on the memorandum of promotion. A copy will be sent to CDR, HRC, Chief, Office of Promotions (RC), ATTN: AHRC-MSL-NP, 9700 Page Avenue, St. Louis, MO 63132-5200 (fig 4–17).

*b. Unit USAR officers.* A copy of the notification, together with the approved endorsement (fig 4-16) delaying the promotion will be sent to CDR, HRC St. Louis, ATTN: AHRC-PAP-A, 1 Reserve Way, St. Louis, MO 63132-5200. The area data processing activity (SIDPERS or equivalent) will be notified of the officer's delay.

*c. ARNGUS officers.* The adjutant general will transmit a copy of the notification, together with a copy of the approved endorsement delaying the promotion. It will be sent through Chief, National Guard Bureau, ATTN: NGB-ARP-C, 111 South George Mason Drive, Arlington, VA 22204-1382, to CDR, HRC, Chief, Office of Promotions (RC) at the address noted in paragraph a, above.

### 4–27. Expiration of voluntary delay period

*a. Unit officers.* If not promoted on or before the end of their maximum authorized voluntary delay period, the officer will either be transferred from the unit and promoted, or decline promotion and be considered to have failed of selection for promotion (nonselect).

*b. Nonunit officers.* If not promoted on or before the end of his or her maximum authorized voluntary delay period, the officer will either be promoted, or decline promotion and be considered to have failed of selection for promotion (nonselect).

### 4–28. General

*a.* The names of officers declining mandatory promotion to the grade of CW5 or COL will be removed from the promotion list (the procedures of para 3-18 do not apply). These officers will continue to be considered by subsequent boards provided they remain eligible. However, LTCs will no longer be considered for position vacancy promotion without the approval of the Secretary of the Army (see app B). This authority will not be further delegated.

*b.* The names of officers declining mandatory promotion to the grades of LTC and below will be removed from the promotion list (the procedures of para 3-18 do not apply). The officer will be considered to have failed of selection for promotion if—

(1) The SA has not authorized voluntary delays of promotion to the grade concerned and the officer declines to accept an appointment to a higher grade.

(2) The SA has authorized voluntary delays of promotion, but has denied the request of the officer for delay of promotion and the officer declines to accept an appointment to the higher grade.

(3) The SA has approved the request of the officer for voluntary delay of promotion and, on the end of the period of delay, the officer then declines to accept an appointment to a higher grade.

*c.* After two failures of selection for promotion, officers in the grades of CW2, CW3, 1LT, CPT, and MAJ will be removed from active status per paragraph 4-33 unless placed on a promotion list or selectively continued or retained under any other provision of law.

## Section V
## Nonselection for Promotion

### 4–29. General

Nonselection by a promotion board is administratively final. If law requires removal from active status, the officer must be removed within the prescribed time limits.

### 4–30. Mandatory consideration nonselection policy

*a. First nonselection.* An initial nonselection for promotion to the next higher Reserve grade will constitute a first failure of selection for promotion to any grade other than CW2, CW5, 1LT, and COL. An officer remaining in an active status following a first failure of selection will again be considered for promotion by the next regularly scheduled board considering that grade and competitive category.

(1) An officer not qualified for promotion to the grade of CW2 or 1LT will not again be considered for promotion unless retained in an active status (para 4-31).

(2) A nonselection for promotion to the grade of CW5 does not constitute a failure of selection for promotion. A CW4 who remains in an active status and meets the criteria for the next announced zone of consideration will again be considered by the next regularly scheduled board for promotion to CW5.

(3) A nonselection for promotion to the grade of COL constitutes a failure of selection for promotion. A LTC who remains in an active status and who continues to remain qualified will continue to be considered by subsequent regularly scheduled mandatory selection boards for the officer's grade and competitive category.

*b. Second nonselection.*

(1) An officer who twice fails to be selected for promotion to the grade of CW3 or CW4 will not be considered again for promotion, and will be removed from active status unless subsequently placed on a promotion list, selected for continuation, or retained under any other provision of law.

(2) An officer who twice fails to be selected for promotion to the grade of CPT, MAJ, or LTC will be removed from active status (see para 4-33) unless subsequently placed on a promotion list, selected for continuation, or retained under any other provision of law.

## 4–31. Not qualified for promotion

*a.* ARNGUS officers in the grade of 2LT and USAR officers in the grades of WO1 and 2LT are considered for promotion without board action (para 2-1). If found not qualified for promotion to the grade of CW2 or 1LT, a final determination will be made by the following—

(1) Area commanders for unit officers and overseas residents.

(2) CDR, HRC St. Louis for all others.

*b.* The names of officers in the grade of 2LT found not qualified for promotion and the reasons for disqualification will be reported to the commander concerned (see para a, above). A memorandum of nonselection, to include eligibility for further consideration while being retained in an active status, will be sent to each officer determined not qualified for promotion. A copy of the memorandum of nonselection will be placed in the officer's MPRJ and OMPF. The officer must be retained on the RASL for a minimum of 6 months after the date he/she would have been promoted had the officer been found qualified. At the end of this 6-month period, a determination will be made as to whether the officer will be discharged or retained in an active status. If the officer is to be discharged he/she will be discharged per AR 135-175 for USAR officers, or NGR 635-100 for ARNG officers. An officer retained in an active status after being found not qualified for promotion to 1LT may be reconsidered for promotion if the reason for disqualification is resolved. An officer disqualified for promotion and later determined qualified will be promoted (para 4-8). The officer, if not discharged or promoted sooner, will be discharged no later than 18 months from the date on which the officer is first found not qualified for promotion, but in no case later than 42 months after the officer's original appointment. Discharge will be made without regard to remaining military service obligation.

*c.* The names of WO in the grade of WO1 found not qualified for promotion and the reasons for disqualification will be reported to the commander concerned (see a above). A determination of whether the WO will be discharged (AR 135-175) or retained in an active status will be made. A memorandum of nonselection, to include a discussion of eligibility for further consideration while being retained in an active status, will be sent to each officer determined not qualified for promotion. A copy of the memorandum of nonselection will be placed in the officer's MPRJ and OMPF. A WO retained in an active status after being found not qualified for promotion to CW2 may be reconsidered for promotion if the reason for disqualification is resolved. A WO disqualified for promotion and later determined qualified will be promoted (para 4-8).

## 4–32. Nonselection notification procedures

The CDR, HRC, Office of Promotions, (RC), (AHRC-MSL), notifies area commanders, CNGB and adjutants general, and CDR, HRC St. Louis of mandatory selection board results. The area commanders (except CDR, HRC St. Louis), CNGB and adjutants general issue and distribute mandatory selection board notification memorandums (figs 4-20 through 4-27) to officers who are not recommended for promotion.

*a.* Officers nonselected will be sent notification on public release of the approved board recommendations.

*b.* The original copy of the memorandum will be sent to an officer through command channels or directly to the officer if he/she is in a nonunit status.

(1) One copy will be filed in the officer's MPRJ.

(2) One copy will be filed in the officer's OMPF.

## 4–33. Action resulting from nonselection

Area commanders, CNGB and adjutants general, and CDR, HRC St. Louis will take necessary removal action as prescribed in this paragraph.

*a. USAR warrant officers in grades CW2 and CW3.* A USAR WO who twice fails to be selected for mandatory promotion to CW3 or CW4 will not again be considered for promotion. Twice nonselected WOs will be transferred to the Retired Reserve (AR 140-10), or discharged (AR 135-175).

