19

Army Regulation 135–205

Army National Guard and Army Reserve

# Enlisted Personnel Management

Headquarters
Department of the Army
Washington, DC
1 September 1994

UNCLASSIFIED

# SUMMARY of CHANGE

AR 135-205
Enlisted Personnel Management

Change 18. This change--

- o Provides that HQDA, ODCSPER, may approve exceptions to the regulation (para 1-6).
- o Requires ARNGUS soldiers serving on AGR status under title 32, U.S. Code, to be considered under the Qualitative Retention Program (para 4-3).
- o Reduces the years of service for USAR soldiers in the zone of consideration for qualitative retention (para 4-4).
- o Specifies that a flag will not be in the record of a soldier being considered by a qualitative retention board (para 4-5).
- o Requires that the CSM assigned to Special Forces Groups must be airborne qualified and possess MOS 18Z (para 6-5).
- o Provides that AGR CSM will be stabilized in position for 4 years (para 6-6).
- o Specifies that PERSCOM will convene the USAR CSM Selection Board annually (para 6-11a).
- o Specifies that CSM vacancies will be projected for 12 months (para 6-11b).
- o Requires CSM vacancy announcements to include days on which the command normally conducts scheduled training assemblies (para 6-11 c).
- o Specifies that the DOR and PEBD for a 1SG or MSG is based on the 1st day of the month in which the USAR CSM board is convened (para 6-11 b).
- o Permits an NCO to apply for more than one CSM vacancy (para 6-14 d).
- o Requires body fat content worksheet be enclosed with the commander's statement contained in the records packet (para 6-15).
- o Permits USAR CSM management authority to retain a CSM for up to 24 months beyond stabilization term (para 6-22e).
- o Permits HQDA, ODCSPER, to consider exceptions to the CSM reappointment policy (para 6-28b).
- o Makes minor administrative corrections and changes.
- o Renames figure 4-4 as table 4-2 to make this publication compatible with the Army electronic publishing database.

Headquarters
Department of the Army
Washington, DC
1 September 1994

**Army Regulation 135–205**

Effective 1 October 1994

**Army National Guard and Army Reserve**

# Enlisted Personnel Management

By Order of the Secretary of the Army:

GORDON R. SULLIVAN
*General, United States Army*
*Chief of Staff*

Official:

MILTON H. HAMILTON
*Administrative Assistant to the Secretary of the Army*

**History.** This publication was originally printed on 15 May 1978. Since that time, permanent Changes 1 through 17 have been issued. As of 1 June 1990, those changes remain in effect. This UPDATE printing incorporates those changes into the text. This UPDATE printing also publishes a Change 18. The portions being revised by this change are not highlighted. This publication has been reorganized to make it compatible with the Army electronic publishing database. No content has been changed.

**Summary.** This regulation prescribes policies, responsibilities, and procedures for Special Duty Assignment (Proficiency Pay) (SDA(PP)) for U.S. Army Reserve personnel, the Individual Ready Reserve Enlisted Personnel Management System, the Qualitative Retention Program, and the U.S. Army Reserve Command Sergeants Major Program.

**Applicability.** This regulation applies to all enlisted members of the Army National Guard (ARNG) and the USAR.

**Proponent and exception authority.** The proponent of this regulation is the Deputy Chief of Staff for Personnel. The Deputy Chief of Staff for Personnel has the authority to approve exceptions to this regulation that are consistent with controlling law and regulation. The Deputy Chief of Staff may delegate this approval authority, in writing, to a division chief under their supervision within the proponent agency who holds the grade of colonel or the civilian equivalent.

**Army management control process.** This regulation is subject to the requirements of AR 11–2. It contains internal control provisions but does not contain checklists for conducting internal control reviews. These checklists are contained in the DA Circular 11 series publications.

**Supplementation.** Supplementation of this regulation and establishment of command and local forms are prohibited without prior approval from the ODCSPER, Policy Coordination Office, ATTN: DARP–ZPO, 9700 Page Boulevard, St. Louis, MO 63132–5200.

**Interim changes.** Interim changes to this regulation are not official unless they are authenticated by the Administrative Assistant to the Secretary of the Army. Users will destroy interim changes on their expiration dates unless sooner superseded or rescinded.

**Suggested improvements.** Users are invited to send comments and suggested improvements to DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to ODCSPER, Policy Coordination Office, ATTN: DARP–ZPO, 9700 Page Boulevard, St. Louis, MO 63132–5200.

**Distribution.** Distribution of this publication is made in accordance with the requirements on DA Form 12–09–E, block number 2559, intended for command level B for Active Army, A for ARNG and A for USAR.

**Contents** (Listed by paragraph and page number)

**Chapter 1**
**General Information,** *page 1*
Purpose • 1–1, *page 1*
References • 1–1.1, *page 1*
Explanation of abbreviations and terms • 1–2, *page 1*
Policy • 1–3, *page 1*
Responsibilities • 1–4, *page 1*
Employment and volunteer work of spouse of military personnel • 1–5, *page 1*

1012



UNCLASSIFIED

**Contents—Continued**

**Chapter 2**
**Special Duty Assignment Pay(SDAP) for USAR Personnel,** *page 1*
General • 2–1, *page 1*
Individual eligibility criteria • 2–2, *page 1*
The award level and monthly amount of SDAP • 2–3, *page 2*
SDAP entitlement for drill sergeant (SQI X) duty • 2–3.1, *page 2*
SDAP entitlement for reenlistment (retention) NCO (MOS 79D) duty • 2–3.2, *page 2*
SDAP entitlement for Total Army career counselor duty • 2–3.3, *page 2*
SDAP entitlement for staff recruiter (MOS 00E) duty • 2–3.4, *page 3*
SDAP entitlement for guidance counselor or recruiter (MOS 00E) duty • 2–3.5, *page 3*
Constructive credit • 2–4, *page 3*
Termination of SDAP • 2–5, *page 3*
Requests for orders • 2–6, *page 4*

**Chapter 3**
**Enlisted Personnel Management System— U.S. Army Individual Ready Reserve,** *page 4*
Purpose and scope • 3–1, *page 4*
Responsibilities • 3–2, *page 4*
Operational procedures • 3–3, *page 5*
Implementation • 3–4, *page 6*

**Chapter 4**
**Qualitative Retention Program,** *page 6*

*Section I*
*Introduction, page 6*
Qualitative Retention Program (QRP) objectives • 4–1, *page 6*
QRP responsibilities • 4–2, *page 6*
QRP applicability • 4–3, *page 6*

*Section II*
*Qualitative Retention Program Procedures, page 7*
Zones of consideration for qualitative retention • 4–4, *page 7*
Soldiers not to be considered under the QRP • 4–5, *page 7*
Scheduling of retention boards • 4–6, *page 7*
Procedures required to support QRP • 4–7, *page 7*

*Section III*
*Composition and Conduct of Qualitative Retention Boards, page 8*
Appointing authority • 4–8, *page 8*
Board composition • 4–9, *page 8*
Instructions to board members • 4–10, *page 8*
The board oath • 4–11, *page 8*
Conduct of the board • 4–12, *page 9*
Board recommendations for retention • 4–13, *page 9*
Board reports • 4–14, *page 9*
Protective markings • 4–15, *page 10*

*Section IV*
*Approval, Disapproval, and Disposition, page 10*
Approval or disapproval of board recommendations • 4–16, *page 10*
Safeguard against premature separation from unit membership • 4–17, *page 10*
Disposition of soldiers not selected for retention • 4–18, *page 10*
Reassignment policy • 4–19, *page 11*

**Contents—Continued**

**Chapter 5**
**The Reserve Components Command Sergeants Major Program (RCCSMP) (Rescinded),** *page 16*

*Section I*
*This chapter has been rescinded., page 16*

**Chapter 6**
**The USAR Command Sergeants Major Program,** *page 16*

*Section I*
*Introduction, page 16*
Scope • 6–1, *page 16*
Mobilization or order to active duty • 6–2, *page 16*
Management of CSMs and CSM designees • 6–3, *page 16*
Objectives • 6–4, *page 16*

*Section II*
*Assignment and Utilization, page 17*
General assignment policy • 6–5, *page 17*
Routine assignment procedures • 6–6, *page 17*
Nominative selection and assignment procedures • 6–7, *page 17*
Appointment of acting CSM • 6–8, *page 18*
CSM vacancies and projected vacancies • 6–9, *page 18*

*Section III*
*Selection of CSM Designee and Appointment as CSM, page 18*
General • 6–10, *page 18*
Determining and reporting TPU and IMA CSM requirements • 6–11, *page 19*
Eligibility for selection board consideration • 6–12, *page 19*
Soldiers not eligible for selection board consideration • 6–13, *page 20*
Acceptance or declination of CSM consideration • 6–14, *page 20*
Preparation, composition, and submission of personnel records packets • 6–15, *page 21*
USAR CSM Selection Board composition and procedures • 6–16, *page 21*
Appointment or reappointment to CSM • 6–17, *page 22*
Authority to appoint • 6–18, *page 22*
Appointment orders • 6–19, *page 23*
Posthumous appointment • 6–20, *page 23*
Certificate of Appointment to CSM • 6–21, *page 23*

*Section IV*
*Stabilization, Removal, and Termination, page 23*
Stabilization on assignment to a CSM position • 6–22, *page 23*
Removal from CSM Program to perform tours of duty or to attend the U.S. Army Sergeants Major Academy • 6–23, *page 24*
Removal from CSM Program (for cause) • 6–24, *page 24*
Abolished, redesignated, or reorganized CSM positions • 6–25, *page 24*
Voluntary withdrawal from CSM Program other than for retirement • 6–26, *page 25*
Termination of CSM appointment • 6–27, *page 25*

*Section V*
*Reappointment to Command Sergeant Major, page 25*
Reappointment authority • 6–28, *page 25*
Reappointment policy • 6–29, *page 25*

**Appendix A.** References, *page 27*

**Contents—Continued**

## Table List

Table 4–1: USAR qualitative retention zones chart (Rescinded.), *page 11*
Table 4–2: Sample format for the Qualitative Retention Board statistical report filed as an enclosure to the board report, *page 11*
Table 4–3: USAR qualitative retention zones chart
(NOTE: This table is effective on or after 1 Jul 93.), *page 12*

## Figure List

Figure 4–1: Sample memorandum with endorsement of notification, *page 12*
Figure 4–2: Sample memorandum of instruction for the qualitative retention board-continued, *page 13*
Figure 4–2: Sample memorandum of instruction for the qualitative retention board, *page 14*
Figure 4–3: Report of qualitative retention board, *page 14*
Figure 4–4: Sample format for the Qualitative Retention Board statistical report filed as an enclosure to the board report.(Figure 4–4 has been changed to table 4–2.), *page 15*
Figure 4–5: Selection memorandum format, *page 15*
Figure 4–6: Nonselection memorandum format, *page 15*
Figure 6–1: Format for outline of qualifications, *page 26*

## Index

# Chapter 1
# General Information

## 1–1. Purpose
This regulation prescribes policies, responsibilities, and procedures for—

*a.* Special Duty Assignment (Proficiency Pay) (SDA(PP)) for U.S. Army Reserve (USAR) personnel.

*b.* The Individual Ready Reserve (IRR) Enlisted Personnel Management System.

*c.* ***(Rescinded.)***

*d.* The Qualitative Retention Program (QRP).

*e.* The USAR Command Sergeants Major Program.

## 1–1.1. References
Required and related publications and prescribed forms are listed in appendix A.

## 1–2. Explanation of abbreviations and terms
Abbreviations and special terms used in this regulation are explained in the consolidated glossary at the back of this volume.

## 1–3. Policy
Effective management and evaluation of ARNG and USAR enlisted personnel resources is necessary for successful mission accomplishment. It is Department of the Army policy to—

*a.* Utilize soldiers in positions equal to their military qualifications and personal attributes, and

*b.* Promote an atmosphere which will motivate each soldier to attain his or her full potential as a soldier.

