**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| WILLIAM A. CLARK, JAMES P. DAVERN, ROBERT E. FREEBURG, WILLIE R. JOHNSON, ROBERT A. MUSTIN, JOHN DOES 1 through 4, and JANE DOES 1 through 3, individually, and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | CASE NO. 00-644C<br>(Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**JOINT STATUS REPORT**

In its January 25, 2006 opinion denying the government's motion for summary judgment, the Court ordered the parties to address two issues in this Joint Status Report ("JSR"). First, the Court's order instructs the parties to indicate "the manner in which they propose to proceed with the action." January 25, 2006 Opinion and Order at 9. Second, the parties must explain their respective interpretations of what effect, if any, Section 604 of the 2006 National Defense Authorization Act ("2006 Amendment" or "2006 NDAA"), which amends 37 U.S.C. 206(d)(1), has on the claims of current or future plaintiffs. *Id.*

## I. PROPOSALS FOR FURTHER PROCEEDINGS

### A. Plaintiffs' Proposed Schedule

It is time now for the Court to set a schedule that will permit adjudication of class certification issues and of all remaining liability and damages issues without unnecessary delay. For the more than five years since Mr. Clark first brought this suit as a putative class action on

November 1, 2000, this litigation has focused almost exclusively on the statutory construction question as to National Guard members' entitlement under 37 U.S.C. § 206 to compensation for correspondence coursework. The Federal Circuit's decision, which provides the law of this case for all further proceedings (*see, e.g., Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1989)), definitively has resolved all legal aspects of this question. That decision mandates that National Guard members are entitled to compensation under the statutory scheme in effect when this suit was brought for completing correspondence courses "required" by the Service Secretaries. *Clark v. United States*, 322 F.3d 1358, 1368 (Fed. Cir. 2003). According to this Court's recent summary judgment decision, the only factual issues that remain to be decided are what correspondence courses actually have been prescribed by the Service Secretaries and which correspondence courses plaintiffs actually took. January 25, 2006 Opinion at 9. These factual issues can be resolved only through further discovery and trial. A schedule should be set that will facilitate timely adjudication of the remaining issues in this case, including plaintiffs' request for class certification, the factual issues identified by the Court, and the damages owed to plaintiffs and the class they seek to represent.

To achieve these ends, plaintiffs propose a plan that will permit resolution of the motion for class certification on a fully developed factual record, followed by a second discovery period to address remaining merits issues and trial. Specifically, plaintiffs suggest the following schedule:

| | |
|---|---|
| May 4, 2006 | Answer to complaint |
| May 18, 2006 | Initial Rule Disclosures from both sides |

| | |
|---|---|
| May 29, 2006 | Initial status report to Court on progress of discovery, to be followed by periodic status reports every 45 days thereafter, and by hearings before the Court as necessary. |
| October 31, 2006 | Close of discovery[1] |
| December 8, 2006 | Plaintiffs file Memorandum in Support of Motion for Class Certification |
| January 8, 2007 | Defendants file Opposition to motion |
| February 8, 2007 | Plaintiffs file Reply in Support of Motion |
| March 8, 2007 | Hearing on class certification |
| September 10, 2007 | Close of merits discovery |
| November 5, 2007 | Trial |

The government has not objected, at least in principle, to plaintiffs' proposed schedule. Instead, the government seeks to delay commencement of the class certification and subsequent proceedings in order to reargue issues that already have been definitively resolved by the Federal Circuit and this Court. The government also seeks further to delay the filing of its answer, notwithstanding the fact that it already is long overdue. Under Rule 12 of the Federal Claims Court Rules, the government's answer was due February 6, 2006, 10 days after this Court denied

[1] The discovery period may be shortened or extended, depending upon the progress of discovery and the Court's resolution of any discovery disputes.

the government's summary judgment motion. *See* Fed. Cl. Ct. R. 12(b). For the reasons discussed further below, this Court should reject all of the government's proposals because they will serve only to create unwarranted delay in the resolution of a case that already has been pending for more than five years.

**B. Defendant's Proposed Schedule**

As we explain in greater detail below, the United States believes the clarifying language of section 206(d)(1) contained in the 2006 NDAA ends this case. Accordingly, we believe the schedule set forth by the plaintiffs is unnecessary. If any schedule is adopted, the Government contends it should simply reflect a briefing schedule and argument date for the issue the Court posed in its January 2006 opinion: What effect, if any, Section 604 of the 2006 NDAA, which amends 37 U.S.C. 206(d)(1), has on the claims of current or future plaintiffs?

