**No. 00-644**
**(Judge Firestone)**

---

**IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS**

---

**WILLIAM A. CLARK, et al.,**

**Plaintiff,**

**v.**

**THE UNITED STATES OF AMERICA,**

**Defendant.**

---

# DEFENDANT'S MOTION TO DISMISS

---

**PETER D. KEISLER**
**Assistant Attorney General**

**DAVID M. COHEN**
**Director**

**BRYANT G. SNEE**
**Assistant Director**

**DOUGLAS K. MICKLE**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Attn: Classification Unit, 8th Floor**
**1100 L Street, N.W.**
**Washington, D.C. 20530**
**Tel. (202) 307-0383**
**Fax (202) 353-7988**

**LT. COL. JOSEPH FETTERMAN**
**MAJOR JERRETT DUNLAP**
**United States Army Litigation Division**
**Arlington, VA 22203-1837**

**TIMOTHY MALLOY**
**LT. COL. RICHARD REED**
**MAJOR TRACEY ROCKENBACH**
**United States Air Force**
**General Litigation Division**

**MAXIMINO GONZALEZ**
**National Guard Bureau**
**Office of Chief Counsel**

**January 5, 2007**

**Attorneys for Defendant**

**TABLE OF CONTENTS**

DEFENDANT'S MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Nature of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Factual Background And Course Of Previous Proceedings . . . . . . . . . . . . . . . . . . 2

III. Statutory Provision Governing National Guard Pay: 37 U.S.C. § 206 . . . . . . . . . 7

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I. Plaintiffs' Claims Must Be Dismissed Because Congress Has Made Clear That 37 U.S.C. § 206(d) Has Never Authorized The Payment Of Plaintiffs' Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

A. This Court's Standard Of Review For Motions To Dismiss For Lack Of Jurisdiction And Failure To State A Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

B. The Plain Language Of Section 206(d) Makes Clear That 37 U.S.C. § 206 Is Not A Money-Mandating Statute . . . . . . . . . . . 12

C. Even Assuming Jurisdiction, The Plain Language Of Section 206(d) Clearly Applies To National Guard Members And Precludes Payment For Completing Correspondence Courses . . . . 12

D. The Clarification Provided By The FY 06 NDAA And FY 07 NDAA Eliminates The Need For The Statutory Interpretation Applied By The Federal Circuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

E. Congress Has Made Clear Its Intent Regarding The Scope Of Section 206(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

II. This Court Should Apply The Current Version Of 37 U.S.C. § 206(d) As Clarified . . . . . . . . . . 19

A. This Court Can Entertain The Government's Motion to Dismiss . . . . . . . . . . 19

1. The Federal Circuit Did Not Mandate Compensation . . . . . . . . . 20

2. The Current State Of The Law Supports The Government's Motion To Dismiss . . . . . . . . . . 21

B. The Congressional Clarification To 37 U.S.C. § 206(d) Should Be Given Retroactive Effect To Bar Plaintiffs' Claims . . . . . . . 22

C. The General Savings Statute Does Not Prohibit The Retroactive Application Of 37 U.S.C. § 206(d) . . . . . . . . . . 24

D. Retroactive Application Of Section 206(d) Satisfies Due Process . . . . . . . . . . 26

III. Plaintiffs Do Not Have A Valid Takings Claims . . . . . . . . . . 27

A. Standards For Establishing A Taking Under The Fifth Amendment . . . . . . . . . . 27

B. Plaintiffs Do Not Have A Vested Right In The Claimed Compensation . . . . . . . . . . 28

C. The Facts Surrounding The Passage Of The FY 07 NDAA Do Not Constitute A Taking . . . . . . . . . . 29

CONCLUSION . . . . . . . . . . 32

## TABLE OF AUTHORITIES

**CASES:** **PAGES:**

Adkins v. Rumsfeld,
464 F.3d 456 (4th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 29

Alberico v. United States,
783 F.2d 1024 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 31

Amen v. City of Dearborn,
718 F.2d 789 (6th Cir. 1983), cert. denied, 465 U.S. 1101 (1984) . . . . . . . . . . . . . . . . . . 21

Bell v. New Jersey,
461 U.S. 773 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Bell v. United States,
366 U.S. 393 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Bender v. Williamsport Area School Dist.,
475 U.S. 534 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Blue Chip Stamps v. Manor Drug Stores,
421 U.S. 723 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Bowen v. Georgetown University Hospital,
488 U.S. 204 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Bradley v. Richmond School Board,
416 U.S. 696 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Cass v. United States,
417 U.S. 72 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,
467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Clark v. United States,
50 Fed. Cl. 727 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Clark v. United States,
69 Fed. Cl. 443 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Clark v. United States,
322 F.3d 1358 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Colaizzi v. Walker,

812 F.2d 304 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Connolly v. Pension Benefit Guar. Corp.,
475 U.S. 211 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

EEOC v. International Longshoremen's Assoc.,
623 F.2d 1054 (5th Cir. 1980),
cert. denied, 451 U.S. (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Fern v. United States,
908 F.2d 955 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 31

Fernandez-Vargas v. Gonzalez,
126 S. Ct. 2422 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

Fisher v. United States,
402 F.3d 1167 (Fed. Cir. 2005)(en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Gonzalez v. United States,
48 Fed. Cl. 176, 178 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Gonzalez v. United States,
275 F.3d 1340 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 29

Hamm v. Rock Hill,
379 U.S. 306 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

Hoffman v. City of Providence,
909 F.2d 608 (1st Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Hughes Aircraft Co. v. Jacobson,
525 U.S. 432 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Karuk Tribe of Cal. v. Ammon,
209 F.3d 1366 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

Kokkonen v. Guardian Life Ins. Co. of America,
511 U.S. 375 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.,
761 F.2d 649 (Fed. Cir.),
cert. denied, 474 U.S. 902 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Landgraf v. Usi Film Prods.,
511 U.S. 244 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

M & J Coal Co. v. United States,
47 F.3d 1148 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Nelson v. Geringer,
295 F.3d 1082 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

New York Life Ins. Co. v. United States,
118 F.3d 1553 (Fed. Cir. 1997),
cert. denied, 523 U.S. 1094 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Norman v. United States,
183 Ct. Cl. 41 (1968),
cert. denied, 393 U.S. 1018 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 31

Palmer v. United States,
168 F.3d 1310 (Fed. Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Pension Benefit Guaranty Corp. v. R. A. Gray & Co.,
467 U.S. 717 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Perez v. United States,
156 F.3d 1366 (Fed Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Perpich v. Department of Defense,
496 U.S. 334 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Pipefitters Local Union No. 562 v. United States,
407 U.S. 385 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Prisco v. A&D Carting Corp.,
168 F.3d 593 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Rivers v. Roadway, Express,
511 U.S. 298 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 19

Ruckleshaus v. Monsanto Co.,
467 U.S. 986 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Schism v. United States,
316 F.3d 1259 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 31

Todd v. United States,
386 F.3d 1091 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Toro Co. v. White Consol. Indus.,
383 F.3d 1326 (Fed. Cir. 2004),
cert. denied 544 U.S. 948 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Ulmet v. United States,
17 Cl. Ct. 679 (1989)
aff'd 935 F.2d 280 (Fed. Cir. 1991) . . . . . . . . . . 19, 20

United States v. Bell,
5 F.3d 64 (4th Cir. 1993) . . . . . . . . . . passim

United States on Behalf of Dep't of Labor v. Insurance Co. Of N. Am.,
131 F.3d 1037 (D.C. Cir. 1997) . . . . . . . . . . 20

United States v. Larionoff,
431 U.S. 864 (1977) . . . . . . . . . . passim

United States v. Mitchell,
445 U.S. 535 (1980) . . . . . . . . . . 10

United States v. Sperry Corp.,
493 U.S. 52 (1989) . . . . . . . . . . 27

United States v. St. Louis, S.F.&T.R. Co.,
270 U.S. 1 (1926) . . . . . . . . . . 22

