IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM A. CLARK, JAMES P. DAVERN, ROBERT E. FREEBURG, WILLIE R. JOHNSON, ROBERT A. MUSTIN, JOHN DOES 1 through 4, and JANE DOES 1 through 3, individually, and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | CASE NO. 00-644C<br>(Judge Firestone) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS**

Richard T. Dorman
CUNNINGHAM, BOUNDS, VANCE, CROWDER, and BROWN, LLC
1601 Dauphin Street
Mobile, Alabama 36660
Tel: (334) 471-6191
Fax: (334) 479-1031

Charles J. Cooper
David Thompson
COOPER & KIRK, P.L.L.C.
555 11th St, N.W. Suite 750
Washington, DC 2005
Tel: (202) 220-9600
Fax: (202) 220-9601

Helen K. Michael
Robert H. Shulman
John F. Stanton
Christina Fahmy
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 783-0800
Fax: (202) 383-6610

Counsel for Plaintiffs

# TABLE OF CONTENTS


INTRODUCTION ........ 1

BACKGROUND ........ 3

GOVERNING STANDARDS ........ 7

ARGUMENT ........ 8

I. THE GOVERNMENT'S JURISDICTIONAL CHALLENGE IS WITHOUT MERIT ........ 8

II. RETROACTIVE APPLICATION OF THE 2007 NDAA AMENDMENT TO THIS CASE WOULD VIOLATE SEPARATION OF POWERS CONSTRAINTS ........ 9

A. Congress Cannot Dictate a Result in its Own Favor in Pending Litigation........ 10

B. Congress Cannot Act Permissibly as a "Super-Appellate Court" ........ 15

III. RETROACTIVE APPLICATION OF THE 2007 NDAA AMENDMENT WOULD VIOLATE PLAINTIFFS' FIFTH AMENDMENT RIGHTS ........ 21

A. Retroactive Application of the 2007 NDAA Amendment Would Violate the Takings Clause of the Fifth Amendment ........ 22

1. Plaintiffs' Claims for Compensation are Protected Property Interests ........ 22

**2.** Retroactive Application of the 2007 NDAA Amendment Would Impermissibly Destroy Plaintiffs' Causes of Action ........ 24

B. Retroactive Application of the 2007 NDAA Amendment Would Violate Plaintiffs' Due Process Rights ........ 28

IV. ADDITIONAL CONSIDERATIONS PRECLUDE THE 2007 NDAA AMENDMENT FROM BEING APPLIED RETROACTIVELY ........ 32

A. The Federal Savings Statute Preserves the Liabilities ........ 33

1. The Savings Statute is Fully Applicable Here ........ 33

2. The 2007 NDAA Amendment Does Not Expressly Extinguish the Government's Liability ........ 34

B. Changes in the Law Are Presumed to be Prospective ........ 36

CONCLUSION ........ 39

# TABLE OF AUTHORITIES

## CASES

*Abrahim-Youri v. United States*, 139 F.3d 1462 (Fed. Cir. 1997) ....................................23, 24, 28

*Addison v. Huron Stevedoring Corp.*, 204 F.2d 88 (2d Cir. 1953)..............................................16

*Adv. Cardiovascular Systems, Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157 (Fed. Cir. 1993) .......7

*In re Air Crash in Bali*, 684 F.2d 1301 (9th Cir. 1982)..............................................................22

*Alden v. Maine*, 527 U.S. 706 (1999) ..........................................................................................10

*Alyeska Pipeline Service Co. v. United States*, 224 Ct. Cl. 240 (1980).........................................37

*Alliance of Descendants v. United States*, 37 F.3d 1478 (Fed. Cir. 1981) ...................................23

*Allin v. Brown*, 6 Vet. App. 207 (1994).........................................................................................37

*Am. Discount Corp. v. Shepherd*, 120 P.3d 96 (Wash. App. 2005)........................................ 17-18

*Am. Federation v. Campbell*, 474 F. Supp. 357 (D. D.C. 1979),
*aff'd in part, rev'd in part on other grounds*, 659 F.2d 157 (D.C. Cir. 1980)..................29, 30

*Arevalo v. Ashcroft*, 344 F.3d 1 (1st Cir. 2003)...........................................................................23

*Armstrong v. United States*, 364 U.S. 40 (1960) .....................................................................22, 27

*Bank of Denver v. SE Capital Group, Inc.*, 789 F. Supp. 1092 (D. Colo. 1992).....................14, 15

*Barr v. Preskitt*, 389 F. Supp. 496 (M.D. Ala. 1975) ...................................................................25

*Bell v. United States*, 366 U.S. 393 (1961).....................................................................................30

*Bermner v. Mills*, 579 S.E. 2d 159 (Va. 2003)..............................................................................38

*Biodiversity Associates v. Cables*, 357 F.3d 1152 (10th Cir. 2004) .............................................16

*Bowen v. Agencies Opposed to Social Sec. Entrap.*, 477 U.S. 41 (1986)......................................29

*Bradley v. Richmond Sch. Board*, 416 U.S. 696 (1974) ............................................................ 21

*Brandt v. Hickel*, 427 F.2d 53 (9th Cir. 1970)...............................................................................30

*In re Britchard Sec. Litigation*, 788 F. Supp. 1098 (N.D. Cal. 1992)...........................................12

*Carson v. Maurer*, 424 A.2d 825 (N.H. 1980) .....................................................................31

*Cerro Metal Products v. Marshall*, 467 F. Supp. 869 (E.D. Pa. 1979),
*aff'd*, 620 F.2d 964 (3d Cir. 1980).......................................................................17, 21

*Cherry v. United States*, 640 F.2d 1184 (Ct. Cl. 1980).............................................24, 30

*Clark v. United States*, 50 Fed. Cl. 727 (2001)....................................................3, 4, 8

*Clark v. United States*, 69 Fed. Cl. 443 (2006).........................................................3, 5

*Clark v. United States*, 322 F.3d 1358 (Fed. Cir. 2003) ..................................3, 4, 6, 8, 18

*Condemarin v. University Hospital*, 775 P.2d 348 (Utah 1989)......................................31

*Condit v. United Air Lines, Inc.*, 631 F.2d 1136 (4th Cir. 1980).....................................38

*In re Consolidated United States Atmospheric Testing Lit.*, 820 F.2d 982 (9th Cir. 1987)...........10

*Cook v. United States*, 855 F.2d 848 (Fed. Cir. 1988).....................................................24

*Covey v. Hollydale Mobilehome Estates*, 125 F.3d 1281 (9th Cir. 1997) ...........................33

*Craig v. Ohio Department of Admin. Services*, 790 F. Supp. 758 (S.D. Ohio 1992),
*aff'd mem*, 1 F.3d 1240 (6th Cir. 1993) ..........................................................14, 16

*Crane v. Hahlo*, 258 U.S. 142 (1922)..........................................................................31

*Daughters of Miriam Ctr. for the Aged v. Mathews*, 590 F.2d 1250 (3d Cir. 1978) .....................29

*Del Rio v. Crake*, 955 P.2d 90 (Haw. 1998) .................................................................18

*Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507 (1950) .........................................21

*Diefernderfer v. MSPB*, 194 F.3d 1275 (Fed. Cir. 1999)....................................................36

*Ducre v. Mine Safety Appliances*, 573 F. Supp. 388 (E.D. La. 1983)
*aff'd in part, reversed in part on other grounds*, 752 F.2d 976 (5th Cir. 1985)......................24

*Edwardsen v. Morton*, 369 F. Supp. 1359 (D.D.C. 1973) ...................................................26

*Ettor v. Tacoma*, 228 U.S. 148 (1913)...........................................................................26

*FEC v. Wright*, 777 F. Supp. 525 (N.D. Tex. 1991).........................................................35

*FedEx Corp. v. Skelton*, 578 S.W. 2d 1 (Ark. 19979) .......................................................18

*Fern v. United States*, 908 F.2d 955 (Fed. Cir. 1990)....................28

*Foley v. Carter*, 526 F. Supp. 977 (D. D.C. 1981) ....................29, 30

*Forbes Pioneer Boat Line v. Board of Comm'rs*, 258 U.S. 338 (1922) ....................16

*Fujitsu Ltd. v. Federal Ex Corp.*, 247 F.3d 423 (2d Cir. 2001)....................33

*Gibson v. Com.*, 415 A.2d 80 (Pa. 1980)....................26

*Gonzales v. United States*, 48 Fed. Cl. 176 (2000)....................30

*Gove v. United States*, 24 Cl. St. 296 (1991) ....................20

*Greyhound Food Mgmt., Inc. v. City of Dayton*, 653 F. Supp. 1207 (S.D. Ohio 1986)......... 25, 26

*Hamm v. Rock Hill*, 379 U.S. 306 (1964) ....................33, 34

*In re Harbour Pointe Ltd. Partnership*, 132 B.R. 501 (Bankr. D. D.C. 1991)....................37

*Heckler v. Committee Health Services*, 467 U.S. 51 (1984)....................30

*Henderson v. Scientific-Atlanta, Inc.*, 971 F.2d 1567 (11th Cir. 1992)....................16

*Hoffman v. City of Warwick*, 909 F.2d 608 (1st Cir. 1990) ....................29, 30

*Horne v. Firemen's Retirement System*, 69 F.3d 233 (8th Cir. 1995) ....................25

*Hughes Aircraft Co. v. United States*, 86 F.3d 1566 (Fed. Cir. 1996)....................19

*Hutton v. Autoridad Sobre Hogares De La Capital*, 78 F. Supp. 988 (D. P.R. 1948)....................25

*INS v. Chadha*, 462 U.S. 919 (1983) ....................10

*Jacklitch v. Redstone Federal Credit Union*, 463 F. Supp. 1134 (N.D. Ala. 1979) ....................24, 26

*Jamesbury Corp. v. Litton Industrial Products, Inc.*, 839 F.2d 1544 (Fed. Cir. 1988) ....................18

*John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345 (Fed. Cir. 2006) ....................9

*Johnston v. CIGNA Corp.*, 789 F. Supp. 1098 (D. Colo. 1992) ....................14

*Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045 (5th Cir. 1982) ....7

*Karadanis v. Bond*, 993 P.2d 721 (Nev. 2000)....................18

*Keener v. WMATA*, 800 F.2d 1173 (D.C. Cir. 1986)....................35

*Kelley v. United States*, 792 F. Supp. 793 (M.D. Fla. 1992) ....................25

*Kinne v. United States*, 21 Cl. Ct. 104 (1990_....................14

*Korshin v. C.I.R.*, 91 F.3d 670 (4th Cir. 1996) ....................34, 35

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994)....................36, 37, 38

*Larionoff v. United States*, 533 F.2d 1167 (D.C. Cir. 1976), *aff'd*, 431 U.S. 864 (1977) ............30

*Lindh v. Murphy*, 521 U.S., 320 (1997)....................38

*Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992)....................23

*Lynch v. United States*, 292 U.S. 571 (1934)....................12, 29

*Martin v. Hadix*, 527 U.S. 343 (1999) ....................38

*McBride v. GM Corp.*, 737 F. Supp. 1563 (M.D. Ga. 1990) ....................31

*Mistretta v. United States*, 488 U.S. 361 (1989)....................9

*Muir v. Louisville & N. R. Co.*, 247 F. 888 (W.D. Ky. 1918)....................26

*Murray v. United States*, 817 F.2d 1580 (Fed. Cir. 1987) ....................9, 22

*NLRB v. Nat. Garment Co.*, 166 F.2d 233 (8th Cir. 1948) ....................34

*In re Naramore*, 3 B.R. 709 (N.D.N.Y. 1980)....................35

*Nat. Cable Television Assoc'n v. Am. Cinema Editors, Inc.*, 937 F.2d 1572 (Fed. Cir. 1991)........8