*b. First lieutenants.* A 1LT on the RASL who has failed of selection for promotion to CPT for the second time and whose name is not on a list of officers recommended for promotion to CPT, will be removed from active status not later than the first day of the seventh month after the month in which the final approval authority approves the report of

the board which considered the officer for the second time unless the officer can be credited with 18 or more but less than 20 years of qualifying service for retired pay (10 USC 12646, 12647, or 12686).

(1) ARNGUS officers will be processed according to NGR 635-100.

(2) USAR officers will be transferred to the Retired Reserve (AR 140-10), or discharged (AR 135-175).

(3) USAR AGR officers will be processed per AR 600-8-24.

*c. Captains.* A CPT on the RASL who has failed of selection for promotion to MAJ for the second time, whose name is not on a list of officers recommended for promotion to MAJ, and who has not been selected for continuation on the RASL under 10 USC 14701, will be separated unless the officer has a remaining service obligation or can be credited with 18 or more but less than 20 years of qualifying service for retired pay. Separation will be not later than the first day of the seventh month after the month in which the final approval authority approves the report of the board that considered the officer for the second time.

(1) ARNGUS officers will be processed according to NGR 635-100.

(2) USAR officers will be transferred to an inactive status if the SA determines that the officers have skills which are required to meet mobilization needs; to the Retired Reserve (AR 140-10); or, discharged (AR 135-175).

(3) USAR AGR officers will be processed per AR 600-8-24.

*d. Majors.* A MAJ on the RASL who has failed of selection for promotion to LTC for the second time and whose name is not on a list of officers recommended for promotion to LTC, will be separated unless the officer has a remaining service obligation or can be credited with 18 or more but less than 20 years of qualifying service for retired pay. Separation will be on the later of the first day of the month after the month in which the officer completes 20 years of commissioned service, or the first day of the seventh month after the approval date of the promotion board report that nonselected the officer for the second time.

(1) ARNGUS officers will be processed according to NGR 635-100.

(2) USAR officers will be transferred to an inactive status if the SA determines that the officers have skills which are required to meet mobilization needs; to the Retired Reserve (AR 140-10); or, discharged (AR 135-175).

(3) ARNGUS and USAR AGR officers will be processed per AR 600-8-24.

*e. Lieutenant colonels.* Unless continued on the RASL under 10 USC 14701, 14702, or 14703, or can be credited with 18 or more but less than 20 years of qualifying service for retired pay (10 USC 12646, 12647, or 12686), each LTC who is not on a list of officers recommended for promotion to COL will (if not removed earlier from the RASL) be removed from the RASL on the first day of the month after the month in which the officer completes 28 years of commissioned service.

(1) ARNGUS officers will be processed according to NGR 635-100.

(2) USAR officers will be transferred to an inactive status if the SA determines that the officers have skills which are required to meet mobilization needs; to the Retired Reserve (AR 140-10); or, discharged (AR 135-175).

(3) ARNGUS and USAR AGR officers will be processed per AR 600-8-24.

### 4–34. Selective continuation

*a.* An officer twice nonselected for promotion by a mandatory Reserve of the Army selection board must be removed within the prescribed time limits. However, subject to the needs of the Army, officers pending separation because of having twice failed to be selected for promotion to MAJ or LTC, may be selectively continued on the RASL in their present grade. The SA may direct a selective continuation board to consider officers for continuation when required by the needs of the Reserve of the Army. A selective continuation board must recommend the officers for continuation and the SA must approve the recommendation before officers may be continued.

*b.* Selectively continued officers, if otherwise eligible, will continue to be considered for promotion until separation.

*c.* Continuation for CPT and MAJ will normally be for 3 years from the approval date of the selective continuation board by which the officer is recommended for continuation. However, continuation may not extend beyond the date on which the officer completes 20 years of commissioned service (CPT) or 24 years of commissioned service (MAJ). The SA may adjust the period of selective continuation.

*d.* An officer described in a above who has not been selected for continuation will be discharged, or, if eligible and the officer requests, transferred to the Retired Reserve on the expiration of the continuation period established under paragraph c, above, unless on or before that date one of the following has occurred—

(1) The officer has been promoted or is on a list of officers recommended for promotion to the next higher grade.

(2) The officer has been selected again for continuation by a later selective continuation board.

(3) The officer is within 2 years of being eligible to retire under 10 USC 3911 or 12732.

(4) The officer has retired.

(5) The officer was retained under some other provision of law or regulation.

(6) The officer was involuntarily transferred to an inactive status because the Secretary of the Army determined that the officer had skills that were required to meet mobilization needs.

*e.* Unless sooner promoted or retained in an active status under another provision of law, officers retained under

paragraph d(3), above will be transferred to the Retired Reserve when entitled to be credited with sufficient qualifying service for retired pay (if they qualify and apply for transfer) or will be discharged at that time.

*f.* Separation under this paragraph will be involuntary; however, if an officer wishes to retire or be discharged before a selective continuation period expires, he or she may voluntarily request such action. Such a request will be considered voluntary for all purposes.

*g.* Subject to the needs of the Army, officers in the grade of LTC or COL, pending separation for reason of years of service may be selectively continued in an active status in their present grade, but not beyond the date on which the officer completes 33 years of commissioned service (LTC) or 35 years of commissioned service (COL).

Army Regulation 135–200

Army National Guard and Army Reserve

# Active Duty for Missions, Projects, and Training for Reserve Component Soldiers

Headquarters
Department of the Army
Washington, DC
30 June 1999

Unclassified

USAPA EPS - * FORMAL * TF 2.61
08-06-99 09:24:06
PN 1 FILE: rc9.fil

# SUMMARY of CHANGE

135-200
Active Duty for Missions, Projects, and Training for Reserve Component Soldiers

**This change 5--**

o Directs the reader to the authoritative guidance established in AR 600-110, Identification, Surveillance, and Administration of Personnel Infected with Human Immunodeficiency Virus (HIV) pertaining to Human Immunodeficiency Virus (HIV) testing prior to entry on active duty or active duty for training.

**This change 4--**

o Implements provisions of the National Defense Authorization Act for Fiscal Year 1995 (public Law 103-337, 5 Oct 94), which repealed, transferred, or reenacted specific sections of law that impact on provisions of this regulation.

**This change 3--**

o Implemtnets provisions of Public Law 103-337, 5 Oct 94, which repealed, transferred, or reenacted specific section of law pertaining to active duty for training and active duty for special work referenced throughout the regulation.

o Rescinds paragraphs addressing early release from ADT or ADSW and directs the user to the appropriate separation regulations

o Sets forth the annual muster duty requirement

o Reduces unit administration by reducing the ADSW tour justification and approval process

o Rquirres DA DCSPER approval when a soldier with 17 or more years of AFS is Being considered for an ADSW tour

o Clarifies the appropriate use of ADSW and ADT

o Remove the mandatory transfer requirement when unit soldiers volunteer for ADSW which exceeds 1800 days, and makes other technical changes.

**This change 2--**

o Clarifies existing policy in paragraphs 1-1b, 1-4a(1)(c), 1-4b(1)(c), 1-4c(1)(c), 1-5b, 1-6b, 1-6c, 1-6d, 1-7b, 1-7d, 1-7d(6), 1-8a(3), 1-11a(2), 1-11a(4), 1-11a(5.1), 1-11b(9), 1-18b, 3-1b, 4-1b, 4-1c(1), 4-2a, 6-1c, 6-4, 6-4b, 6-6a(9), 6-8a, 6-8d, and 6-8e.

o Eliminates "by name request" for readiness training. ARPERCEN will make selections (para 4-3a(2)).

o Provides that a USAR soldier being ordered to an ADSW tour over 180 days or extended on an ADSW tour which will result in the tour being over 180 days will be reassigned to the IRR (paras 6-1k, 6-7c(10) and fig 6-1).