## 1–4. Responsibilities
*a.* The Deputy Chief of Staff for Personnel (DCSPER), Headquarters, Department of the Army (HQDA), has general staff responsibility for the formulation, management, and evaluation of manpower and personnel policies, plans, and programs for all components of the Army.

*b.* Within their areas of jurisdiction, State adjutants general and area commanders are responsible for the personnel management programs outlined in this regulation.

*c.* The term "area commands" and "area commander" as used throughout this regulation are defined in the consolidated glossary at the back of this volume.

## 1–5. Employment and volunteer work of spouse of military personnel
Neither a soldier's marital status nor the employment, educational pursuits, or the volunteer service activities of the soldier's spouse may be considered in the qualitative retention process (chap 4) or the Command Sergeant Major selection process (chap 6). Information in personnel files regarding such factors will not be considered by commanders, board members, or others involved in the retention selection process.

# Chapter 2
# Special Duty Assignment Pay(SDAP) for USAR Personnel

## 2–1. General
This chapter applies only to U.S. Army Reserve (USAR) soldiers. It prescribes policies and provides instructions for the administration of Special Duty Assignment Pay (SDAP). This is a monetary incentive designed to encourage soldiers to qualify for and serve in the following assignments:

*a.* Recruiter (MOS OOE).

*b.* Reenlistment NCO (MOS 79D).

*c.* Drill Sergeant (Special qualification identifier (SQI)—X).

*d.* Specialty Designated USAR personnel. USAR AGR soldiers who converted from the Active Army under the Army Transition/Conversion — Army Reserve (ATCAR) Program and are performing in a specially designated position, will continue to receive the same level of SDAP they were receiving as a member of the Active Army.

## 2–2. Individual eligibility criteria
An enlisted member of the USAR in a special duty assignment is eligible to receive SDAP if all of the following conditions are met:

*a.* Entitled to basic pay and serving on—

(1) One or more days of—

ARPERCEN, ATTN: DARP–EPO, 9700 Page Boulevard, St. Louis, MO 63132–5200. FORSCOM installations or organizations will furnish an information copy to Commander, FORSCOM, ATTN: AFOP–RCM, Fort McPherson, GA 30330–6000, not later than 1 August each year.

### 3–4. Implementation
Continuation or expansion of the EPMS–IRR program is contingent on fund availability.

## Chapter 4
## Qualitative Retention Program

### Section I
### Introduction

### 4–1. Qualitative Retention Program (QRP) objectives
A continuing program of qualitative retention is essential to provide for progression of qualified enlisted personnel at proper intervals in their careers. The QRP will—

*a.* Ensure only the *best qualified* soldiers are retained in a troop unit beyond 20 years of qualifying service for retired pay. These soldiers will be retained for continuing assignment to the comparatively few senior noncommissioned officer (NCO) positions.

*b.* Provide for career incentive.

*c.* Ensure an opportunity for advancement to the higher grades at the peak years of a soldier's effectiveness.

*d.* Satisfy the continuing requirement for senior NCOs by the appropriate commands.

*e.* Provide the command with a tool to control enlisted personnel inventory and manage career progression. The QRP is not designed nor intended to be used in lieu of separation or removal procedures authorized by other regulations (that is, unsatisfactory performance, unsatisfactory participation, failure to meet body fat standards, and so forth).

### 4–2. QRP responsibilities
*a.* Chief, National Guard Bureau (CNGB) will monitor and support the QRP for the Army National Guard of the United States (ARNGUS).

*b.* Chief, Army Reserve (CAR) will monitor and support the QRP for the USAR.

*c.* The following officials will implement and administer the QRP within their areas of jurisdiction:

(1) State adjutants general for ARNG soldiers.

(2) Area commanders (see glossary) for USAR TPU soldiers. QRP responsibility may be delegated to the following commanders, but may not be further delegated.

*(a)* A commander of an ARCOM or GOCOM for soldiers subordinate to the ARCOM or GOCOM.

*(b)* The first general officer command subordinate to the area command for soldiers under the general officer command, when there is no ARCOM or GOCOM subordinate to the area command.

(3) ***(Rescinded.)***

### 4–3. QRP applicability
This chapter provides policy and procedures governing the selective retention of soldiers in ARNGUS units and USAR TPUs. It also prescribes the composition and function of qualitative retention boards. The QRP policy contained in this chapter applies to—

*a.* ARNG soldiers with 20 or more years of qualifying service for retired pay including those serving on Full-Time National Guard Duty (FTNGD) under title 32, USC. The procedures provide for a biennial review of the military personnel records of all soldiers with the required service. The purpose of the review is to determine retention potential and acceptability for reenlistment or extension of enlistment. It does not apply to soldiers serving on active duty under title 10, USC .

*b.* USAR soldiers assigned to TPUs of the Selected Reserve. It does not apply to soldiers serving on active duty in an AGR status. QRP provides for a review of a soldier's military personnel records to determine retention potential. This review is required for all soldiers who will have 20 or more years of qualifying service for retired pay at age 60, and are within the zones of consideration prescribed by paragraph 4–4 *a*(3).

*c.* Procedures governing qualitative retention are without regard to race, color, religion, sex, or national origin.



1017

## Section II
## Qualitative Retention Program Procedures

### 4–4. Zones of consideration for qualitative retention

*a.* Qualitative retention boards will consider all unit soldiers who are within the following zones by the date the board convenes, with the exception of those listed in paragraph 4–5:

(1) *ARNG* .

*(a)* Have at least 20 years of qualifying service for retired pay at age 60 as verified by a notification of eligibility for retired pay at age 60 issued per AR 135–180, paragraph 2–3.

*(b)* Where previously selected for retention, however, the commander has referred them to the board for revalidation of their retained status.

(2) ***(Rescinded.)***

(3) *USAR.* Have at least 20 years of qualifying service for retired pay at age 60, and—

*(a)* Is a SFC/PSG or below and has completed 21 years of total military service.

*(b)* Is an SFC, PSG, MSG, or 1SG and has completed 25 years of total military service.

*(c)* Is a MSG, 1SG, or SGM and has completed 27 years of total military service.

*(d)* Is a SGM and has completed 29 years of total military service.

*(e)* Were previously selected for retention. However, the commander has referred them to the board for revalidation of their retained status.

*b.* ARNG qualitative retention boards will examine records of ARNG soldiers in the zone of consideration every 2 years unless, based on recommendation of the board, the convening authority approves that an soldier's record be reviewed the following year.

*c.* USAR qualitative retention boards will be convened to examine the records of USAR soldiers in the zones of consideration listed in *a*(2) and (3) above.

*d.* A chart which displays the USAR zones of consideration is shown at table 4–3.

### 4–5. Soldiers not to be considered under the QRP

Qualitative retention boards will not consider soldiers who—

*a.* Are assigned to the—

(1) ARNG and have not been issued a notification of eligibility for retired pay at age 60 per AR 135–180, paragraph 2–3, on the date the board convenes.

(2) USAR and have not completed 20 qualifying years of service for retired pay at age 60 on the date the board convenes.

*b.* Are within 9 months of reaching age 60 on the date the board convenes.

*c.* Are not *fully qualified* by grade and military occupational specialty (MOS) for continued membership in the unit. (Not applicable to the ARNG.)

*d.* Have a bar to reenlistment or extension in effect. (Not applicable to the ARNG.)

*e.* Are under suspension of favorable personnel actions (AR 600–8–2), unless the suspension action was initiated for failure to meet the body fat standards per AR 600–9, or for failure to pass the Army Physical Fitness Test (APFT) per AR 350–15. However, in such cases a flag will not be present in the military records of a USAR soldier being considered by a board under the best qualified selection process.

*f.* Are USAR soldiers in the following categories:

(1) SSG and below (unless pending promotion to SFC) who have completed a total of 25 years' military service.

(2) SFC/PSG (unless pending promotion to MSG) and have completed a total of 27 years' military service.

(3) MSG/1SG (unless pending promotion to SGM) and have completed a total of 29 years' military service.

(4) SGM (unless selected for CSM) and have completed a total of 31 years' military service.

(5) Command sergeants major.

*g.* Are ARNG State Command Sergeants Major.

*h.* Are USAR personnel previously not selected for retention by a board. Based on their Army Reserve Technician (ART) status, they were authorized retention in their current USAR assignment until age 60 (para 4–18 *d*(2)).

### 4–6. Scheduling of retention boards

Qualitative retention boards will be convened annually during January, February, or March. The authorities specified in paragraph 4–2 *c* will convene the boards.

### 4–7. Procedures required to support QRP

*a.* The boards will examine the record of each soldier within the zone of consideration (para 4–4 *a*). The boards will provide a report of personnel recommended for continued unit service (para 4–14).

*b.* Commanders specified in paragraph 4–2 *c* will—

(1) Ensure that soldiers' records are maintained to permit an accurate and equitable board appraisal.
(2) Announce the time and site of the annual qualitative retention board to all subordinate commands.
(3) Select and appoint board members and publish orders.
(4) Issue instructions to subordinate units for submitting required records and information.
(5) Refer personnel records to the board.
(6) Provide required administrative support.
(7) Approve or disapprove the board's report.
(8) Issue selection or nonselection memorandums within 30 days following approval of the board's report. These memorandums will be issued over the convening authority's signature (fig 4–5 and 4–6).
(9) Be sure that soldiers not recommended for retention are discharged or reassigned as appropriate (para 4–18).

*c.* Unit commanders will—
(1) Identify unit soldiers who fall in the zone of consideration for qualitative retention (para 4–4 *a*).
(2) Ensure all soldiers in the zone of consideration (para 4–4 *a*) are notified. (Use the sample memorandum at fig 4–1 as a guide.)
(3) Ensure personnel records are current, correct, and audited by the soldier.
(4) Include with the records any comments or recommendations deemed pertinent to retention consideration.
(5) *(ARNG only)* Include a statement justifying the retention of a SGT or below if considered appropriate.
(6) Send the required information and personnel records to the convening authority (para 4–2 *c*).

*d.* The enlisted soldier, when notified of pending board consideration, will—
(1) Indicate by endorsement (fig 4–2) the option preferred, if not selected for retention. These options are as follows:
*(a)* Reassignment to the Retired Reserve.
*(b)* Reassignment to Control Group (Reinforcement) of the Individual Ready Reserve (IRR).
*(c)* Honorable discharge.
(2) Complete the endorsement on the notification memorandum (fig 4–2). Return the memorandum to the unit commander within 10 days after receipt. Soldiers refusing to complete the endorsement or failing to respond in a reasonable period will be reported to the unit commander. The commander will send the soldier's record and a statement of the facts to the convening authority. If not selected for retention, the soldier will be discharged.
(3) Audit his or her military personnel records to ensure they are current and correct.
(4) If desired, include with the records any comments regarding the pending board consideration. Such comments may include, but are not limited to, the unit commander's comments or recommendations.

## Section III
## Composition and Conduct of Qualitative Retention Boards

### 4–8. Appointing authority
Authority to appoint and convene qualitative retention boards rests with the authorities specified in paragraph 4–2.

### 4–9. Board composition
*a.* Boards will be composed of three command sergeants major (CSM) and two commissioned officers for all enlisted personnel. One officer in the grade of colonel (or lieutenant colonel, if necessary) will serve as president of the board.
*b.* An additional officer, warrant officer (WO), or NCO will be appointed as recorder without vote.
*c.* One of the board members must be female if females are considered. One member must be a minority. Orders appointing the board will identify female and/or minority members.
*d.* A person being considered by the board will not serve as a member of the board or as a recorder.

### 4–10. Instructions to board members
*a.* A memorandum of instruction will be issued to each board member by the convening authority (fig 4–2).
*b.* Boards will be briefed by a designated representative of the convening authority. This briefing will cover the important features of the letter of instructions and this chapter. It will also give board members an opportunity to ask questions.