If the Court disagrees with the Government's position regarding the impact upon this case of the language in section 604 of the NDAA for FY 2006, the Government is unable at this time to provide a more detailed proposal addressing how the case should proceed because the Government believes it needs additional guidance from the Court. Specially, the Government seeks guidance regarding two matters that emanated from the Court's findings in its January 25, 2006 opinion. In its opinion, the Court rejected the Government's argument that the Secretary lacked the authority to promulgate regulations mandating the completion of correspondence courses by members of the National Guard. *Clark v. United States*, No. 00-644, 2006 WL 242669, at *3-4 (Fed. Cl. Jan. 25, 2006). The Court then stated that in future proceedings the "Court must consider whether the service secretaries have prescribed correspondence courses for Plaintiffs," and in order to resolve this matter, the Court needed to determine "(1) whether the

service secretaries actually prescribed correspondence courses for Plaintiffs, and, if so, (2) which of these correspondence courses Plaintiffs actually took." *Clark v. United States*, at *5.

The Government needs guidance from the Court regarding the Court's first question however, because in its motion for summary judgment, the Government produced sworn testimony from the chief policy-maker for National Guard and Reserve training matters within the Department of Defense that explained why the Secretary has never prescribed regulations requiring correspondence course work for members of the National Guard. See DA[2] 540-542, Declaration of Daniel Kohner, ¶ 11-13. Accordingly, the United States believes that the uncontroverted evidence in the record demonstrates that the answer has already been provided to the Court's first question. However, if the Court disagrees with the Government on this point, and did hold that the Secretary's implementing regulations are not material to this issue, then plaintiffs would not require additional discovery upon this issue.

Another issue upon which the Government requires additional guidance from the Court concerns the scope of the Court's decision regarding the definition of equivalent training. The Court's decision rejected the United States' position that "equivalent training" is a term of art that has been defined by the Secretary to mean in lieu of drill. *Clark v. United States*, at * 5. In doing so, the Court determined that correspondence course work is "capable of qualifying as equivalent training." *Clark v. United States*, at *6. However, the Court's recent opinion did not address other aspects of equivalent training that the Government contends bar plaintiffs from receiving compensation for completing correspondence courses. Specifically, the Court's

[2] "DA" refers to defendant's appendix, which was submitted with its motion for summary judgment.

opinion does not address the constraints the Secretary[3] has placed upon this type of training (i.e. that equivalent training must be pre-approved, conducted pursuant to orders, for a period of two hours, and while in uniform). See DA 539, Declaration of Daniel Kohner, ¶ 10 ; DA 545, Declaration of Colonel Audino, ¶¶ 5-8; DA 517-419, Declaration of Sergeant Major (Retired) McNamara, ¶¶ 4-6. Thus, because the Court's recent decision did not address the effect these regulatory constraints would have upon plaintiffs' claims, the Government is unable to inform the Court how to proceed in this matter at this time. Again, if the Court disagrees with the Government upon this point, and did hold in its recent decision that the Secretary's implementing regulations are not material to this issue, then plaintiffs would also not require additional discovery upon this issue as well.[4]

**C. Plaintiffs' Response**

The two issues on which the government claims to need "guidance" simply recycle arguments that have been fully considered and soundly rejected by the Federal Circuit and this

[3] The Government contends that because 32 U.S.C. § 502 and 37 U.S.C. § 206 grant the Secretary unfettered authority in regulating National Guard training, so while pursuant to the plain language of the statute correspondence course work is "capable of qualifying as equivalent training," the Secretary's regulations placed constraints upon that term.

[4] Resolution of the Government's questions are important because depending upon how the Court answers them will impact the schedule in this case, particularly as to the scope of discovery. Should the plaintiffs be successful in their quest for class certification, this case could involve a potential class of more than a half million people. The current authorized strength of the National Guard is 456,800 (350,000 in the Army Guard and 106,800 in the Air Guard). In addition to this group, there are prior members of the National Guard who may also be potential class members. Discovery aimed at certifying a class of this magnitude will not only be time consuming but enormously expensive. Determining damages could entail individualized review of records to determine entitlement, if any. Since many National Guard members have served upon extended active duty, and would not be entitled to compensation for correspondence course work performed in that duty status, merely determining that a correspondence course has been completed would not end the inquiry of whether additional compensation was appropriate.