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . 10

United States v. Tynen,
78 U.S. 88 (1870) . . . . . . . . . . 26

United States v. Will,
449 U.S. 200 (1980) . . . . . . . . . . 31

Watt v. United States,
2 F.3d 398, 401 (Fed. Cir. 1993) . . . . . . . . . . 31

Wilson v. United States,
16 Cl. Ct. 765 (1989) . . . . . . . . . . 17

Wilson v. United States,
917 F.2d 529 (Fed. Cir. 1990) . . . . . . . . . . passim

Wyatt v. United States,
2 F.3d 398 (Fed. Cir. 1993) . . . . . . . . . . 29

**STATUTES**

1 U.S.C. § 109 . . . . . . . . . . passim

10 U.S.C. § 10209 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

10 U.S.C. § 1163 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10

37 U.S.C. § 206 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**DEFENSE ACTS**

The Career Compensation Act of 1949, 63 Stat. 802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

The Armed Forces Reserve Act of July 9, 1952, 66 Stat. 481 . . . . . . . . . . . . . . . . . . . . . . . . . . 16

The National Defense Authorization Act of 2006, 119 Stat. 3287 (2006) . . . . . . . . . . . . . passim

The National Defense Authorization Act of 2007, 120 Stat. 2083 (2007) . . . . . . . . . . . . . passim

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **WILLIAM A. CLARK, et al.,** | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | **No. 00-644** |
| **v.** | ) | **(Judge Firestone)** |
| | ) | |
| **THE UNITED STATES** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), the United States respectfully moves this Court to dismiss plaintiffs' First Cause of Action in their Second Amended Complaint[1] for lack of jurisdiction. The Court should also dismiss plaintiffs' second amended complaint in its entirety because it fails to state a claim upon which relief can be granted. In support of this motion, we rely upon the following memorandum of facts and law, and plaintiffs' Second Amended Complaint.

**STATEMENT OF THE ISSUES**

1. Whether the Court should dismiss plaintiffs' First Cause of Action for lack of jurisdiction because 37 U.S.C. § 206(d), as amended by the National Defense Authorization Act for Fiscal Year 2006 and the National Defense Authorization Act for Fiscal Year 2007,[2] makes

---

[1] Plaintiffs' second amended complaint was filed on December 5, 2006 and will be referred to as "plaintiffs' complaint" or "Compl.").

[2] The National Defense Authorization Act for Fiscal Year - is hereinafter referenced as "FY - NDAA." Relevant extracts of these legislative acts have been reproduced at the appendix to this motion for ease of referencing.

clear that a member of the National Guard not in Federal service is not entitled to compensation for completing correspondence courses.

2. Whether the Court should dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted because these claims are barred by 37 U.S.C. § 206(d).

3. Whether Congress' actions, by passing clarifying language to 37 U.S.C. § 206(d) in the National Defense Authorization Act for Fiscal Year 2006 and the National Defense Authorization Act for Fiscal Year 2007, constitute an unlawful taking of plaintiffs' vested property in violation of the Fifth Amendment of the United States Constitution.

## STATEMENT OF THE CASE

### I. Nature of The Case

Plaintiffs are current and former members of the Army and Air National Guard who ask this Court to award them Federal compensation for the time they spent completing United States Army and Air Force correspondence courses. Plaintiffs contend they were required to take the correspondence courses as a member of their state militias, while not in Federal service, and for which Army and Air Force Reservists are barred from receiving compensation.

### II. Factual Background And Course Of Previous Proceedings

Mr. William Clark, the original plaintiff, is a member of the Army National Guard ("ARNG"). Compl. at 4, ¶ 15. On November 1, 2000, Mr. Clark filed a complaint with this Court seeking Federal compensation for time spent completing correspondence courses as an ARNG soldier, pursuant to 37 U.S.C. § 206(a). Clark v. United States, 69 Fed. Cl. 443, 444-45 (2006); Compl. at 11, ¶ 49. Defendant filed a motion to dismiss for lack of jurisdiction, or in the alternative, for failure to state a claim upon which relief could be granted, arguing that Mr.

Clark's claim was barred by 37 U.S.C. § 206(d). At the time of filing, section 206(d) provided that section 206(a) "does not authorize compensation for work or study performed by a member of a reserve component in connection with correspondence courses of a uniformed service." Defendant argued that "because members of the National Guard, such as Plaintiff, are also dually enlisted as members of the National Guard of the United States ["NGUS"], and because the Army National Guard of the United States ["ARNGUS"] qualifies as a 'reserve component,' Plaintiff is a member of the [ARNGUS] and thus a member of a reserve component, not warranting compensation for correspondence courses." Clark v. United States, 50 Fed. Cl. 727, 730 (2001). This Court determined that it possessed jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491(a), but dismissed Mr. Clark's complaint, ruling that "as a member of the [NGUS], plaintiff is a member of a reserve component." Id. at 734.

Mr. Clark appealed. The United States Court of Appeals for the Federal Circuit affirmed this Court's jurisdictional holding, but reversed the dismissal, finding that 37 U.S.C. § 206(d) did not bar Mr. Clark from recovering compensation for time spent taking correspondence courses. Clark v. United States, 322 F.3d 1358 (Fed. Cir. 2003). In reaching its decision, the Federal Circuit accepted Mr. Clark's contention that "his functions in the state National Guard and the federal National Guard of the United States are mutually exclusive." Id. at 1368. Thus, 37 U.S.C. § 206(d) did not bar Mr. Clark's claim for compensation and thus, his complaint was sufficient to state a cause of action under 37 U.S.C. § 206(a). Id. at 1368.

Noteworthy is that the Court of Appeals did not make any findings upon the merits of Mr. Clark's claim. The Federal Circuit's mandate for this Court was simply that: "On remand, of course, Mr. Clark must establish which classes the Secretary of the Army required, if any, and

which classes he took to satisfy those requirements." Id. Mr. Clark thereafter amended his complaint to add other members of the ARNG and the Air National Guard ("ANG") as plaintiffs. Docket # 65.

In response to plaintiffs' first amended complaint, defendant filed a motion for summary judgment, addressing the two issues outlined by this Court. Docket # 60. The issues were:

> 1. Whether, as a matter of law, Plaintiff performed correspondence work while "not entitled to basic pay" within the meaning of 37 U.S.C. §§ 204 and 206.
>
> 2. Whether, as a matter of law, the correspondence courses Plaintiff took qualify as a "regular period of instruction, or period of appropriate duty" under 37 U.S.C. § 206(a)(1) or "equivalent training, instruction, duty, or appropriate duties" under 37 U.S.C. § 206(a)(2).

Clark, 69 Fed. Cl. at 445. The United States asserted it was entitled to summary judgment, relying upon legislative history and long-standing Department of Defense ("DOD") practice and interpretation of section 206(d) as barring compensation for correspondence courses to members of the Reserve components, including the National Guard. The United States argued individual work on correspondence courses does not qualify as compensable training because it does not constitute the prerequisite unit assembly for drill and instruction. Def. Mot. for Summary Judgment, at 5, docket # 60. The Government also argued that Mr. Clark could not perform correspondence courses in his status as a member of the National Guard. Id. at 33.

Plaintiffs responded by arguing that genuine issues of material fact regarding whether plaintiffs have completed correspondence courses required by the service secretaries precluded summary judgment on the motion. Pl. Brief in Opp'n to Def.'s Mot. for Summary Judgment, at

4, docket #106. Plaintiffs also argued the law of the case established by the Federal Circuit's decision necessitated rejection of the Government's other arguments. Id. at 27.