*Nixon v. United States*, 978 F.2d 1269 (D.C. Cir. 1992) .................... 23-24

*Northern Helex Co. v. United States*, 634 F.2d 557 (Ct. Cl. 1980) ....................18

*Ogden v. Blackledge*, 6 U.S. (2 Cranch) 272 (1802) ....................16

*Opdyke Investment Co. v. Detroit*, 883 F.2d 1265 (6th Cir. 1989)....................25

*Palmer v. United States*, 168 F.3d 1310 (Fed. Cir. 1999)....................9

*Pappas v. City of Lebanon*, 331 F. Supp.2d 311 (M.D. Pa. 2004) ....................23

*Patlex Corp. v. Mossinghoff*, 758 F.2d 594 (Fed. Cir. 1985)................................................ 26-27

*Patterson v. McLean Credit Union*, 784 F. Supp. 268 (M.D.N.C. 1992)....................................31

*Penn Central Transport Co. v. New York City*, 438 U.S. 104 (1978)..........................................27

*Peony Park, Inc. v. O'Malley*, 121 F. Supp. 690 (D. Neb. 1954),
*aff'd*, 223 F.2d 668 (8th Cir. 1955)................................................................16, 17, 38

*People v. Cuevas*, 168 Cal. Rptr. 519 (Cal. App. 1980) ..............................................................18

*People v. Harris*, 387 N.E.2d 33 (Ill. App. 1979)........................................................................18

*Perry v. United States*, 294 U.S. 330 (1935) ..................................................................................12

*Personal Finance Co. v. United States*, 86 F. Supp. 779 (D. Del. 1949) ......................................14

*Phelps Dodge Corp. v. Rev. Div. of Dep't of Tax. & Rev.*, 702 P.2d 10........................................18

*Phonometrics, Inc. v. Hospitality Franchise System*, 203 F.3d 790 (Fed. Cir. 2000) .....................7

*Plaut v. Spendthrift Farm*, 514 U.S. 211 (1995)........................................................... 16, 20-21

*Porto Rico Brokerage Co. v. United States*, 80 F.2d 521 (C.C.P.A. 1936).................................13

*Prescott v. United States*, 523 F. Supp. 918 (D. Nev. 1981) ........................................................25

*Princess Cruises, Inc. v. United States*, 397 F.3d 1358 (Fed. Cir. 2005) ......................................36

*In re Prior*, 176 B.R. 485 (Bankr. S.D. Ill. 1995)...........................................................................16

*Resolution Trust Corp. v. Seale*, 13 F.3d 850 (5th Cir. 1994) .......................................................37

*Ritholz v. March*, 105 F.2d 937 (D.C. Cir. 1939) ..........................................................................31

*Rivers v. Roadway Express, Inc.*, 511 U.S. 298 (1994) ..............................................................38

*Roberts v. Dean Witter Reynolds*, 2003 U.S. Dist. LEXIS 5676 (M.D. Fla. Mar. 14, 2003)........37

*In re Rospatch Sec. Litigation*, 802 F. Supp. 110 (W.D. Mich. 1992) ..........................................14

*Roxco, Ltd. v. United States*, 60 Fed. Cl. 39 (2004)......................................................................7

*Schiavo v. Schiavo*, 404 F.3d 1270 (11th Cir. 2005) ....................................................................12

*In re Shear*, 139 F. Supp. 217 (N.D. Cal. 1956) ............................................................................13

*Sheet Metal Workers v. EEOC*, 478 U.S. 421 (1986) ....................21

*Shelden v. United States*, 7 F.3d 1022 (Fed. Cir. 1993)....................25

*Smith International v. Hughes Tool, Inc.*, 759 F.2d 1572 (Fed. Cir. 1985)....................20

*Smith v. Travis Co. Ed. District*, 791 F. Supp. 1170 (W.D. Tex.),
*vacated on other grounds*, 968 F.2d 453 (5th Cir. 1992) ....................25

*State v. Fell*, 97 P.3d 902 (Ariz. App. 2004) ....................18

*State v. Great W. Railway*, 25 N.W.2d 294 (Minn. 1946)....................37

*Suel v. Sec. of HHS*, 192 F.3d 981 (Fed. Cir. 1999) .................... 19, 20

*Taylor v. Ariz.*, 972 F. Supp. 1239 (D. Ariz. 1997),
*aff'd en banc*, 181 F.3d 1017 (9th Cir. 1999) .................... 20-21

*Toro Co. v. White Consolidated Industrial, Inc.*, 383 F.3d 1326 (Fed. Cir. 2004)....................19

*Ulmet v. United States*, 17 Cl. Ct. 679, 691 (1989),
*overruled on other grounds, Wilson v. United States,* 917 F.2d 529 (Fed. Cir. 1990),
*aff'd, Ulmet v. United States*, 935 F.2d 280 (table) (Fed. Cir. 1991).................... *passim*

*United States v. Board of Ed. of Chicago*, 588 F. Supp. 132 (N.D. Ill.),
*vacated on other grounds,* 744 F.2d 1300 (7th Cir. 1984) ....................14, 17

*United States v. Klein*, 80 U.S. (13 Wall.) 128 (1871) ....................11

*United States v. O'Neal*, 1988 U.S. Dist. LEXIS 14369 (N.D. Ill. Oct.31, 1988)....................35

*United States v. Schuler*, 47 M.J. 561 (1997) ....................33

*United States v. Sioux Nation of Indians*, 448 U.S. 371 (1980).................... 11-12

*United States v. Smith & Nephew Richards*,
1997 U.S. Dist. LEXIS 22939 (W.D. Tex. Mar. 7, 1997) ....................35

*United States v. Sperry*, 493 U.S. 52 (1989)....................28

*United States v. Van Den Berg*, 5 F.3d 439 (9th Cir. 1993) ....................34

*United States v. Winstar Corp.*, 518 U.S. 839 (1996)....................12

*Unwired Telecom v. Parish of Calcasieu,* 903 So.2d 392 (La. 2005) ....................18

*Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1976) ..........28

*Valdez v. Schweiker*, 575 F. Supp. 1203 (D. Col. 1983)..........10, 21

*Waggoner v. Gibson*, 647 F. Supp. 1102 (N.D. Tex. 1986) ..........31

*Warden v. Marrerro*, 417 U.S. 653 (1974)..........33

*Whalen v. Office of Personnel Management*, 959 F.2d 924 (Fed. Cir. 1992)..........34

*Whitney Benefits, Inc. v. United States*, 926 F.2d 1169 (Fed. Cir. 1991) ..........23

*Widdis v. United States*, 395 F. Supp. 1015 (D. Alaska 1974)..........36

*Williams v. United States*, 264 F.3d 1089 (Fed. Cir. 2001)..........9, 21

*Wilson v. United States*, 917 F.2d 529 (Fed. Cir. 1990) ..........36

*Wood v. Witco Corp.*, 1995 U.S. Dist. LEXIS 10614 (E.D. La. July 25, 1995)..........16

*Xiangyuan Zhu v. Federal Housing Finance Board*, 389 F. Supp.2d 1253 (D. Kan. 2005) ..........37

*Yankee Atomic Electric Co. v. United States*, 112 F.3d 1569 (Fed. Cir. 1997)..........22

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) ..........10

## CONSTITUTIONAL PROVISIONS AND STATUTES

1 U.S.C. § 109 ..........32, 33

37 U.S.C. § 206 (1994)..........*passim*

109 Pub. L. 163, 119 Stat. 3136 (Jan. 6, 2006)..........6

109 Pub. L. No. 364, 120 Stat. 2083 (2006)..........6

U.S. Const. Amend. V ..........*passim*

## LEGAL ENCYCLOPEDIAS, RESTATEMENTS & HORNBOOKS

1 AM. JUR.2D *Actions* § 10..........24

Singer, 1A SUTHERLAND STAT. CONSTRUCTION § 27.04 (4th Ed. 1985) ..........15

Tribe, AMERICAN CONSTITUTIONAL LAW (1978) ....................................................................14

13 Wright, Miller & Cooper, FEDERAL PRACTICE & PROCEDURE, *Jurisdiction and Related Matters* § 3529.1 (1984) ....................................................................15

**LAW REVIEW ARTICLES**

Comment, *Good Guns (And Good Business Practices) Provide all the Protection They Need: Why Legislation to Immunize the Gun Industry from Civil Liability is Unconstitutional*, 72 U. CIN. L. REV. 1739 (2004) ....................................................................31

Fletcher, *Atomic Bowl Testing and the Warner Amendment: A Violation of the Separation of Powers*, 65 WASH. L. REV. 285 (1990)....................................................................11, 12

Note, *Constitutional Fallout from the Warner Amendment, Annihilating the Rights of Atomic Weapons Testing Victims*, 62 N.Y.U.L. REV. 1331 (1987)....................................................25

Note, *Section 2212: A Remedy for Veterans-With a Catch*, 75 CAL. L. REV. 1513 (1987)... *passim*

Note, *The Fairness and Constitutionality of Statutes of Limitation for Toxic Tort Suits*, 96 HARV. L. REV. 1683 (1983) ....................................................................31

Ruud, *The Savings Clause—Some Problems in Construction and Drafting*, 33 TEX. L. REV. 285 (1955) ....................................................................35

Young, *Congressional Regulation of Federal Courts' Jurisdiction and Process: United States v. Klein Revisited*, 1981 WISC. L. REV. 1189 (1981) ..............................................10

**OTHER AUTHORITIES**

H. Rep. No. 109-452 (2006) ....................................................................13

H. Rep. No. 109-702 (2006) ....................................................................13

S. Rep. No. 109-254 (2006)....................................................................13

## INTRODUCTION

Disregarding the judicial rulings denying relief on its two earlier dispositive motions, the government seeks once again in its present motion to dismiss to avoid the obligations that already have been definitively established by the Federal Circuit to compensate Plaintiffs for completing required correspondence coursework. The government now relies primarily on a statutory amendment that was part of the 2007 National Defense Authorization Act (the "2007 NDAA Amendment"), and argues that 37 U.S.C. § 206 no longer authorizes payment for such required correspondence coursework, notwithstanding the Federal Circuit's ruling, which the government did not challenge in the Supreme Court, that the pay statute in effect at the time that Plaintiffs performed this work obligated the government to provide such payment.

The government's motion is premised on the unsupportable defense that the 2007 NDAA Amendment serves as a bar to liability under § 206 as if the Federal Circuit had never issued its binding decision. This defense fails as a matter of law because bedrock constitutional safeguards, as well as other principles, preclude the 2007 NDAA Amendment from being retroactively applied in this fashion.

Retroactive application of the Amendment would, among others, violate essential separation of powers constraints securing the country's system of limited government. These principles forbid Congress from passing legislation that effectively dictates a result in a pending case in its own favor. These constraints also forbid Congress from usurping an inherently judicial function (namely, statutory interpretation) when it disagrees with the way that the courts have interpreted the statute. It is a core principle of this country's scheme of checks and balances that Congress cannot act as a "super-appellate" court.

Applying the 2007 NDAA Amendment retroactively also would effect a taking prohibited by the Fifth Amendment. If the Amendment were applied retroactively, then Plaintiffs' property (namely, their claims for compensation under the pay statute construed by the Federal Circuit) would be eliminated. Because the government has not even offered to provide compensation for extinguishing Plaintiffs' claims, the government has committed an unlawful "taking" proscribed by the Fifth Amendment.

Retroactive application of the 2007 NDAA Amendment would, for similar reasons, violate Plaintiffs' rights under the Fifth Amendment to due process. The government's argument that a desire by Congress to avoid preexisting obligations constitutes a "rational purpose" justifying retroactive application of the amended pay statute cannot be reconciled with Supreme Court precedent. Moreover, due process protections would, in all events, preclude retroactive application of the 2007 NDAA Amendment because that result would be manifestly unjust to Plaintiffs here.