USAPA EPS - * FORMAL * TF 2.61
08-06-99 09:24:07
PN 2 FILE: rc9.fil

- o Emphasizes requirement to provides milestones for all ADSW tour requests regardless of tour length to include statement of how project or mission will be completed if not completed by termination date of tour (paras 6-4b and fig 6-1).

- o Establishes requirement for all soldiers ordered to ADSW to sign statement printed on DA Form 1058-R which addresses agreement to be released from tour when ADSW order has terminated (paras 6-6c and 6-6d).

- o Revises chapter 7 addressing involuntary active duty and active duty extensions for administration of military justice.

- o Revises DA Form 1058-R to capture statement for signature.



USAPA EPS - * FORMAL * TF 2.61
08-06-99 09:24:07
PN 3 FILE: rc9.fil

Headquarters
Department of the Army
Washington, DC
30 June 1999

**Army Regulation 135–200**

Army National Guard and Army Reserve

# Active Duty for Missions, Projects, and Training for Reserve Component Soldiers

Louis Caldera
*Secretary of the Army*

**History.** This publication was originally printed on 30 June 1989. This electronic edition publishes the basic 1989 edition and incorporates Changes 1, 2, 3, 4 and 5. Change 1 was printed on 1 June 1990 and Change 2 was printed on 1 September 1994. Change 3 to this regulation was printed on 17 June 1996. Change 3 was authenticated by Togo D. West, Jr., Secretary of the Army. Change 4 was printed on 9 November 1998 and was authenticated by Louis Caldera, Secretary of the Army. Change 5 was printed 30 June 1999 and was authenticated by Louis Caldera, Secretary of the Army.

**Summary.** This change implements provisions of the National Defense Authorization Act for Fiscal Year 1995 (public law 103-337, 5 Oct 94), which repealed, transferred, or reenacted specific sections of law that impact on provisions of this regulation.

**Applicability.**
a. This regulation applies to soldiers of the Army National Guard of the United States (ARNGUS) and the U.S. Army Reserve (USAR) not on active duty under AR 135-210; not on a temporary tour of active duty (TTAD), and not in an Active Guard Reserve (AGR) status (AR 135-18). It also applies to Active Army headquarters, commands, and agencies responsible for ARNGUS and USAR soldiers on AT, ADT, ADSW, and IADT.
b. During mobilization, procedures in this publication can be modified to support policy changes as necessary.

**Proponent and exception authority.** The proponent of this regulation is the Deputy Chief of Staff for Personnel (DCSPER). The DCSPER has the authority to approve exceptions to this regulation that are consistent with controlling laws and regulation. The proponent may delegate this approval authority, in writing, to a division chief within the proponent agency in the grade of colonel or the civilian equivalent.

**Army management control process.** This regulation contains management control provisions, but does not identify key management controls that must be evaluated.

**Supplementation.** Supplementation of this regulation and the establishment of command and local forms are prohibited without prior approval from the Commander, U.S. Army Reserve Personnel Command, ATTN: ARPC–ZPO, 1 Reserve Way, St. Louis, MO 63132–5200.

**Interim changes.** Rescinded

**Suggested Improvements.** Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to HQDA, OCAR, ATTN: DAAR-PE, 2400 Army Pentagon, Washington DC, 20310-2400.

**Distribution.** Distribution of this publication is made in accordance with the requirements of the initial distribution number (IDN) 092559 and intended for command levels C, D, and E for Active Army; A, B, C, D, and E for Army National Guard and U.S. Army Reserve.

**Contents** (Listed by paragraph and page number)

**Chapter 1**
**Introduction,** *page 1*
Purpose • 1–1, *page 1*
References • 1–2, *page 1*
Explanation of abbreviations and terms • 1–3, *page 1*
Responsibilities • 1–4, *page 1*
Restriction on tour length • 1–5, *page 1*
End strength accountability • 1–6, *page 1*
Reporting of ADT, ADSW, and TTAD tours exceeding 180 days • 1–7, *page 2*
Requests for approval of ADSW tours exceeding 180 days • 1–8, *page 2*
Training delays and exemption and IADT for ROTC graduates • 1–9, *page 2*
Coordination of training • 1–10, *page 2*
Orders • 1–11, *page 2*
Rescinded • 1–12, *page 4*
Rescinded • 1–13, *page 4*
Rescinded • 1–14, *page 4*
Army Physical Fitness Test (APFT) • 1–15, *page 4*
Uniform Code of Military Justice (UCMJ) • 1–16, *page 4*
Hospitalization or medical care of soldiers serving on AT, ADT, and ADSW • 1–17, *page 4*
HIV testing before reporting for active duty or active duty for training • 1–18, *page 4*

**Chapter 2**
**Travel Time and Dates of Entry and Release from Duty,** *page 4*

*Section I*
*Computing Travel Time, page 4*
Authorized travel time • 2–1, *page 4*
Unauthorized travel time • 2–2, *page 4*

*Section II*
*Dates of Entry and Release from AT, ADT, or ADSW, page 4*
Entry on duty date • 2–3, *page 4*
Reporting date • 2–4, *page 4*
Release from duty date • 2–5, *page 5*



**Unclassified**

USAPA EPS - * FORMAL * TF 2.61
08-06-99 09:24:12
PN 25 FILE: rc9.fil

**Contents—Continued**

Early release • 2–6, *page 5*
Extension of ADT tours • 2–7, *page 5*

**Chapter 3**
**Annual Training and Required Active Duty for Training,** *page 5*
General • 3–1, *page 5*
Unit annual training • 3–2, *page 5*
Individual Mobilization Augmentation training • 3–3, *page 5*
Health Professions Scholarship Program • 3–4, *page 6*
Involuntary and voluntary AT of USAR Control Group (IRR) soldiers • 3–5, *page 6*
Muster duty • 3–6, *page 6*

**Chapter 4**
**Active Duty for Training,** *page 6*
General • 4–1, *page 6*
Selection of soldiers • 4–2, *page 6*
Use of ADT tours • 4–3, *page 6*
ADT without pay • 4–4, *page 7*
ADT requirements for tours and courses • 4–5, *page 7*
Exceptions to general requirements • 4–6, *page 7*
Applying for ADT • 4–7, *page 7*

**Chapter 5**
**Initial Active Duty for Training,** *page 8*
General • 5–1, *page 8*
IADT responsibilities • 5–2, *page 8*
Personnel ordered to IADT • 5–3, *page 8*
ROTC officer trainees • 5–4, *page 8*
Nonprior service enlistees • 5–5, *page 9*
Orders and related details • 5–6, *page 9*

**Chapter 6**
**Active Duty for Special Work,** *page 9*
General • 6–1, *page 9*
Proper use of ADSW tours • 6–2, *page 9*
Tour criteria • 6–3, *page 10*
Tour justification • 6–4, *page 10*
Approval authority • 6–5, *page 10*
Eligibility requirements • 6–6, *page 10*
ADSW tour length • 6–7, *page 11*
Status while on ADSW • 6–8, *page 11*
Separation documents • 6–9, *page 11*

**Chapter 7**
**Involuntary Active Duty and Active Duty for Training for Administrative of the Uniform Code of Military Justice,** *page 13*