### 4–11. The board oath
*a.* The following oath will be administered by the recorder to the members of the board: "You (identify each member by grade and name) do solemnly swear (or affirm) that you will without prejudice or partiality, and having in view both the special fitness of individual soldiers and the efficiency of the (Army National Guard) (Army Reserve), perform duties imposed on you, and further, that you will not divulge the proceedings or results of this board except to proper authority." (Each member will respond, "I do." )

*b.* The president of the board will administer the following oath to the recorder: "You (identify by grade and name), as a recorder of this board, do solemnly swear (or affirm) that you will perform duties imposed on you by the president of the board, and further, that you will not divulge the proceedings or results of this board except to proper authority." (The recorder of the board will respond, "I do.")

**4–12. Conduct of the board**

*a.* Boards will evaluate the future benefits that can be expected to accrue to the ARNG or USAR (as appropriate) from the continued membership status of each person. The board should consider the following factors:

(1) Demonstrated performance as attested by evaluation reports, review of the Military Personnel Records Jacket—U.S. Army (MPRJ), and other evidence.

(2) Medical condition and physical fitness are such that there are no significant assignment limitations.

(3) Any other factor having a bearing on a soldier's future performance and contribution to a unit.

*b.* If the board vote is not unanimous, the dissenting member(s) may prepare a minority report to support his or her position. A copy of this report will be attached to each copy of the board report.

**4–13. Board recommendations for retention**

*a.* ARNG qualitative retention boards may recommend ARNG soldiers in the zone of consideration (para 4–4 *a* (1)) for unit retention.

*b.* USAR qualitative retention boards, by considering soldiers within the zone of consideration (para 4–4 *a*(3) and table 4–3), may recommend USAR soldiers for unit retention—

(1) In the rank of SSG or below on completion of 21 years of total military service and have been determined as *best qualified* for retention. Unless separated under other authority, these soldiers may be retained until completion of 25 years' total military service.

(2) In the rank of SFC/PSG on completion–

*(a)* Of 21 years' total military service and have been determined as *best qualified* for retention. Unless separated under other authority, these soldiers may be retained until completion of 25 years' total military service at which time their records will be reviewed again;

*(b)* Of 25 years' total military service and have been determined as *best qualified* for retention. Unless separated under other authority, these soldiers may be retained until completion of 27 years' total military service.

(3) In the rank of 1SG/MSG on completion—

*(a)* Of 25 years' total military service and have been determined *best qualified* for retention. Unless separated under other authority, these soldiers will be retained until completion of 27 years' total military service at which time their records will be reviewed again;

*(b)* Of 27 years' total military service and have been determined *best qualified* for retention. Unless separated under other authority, these soldiers will be retained until completion of 29 years' total military service.

(4) In the rank of SGM, on completion—

*(a)* Of 27 years' total military service and have been determined *best qualified* for retention. Unless separated under other authority, these soldiers will be retained until completion of 29 years total military service.

*(b)* Of 29 years' total military service and have been determined *best qualified* for retention. Unless separated under other authority, these soldiers will be retained until completion of 31 years' total military service.

*c.* USAR soldiers who are retained under *b* .1 above will not again be considered for retention unless—

(1) Promoted to a higher grade. Zones of consideration in the higher grades are outlined in paragraph 4–4 *a*(3).

(2) The commander has recommended revalidation of their retained status.

(3) They are pending promotion to a higher grade. In this case, they must be considered for retention under the criteria prescribed for the higher grade. "Pending promotion" is defined as a soldier who has been recommended for promotion by a promotion selection board; the board proceedings have been approved by the convening authority; and the soldier has been placed on an order-of-merit listing pending a unit vacancy.

**4–14. Board reports**

*a.* Before adjournment, the board will complete a report of the board proceedings in the format shown in table 4–2. Table 4–2 shows a sample format for the qualitative retention board statistical report of qualitative retention board deliberations which is an example of enclosure 8 of figure 4–3.

*b.* The recorder will prepare a signed statement indicating the number of soldiers considered by grade and racial category and the number of soldiers not retained by grade and racial category. This will be attached to the board report.

*c.* A copy of the board report with all enclosures will be routed through the agencies shown below to arrive at HQDA, Office of the Deputy Chief of Staff for Personnel, ATTN: DAPE–MPE, WASH DC 20310–0300, not later than 15 June of each year.

(1) For ARNG reports, send through the Chief, National Guard Bureau, ATTN: NGB–ARP–E, WASH DC 20310–2500.

*b.* The president of the board will administer the following oath to the recorder: "You (identify by grade and name), as a recorder of this board, do solemnly swear (or affirm) that you will perform duties imposed on you by the president of the board, and further, that you will not divulge the proceedings or results of this board except to proper authority." (The recorder of the board will respond, "I do.")

### 4–12. Conduct of the board

*a.* Boards will evaluate the future benefits that can be expected to accrue to the ARNG or USAR (as appropriate) from the continued membership status of each person. The board should consider the following factors:

(1) Demonstrated performance as attested by evaluation reports, review of the Military Personnel Records Jacket—U.S. Army (MPRJ), and other evidence.

(2) Medical condition and physical fitness are such that there are no significant assignment limitations.

(3) Any other factor having a bearing on a soldier's future performance and contribution to a unit.

*b.* If the board vote is not unanimous, the dissenting member(s) may prepare a minority report to support his or her position. A copy of this report will be attached to each copy of the board report.

### 4–13. Board recommendations for retention

*a.* ARNG qualitative retention boards may recommend ARNG soldiers in the zone of consideration (para 4–4 *a* (1)) for unit retention.

*b.* USAR qualitative retention boards, by considering soldiers within the zone of consideration (para 4–4 *a*(3) and table 4–3), may recommend USAR soldiers for unit retention—

(1) In the rank of SSG or below on completion of 21 years of total military service and have been determined as *best qualified* for retention. Unless separated under other authority, these soldiers may be retained until completion of 25 years' total military service.

(2) In the rank of SFC/PSG on completion–

*(a)* Of 21 years' total military service and have been determined as *best qualified* for retention. Unless separated under other authority, these soldiers may be retained until completion of 25 years' total military service at which time their records will be reviewed again;

*(b)* Of 25 years' total military service and have been determined as *best qualified* for retention. Unless separated under other authority, these soldiers may be retained until completion of 27 years' total military service.

(3) In the rank of 1SG/MSG on completion—

*(a)* Of 25 years' total military service and have been determined *best qualified* for retention. Unless separated under other authority, these soldiers will be retained until completion of 27 years' total military service at which time their records will be reviewed again;

*(b)* Of 27 years' total military service and have been determined *best qualified* for retention. Unless separated under other authority, these soldiers will be retained until completion of 29 years' total military service.

(4) In the rank of SGM, on completion—

*(a)* Of 27 years' total military service and have been determined *best qualified* for retention. Unless separated under other authority, these soldiers will be retained until completion of 29 years total military service.

*(b)* Of 29 years' total military service and have been determined *best qualified* for retention. Unless separated under other authority, these soldiers will be retained until completion of 31 years' total military service.

*c.* USAR soldiers who are retained under *b* .1 above will not again be considered for retention unless—

(1) Promoted to a higher grade. Zones of consideration in the higher grades are outlined in paragraph 4–4 *a*(3).

(2) The commander has recommended revalidation of their retained status.

(3) They are pending promotion to a higher grade. In this case, they must be considered for retention under the criteria prescribed for the higher grade. "Pending promotion" is defined as a soldier who has been recommended for promotion by a promotion selection board; the board proceedings have been approved by the convening authority; and the soldier has been placed on an order-of-merit listing pending a unit vacancy.

### 4–14. Board reports

*a.* Before adjournment, the board will complete a report of the board proceedings in the format shown in table 4–2. Table 4–2 shows a sample format for the qualitative retention board statistical report of qualitative retention board deliberations which is an example of enclosure 8 of figure 4–3.

*b.* The recorder will prepare a signed statement indicating the number of soldiers considered by grade and racial category and the number of soldiers not retained by grade and racial category. This will be attached to the board report.

*c.* A copy of the board report with all enclosures will be routed through the agencies shown below to arrive at HQDA, Office of the Deputy Chief of Staff for Personnel, ATTN: DAPE–MPE, WASH DC 20310–0300, not later than 15 June of each year.

(1) For ARNG reports, send through the Chief, National Guard Bureau, ATTN: NGB–ARP–E, WASH DC 20310–2500.

(2) For USAR reports, send through HQDA, Office of the Chief, Army Reserve, ATTN: DAAR–PE, WASH DC 20310–2415.

### 4–15. Protective markings

All copies of the board's report will be marked FOR OFFICIAL USE ONLY. This is to prevent premature disclosure of board recommendations. These markings will be removed on approval by the convening authority.

## Section IV
## Approval, Disapproval, and Disposition

### 4–16. Approval or disapproval of board recommendations

*a.* The convening authority will review the qualitative retention board recommendations. Within 30 days following adjournment of the board, the convening authority will—

(1) Approve the report as submitted.

(2) Disapprove the whole report and require the board to reconsider all cases. This will occur if the board's report contains substantial administrative errors or procedural deficiencies that adversely affect those considered. The convening authority will give supplemental guidance to the board to correct the deficiencies.

(3) Modify the board's report to move a soldier's name from the not recommended list to the recommended list. Justification for any such modification must be attached and made a part of the board's report. The convening authority is prohibited from moving a soldier's name from the recommended list to the not recommended list.

(4) Require board reconsideration of any individual case in which material error in the record as reviewed by the board is established. The convening authority may do this at any time during 90 days following adjournment of the board.

*b.* Some of the reasons for disapproving a board's report are as follows:

(1) The board did not have the proper members.

(2) The instructions to the board were materially different from the prescribed format (fig 4–2).

(3) The board oath was not properly administered.

(4) Improper board format or content which cannot be corrected administratively.

### 4–17. Safeguard against premature separation from unit membership

No soldier will be separated from unit membership under this chapter until notified of eligibility to receive retired pay at age 60. This does not apply to soldiers who do not qualify for retired pay because they lack wartime service (AR 135–180, para 2–1).

### 4–18. Disposition of soldiers not selected for retention

*a.* Soldiers who were not selected for retention are considered *fully qualified* for continued participation in the USAR as assigned IRR soldiers. This is provided they have not reached 60 years of age.

*b.* Soldiers not selected will be processed for discharge or reassignment according to the option selected under paragraph 4–7 *d*(1) and indicated by endorsement (fig 4–1). However, a USAR ART may request continued retention in his or her current assignment per paragraph *d* below.

*c.* Separation must be completed within 60 days following approval of the board's report.

(1) If a memorandum certifying a USAR soldier's eligibility for retired pay has not been issued, separation will be completed within 60 days after the certification is issued.

(2) Should issue of the certification be delayed more than 90 days after approval of the board report, authority for continued retention of a USAR soldier must be approved by—

*(a)* ***(Rescinded.)***

*(b)* The commander (para 4–2 *c* ) that convened the QRB which resulted in the soldier's nonselection.

*(c)* ***(Rescinded.)***

*d.* An ART who has not been selected for retention may submit a request for retention in his or her current assignment per AR 140–315, paragraph 8 *i*. Within 15 days after the announcement of the board's results, the request may be sent through Cdr, ARPERCEN ( DARP–PAT–I) to the Office, Chief Army Reserve, ATTN: DAAR–PE, WASH DC 20310–2418. The ART's military status or assignment will not be changed while the request is pending final determination by the CAR acting for Secretary of the Army.

(1) If the CAR does not approve the request, the soldier will be processed for discharge or reassignment according to the option selected under paragraph 4–7 *d*(1) and indicated by endorsement (fig 4–2).

(2) If the CAR approves the request, the soldier will be retained in his or her current assignment until they attain age 60 unless removed for cause. The soldier will not again be considered by later retention boards. However, since the soldier was not best qualified for military retention by a board, but retention was approved to provide for civil service annuity eligibility, the soldier will not be eligible for later promotion consideration (AR 140–158, para 1–14 *q*).

20

Army Regulation 350–10

Training

# Management of Army Individual Training Requirements and Resources

Headquarters
Department of the Army
Washington, DC
14 September 1990

Unclassified

# SUMMARY of CHANGE

AR 350-10
Management of Army Individual Training Requirements and Resources

This revision--

- o Amends policy and procedures for managing Army individual training requirements and resources.