Court. There is no justification for the government's purported need for guidance as to either issue.[5]

With respect to the first issue, the government professes to be unable to proceed because it ostensibly presented uncontroverted evidence, a declaration by Daniel Kohner, to support its assertion that the Service Secretaries never actually prescribed correspondence courses as required training. However, as will be evident from a cursory review of this declaration, Mr. Kohner was addressing only the legally irrelevant fact that the Service Secretaries have prescribed correspondence courses as required *compensable* training.[6] Indeed, in each of the paragraphs referred to by the government, Mr. Kohner examined only those regulations addressing *compensation* for specific types of training. *See* Defendants' Appendix ("DA") 540-542, Declaration of Daniel Kohner, ¶ 11-13. As the Federal Circuit unequivocally has ruled, it is immaterial whether the Service Secretaries have prescribed payment for mandatory correspondence coursework because "Section 206(a)(2)" itself "requires payment for training the Service Secretaries have "prescribe[d]." *Clark v. United States*, 322 F.3d at 1368. The Federal

[5] There is no justification for the government's attempt to hold the class certification process hostage to further argument about issues conclusively resolved by the Federal Circuit's decision. The government's assertions about a possible need for "individualized review of records" (Section II.B, *infra*) to determine damages are patently premature because no class certification discovery has yet been conducted. Moreover, these unsubstantiated assertions fail even to suggest any impediment to class certification because the existence of some individualized issues regarding damages cannot serve to preclude class certification. *See, e.g., Barnes v. United States,* 68 Fed. Cl. 492, (Fed. Cl. 2005) (rejecting government's similar contention, and ruling that the possibility that "there will be individualized damage determinations here does not preclude granting plaintiffs' [class certification] motion"). As Judge Allegra correctly observed, "there scarcely would be a case that would qualify for class status in this court or any other" if such considerations were determinative, and it is a certainty that "none of the class actions for product liability and mass torts commonly certified in the district courts, in which the nature and magnitude of damages vary dramatically, would pass muster." *Id*

[6] Had the Secretaries specifically prescribed compensation for correspondence course training, Plaintiffs would have had no reason to file suit.

Circuit's decision confirms that the relevant regulations are those establishing that Guard members have been required to complete correspondence courses as one form of military training, regardless of whether compensation has been prescribed.

On the legally relevant issue of whether the Secretaries have required the completion of such courses, this Court has correctly found that a disputed issue of fact exists. January 25, 2006 Opinion at 6. The Court also pointed to several regulations submitted by Plaintiffs demonstrating that the Secretaries have in fact required correspondence coursework. Chief among these is the Army Correspondence Course Catalog, in which the Court found at least four potentially required courses. September 28, 2006 Hearing Transcript at 29-34. Such evidence led the Court to decide that a genuine issue of material fact exists regarding whether training has actually been prescribed. This issue of fact can only be resolved through further discovery and trial, which would be unnecessarily and unfairly delayed by the government's proposals.

The government also is not entitled to further guidance on the second issue regarding "the regulatory constraints" that it asserts the Secretaries have placed on "equivalent training." *Supra*, § I.B. The "constraints" to which the government refers apply only to "makeup" training performed pursuant to 37 U.S.C. § 206(e). In its January 25 Opinion, this Court soundly rejected the government's argument that correspondence coursework must satisfy the requirements for "makeup" training in order to qualify as equivalent training under Section 206(a)(2). This Court determined that "equivalent training" under Section 206(a)(2) includes both makeup training under Section 206(e) and other forms of equivalent training, such as correspondence coursework. January 25 Opinion at 8. As mandated by the Federal Circuit's decision that Section 206(a)(2) "requires payment" for required correspondence course work (322 F.3d at 1368), as well as settled principles of statutory construction precluding interpretations that render any statutory

term redundant,[7] this Court correctly ruled that Section 206(a)(2) is not limited to such "make up" training. The Court also correctly ruled that the terms of both section 206(a)(2) and the 206(d) exclusion on payment for correspondence coursework (which did not apply to National Guard members) and relevant regulations demonstrate that correspondence courses "must be capable of qualifying as equivalent training." *Id.* Because the limits the government identifies for payment for make up training under Section 206(e) are not applicable to the correspondence coursework for which plaintiffs seek compensation under 206(a)(2), no conceivable purpose would be served by entertaining the government's request for further judicial guidance as to any limitations on pay for such make up training.

## II. EFFECT, IF ANY, OF THE 2006 AMENDMENT TO THE NATIONAL DEFENSE AUTHORIZATION ACT

### A. Plaintiffs' Position

Under the law of the case established by the Federal Circuit's decision, the 2006 Amendment to Section 206(d)(1) has no impact on any National Guard member's entitlement to compensation for required correspondence coursework undertaken prior to the 2002 Amendment that created Section 206(d)(1). In its decision remanding the case for resolution of specified liability issues and a determination of damages, the Federal Circuit unequivocally ruled that the 2002 Amendment applied only prospectively. Therefore, the 2006 Amendment to the 2002 Amendment cannot affect Plaintiffs' rights to compensation under the prior statutory scheme. *See* 322 F.3d at 1361 n.1.