Responding to the Federal Circuit's decision in this case, Congress clarified section 206(d) of Title 37 on January 6, 2006, in the FY 06 NDAA, Pub. L. No. 109-163, 119 Stat. 3287 (2006), making clear that the restriction upon compensation for correspondence courses, in fact, applied to National Guard members "while not in Federal service." Id. Congress did so by inserting the phrase "or by a member of the National Guard while not in Federal service" after "reserve component." Id. Defendant provided this Court notice of the supplemental authority, docket #120, to which plaintiffs responded. Docket #121.

Plaintiffs argued the clarifying language set forth in our supplemental authority had "no bearing on Plaintiffs' entitlement to compensation for completing required correspondence courses under 37 U.S.C. § 206 as it existed at the time the instant suit was filed." Pl. Resp. to Def's Notice of Supplemental Authority, at 2, docket #121. Plaintiffs argued the Federal Circuit "established as law of the case" that section 206 "obligated the Secretary to compensate" National Guard members who complete required correspondence courses. Id. Plaintiffs also argued that the clarification in the FY 06 NDAA cannot properly be construed as intent of a previous version of section 206. Id. Finally, plaintiff argued that the clarification contained in the FY 06 NDAA cannot be retroactive. Id. at 3 (citing Landgraf v. Usi Film Prods., 511 U.S. 244, 270 (1994) ("[s]ince the early days of this Court, we have declined to give retroactive effect to statutes burdening private rights unless Congress had made clear its intent.")).

Shortly after the FY 06 NDAA was enacted, this Court denied defendant's motion for summary judgment, finding there are genuine issues of material fact regarding which

correspondence courses the service secretaries prescribed for plaintiffs and which ones plaintiffs took. Clark, 69 Fed. Cl. at 449. The parties agreed to a stay in discovery, pending the final version of the FY 07 NDAA. Docket # 135. In the FY 07 NDAA, Congress provided further clarification of the effective date of the prohibition on compensation for correspondence courses in section 206(d). Pub. L. No. 109-364, § 607, 120 Stat. 2083, * (2006). This latest clarification provides that the prohibition upon compensating members of the National Guard while not in Federal service for correspondence courses applies to:

> (A) any work or study performed on or after September 7, 1962, unless that work or study is specifically covered by the exception in paragraph (2); and (B) any claim based on that work or study arising after that date.

Id.

Plaintiffs amended their complaint for a second time on December 5, 2006. Docket # 140. Plaintiffs now aver that the FY 07 NDAA "cannot properly be retroactively applied to eliminate this right to compensation for numerous reasons." Compl. at 13, ¶ 59. Plaintiffs claim that application of the FY 07 NDAA to bar compensation would be an "improper assumption of adjudicative power in violation of Article III." Id. at 13, ¶ 61. Plaintiffs further aver that the Federal Circuit's ruling "obligated Defendant to compensate" plaintiffs, and that 1 U.S.C. § 109 provides "this liability cannot be extinguished by the [FY 07 NDAA]." Id. at 13, ¶¶ 62-63. Finally, plaintiffs argue they had a vested right to their cause of action, which was protected by Fifth Amendment Due Process guarantees. Id. at 13-14, ¶¶ 63-64.

## III. <u>**Statutory Provision Governing National Guard Pay: 37 U.S.C. § 206**</u>

A familiarity with the relevant Federal statute is essential because a service member's entitlement to pay is entirely dependent upon statutory and regulatory right, not contract or estoppel principles. Accordingly, for this Court's convenience, we set forth an extract from the relevant statute, 37 U.S.C. § 206, that provides the necessary backdrop for resolving this matter.

<u>**37 U.S.C. § 206 Reserves; Members Of National Guard: Inactive-Duty Training**</u>

(a) Under regulations prescribed by the Secretary concerned, and to the extent provided for by appropriations, a member of the National Guard or a member of a reserve component of a uniformed service who is not entitled to basic pay under section 204 of this title is entitled to compensation, at the rate of 1/30 of the basic pay authorized for a member of a uniformed service of a corresponding grade entitled to basic pay--

(1) for each regular period of instruction, or period of appropriate duty, at which the member is engaged for at least two hours, including that performed on a Sunday or holiday;

(2) for the performance of such other equivalent training, instruction, duty, or appropriate duties, as the Secretary may prescribe; or

* * * *

(d) (1) Except as provided in paragraph (2), this section does not authorize compensation for work or study performed by a member of a reserve component <u>**or by a member of the National Guard while not in Federal service**</u> in connection with correspondence courses of a uniformed service.

(2) A member of the Selected Reserve of the Ready Reserve may be paid compensation under this section at a rate and under terms determined by the Secretary of Defense, but not to exceed the rate otherwise applicable to the member under subsection (a), upon the member's successful completion of a course of instruction undertaken by the member using electronic-based distributed learning methodologies to accomplish training requirements related to unit readiness or mobilization, as directed for the member by the Secretary concerned. The compensation may be

> paid regardless of whether the course of instruction was under the direct control of the Secretary concerned or included the presence of an instructor.
>
> (3) **The prohibition in paragraph (1), including the prohibition as it relates to a member of the National Guard while not in Federal service, applies to–**
>
> > **(A) any work or study performed on or after September 7, 1962, unless that work or study is specifically covered by the exception in paragraph (2); and**
> >
> > **(B) any claim based on that work or study arising after that date**.

37 U.S.C. § 206 (2007) (emphasis added).

## SUMMARY OF THE ARGUMENT

Plaintiffs' first cause of action should be dismissed because it is now clear that 37 U.S.C. § 206 does not mandate the payment of money for completing correspondence courses. Indeed, it specifically bars payment for this work. Although this Court and the Court of Appeals for the Federal Circuit determined that 37 U.S.C. § 206(a) was money-mandating, given that the plain language of the current version of 37 U.S.C. § 206(d) does not authorize the payment of plaintiffs' claims, their complaint fails to allege a money-mandating statute.

The complaint should also be dismissed because it fails to state a claim upon which relief can be granted. Although the Federal Circuit determined that Congress did not intend for section 206(d) to apply to National Guard members, Congress immediately responded to the Federal Circuit's decision by clarifying its intent that the bar did indeed apply to National Guard members. In doing so, Congress clearly stated that the amendments to section 206(d) were technical in nature and were designed to clarify its longstanding legislative intent, consistent with DOD practice, that such compensation was not authorized. In statutory cases, Congress has

the power to "undo what it perceives to be the undesirable past consequences of a misinterpretation of its work product." Rivers v. Roadway Express, 511 U.S. 298, 313 (1994). Congress did so in this case through clarifying amendments.

This Court should now apply the clarified version of 37 U.S.C. § 206(d). In this case the legal landscape changed when Congress clarified section 206(d)'s meaning to include National Guard members in its bar to compensation, legislatively overruling the Federal Circuit's interpretation of section 206(d). Congress made crystalline that its statutory work product be given retroactive effect to any claim based on work or study arising after September 7, 1962. Pub. L. No. 109-364, § 607, 120 Stat. 2083, * (2006).

Plaintiffs' claim that the Federal general savings statute prohibits application of the FY 06 NDAA and FY 07 NDAA to their claims is also without merit. Compl. at 13, ¶ 62. Nevertheless, the express language of the FY 07 NDAA overcomes any effect of the Federal general savings statute. 1 U.S.C. § 109. Plaintiffs also claim that retroactive application of section 206(d) to bar their claims would constitute an unlawful taking pursuant to the Fifth Amendment of the Constitution. Compl. at 17, ¶ 87. This claim also fails because plaintiffs have no vested property right in the claimed military compensation and, thus, there was no private property to take under the circumstances alleged. Accordingly, the Court should dismiss plaintiffs' claims for failing to state a claim.