In addition to these constitutional prohibitions on retroactive application of the 2007 NDAA Amendment, the federal savings statute serves to preserve the government's preexisting liabilities to Plaintiffs under the pay statute because the Amendment does not expressly extinguish these liabilities. Moreover, the amendments themselves do not satisfy the high burdens imposed by the Supreme Court for retroactive application.

Each of these considerations dictates denial of the government's motion to dismiss. Because the 2007 NDAA Amendment cannot be retroactively applied to eliminate Plaintiffs' entitlement to compensation for required correspondence coursework, Plaintiffs also are entitled to partial summary judgment on the government's affirmative defense based on the 2007 NDAA Amendment.

## BACKGROUND

The factual and procedural background of this case has been recounted in significant past opinions from Chief Judge Damich, and from the Federal Circuit. *See Clark v. United States*, 322 F.3d 1358, 1361-62 (Fed. Cir. 2003); *Clark v. United States*, 69 Fed. Cl. 443, 444-45 (2006); *Clark v. United States*, 50 Fed. Cl. 727, 728-29 (2001). To briefly recap for present purposes, Plaintiff William A. Clark filed the instant suit on November 1, 2000, seeking compensation for completion of required correspondence coursework performed as a member of the Army National Guard. Mr. Clark alleged that he was required to complete correspondence coursework to advance in and maintain rank, but was never compensated for completion of the courses as required by 37 U.S.C. § 206(a)(2).[1]

On February 6, 2001, the government filed its first dispositive motion seeking to dismiss Mr. Clark's Complaint. The government challenged the existence of subject matter jurisdiction and whether the complaint stated a claim upon which relief could be

---

[1] This subsection, which has not been amended since the instant suit was filed, provides:

> (a) Under regulations prescribed by the Secretary concerned, and to the extent provided for by appropriations, a member of the National Guard or a member of a reserve component of a uniformed service who is not entitled to basic pay under section 204 of this title, is entitled to compensation, at the rate of 1/30 of the basic pay authorized for a member of a uniformed service of a corresponding grade entitled to basic pay—
>
> > (1) for each regular period of instruction, or period of appropriate duty, at which the member is engaged for at least two hours, including that performed on a Sunday or holiday;
> >
> > (2) for the performance of such other equivalent training, instruction, duty, or appropriate duties, as the Secretary may prescribe; or . . . .

37 U.S.C. § 206(a)(2) (1994).

granted, asserting that § 206(d) barred Mr. Clark, as a member of the National Guard, from receiving compensation for completion of required coursework. *See* Doc. No. 14 at 6, 13. Judge Damich rejected the government's jurisdictional challenge, but granted the motion to dismiss for failure to state a claim, holding that § 206(d) barred Mr. Clark's claim for compensation. *Clark v. United States*, 50 Fed. Cl. 727 (2001).[2]

On March 18, 2003, the Federal Circuit upheld Judge Damich's jurisdictional ruling but reversed his dismissal of the complaint. *See Clark v. United States*, 322 F.3d 1358 (Fed. Cir. 2003). As had Judge Damich, the Federal Circuit ruled that § 206(a) was a money-mandating statute, and that the government's contrary contention "confuse[d]" the separate analyses for determining subject matter jurisdiction and the viability of a given claim on its merits. *See id.* at 1363. On the latter merits question, the Federal Circuit held that Judge Damich erred because the § 206(d) exclusion on compensation for correspondence coursework applied only to members of a Reserve component, and Mr. Clark completed his courses in his status as a member of the Alabama National Guard. *Id.* at 1364-1369. The Federal Circuit also ruled that the plain terms of § 206(a)(2) "require[d]" National Guard members to be paid "for equivalent training that the secretary prescribes," including required correspondence coursework. *Id.* at 1368. The Federal Circuit remanded the case to resolve the single liability issue of which, if any, required correspondence courses Mr. Clark completed, and the damages issue of "the amount of compensation he is due under the statute." *Id.*

---

[2] At the time this action was filed, § 206(d) provided:

> (d) This section does not authorize compensation for work or study performed by a member of a reserve component in connection with correspondence courses of an armed force.

37 U.S.C. § 206(d) (1994).

On August 15, 2003, the Federal Circuit summarily denied the government's petition for rehearing and rehearing en banc. The government did not seek review by the Supreme Court.

Upon remand, the government declined to comply with the Federal Circuit's decision that § 206(a)(2) mandates compensation to National Guard members completing required correspondence courses. Instead, the government filed a summary judgment motion on April 30, 2004, arguing that correspondence courses did not qualify as compensable coursework under § 206(a), and, therefore, that Mr. Clark and other Army and Air National Guard members who had joined the suit as named plaintiffs (collectively, "Plaintiffs") were not entitled to compensation. *See* Doc. No. 60 at 20-27. Also contrary to the Federal Circuit's decision, the government insisted that Mr. Clark had completed courses in his status as a member of the Alabama National Guard, and not as a member of the National Guard of United States. *Id*. at 33.

On January 25, 2006, Judge Damich denied the government's summary judgment motion. *Clark v. United States*, 69 Fed. Cl. 443 (2006). In his decision, Judge Damich expressly reaffirmed that Plaintiffs completed their courses in their capacities as state National Guard members, that the § 206(d) bar accordingly did not apply, and that § 206(a), therefore, mandated compensation for required correspondence coursework completed by National Guard members. *Id.* at 445-49. Judge Damich directed that the parties proceed with discovery regarding: (1) which correspondence courses were, in fact, required; and (2) which required courses the Plaintiffs had taken. *Id.* at 449.

On April 17, 2006, Judge Damich transferred this case to this Court. On May 15, 2006, this Court set a schedule that would permit Plaintiffs to take discovery to establish

which of their completed courses were required, prior to further dispositive motion practice or trial.

On September 29, 2006, before document discovery was completed or any deposition discovery was taken, Congress enacted the 2007 NDAA Amendment, which added the following paragraph to 37 U.S.C. § 206(d):

> (3) The prohibition in paragraph (1), including the prohibition as it relates to a member of the National Guard while not in Federal service, applies to--
>
> > (A) any work or study performed on or after September 7, 1962, unless that work or study is specifically covered by the exception in paragraph (2); and
> >
> > (B) any claim based on that work or study arising after that date.

PUB. L. NO. 109-364, 607, 120 STAT. 2083 (2006).

The 2007 NDAA Amendment is the *third* amendment to § 206 since the filing of the instant case. In 2002, Congress amended § 206 to convert it from imposing a mandatory obligation to provide compensation for required correspondence coursework into conferring a discretionary one. The Federal Circuit concluded in its 2003 opinion that this amendment applied only prospectively and served only to moot Plaintiff's claim for injunctive relief "prohibiting the government from refusing to pay for further correspondence courses taken by National Guard members." *Clark*, 322 F.3d at 1362 n.1. In 2006, Congress amended the 2002 Amendment to make plain that the new prohibition against compensation for correspondence coursework for National Guard contained in that Amendment applied to members of the Reserve components. *See* 109 PUB. L. 163, 119 STAT. 3136 (Jan. 6, 2006). This 2006 amendment to the 2002 amendment has no retroactive application to this litigation, and does not serve as an indicator of prior legislative intent.

On December 5, 2006, Plaintiffs filed a Second Amended Complaint. Doc. No. 140. Plaintiffs' Second Amended Complaint reiterated their claim for compensation pursuant to the pay statute, and also alleged that the 2007 NDAA Amendment cannot be retroactively applied to this lawsuit.

The government filed its instant motion to dismiss on January 5, 2007. Doc. No. 141. This motion again challenges this Court's jurisdiction, notwithstanding the prior rulings of the Federal Circuit and Judge Damich that § 206(a) is a money-mandating statute. Relying primarily on the 2007 NDAA Amendment, the government also asserts that Plaintiffs have failed to state a claim upon which relief can be granted.

**GOVERNING STANDARDS**

Settled standards govern resolution of the government's motion to dismiss and, Plaintiffs' cross-motion for partial summary judgment on the affirmative defense advanced in the government's motion. Motions to dismiss for failure to state a claim are "viewed with disfavor and [are] rarely granted." *Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (quoting WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE *Civil* § 1357 at 598 (1969)); *Phonometrics, Inc. v. Hospitality Franchise Sys.*, 203 F.3d 790, 794 (Fed. Cir. 2000) (same). Moreover, all inferences must be drawn in favor of the Plaintiffs. *See Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993).

With regard to the cross-motion, Plaintiffs may move for relief on anticipated defenses, such as those asserted in the government's present motion to dismiss, before such defenses have been asserted in an answer to a complaint. *See, e.g., Roxco, Ltd. v. United States*, 60 Fed. Cl. 39, 47 (2004). Summary judgment is proper when the movant

has established that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. *See Nat'l Cable Television Ass'n v. Am. Cinema Editors, Inc.*, 937 F.2d 1572, 1576 (Fed. Cir. 1991).

Application of these standards here necessitates denial of the government's motion and the granting of partial summary judgment to Plaintiffs. As discussed further below, the government's affirmative defense based on the 2007 NDAA Amendment fails as a matter of law because the Amendment cannot be retroactively applied to extinguish the right to compensation for required correspondence coursework that already has been definitely established to exist by the Federal Circuit.

## ARGUMENT

### I. THE GOVERNMENT'S JURISDICTIONAL CHALLENGE IS WITHOUT MERIT

The government's jurisdictional challenge (Br. 10-12) is emblematic of its steadfast refusal to abide by the judicial decisions controlling resolution of this case. Both the Federal Circuit and Judge Damich already have unequivocally rejected the contention, again advanced by the government in its present motion to dismiss, that jurisdiction is lacking because § 206(d) ostensibly bars Plaintiffs' right to compensation. As the Federal Circuit directed, § 206(a) is a money-mandating statute and the government's position regarding the claimed scope of the § 206(d) exclusion "confuses the issue of jurisdiction with the question of whether Mr. Clark can prevail on the merits" of his claim for payment for required correspondence coursework. *Clark*, 322 F.3d at 1363; *see also Clark*, 50 Fed. Cl. at 729 (essentially same). The government's present

assertion that the version of the § 206(d) exclusion adopted in the 2007 NDAA Amendment precludes subject matter jurisdiction rests on the same erroneous confusion. As the Federal Circuit already has directed, the scope of the § 206(d) exclusion (whether as found in the 2007 NDAA Amendment or in the form existing when this case was filed) is irrelevant to jurisdiction, and only relates to the merits of Plaintiffs' claims. *See also Palmer v. United States*, 168 F.3d 1310, 1312-13 (Fed. Cir. 1999) (further criticizing the government for conflating jurisdiction with merits of claim).

The government's jurisdictional challenge also has no merit because the takings claims asserted in Plaintiffs' Second Amended Complaint, which are discussed *infra* at 21-28, provide a second basis for subject matter jurisdiction. As the Federal Circuit has repeatedly ruled, "[t]he Tucker Act . . . provides the Court of Federal Claims with jurisdiction over takings claims brought against the United States." *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1534 (Fed. Cir. 2006); *see also Murray v. United States*, 817 F.2d 1580, 1583 (Fed. Cir. 1987) (essentially same).