*Section I*
General • 7–1, *page 13*
Scope • 7–2, *page 13*

*Section II*
*Retention on Active Duty or Active Duty for Training, page 14*
Retention on AD or ADT while on self-terminating orders • 7–3, *page 14*
Reason for retention • 7–4, *page 14*
Orders • 7–5, *page 14*
Disposition of soldiers following court adjournment • 7–6, *page 14*

*Section III*
*Order to Active Duty for Administration of Uniform Code of Military Justice, page 14*
Involuntary order to active duty • 7–7, *page 14*
Purpose • 7–8, *page 14*
Involuntary active duty orders • 7–9, *page 14*
Failure to report for AD • 7–10, *page 15*
Disposition of soldiers following court adjournment • 7–11, *page 15*
UCMJ Jurisdiction • 7–12, *page 15*

**Chapter 8**
**Disposition of Individual Soldiers on Active Duty (AT, IADT, ADT, and ADSW) at time of Mobilization,** *page 16*
Purpose • 8–1, *page 16*
Responsibility • 8–2, *page 16*
ARNGUS and USAR unit personnel on AT, ADT, IADT, and ADSW • 8–3, *page 16*
IMAs on AT, ADT, and ADSW • 8–4, *page 16*
IRR soldiers on AT, ADT, IADT, or ADSW • 8–5, *page 16*
Soldiers in specialized medical training • 8–6, *page 16*

**Appendixes**

**A.** References, *page 17*

**B.** Letter of Instruction (See para 1–11f for use by orders issuing authority.), *page 18*

**Table List**

Table 1–1: Distribution of training orders, *page 3*
Table 4–1: Where to send DA Form 1058–R, *page 8*
Table 6–1: A Guide to the types of duty tours performed in ADT and ADSW status [1] (See notes.), *page 11*

**Figure List**

Figure 6–1: Sample for preparing ADSW tour request, *page 12*
Figure 7–1: Affidavit of Service by Mail, *page 15*



USAPA EPS - • FORMAL • TF 2.61
08-06-99 09:24:12
PN 26 FILE: rc9.fil

# Chapter 1
# Introduction

## 1–1. Purpose

*a.* This regulation prescribes policies and procedures For ordering Army National Guard of the United States (ARNGUS) and United States Army Reserve (USAR) soldiers to--

(1) Annual training (AT).
(2) Active duty for training (ADT).
(3) Initial active duty for training (IADT).
(4) Active duty for special work (ADSW).

*b.* As used in this regulation, Major Army Commands (MACOMs) are identified as—

(1) U.S. Forces Command (FORSCOM).
(2) U.S. Army Training and Doctrine Command (TRADOC).
(3) U.S. Army Pacific (USARPAC).
(4) U.S. Army Europe and Seventh Army.
(5) U.S. Army South (USARSO).
(6) ***(Rescinded.)***
(7) U.S. Army Special Operations Command (USASOC).

## 1–2. References

Required and related publications and prescribed and referenced forms are listed in appendix A.

## 1–3. Explanation of abbreviations and terms

Abbreviations and special terms used in this regulation are explained in the consolidated glossary.

## 1–4. Responsibilities

*a.* The Director, Army National Guard (DARNG) will—

(1) Be final approval authority for any ADSW tour by an ARNGUS soldier when one of the conditions in (*a*) through (*c*) below exists. This authority will not be further delegated.

*(a)* The tour exceeds 180 days.

*(b)* The tour will result in the soldier being ordered to a combined total of over 180 days of ADSW within a fiscal year (FY).

*(c)* The tour will result in the soldier being ordered to any combination of ADSW and Temporary Tours of Active Duty (TTAD) (AR 135–210) totaling over 180 days within an FY.

(2) Have waiver authority for the 60–day break required by paragraph 6–6.

(3) Assign qualified ARNGUS soldiers to fill approved positions and issue ADSW orders except as stated in chapter 6. This authority may be delegated to State adjutants general (AG).

(4) Establish and implement the accounting procedures for ARNGUS soldiers on ADSW who must be counted in the ARNGUS Active Guard Reserve (AGR) end strength.

(5) Report quarterly to HQDA (DAPE–MPE) the number of ARNGUS soldiers who have been ordered to or who have served over 180 days (including travel time) of ADSW and/or TTAD within the current FY.

(6) Report annually to HQDA (DAPE–MPE) the number of ARNGUS soldiers who have been ordered to or who have served over 180 days (including travel time) of ADT during the previous FY. (AT performed under title 32, U.S. Code is not reportable.)

*b.* The Chief Army Reserve (CAR) will—

(1) Be final approval authority for any ADSW tour by an Individual Ready Reserve (IRR) soldier when one of the conditions described in (*a*) through (*c*) below exists. This authority will not be further delegated.

*(a)* The tour exceeds 180 days.

*(b)* The tour will result in the soldier being ordered to a combined total of over 180 days of ADSW within an FY.

*(c)* The tour will result in the soldier being ordered to any combination of ADSW and TTAD totaling over 180 days within an FY.

(2) Have waiver authority for the 60–day break required by paragraph 6–6.

(3) Report quarterly to HQDA (DAPE–MPE), the number of IRR soldiers who have been ordered to or who have served over 180 days (including travel time) of ADSWand/or TTAD within the current FY.

(4) Report annually to HQDA (DAPE–MPE) the number of IRR soldiers who have been ordered to or who have served over 180 days (including travel time) of ADT during the previous FY.

(5) Establish and implement accounting procedures for IRR soldiers on ADSW who must be counted in the USAR Active Guard Reserve (AGR) end strength.

*c.* The MACOM commander will—

(1) Be final approval authority for any ADSW tour by an assigned USAR troop program unit (TPU) soldier when one of the conditions described in (*a*) through (*c* ) below exists. This authority will not be further delegated.

*(a)* The tour exceeds 180 days.

*(b)* The tour will result in the soldier being ordered to a combined total of over 180 days of ADSW within an FY.

*(c)* The tour will result in the soldier being ordered to any combination of ADSW and TTAD totaling over 180 days within an FY.

(2) Have waiver authority for the 60–day break required by paragraph 6–6.

(3) Report quarterly to HQDA (DAPE–MPE), the number of assigned USAR TPU soldiers who have been ordered to or who have served over 180 days (including travel time) of ADSW and/or TTAD within the current FY.

(4) Report annually to HQDA (DAPE–MPE) the number of assigned USAR TPU soldiers who have been ordered to or who have served over 180 days (including travel time) of ADT during the previous FY.

(5) Establish and implement, in coordination with OCAR, accounting procedures for TPU soldiers on ADSW who must be counted in the USAR AGR end strength.

*d.* The commanders listed below will have orders issuing authority as specifically prescribed in chapters 3 through 6.

(1) Major Army command (MACOM) commanders.
(2) Commanding General, U.S. Army Reserve Personnel Command (CG, AR-PERSCOM).
(3) DARNG.
(4) State adjutants general.
(5) Major U.S. Army Reserve command (MUSARCs) commanders.
(6) Area commanders.
(7) Military Entrance Processing Stations (MEPS) commanders.

## 1–5. Restriction on tour length

An ARNGUS or USAR soldier will not be placed on or extended on an ADSW tour under this regulation without prior approval as prescribed in paragraph 1–8 if—

*a.* The duties or milestones exceed 180 days. This limitation also applies to extensions of existing ADSW tours.

*b.* The new or extended tour will result in the soldier being ordered to over 180 days of ADSW within an FY or any combination of ADSW and TTAD totaling over 180 days within an FY.

## 1–6. End strength accountability

*a.* For the purpose of end strength accounting under this regulation, compilation of tour days must include travel time.