- o Covers the system used to idenitify individual training requirements and programs, and the resources required to support the Total Army individual training.

- o Identifies charter of input to Training Management General Officer Steering Committee (GOSC) (para 1-5).

- o Updates policy and procedures for the management of Army Individual Training Requirements and Resources System (ATRRS) (paras 2-1, 2-2, and 2-3).

- o Clarifies the scope and purpose of the Army Program for Individual Training (ARPRINT) (para 2-4).

- o Describes the procedures for establishing and maintaining constrained annual training baselines (para 2-4e).

- o Details the Total Army Centralized Individual Training Solicitation (TACITS) (para 2-6).

- o Identifies the Structure and Manning Decision Review (SMDR) process (para 2-7).

- o Identifies the Training Resources Arbitration Panel (TRAP) process (para 2-8).

- o Details the Quota Management System (QMS) (para 3-1).

- o Comprensively details the Mobilization Planning System (MPS) (para 3-2).

- o Details the Student Trainee Management System-Enlisted (STRAMS-E) (para 3-3).

- o Clarifies the Training Attrition Program (chap 4).

Headquarters
Department of the Army
Washington, DC
14 September 1990

*Army Regulation 350–10

Effective 15 October 1990

Training

# Management of Army Individual Training Requirements and Resources

By Order of the Secretary of the Army:

CARL E. VUONO
*General, United States Army*
*Chief of Staff*

Official:

MILTON H. HAMILTON
*Administrative Assistant to the Secretary of the Army*

**History.** This UPDATE printing publishes a revision of this publication. Because the publication has been extensively revised, the changed portions have not been highlighted. This publication has been reorganized to make it compatible with the Army electronic publishing database. No content has been changed.

**Summary.** This regulation revises the policies, responsibilities, and procedures required to manage Army individual training requirements and resources. It covers the system used to identify individual training requirements, programs, and resources required to support the Total Army individual training. It updates policy and procedures for the management of the Army Training Requirements and Resources System (ATRRS). Unless specifically identified for mobilization planning or mobilization operations, these policies and procedures refer to peacetime operations.

**Applicability.** This regulation applies to the Total Army, to include the Active Army, Army National Guard, U.S. Army Reserve, Department of Army civilian force, and other Government agency and civilian users of the ATRRS.

**Proponent and exception authority.** Not applicable

**Army management control process.** This regulation is not subject to the requirements of AR 11–2. It does not contain internal control provisions.

**Supplementation.** Supplementation of this regulation and establishment of command or local forms are prohibited without prior approval from HQDA (DAPE–MPT), WASH DC 20310–0300.

**Interim changes.** Interim changes to this regulation are not official unless they are authenticated by the Administrative Assistant to the Secretary of the Army. Users will destroy interim changes on their expiration dates unless sooner superseded or rescinded.

**Suggested Improvements.** The proponent agency of this regulation is the Office of the Deputy Chief of Staff for Personnel. Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to HQDA (DAPE–MPT), WASH DC 20310–0300.

**Distribution.** Distribution of this publication is made in accordance with the requirements on DA Form 12–09–E, block number 3291, intended for command level D for Active Army, Army National Guard, and U.S. Army Reserve.

**Contents** (Listed by paragraph and page number)

**Chapter 1**
**Introduction,** *page 1*
Purpose • 1–1, *page 1*
References • 1–2, *page 1*
Explanation of abbreviations and terms • 1–3, *page 1*
Responsibilities • 1–4, *page 1*
Input to Training Management General Officer Steering Committee • 1–5, *page 3*
Policy • 1–6, *page 4*

**Chapter 2**
**Army Training Requirements and Resources System,** *page 4*
Introduction • 2–1, *page 4*
ATRRS subsystems • 2–2, *page 4*
ATRRS reports • 2–3, *page 4*
ARPRINT report • 2–4, *page 4*
Development of training requirements • 2–5, *page 5*
Solicitation of training requirements • 2–6, *page 5*
Structure and Manning Decision Review • 2–7, *page 5*
Training Resource Arbitration Panel • 2–8, *page 7*
Scheduling of classes • 2–9, *page 9*
Interservice Training Review Organization • 2–10, *page 9*

**Chapter 3**
**Army Training Requirements and Resources System Subsystems,** *page 9*
Quota Management System • 3–1, *page 9*
Mobilization Planning System • 3–2, *page 10*
Student Trainee Management System—Enlisted • 3–3, *page 10*

**Chapter 4**
**Training Attrition Management,** *page 11*
Introduction • 4–1, *page 11*
Historical attrition computation • 4–2, *page 11*
Adusted attrition computation • 4–3, *page 11*
Attrition rates • 4–4, *page 11*

**Appendix A.** References, *page 12*

**Glossary**

**Index**

*This regulation supersedes AR 350–10, 1 July 1984.

RESERVED

# Chapter 1
# Introduction

## 1–1. Purpose
*a.* This regulation prescribes Army policy, responsibilities, and procedures for the management of all individual training through the Army Training Requirements and Resources System (ATRRS) for the following—

(1) The Total Army (Active Army (AA), Army National Guard (ARNG), U.S. Army Reserve (USAR), Department of the Army (DA) civilian, other Government agencies and civilian users).

(2) U.S. Army Training and Doctrine Command (TRADOC).

(3) Forces Command (FORSCOM) Noncommissioned Officer Academies.

(4) U.S. Army Materiel Command (AMC).

(5) U.S. Army Health Services Command (HSC).

(6) Defense Language Institute, Foreign Language Center (DLIFLC).

(7) Defense Information School (DINFOS).

(8) Defense Intelligence College.

(9) Department of Defense (DOD) Computer Institute.

(10) Defense Mapping School (DMS).

(11) Defense Systems Management College (DSMC).

(12) Other military services.

(13) National Cryptologic School.

(14) Federal Bureau of Investigation Academy.

(15) Polygraph Institute.

(16) USAR Forces Schools.

(17) ARNG Schools.

(18) Other schools established under Army authority during mobilization.

(19) Civilian schooling.

*b.* The objectives are to—

(1) Formalize the use of the Army Program for Individual Training (ARPRINT) within—

*(a)* DOD schools for which DA is executive agent.

*(b)* Major Army commands (MACOM) and agencies.

*(c)* Army schools and training centers.

*(d)* Noncommissioned officer academies.

*(e)* Other military services and Government agencies.

(2) Establish standard procedures to identify and display individual training requirements and programs and to report student input and output.

(3) Ensure that training requirement programs are developed as part of the Planning, Programming, Budgeting, and Execution System (PPBES) cycle.

(4) Establish annual training baselines during the ARPRINT development process.

(5) Ensure that input to training is conducted according to statutory requirements.

(6) Provide guidance for the development of the ARPRINT and scheduling of classes to support training programs.

(7) Establish standard procedures to report, analyze, and manage training attrition and attrition from the Army while in a training status.

(8) Provide guidance and planning information for development of the Mobilization ARPRINT (MOB ARPRINT) and for transition to mobilization training operations upon declaration of mobilization.

## 1–2. References
Related publications are listed in Appendix A.

## 1–3. Explanation of abbreviations and terms
Abbreviations and special terms used in this regulation are explained in the glossary.

## 1–4. Responsibilities
*a.* The Deputy Chief of Staff for Personnel (DCSPER) will—

(1) Establish policy and procedures for developing and verifying training requirements for the Total Army (military and civilian) for the following categories—

*(a)* Initial entry training (IET).

*(b)* Special qualifications indentifiers (SQI).

*(c)* Additional skill indentifier (ASI).

*(d)* Noncommissioned Officer Education System (NCOES).

*(e)* Officer and enlisted functional or transitional training.

*(f)* Professional development.

*(g)* U.S. Military Academy (USMA).

*(h)* USMA Prep School.

*(i)* Officer Candidate School (OCS).

*(j)* Reserve Officers' Training Corps (ROTC).

(2) Incorporate training requirements identified and validated by the Army Educational Requirements Board into the ARPRINT.

(3) Design, document, resource, operate, and evaluate ATRRS.

(4) Develop overall guidance for and approve the annual ARPRINT.

(5) Arbitrate, negotiate, and allocate available training seats based on the approved training program for IET military occupational specialty (MOS). Coordinate with the following when allocating training seats—

*(a)* Office of the Deputy Chief of Staff for Operations and Plans (ODCSOPS).

*(b)* U.S. Army Training and Doctrine Command (TRADOC).

*(c)* National Guard Bureau (NGB).

*(d)* Office of the Chief, Army Reserve (OCAR).

*(e)* U.S. Army Health Professional Support Agency, Office of the Surgeon General (USAHPSA, OTSG).

*(f)* U.S. Army Recruiting Command (USAREC).

*(g)* Health Services Command (HSC).

*(h)* DMS.

*(i)* Other services and Government agencies.

(6) Develop methodology for computing Army training attritions rates, and provide Army training attrition rates (by course or MOS) to Total Army Personnel Command (PERSCOM) (TAPC–PL), HQ ARNG (NGB–ME), and HQDA (DAAR–TR). Develop methodology and conduct quarterly analysis of training show-rates.

(7) Assume principal Army staff responsibility for training attrition mangement. (See chap 4.)

(8) Manage the following programs—

*(a)* The USMA Program.

*(b)* The AA Officer Candidate Program.

*(c)* The Army ROTC Program.

(9) Develop affordable training baseline levels during the ARPRINT development process that are consistent with end strength and force structure allowance levels.

(10) Serve as the DA proponent for the Structure and Manning Decision Review (SMDR) and Training Resources Arbitration Panel (TRAP) processes.

(11) Approve and establish the selection criteria for entry to MOS training.

(12) Display the trained manpower shortfall on which the time phase incremented mobilization training base output requirements are founded PERSCOM, (TAPC–MOP), and provide to HQ TRADOC for development of fiscal year (FY) MOB ARPRINT course input requirements.

(13) Conduct quarterly input to training general officer in process review (IPR) on major input to training issues.

(14) Act as Army Executive Agent for Total Army Centralized Individual Training Solicitation (TACITS).

(15) Act as DA main point of contact providing and receiving training requirments, training program allocations, reservations, and class schedules to or from other services.

*b.* The Deputy Chief of Staff for Operations and Plans (DCSOPS) will—

(1) Determine in coordination with PERSCOM, ARNG, and OCAR the U.S. Army War College and equivalent level training requirements and submit them to HQDA (DAPE–MPT), WASH DC 20310–0300.

(2) Cohost the SMDR and participate in the TRAP processes.

(3) Determine intermediate level training requirements except for

Command and General Staff College and submit them to HQDA (DAPE–MPT), WASH DC 20310–0300.

(4) Determine in coordination with PERSCOM, ARNG, and Army Reserve Personnel Center (ARPERCEN) training requirements for Army personnel at foreign service schools and submit them to HQDA (DAPE–MPT), WASH DC 20310–0300.

(5) Determine in coordination with PERSCOM, ARNG, and OCAR training requirements for the U.S. Army Sergeants Major Academy and submit them to HQDA (DAPE–MPT), WASH DC 20310–0300.

(6) Determine policies, plans, and resources to accomplish the post mobilization training base output requirements.

(7) Ascertain mobilization training base capability to sustain the force required for conflict scenarios associated with various operations plans (OPLANS) and the Defense Guidance Illustrative Planning Scenario.

(8) Evaluate MOB ARPRINT data to determine impact on costs of operating the training base.

(9) Participate during the ARPRINT process in the development of affordable training baseline levels that will provide quality training and readiness levels.

(10) Prioritize training allocations for constrained courses during the year of execution and during the program objective memorandum (POM) years.

*c.* The Deputy Chief of Staff for Logistics (DCSLOG) will—

(1) Participate in the SMDR to validate equipment constraints.

(2) Establish policy and procedures for developing foreign military training requirements at Army schools and training centers, and for developing mobile training teams for foreign countries. These requirements are to submitted to Commanding General (CG), TRADOC ATTN: ATFA–P, Ft. Monroe, VA 23651–5000. (See AR 12–15, chap 1.)