---

[7] As the Court correctly observed, Section 206(e), which, unlike Section 206(a)(2), refers to "equivalent training". . . performed . . . *instead of* 'the member's regular period of instruction," would be rendered redundant if Section 206(a)(2) were read to cover only such "substitute'" training. January 25 Opinion at 7.

The 2002 Amendment, which was passed while this case was on appeal, moved the former 206(d) to section (d)(1)[8] and added Section 206(d)(2). The new Section 206(d)(2) provided that:

> A member of the Selected Reserve of the Ready Reserve may be paid compensation under this section at a rate and under terms determined by the Secretary of Defense, but not to exceed the rate otherwise applicable to the member under subsection (a), upon the member's successful completion of a course of instruction undertaken by the member using electronic-based distributed learning methodologies to accomplish training requirements related to unit readiness or mobilization, as directed for the member by the Secretary concerned. The compensation may be paid regardless of whether the course of instruction was under the direct control of the Secretary concerned or included the presence of an instructor.

37 U.S.C. 206 (2002).[9]

In remanding this case for further proceedings, the Federal Circuit concluded that the 2002 Amendment converted the prior "mandatory compensation scheme into a discretionary one." *Clark*, 322 F.3d at 1362 n.1. The Federal Circuit further ruled that this 2002 Amendment served only to "moot" the "prayer for prospective injunctive relief prohibiting the government from refusing to pay for future mandatory courses taken by National Guard members." *Id.*

The 2006 Amendment made another change to this now discretionary statute. The Amendment modified Section 206(d)(1) to apply to National Guard members, as well as members of the "federal reserve component."[10]

---

[8] At the time the instant suit was filed on November 1, 2000, Section 206(d), which became 206(d)(1) pursuant to the 2002 Amendment, provided:

> This section does not authorize compensation for work or study performed by a member of a reserve component in connection with correspondence courses of a uniformed service.

37 U.S.C. § 206(d) (2000).

[9] The 2002 Amendment had an effective date of December 28, 2001. 37 U.S.C. § 206 (2006).

[10] As modified by the 2006 Amendment, Section 206(d)(1) provides:

Under the law of the case established by the Federal Circuit's decision, the 2006 Amendment necessarily can have no impact on the entitlement to compensation for required correspondence courses conferred by the preexisting statutory scheme under which Mr. Clark brought suit. The Federal Circuit's conclusion that the 2002 Amendment had no retroactive effect also forecloses any retroactive application of a subsequent amendment to that amendment.

There is no merit to the government's contention that the 2006 Amendment "ends the case." (Section II.B, *infra.*) That contention contravenes both the law of the case established by Federal Circuit's decision and the longstanding judicial presumption against retroactive application of statutes. Although the government characterizes its reading of the 2006 Amendment as providing a "clarification" of the prior law, the government unabashedly asks this Court to apply the 2006 Amendment to invalidate Plaintiffs' substantive compensation claims. In seeking to apply this Amendment to deprive Plaintiffs of compensation for required correspondence courses that they already had completed under the preexisting statutory scheme, which confers an entitlement to payment under the Federal Circuit's prior opinion, the government unquestionably is attempting to give the Amendment retroactive effect. *See* Section II.B, *infra*. Settled law prohibits such a retroactive application of the 2006 Amendment here.

As the Supreme Court instructed in *Landgraf v. USI Film Products*, the Court must "decline[] to give retroactive effect to statutes burdening private rights unless Congress had made clear its intent." 511 U.S. 244, 276 (1994). The Supreme Court specifically cautioned against the retroactive application of legislation that would, as in the present case, violate

---

> Except as provided in paragraph (2), this section does not authorize compensation for work or study performed by a member of a reserve component or by a member of the National Guard while not in federal service in connection with correspondence courses of a uniformed service.

37 U.S.C. 206 (2006).

established "judicial principles concerning the application of new rules to pending cases and preenactment conduct." *Id.* at 276-81. Application of a statute is deemed retroactive when it would "take[] away or impair[] vested rights acquired under existing laws," or "attach[] a new disability, in respect to transactions or considerations already past…." *Id.* at 268-9 (citing as "influential" Justice Story's opinion while sitting on Circuit in *Society for Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756, 767 (No. 13,156) (CC NH 1814)).[11] The government's interpretation of the 2006 Amendment would have just such a prohibited impact here because it would deprive Plaintiffs of the right to compensation for required correspondence courses they already have completed, notwithstanding the Federal Circuit's ruling that the preexisting statutory scheme mandates payment for such coursework.