## ARGUMENT

### I. Plaintiffs' Claims Must Be Dismissed Because Congress Has Made Clear That 37 U.S.C. § 206(d) Has Never Authorized The Payment Of Plaintiffs' Claims

#### A. This Court's Standard Of Review For Motions To Dismiss For Lack Of Jurisdiction And Failure To State A Claim

The first and fundamental question presented by every case brought to the Federal courts is whether the Court possesses jurisdiction to hear it. Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986). Federal courts are courts of limited jurisdiction which may exercise only those powers authorized by Constitution and statute. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). Like all Federal courts, this Court's jurisdiction to entertain claims and to grant relief depends upon, and is circumscribed by, the extent to which the United States has waived its sovereign immunity. United States v. Testan, 424 U.S. 392, 399 (1976). The burden of establishing the court's subject matter jurisdiction rests with plaintiffs. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

The United States Court of Federal Claims has been authorized by Congress to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). In United States v. Mitchell, 445 U.S. 535, 538 (1980), however, the United States Supreme Court held that the Tucker Act does not create any substantive right for monetary damages. Therefore, the Clark plaintiffs must identify and plead an independent contractual relationship, constitutional provision, Federal statute, and/or executive agency regulation that provides a substantive right to money damages in order for the

Court to possess jurisdiction. See Todd v. United States, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act."); see also Fisher v. United States, 402 F.3d 1167, 1173-74 (Fed. Cir. 2005) (en banc). Merely requesting money damages, however, does not satisfy the money-mandating criterion, as there must be a statute, regulation, or contract that specifically allows the monetary relief plaintiffs request. See New York Life Ins. Co. v. United States, 118 F.3d 1553, 1556 (Fed. Cir. 1997), cert. denied, 523 U.S. 1094 (1998).

As the Federal Circuit noted in Fisher, "the neat division between jurisdiction and merits has not proved to be so neat." Fisher v. United States, 402 F.3d at 1171-72. However, once the Court has taken jurisdiction to entertain the complaint as a result of its initial determination that "plaintiff's cause rests on a money-mandating source, the consequence of a ruling by the court on the merits, that plaintiff's case does not fit within the scope of the source, is simply this: plaintiff loses on the merits for failing to state a claim on which relief can be granted." Fisher v. United States, 402 F.3d at 1175-76 (citing Palmer v. United States, 168 F.3d 1310, 1313 (Fed. Cir. 1999)).

Rule 12(b)(6) governs dismissal for "failure to state a claim upon which relief can be granted." When deciding a motion to dismiss based upon RCFC 12(b)(6), this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. Perez v. United States, 156 F.3d 1366, 1370 (Fed Cir. 1998)("A motion to dismiss for failure to state a claim upon which relief can be granted is

appropriate when the facts asserted by the claimant do not under the law entitle him to a remedy.").

As we demonstrate below, plaintiffs' first cause of action should be dismissed for lack of jurisdiction, and plaintiffs' complaint should be dismissed in its entirety for failing to state a claim upon which this Court may grant relief.

**B. The Plain Language Of Section 206(d) Makes Clear That 37 U.S.C. § 206 Is Not A Money-Mandating Statute**

Plaintiffs' first cause of action is based upon a claimed entitlement that "37 U.S.C. § 206(a) entitles National Guard members to be compensated for taking these courses." Compl. p. 17, § 83. This statement is clearly wrong given the plain language of section 206(d). Section 206(d) specifically states that section 206 "does not authorize compensation for work or study performed by a member of a reserve component **or by a member of the National Guard while not in Federal service** in connection with correspondence courses of a uniformed service." 37 U.S.C. § 206(d) (emphasis added). Thus, plaintiffs' first cause of action must be dismissed because 37 U.S.C. § 206(d) specifically bars compensation by any service member for completing correspondence courses.

**C. Even Assuming Jurisdiction, The Plain Language Of Section 206(d) Clearly Applies To National Guard Members And Precludes Payment For Completing Correspondence Courses**

The "starting point in every case involving construction of a statute is the language itself." Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975) (cited in Clark v. United States, 322 F.3d 1358, 1364 (Fed. Cir. 2003)). "And where the statutory language provides a clear answer, it ends there as well." Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999) (cited in Clark, 322 F.3d at 1364).

Plaintiffs claim that they are entitled to "damages for uncompensated correspondence work . . . pursuant to 37 U.S.C. § 206(a)." Compl. at 18. Plaintiffs allege that the military "requires members of the Air National Guard and Army National Guard, while in state service, to complete certain correspondence courses." Id. at 10, ¶ 45. This claim is clearly wrong given that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." Bradley v. Richmond School Board, 416 U.S. 696, 711 (1974). As this Court has not rendered a decision upon the merits, it is appropriate to apply the current version of section 206 because no manifest injustice will occur. Plaintiffs would not experience an injustice, as they have never received compensation for completing these courses and did not have an expectation of compensation when they took the courses.[3] Indeed, if the Court did not apply section 206(d) to plaintiffs' complaint, it would be endorsing a discriminating pay compensation system between members of the military's Reserve and members of the Air and Army National Guard never intended by Congress. See 10 U.S.C. § 10209.

The clarified version of section 206 "does not authorize compensation for work or study performed by a member of a reserve component or by a member of the National Guard while not in Federal service in connection with correspondence courses of a uniformed service." 37 U.S.C. § 206(d). Plaintiffs' claims thus fail because the clear language of the authorization they rely upon does not support their requested relief. Plaintiffs, who are all members of the National Guard while not in Federal service, are subject to this provision. Compl. at 4, 10, ¶¶ 13, 45.

[3] See infra III(c) (discussing the impact of applying section 206(d)'s bar to compensation to plaintiffs).

Because the clear language of 37 U.S.C. § 206(d) bars plaintiffs' claims, both prospectively and retroactively, inquiry should end here. Hughes Aircraft Co., 525 U.S. at 438.

### D. The Clarification Provided By The FY 06 NDAA And FY 07 NDAA Eliminates The Need For The Statutory Interpretation Applied By The Federal Circuit

The Federal Circuit reversed this Court's earlier dismissal of plaintiffs' complaint, holding that 37 U.S.C. § 206(d) did not bar plaintiffs from recovering compensation for time spent taking correspondence courses. Clark, 322 F.3d at 1365. The Government had argued that the phrase "member of a reserve component" encompassed both National Guard members and reserve component members. Id. Relying upon rules of statutory interpretation, the Federal Circuit determined that the Government's longstanding interpretation of section 206 was not consistent with Congressional intent. Id. In the Federal Circuit's view, "[t]he language in section 206(a) suggests that Congress intended to treat members of the state National Guard separately from members of a reserve component and that Congress did not intend section 206(a) to apply to members of the state National Guard." Id. After examining the meaning of the phrase "a member of a reserve component" in section 206(d), the Federal Circuit looked to Perpich v. Department of Defense, 496 U.S. 334 (1990), the Posse Comitatus Act, 18 U.S.C. § 1386, and the statutory scheme of which section 206 is a part, all in an effort to determine whether a member of the National Guard should be covered by section 206(d). Clark, 322 F.3d at 1365-68.

Under the plain language of the current version of section 206(d), there is no need to resort to the complex rules of statutory interpretation employed by plaintiffs and the Federal Circuit to divine congressional intent. See Hughes Aircraft Co., 525 U.S. at 438 (providing that

clear statutory language ends the inquiry). Congress has clearly expressed its intention that the bar to compensation for correspondence courses, in fact, applies to a member of a reserve component or a member of the National Guard. FY 06 NDAA, Pub. L. No. 109-163, 119 Stat. 3287 (2006).

In reaching its decision, the Federal Circuit did not have the benefit of the technical amendment clarifying congressional intent with respect to section 206 when the Federal Circuit issued its decision. Now that Congress' plain intent has been clarified, both this Court and the Federal Circuit must follow that intent.