## II. RETROACTIVE APPLICATION OF THE 2007 NDAA AMENDMENT TO THIS CASE WOULD VIOLATE SEPARATION OF POWERS CONSTRAINTS

The government's motion fails even meaningfully to address the separation of powers constraints precluding the 2007 NDAA Amendment from being construed to override the Federal Circuit's ruling that § 206(a) entitles National Guard members to payment for completing required correspondence courses. These constraints are essential to this country's system of limited government, and serve to safeguard the judiciary's role as a check and balance on the improper exercise of executive and legislative power. *See Mistretta v. United States*, 488 U.S. 361, 380 (1989); *Williams v. United States*, 264 F.3d 1089, 1093 (Fed. Cir. 2001) ("It is the right, privilege, and duty of the courts to assure

that the constitutional safeguards are preserved. No safeguard is more fundamental than the separation of governmental power, the checks and balances, among the three branches") (Newman, J., dissenting from denial of rehearing en banc); *accord Valdez v. Schweiker*, 575 F. Supp. 1203, 1206 (D. Col. 1983) ("The doctrine of separation of powers clearly contemplates a zone of judicial power which must be free from interference by either the Legislative or Executive branches") (quotation omitted).[3]

As shown below, the government's interpretation of the 2007 NDAA Amendment violates separation of powers principles recognized since the early days of this Nation for at least two reasons. First, that interpretation would effectively dictate a result in pending litigation in the government's favor. Second, it would require the overruling of the Federal Circuit's binding decision that § 206(a)(2) entitles National Guard members to compensation for completing required correspondence courses.

### A. Congress Cannot Dictate a Result in its Own Favor in Pending Litigation

"Congress has vast power but not all power." *Alden v. Maine*, 527 U.S. 706, 758 (1999). In particular, "Congressional attempts to alter the rule of decision in pending cases in favor of the government have been condemned as a violation of Article III." *In re Consolidated United States Atmospheric Testing Litig.*, 820 F.2d 982, 992 (9th Cir. 1987); Young, *Congressional Regulation of Federal Courts' Jurisdiction and Process: United States v. Klein Revisited*, 1981 WISC. L. REV. 1189, 1244-49 (1981) (explaining

---

[3] Separation of powers principles are even more essential to preserve the country's system of checks and balances during wartime. *See, e.g., Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 593 (1952) (Frankfurter, J., concurring); *accord INS v. Chadha*, 462 U.S. 919, 951 (1983) ("[t]he hydraulic pressure inherent within each of the separate Branches to exceed the outer limits of its power, even to accomplish desirable objectives, must be resisted").

resulting harms when Congress re-writes law in pending case to favor itself). This is exactly what the 2007 NDAA Amendment attempts to accomplish.

In the seminal case *United States v. Klein*, 80 U.S. (13 Wall.) 128 (1871), the Supreme Court held that Congress had unconstitutionally violated separation of powers constraints by passing a law requiring a decision favorable to the Government in a pending case. The claimant in this case had sued the United States in the Court of Claims to recover proceeds from the sale of property confiscated during the Civil War, relying on a law entitling a property owner to compensation if he demonstrated that he had never aided the Confederacy and was loyal to the United States, including by showing that he had received a Presidential pardon. *Id.* at 138-39, 142-43. While the claim was pending, Congress passed a law rendering a Presidential pardon inadmissible as evidence of loyalty in any case, and requiring the Supreme Court to dismiss any appeal from the Court of Claims in such a case for want of jurisdiction. *Id.* at 143-44.

In finding the statute unconstitutional on separation of powers grounds, the Supreme Court directed that Congress cannot permissibly enact legislation dictating the outcome in pending cases, and that, in purporting to "prescribe a rule for decision" in the case at issue, Congress had "passed the limit which separates the legislative from the judicial power." *Id.* at 146-47. As explained by then Professor (now Ninth Circuit Judge) Fletcher, "[t]he *Klein* Court explicitly concluded that in passing a statute effectively dictating the outcome of the pending case in its favor, Congress had overstepped its authority and had improperly intruded into the authority of the judiciary." Fletcher, *Atomic Bowl Testing and the Warner Amendment: A Violation of the Separation of Powers*, 65 WASH. L. REV. 285, 316-17 (1990) (citations omitted).

The constraints recognized in *Klein* continue to serve as vital safeguards of judicial independence today. *See, e.g.*, *United States v. Sioux Nation of Indians*, 448 U.S. 371, 404 (1980) (statute unconstitutional when "it prescribed a rule of decision in a case pending before the courts, and did so in a manner that required the courts to decide a controversy in the Government's favor"); *Schiavo v. Schiavo*, 404 F.3d 1270, 1274 & n.4 (11th Cir. 2005) (Birch, J. specially concurring) (Congress cannot dictate a "rule of decision" directed at a single case); *In re Britchard Sec. Litig*., 788 F. Supp. 1098, 1105-06 (N.D. Cal. 1992) (separation of powers limitations violated when Congress' motive was solely to affect outcome of pending litigation). In other contexts, the Supreme Court has repeatedly condemned Congressional attempts to change rules for the purpose of avoiding payment obligations. *See, e.g.*, *United States v. Winstar Corp.*, 518 U.S. 839, 891 (1996) (invalidating federal legislation that undid certain agreements entered into between federal regulators and banks that eventually became burdensome to regulators); *Perry v. United States*, 294 U.S. 330, 350-51 (1935) (noting a "clear distinction" between Congress' right to control contracts of private parties, and "*the power of the Congress to alter or repudiate the substance of its own engagements*") (emphasis added); *Lynch v. United States*, 292 U.S. 571, 579-80 (1934) (statute repealing War Risk Insurance Act that would have nullified government-issued insurance policy was unconstitutional).

Retroactive application of the 2007 NDAA Amendment would violate these constraints by prescribing a rule of decision to be utilized in the instant lawsuit that would result in a judgment for the government. As Judge Fletcher put it, when Congress has acted in such a manner, then the constitutional violation is "obvious." Fletcher, *Atomic Bowl Testing and the Warner Amendment*, 65 WASH. L. REV. at 317.

The government repeatedly insists that the 2007 NDAA Amendment was a "clarification" of § 206, and cites a Senate Report[4] as supporting its view:

> The committee believes that judicial rulings interpreting section 206(d) to permit compensation for completion of correspondence courses *misinterpreted this provision* . . . . The changes to 206(d) of title 37, United States Code, incorporated in section 604 of the National Defense Authorization Act for Fiscal Year 2006 (Public Law 109-163*) did not, in the committee's view change, but rather clarified the meaning and purpose of this section*.

S. REP. NO. 109-254, at 331-32 (2006) (emphases added). If the government is correct that the 2007 NDAA Amendment is an interpretive statute that does not change § 206, then a separation of powers violation plainly would have been committed.

As the Federal Circuit's predecessor court once observed, "Congress does not have the power to declare what the *law has been*, but rather *what it shall be*." *Porto Rico Brokerage Co. v. United States*, 80 F.2d 521, 522-24 (C.C.P.A. 1936) (emphasis added). As another federal court similarly explained: "The power to declare what the law *shall be* belongs to the legislative branch of the government; the power to declare *what the law is, or has been*, belongs to the judicial branch of the government. Neither of these branches of the government may invade the province of the other." *In re Shear*, 139 F. Supp. 217, 220 (N.D. Cal. 1956) (citations omitted). As yet another concluded, there has been "no dissent" from the principle that "a subsequent statute is ineffectual as furnishing a construction or interpretation of a prior statute after the prior statute has become the

[4] The government neglects to mention that it was the *House* version, and not the *Senate* version of the 2007 NDAA Amendment that was ultimately enacted. Neither the House Report on the House bill, nor the conference report for the final bill contains any reference to *Clark* or any prior judicial opinions. *See* H. REP. 109-452 (2006); *see also* H. REP. 109-702 (2006).

basis of pending litigation." *Personal Fin. Co. v. United States,* 86 F. Supp. 779, 784-85 (D. Del. 1949).[5]

These principles continue to serve as vital checks on the exercise of legislative and executive power today. Courts repeatedly have held that, when a statutory amendment does not change an underlying law but still purports to apply retroactively in pending litigation, Congress is in effect directing the court to reach a result in violation of separation of powers constraints. *See, e.g., In re Rospatch Sec. Litig.,* 802 F. Supp. 110, 114 (W.D. Mich. 1992) (statute that did not change underlying law, but rather effectively dictated result in case infringed separation of powers constraints); *Johnston v. CIGNA Corp.,* 789 F. Supp. 1098, 1102 (D. Colo. 1992) (essentially same); *accord United States v. Bd. of Ed. of Chicago,* 588 F. Supp. 132, 234 (N.D. Ill.) ("If Congress does not purport to alter the governing procedural and substantive law, Congress cannot force its interpretation of that law upon the federal courts in particular cases") (citing Tribe, AMERICAN CONSTITUTIONAL LAW §§ 3-5, at 39 (1978)), *vacated on other grounds,* 744 F.2d 1300 (7th Cir. 1984).

[5] These precepts necessarily follow from the long-settled principle that the constitutional power to construe statutes resides in the judiciary. *See, e.g., Kinne v. United States,* 21 Cl. Ct. 104, 110 (1990) (Rader, J.) ("The Constitution and laws of the United States charge the courts with the responsibility to discern the meaning of the law. In the oft-quoted words of Chief Justice John Marshall, 'it is emphatically the province and duty of the judicial department to say what the law is"); *Craig v. Ohio Dep't of Admin. Servs.,* 790 F. Supp. 758, 771 (S.D. Ohio 1992) ("Congress is empowered to create new law in response to whatever exigencies render legislative action necessary. No principle of constitutional construction empowers Congress to rewrite judicial decisions"), *aff'd mem,* 1 F.3d 1240 (6th Cir. 1993); *Bank of Denver v. SE Capital Group, Inc.,* 789 F. Supp. 1092, 1097 (D. Colo. 1992) (similar sentiments).

Consistent with these decisions, the leading treatise on statutory construction makes clear that the government's interpretation of the 2007 NDAA Amendment contravenes separation of powers principles. As expressed by Professor Singer:

> The usual purpose of a special interpretive statute is to correct a judicial interpretation of a prior law which the legislature considers inaccurate. *Where such statutes are given any effect, the effect is prospective only. Any other result would make the legislature a court of last resort...*

Singer, 1A SUTHERLAND STAT. CONSTRUCTION § 27.04 (4th ed.1985) (emphasis added).[6]

It makes no difference that the 2007 NDAA Amendment does not specifically instruct the court to dismiss the instant lawsuit. *See, e.g., Bank of Denver*, 789 F. Supp. at 1097 (rejecting similar argument); *accord* Note, *Section 2212: A Remedy for Veterans—With a Catch*, 75 CAL. L. REV. 1513, 1529 (1987) ("If the rule of *Klein* is to have any vitality, it much reach substance and not be deflected by form"). The key inquiry is whether the "the prescribed interpretation [of the new legislation is] at odds with prior" court decisions, and whether "the prescribed interpretation resolved a question dispositive of the action." *Bank of Denver,* 789 F. Supp. at 1097. Under the government's reading, the 2007 NDAA Amendment has precisely this impermissible effect. *See* Br. 23 (arguing that, because "Congress" now has "expressly prescribed the statute's proper reach, no further inquiry is required").

**B. Congress Cannot Act Permissibly as a "Super-Appellate Court"**

Since the early days of this Republic, the Supreme Court has held that, once a judicial decision establishes a right under a statute, the legislature is barred by the

[6] The leading treatise on federal practice also comments on the pernicious consequences of a contrary rule, observing correctly that if Congress could suspend judicial opinions at its pleasure without changing the underlying law, then federal courts would effectively be rate relegated to issuing advisory opinions. 13 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE, *Jurisdiction and Related Matters*¸ § 3529.1 at 302, 306-07 (1984).

separation of powers doctrine from retroactively rewriting that decision. *See, e.g., Ogden v. Blackledge,* 6 U.S. (2 Cranch) 272, 277 (1802) (legislature may not retroactively overturn judicial decision); *accord Forbes Pioneer Boat Line v. Bd. of Comm'rs,* 258 U.S. 338, 340 (1922) (legislature may not retroactivity invalidate litigant's favorable judgment by enacting clarifying legislation). This bedrock constitutional principle also continues to apply today. *See, e.g., Plaut v. Spendthrift Farm*, 514 U.S. 211, 240 (1995) (Congress may not interfere with final judgments of courts).