*b.* Unless HQDA (DAPE–MPE) approves exemption, an ARNGUS or USAR soldier will be counted against the appropriate AGR end strength if any one of the following conditions is met:

(1) Soldier is on or has been ordered to an ADSW tour exceeding 180 days and is on ADSW on 30 September.

(2) Soldier will accumulate over 180 days of ADSW within an FY and is on ADSW on 30 September.

(3) Soldier will accumulate any combination of ADSW and TTAD totaling over 180 days within an FY and is on ADSW on 30 September.

*c.* An ARNGUS or USAR soldier who is on a TTAD exceeding 180 days or who has been ordered to over 180 days of TTAD or any combination of ADSW and TTAD totaling over 180 days within an FY and is on a TTAD on 30 September will be counted in

the Active Army (AA) end strength. CG, U.S. Total Army Personnel Command (CG, PERSCOM) will establish and implement procedures to account for soldiers who must be counted in the AA end strength under this paragraph.

*Note.* Accountability under this paragraph is not to be interpreted to mean the soldier gains AGR or AA status. Soldiers meeting the criteria of paragraph *b* or *c* above must be counted in the appropriate end strength report submitted to Congress each fiscal year.

### 1–7. Reporting of ADT, ADSW, and TTAD tours exceeding 180 days

*a.* For the reporting requirements of this regulation, compilation of tour days must include travel time.

*b.* Approval authorities (para 1–8) will report quarterly to HQDA (DAPE–MPE) the number of soldiers by name and social security number who must be counted in the AGR or AA end strength. Soldiers not accounted for in paragraph 1–6 who have been ordered to or have served over 180 days of ADSW , TTAD , or any combination of ADSW and TTAD totaling over 180 days within the current FY must also be reported to HQDA. (See *d* below for reporting categories.) Reports are due the last working day of the first month of each quarter.

*c.* Soldiers who exceed a 180–day accumulation of ADT and/or IADT within an FY must also be reported to HQDA (DAPE–MPE). Approval authorities (para 1–8) will submit an annual report (NLT 1 December) of the number of soldiers under their jurisdiction who have been ordered to or who have served over 180 days of ADT and/or IADT in the previous FY. (See *d* below for reporting categories.)

*d.* Soldiers not counted in the AGR or AA end strength who accumulate over 180 days of ADSW, ADT, TTAD, or any combination of ADSW, and TTAD totaling over 180 days within an FY will be reported in one of the categories of (1) through (6) below.

(1) *Recruit and specialized training.*

*(a)* All enlisted initial entry training (IET) where basic and advanced individual training (AIT) combined will exceed 180 days.

*(b)* Split IET where AIT exceeds 180 days.

*(c)* Military occupational specialty (MOS), Specialty Skill Identifier (SSI) (also known as area of concentration (AOC)), or ASI producing training, other than IET, that exceeds 180 days, i.e. Special Operations (Special Forces, Civil Affairs, PSYOPS), Military Intelligence, medical, or signal school.

*(d)* Language training.

*(e)* Any of the above plus indoctrination training that results in an accumulation of more than 180 days.

(2) *Flight training.*

*(a)* For officers, this includes aviation branch and AOC 67J, warrant officer aviators.

*(b)* Officers who will go to the officer basic course (OBC) then into flight training.

*(c)* Enlisted personnel in career management field (CMF) 67.

*(d)* Any of the above plus indoctrination training if total training exceeds an accumulated total of 180 days.

(3) *Professional training at military institutions.* This includes training such as—

*(a)* Officer advance course.

*(b)* Command and General Staff College.

*(c)* Army War College.

*(d)* Specialized medical training.

(4) *Professional training at civilian institutions.* This includes training at any approved civilian institutions.

(5) *Officer acquisition training.* This includes OBC and officer candidate school (OCS) soldiers with follow–on training (to include indoctrination training) that exceeds 180 days.

(6) *Other active duty.* This includes soldiers who exceed a cumulative total of 180 days or more of ADSW, TTAD, or any combination of ADSW and TTAD totaling over 180 days within an FY, but are not accounted for in one of the above categories, the AGR end strength, or the AA end strength (para 1–6).

### 1–8. Requests for approval of ADSW tours exceeding 180 days

*a.* This paragraph applies to soldiers being ordered to ADSW tours or extensions of these tours which will—

(1) Exceed 180 days.

(2) Result in the soldier being ordered to over 180 days of ADSW within an FY.

(3) Result in the soldier being ordered to any combination of ADSW and TTAD totaling over 180 days within an FY.

*b.* To ensure compliance with the law and accuracy in accounting and reporting (paras 1–6 and 1–7), tours described above are not authorized without the following approval: (Approval authorities may further delegate this authority only as designated in para 1–4.)

(1) DARNG for ARNGUS soldiers.

(2) CAR for IRR soldiers.

(3) MACOM commander for assigned USAR TPU soldiers.

*c.* Requests will be sent through command channels to the appropriate approval authorities in *b* above. Requests will—

(1) State source of funding.

(2) Identify the AGR position to remain vacant during the ADSW tour, when appropriate (para 1–6).

(3) Identify the proper reporting category of paragraph 1–7 if the soldier is not counted in the AGR end strength.

### 1–9. Training delays and exemption and IADT for ROTC graduates

*a.* To order Reserve Officers' Training Corps (ROTC) graduates to IADT, follow the procedures in AR 140–9.

*b.* To delay or exempt personnel from entry on ADT or IADT, follow the procedures in AR 601–25.

### 1–10. Coordination of training

*a.* State AGs will coordinate with the DARNG concerning allocations, reporting dates, and other administrative matters relating to ADT, IADT, and ADSW.

*b.* Before issuing ADT or IADT orders for formal courses of instruction, the authorizing command will assure that the proper allocation for such training has been approved.

*c.* Before issuing ADT orders for other than formal courses of instruction, the authorizing commander will get approval of the element sponsoring training for the soldier concerned.

### 1–11. Orders

Orders for U.S. Army Reserve (USAR) soldiers will be prepared according to this regulation and AR 310–10. Orders for Army National Guard of the United States (ARNGUS) soldiers will be prepared per NGR 310–10, NGR 600–100, NGR 600–200, and this regulation.

*a. Authority.*

(1) The authorities in (*a*) through (*f*) below will issue AT, ADT, and IADT orders for ARNGUS and USAR soldiers under their jurisdiction and within funds availability priority limits.

*(a)* MACOM commanders.

*(b)* MUSARC commanders.

*(c)* Area commanders.

*(d)* State AGs.

*(e)* CG, ARPERCEN.

*(f)* MEPS commanders.

*(g)* Subordinate commanders specifically delegated authority by the authorities noted in (*a*) through (*f*) above.

(2) ADT may be performed by ARNGUS and USAR soldiers with the pay and allowances provided by law, or with the specific consent of the soldier concerned without pay when circumstances of paragraph 4–4 exist. Duty without pay will be considered for all purposes other than pay, as if it were duty with pay. Orders for soldiers to perform ADT without pay may be issued by ARPERCEN for IRR and IMA soldiers; the appropriate MUSARC for TPU soldiers; or the State AG for ARNGUS soldiers.

*Note.* ADT without pay is ADT without basic pay. Travel pay and allowances are authorized except for key personnel assigned to the Standby Reserve (Active Status List).



USAPA EPS - * FORMAL * TF 2.61
08-06-99 09:24:08
PN 5 FILE: rc9.fil

(3) At the request of DARNG, State AGs may issue ADSW orders.