(3) Establish policy and procedures for the development of logistics-unique training programs for other than initial skill training.

(4) Participate in and provide input as required for the SMDR and TRAP processes based on the Logistics Master Training Plan.

*d.* The Chief, National Guard Bureau (CNGB), will—

(1) Develop the ARNG IET MOS, specialty skill identifier (SSI), NCOES, and in-service training requirements for ARNG officer, warrant, enlisted and civilian personnel per guidance from ODCSPER.

(2) Manage quotas allocated to the ARNG to ensure maximum seat fill.

(3) Review ARNG input, graduate, and attrition data for courses attended by ARNG personnel.

(4) Participate in and provide input as required to the SMDR and TRAP processes.

*e.* The Chief, Army Reserve (CAR), will—

(1) Develop USAR IET MOS training requirements and establish policy and procedures for the development of the USAR in-service training requirements.

(2) Manage quotas allocated to the USAR to ensure maximum seat fill.

(3) Review USAR input, graduate, and attrition data for courses attended by USAR personnel.

(4) Participate in and provide input as required to the SMDR and TRAP processes.

*f.* The Chief of Engineers (COE) will—

(1) Establish policy and procedures for the development of the Total Army engineer-unique training programs for other than initial skill training.

(2) Participate in the SMDR to validate facility constraints.

*g.* The Judge Advocate General (TJAG) will establish policy and procedures for the development of Army professional legal training requirements for officers, enlisted personnel (other than IET), and civilians.

*h.* The Chief of Chaplains (CCH) will establish policy and procedures for the development of AA officer chaplain requirements.

*i.* The Surgeon General (TSG) will—

(1) Establish policy and procedures for the development of professional education and training programs for officers, enlisted personnel, and civilians of the Army Medical Department (AMEDD).

(2) Manage and control input to the AMEDD Long-Term Civilian Training (LTCT) Program and to the Professional Post Graduate Short Course Program (PPSCP).

(3) Direct, control, and supervise all security assistance training provided by the AMEDD per AR 12–15.

*j.* The CG, PERSCOM, will—

(1) Act as the principal agent for DCSPER in determining AA peacetime (TAPC–PL) and mobilization (TAPC–MOP) training requirements.

(2) Manage IET MOS training quotas for all inputs (AA, ARNG, and USAR) during peacetime and mobilization as follows—

*(a)* Obtain class schedules from ATRRS for Army-taught training and IET training taught by the other Services. Make sure that class seats are loaded on the Recruit Quota System (REQUEST). Upon MOB, class schedules and seats will be loaded on ATRRS by the appropriate school within 72 hours and passed by ATRRS to the Request Mobilization System (RMS).

*(b)* Support, to the greatest extent possible within the training schedule, the component seasonality of accessions reflected in the Army Components Military Manpower Programs (ACMMP).

*(c)* Manage and control (during both peacetime and mobilization) Army execution year input for both officer and enlised IET courses.

*(d)* Make sure that any adjustments to allocated IET seats are coordinated with the appropriate component, USAREC, MACOM concerned with the training, HQDA (DAPE–MPT), and ODCSOPS (DAMO–TRP). Adjustments to all IET seats used by other than Army nonprior service individuals will be posted to ATRRS.

*(e)* Ensure maximum use of available training seats.

*(f)* Participate in and provide input as required for the SMDR and TRAP processes.

(3) Apply the ODCSOPS approved methodology to compute the AA resident NCOES requirements for the Noncommissioned Officer Academies and service school NCOES courses.

(4) Manage and control quotas for all non-IET training AA training requirements (to include ASI, SQI, functional, skill level two and above MOS courses, and officer courses).

(5) Manage and control input for both officer and enlisted skill-producing professional development courses.

(6) Ensure the posting to ATRRS of class schedules, and input and graduation data of Total Army input for non–IET in Navy and National Security Agency courses.

(7) Act as ODCSPER operator for TACITS and biannually distribute solicitation letter to all users of Army training (conducted both by and for the Army) to include other services, civilians, and foreign military. The solicitation will include at a minimum all courses and all modes of training per DA Pam 351–4.

*k.* The CG, TRADOC, will—

(1) Assign all TRADOC course numbers.

(2) Approve all Course Administration Data (CAD) and Programs of Instruction (POIs) for all TRADOC courses.

(3) Add, delete or change (as appropriate) all courses in ATRRS for which TRADOC is the proponent.

(4) Publish TRADOC Pam 350–1, *Schedule of Classes*. (this pamphlet may be obtained from HQ TRADOC, ATTN: ATOM, Ft. Monroe, VA 23651–5000.

(5) Provide guidance and ensure class schedules are appropriately entered into ATRRS according to deadlines established by ODCSPER for TRADOC schools and those schools for which TRADOC has general staff proponency.

(6) Manage quota allocation for all non-IET training courses in TRADOC schools and DOD schools for which TRADOC has general staff proponency.

(7) Ensure posting the ATRRS input and graduation data of Army components, other services, Government agencies, and civilians attending training in TRADOC schools and those schools for which TRADOC has general staff proponency.

(8) Participate in and provide input as required for the SMDR and TRAP processes.

(9) Update DA Pam 351–4, incorporating changes from AR 611–201, AR 611–101, AR 611–112, and Memorandum of Approved Change (MOAC) as appropriate for TRADOC schools and those schools for which TRADOC has general staff proponency.

(10) Receive requests from non-DOD agencies for attendance at TRADOC service schools for those agencies not covered under TACITS.

(11) Assist in development of ATRRS programs, displays, reports, files, and procedures related to mobilization training.

(12) Act as DA Executive Agent for development of the FY Mobilization ARPRINT and—

*(a)* Convert the mobilization training base output requirements (MTBOR) produced by DCSPER, DA, into course input requirements and establish in ATRRS.

*(b)* Solicit and coordinate development of mobilization training requirements from U.S. Navy (USN), U.S. Air Force (USAF), U.S. Coast Guard (USCG), and U.S. Marine Corps (USMC) for Army courses.

*(c)* Develop input requirements for all mobilization courses for which DCSPER, DA, does not produce a MTBOR for example, basic training (BT), reception battalions, functional courses, and noncommissioned officer (NCO) courses.

*(d)* Maintain mobilization course administrative data and route or path data in ATRRS.

*(e)* Develop procedural guidance by which schools or U.S. Army Training Centers (USATCs) conduct the MOB ARPRINT training capability analysis and enter resulting data into ATRRS input capability and resource constraint files.

*(f)* Coordinate and supervise the annual MOB ARPRINT training capability analysis and ATRRS data entry by TRADOC schools and USATCs.

*(g)* Assist other MACOMs in MOB ARPRINT development matters.

(13) Develop and manage security assistance training requirements for all IET MOS, Area of Concentration (AOC), NCOES, warrant officer, and commissioned officer courses.

*l.* The CG, FORSCOM, will—

(1) Manage FORSCOM civilian quotas to ensure maximum seat fill.

(2) Ensure posting of input and output data into ATRRS for FORSCOM conducted NCOES courses.

*m.* The CG, HSC, will—

(1) Assign all HSC course numbers.

(2) Add, change or delete (as appropriate) all courses in ATRRS for which HSC is proponent.

(3) Make sure class schedules are appropriately entered into ATRRS IAW deadlines established by ODCSPER for HSC schools and those schools for which HSC has general staff proponency.

(4) Manage quota allocation for all non-IET training courses for which HSC has responsibility.

(5) Ensure posting to ATRRS input and graduation data of Army components, other services, Government agencies, and civilians attending training in HSC schools and those schools for which HSC has general staff proponency.

(6) Participate in and provide input as required for the SMDR and TRAP processes.

(7) Update DA Pam 351–4 on ATRRS system incorporating changes from AR 611–201, 611–101, AR 611–112, and MOAC as appropriate for HSC schools, and those schools for which HSC has general staff proponency.

*n.* The CG, AMC, will—

(1) Assign all AMC course numbers.

(2) Add, change, or delete (as appropriate) all courses in ATRRS for which AMC is proponent.

(3) Provide guidance and ensure class schedules are appropriately entered into ATRRS IAW deadlines established by ODCSPER for AMC schools and those schools for which AMC has general staff proponency.

(4) Manage quota allocation for all training courses for which AMC has responsibility.

(5) Ensure posting to ATRRS input and graduation data of Army components, other services, Government agencies, and civilians attending training in AMC schools and those schools for which AMC has general staff proponency.

(6) Update DA Pam 351–4 on ATRRS system for AMC schools and those schools for which AMC has general staff propenency.

(7) Update Defense Management Education and Training Catalog, DOD 5010.16–C.

(8) Participate in and provide input as required for the SMDR and TRAP processes.

(9) Receive requests from non-DOD agencies for attendance at AMC colleges and schools for those agencies not covered under TACITS.

(10) Provide facilities, equipment, and technical expertise and assistance as required to facilitate training of personnel.

*o.* The Commander (CDR), ARPERCEN, will—

(1) Act as the principal agent for the CAR in determining the USAR peacetime requirements for formal non-IET resident school training required for the Ready Reserve. This includes troop program unit (TPUs), Individual Ready Reserve (IRR), and Active Guard and Reserve (AGR).

(2) Manage and control all in-service quotas allocated to the USAR to ensure maximum seat fill.

(3) Monitor USAR input, graduate, and attrition data for courses attended by USAR personnel to enforce the provisions of DA Pam 351–4 and AR 600–9.

(4) Participate in and provide input as required to the SMDR and TRAP processes.

*p.* Army School Commandants or Directors, Army Training Center Commanders, and Commander, ARPERCEN. These individuals will—

(1) Enter class schedules and scheduled input into ATRRS and make schedule changes from TRAP or other actions within 10 working days of notification.

(2) Post actual inputs within 10 working days of the start date and the actual outputs withing 10 working days from the end date of each class as announced in class schedules. Losses from a course must be posted within 10 working days of notification to ensure adjustments in any follow–on training for which an individual may have reservations. Actual input and output data must be posted for all courses of instruction.

*q.* Commanders of MACOM Proponent School Systems will—

(1) Report accurate and timely information in ATRRS.

(2) Monitor the data provided by their subordinates.

(3) Enforce this regulation within the MACOM.

*r.* Commanders of Army training MACOMS or agencies (to include TRADOC, AMC, HSC, FORSCOM, ARNG, OCAR, TJAG, and the Corps of Engineers) will—

(1) Program, budget, coordinate, or conduct training.

(2) Monitor and ensure accuracy and timeliness of training attrition data input for courses of instruction.

(3) Recommend changes to selection criteria for MOS training for HQDA (DAPE–MP) approval.

*s.* All training managers will—

(1) Allocate and control quotas for those courses for which they exercise overall quota control.

(2) Reserve seats at least 45 days prior to reporting date (except Defense Language Institute (DLI), which requires 30 days) for persons attending courses in which quotas have been allocated.

(3) Complete the TACITS surveys as directed.

### 1–5. Input to Training Management General Officer Steering Committee

*a.* The General Officer Steering Committee (GOSC) will meet quarterly or on an "as needed" basis.

*b.* The functions of the GOSC are as follows:

(1) Approve the ARPRINT.

(2) Address or resolve critical issues that impact on major issues in the input to the training arena.

### 1–6. Policy

*a.* Army Staff agencies and MACOMs will provide, as needed, specific guidelines required for adapting management of individual training to their particular missions or functions.

*b.* Individual training requirements will be developed and programmed based on—

(1) Current authorization documents.

(2) Army policies.

(3) Current manpower inventory.

(4) Projected gains and losses.

(5) Training attrition rates.

(6) Availability of resources.

## Chapter 2
## Army Training Requirements and Resources System

### 2–1. Introduction

ATRRS consists of a centralized training management database with interactive terminals at Army training MACOMs, agencies, schools, and training centers that are operational on ATRRS. Information on most individual training courses taught by or for Army personnel is in the ATRRS database. The ATRRS—

*a.* Supports the Army Personnel Plan.