There is no evidence that would justify disregarding the presumption against retroactive application as it applies to the 2006 Amendment. The terms of the Amendment make no reference to any retroactive application, and, the legislative history of the 2006 Amendment likewise is silent on the issue of retroactivity. In fact, the legislative history of the 2006 National Defense Authorization Act does not even mention the further modification of 37 U.S.C. 206(d)(1) made by the 2006 Amendment. Because there is no evidence of Congressional intent that the 2006 Amendment be applied retroactively, the judicial presumption against retroactivity controls.[12] Therefore, the 2006 Amendment to Section 206(d)(1) cannot be read to apply

---

[12] The government's assertion that the contents of the Department of Defense sectional report somehow evince legislative intent that the 2006 Amendment apply retroactively to overrule the Federal Circuit is wholly without merit. The sectional report is a recommendation made by the Department of Defense Office of General Counsel to Congress, *not* a part of the legislative history of the 2006 National Defense Authorization Act. The government continues to conflate the intent of the Department of Defense with the intent of Congress, when only the latter has any relevance to statutory interpretation. It also should be emphasized that, even if evidence of congressional intent to apply the 2006 Amendment retroactively was not altogether lacking, the

retrospectively back to the effective date of the 2002 Amendment, which created this statutory provision, and the Amendment certainly cannot apply to Plaintiffs' claims under the earlier statutory scheme.

There is also no merit to the government's suggestion that the 2006 Amendment has any relevance in discerning the intent of the Congress that enacted the version of Section 206 under which Plaintiffs brought suit. The Federal Circuit has recognized the fundamental principle of statutory construction that "a subsequent amendment to legislation by a later Congress is not a reliable indication of the intent of a prior Congress that enacted the original legislation." *Diefenderfer v. Merit Sys. Protection Bd.*, 194 F. 3d 1275, 1279 (Fed. Cir. 1999). In interpreting the version of section 206 under which Mr. Clark brought suit, the Court must rely on the language of the statute and the intent of the enacting Congress, not on the language of or intent behind any subsequent enactments. The Federal Circuit unequivocally has stated that "it is not the intent of the present Congress that is important, but the intent of the Congress that enacted the . . . legislation" that is material. *Trans-Lux Corp. v. United States*, 696 F.2d 963, 966 (Fed. Cir. 1982.); *see also Otis Elevator Co. v. United States*, 157 Ct. Cl. 339, 301 F.2d 320, 324 (Ct. Cl. 1962) ("The proper interpretation of the statute should come from what we can discern as the intent of Congress at the time the statute was enacted."). Because the 2006 Amendment can serve at most only as evidence of the intent of the present Congress to amend the 2002 Amendment, the Amendment can have no impact on the Federal Circuit's ruling that Plaintiffs may pursue their claims for compensation for correspondence coursework completed pursuant to section 206(a) prior to the Amendments. Therefore, both the law of this case and well-settled

---

Amendment could not have the effect the government seeks to ascribe to it. Because the 2006 Amendment is an amendment to the 2002 Amendment, a retrospective application could relate back only to the date of the 2002 Amendment, which converted the mandatory compensation scheme into a discretionary one.

case law necessitate rejection of the government's argument that the 2006 Amendment retroactively deprives any National Guard member of the right to be paid for required correspondence courses completed under the prior mandatory compensation scheme.

**B. Defendant's position**

The Government believes the clarifying language to section 206(d)(1) that is contained in the 2006 National Defense Authorization Act ("NDAA") ends this case. As shown by the language used in Section 604 of the 2006 NDAA, Congress does not consider the clarifying language a change in the law, but simply clarifies what the law was and is. Recently the Federal Circuit held that Congress may clarify the law by amending previous existing statutes, *Princess Cruises, Inc. v. United States*, 397 F.3d 1358, 1363 (Fed. Circ. 2005), and "may amend a substantive law in an appropriations statute if it does so clearly." *Robertson v. Seattle Audubon Society, et al.*, 503 U.S. 429, 440 (1992).

When Congress adds language to a statute it does not necessarily indicate a change in the meaning of the unamended law. *Hawkins v. United States*, 30 F. 3d 1077 (9th Cir. 1994). Congress may, as it did in regard to 37 U.S.C.§ 206(d)(1), "amend a statute to clarify existing law, to correct a misinterpretation, or to overrule wrongly decided cases" without changing the meaning of the unamended law. Id. at 1082.