### E. Congress Has Made Clear Its Intent Regarding The Scope Of Section 206(d)

"Congress is presumed to know the terrain against which it legislates." Schism v. United States, 316 F.3d 1259, 1301 (Fed. Cir. 2002) (en banc) (Mayer, C.J., dissenting). With the Federal Circuit's decision as the legal terrain, Congress made it clear that both the FY 06 NDAA and the FY 07 NDAA were technical amendments that merely clarified the legislative intent of the original unamended version of section 206 at issue in the Federal Circuit's opinion. FY 06 NDAA, Pub. L. No. 109-163, 119 Stat. 3287 (2006)("Clarification of Restriction on Compensation for Correspondence Courses); FY 07 NDAA, Pub. L. No. 109-364, § 607, 120 Stat. 2083, * (2006) ("Clarification of Effective Date of Prohibition on Compensation for Correspondence Courses") (emphasis added). The legislative history also demonstrates that the amendments were designed to clarify Congress' intent. See Wilson v. United States, 917 F.2d at 535 (Fed. Cir. 1990). The Senate Committee on Armed Services' Report regarding the FY 07 NDAA commented on the FY 06 NDAA and FY 07 NDAA clarifications of section 206(d):

> The committee recommends a provision that would amend section 206(d) of title 37, United States Code, to clarify that the

> prohibition on compensation for work or study in connection with correspondence courses, including the prohibition as it relates to a member of the National Guard while not in federal service, applies to any such work or study performed on or after September 7, 1962, and to any claim for compensation based on such work or study arising after that date.
>
> The committee believes that judicial rulings interpreting section 206(d) to permit compensation for completion of correspondence courses misinterpreted this provision and did not give adequate weight to the consistent practices of the services in administering training of members of the Reserve and National Guard in this regard. The changes to section 206(d) of title 37, United States Code, incorporated in section 604 of the National Defense Authorization Act for Fiscal Year 2006 (Public Law 109-163) did not, in the committee's view, change, but rather clarified the meaning and purpose of this section.

S. Rep. No. 109-254, at 331-32 (2006). The clarifications to section 206(d) were necessary to restore the original intent and interpretation of section 206(d).[4]

The Federal Circuit has acknowledged the propriety of similar statutory clarifications in Wilson v. United States, when the Court interpreted 10 U.S.C. § 1163(d)'s "sanctuary" provision.[5] 917 F.2d at 530. Lieutenant Colonel Wilson, the plaintiff, filed a complaint in the

---

[4] The legislative history regarding compensation for National Guard service members and the military's consistent practice since Title 37's inception in 1962 are consistent with the clarifications to § 206(d), as was explained in detail in the Government's opening motion for summary judgment. Docket # 60, at 5-20. Indeed, the prohibition against compensating members in uniform for completing correspondence as equivalent training was first seen in the Career Compensation Act of 1949. The Career Compensation Act of 1949, 63 Stat. 802, 805. See also The Armed Forces Reserve Act of July 9, 1952, ch. 608, § 101(d) 66 Stat. 481 ("Work or study performed by [members of the reserve components and the Army and Air National Guards] in connection with correspondence courses of the Armed Forces of the United States shall be deemed inactive-duty training for which compensation is not authorized under the provisions of section 501 of the Career Compensation Act of 1949, as amended.").

[5] The sanctuary provision protects reserve component service members from involuntary separation prior to qualifying for retirement, if the member completes eighteen years of qualifying "active duty" service. Wilson, 917 F.2d at 530. At issue was whether "active duty

Claims Court, claiming that he was entitled to the protection of the sanctuary provision and back pay. Id. at 530. In 1987, after Lieutenant Colonel Wilson had filed his complaint, Congress amended section 1163(d), which excluded Lieutenant Colonel Wilson from falling within the sanctuary provision's protection.[6] In holding that Lieutenant Colonel Wilson was entitled to back pay, the Claims Court concluded that:

> Congress could, in 1987, enact valid legislation which would restrict the eligibility of officers for 10 U.S.C. § 1163(d) sanctuary to those who reached 18 years of active duty service on a tour of duty before or after 1987, which was other than training. The question raised by defendant's motion and plaintiff's opposition is whether the 1987 amendment to 10 U.S.C. § 1163(d) was intended by Congress to apply to prior tours of duty.

Wilson v. United States, 16 Cl. Ct. 765, 767 (1989). The Claims Court held "if Congress had intended that the 1987 language be applied to render officers on training tours of duty prior to its enactment ineligible for sanctuary, this would have been expressly spelled out in the legislation." Id. (citing Bowen v. Georgetown University Hospital, 488 U.S. 204 (1988)).

On appeal, the Federal Circuit reversed, relying upon "the clear language of the 1987 amendment, [which was] designed to clarify what had been made unclear by the 1962 codifier's reshuffling of the sections." Wilson, 917 F.2d at 535 (citing Bell v. New Jersey, 461 U.S. 773, 784 (1983) ("the view of a later Congress does not establish definitively the meaning of an

---

for training" service counted as qualifying "active duty" service. Id. In 1962, section 1163(d) was recodified from Title 50 to Title 10. Id. at 533. By changing from Title 50 to Title 10, the definition of "active duty" was changed. The definition of "active duty" in Title 10 included "active duty for training," whereas the definition of "active duty" in Title 50 did not. Wilson, 917 F.2d at 534.

[6] Congress amended 10 U.S.C. § 1163(d) to expressly provide that active duty does not include active duty for training. Wilson, 917 F.2d at 530.

earlier enactment, but it does have persuasive value.")). See also Cass v. United States, 417 U.S. 72 (1974) (noting the appropriateness of resorting to legislative history as an extrinsic aid to determining the intent of Congress, which is the controlling consideration in resolving issues of statutory interpretation). The Federal Circuit also noted that through the 1987 amendment, Congress intended to restore the Government's longstanding interpretation of section 1163(d). Wilson, 917 F.2d at n.6. The Federal Circuit further stated "[t]he Secretary of the Army's long-standing interpretation of § 1163(d) -- that Service members on ADT are not entitled to sanctuary -- provides an independent basis on which we might reach the same conclusion." Id. at 535 (citing Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-44 (1984) (when a statute is silent or ambiguous with respect to the specific issue, the administrative agency's interpretation, if reasonable, is to be followed by the court)). Accordingly, the "consistent practices of the services," S. Rep. No. 109-254, at 331-32 (2006), provide an independent basis for applying section 206(d)'s bar to receiving compensation for correspondence courses to plaintiffs. See Wilson, 917 F.2d at 535.

Wilson demonstrates the weight that the Federal Circuit places upon a statutory clarification of congressional intent, as occurred in the instant case. Wilson, 917 F.2d at 535. When a clarifying amendment to a statute indicates the courts have interpreted the legislative intent of a statute in a matter contrary to Congress' intent, the clearly expressed intent of Congress should be followed. See id. As in Wilson, Congress has stated its view that "judicial rulings interpreting section 206(d) to permit compensation for completion of correspondence courses misinterpreted this provision." S. Rep. No. 109-254, at 331-32 (2006). As such, this Court is bound to apply the clearly expressed intent of Congress by applying the plain language

of the current version of 37 U.S.C. § 206(d). Rivers v. Roadway Express, 511 U.S. 298, 313, n.12 (1994) ("In statutory cases the Court has no authority to depart from the congressional command setting the effective date of a law that it has enacted."). This statutory language clearly states that, similar to any member of the Reserve compenent, National Guard members, such as plaintiffs, are not authorized compensation for work or study performed in connection with correspondence courses. 37 U.S.C. § 206(d). Accordingly, plaintiffs' claims should be dismissed because they fail to state a claim upon which relief can be granted. RCFC 12(b)(6).