Numerous contemporary decisions establish that separation of powers constraints preclude other branches from serving as a "court of last resort" by retroactively overruling a binding judicial decision in a pending case.[7] Thus, the judiciary has continually rejected attempts by the legislative and executive branches to overrule

---

[7] *See, e.g., Biodiversity Assocs. v. Cables*, 357 F.3d 1152, 1167 (10th Cir. 2004) (Congress cannot constitutionally act as "a court of last resort to which one could appeal any 'final' decision of the Judiciary"); *Wood v. Witco Corp*., 1995 U.S. Dist. LEXIS 10614, at *6 (E.D. La. July 25, 1995) ("The Court . . . is bound by Louisiana law as it existed at the time the petition was filed, not by the possibility that *Billiot* would be retroactively overruled in the 1995 legislative session"); *In re Prior*, 176 B.R. 485, 494 (Bankr. S.D. Ill. 1995) ("The present case is not an instance in which there has been a definitive interpretation of a statute based on express statutory language only to have the legislature correct such judicial interpretation by amendment. [cit.] An amendment to change the law under such circumstances would, if applied retroactively, constitute an invasion by the legislature of the constitutional province of the judiciary to determine what the law is and apply statutes to cases"); *Bank of Denver*, 789 F. Supp. at 1097 (Congress cannot act as a "super-appellate court"); *Craig*, 790 F. Supp. at 771 (essentially same; quotation omitted); *Peony Park, Inc. v. O'Malley*, 121 F. Supp. 690, 694 (D. Neb. 1954) ("[A] judicial decision may not ordinarily be overruled by legislative fiat. If it were otherwise Congress would sit as a court of last resort and the separation of powers would be more fictional than real"), *aff'd*, 223 F.2d 668 (8th Cir. 1955); *accord Henderson v. Scientific-Atlanta, Inc.*, 971 F.2d 1567, 1575-76 (11th Cir. 1992) (Wellford, J., dissenting) ("I would find the congressional enactment in controversy, designed to affect pending litigation and to overrule Supreme Court decisions, to be unconstitutional"); *Addison v. Huron Stevedoring Corp.*, 204 F.2d 88, 104-05 (2d Cir. 1953) (Frank, J., concurring in part, and dissenting in part) (Congress may not sit as a court of last resort when it is unhappy with judicial interpretations of law).

judicial decisions by dictating after-the-fact a particular interpretation of a disputed statute or regulation.

*Cerro Metal Prods v. Marshall*, 467 F. Supp. 869, 876-79 (E.D. Pa. 1979), *aff'd*, 620 F.2d 964 (3d Cir. 1980), is instructive. In that case, the Secretary of Labor chose not to appeal the ruling of an unfavorable district court decision interpreting an OSHA statute, and instead issued a regulation that effectively overruled both that decision, and the Supreme Court decision upon which the district court's decision was based. The court held that the doctrine of "the separation of powers bars a federal court from giving operational weight to a pronouncement by Congress or by an executive official vested by Congress with quasi-legislative rule-making authority that what had theretofore been judicially declared as law shall be deemed never to have had effect." *Id.* at 878 (quotation omitted). There is no difference between what the Secretary of Labor did in *Cerro Metal,* and what the government claims Congress did here.

In *Board of Education of Chicago,* 588 F. Supp. at 233-37, another case involving facts similar to those in the instant case, the court held that retroactive application of an amendment through an appropriations bill that would have effectively overruled an unappealed judicial decision would violate separation of powers limitations. *Peony Park* also found a separation of powers violation on similar facts. There, the court refused to apply amendments to the tax code that purported to retroactively overrule a Supreme Court decision unfavorable to the government. 121 F. Supp. at 692-93.[8]

[8] Numerous state court decisions also have applied these principles. For a sampling of such cases (and many other such decisions exist), *see Am. Discount Corp. v. Shepherd*, 120 P.3d 96, 101-02 (Wash. App. 2005) ("An attempt by the legislature to retroactively change a statute in contravention of an existing judicial construction of that statute raises separation of powers issues . . . To apply the amendment retroactively would essentially

Contrary to this authority, the government's motion is predicated principally on the unfounded theory that the 2007 NDAA Amendment requires liability to be determined anew as if the Federal Circuit's 2003 decision never existed. The Federal Circuit has definitely ruled as the law of this case that the pay statute at issue "requires payment for equivalent training that the Secretary prescribes," including required correspondence courses, and remanded the case for a determination only of which required courses, if any, had been completed by Plaintiffs and the amount of compensation due." 322 F.3d at 1368. This Court is bound to adhere to that ruling and cannot reconsider questions decided by the Federal Circuit. *See, e.g., Jamesbury Corp. v. Litton Indus. Prods., Inc.,* 839 F.2d 1544, 1550 (Fed. Cir. 1988); *accord Northern Helex Co. v. United States,* 634 F.2d 557, 560 (Ct. Cl. 1980) (en banc) (reversing trial judge who "simply ignored our decision and proceeded instead to decide the case as he deemed proper and as if our decision never had been rendered"). Indeed, such adherence is most

---

make the legislature a court of last resort"); *Unwired Telecom v. Parish of Calcasieu*, 903 So.2d 392, 406 (La. 2005) (legislature's attempt to retroactively overrule court decision infringed upon judiciary power); *State v. Fell*, 97 P.3d 902, 907 (Ariz. App. 2004) ("A legislative attempt to retroactively overrule a decision by the courts of this state interpreting a statute violates the separation of powers doctrine"); *Karadanis v. Bond*, 993 P.2d 721, 726 (Nev. 2000) ("[W]e recognize that the legislature violates the separation of powers principle by retrospectively abrogating judicial pronouncements of the courts of this state through a legislative interpretation of the law"); *Del Rio v. Crake*, 955 P.2d 90, 97 (Haw. 1998) ("Nor can the legislature effect a change in the construction of a statute by a later declaration of what it had originally intended"); *Phelps Dodge Corp. v. Rev. Div. of Dep't of Tax. & Rev.*, 702 P.2d 10, 13 (N.M. App. 1985) (statute that "sought to abrogate the interpretation of the exemption statute in *Ranchers* found to be clear and unambiguous and to preclude the decision in *Ranchers* from being accorded normal *stare decisis* effect" violated separation of powers); *People v. Cuevas*, 168 Cal. Rptr. 519, 524 (Cal. App. 1980) ("The legislative clarification in the amended statute may not be used to overrule this exercise of the judicial function of statutory construction and interpretation. The amended statute defines the law for the future, but it cannot define the law for the past"); *People v. Harris*, 387 N.E.2d 33, 37 (Ill. App. 1979) (essentially same); *FedEx Corp. v. Skelton*, 578 S.W.2d 1, 7-8 (Ark. 1979) (essentially same).

appropriate when, as here, the case has been pending for several years and additional proceedings have been conducted based on the previous decision—particularly when the disappointed litigant chose not to exhaust appellate remedies. *See, e.g., Suel v. Sec. of HHS*, 192 F.3d 981, 986 & n.2 (Fed. Cir. 1999).

The government's argument (Br. 21) that a trial court may depart from the mandate of an appellate court when the law "changes" is inconsistent with Federal Circuit precedent. Even assuming that the "changed law" exception is applicable here (a premise that cannot be reconciled with the government's repeated assertion that the 2007 NDAA Amendment "clarified" instead of "changed" § 206), the government disregards that deviations of the law of the case doctrine in these circumstances "are rare," and fails to establish that there could be any legitimate basis for disregarding the Federal Circuit's mandate here. *Toro Co. v. White Consolidated Indus., Inc.*, 383 F.3d 1326, 1336 (Fed. Cir. 2004); *accord Ulmet v. United States*, 17 Cl. Ct. 679, 691 (1989) ("exceptions [to law of the case doctrine] should be narrowly construed and only utilized when the situation, specifically and unequivocally or unquestionably requires an exception's application"), *overruled on other grounds, Wilson v. United States*, 917 F.2d 529 (Fed. Cir. 1990), *aff'd, Ulmet v. United States*, 935 F.2d 280 (table) (Fed. Cir. 1991).

Indeed, the Federal Circuit discourages departures from the "law of the case" doctrine even when a "close case" was presented by the issue previously decided and the law was changed following the decision on that "close" issue. *See, e.g., Hughes Aircraft Co. v. United States*, 86 F.3d 1566, 1577 (Fed. Cir. 1996) (contention that changes in the law compel a different result "is not . . . a sufficient justification to refuse to follow law of the case," and the fact that a decision in a "close case" was involved "counsels in favor

of abiding by the law of the case"); *cf. Suel,* 192 F.3d at 985 (quoting *Hughes Aircraft* with approval). Consistent with this authority, *Ulmet v. United States,* a primary case relied upon by the government —one that the government contends (Br. 19, 20) is "factually similar" to the instant case—adhered to the "law of the case" notwithstanding an intervening change in the law following remand from the Federal Circuit. *See* 17 Cl. Ct. at 693-97. The Federal Circuit upheld Judge Horn's refusal to deviate from the law of the case even though the underlying law had changed. *See Gove v. United States,* 24 Cl. Ct. 296, 302 n.8 (1991) (describing result in *Ulmet*).[9]

Plaintiffs anticipate that the government will respond by contending that the Federal Circuit's decision in *Clark* was not a "final judgment," and that Congress, therefore, was free to overrule the decision with impunity. Contrary to any such contention, a judgment may be "final" for separation of powers purposes before the ultimate conclusion of a case. The Supreme Court consistently has held that a "final judgment" exists from a separation of powers standpoint when all appellate rights have been exhausted or the time for exercising such rights, including for seeking certiorari, has expired. *See Plaut,* 514 U.S. at 227; *Taylor v. Arizona,* 972 F. Supp. 1239, 1245 (D. Ariz. 1997) ("*Plaut* defined final judgments as judgments wherein the right to appeal has

[9] Moreover, the government's repeated contention (*e.g.,* Br. 25) that the Federal Circuit's 2003 decision "did not determine that the United States had incurred a liability to plaintiffs" is a play upon words. The "law of the case" doctrine precludes re-examination of any issue that was "decided by necessary implication as well as those decided explicitly." *Smith Int'l v. Hughes Tool, Inc.,* 759 F.2d 1572, 1577 (Fed. Cir. 1985) (italics omitted). Plainly, the Federal Circuit held that Plaintiffs were entitled to payment for any correspondence courses they took, and the remand was to determine precisely which courses had been taken. When the Federal Circuit has effectively determined liability and remanded for a damages calculation, liability may not be re-adjudicated. *See, e.g., Suel,* 192 F.3d at 986 n.2.

been exhausted, waived or elapsed"), *affirmed en banc*, 181 F.3d 1017 (9th Cir. 1999); *cf. Bradley v. Richmond Sch. Bd.*, 416 U.S. 696, 711 n.14 (1974).

The Federal Circuit's 2003 decision in *Clark* that the pay statute at issue obligates the government to compensate National Guard members for completing required correspondence coursework represents the "last word" from the judiciary regarding interpretation of the pay statute at the time the work in question was performed. After the Federal Circuit denied the government's rehearing petition, the government chose not to seek certiorari from the Supreme Court. By so choosing, the government has waived its right to seek review of the Federal Circuit's 2003 decision at a later stage in these proceedings. *See Sheet Metal Workers v. EEOC*, 478 U.S. 421, 441 (1986) (litigant waived right to seek certiorari by not doing so at earlier stage in litigation); *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 516 (1950) (same).