(4) MACOM commanders (for TPU soldiers) and CG, ARPERCEN (for IRR and IMA soldiers) may issue ADSW orders for USAR soldiers under their jurisdiction. FORSCOM may delegate this authority consistent with paragraph 6–5*d*.

(5) ADT, IADT, and ADSW orders will clearly cite section 12301(d), title 10 U.S. Code (10 USC 12301(d)) as the authority for ordering a soldier to active duty.

(6) AT orders for USAR units will clearly cite 10 USC 12301(b) as the authority for periods of AT.

(7) AT orders for ARNGUS units will cite 32 USC 502(a) as the authority for periods of AT. This is unless such unit's AT will be performed outside the United States or its territories. AT orders for ARNGUS units performing training outside the United States or its territories will cite 10 USC 12301(b) as the authority.

**Table 1–1**
**Distribution of training orders**

| Recipient | Number of copies: AT For Control Group Members | Number of copies: All Other Training |
|---|---|---|
| Member | 10 | 10 |
| Unit of attachment | 1 | 2 |
| Appropriate State adjutant general when attached to an ARNGUS unit | 1 | 2 |
| Fiscal officer whose funds are chargeable | 1 | 2 |
| Intermediate commander when medical fitness exam is required | — | 5 |
| Reception station commander or commander of IADT attachment (with SF 88 (Report of Medical Examination) and SF 93 (Report of Medical History) if appropriate) | — | 7 |
| Commander of the soldier's assigned USAR unit | — | 5 |
| Area commander having administrative jurisdiction over the soldier | — | 2 |
| Area commander of the training station when trained in a different area command | — | 2 |
| Proponent agency for Individual Mobilization Augmentees | — | 2 |
| School commandant where MOS course is conducted | — | 2 |
| MPRJ when orders are for 90 or more days of training (destroy extra copies after training) | — | 10 |

(8) AT orders for individual USAR soldiers will clearly cite 10 USC 10147 as the authority for periods of AT.

(9) Soldiers on AT, ADT, IADT, and ADSW orders under 10 USC are subject to the Uniform Code of Military Justice (UCMJ). ARNGUS soldiers on AT orders under 32 USC, are not subject to UCMJ; however, they are subject to the military code of the State or Territory of whose National Guard they are soldiers.

(10) Tours governed by this regulation are typically of short duration. Orders which place a soldier on active duty specify that release will occur at the end of the tour. None of the following provisions will apply to soldiers who come within 2 years of retirement eligibility during a period of AT, ADT, or IADT (10 USC), or AT(32 USC):

*(a)* The "sanctuary" provisions of 10 USC 12686.

*(b)* Release procedures contained in AR 600-8-24, paragraph 2-25e(2); or

*(c)* Any other requirements for retention.

*b. Required information.* Prepare AT, ADT, IADT, and ADSW orders according to standard formats in AR 310–10, and NGR 310–10. Include the—

(1) *Permanent home address.* The permanent home address (home of record) is the actual place in which the soldier lives. This is different from a temporary address or the address of a person or institution used for forwarding purposes only. The place listed as the permanent home address will constitute the "home" or "home of record" as used in Joint Federal Travel Regulations (JFTR) and the Department of Defense Military Pay and Allowances Entitlements Manual (DODPM). Orders issuing agencies may correct a home of record by amendment if it will be published before the soldier enters on duty. Orders will not be amended after the soldier enters on duty unless approved by DARNG or CG, ARPERCEN, as applicable.

(2) *Length of training.* Express length of training in days (i.e. 12 days or 120 days). The period of training will not include travel time to or from the duty station.

(3) *Reporting date and time.* Show the reporting date and time of day on the order but not the effective date of entry on duty. A "first day of training date" will also be shown in AT orders. (See chap 2, sec I for travel information and sec II for dates of entry and release from ADT or AT.)

(4) *Military Personnel Records Jacket, U.S. Army (MPRJ) mailing address.* Specify the mailing address on the order where the MPRJ will be sent when a soldier is ordered to active duty for 90 days or more. Also specify in the order the statement "MPRJ will be forwarded per AR 640–10 to the Personnel Service Center (unit and address) for administration while on ADT or ADSW." Return the MPRJ to the ARNGUS or USAR record's custodian when the training tour ends.

(5) *Accounting information.*

(6) *Type of duty to perform.* Type of duty to be performed (i.e. AT, ADT, IADT, or ADSW.)

(7) *Consent for ADT, IADT, or ADSW.* Insert the words "with consent of the soldier" after the authority lead line when training is voluntary. Consent for IADT is understood when a soldier volunteers for enlistment or appointment. In ordering ARNGUS soldiers to periods of ADT, IADT, or ADSW, the consent of the Governor or other appropriate State or territorial authority is understood but will be included in the order as shown in AR 310–10.

(8) *Waiver statement for exceeding 180 days of ADSW or ADSW and TTAD combined within an FY.* When applicable, orders will contain the following statement in "Additional Instruction"

(9) *Waiver.* An ADSW order requires a waiver if ADSW is scheduled in the first 2 months of the FY and the soldier has not had a break of 60 continuous calendar days following the last day of an ADSW tour or TTAD in the previous FY. This waiver of the 60–day break rule is needed only when the soldier has accumulated more than 30 days of ADSW, TTAD, or any combination of ADSW and TTAD totaling over 30 days during the last quarter of the

previous FY. If waived, the following statement will be placed in "Additional Instructions"

*c. Unauthorized entries.* The following entries will not be included on training orders:

(1) Travel by privately owned vehicle (POV) for IADT tours.

(2) Temporary duty pending further orders (TDPFO).

*d. Distribution.* When possible, send the soldier enough copies of training orders 30 days before the reporting date as shown in table 1–1. Make other distribution per AR 310–10, NGR 310–10, and as required by DARNG, area commanders, or CG, ARPERCEN. !

*e. Amendment or revocation.* Publish amended or revocation orders as soon as possible, using the format shown in AR 310–10 and NGR 310–10. Distribute amendments or revocations in the same manner as the original order. An exception is that the "member concerned" copy will not be shown on the distribution if death is the reason for amending or revoking orders.

*f. Individual instructions.* Orders issuing authorities will furnish an information sheet containing travel, transportation, and other pertinent information with each soldier's IADT, ADT, AT, and ADSW orders. A letter of instructions (app B), which may be modified or supplemented, will be used by the orders issuing authority as a guide in preparing local information sheets.

*g. Security clearance.* Order issuing authority will place the appropriate security clearance on the IADT (when available), ADT, AT, or ADSW order. Gaining command will verify security clearance of the ARNGUS or USAR soldier with the order issuing authority's security manager per AR 380–5, paragraph 7–100.

### 1–12. Rescinded

### 1–13. Rescinded

### 1–14. Rescinded

### 1–15. Army Physical Fitness Test (APFT)

The Army's physical fitness training and testing policy for all ARNGUS and USAR soldiers is prescribed by AR 350–41, (Training in Units), chapter 9. This regulation gives detailed instructions regarding test standards, frequency of testing, and exceptions to testing requirements.

### 1–16. Uniform Code of Military Justice (UCMJ)

*a.* All soldiers reporting for AT, ADT, or ADSW in Federal status (title 10 USC) are subject to UCMJ jurisdiction.

*b.* UCMJ training may be required according to article 137 UCMJ.

### 1–17. Hospitalization or medical care of soldiers serving on AT, ADT, and ADSW

AR 135–381 regulates hospitalization and medical care of RC soldiers serving on AT, ADT, and ADSW.