*b.* Provides accurate and responsive information for input into reports and budgets (such as Program 8) submitted to DOD and Congress.

*c.* Provides the capability to monitor the individual training program for all courses of instruction taught by Army school systems.

*d.* Provides training management information to Army Staff agencies, training MACOMs or agencies, and Army schools and training centers.

*e.* Operates according to procedures stated in this regulation.

*f.* Supports both the peacetime and mobilization mission of the Training Directorate, ODCSOPS.

### 2–2. ATRRS subsystems

ATRRS includes the following subsystems—

*a.* Quota Management System (QMS).

*b.* Mobilization Planning System (MPS).

*c.* ATRRS Report Generator System (RPG). (Time Sharing Option (TSO)).

*d.* Schools Catalog System.

*e.* Student Trainee Management System—Enlisted (STRAMS–E).

*f.* Army Automated Training Application System (AATAS).

*g.* TACITS.

*h.* USAR Budget Module.

### 2–3. ATRRS reports

The following is a partial list of reports from the ATRRS—

*a.* The ARPRINT.

*b.* The Military Manpower Training Report (MMTR).

*c.* The ARPRINT Total Army Class Schedule (TACS) Report.

*d.* Program element reports.

*e.* A listing of courses for DA Pam 351–4 with data displays on course scopes and course prerequisites.

*f.* Input and load reports.

*g.* Attrition reports.

*h.* Class schedule reports.

*i.* Class input and graduate update analysis reports.

*j.* Personnel, equipment, and facility constraints.

*k.* Man-years in training analysis reports.

*l.* Primary Leadership Development Course (PLDC), Basic Noncommissioned Officers' Course (BNCOC) and Advanced Noncommissioned Officers' Course (ANCOC) Management.

*m.* Mobilization reports.

### 2–4. ARPRINT report

*a.* The ARPRINT identifies projected individual training requirements and programs for the Total Army, other Services, other non-DA civilians, foreign military, and DOD agencies.

*b.* The ARPRINT is a mission document to MACOMs, training agencies, and Army schools. Training MACOMs will ensure that enough classes are scheduled to meet the approved training program reflected in the ARPRINT. The ARPRINT will serve as the basis for class schedules to be updated for the current and budget FYs.

*c.* The ARPRINT provides all formal courses of instruction conducted by or for Army personnel and includes the training conducted by—

(1) TRADOC.

(2) HSC.

(3) FORSCOM.

(4) AMC.

(5) TJAG.

(6) DINFOS.

(7) DLIFLC.

(8) DMS.

(9) DSMC.

(10) Other military services.

(11) On-the-job training when officially recognized by ODCSOPS.

(12) Other nonmilitary schools.

(13) Foreign military.

*d.* The ARPRINT—

(1) Is the primary Army document showing valid training requirements and the associated training program for formal resident instruction.

(2) Is based on Total Army manpower requirements. A key product of the ARPRINT process is the officer and enlisted training baselines. These baselines constitute the affordable levels of training man-years. On the officer side, where accessions tend to be fixed and the size of the force is managed more through control of losses, IET training (including OBC and follow-ons) is included within the designated baseline for each FY. For the enlisted, where force size is controlled largely through accession management (therefore leading to wide fluctuations in IET training volume), IET (BT, One Station Unit Training (OSUT), and Advanced Individual Training (AIT), is excluded from the specified baselines.

(3) Matches, as closely as possible, the training loads contained within appropriate program budget guidance.

(4) Is used by the school system to allocate resources.

(5) Serves as the basis for determining frequency of training (class schedules).

*e.* Training baselines

(1) A training baseline is a target or recommended level of training expressed in man-years. Baselines are designated for each component of the force (AA, USAR, and ARNG), and for each subset (commissioned officer, warrant officer and enlisted). Baselines are built for each specific group and training cannot be swapped among groups. Special attention is focused on Active component training (officer accession students and permanent change of station (PCS) and temporary duty (TDY) enroute students) because in addition to comprising their respective baselines, they also constitute a portion of the Individuals' Account (Trainees, Transients, Holdees, and Students (TTHS)). As such, these personnel are not available for unit assignment. Fluctuations in their numbers may cause similar changes to the AA's operating strength. The inherent stability offered by the baseline concept, if adhered to, reduces the need for structure or other training changes by helping to maintain an operating strength consistent with planning levels. TDY and return students are not included in the Individuals' Account since attendance occurs while they are assigned to their current units. Projected training seats must be designated by mode of attendance and training cannot readily be exchanged between modes without affecting the balance between TTHS and the operating strength.

(2) Are developed in the annual ARPRINT process and constitute fiscally and operationally constrained levels of training for both enlisted, warrant officer, and commissioned officer identities.

(3) Are a product of negotiation by representatives from: ODCSPER Training, ODCSOPS Force Development, ODCSOPS Training, ODCSOPS Readines, ODCSPER Force Alignment, and ODCSPER Force Structure.

(4) Training baseline levels will be assessed during SMDR processes and TRAP reviews. They cannot be exceeded without approval of the input to training GOSC. However, if programmed training levels exceed established baselines during a FY, the addition to the TTHS account must be forwarded to the next Force Structure Panel on POM build or to the Out-of-Cycle Committee for approval and assignment of a bill payer. The bill payer would ordinarily be either structure or other training.

(5) Training baselines will be developed for a 3-year period: execution year, budget year, and the first year of the POM.

(6) Review of training baseline projections will be accomplished through analysis of the TTHS Forecasting System man-year projections. These projections include all student time, but the classroom time (training time) measured through the ATRRS database constitutes the bulk of student (or accession student) man-years. Increases in ATRRS nonunit training will ordinarily result in an increase in TTHS man-years. Decreases in ATRRS (provided they are reductions in seats likely to have been filled) will ordinarily produce the opposite effect. TTHS impact on the operating strength can also be monitored through this system.

*f.* MOB ARPRINT—

(1) Is the primary planning document that provides individual training requirements (by course, by week) for a 52-week period beginning with mobilization.

(2) Is a time-phased plan for expansion, continuation, or phase-out of training base courses upon mobilization.

(3) Is based on the Total Army trained manpower shortfall of fillers or replacements required to maintain a prescribed level of organization during post mobilization.

(4) Is used to develop training base expansion plans, training strategies, mobilization resource constraint information, and to facilitate transition to revised levels of training upon mobilization.

## 2–5. Development of training requirements

Training requirements will be developed according to the following—

*a. General requirements.* Individual training requirements will be developed and entered directly into the ATRRS database according to the procedures described in the ATRRS Users Manuals. (Copies may be obtained from HQDA (DAPE–MPT), WASH DC 20310–0300). Training requirements may be entered into ATRRS only by the agency responsible for developing those requirements.

*b. Enlisted requirements.* IET requirements developed by PERSCOM, OCAR, and NGB will be based on the approved manpower program identified by HQDA (DAPE–MP). These training requirements will serve to update the ARPRINT.

*c. IET requirements.* These are developed by the following automated models and are subject to verification by HQDA (DAPE–MPT).

(1) FORECAST MOS Level System (MOSLS) (System used by the AA).

(2) Training Requirement Generator (TRG) (System used by the USAR).

*d. Structure changes.* IET course structure changes (length and AIT versus OSUT) will be validated by the training manager and sent to HQDA (DAPE–MPT), WASH DC 20310–0300 not later than 6 weeks prior to SMDR.

*e. Validation of course numbers.* TRADOC, HSC, and AMC will validate course numbers by FY within ATRRS not later than 6 weeks prior to SMDR. Course number changes will be kept to a minimum and will be identified in the Course Change Report and Course Number Change Report.

*f. Adding and deleting MOS, ASI, and AOC courses.* The latest addition or deletion of MOS, ASI, and AOC courses will be based upon AR 611–201, AR 611–101, and AR 611–112. Training MACOMs and HQDA (DAPE–MPT) will delete obsolete MOS codes. Training MACOMs and agencies will add new courses and delete obsolete courses.

*g. Notional courses.* On occasion, a skill requirement and associated training requirement may be identified for which no approved POI, course title, or number exists. HQDA (DAPE–MPT) will notify the appropriate training MACOM to add notional courses to ATRRS as necessary to reflect projected (undocumented) MOS restructure and force modernization actions. HQDA (DAPE–MPT) will add notional courses to ATRRS as required.

## 2–6. Solicitation of training requirements

*a.* The solicitation of DA personnel to attend training or of other than DA personnel to attend courses conducted by the DA will be accomplished via the TACITS subsystem of ATRRS.

*b.* Training Requirements Office, HQDA (DAPE–MPT) is the executive agent for individual training solicitation within the DA.

*c.* Training Plans Branch, ODCSPLANS, PERSCOM (TAPC–PLT) is the ODCSPER operational arm for individual training solicitations within the DA.

*d.* TACITS surveys will be distributed twice annually. The primary individual training solicitation survey will be distributed in August. This solicitation will include all the courses of training, for which the training requirement is determined by solicitation that are attended by DA personnel (AA, USAR, and ARNG); military or civilian) regardless of the training provider; or all those courses conducted by the Army that are attended by other than Army personnel. The second survey will be distributed in March and will include only additions and changes to the course list contained in the August TACITS survey.

*e.* TACITS will be prepared and distributed by PERSCOM in both an automated version on ATRRS, for online users, and in a hard copy version for those organizations that do not have access to ATRRS.

*f.* Courses that must come in line in the upcoming execution or budget years that miss the two solicitation windows will be treated as an out-of-cycle solicitation. Procedures for approval of an out-of-cycle solicitation are as follows:

(1) Request approved and signed by commander or commandant of respective school and sent to training MACOM for approval.

(2) Request approved and signed by the Assistant Deputy Chief of Staff for Training (ADCST), TRADOC/Commandant, Academy of Health Sciences (AHS)/Assistant Deputy Chief of Staff for Personnel (ADCSPER), AMC and forwarded to HQDA (DAPE–MPT) for approval.

(3) Approval or disapproval by HQDA (DAPE–MPT).

(4) Approval returned to training MACOM for field solicitation. Distribution to field will contain statement that solicitation has been approved by HQDA. Returns from field will be posted to ATRRS by training MACOM and addressed at TRAP. No manpower bills will be paid by HQDA as a result of an out-of-cycle solicitation.

## 2–7. Structure and Manning Decision Review

*a. Overview.* The SMDR is designed to validate Total Army training requirements and then reconcile those requirements to an affordable, acceptable, and executable training program. The SMDR will be conducted annually during the month of April. Training requirements will be initially established for the third POM year, validated for the second POM year (the primary focus of the SMDR), and fine-tuned for the first POM year. Fine-tuning will be accommodated where possible within the funded capabilities of the training activities.

*b.* Timeframe for SMDR—

(1) Training requirements loaded on ATRRS by components approximately 30 days prior to SMDR.

(2) Summary sheets available approximately 20 days prior to SMDR.

(3) Equipment, facility, and personnel constraints loaded on ATRRS by schools 15 days prior to SMDR.

(4) Council of Colonels (COC) review of SMDR results within 20 working days of SMDR adjournment.

(5) Input to training management GOSC review of constrained

courses and approval of ARPRINT within 30 working days of SMDR adjournment.

(6) Final ARPRINT available on ATRRS within 5 working days after GOSC approval.

*c.* SMDR participants—

(1) ODCSPER.

(2) ODCSOPS.

(3) ODCSLOG.

(4) OCE.

(5) NGB.

(6) OCAR.

(7) PERSCOM.

(8) TRADOC.

(9) USAREC.

(10) HSC.

(11) OTSG.

(12) AMC.

(13) DMS.

(14) DLIFLC.

(15) DINFOS.

(16) ARPERCEN.

(17) FORSCOM.

(18) Installation where specific courses are taught and the proponent schools, if locations are different.

(19) Other Services.

(20) Other Government agencies.

*d.* The DCSPER will be responsible for—

(1) Cochairing SMDR.

(2) Conducting overall coordination for the SMDR, to include verifying the record set of training requirements.

(3) Publishing the summary sheets.

(4) Conducting overall coordination for COC and GOSC reviews of constrained programs.