Additionally, application of § 206(d)(1)'s clarifying language to the pending case does not result in an unfair retroactive application of a new law, and this is true not only in respect to the claims of future plaintiffs, but also to the claims of the present plaintiffs. *Forrest v. United States Postal Service*, 97 F. 3d 137, 140 (6th Cir. 1996) ("a statute does not apply retroactively merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based on prior law"). "A court is to apply the law in effect at the time it renders its

decision, unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary. *Bradley v. Richmond School Board*, 416 U.S. 696, 711 (1974). Applying Section 206 as clarified and amended to the case now pending would not impair the rights a party possessed when it acted. There has been no determination that plaintiffs are entitled to pay for completing correspondence courses in their specific situations. Prior to this case, there has, as over 50 years of practice indicate, never been any expectation by National Guard[13] personnel that they would be treated differently than other reserve component members and be paid for completing correspondence courses. The clarifying language does nothing more than reiterate what the law was according to Congress prior to the Court of Appeals' decision – that National Guardsmen, like other members of the reserves, are not authorized compensation for completing correspondence courses. Subsequent legislation declaring the intent of an earlier statute "is entitled to great weight in statutory construction" (emphasis added). *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 380-81 (1969). This is particularly true in light of the timing of the clarifying amendment and its legislative history (see footnote 5).

Plaintiffs' argument that the NDAA 2006 amendment must be prospective because the NDAA 2002 amendment was determined to be prospective by the Court of Appeals for the Federal Circuit is without merit. The 2002 Amendment added an entire new subsection to 37 USC 206(d) and added the language "except as provided for in paragraph (2)" to paragraph 1. The 2006 Amendment added additional language to paragraph 1. This additional language does not amend the language added in the 2002 Amendment. Therefore, it is not an amendment of an amendment. The 2006 Amendment clarifies language that existed in the original statutory construction.

[13] The term National Guard refers to members in the Army National Guard ("ARNG") or Air National Guard ("ANG").

At bottom, the Government believes that section 604 of the NDAA for FY 2006 was specifically enacted to correct the misinterpretation of § 206(d). The sectional analysis DoD submitted to Congress specifically noted that the *Clark* opinion is contrary to the Department's longstanding interpretation of the statute and clarification was necessary in light of this erroneous interpretation, not to change the substantive law, but to ensure continued equal treatment of two equal and indispensable partners of the Nation's "total force."[14] *See Nelson v. Gerninger*, 295 F. 3d 1082, 1088 (10th Cir. 2002) (the Army and Air National Guard constitute vital components of the national defense "total force").

Finally, it is the government's position that, consistent with the principle that a court must apply the law in effect at the time it decides the case, section 604 also bars future claims, including the claims of putative members of the class plaintiffs seek to represent. The clarifying language of section 604 demonstrates that Congress' intent is clear – National Guard members are to be treated the same as members of the Reserves in that, pursuant to Section 206, neither is

---

[14] The section-by-section analysis by the DOD General Counsel's office, on page 21, stated as follows:

> Section 542 would clarify that the prohibition on compensating members 'of a reserve component' for correspondence courses applies not only to members of the Reserves, but also to members of the Army National Guard and the Air National Guard. The Department of Defense always has interpreted this prohibition to include members of the National Guard when not in a federal status. The United States Court of Appeals for the Federal Circuit held otherwise in *Clark v. United States*, 322 F.3d 1358 (Fed. Cir. 2003). Therefore, this clarification is needed to ensure equal treatment for all Reserve component members with respect to compensation for correspondence courses.

authorized compensation for correspondence courses. Accordingly, the claims of future plaintiffs are also foreclosed.[15]

## III. PROTECTIVE ORDER

### A. Plaintiffs' Position

The parties filed a joint motion for enlargement in order to allow sufficient time to address the issues raised by the Protective Order, and to avoid burdening the Court with unnecessary disputes. Although the parties did work to resolves these issues, consent to the addition of persons listed below as individuals authorized to receive protected information cannot be given at this time, because Plaintiffs' counsel has not yet been able to determine whether all of Doe Plaintiffs will approve these additions, which is required before any additional individuals can be given access to protected information. Over the course of the meet and confer process, the government altered the list of prospective additions no less than four times. Because the government's counsel was out of town for most of the week of the March 13, Plaintiffs' counsel were unable to confirm the final list until March 17. Plaintiffs' counsel anticipates that it will have been able to discuss the matter of the necessary approvals with Doe Plaintiffs prior to the April 20, 2006 status conference.