## II. This Court Should Apply The Current Version Of 37 U.S.C. § 206(d) As Clarified

### A. This Court Can Entertain The Government's Motion to Dismiss

This issue has been addressed before by the United States Claims Court in a case related to 10 U.S.C. § 1163(d)'s "sanctuary" provision. In Ulmet v. United States, this Court considered a fact pattern similar to the instant case in litigation related to 10 U.S.C. § 1163(d)'s "sanctuary" provision. 17 Cl. Ct. 679 (1989), aff'd 935 F.2d 280 (Fed. Cir. 1991), overruled on other grounds by Wilson v. United States, 917 F.2d 529 (Fed. Cir. 1990) (en banc). In Ulmet, the Court provided the following analysis:

> The complex issue raised by the Defendant's Motion to Dismiss is whether this court must follow the mandate of the Federal Circuit Court of Appeals when Congress has passed legislation amending the relevant statute, subsequent to the issuance of the circuit court's decision, but prior to the final judgment of this court, if such legislation deals with the same issue addressed in the Federal Circuit Court's Opinion.

Id. at 688. The Claims Court in Ulmet first addressed whether it could entertain the Government's motion, which was based on legislative clarification of section 1163(d), even though the Federal Circuit had held that plaintiff was entitled to certain claimed relief. Id. at

686. In her "thoughtful and carefully constructed opinion," 935 F.2d at 280, Judge Horn provided a detailed examination of the mandate rule and the law of the case doctrine.[7] 17 Cl. Ct. at 688. The analysis in Ulmet is particularly helpful, given the factual similarity between Ulmet and the instant case.

### 1. The Federal Circuit Did Not Mandate Compensation

In holding "that 37 U.S.C. § 206(d) does not bar Mr. Clark's claim for compensation and that, as a matter of law, his complaint is sufficient to state a cause of action under 37 U.S.C. § 206(a)," the Federal Circuit remanded the case to this Court to review the merits of Mr. Clark's complaint. Clark v. United States, 322 F.3d 1358, 1368 (Fed. Cir. 2003). The Federal Circuit's mandate[8] was "[o]n remand, of course, Mr. Clark must establish which classes the Secretary of the Army required, if any, and which classes he took to satisfy those requirements. Morever, he must establish the amount of compensation he is due under the statute." Id. (emphasis added). Under the Federal Circuit's holding and mandate, the Federal Circuit's interpretation of section

[7] The mandate rule is "a specific application of the law of the case doctrine." See 18 James Wm. Moore et al., Moore's Federal Practice, § 134.23 (1)(b) (citing United States on Behalf of Dep't of Labor v. Insurance Co. Of N. Am., 131 F.3d 1037, 1041 (D.C. Cir. 1997) (stating "the 'mandate rule,' an application of the 'law of the case' doctrine, states that a district court is bound by the mandate of a federal appellate court and generally many not reconsider issues decided on a previous appeal.")); Prisco v. A&D Carting Corp., 168 F.3d 593, 607 n.10 (2d Cir. 1999) (calling the requirement that trial courts must follow an appellate court's previous ruling in the same case the "first branch" of law of the case doctrine.).

[8] In Ulmet, the court defined a mandate as:

> [a] precept or order issued upon the decision of an appeal or writ of error, directing action to be taken, or disposition to be made of case, by inferior court. Official mode of communicating judgment of appellate court to lower court, directing action to be taken or disposition to be made of cause by trial court.

17 Cl. Ct. at n.3 (quoting Black's Law Dictionary 867 (5th ed. 1979)).

206(d) indicated Mr. Clark was not barred from receiving compensation, but remanded for this Court to determine if he was actually entitled to any compensation.

**2. The Current State Of The Law Supports The Government's Motion To Dismiss**

As consistently maintained by the Government throughout this litigation, and set forth in detail above, the FY 06 NDAA and FY 07 NDAA only clarified the congressional intent behind section 206(d). However, the Government's motion to dismiss should be granted even if this Court concludes the FY 06 NDAA and FY 07 NDAA effectuated a change in the law. There is substantial jurisprudence dealing with the law of the case doctrine when the controlling law changes between an appellate court's decision and the further proceedings in the trial court. See, e.g., Toro Co. v. White Consol. Indus., 383 F.3d 1326, 1336 (Fed. Cir. 2004), cert. denied 544 U.S. 948 (2005) (recognizing three standard exceptions to the law of the case doctrine, including intervening change of law); Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc., 761 F.2d 649, 657 (Fed. Cir.), cert. denied, 474 U.S. 902, (1985). See also Colaizzi v. Walker, 812 F.2d 304, 310 (7th Cir. 1987) ("an intervening change of law is a familiar reason for refusing to apply the law of the case doctrine"); Amen v. City of Dearborn, 718 F.2d 789, 794 (6th Cir. 1983) ("the [law of the case] doctrine is not so rigid as the rule of res judicata, and there is a well-recognized exception that the doctrine must yield to an intervening change of controlling law between the date of the first ruling and the retrial.") (citations omitted) cert. denied, 465 U.S. 1101 (1984); EEOC v. International Longshoremen's Assoc., 623 F.2d 1054, 1058 (5th Cir. 1980), cert. denied, 451 U.S. (1981). The general rule has been concisely stated as follows:

> The law of the case doctrine is an expression of the general rule that a court will not reopen an issue that has already been decided. It is not a limit on a court's power to revisit an issue if the court

> feels such review is necessary. When the law changes in the interim between the first and second decision, the court cannot disregard the new law on the grounds of law of the case. When the changed law is statutory, and it is determined that the statute in question is to be given retroactive application, the court must reexamine its earlier decision regardless of the doctrine of law of the case.

18 James Wm. Moore et al., Moore's Federal Practice, § 134.21 (3)(a) (citations omitted).

The congressional clarification of section 206(d) constitutes a clear change to the controlling legal authority. See Toro Co., 383 F.3d at 1336 (recognizing a change in controlling legal authority as an exception to the law of the case doctrine). In amending 37 U.S.C. § 206(d) to clarify its intention regarding the correct interpretation of that section, Congress clearly indicated the clarification should be given retroactive application. FY 07 NDAA, Pub. L. No. 109-364, § 607, 120 Stat. 2083, * (2006). Accordingly, the law of the case does not preclude application of section 206(d) to bar plaintiffs' claims.

**B. The Congressional Clarification To 37 U.S.C. § 206(d) Should Be Given Retroactive Effect To Bar Plaintiffs' Claims**

The FY 07 NDAA contains explicit language that requires the statute to be given retroactive effect. As a general rule of application, "a statute is not given retroactive effect unless such construction is required by explicit language or by necessary implication." United States v. St. Louis, S.F.&T.R. Co., 270 U.S. 1, 3 (1926) (quoted in Fernandez-Vargas v. Gonzalez, 126 S. Ct. 2422, 2427-28 (2006)). In Fernandez-Vargas, the Court explained the "sequence of analysis when an objection is made to applying a particular statute said to affect a vested right or to impose some burden on the basis of an act or event preceding the statute's enactment." 126 S. Ct. at 2428. The Court stated it would first look to "whether Congress has expressly prescribed the statute's proper reach." Landgraf v. Usi Film Prods., 511 U.S. 244, 280

(1994). In the FY 07 NDAA, Congress did "expressly prescribe the statute's proper reach" by stating:

> The prohibition in paragraph (1), including the prohibition as it relates to a member of the National Guard while not in Federal service, applies to–
>
> (A) any work or study performed on or after September 7, 1962, unless that work or study is specifically covered by the exception in paragraph (2); and
>
> (B) any claim based on that work or study arising after that date.

FY 07 NDAA, Pub. L. No. 109-364, § 607, 120 Stat. 2083, * (2006).