Moreover, it is immaterial that Congress sought to overrule a decision of the Federal Circuit, rather than the Supreme Court. Separation of powers constraints are violated when another governmental branch attempts to retroactively undo a judgment of any Article III court. *See, e.g.*, *Valdez*, 575 F. Supp. at 1205; *Cerro Metal*, 467 F. Supp. at 878. As Justice Newman once pronounced, courts have a "duty to act, with vigor and determination, to sustain this fundamental structure, to set aside any action of the legislative that departs from the constitutional design [of separation of powers]." *Williams*, 264 F.3d at 1093-94 (Newman, J., dissenting from denial of rehearing en banc).

## III. RETROACTIVE APPLICATION OF THE 2007 NDAA AMENDMENT WOULD VIOLATE PLAINTIFFS' FIFTH AMENDMENT RIGHTS

The Fifth Amendment "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by

the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49 (1960). Thus, the Fifth Amendment "prohibits the federal government" from taking private property 'without just compensation," and "from depriving a person of property 'without due process of law."' *Yankee Atomic Elec. Co. v. United States*, 112 F.3d 1569, 1582 (Fed. Cir. 1997) (Mayer, J., dissenting). Retroactive application of the 2007 NDAA Amendment to the instant lawsuit would violate both of these constitutional prohibitions.

### A. Retroactive Application of the 2007 NDAA Amendment Would Violate the Takings Clause of the Fifth Amendment

The government may not take property from an individual without paying "just compensation" for the taking. *See* U.S. CONST. AMEND. V. "A plaintiff seeking to recover under the taking clause must demonstrate that the government took his property and either failed to compensate him justly or failed to put the property to public use." *Murray*, 817 F.2d at 1583. Although additional proceedings may be necessary to determine precisely how much compensation Plaintiffs are entitled to, all essential factors for a taking are present for purposes of evaluating the government's motion to dismiss.

#### 1. Plaintiffs' Claims for Compensation are Protected Property Interests

Plaintiffs' claims for compensation for taking correspondence courses are a protected property interests under the Fifth Amendment. "There is no question that claims for compensation are property interests that cannot be taken for public use without compensation." *In re Air Crash in Bali,* 684 F.2d 1301, 1312 (9th Cir. 1982). Note, *Section 2212: A Remedy for Veterans,* 75 CAL. L. REV. at 1549 ("Valid claims for compensation . . . have value and, notwithstanding their intangibility, cannot be destroyed by the government without just compensation. They are property"). The Federal Circuit likewise has recognized that causes of action are protected property rights. *See, e.g.,*

*Abrahim-Youri v. United States,* 139 F.3d 1462, 1465 (Fed. Cir. 1997); *Alliance of Descendants v. United States*, 37 F.3d 1478, 1481 (Fed. Cir. 1981).

The government's brief (at 27-31) fundamentally misapprehends Plaintiffs' takings argument, confusing a claim for compensation with the compensation itself. As explained by another court, "[a]lthough the individual is not presently entitled to the remedy sought, he or she is entitled to press a claim for it. This cause of action is a presently enforceable benefit and constitutes property[.]" *Pappas v. City of Lebanon*, 331 F. Supp.2d 311, 320 & n.13 (M.D. Pa. 2004) (internal citation omitted); *see also Arevalo v. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) (distinguishing between "right to seek relief" from "relief itself").

The difference is significant, because the cases cited by the government follow a "regulatory takings" analysis not applicable here. *See Abrahim-Youri*, 139 F.3d at 1465-66 (acknowledging that a "regulatory takings" analysis "does not fit" to causes of action). If a government action deprives property of all value, then a "per se" taking has occurred. *See, e.g., Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019-20 n.8 (1992). However, if the property still retains some economic value following the government action, then the court applies the "regulatory takings" factors to determine if a "taking" has occurred. *See id.* Retroactive application of the 2007 NDAA Amendment here would constitute a "per se" taking because Plaintiffs' claims for compensation would be rendered completely worthless. *See, e.g., Whitney Benefits, Inc. v. United States*, 926 F.2d 1169, 1172 (Fed. Cir. 1991) (statute that precluded mining of a particular deposit of coal was a per se taking of "the right to mine"); *accord Nixon v. United States*, 978 F.2d

1269, 1284-85 & n.32 (D.C. Cir. 1992) (following *Whitney Benefits* and rejecting government's argument that only real property is subject to per se takings).[10]

### 2. Retroactive Application of the 2007 NDAA Amendment Would Impermissibly Destroy Plaintiffs' Causes of Action

The Claims Court has recognized that "tamper[ing] with [service members' right to pay] by legislation, especially with respect to pay already accrued, would raise [such] serious fifth amendment issues, as . . . might be held to constitute a taking." *Cherry v. United States*, 640 F.2d 1184, 1187 (Ct. Cl. 1980). Assuming that the 2007 NDAA Amendment could properly be applied retroactively here (notwithstanding numerous other compelling reasons why it should not), such application would effectively destroy Plaintiffs' compensation claims and require the government to provide just compensation. A property right in a cause of action that is "protected" by the Fifth Amendment vests upon "satisfaction of conditions precedent to suing." *Jacklitch v. Redstone Federal Credit Union*, 463 F. Supp. 1134, 1139 n.2 (N.D. Ala. 1979) (quotation omitted). Generally speaking, claims for payment accrue "at the end of each pay period when [the expected payment] is not paid." *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988).

Under these principles, Plaintiffs' protected property rights vested when they "first could have maintained [their] action to a successful result." *Ducre v. Mine Safety Appliances*, 573 F. Supp. 388, 391 (E.D. La. 1983) (citing 1 AM. JUR.2D *Actions* § 10), *aff'd in part, reversed in part on other grounds*, 752 F.2d 976 (5th Cir. 1985); *accord*

[10] At the absolute most, the "regulatory takings" factors cited in the government's brief could argued to be "relevant" to the takings analysis here, but they certainly would not be dispositive. *See Abrahim-Youri*, 139 F.3d at 1466. However, the Federal Circuit most likely deemed the regulatory takings factors "relevant" in *Abrahim-Youri* because the claimants still retained some benefit from the government's settling of their claims against Iran. *See id.* at 1466-68. No comparable benefit of any value is present here.

*Horne v. Firemen's Retirement Sys.*, 69 F.3d 233, 236 (8th Cir. 1995) ("A cause of action accrues when a suit may be maintained thereon"); *Kelley v. United States*, 792 F. Supp. 793, 795 (M.D. Fla. 1992) (same). Accordingly, there is no requirement that the cause of action reach final judgment (i.e., "plaintiff wins") in order to become a vested right. *See* Note, *Constitutional Fallout from the Warner Amendment, Annihilating the Rights of Atomic Weapons Testing Victims*, 62 N.Y.U.L. REV. 1331, 1349-50 & n.119 (1987) (citing numerous Supreme Court cases finding vested right in cause of action that had not matured to final judgment); *Opdyke Inv. Co. v. Detroit*, 883 F.2d 1265, 1274 (6th Cir. 1989) (similarly interpreting Supreme Court precedent); *Hutton v. Autoridad Sobre Hogares De La Capital*, 78 F. Supp. 988, 999 (D. P.R. 1948) ("a decision or final judgment is not necessary" for right in cause of action to vest); *accord Armstrong v. United States*, 364 U.S. 40, 44 (1960) (property lien was vested interest even though lien was not perfected); *Shelden v. United States*, 7 F.3d 1022, 1028 (Fed. Cir. 1993) (finding taking even though foreclosure was not yet official).

It is equally settled that "vested rights created by statute cannot be abridged by a subsequent statute that effectively takes away accrued causes of action to enforce those rights." *Greyhound Food Mgmt., Inc. v. City of Dayton*, 653 F. Supp. 1207, 1215 (S.D. Ohio 1986) (quotation omitted); *see also Smith v. Travis Co. Ed. Dist.*, 791 F. Supp. 1170, 1178 (W.D. Tex.) (plaintiff owning a cause of action cannot be deprived of all remedies to enforce it), *vacated on other grounds*, 968 F.2d 453 (5th Cir. 1992); *Prescott v. United States*, 523 F. Supp. 918, 926 (D. Nev. 1981) ("vested rights" theory requires law in effect at the time of the damages were sustained not be changed); *Barr v. Preskitt*, 389 F. Supp. 496, 498 (M.D. Ala. 1975) ("It is clear that a right of action may be vested,

and if so, it becomes the property of him in whom it is vested, and the destruction of such a vested right is a violation of the due process clause"). As one court explained: "[N]o action by the United States or any state can deprive the owner of the cause of action without just compensation. *Thus, it would be unconstitutional to retroactively repeal a statute as to those persons who had vested causes of action under that statute*." *Jacklitch*, 463 F. Supp. at 1139 n.2 (quotation omitted; italics added).

*Greyhound Food* is instructive. In that case, an insurer filed a subrogated tort lawsuit against the city of Dayton. *See* 653 F. Supp. at 1210-11. In response, the state passed a statute barring subrogated insurer claims against municipalities. *See id.* at 1220-21. Because the insurer's claims had vested, and because the retroactive application of the statute would completely abrogate the insurer's claims, the court found an unconstitutional taking. *See id.* at 1218-21. The same result should obtain here.[11]

The government's argument that Plaintiffs had no "expectancy" in their pay again confuses the "property" at issue here. The Federal Circuit has held that when a party files a lawsuit and has engaged in extensive pre-trial preparation, the party has demonstrated an expectancy for the claim. *See Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602 (Fed.

---

[11] *See also Ettor v. Tacoma*, 228 U.S. 148, 158 (1913) (statutory cause of action became vested at the time damage occurred; repealing statutory remedy did not extinguish plaintiffs' right to compensation); *Edwardsen v. Morton*, 369 F. Supp. 1359, 1379 (D.D.C. 1973) (Congress cannot extinguish accrued causes of action); *Muir v. Louisville & N. R. Co.*, 247 F. 888, 897 (W.D. Ky. 1918) ("the right of each plaintiff to sue became a vested right on December 20, 1917, and cannot be taken away or devested by any authority exerted, ex post facto, either by a legislative body or by an executive officer of any degree"); *Gibson v. Com.*, 415 A.2d 80, 83 (Pa. 1980) ("established view [of] federal decisional law . . . squarely holds that a legislature may not constitutionally eliminate *in toto* a remedy, whether judicially or legislatively created, which has already accrued") (citing numerous cases); Note, *Section 2212: A Remedy for Veterans*, 75 CAL. L. REV. at 1525 ("While modification of a remedy may be acceptable [under Fifth Amendment], repudiation of an obligation is not").

Cir. 1985). Plaintiffs, who have vigorously pursued the instant litigation to vindicate their rights since the suit was filed in 2000, have certainly demonstrated such an expectancy here.[12]

The government's contrary argument also rests on the fallacious premise that Plaintiffs cannot have any expectancy of payment because they have not heretofore been compensated for required correspondence coursework. To hold that Plaintiffs have no "expectancy" in these circumstances would improperly reward the government for its own statutory breaches. Indeed, the government made a similar misguided argument to Judge Horn, who correctly rejected it:

> While it may be true that the plaintiff, a former member of the armed services, does not have an automatic or property right to retirement benefits . . . there can be no disagreement that the amended 'sanctuary' statute, if retroactively applied in this case, would negatively affect the plaintiff's rights created by the unamended statute, in effect when the plaintiff retired, and as that statute was interpreted by the Federal Circuit.

*Ulmet*, 17 Cl. Ct. at 697. It is remarkable that the government is advancing the same sort of fallacious position here given its assertion (Br. 19, 20) that *Ulmet* is "factually similar" to the instant case, and that Judge Horn's opinion was "thoughtful and carefully constructed."