### 1–18. HIV testing before reporting for active duty or active duty for training

*a.* In accordance with AR 600-110 (Identification, Surveillance, and Administration of Personnel Infected with Immunodeficiency Virus (HIV)), all ARNGUS and USAR soldiers must have received Human Immunodeficiency Virus (HIV) testing prior to entry on active duty or active duty for training. AR 600-110 also provides the statement that must be entered on the active duty or active duty for training orders when the testing cannot be accomplished within the prescribed timeframe.

*b.* ARNGUS and USAR soldiers scheduled for tours of 30 days or less (including travel time) must have an HIV test within 24 months before reporting date. (Negative HIV test results are required for a soldier located in CONUS to perform a tour of duty OCONUS (see AR 600–110).

*c.* AR 600–110 (Identification, Surveillance, and Administration of Personnel Infected with Human Immunodeficiency Virus (HIV)) provides details of HIV testing requirements and required statement on orders when screening cannot be done in the timeframes of *a* and *b* above.

## Chapter 2
## Travel Time and Dates of Entry and Release from Duty

### Section I
### Computing Travel Time

### 2–1. Authorized travel time

Travel time will be determined by referring to AR 37–106; Joint Federal Travel Regulation (JFTR), chapters 3, 4, and 5; and DODPM, part one, section E.

### 2–2. Unauthorized travel time

Soldiers residing within commuting distance of the reporting duty site are not entitled to travel time from their home to the first duty station. This also applies from the duty station to their home. These soldiers will begin travel and be entitled to receive pay on the same date as the reporting date shown on their orders. The date on which pay begins will not be earlier than the reporting date. The installation or activity commander will determine commuting distance on the basis of local practice, distance, travel time, and available modes of transportation.

### Section II
### Dates of Entry and Release from AT, ADT, or ADSW

### 2–3. Entry on duty date

The date of entry on duty will not be shown on orders. It will be determined by the installation or activity commander at the initial station of attachment as stated in this regulation and DODPM. (A first day of training date will be shown on AT orders to assist installation commanders in computing the number of days the soldier is required to train.)

*a.* Unless residing within commuting distance, the date of entry on duty is the date the soldier officially begins travel.

*b.* For a soldier residing within commuting distance, the date of entry will be the same as the reporting date shown on the orders. These soldiers are not authorized to report for duty earlier than the reporting date shown on their orders.

### 2–4. Reporting date

The reporting date will be specified in orders and will not be

employer is aware of the requested training. If soldier is self–employed or unemployed, a statement to this effect is acceptable.

**Table 4–1**
**Where to send DA Form 1058–R**

| Applications submitted by or for— | Will be submitted |
|---|---|
| TPU soldier | Through unit commander to appropriate area commander. |
| IRR soldier attached to RTU | Through unit commander and MUSARC to CG, ARPERCEN. |
| IRR soldier | Cdr, ARPERCEN, ATTN: ARPC–OPM–A (Officer), or ARPC–EP (Enlisted). |
| IMA soldier | Through IMA proponent agency organization to Cdr, ARPERCEN, ATTN: ARPC–MOI–S. |
| Medical school student | Cdr, AR-PERSCOM, ATTN: ARPC–OPS–O. |
| Divinity student of Chaplain Candidate Program | Cdr, ARPERCEN, ATTN: ARPC–ZCH. |
| Members of Congress | Cdr, ARPERCEN, ATTN: ARPC–OPM–A. |
| CONUS tours | MUSARC. |
| HQDA tours | Cdr, ARPERCEN, ATTN: ARPC–OPM–A. |
| ARNGUS soldiers | Through appropriate State AG to DARNG. |
| Joint and International Activities | Through supporting MACOM to Cdr, ARPERCEN, ATTN: ARPC–OPM–A (Officer) or ARPC–EP (Enlisted). |

*b. Additional DA Form 1058–R requirements.*

(1) Height will be to the nearest 1/2–inch. Weight will be to the nearest pound. Height and weight measurements will be in standard PT uniform (gym shorts and T–shirt, without shoes.) (Applications from soldiers whose weight exceeds the maximum shown in AR 600–9, table 1 (Weight for Height Table) will be disapproved unless accompanied by a completed DA Form 5500–R (Body Fat Content Worksheet—Male) or DA Form 5501–R (Body Fat Content Worksheet—Female) verifying the soldier is in compliance with Army body fat standards. (See AR 600–9 for local reproduction and completion instructions for these forms.)

(2) An applicant assigned to the Standby Reserve (Active List) will enter the following statement in the remarks section of DA Form 1058–R: "Duty will be performed for retirement point credit only (no pay, travel pay, or other allowances authorized)."

(3) A non–unit soldier selected to participate in rifle or pistol marksmanship competition must submit a DA Form 1058–R to the area command headquarters having jurisdiction over the soldier's State of residence. The area commander will specify the funds to cover the cost of ADT.

(4) A soldier applying for ADT to be performed in a location other than the United States, its Territories, the Federal Republic of Germany, the Republic of Korea or Panama must obtain a statement from the training activity. The statement must indicate that training in the soldier's specific military skill will be provided. The statement will be entered in the remarks section of DA Form 1058–R.

(5) Officers applying for courses of instruction of more than 15 consecutive days of ADT will enter the following statement in the remarks section of DA Form 1058–R: "I understand that I must stay in the Ready Reserve for at least 2 years after I complete this course." Officers assigned to USAR Control Group (Reinforcement) will also enter: "I will accept assignment to a troop program unit or Individual Mobilization Augmentation position, if offered."

(6) The unit commander will certify the accuracy of the tour history provided by a TPU soldier by signing item 34 of the DA Form 1058–R. The purpose of this requirement is to ensure the accuracy of the number of days of active duty a soldier accumulates. ADT tour day totals will not exceed limits established by this regulation (paras 4–1*d* and 4–3). (Note: For ADSW tours scheduled within the first 2 months of an FY, the tour history certified by the commander will show that the soldier has met the 60–day break requirement of chap 6.)

*c. DA Form 1058–R time limit.* Submit DA Form 1058–R to the order issuing headquarters to arrive at least 45 days before the start date of the tour. This is to ensure timely issuance of orders.

(1) When circumstances prevent a soldier from submitting a DA Form 1058–R by the above time limit, a thorough explanation must accompany the application. Under these conditions, DARNG or ARPERCEN, as appropriate, may accept requests by message or telephone. Such Requests must be made at least 5 working days before the start date of the tour. These requests will be confirmed by a properly completed follow–up DA Form 1058–R. Other orders issuing authorities may establish their own time limits for late applications.

(2) Late applications for ADT will not be approved except under extenuating circumstances. (Applications misplaced or delayed are not considered good reasons.) There is no guarantee orders will be issued or payment made to those soldiers who perform duty in good faith without orders under the assumption that orders will be forthcoming.

## Chapter 5
## Initial Active Duty for Training

### 5–1. General

*a.* This chapter prescribes policies and procedures governing IADT. It includes—

(1) Nonprior service (NPS) enlisted personnel.

(2) Phase II Alternate Training personnel.

(3) Officer trainees enlisted in the ROTC Simultaneous Membership Program (SMP) as stated in AR 601–210.

(4) Personnel who, on entry into the ARNGUS or USAR, have not been awarded an MOS during previous military service in a U.S. Armed Force. These are "Glossary Nonprior Service (NPS)" personnel as defined in AR 601–210 and NGR 600–200.

*b.* IADT tours exceeding 180 days must be reported to HQDA (DAPE–MPE) (para 1–7).

### 5–2. IADT responsibilities

*a.* HQDA, will allocate all quotas for IADT of NPS ARNGUS and USAR enlistees.