(5) Determining instructor values for each course in coordination with training MACOM.

(6) Providing the billing document to other services for the instructor values determined during the SMDR for quota courses.

(7) Providing the authority for MACOMs, schools, or ATCs to execute Memorandums of Agreement (MOAs) or Memorandums of Understanding (MOUs), and Interservice Support Agreements (ISSAs) relative to individual course support requirements.

*e.* The DCSOPS (DAMO–TR) will be responsible for—

(1) Cochairing SMDR.

(2) Assessing the training resource bill provided by TRADOC, HSC, and AMC to determine feasibility and supportability prior to the SMDR.

(3) Providing the guidance to resolve course-related (POI and course length, for example) issues that affect an arbitrated training program recommendation.

(4) Providing the full-time representation during the SMDR conference to recommend programs or alternatives for resolution of shortcomings in support of proposed training requirements, to include the prioritization of training.

(5) Coordination with Office of the Deputy Chief of Staff for Logistics/Office of the Chief of Engineers (ODCSLOG/OCE) or other DCSOPS activities to resolve equipment or facility issues as identified during the SMDR.

*f.* The CG, PERSCOM, will be responsible for—

(1) Generating, validating, and maintaining all AA training requirements (except AMEDD officer training requirements).

(2) Entering AA training requirements into ATRRS.

(3) Providing full-time participants with decision-making authority during SMDR to recommend programs as alternatives to resolve shortcomings in support of proposed training requirements.

(4) Ensuring inclusion of current force modernization data as it impacts on arbitrated training requirement programs.

(5) Ensuring loading of results from TACITS into ATRRS for use at SMDR.

(6) Providing facilities for conduct of SMDR to include access to ATRRS and teleconference capability.

*g.* The CDR, USAHPSA, OTSG will be responsible for—

(1) Generating, validating, and maintaining all AMEDD, AA officer, other service, and foreign national training requirements for AMEDD courses.

(2) Entering Active Army officer, other service, and foreign national training requirements onto the ATRRS for AMEDD courses.

(3) Monitoring and providing policy guidance on the training requirements generation process for AMEDD officer courses.

(4) Providing the full-time participant with decision-making authority during SMDR to recommend programs as alternatives to resolve shortcomings in support of proposed training requirements.

*h.* The CNGB will be responsible for—

(1) Generating, validating, and maintaining all ARNG training requirements.

(2) Entering ARNG training requirements onto the ATRRS system.

(3) Providing full-time participant with decision-making authority during SMDR to recommend programs as alternatives to resolve shortcomings in support of training requirements.

*i.* The CAR will be responsible for—

(1) Generating, validating, and maintaining IET USAR training requirements.

(2) Entering USAR IET training requirements onto the ATRRS.

(3) Providing the full-time participant with decision-making authority during SMDR to recommend programs as alternatives to resolve shortcomings in support of proposed training requirements.

*j.* The CDR, ARPERCEN, will be responsible for—

(1) Generating (in coordination with appropriate MACOMs), validating, and maintaining all in-service USAR training requirements.

(2) Entering in-service USAR training requirements into the ATRRS system.

(3) Providing the full-time participant with decision-making authority during SMDR to recommend programs as alternatives to resolve shortcomings in support of proposed training requirements.

*k.* The CG, TRADOC, will be responsible for—

(1) Providing input in ATRRS for all course changes or new initiatives 45 days prior to SMDR start date to include approved class sizes, course lengths, and instructor contact hours (ICH).

(2) Establishing and validating training capability bands for IET.

(3) Verifying all variable course data for each course (ICH, course lengths, class size, course type, contract code, ITRO code, for example).

(4) Identifying constraints on training caused by equipment or facility shortages that may become potential training stoppers.

(5) Directing equipment redistribution within TRADOC, as required, and monitor supply actions to obtain equipment.

(6) Identifying, confirming, and prioritizing MCA projects initiated to support training. Coordinating with OCE on facilities issues in support of SMDR.

(7) Coordinating with DA DCSOPS and DCSLOG on equipment issues as appropriate during SMDR.

(8) Prioritizing and submitting to DA requests for relocatable buildings and equipment.

(9) Providing full-time participation during SMDR.

(10) Validating installation manpower resource bills.

(11) Providing all resource data applicable to each course and providing guidance on coverage of appropriate FY resource bills via Modernization Resource Information Submission (MRIS) or Mission Decision Package (MDEP) for TRADOC schools and training centers.

(12) Providing a list of instructor requirements by course that have changed since the previous SMDR.

(13) Providing other service manpower resource bill to DAPE–MPT for all courses for which TRADOC is proponent or has general staff proponency.

(14) Developing MOAs, MOUs, and ISSAs with other services as necessary to execute the approved annual training programs developed through the SMDR.

(15) Providing copies of approved MOAs, MOUs, and ISSAs to HQDA (DAPE–MPT) WASH DC 20310–0300.

*l.* CDR, HSC, will be responsible for—

(1) Providing input on ATRRS of all course changes or new initiatives 45 days prior to SMDR start date.
(2) Establishing and validating training capability bands for all courses.
(3) Identifying constraints on training caused by equipment or facility shortages that may become potential training stoppers.
(4) Identifying, confirming, and prioritizing MCA projects initiated to support training.
(5) Providing full-time participant at SMDR during timeframe scheduled for AMEDD courses.
(6) Developing MOAs, MOUs, and ISSAs with other services as necessary to execute the approved annual training programs developed through the SMDR.
(7) Providing copies of approved MOAs, MOUs, and ISSAs to HQDA (DAPE–MPT) WASH DC 20310–0300.
*m.* AMC will be responsible for—
(1) Providing input on ATRRS of all course changes or new initiatives 45 days prior to SMDR start date.
(2) Establishing and validating training capability for all AMC courses.
(3) Confirming and prioritizing MCA projects designed or programmed to support training.
(4) Providing full-time participation at SMDR during timeframe scheduled for AMC courses.
(5) Providing all resource data applicable to each course to provide guidance on coverage of appropriate FY resource bills via MRIS/MDEP.
(6) Coordinating with course proponents prior to SMDR and representing those proponents at the SMDR. Coordination may be achieved during annual proponent reviews conducted by the AMC schools.
(7) Developing MOAs, MOUs, and ISSAs with other services as necessary to execute the approved annual training programs developed through the SMDR.
(8) Providing copies of approved MOAs, MOUs, and ISSAs to HQDA (DAPE–MPT) WASH DC 20310–0300.
*n.* Proponent schools
(1) Validate all USAF and Navy courses for which they are proponent.
(2) Verify personnel constraint (CP) display data.
(3) Load facility constraints (CF).
(4) Load equipment constraints (CE).
(5) Program required MCA projects to eliminate facility constraints.
*o.* During the SMDR, manning and associated institutional training requirements are verified. Components will be challenged based on prior-year use of specific training courses. Unless component can show valid methods to improve show rates, training requirements requested will be reduced. Training requirements for each course are then compared with available training resources. Overages and shortages of manpower (military by MOS, AOC, ASI and SQI; civilian by grade), equipment, and facilities are identified. Any course that lacks sufficient resources to train its full training requirement is termed "constrained." Either additional training resources are provided for each constrained course or the training program for that course is adjusted. The result is a recommended training program. Upon completion of the SMDR, decision briefings will be presented to a COC and General Officer Council to resolve issues where training courses are constrained. The final training program for a given FY is published in the ARPRINT and serves as the basis for the development of class schedules. The ARPRINT indicates both the training requirement and the programmed number so that constraints can be audited.

### 2–8. Training Resource Arbitration Panel

*a.* The purpose of the TRAP is to manage changes to the training program during the execution year.
*b.* The DCSPER manages the TRAP with the following participants as members—
(1) ODCSOPS.
(2) OCAR.
(3) ARPERCEN.
(4) NGB.
(5) PERSCOM.
(6) TRADOC.
(7) HSC/OTSG.
(8) AMC.
(9) USAREC.
(10) Other Services.
*c.* The TRAP attempts to provide sufficient training seats to train the Total Army program plus other non-Army students who attend Army schools. It is extremely important that all deadlines established according to these TRAP procedures be followed.
*d.* Skill level 1 TRAP
(1) The TRAP is convened monthly. The first TRAP for a new FY will be held in the preceding February. This TRAP will address all transactions to include increases, reductions, trades, and execution of training bands. TRAP issues for the current FY will be considered on an "as needed" basis after the February TRAP. The SMDR, held during April, will consider "show stopper" changes to the execution year training program and those changes critical to building the outyear program. The following are timeframes associated with skill level 1 TRAP actions—
*(a)* Components initially load requested changes on ATRRS not later than 8 calendar days prior to the TRAP meeting.
*(b)* Components review other component changes for possible trades until 2 days (1200 hours) prior to the TRAP. At noon 2 days prior to the TRAP, ODCSPER will print reports to be used at the TRAP meeting.
*(c)* Approved actions from the TRAP will be posted to the ATRRS system by DAPE–MPT not later than 3 working days after the TRAP.
(2) Training increases will first be evaluated for trade-offs among input agencies. If trades cannot be successfully accomplished, schools and ATCs will be asked if the increases can be accepted without additional resources. (In TRADOC this is expressed as a training band.) Training bands for skill level 10 MOS will be validated with each appropriate school not later than 1 February for the upcoming FY. If training bands are exercised at the TRAP, ATRRS electronic messages will be automatically generated and sent to the appropriate school or ATCs informing them that they have 5 working days from the date of the message to adjust class schedules. Schedule changes should include classes beginning no sooner than 120 days from date of the message to allow time for individuals to be recruited and to complete BT. Major commands will coordinate instructor and funding needs on projected TRAP actions and will identify the instructor difference between SMDR and ARPRINT and the projected TRAP requirements. This difference will be reported as the instructor bill. If double or triple shifting of classes is required to support a TRAP requirement, selective supervisor positions may also be included in the bill. If schools identify a major end item of equipment shortage, the major training command will attempt to fill the requirement through temporary loan, reallocation, or out of DAMPL sequence action. Equipment requirements not fulfilled by this process will be included in a total bill package to HQDA, DAPE–MPT. Accounting for instructor changes as a result of TRAP actions is the duty of HQDA, DAPE–MPT. Changes must be handled "off-line" because The Army Authorization Documents System (TAADS) documents cannot be changed to accommodate TRAP actions. Changs to instructor levels will be accommodated by manpower trade-offs within each MACOM, provided trade-offs are available. Manpower tradeoffs can be accommodated through 30 November of the current FY. Requested TRAP increases after 30 November that require additional manpower will require a directed military overstrength (DMO). (See para 2–8*d*(4)). If trade-offs are approved, notification to initiate action by PERSCOM will be facilitated by a memorandum to PERSCOM, TAPC–EPS, from HQDA, DAPE–MPT, subject: "Execution Year Change Notice," which will identify gaining and losing activities, schools, and installations. This memorandum is authority to change authorizations and initiate by-

name fill accordingly. Once executed, PERSCOM will notify HQ TRADOC, ATPL–AE, of the individual names of projected fill.

(3) Training decreases will first be evaluated for trade-offs among input agencies. If trades cannot be successfully accomplished, the following actions will be taken—

*(a)* If reductions occur from February through August for the upcoming FY, reductions will be retained in the "CT" (course trap) display on ATRRS; schools will not make adjustments to their class schedules. During this period (February–August), these reductions may be picked up by any component as a trade and posted to the "CR" (course requirement) display. After the August TRAP, all remaining reductions will be posted to the "CR" display and schools will adjust their class schedules downward to reflect these reductions by the end of August. Coordination must be made between PERSCOM, TAPC–EPT–S, and the schools to make sure classes with valid reservations are not eliminated. Once coordinated and adjusted, these reductions are final.

*(b)* Reductions that occur after the August TRAP for the upcoming FY will be recognized at the TRAP and be held in the "CT" display for a period of approximately 60 days (2 TRAPs). If reductions equal a class size, REQUEST will close selected classes from recruiting. If, at the end of 60 days no input agency has picked up these reductions, the reductions will be posted to the "CR" display in ATRRS, and the appropriate school will be notified via ATRRS electronic message to adjust class schedules within 5 working days of receipt of message. Reductions will be made to future seats only and coordination must be made between PERSCOM, TAPC–EPT–S, and the school where to make these reductions.