The anonymous Plaintiffs who have, to date, consented to the addition of the substantial number of individuals listed below have done so with one condition in order to safeguard them against the risk of reprisals, including denials of promotion or retention due to their involvement with this litigation, risks that this Court correctly recognized exist in granting the Protective Order. Given the government's request to give an additional twenty-five (25) individuals access

[15] The Government respectfully offers to submit a more detailed brief discussing its position upon this legal issue if the Court believes it would assist the Court in reaching an expeditious resolution of this matter.

to information that is subject to the Protective Order, these Doe Plaintiffs have asked for an amendment to the protective order prohibiting government personnel who are signatories to the protective order from participating in or exercising decision-making authority over promotion, position qualification or retention decisions with respect to the Doe Plaintiffs for the duration of this suit. Specifically, the Doe Plaintiffs request that paragraph 5 of the Protective Order be amended to include the following:

> All government personnel authorized to receive Protected Information pursuant to the Protective Order will refrain from participating in a promotion board that might be called upon to consider a promotion of a Doe Plaintiff, and also will refrain from participating in or exercising decision-making authority over position qualification, or retention decisions with respect to the Doe Plaintiffs for the duration of the term of the Protective Order. Should a person admitted to this Order be required to participate in or serve as a decision-maker in considering the promotion, position qualification or retention of a Doe Plaintiff, Defendant's counsel shall give Plaintiffs' counsel advance written notice of no less than twenty (20) business day notice before the affected person does so. The affected person will be barred from further access to Protected Information, but will continue to be bound by the terms of this Order.

The Does Plaintiffs also request that the following new paragraph 3 be added to the Acknowledgment that the Protective Order prescribes must be executed by each person given access to confidential information:

> If I have received any PROTECTED INFORMATION, I will refrain from participating in a promotion board that might be called upon to consider a promotion of a Doe Plaintiff and also will refrain from participating in or exercising decision-making authority over position qualification, or retention decisions with respect to the Doe Plaintiffs for the duration of the term of the Protective Order.

The government has objected to this proposed addition based on a claimed presumption that military officers will discharge their duties in good faith. This Court correctly rejected the government's invocation of this very same presumption in granting Plaintiffs' motion for entry of a protective order. As this Court correctly recognized in granting this relief, a presumption of

good faith cannot serve to deny the Doe Plaintiffs a reasonable degree of protection against the risk of retaliation these individuals face owing to their participation in this lawsuit.

The government also erroneously argues that the addition of the provisions to the protective order discussed above supposedly would represent an unwarranted intrusion by this Court into the armed services' management of personnel matters. This is simply not the case. The provisions proposed above do not seek to enmesh the Court in any decision of military personnel management; these provisions merely require that those who are directly responsible for making promotion, position qualification or retention decisions with respect to the Doe Plaintiffs to refrain from receiving protected information concerning the Doe Plaintiffs.

The cases the government cites provide no support for its objections because those cases involved situations in which a court was asked to review or overturn a decision specifically reserved to a military authority. *See, e.g,. Murphy v. United States*, 993 F.2d 871, 883 (Fed. Cir. 1993) (declining to review the merits of a military separation decision on grounds of nonjusticiability); *see also Chappell v. Wallace*, 462 U.S. 296, 303-04 (1983) (holding that enlisted military personnel could not bring suit in a civil court for actions confined to the military justice system.) Wholly unlike these cases, Plaintiffs have not asked this Court to review any personnel decision, nor have they suggested the Court involve itself in military personnel decision-making functions in any way. Plaintiffs have asked only for an amendment to the Protective Order to ensure that recipients of protected information do not themselves participate in promotion or retention decisions. This is a reasonable and carefully tailored restriction that will serve to protect the Doe Plaintiffs from the risks of reprisal previously recognized by this Court.

**B. Defendant's Position**

On April 8, 2005 the Court issued a protective order in this case. In light of the findings of the Court in its recent opinion, and because assigned military counsel have changed since that order was entered, the United States seeks the Court's approval for adding the following individuals to the list of Department of Defense personnel who would have access to the case files in this matter:

1. Ms. Christina French, Department of Defense ("DOD") Office of the General Counsel ("OGC")
2. Colonel ("COL") Laurence Soybel: Chief of the General Litigation Division ("GLD") for the Air Force.
3. Mr. Timothy Malloy: Associate Chief of the GLD for the Air Force
4. Lieutenant Colonel ("LTC") Richard Reed, Chief of the Military Personnel Litigation ("MPL") branch for the Air Force.
5. Major ("MAJ") Tracey Rockenbach: Trial Attorney, MPL for the Air Force.
6. Staff Sergeant Crystal Jimson: Administrative Support section of MPL for the Air Force.
7. LTC Wayne Marta, National Guard Bureau ("NGB") attorney and supervisor.
8. MAJ Charlie Young, NGB attorney who will be reassigned to this case when he returns from deployment in April.
9. Staff Sergeant Horace Blankenship, paralegal NGB.
10. Technical Sergeant Brenda Huff, paralegal NGB.
11. MAJ Christian Johnson, NGB-ARP, personnel supervisor to access files in the Personnel Electronic Records Management System ("PERMS").