Accordingly, Congress could not be any clearer than here where it expressly stated that the prohibition upon members of the National Guard while not in Federal service from receiving compensation for work or study performed in connection with correspondence courses in section 206(d) of Title 37 applies to any claim based on work or study arising after September 7, 1962, the inception of the statute. Id. As plaintiffs' claims are based on work or study allegedly arising after September 7, 1962, the prohibition in section 206(d) applies to those claims. Id.

As Congress expressly prescribed the statute's proper reach, no further inquiry is necessary. See Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999). Accordingly, plaintiffs' claims for compensation are barred by the current version of 37 U.S.C. § 206(d), as their claims arose after September 7, 1962.

Plaintiffs argue that application of the FY 07 NDAA "to eliminate National Guard members' right to compensation for required correspondence coursework would serve to improperly interfere with the judgment of the courts in pending litigation." Compl., at 13, ¶ 59. Plaintiffs further argue that retroactive application of the FY 07 NDAA "would constitute an

improper assumption of adjudicative power in violation of Article III." Id. at 13, ¶ 61. This averment is in direct contradiction with well-established case law, discussed above, which allows Congress to enact laws that have retroactive effect on issues being addressed by the courts. See Fernandez-Vargas v. Gonzalez, 126 S. Ct. 2422, 2427-28 (2006). Further, the statutory right to military pay is within the control of Congress and is always subject to change, including retroactive change, so long as Congress clearly expresses its intent to do so. Compare United States v. Larionoff, 431 U.S. 864, 869, 879 (1977) (intent not clearly expressed) with Adkins v. Rumsfeld, 464 F.3d 456 (4th Cir. 2006) (intent clearly expressed); see also Alberico v. United States, 783 F.2d 1024 (Fed. Cir. 1986); Norman v. United States, 183 Ct. Cl. 41, 392 F.2d 255 (1968), cert. denied, 393 U.S. 1018 (1969). Congress acted within its authority to clarify its intention regarding military pay, and the courts should respect that authority. See Toro Co. v. White Consol. Indus., 383 F.3d 1326, 1336 (Fed. Cir. 2004).

**C. The General Savings Statute Does Not Prohibit The Retroactive Application Of 37 U.S.C. § 206(d)**

Plaintiffs aver they "have a vested right to payment for the completion of these [correspondence] courses and to their claims for such payment." Compl. at 17, ¶ 87. Plaintiffs rely on the Federal general savings statute, 1 U.S.C. § 109 and the Constitution's Fifth Amendment as support for this claim. Compl. at 13-14, ¶¶ 62, 64. Plaintiffs argue "the federal general savings statute provides that the repeal or amendment of a statute cannot destroy liability incurred under the prior version of the statute. 1 U.S.C. § 109." Compl. at 13. ¶ 63. Plaintiffs' reliance upon the Federal general savings statute is misplaced.

The Federal general savings statute provides in part:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109. Application of the Federal general savings statute does not rescue plaintiffs' claims. First, Congress has made its intention clear that the FY 06 NDAA and FY 07 NDAA were clarifications, not a "repealing Act." See FY 06 NDAA, Pub. L. No. 109-163, 119 Stat. 3287 (2006); FY 07 NDAA, Pub. L. No. 109-364, § 607, 120 Stat. 2083, * (2006). Additionally, the United States has not incurred a "liability" to plaintiffs pursuant to section 206(a). The Federal Circuit did not determine that the United States had incurred a liability to plaintiffs. Clark v. United States, 322 F.3d 1358, 1368 (Fed. Cir. 2003). The liability determination was to be decided on remand in this Court. Id. Even if this Court were to determine that the FY 06 NDAA and FY 07 NDAA extinguished a liability incurred under section 206(a), the FY 07 NDAA expressly provided that the prohibition on compensation applies to "any work or study performed on or after September 7, 1962 " and "any claim based on work or study arising after that date." Pub. L. No. 109-364, § 607, 120 Stat. 2083, * (2006). This language expressly provides that any "liability" would be extinguished.

This result is consistent with Supreme Court precedent. In Hamm v. Rock Hill, the Supreme Court held that the Federal general savings statute would not nullify abatement of Federal prosecutions for trespass in public luncheon facilities following enactment of the public accommodation requirements of the Civil Rights Act of 1964. 379 U.S. 306 (1964). The Court explained the Federal savings statute was originally enacted in 1871, "to obviate mere technical abatement such as that illustrated by the application of the rule in [United States v. Tynen, 78

U.S. 88 (1870)] decided in 1871." Id. at 314. The Court explained that in Tynen "a substitution of a new statute with a greater schedule of penalties was held to abate the previous prosecution." Id. In Hamm, the Court did not apply the Federal general savings statute to the Civil Rights Act because "it works no such technical abatement. It substitutes a right for a crime. So drastic a change is well beyond the narrow language of amendment and repeal." Id.

The express clarification in the FY 06 NDAA and FY 07 NDAA are also beyond the "narrow language of amendment and repeal." Id. The application of the prohibition upon compensation contained in the FY 06 NDAA to plaintiffs is clearly the intent of Congress, making the Federal general savings statute inapplicable. See Pipefitters Local Union No. 562 v. United States, 407 U.S. 385, 432 (1972) (applying the Federal general saving statute "in the absence of a demonstration of contrary congressional intent.").

**D. Retroactive Application Of Section 206(d) Satisfies Due Process**

The standard of review for retroactive application of a statute is well settled:

> Retroactive legislation does have to meet a burden not faced by legislation that has only future effects. It does not follow . . . that what Congress can legislate prospectively it can legislate retrospectively. The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former. But that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose.

United States v. Sperry Corp., 493 U.S. 52, 64 (1989) (citing Pension Benefit Guaranty Corp. v. R. A. Gray & Co., 467 U.S. 717, 730 (1984) (internal quotation and citation omitted). Congress made clear that the FY06 NDAA and FY 07 NDAA were technical clarifications designed to remedy judicial rulings that "misinterpreted" section 206(d) "and did not give adequate weight to the consistent practices of the services." S. Rep. No. 109-254, at 331-32 (2006). A technical

clarification designed to remedy judicial rulings constitutes a valid, rational purpose. See Sperry Corp., 493 U.S. at 64; Landgraf v. Usi Film Prods., 511 U.S. at 280. Accordingly, the retroactive application of the FY 06 NDAA and FY 07 NDAA satisfies due process requirements.

## III. Plaintiffs Do Not Have A Valid Takings Claim

Plaintiffs also claim that retroactive application of the FY 07 NDAA will constitute a compensable taking. Compl. at 17, ¶ 87. Analysis of applicable takings law shows plaintiffs' takings claim is not supported in law.

### A. Standards For Establishing A Taking Under The Fifth Amendment

The takings clause of the Fifth Amendment provides that "private property" shall not "be taken for public use without just compensation." U.S. Const. Amend V. A takings claim calls for a two-step analysis. Karuk Tribe of Cal. v. Ammon, 209 F.3d 1366, 1374 (Fed. Cir. 2000). First, a court determines whether the plaintiff possesses a valid private interest in the property affected by the governmental action. Id.; Gonzalez v. United States, 275 F.3d 1340 (Fed. Cir. 2001). In this case the supposed "private property" consisted of money in the public fisc that plaintiffs claim as military compensation for correspondence courses. As a threshold matter, plaintiffs cannot establish a property right in this money and therefore cannot establish a taking within the meaning of the Fifth Amendment. See Hoffman v. City of Providence, 909 F.2d 608, 617 (1st Cir. 1990) (Non-contractual employee benefits that a recipient only has an expectation of receiving are not property under the takings clause. Although plaintiffs may have an expectation of receiving non-contractual employee benefits, they had not received the benefits,

nor did they accept the job, or work, contingent upon receiving the benefits. The Repeal statute left them in the same employment relationship they had accepted when hired.).