The law is clear that the government may abrogate Plaintiffs' protected property rights in their cause of action only if it provides just compensation.[13] Because the

---

[12] Contrary to the government's insinuations (Br. 29-30), "[i]nvestment-backed expectations are not the *sine qua non* of fifth amendment protection." Note, *Section 2212: A Remedy for Veterans*, 75 CAL. L. REV. at 1550 n.223. As explained *supra* 23-24, the government is relying upon cases following a "regulatory taking" analysis. In any event, the government cites no authority holding that *only* "investment-backed" property is entitled to Fifth Amendment protection. *Cf. Penn Cent. Transp. Co. v. New York City,* 438 U.S. 104, 124 (1978) (each takings analysis involves "essentially ad hoc, factual inquiries"). The plaintiff in *Ulmet* did not claim a right in any "investment-backed" property either, yet Judge Horn correctly determined that he had a vested interest in the rights created by the sanctuary statute in effect when he filed suit. *See* 17 Cl. Ct. at 697.

government denies that any "taking" occurred, it naturally does not offer any compensation for the abrogation of Plaintiffs' claim. Whatever the value of Plaintiffs' claims (an issue that cannot be determined at this stage), the government clearly has afforded Plaintiffs no compensation at all—let alone "just compensation." *Cf. Abrahim-Youri*, 139 F.3d at 1468 (no unconstitutional taking of claims when government provided settlement to hostages). As one commentator explained:

> Not only must there be compensation; the compensation for a taking must be "just." This means that, at the time of the taking, there must be "reasonable, certain and adequate provision for obtaining compensation." This may involve a comparison between the property interest which has been lost *and that which is offered in its place*.

Note, *Section 2212: A Remedy for Veterans*, 75 CAL. L. REV. at 1555 (citations omitted; emphasis added). Because nothing has been offered to Plaintiffs as a substitute for the loss of their claims, there has been no "just compensation."

### B. Retroactive Application of the 2007 NDAA Amendment Would Violate Plaintiffs' Due Process Rights

Retroactive application of the 2007 NDAA Amendment also would violate Plaintiffs' due process rights. The government itself argues that while Congress needs only a "rational purpose" to justify retroactive legislation under that Due Process Clause, a more rigorous showing is required than for prospective legislation. *See* Br. 26 (quoting *United States v. Sperry*, 493 U.S. 52, 64 (1989)); *see also Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16-17 (1976) ("The retrospective aspects of legislation, as well

[13] The government does not dispute that the "taking" here was the result of the requisite federal action. Nonetheless, the government relies primarily on a case in which the requisite federal action was lacking. No "taking" was found because the complained of deprivation was a result of state action, rather than federal action. *See Fern v. United States*, 908 F.2d 955, 959 & n.5 (Fed. Cir. 1990) (rejecting contention that "any property right in the "finality of the divorce decree was taken *by the United States* inasmuch as the subject divorce were reopened pursuant to state action) (emphasis in original).

as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former"); *Daughters of Miriam Ctr. for the Aged v. Mathews*, 590 F.2d 1250, 1259 (3d Cir. 1978) ("Retroactive measures whether promulgated by a legislature or by an administrative agency have traditionally been subjected to stricter scrutiny than have prospective measures").

The government suggests (Br. 31) that Congress' "authority to regulate military benefits" suffices as a "rational purpose" for the 2007 NDAA Amendment. While this may suffice as a "rational purpose" for prospective application of the 2007 NDAA Amendment, such a purpose does not justify a retroactive application permitting the government" to repudiate its obligations under the Federal Circuit's 2003 decision to Plaintiffs for work already performed. *See, e.g.*, *Bowen v. Agencies Opposed to Soc. Sec. Entrap.*, 477 U.S. 41, 55 (1986) ("Congress does not have the power to repudiate its own debts . . . simply in order to save money"); *Lynch*, 292 U.S. at 579-80 (essentially same); *Foley v. Carter*, 526 F. Supp. 977, 984-85 (D. D.C. 1981) (due process forbids Congress from retroactively reducing pay for work already performed by federal employees); *Am. Federation v. Campbell*, 474 F. Supp. 357, 360 (D. D.C. 1979) ("for this Court to allow defendants to deprive plaintiffs of pay due for services already performed but still owing would present serious Constitutional questions"), *aff'd in part, rev'd in part on other grounds*, 659 F.2d 157 (D.C. Cir. 1980).

Most of the government's authorities (Br. 31) involved prospective statutory changes and are of limited (if any) relevance here. The only case the government cites that is even remotely similar to the case *sub judice* is *Hoffman v. City of Warwick*, 909 F.2d 608 (1st Cir. 1990). *Hoffman* involved a repeal of a state statute conferring certain

seniority and employment benefits for returning war veterans, and the court held that the repeal of the statute was not unconstitutional. *See id.* at 615-20. But *Hoffman* does not support the government's position because the elimination of gratuities at issue there cannot be equated with eliminating the right to payment for services already performed. *See Larionoff v. United States,* 533 F.2d 1167, 1189 (D.C. Cir. 1976) (payments owing for services already rendered are not "gratuities"), *aff'd,* 431 U.S. 864 (1977); *cf. Cherry,* 640 F.2d at 1187 (noting that legislation that affected service members' right to pay for duties already performed "would raise serious fifth amendment issues"); *Foley,* 526 F. Supp. at 985 (similar); *Am. Federation,* 474 F. Supp. at 359 (noting lack of authority for principle that "the government may decrease retroactively wage rates for services already performed").[14] Indeed, this Court has observed that compensation for military pay already earned, generally may not be withheld. *See Gonzales v. United States,* 48 Fed. Cl. 176, 180 (2000) (Firestone, J.) (finding that claimant was not entitled to payment, but noting that "this case must be distinguished from cases in which a service member was, by statute, given a vested right to payment that was then revoked").

Plaintiffs contend that they have completed required correspondence coursework, and the Federal Circuit has determined that the pay statute in effect at the relevant time entitled them to payment for this work. The government cannot now invoke the 2007 NDAA Amendment as a basis for repudiating the obligation to provide payment for such required correspondence coursework. As the Supreme Court once put it, "[t]o say to [Plaintiffs], 'The joke is on you. You shouldn't have trusted us,' is hardly worthy of our

---

[14] Even when a soldier is court-martialed, payment for accrued service may not be forfeited. *See Bell v. United States,* 366 U.S. 393, 401-02 (1961).

great government." *Heckler v. Comm. Health Servs.*, 467 U.S. 51, 61 n.13 (1984) (quoting *Brandt v. Hickel*, 427 F.2d 53, 57 (9th Cir. 1970)).

A different conclusion might obtain if Congress had provided an alternative remedy or *quid pro quo* for Plaintiffs after depriving them of their right to pay for work already performed. But Congress has done nothing of the sort. Case law and commentary alike recognize that the failure to provide a *quid pro quo* to claimants who have been legislatively deprived of their claims violates due process protections.[15]

Due process protections also forbid the retroactive application of a statute when a "manifest injustice would result." As one federal court stated in similar circumstances:

> The Supreme Court decided *Patterson* . . . more than two years ago, and the parties have a right to rely on that Court's interpretation of the law of their case. *To place new legal requirements* on the parties *at this stage of a proceeding which has lasted more than seven years*, involves conduct occurring a decade ago, and which has been before various courts of the federal system now seven times including a trial by jury would be *patently unfair*.

[15] *See, e.g., Crane v. Hahlo*, 258 U.S. 142, 147 (1922) ("[S]o long as a substantial and efficient remedy remains or is provided due process of law is not denied by a legislative change"); *Ritholz v. March*, 105 F.2d 937, 939 (D.C. Cir. 1939) (same); *McBride v. GM Corp.*, 737 F. Supp. 1563, 1579 (M.D. Ga. 1990) (statute that limited recovery without providing "quid pro quo" to claimants was unconstitutional); *Waggoner v. Gibson*, 647 F. Supp. 1102, 1106 (N.D. Tex. 1986) (essentially same); *see also Condemarin v. Univ. Hosp.*, 775 P.2d 348, 360 (Utah 1989) (abolishing causes of action without substituting adequate alternative violated state constitution); *Carson v. Maurer*, 424 A.2d 825, 837-38 (N.H. 1980) (same); Note, *Section 2212: A Remedy for Veterans*, 75 CAL. L. REV. at 1525 (Congressional action cannot "deprive" a plaintiff "of her remedy altogether"); Comment, *Good Guns (And Good Business Practices) Provide all the Protection They Need: Why Legislation to Immunize the Gun Industry from Civil Liability is Unconstitutional*, 72 U. CIN. L. REV. 1739, 1756 (2004) ("While Congress may regulate remedies, and even limit remedies, it violates Due Process when it abolishes a remedy and provides no alternative"); Note, *The Fairness and Constitutionality of Statutes of Limitation for Toxic Tort Suits*, 96 HARV. L. REV. 1683, 1696 (1983) ("[T]he uncompensated abolition of a cause of action may itself amount to a violation of due process").

*Patterson v. McLean Credit Union*, 784 F. Supp. 268, 279 (M.D.N.C. 1992) (emphasis added). Retroactive application of the 2007 NDAA Amendment to eliminate Plaintiffs' claims for compensation for required correspondence courses also would be "patently unfair."[16]

Indeed, in a case that the government candidly acknowledges is "factually similar" (Br. 19, 20) to this case, Judge Horn refused to apply a "new" law retroactively under the "manifest injustice" exception. *See Ulmet*, 17 Cl. Ct at 696 ("the plaintiff in the instant case strikes this court as precisely the type of plaintiff foreseen in the manifest injustice exception to the doctrine which otherwise requires a court to apply the law in effect when it issues its decision"). This Court should refuse to give the 2007 NDAA Amendment retroactive effect for the same reason.

## IV. ADDITIONAL CONSIDERATIONS PRECLUDE THE 2007 NDAA AMENDMENT FROM BEING APPLIED RETROACTIVELY

The government's affirmative defense based on retroactive application of the 2007 NDAA Amendment also fails as a matter of law for two additional reasons. First, the federal savings statute, 1 U.S.C. § 109, operates to preserve the liabilities here. Second, the language of the 2007 NDAA Amendment is not specific enough to overcome the presumption that legislation is prospective.

---

[16] The remarks of one commentator in another context also are instructive:

> [T]here is something blatantly *unfair* in the spectacle of Congress reaching out and passing a law to dictate a result in pending lawsuits like these. One would expect more honorable and generous treatment of men and women who contributed to a government program considered by Congress so vital to the nation's security.

Note, *Section 2212: A Remedy for Veterans*, 75 CAL. L. REV. at 1539 (italics in original).

### A. The Federal Savings Statute Preserves the Liabilities

Section 109 operates to preserve any liabilities incurred under an earlier statute, unless the modified statute specifically extinguishes the earlier liability. *See generally Warden v. Marrerro,* 417 U.S. 653, 660 (1974). Section 109 states in relevant part:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, *unless the repealing Act shall so expressly provide*, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109 (emphasis added). Because § 109 applies and because the 2007 NDAA Amendment does not expressly extinguish the government's preexisting liability under 37 U.S.C. § 206(a)(2) to compensate Plaintiffs for completing required correspondence courses, the 2007 NDAA Amendment cannot be retroactively applied.

#### 1. The Savings Statute is Fully Applicable Here

There is no merit to the government's arguments against application of § 109. The government's argument (Br. 25) that § 109 only applies to "repealed" statutes is baseless. *See Fujitsu Ltd. v. FedEx Corp.,* 247 F.3d 423, 432 (2d Cir. 2001) ("Whether the earlier statute has been amended or repealed outright is of no consequence; the general savings statute applies in either instance"); *Covey v. Hollydale Mobilehome Estates,* 125 F.3d 1281, 1281 (9th Cir. 1997) (essentially same); *United States v. Schuler,* 47 M.J. 561, 563 (1997) (Section 109 has been applied "broadly" to virtually all forms of statutory modifications).