*b.* Management of NPS quotas will be accomplished by PERSCOM through the "Recruit Quota System (REQUEST)" in coordination with respective components.

*c.* IADT for ROTC graduates is governed by AR 140–9.

### 5–3. Personnel ordered to IADT

*a.* NPS males under age 26 enlisted in the ARNGUS or USAR will be ordered to IADT for the period required to qualify in the selected MOS, or training sufficient to be deployed. NPS males under age 26 must serve on IADT for a period not less than 12 weeks.

*b.* Personnel identified in paragraph 5–1*a* (4) will be ordered to IADT for the period required to become qualified in the MOS for which enlisted, or training sufficient to be deployed.

### 5–4. ROTC officer trainees

*a.* ROTC cadets are enlisted under 10 USC 12103(a). Completion of training in one of the categories listed in (1) through (5) below is required for entry into the ROTC advanced course (AR 145–1). Since the officer trainee will be required to complete OBC on commissioning, basic training (BT) will not be required of this soldier. However, if the soldier is not commissioned, is retained in service, and has not previously completed an IADT period of not less than 12 weeks or its equivalent, this period of IADT or its equivalent, is required.

(1) Completed BT during prior military service.



USAPA EPS - • FORMAL • TF 2.61
08-06-99 09:24:10
PN 11 FILE: rc9.fil

(2) Successfully completed 3 or more years of Junior ROTC. (Based on a letter of acceptance from the professor of military science (PMS) at the college or university attended as credit placement for advanced ROTC.)

(3) Attend a service academy for 1 year.

(4) Successfully completed Military Science II.

(5) Successfully completed ROTC Basic Camp.

*b.* Officer trainees in the following categories will be ordered to active duty for training for the period required to qualify in an MOS on the automated unit vacancy list:

(1) A soldier enlisted directly for participation in the SMP and who does not apply for enrollment in the advanced ROTC course within 1 year following enlistment.

(2) An officer trainee who is disenrolled or fails to complete advanced ROTC. This includes soldiers listed in (*a*) through (*c*) below. These soldiers will be treated in the same manner as ROTC and SMP participants who fail to complete advanced ROTC (AR 601–210).

(*a*) Soldiers who agreed to volunteer for the Early Commissioning Program and do not volunteer.

(*b*) Soldiers who refuse to accept a commission when tendered.

(*c*) Soldiers who are not tendered a commission.

### 5–5. Nonprior service enlistees

*a.* NPS enlistees in ARNGUS or USAR units will normally be ordered to IADT within 270 days of enlistment. NPS direct enlistees in the IRR must enter IADT within 180 days after date of enlistment. NPS enlistees may be authorized an additional period of delay from reporting as provided in AR 601–25, paragraph 3–4.

*b.* An enlisted soldier who cannot satisfactorily complete the MOS training for which selected will be required to accept training to qualify for an alternate MOS as determined by the ARNGUS or USAR unit commander (AR 612– 201). The training installation commander will coordinate through the appropriate Reserve Component Liaison NCO with the State AG or USAR unit commander to determine an alternative MOS. Soldiers will be reported according to AR 612–201.

### 5–6. Orders and related details

*a.* Orders for ARNGUS enlistees are issued per NGR 310–10.

*b.* Orders for USAR enlistees will be prepared by the MEPS per AR 310–10.

*c.* The TPU commander or designated representative will notify the USAREC Guidance Counselor NLT 4 months before Phase II movement of any enlistee who has been promoted since completion of Phase I training.

## Chapter 6
## Active Duty for Special Work

### 6–1. General

*a.* Active duty for special work (ADSW) is authorized for projects supporting ARNGUS and USAR programs such as—

(1) Support of annual screening.

(2) Operation of training activities, centers, and sites.

(3) Operation of training ships.

(4) Unit conversion to new weapons systems.

(5) Study groups.

(6) Support at training sites and exercises.

(7) Short term mission and administrative support.

*b.* ADSW will not be used to meet real or perceived manpower shortages. Normal full-time staff, command and control duties and responsibilities will not be included in these projects and missions. It must be used for temporary projects or missions normally for not more than 139 days. Projects or missions for more than 139 days may be approved by HQDA or the MACOM on a case by case basis.

*c.* HQDA accounting and reporting requirements (paras 1–6 and 1–7), as appropriate, will be met if an ADSW tour will exceed 180 days or will result in a soldier accumulating over 180 days of ADSW or any combination of ADSW and TTAD totaling over 180 days within an FY.

*d.* Absent waiver according to paragraph 6–6*a*(7), a soldier will not be ordered to an ADSW tour within the first 2 months of an FY unless there has been at least a 60 calendar day break from the last day of an ADSW or TTAD tour in the previous FY. This break is necessary only if the soldier has accumulated more than 30 days of ADSW and/or TTAD during the last quarter of the previous FY. (Short breaks in tours (30 days or less) to circumvent this requirement are not authorized.)

*e.* Tours are funded from ARNGUS or USAR personnel appropriations. ADSW orders will cite 10 USC 12301(d) as authority.

*f.* ADSW tours will be used sparingly and their need documented.

*g.* ***(Rescinded.)***

*h.* Approving authorities will retain tour documentation and justification for the current and previous FY.

*i.* When possible, tour position announcements will be given wide distribution to attract the best qualified applicants.

*j.* Unit soldiers performing ADSW tours will not be required to perform scheduled IDT or AT with their assigned unit during the ADSW period.

*k.* A USAR TPU soldier ordered to an ADSW tour exceeding 180 days or extended on an ADSW tour which if approved would result in the soldier being on the tour over 180 days may be reassigned to the IRR. The USAR unit commander will make the final determination on whether the soldier is reassigned to the IRR or is allowed to remain in the unit. If the decision is to reassign the soldier, the following action will be taken:

(1) DA Form 4651–R (Request for Reserve Component Assignment or Attachment) will be completed and submitted with the ADSW tour request or extension request.

(2) A statement signed by the soldier stating he or she is aware that reassignment to the IRR terminates incentives and entitlements according to AR 135–7 will be attached to the application when the tour exceeds 180 days or to the extension request when an approved tour extension would result in the soldier being on the tour over 180 days.

(3) End strength accounting and reporting will be according to paragraphs 1–6 and 1–7.

### 6–2. Proper use of ADSW tours

ADSW is established to clearly distinguish between tours intended for the training of individual soldiers (ADT) and tours intended to accomplish ARNGUS and USAR work projects or missions (ADSW). ADSW and ADT are not interchangeable. Each has a distant purpose and funding authorization. (Table 6–1 gives example of types of duty performed in ADT or ADSW status.) Before submitting a request for ADSW, use the following criteria to determine if the tour should be ADSW or ADT:

*a.* ADSW is in order when the purpose of the tour is not to provide skill training but to accomplish one of the ARNGUS and USAR missions listed in (1) through (7) below. (Whether or not a soldier's skills are enhanced is incidental.)

(1) Supporting or controlling an exercise.

(2) Performing site support (including training operation support).

(3) Working on a special short–term project or study group vital to the ARNGUS or USAR.

(4) Providing administrative support for ARNGUS and USAR related projects or organizations.

(5) Providing staff for USARF schools, Intelligence Training Army Area Schools, noncommissioned officer academies, Reserve training schools, etc., except those soldiers performing duty in their normal annual training status or in lieu of normal annual training.

(6) Staff visits.

(7) Supporting administration of marksmanship tournaments.

*b.* ADT is in order when the purpose of the tour is to provide the soldier with planned and organized training to acquire, maintain, or enhance a skill. (The benefit to the organization is incidental.)