(4) COC DMO: When expansion of training will require additional resources, the following procedures apply—

*(a)* The requesting component certifies that the requested increase is correct and verified with written justification (to include reason for increase, authorizations, current and projected fill, impact if increase is not provided), and has been signed at the colonel level. This written justification will be provided to HQDA, DAPE–MPT.

*(b)* The major training command (TRADOC, HSC) will be notified by ATRRS electronic message or telephone, and asked to provide the resource bill within 10 working days of notification. Justification for all requested bills will also be provided in a follow-up memorandum or ATRRS message.

*(c)* Once the bill has been provided, PERSCOM will have 5 working days to assess the ability to provide additional instructors (if required).

*(d)* DCSOPS will have 5 working days to assess the ability to provide additional equipment (if required).

*(e)* When all data are available, the COC Chairperson will present information for concurrence or nonconcurrence to the COC and attempt to negotiate final action. Presentation will either be by memorandum for written concurrence or nonconcurrence, or a meeting will be convened. COC action must be unanimous. If the COC disapproves the request but the component desires reconsideration, a General Officer TRAP will be convened.

*(f)* Voting members of the COC are: HQDA, DAPE–MPT (Chair), DAPE–MBF, DAPE–MPE, DAPE–MPA; ODCSOPS, DAMO–TRP; PERSCOM; OCAR/ARPERCEN; NGB; TRADOC (as appropriate); and HSC/OTSG (as appropriate).

*(g)* If approval is given, the school will be notified via ATRRS electronic message of increase and resource approval. If DMO is required, this action will be coordinated with ODCSPER, DAPE–MB for approval prior to school notification. DMO requests will contain the following information: unit identification code (UIC), number of personnel, grade and specialty of each position, and duration of each position. The school will have 5 working days after notification of approval to increase class schedules. Adjustments to class schedules should be no sooner than 120 days from the date of receipt to the message to allow time for recruiting and possible BT.

*e.* All training not classified IET TRAP—

(1) The TRAP will be convened monthly. The first TRAP for a new FY will be held in the preceding February. This TRAP will address increases, reductions, and trades among components. TRAP issues for the current FY will be considered on an "as needed" basis after the February TRAP. The SMDR, held during April, will consider "show stopper" changes to the execution year training program and those changes critical to building the outyear program. The following are timeframes associated with Skill level 2 and above TRAP actions—

*(a)* Input agencies (quota managers) initially load requested changes on ATRRS not later than 14 calendar days prior to the TRAP meeting.

*(b)* Training MACOMs (TRADOC/HSC/AMC) review component requests for resolution and provide approval or disapproval at the TRAP.

*(c)* Approved actions from the TRAP will be posted to ATRRS system by HQDA, DAPE–MPT not later than 5 working days after the TRAP.

(2) Training increases will first be evaluated for trade-offs among input agencies. If trades cannot be successfully accomplished, schools will be asked if the increase can be accepted without additional resources. If not, MACOMs will coordinate with the schools to identify additional instructor and funding needs to accommodate the projected TRAP training requirement identifying the instructor difference between the established SMDR or ARPRINT and projected TRAP requirements. This difference will be reported as the instructor bill. If double or triple shifting of classes is required to support a TRAP requirement, selective supervisor positions may also be included in the bill. If schools identify a major end item of equipment shortage, the MACOM will attempt to fill the requirement through temporary loan, reallocation, or out of Department of the Army Master Priority List (DAMPL) sequence action. Equipment requirements not fulfilled by this process will be included in a total bill package to HQDA, DAPE–MPT. Instructor changes are a duty of HQDA, DAPE–MPT. Changes must be handled "off-line" because TAADS documents cannot be changed to accommodate TRAP actions. Changes to instructor levels will be accommodated by manpower trade-offs with each training MACOM, provided trade-offs are available. Manpower trade-offs can be accommodated through 30 November of the current FY. Requested TRAP increases after 30 November that require additional manpower will require a DMO (See para 2–8*e*(5).) If trade-offs are approved, notification to initiate action by PERSCOM will be facilitated by a memorandum to PERSCOM, TAPC–EPS from HQDA, DAPE–MPT, subject: "Execution Year Change Notice," which will identify gaining and losing activities, schools, and installations. This memorandum is authority to change authorizations and initiate by name fill accordingly. Once executed, PERSCOM will notify the Training MACOM, (HQ TRADOC, ATPL–AE/info to ATOM–O) of the individual names of projected fill. The training MACOM will coordinate with schools and adjust "C3" (class schedules) and "RA" (quota allocations) displays as appropriate. Input agencies should inform HQDA, DAPE–MPT via ATRRS electronic message or telephone when adjustments requested are for specific classes or timeframes. Otherwise, the decision where to adjust class schedules or RA display is left up to the MACOM or schools. If program increases are approved at the TRAP, the school has 5 working days from the date of notification to adjust class schedules.

(3) For other than HQ TRADOC, training decreases must equal or exceed optimum class size for consideration at the TRAP. If less than optimum, the quota management system must be used. If training decreases equal or exceed optimum class size, they will first be evaluated for trade-offs among input agencies. If trades cannot be successfully accomplished, the following action will be taken—

*(a)* If reductions occur from March through August for the upcoming FY, reductions will be reflected in the "CR" display on ATRRS. Schools will adjust class schedules based on MACOM guidance. Coordination must be made between HQ TRADOC (ATOM–O)/HSC and the schools to ensure classes with valid reservations are not eliminated.

*(b)* Reductions that occur after the August TRAP for the upcoming FY will be recognized at the TRAP. If reductions equal or exceed optimum class size, the reduction will be posted to the "CR"

display in ATRRS and the appropriate school will be notified via ATRRS electronic message to adjust class schedules within 5 working days of receipt of message. Reductions will be made to future seats only and coordination must be made with HQ TRADOC (ATTG-MPS)/HSC/AMC/schools on where to make these reductions. Reductions of less than optimum class size are to be managed through the QMS.

(4) Training decreases for HQ TRADOC require the following actions—

*(a)* If reductions occur from March through August for the upcoming FY, reductions will be reflected on the "CR" display in ATRRS and the schools will adjust class schedules based on MACOM guidance.

*(b)* Reductions that occur after the August TRAP for the upcoming FY will be recognized and finalized at the TRAP. Reductions will be posted to the "CR" display in ATRRS, and the appropriate school will be notified via ATRRS electronic message to adjust class schedules within 5 working days of receipt of message.

*(c)* Coordination must be made between HQ TRADOC (ATOM-O)/HSC and the schools to ensure classes with valid reservations are not eliminated. Reductions will be made to future seats only and coordination must be made with HQ TRADOC (ATOM-O)/HSC/AMC/schools on where to make these reductions.

(5) COC DMO: When expansion of training will require additional resources, the following procedures apply—

*(a)* The requesting component certifies requested increase is correct and verified with written justification (to include reason for increase, authorizations, current and projected fill, impact if increase is not provided), and has been signed at the colonel level. This written justification will be provided to HQDA (DAPE-MPT), WASH DC 20310-0300.

*(b)* The major training command (TRADOC, HSC, and AMC) will be notified by ATRRS electronic message or telephone and asked to provide resource bill within 10 working days of notification. Justification for all requested bills will also be provided in a follow-up memorandum or ATRRS message.

*(c)* Once the bill has been provided, PERSCOM will have 5 working days to assess the ability to provide additional instructors (if required).

*(d)* DCSOPS will have 5 working days to assess the ability to provide additional equipment (if required).

*(e)* When all data is available, the COC Chairperson will present information for concurrence or nonconcurrence to the COC and attempt to negotiate final action. Presentation will either be by memorandum for written concurrence or nonconcurrence, or a meeting will be convened. COC action must be unanimous. If the COC disapproves the request and the component desires reconsideration, a General Officer TRAP will be convened.

*(f)* Voting members of the COC are: HQDA, DAPE-MPT (chair), DAPE-MB, DAPE-MPE, DAPE-MPA, DAPE-MPO; ODCSOPS, DAMO-TRP; PERSCOM; OCAR/ARPERCEN; NGB; TRADOC (as appropriate); HSC/OTSG (as appropriate); and AMC (as appropriate).

*(g)* If approval is given, the school and MACOM will be notified via ATRRS electronic message of increase and resource approval. If DMO is required, this action will be coordinated with ODCSPER, DAPE-MB for approval prior to school notification. The DMO request will contain the following information: UIC, number of personnel, grade and specialty of each person, and duration of each DMO position. The school will have 5 working days after notification of approval to increase class schedules.

### 2-9. Scheduling of classes

Class schedules will be produced within the following timeframes—

*a.* For IET MOS training schools, class schedules will be developed prior to 1 July for the upcoming budget year (for example, on 1 July 1989 schedules for FY91 are required). Minor adjustments may have to be made at a later time. Those schedules will be entered into ATRRS database according to procedures in the ATRRS Users Manual. Schools and activities without ATRRS terminals will submit class schedules prior to 1 July to the appropriate training command (MACOM) unless otherwise designated. Submission of class schedules will be according to the guidance from the training MACOM. The MACOM will review the ATRRS database to determine the extent to which the programmed requirement is being supported. MACOMs will notify HQDA (DAPE-MPT), WASH DC 20310-0300 of any schedule shortfall that affects Army training mission. MACOMs will take appropriate action to resolve class schedule discrepancies prior to 1 August.

*b.* By 15 July, HQDA, DAPE-MPT will provide PERSCOM with class schedules for loading onto the REQUEST System. Later changes will be based on significant changes identified by ODCSPER. Once loaded on REQUEST, reallocation of seats for inservice and other services cannot be accomplished without HQDA, DAPE-MPT approval.

*c.* Class schedules for all other training not designated as IET MOS training will be developed within 40 working days of final ARPRINT availability for the upcoming budget year (for example, ARPRINT approved 1 September 1989 schedules for FY 91 are required.) These schedules will be entered into the ATRRS database according to procedures in the ATRRS User Manual. Schools and activities without ATRRS terminals will submit class schedules to the appropriate major training command (MACOM). Submission of class schedules will be according to guidance from the training MACOM. MACOMs will review the ATRRS database 40 working days after ARPRINT availability to determine the extent to which the programmed requirement is supported. MACOMs will notify HQDA (DAPE-MPT), WASH DC 20310-0300 of any schedule shortfalls that affect the Army training mission. MACOMs will take action to resolve class schedule discrepancies within 50 working days of ARPRINT availability.

### 2-10. Interservice Training Review Organization

*a.* The Interservice Training Review Organization (ITRO) is an organization of military services set up to improve the cost effectiveness and efficiency through course consolidations or collocations and standardizations.

*b.* There are three types of courses under ITRO: collocated, consolidated, and quota.

(1) *Collocated.* A course used by one or more services on another service's installation with shared classroom facilities and equipment. Training policies and curriculum are determined by the host service. Instructor requirements are calculated by the participating services and provided to meet their needs.

(2) *Consolidated.* A course consisting of a curriculum developed by two or more services. The course faculty is normally multiservice. The curriculum may be common throughout or consist of a common core plus service-unique tracks. Training policies, directives, and materials are determined by mutual agreement among the services. Instructor requirements are calculated on an ITRO formula that fair shares the requirements among the participating services.

(3) *Quota.* A course managed, controlled, and conducted by one service that is used by another service. Participating services do not have curriculum input, and use the course exactly as presented by the host service. Instructor requirements are calculated using the host-service formulas.

## Chapter 3
## Army Training Requirements and Resources System Subsystems

### 3-1. Quota Management System

The QMS is a subsystem of ATRRS used to support training execution management of all training not designated as IET. QMS provides an interactive means for entering, updating, and reviewing information relating to all these courses.

*a. Policy.*

(1) Inputs and ouputs on a by-name basis will be posted to