12. Chief Warrant Officer 2 Vicky Fejeran, NGB-ARP, personnel expert to access files in the PERMS system.
13. Mr. Todd Millard, Office of the Judge Advocate General, United States Army, Washington, D.C.
14. MAJ Max Gonzalez, NGB-JA, attorney.
15. LTC Craig Bargfrede, NGB-Army Training ("ART"), Distributed Learning Branch Chief.
16. COL Philip Stemple, Chief, NGB-ART.
17. COL Willard Windsor, ANG/FM, ANG Comptroller.
18. SMSgt Ann Johnson, ANG/FM, who has access to ANG pay records.
19. MSgt Susan Watson, ANG/FM, alternate to SMSgt Johnson.
20. Mr. Gary James, ARC-F, Branch Chief of the ARNG Finance Detachment at DFAS.
21. LTC Timothy Wojtecki, ARNG Comptroller.
22. Mr. James Smyser, DOD OGC.
23. Ms. Carol Smith, Chief of the Student Records/Registrar Service Branch for Air University at Maxwell Air Force Base.
24. Mr. Dan Kohner, DOD Reserve Affairs.
25. Mr. Al Kahn, Army TRADOC.

The Government objects to the additional language the Doe plaintiffs propose for several reasons. The additional language plaintiffs ask the Court to impose upon the military ignores the "presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Porter v. United States*, 163 F.3d 1304, 1316 (Fed. Cir.

1998) (quotation omitted). Notwithstanding the fact that "[s]trong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters[]", *Sanders v. United States*, 594 F.2d 804, 813 (Ct. Cl. 1979), plaintiffs' language would preclude the administrators of the military personnel and promotion system from relying upon the services and advice of the many named persons needing access to these materials. Plaintiffs right to seek redress does not outweigh the right of the President and his designees in the military to be free of interference, *Orloff v. Willoughby*, 345 U.S. 83 (1953), based upon speculation that -- notwithstanding the presumption to the contrary --the officers will fail to discharge their legitimate duties. *Rostker v. Goldberg*, 453 U.S. 57, 64-65 (1981) ("perhaps in no other area has the Court accorded Congress greater deference"); *Chappell v. Wallace*, 462 U.S. 296, 305 (1983) ("courts are ill equipped to determine the impact upon discipline that any particular intrusion upon military authority might have"); *Goldman v. Weinberger*, 475 U.S. 503, 508 (1986) ("judicial deference is at its apogee" in a challenge to the rules and regulations of the military); *Murphy v. United States*, 993 F.2d 871, 872-73 (Fed. Cir. 1993) ("Aside from the limited warrant of courts to invade the military province, intrusion also raises a separation of powers issue."). As stated in *Orloff*, 345 U.S. at 91, "the President of the United States, before certifying his confidence in an officer and appointing him to a commissioned rank, has the right to learn whatever facts the President thinks may affect his fitness." The same holds true of the President's rights to have officials of his own choosing assist in making that determination. Ultimately, this issue presents a question of separation of powers,

because the President or his designee has unfettered discretion in the appointment of military officers. *Dysart v. United States*, 369 F.3d 1303, 1311 (Fed. Cir. 2004).

Respectfully submitted,

s/Helen K. Michael
HELEN K. MICHAEL
ROBERT SHULMAN
HOWREY SIMON ARNOLD
& WHITE, L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 783-0800

RICHARD T. DORMAN
CUNNINGHAM, BOUNDS, YANCE,
CROWDER & BROWN, LLC
1601 Dauphin Street
Mobile, AL 36604
(251) 471-6191

CHARLES J. COOPER
COOPER & KIRK, P.L.L.C.
1500 K Street, N.W., Ste. 200
Washington, DC 2005
(202) 220-9600

Attorneys for Plaintiffs

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ James M. Kinsella
JAMES M. KINSELLA
Deputy Director

s/Douglas K. Mickle
DOUGLAS K. MICKLE
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 307-0383
Fax: (202) 353-7988

OF COUNSEL:
LT COL JOSEPH FETTERMAN
MAJOR CHRIS SOUCIE
United States Army Litigation Division

Mr. TIMOTHY MALLOY
MAJOR TRACEY ROCKENBACH
United States Air Force
General Litigation Division

LT COL WAYNE MARTA
MAJOR CHARLES YOUNG
National Guard Bureau
Office of Chief Counsel
Attorneys for Defendant

March 20, 2006

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on March 20, 2006, a copy of the foregoing "JOINT STATUS REPORT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Helen K. Michael
Helen K. Michael