However, if a plaintiff possesses a compensable property right, a court proceeds to the second step. Under that second step, a court determines whether the governmental action at issue constituted a taking of that valid property interest. Karuk Tribe of Cal. v. Ammon, 209 F.3d at 1374 (citing M & J Coal Co. v. United States, 47 F.3d 1148, 1154 (Fed. Cir. 1995). The second step of the analysis involves three factors: "(1) the economic impact of the [statute] on the claimant; (2) the extent to which the [statute] has interfered with distinct [and reasonable] investment-backed expectations; and (3) the character of the government action." Fern v. United States, 908 F.2d 955, 957 (Fed. Cir. 1990) (citing Connolly v. Pension Benefit Guar. Corp., 475 U.S. 211, 224-25 (1986)); see also Karuk Tribe of Cal. v. Ammon, 209 F.3d at 1374.

**B. Plaintiffs Do Not Have A Vested Right In The Claimed Compensation**

As noted above, under takings analysis, "[f]irst, a court determines whether the plaintiff possesses a valid interest in the property affected by the governmental action." Ammon, 209 F.3d at 1374 (quoted in Gonzalez v. United States, 48 Fed. Cl. 176, 178 (2001)). The Constitution does not create property interests. Gonzalez, 48 Fed. Cl. at 178. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source." Ruckleshaus v. Monsanto Co., 467 U.S. 986, 1001 (1984). Military benefits are defined by statute. Wyatt v. United States, 2 F.3d 398, 400 (Fed. Cir. 1993) ("A soldier's entitlement to pay is dependent upon statutory right.")(quoting Bell v. United States, 366 U.S. 393, 401 (1961)).

In order for plaintiffs to have a compensable property interest in benefits under 37 U.S.C. § 206(a), plaintiffs must establish a "vested right" to payment under the terms of that statute. See Schism v. United States, 316 F.3d 1259, 1273 (Fed. Cir. 2002) (en banc) (citing United States v. Larionoff, 431 U.S. 864, 877 (1977)). Although plaintiffs aver such a vested right, Compl. at 17, ¶ 87, they cannot establish a vested interest in payment under section 206(a), because of the prohibition on compensation contained in section 206(d) and because there is simply no vested interest in military compensation. As discussed above, both the mandate rule and the law of the case doctrine allow Congress to clarify its intent that plaintiffs were never entitled to the compensation they claim. See Pub. L. No. 109-364, § 607, 120 Stat. 2083, * (2006). Additionally, the Federal Circuit's holding did not mandate payment to plaintiffs, but instead stated plaintiffs "must establish which classes the Secretary of the Army required, if any, and which classes [they] took to satisfy those requirements." Clark v. United States, 322 F.3d 1358, 1368 (Fed. Cir. 2003). Because plaintiffs did not have a vested right in the claimed compensation, they do not have a valid takings claim. See Gonzalez v. United States, 275 F.3d 1340 (Fed. Cir. 2001). Cf. Adkins v. Rumsfeld, 464 F.3d 456 (4th Cir. 2006) (plaintiffs could not plausibly argue that when they joined the military Congress promised to permanently shield their retirement pay from state divorce decrees. Therefore, there is no "settled expectation" under Landgraf.).

**C. The Facts Surrounding The Passage Of The FY 07 NDAA Do Not Constitute A Taking**

Even if this Court were to determine plaintiffs had a vested interest in the claimed compensation, the three factors in the second step of the takings analysis counsel against classifying passage of the FY 07 NDAA as a taking. See Fern, 908 F.2d at 957. First "the

economic impact of the [statute] on the claimant[s]" is not significant. Id. Plaintiffs claim they are entitled to compensation for the "time necessary to complete required correspondence courses." Compl. at 4, ¶ 12. Plaintiffs do not claim they have been required to pay out of pocket expenses for the courses. Nor do they claim that the government promised compensation for completing these courses. In fact, it had been the express and consistent position of DOD not to offer compensation to any reserve component member. Accordingly, the economic impact is simply an opportunity cost, for which plaintiffs gain opportunities to "advance in grade, enter or advance in military occupational specialities or speciality codes; or to obtain or retain certain positions of responsibility," Compl. at 1, ¶ 1, and to be treated in the same manner as other members of the "total force." Nelson v. Geringer, 295 F.3d 1082, 1088 (10th Cir. 2002) (even when in state status the National Guard is an integral part of the total National Defense force).

Furthermore, the extent to which the FY 07 NDAA has interfered with plaintiffs' "distinct [and reasonable] investment-backed expectations" is nil. Fern, 908 F.2d at 957. As noted by the Senate Committee on Armed Services, the bar on compensation for correspondence courses under 37 U.S.C. § 206(d) to National Guard members represents the "consistent practices of the services in administering training of members of the Reserve and National Guard." See S. Rep. No. 109-254, at 331-32 (2006); see also Compl. at 17, ¶ 84 (conceding that the United States has consistently refused to pay compensation to National Guard members for correspondence courses). Because this consistent practice has been to not compensate National Guard and Reserve servicemembers for correspondence courses, plaintiffs had no reasonable expectations of compensation. Sound policy reasons support this consistent practice, as it treats all service members alike. This is consistent with the congressional requirement that laws

applying to both Regulars and Reserves be administered without discrimination. 10 U.S.C. § 10209.

Finally, the character of the government action, Fern, 908 F.2d at 957, is entirely consistent with Congress' authority to regulate military benefits. As previously noted, the statutory right to military pay is within the control of Congress and is always subject to change. See United States v. Larionoff, 431 U.S. 864, 869, 879 (1977); Alberico v. United States, 783 F.2d 1024 (Fed. Cir. 1986); Norman v. United States, 183 Ct. Cl. 41, 392 F.2d 255 (1968), cert. denied, 393 U.S. 1018 (1969). Although the Government maintains that the FY 06 NDAA and FY 07 NDAA were simply clarifications of the original congressional intent, Congress "may prospectively reduce the pay of members of the Armed Forces, even if that reduction deprived members of benefits they had expected to be able to earn." Schism v. United States, 316 F.3d 1259, 1274 (Fed. Cir. 2002) (quoting Watt v. United States, 2 F.3d 398, 401 (Fed. Cir. 1993)). Only the President and Article III judges have constitutional protection with respect to congressional reduction of their compensation. U.S. Const. art. II, § 1, cl. 7, art. III, § 1; United States v. Will, 449 U.S. 200 (1980). Congress acted within its power to determine military pay when it clearly stated that plaintiffs were never entitled the compensation they claim. See Pub. L. No. 109-364, § 607, 109 Stat. 2083, * (2006). Preventing an unanticipated and unknown liability provides a rational legislative purpose for making the clarifying amendments retroactively applicable to plaintiffs. Hoffman v. City of East Providence, 909 F.2d 608, 618 (1st Cir. 1990).

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court grant its motion to dismiss the complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Assistant Director

OF COUNSEL:

LT. COL. JOSEPH FETTERMAN
MAJOR JERRETT DUNLAP
United States Army Litigation Division
Arlington, VA 22203-1837

TIMOTHY MALLOY
LT. COL. RICHARD REED
MAJOR TRACEY ROCKENBACH
United States Air Force
General Litigation Division

MAXIMINO GONZALEZ
National Guard Bureau
Office of Chief Counsel

s/ Douglas K. Mickle
DOUGLAS K. MICKLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel. (202) 307-0383
Fax (202) 353-7988

Attorneys for Defendant

January 5, 2007

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on January 5, 2007, a copy of the foregoing "**DEFENDANT'S MOTION TO DISMISS**" with accompanying appendix was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's System.

s/Douglas K. Mickle
Douglas K. Mickle