The sole case relied upon by the government for its mischaracterization of § 109 is entirely irrelevant to the instant situation. *See* Gov't Br. at 25-26 (citing *Hamm v. Rock Hill,* 379 U.S. 306 (1964)). *Hamm* held that, when the government substitutes a "right for a crime" (i.e., enacts civil rights laws prohibiting criminal trespassing statutes), the

federal savings statute does not *preserve criminal convictions* incurred under the prior trespassing statutes. *Hamm* thus created a very limited exception when § 109 otherwise applies. *See, e.g., Korshin v. C.I.R.*, 91 F.3d 670, 673 n.4 (4th Cir. 1996) (explaining *Hamm* rule); *United States v. Van Den Berg*, 5 F.3d 439, 443 n.7 (9th Cir. 1993) (same). Because the 2007 NDAA Amendment provides no such substitute "right" to Plaintiffs (*see supra* at 27-28), *Hamm* has no bearing on this case.

The government's contention that the Federal Circuit's 2003 decision supposedly did not determine the government's liability to pay Plaintiffs for required correspondence coursework also would not preclude application of the savings statute (even if otherwise meritorious, and it is not *see supra* at 20 n.9). The savings statute operates to preserve liabilities incurred at the time of the breach, irrespective of when the fact of that breach is adjudicated. *See NLRB v. Nat. Garment Co.*, 166 F.2d 233, 237 (8th Cir. 1948) ("[t]he term 'liability' as used in the general savings statute has been broadly construed by the courts to comprehend all obligations arising out of any breach of a statutory duty") (interpreting predecessor statute to § 109). Because Plaintiffs have alleged that they were entitled to payment under § 206 at the time they took their courses, the government's liability for failure to pay survives under § 109.

### 2. The 2007 NDAA Amendment Does Not Expressly Extinguish the Government's Liability

The 2007 NDAA Amendment contains no express words extinguishing the liability established under the previous version of 37 U.S.C. § 206. *Cf. Whalen v. Office of Personnel Mgmt.*, 959 F.2d 924, 927 (Fed. Cir. 1992) ("The Maritime Education and Training Act of 1980 did not expressly extinguish the liability incurred by the government in connection with the employment status of Administrative Enrollees").

Unless Congress expressly extinguishes the liability in the "new" statutory language, the liability continues to exist in "a state of suspended animation." *Keener v. WMATA*, 800 F.2d 1173, 1175 (D.C. Cir. 1986).

The terms of the 2007 NDAA Amendment provide no support for the government's contrary argument (Br. 25) that the new statutory language supposedly "expressly provides that any 'liability' would be extinguished." Neither the words "liability" and "extinguish" nor any comparable words appear in the 2007 NDAA Amendment (or its legislative history). Courts have held that the absence of such terms shows that Congress did not mean an amendment to apply retroactively.[17] Moreover, it is nonsensical for the government to claim that Congress "expressly extinguished" a liability that it stubbornly denies ever existed in the first place. *Accord* Ruud, *The Savings Clause—Some Problems in Construction and Drafting,* 33 TEX. L. REV. 285, 298 (1955) ("when a repeal is enacted without an express provision concerning existing rights, it is presumed that the legislature intended to afford the protection of the general savings statute").

---

[17] *See, e.g., Korshin,* 91 F.3d at 674 ("[U]nless any of the successive acts discussed above specifically provided for the extinguishment of existing liabilities for negligent underpayment, § 109 preserves those liabilities, despite the later alteration of the statutes under which they arose. We find no reference in those later acts to extinguishment of such liabilities"); *United States v. Smith & Nephew Richards,* 1997 U.S. Dist. LEXIS 22939, at *5 (W.D. Tex. Mar. 7, 1997) (Section 109 "permit[s] the imposition of civil penalties against [defendant] under the pre-1996 amended § 243 for its conduct violative of that section occurring during the time period when it was in force and effect"); *FEC v. Wright,* 777 F. Supp. 525, 530-31 (N.D. Tex. 1991) (amendments exempting House Members to Federal Election Campaign Act "did not expressly release or extinguish" liability under earlier version of statute); *United States v. O'Neal,* 1988 U.S. Dist. LEXIS 14369 at **2-3 (N.D. Ill. Oct. 31, 1988) ("In repealing former § 1202(a)(1), Congress did not expressly provide for extinguishing penalties imposed under it"); *In re Naramore,* 3 B.R. 709, 713 (N.D.N.Y. 1980) ("Without such a qualifying clause, defendant's potential liability for full repayment of his student loan obligation has not been 'extinguished' by the repeal provision of the new Bankruptcy Act").

It also is no response for the government to contend that the 2007 NDAA Amendment extinguished its liability by implication. The terms of § 109 explicitly require that the liability must be "expressly" extinguished, and courts accordingly reject arguments that the liability was extinguished "by implication." *See, e.g., Widdis v. United States*, 395 F. Supp. 1015, 1017 (D. Alaska 1974) (rejecting argument that new statute extinguished earlier liability by implication).

### B. Changes in the Law Are Presumed to be Prospective

A strong presumption exists against giving legislation retroactive effect. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). The government's contention that the 2007 NDAA Amendment can be retroactively applied because it supposedly provides only a "clarification" of existing law has no merit. The Federal Circuit unequivocally has rejected the proposition that a statutory modification represents a "clarification" merely because Congress has labeled it as such. *See Princess Cruises, Inc. v. United States*, 397 F.3d 1358, 1363 (Fed. Cir. 2005) (courts must examine substance of statutory modifications, rather than labels such as "clarification"). The government cannot avoid a *Landgraf* analysis of the 2007 NDAA Amendment by denominating it to be merely a "clarification." *See id.*[18]

The Supreme Court has made clear that a statute will be applied prospectively unless a clear and unambiguous intention for retroactive application appears from the

[18] The Federal Circuit also has unequivocally rejected arguments that the actions of a later Congress demonstrate an intent of a prior Congress. *See, e.g., Diefernderfer v. MSPB*, 194 F.3d 1275, 1279 (Fed. Cir. 1999). The government miscites (Br. 15) *Wilson v. United States*, 917 F.2d 529 (Fed. Cir. 1990), as holding to the contrary. In that case, the Federal Circuit had determined that the original statute was clear and unambiguous, and the statutory amendments only confirmed the clear intent of the earlier statute. *See id.* at 534-35. This case in which the government is arguing that the 2007 NDDA Amendment *invalidates* the Federal Circuit's interpretation of the original statute plainly presents a different situation.

statutory terms. *See Landgraf*, 511 U.S. at 265; *accord Alyeska Pipeline Service Co. v. United States*, 224 Ct. Cl. 240, 254 (1980) (legislation is prospective "unless the words in the statute are so clear, strong, and imperative, that no other meaning can be annexed to them"). The terms of the 2007 NDAA Amendment do not satisfy this demanding standard.

The word "retroactive" appears nowhere in the 2007 NDAA Amendment and the terms of the Amendment lack the high degree of specificity required for retroactive application. *See, e.g.*, *Xiangyuan Zhu v. Fed. Hous. Fin. Bd.*, 389 F. Supp.2d 1253, 1271 (D. Kan. 2005) ("The statute does not include a retroactive provision"); *Roberts v. Dean Witter Reynolds, Inc.*, 2003 U.S. Dist. LEXIS 5676, at *9 (M.D. Fla. Mar. 14, 2003) ("[T]he Court notes that Congress did not use the phrase 'retroactive application' in the statute itself"); *In re Harbour Pointe Ltd. P'ship*, 132 B.R. 501, 503-04 (Bankr. D. D.C. 1991) (amended statute "does not use the word 'retroactive'"); *Allin v. Brown*, 6 Vet. App. 207, 212 (1994) (no retroactivity when amendment to statute had "no provisions regarding retroactive applicability"); *cf. State v. Great W. Ry.*, 25 N.W.2d 294, 298 (Minn. 1946) (amended statute contained provision explicitly stating that savings statute "shall not be construed to apply to this act").

If a "plausible" reading of the statutory language suggests a prospective application, then that interpretation must govern. *See Resolution Trust Corp. v. Seale*, 13 F.3d 850, 853 (5th Cir. 1994). A plausible reading of the 2007 NDAA Amendment is that it applies to any lawsuits asserting claims for compensation for correspondence coursework "performed on or after September 7, 1962" that may be filed in the future. *See id.* (similar). The Supreme Court has repeatedly told Congress that if it wishes

legislation to apply to "pending proceedings," it should explicitly say such.[19] Congress failed to do so in the 2007 NDAA Amendment.

The legislative history cited by the government from the Senate version of the 2007 NDAA Amendment (Br. 15-16) likewise is insufficient to warrant retroactive application of the 2007 NDAA Amendment. This legislative history also fails to provide a clear statement of intent for the statute to apply retroactively, or indeed, any support whatsoever for retroactive effect. If anything, this legislative history indicates that the amendment to § 206(d) functions as an "interpretive statute" passed in response to an adverse court decision. It is settled law that such statutes are given only prospective effect. *See, e.g., Rivers*, 511 U.S. at 311 n.11 ("The usual purpose of a special interpretive statute is to correct a judicial interpretation of a prior law which the legislature determines to be inaccurate. Where such statutes are given any effect, the effect is prospective only") (quotation omitted); *Condit v. United Air Lines, Inc.*, 631 F.2d 1136, 1140 (4th Cir. 1980) (same); *Peony Park*, 223 F.2d at 671-72 (same); *accord Bermner v. Mills*, 579 S.E.2d 159, 161 (Va. 2003) (amendments that were "declaratory of existing law" indicates that legislature did not intend statute to be retroactive).

---

[19] *See, e.g.*, *Martin v. Hadix*, 527 U.S. 343, 354 (1999) (language "'new provisions shall apply to all proceedings pending on or commenced after the date of enactment' . . . unambiguously addresses the temporal reach of the statute"); *Lindh v. Murphy*, 521 U.S, 320, 329 n.4 (1997) (same language "might possibly have qualified as a clear statement for retroactive effect"); *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 307-08 (1994) (earlier version of bill containing statement that amendment "shall apply to all proceedings pending on or commenced after" a fixed date contained "express retroactivity provisions"); *Landgraf*, 511 U.S. at 260 (statute could have stated that it "shall apply to all proceedings pending on or commenced after the date of enactment of this Act").

## CONCLUSION

Enough is enough. This Court should reject for once and for all the government's efforts to disavow the obligations to compensate National Guard members for completing required correspondence coursework that have been definitively established by the Federal Circuit. Consistent with the Federal Circuit's mandate, Plaintiffs, who already have been prosecuting their compensation claims for over six years, are entitled, without being obstructed by further efforts by the government to repudiate its obligations, to proceed with the discovery necessary to establish the required courses they completed and the compensation owed for that required duty. The government's motion to dismiss should be denied, and the Plaintiffs' cross-motion for partial summary judgment on the government's affirmative defense based on the 2007 NDAA Amendment should be granted.

Respectfully submitted,

/s Helen K. Michael

Helen K. Michael
Robert H. Shulman
John F. Stanton
Christina Fahmy
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 783-0800
Fax: (202) 383-6610

*Counsel for Plaintiffs*

Richard T. Dorman
CUNNINGHAM, BOUNDS, VANCE,
CROWDER, and BROWN, LLC
1601 Dauphin Street
Mobile, Alabama 36660
Tel: (334) 471-6191
Fax: (334) 479-1031

Charles J. Cooper
David Thompson
COOPER & KIRK, P.L.L.C.
555 11th St, N.W. Suite 750
Washington, DC 2005
Tel: (202) 220-9600
Fax: (202) 220-9601

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on February 12, 2007, a copy of the foregoing **Plaintiffs' Cross Motion for Summary Judgment** and **Memorandum of Law in support of its Cross-Motion for Partial Summary Judgment and Opposition to the Government's Motion to Dismiss** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's System.

/s Christina E. Fahmy

Christina E. Fahmy