**No. 00-644C**
**(Judge Firestone)**

---

**IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS**

---

**WILLIAM A. CLARK, et al.,**

**Plaintiff,**

**v.**

**THE UNITED STATES OF AMERICA,**

**Defendant.**

---

# DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS, AND OPPOSITION AND RESPONSE TO PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

---

**PETER D. KEISLER**
**Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Director**

**BRYANT G. SNEE**
**Deputy Director**

**DOUGLAS K. MICKLE**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Attn: Classification Unit, 8th Floor**
**1100 L Street, N.W.**
**Washington, D.C. 20530**
**Tele: (202) 307-0383**
**Fax: (202) 353-7988**
**Attorneys for Defendant**

**OF COUNSEL:**
**LT. COL. JOSEPH FETTERMAN**
**MAJOR JERRETT DUNLAP**
**United States Army Litigation Division**

**TIMOTHY MALLOY**
**MAJOR TRACEY ROCKENBACH**
**United States Air Force**
**General Litigation Division**

**MAXIMINO GONZALEZ**
**National Guard Bureau**
**Office of Chief Counsel**

**March 26, 2007**

**TABLE OF CONTENTS**

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS, AND OPPOSITION AND RESPONSE TO PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT . . . . . 1

ARGUMENT . . . . . 2

I. Congress Has Made Clear That 37 U.S.C. § 206 Does Not Mandate The Payment Of Money To National Guard Members Who Complete Correspondence Courses . . . . . 2

II. The Section 206 Clarifying Amendments Do Not Violate Separation of Powers . . . . . 3

A. The Clarifying Amendments Do Not Prescribe A Rule Of Decision . . . . . 4

B. The Federal Circuit's Opinion Was Not A Final Judgment . . . . . 9

III. An Exception To The Law Of The Case Doctrine Allows Review Based On The Current Version Of Section 206(d) . . . . . 12

IV. Retroactive Application Of Section 206(d) Does Not Violate The Fifth Amendment . . . . . 17

A. Plaintiffs Do Not Have A Cognizable Property Interest Under The Takings Clause . . . . . 17

1. Plaintiffs' Takings Claim For An Extinguished Cause Of Action Fails . . . . . 17

2. Compensation For Correspondence Courses Is Not A Legally-Recognized Property Interest . . . . . 18

3. Use of Regulatory Takings Analysis Is Appropriate . . . . . 20

B. The Court Lacks Jurisdiction To Entertain Plaintiffs' Due Process Claims, And The Clarifying Amendments To Section 206(d) That Expressly Require Plaintiffs' Claims To Be Barred Are Consistent With Due Process Requirements . . . . . 26

V. Section 206(d)'s Express Language Requires This Court To Bar Plaintiffs' Claims . . . . . 29

CONCLUSION . . . . . 30

## TABLE OF AUTHORITIES

**CASES:** **PAGES:**

Abrahim-Youri v. United States,
139 F.3d 1462 (Fed. Cir. 1997) . . . . . . . . . . 20, 21

Adams v. United States,
391 F.3d 1212 (Fed. Cir. 2004) . . . . . . . . . . passim

Alliance of Descendants of Texas Land Grants v. United States,
37 F.3d 1478 (Fed. Cir. 1984) . . . . . . . . . . 19, 20, 22

Armstrong v. United States,
364 U.S. 40 (1960) . . . . . . . . . . 24

Bank of Denver v. Southeastern Capital Group, Inc.,
789 F. Supp. 1092 (D. Co. 1992) . . . . . . . . . . passim

Bankers Trust N.Y. Corp. v. United States,
225 F.3d 1368, 1372 (Fed. Cir. 2000) . . . . . . . . . . 13

Barr v. Preskitt,
389 F. Supp. 469 (M.D. Ala. 1975) . . . . . . . . . . 24

Bd. Of Regents v. Roth,
408 U.S. 564 (1972) . . . . . . . . . . 24

Bennett v. New Jersey,
470 U.S. 632 (1985) . . . . . . . . . . 15

Bowen V. Public Agencies Opposed to Soc. Sec. Entrapment,
477 U.S. 41 (U.S. 1986) . . . . . . . . . . 27, 28

Bradley v. School Board of Richmond,
416 U.S. 696 (1973) . . . . . . . . . . 15

Briggs v. Pennsylvania R. Co.,
334 U.S. 304 (1948) . . . . . . . . . . 12

Buckley v. Valeo,
424 U.S. 1 (1976) . . . . . . . . . . 3

Catlin v. United States,
324 U.S. 229(1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Cherry v. United States,
225 Ct. Cl. 312, 640 F.2d 1184 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 23

Cities Service Co. V. McGrath,
342 U.S. 330 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Clark v. United States,
322 F.3d 1358 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Commonwealth Edison v. United States,
271 F.3d 1327 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Collins v. United States,
67 F.3d 284 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Consolidated United States Atmospheric Testing Litig.,
820 F.2d 982 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 27

Corus Staal BV v. United States,
279 F. Supp. 2d 1363 (Ct. Int'l Trade 2003),
aff'd 395 F.3d 1343 (Fed. Cir.2005),
cert. denied 126 S. Ct. 1023 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Counsel v. Dow,
849 F.2d 731 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Crocker v. United States,
125 F.3d 1475 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Ducre v. Mine Safety Appliances,
573 F. Supp. 388 (E.D. La. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fisher v. United States,
402 F.3d 1167 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Flanagan v. United States,
465 U.S. 259 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Florida Rock Indus. v. United States,
791 F.2d 893, 898-99 (Fed. Cir.1986),
cert. denied,479 U.S. 1053 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Foley v. Carter,
526 F. Supp. 977 ( D.D.C. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Gonzales v. United States,
48 Fed. Cl. 176 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Goodman Mfg., L.P. v. United States,
69 F.3d 505 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Greyhound Food Mgmt. V. City of Dayton,
653 F. Supp. 1207 (S.D. Ohio 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

Hodel v. Irving,
481 U.S. 704 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Horne v. Firemen's Retirement Sys.,
69 F.3d 233 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Hughes Tool Co. v. Trans World Airlines,
409 U.S. 363 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

Hutton v. Autoridad Sobre Hogares De La Capital,
78 F. Supp. 988 (D. P.R. 1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

In re Roberts,
846 F.2d 1360 (Fed. Cir. 1988) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Rospatch Sec. Litg.,
802 F. Supp. 110 (W.D. Mich. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Shear,
139 F. Supp 217 (N. D. Cal. 1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Integraph Corp. v. Intel Corp.,
253 F.3d 695 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Jacklitch v. Redstone Federal Credit Union,
463 F. Supp. 1134 (N.D. Ala. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Jones v. United States,
526 U.S. 227 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Karuk Tribe of Cal. V. Ammon,
209 F.3d 1366 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Kelley v. United States,
792 F. Supp. 793 (M.D. Fla. 1992) . . . . . . . . . . 23

Landgraf v. Usi Film,
511 U.S. 244 (1994) . . . . . . . . . . 9, 28

Lucas v. South Carolina Costal Council,
505 U.S. 1003 (1992) . . . . . . . . . . 21, 22

Major League Baseball Players Assoc. v. Garvey,
532 U.S. 504 (2001) . . . . . . . . . . 10

Marathon Oil Company v. United States,
374 F.3d 1123 (Fed. Cir. 2004) . . . . . . . . . . 10

Mercer v. Theriot,
377 U.S. 152 (1964) . . . . . . . . . . 10

Mistretta v. United States,
488 U.S. 361 . . . . . . . . . . 3

Mullane v. Central Hanover Bank & Trust Co.,
339 U.S. 306 (1950) . . . . . . . . . . 27

Nixon v. United States,
926 F.2d 1169 (Fed. Cir. 1991) . . . . . . . . . . 21, 22

Opdyke Inv. Co. v. Detroit,
883 F.2d 1265 (6th Cir. 1989) . . . . . . . . . . 23

Panama R.R. v. Napier Shipping Co.,
166 U.S. 280 (1897) . . . . . . . . . . 10

Patlex Corp. V. Mossinghoff,
758 F.2d 594 (Fed. Cir. 1985) . . . . . . . . . . 25

Penn Central Transport Co. V. New York,
438 U.S. 104 (1978) . . . . . . . . . . 20

Plaut v. Spendthrift Farms, Inc.,
514 U.S. 211 (1995) . . . . . . . . . . passim

Porto Rico Brokerage v. United States,
80 F.2d 521 (C.C.P.A. 1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Robertson v. Seattle Audubon Society,
503 U.S. 429 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

Seattle Audubon Society v. Robertson,
914 F.2d 1311, 1315 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Shawnee Tribe v. United States, ,
423 F.3d 1204 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Shelden v. United States,
7 F.3d 1022 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Smith International Inc. v. Hughes Tool Co.,
759 F.2d 1572 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Smith v. Travis Co. Ed. Dist.,
791 F. Supp. 1170 (W.D. Tex. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Standard Oil Co. of Calif. v. United States,
429 U.S. 17 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Strickland v. United States,
423 F.3d 1335 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tabb Lakes, Ltd. v. United States,
10 F.3d 796 (Fed. Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Ulmet v. United States,
19 Cl. Ct. 527 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Ulmet v. United States,
17 Cl. Ct. 679 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Bell,
5 F.3d 64 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

United States v. Bell,
988 F.2d 247 (1st Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

United States v. Klein,
80 U.S. (13 Wall.) 128 (1871) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

United States v. Larionoff,
431 U.S. 864 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

United States v. Sioux Nation of Indians,
448 U.S. 371 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Sperry Corp.,
493 U.S. 52 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

United States v. The Schooner Peggy,
5 U.S. (1 Cranch) 103 (1801) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Virginia Military Inst. v. United States,
508 U.S. 946 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Webster v United States,
74 Fed. Cl. 439 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Whitney Benefits, Inc. v. United States,
926 F.2d 1169 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Williams v. Principi,
275 F.3d 1361 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATUTES AND PUBLIC LAW

1 U.S.C. § 109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

10 U.S.C. § 10209 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

37 U.S.C. § 206 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

The National Defense Authorization Act of 2006, 119 Stat. 3287 (2006) . . . . . . . . . . . . . passim

The National Defense Authorization Act of 2007, 120 Stat. 2083 (2007) . . . . . . . . . . . . . passim

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **WILLIAM A. CLARK, et. al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 00-644** |
| | ) | **(Judge Firestone)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS, AND OPPOSITION AND RESPONSE TO PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

In plaintiffs' response brief, they conclude by arguing that "enough is enough." We agree. As we explained in our opening brief, plaintiffs' claims must be dismissed because Congress has made its intent clear that 37 U.S.C. § 206(d) precludes payment to National Guard members for completing correspondence courses.

In their response, plaintiffs argue that the Government's jurisdictional challenge is without merit and that retroactive application of the congressional clarifications to section 206(d) violates separation of powers constraints. Plaintiffs further disagree with the remainder of the Government's arguments. However, plaintiffs' arguments fail because, as we demonstrated in our opening brief, they ignore the well established principles that require the courts to follow the law in effect at the time they decide a case and that allow Congress to enact a substantive or procedural change in law that retroactively affects pending cases. Furthermore, plaintiffs' takings claims fail because they do not have a vested, protected property interest in the money they seek. This is because a statutory right to be paid money for Federal employee compensation is not a property interest for purposes of the Takings Clause. Additionally, as we have established, Congress had a rational purpose in expressly requiring retroactive application of the

bar to plaintiffs' claims and thus, did not violate Due Process constraints when it passed the clarifying legislation. Finally, congressional express language can only be read to extinguish plaintiffs' claims. In sum, because Congress is constitutionally responsible for setting military pay policy, its intent is controlling with regard to these matters, and this Court should abide by Congress' clearly expressed intent.

## ARGUMENT

### I. Congress Has Made Clear That 37 U.S.C. § 206 Does Not Mandate The Payment Of Money To National Guard Members Who Complete Correspondence Courses

Plaintiffs argue that the Government's jurisdictional challenge is "emblematic of its steadfast refusal to abide by the judicial decisions controlling resolution of this case." Pl. Memo. of Law in Supp. of Its Cross-Mot. for Partial Summ. J. and Opp'n to the Gov'ts Mot. to Dismiss, at 8 ("Pl. Memo."). However, the Government respectfully maintains that section 206(d), as clarified, bars plaintiffs' claims that are set forth in their first cause of action, and therefore deprives plaintiffs of a money-mandating statute. Congress has made it absolutely clear that section 206 as a whole is not a money-mandating statute for members of the National Guard who complete correspondence courses, which includes plaintiffs. Therefore, the Government does not retreat from this position that, given the lack of any money-mandating statute, this Court lacks jurisdiction to entertain plaintiffs' first cause of action. See Fisher v. United States, 402 F.3d 1167, 1173-74 (Fed. Cir. 1997). Indeed, it is the plaintiffs' opposition to this unassailable proposition that is "emblematic of [a] steadfast refusal" to recognize the long-standing practice

and interpretation of both Congress and the Armed Services with regard to the payment for the completion of correspondence course.[1] See Pl. Memo. at 8.

## II. The Section 206 Clarifying Amendments Do Not Violate Separation of Powers

Plaintiffs first argue that retroactive application of the clarifying amendments to section 206(d) would violate separation of powers constraints. Pl. Memo. pp. 9-21. While the Government acknowledges the broad principles underlying the separation of powers, it disagrees with how plaintiffs would have this Court apply those principles. The framers of the Constitution rejected the notion that the three branches of government must be entirely separate and distinct.[2] Mistretta v. United States, 488 U.S. 361, 380-81; Buckley v. Valeo, 424 U.S. 1, 121 (1976)).

In applying the doctrine of separation of powers to the role of statutory provisions in pending litigation, the Supreme Court has long acknowledged that Congress has the authority to enact a substantive or procedural change in law that affects pending cases. United States v. The Schooner Peggy, 5 U.S. (1 Cranch) 103 (1801). The Supreme Court has also recognized that Congress may enact legislation that retroactively affects rights and duties, so long as "the retroactive application of the legislation is itself justified by a rational legislative purpose." United States v. Sperry Corp., 493 U.S. 52, 64 (1989).

---

[1] Finally, plaintiffs total failure to address the Government's alternative motion pursuant to RCFC 12(b)(6) for failure to state a claim is a concession that plaintiffs' first cause of action, even assuming jurisdiction, fail and should be dismissed given section 206(d)'s clear bar to compensation for completing correspondence courses, under any circumstances. See Defendant's Motion To Dismiss, Docket # 141 ("Def. MTD"), pages 12 through 19.

[2] The Supreme Court further acknowledged Madison's admonition that "[i]n republican government the legislative authority, necessarily, predominates." Mistretta, 488 U.S. at 382, n.12 (quoting The Federalist No. 51, at 350, (James Madison) (J. Cooke ed., 1961)).

The Supreme Court has somewhat limited Congress' authority however. The Supreme Court has determined that Congress may not enact legislation that prescribes rules of decision to the judicial department of the government in cases pending before it unless it changes an underlying substantive or procedural law. United States v. Sioux Nation of Indians, 448 U.S. 371, 398 (1980). Also, Congress may not enact retroactive legislation that requires a court to reopen a final judgment entered before its enactment. Plaut v. Spendthrift Farms, Inc., 514 U.S. 211, 240 (1995). Here, Congress acted within its sole constitutional authority when it amended section 206(d) to expressly apply to National Guard members not in Federal service and gave it retroactive application. See U.S. Const. art. I, § 8, cls. 12, 14, 16. Clearly, application of these clarifying amendments that now ensure all members of the Reserve components are treated equally for pay purposes does not violate separation of powers principles. The amendment to 206(d) is not a rule of decision, and a final judgment has not been entered in this matter. Rather, the clarifying amendment to section 206(d) is simply a substantive procedural change in the law whose retroactive application is justified by a rational legislative purpose.

**A. The Clarifying Amendments Do Not Prescribe A Rule Of Decision**

The Government has consistently argued that the phrase "member of a reserve component" encompassed both National Guard members and reserve component members. See Def. MTD at 14 (citing Clark v. United States, 322 F.3d 1358, 1365 (Fed. Cir. 2003)). Congress amended section 206(d) to expressly make certain that National Guard members not in Federal status were treated the same as other reserve component members. Congress acted in this manner in response to the Federal Circuit's determination that section 206(a) suggests "that Congress intended to treat members of the state National Guard separately from members of a

reserve component and that Congress did not intend section 206(d) to apply to members of the state National Guard." Clark, 322 F.3d at 1365. Congress also amended the statute to make certain that the bar to compensation in section 206(d) applied retroactively to all claims since the enactment of 206(d) in 1962, and to all future claims. Pub. L. No. 109-364, § 607, 120 Stat. 2083, * (2006).

Relying upon Ninth Circuit law, plaintiffs assert, as a general proposition that Congress may not "alter the rule of decision in pending cases in favor of the government." Pl. Memo. at 10 (citing In re Consolidated United States Atmospheric Testing Litig., 820 F.2d 982, 992 (9th Cir. 1987)). However, plaintiffs fail to acknowledge that even that case does not support the generalized conclusion plaintiffs draw. See id. The amended version of section 206(d) "does not withdraw jurisdiction from the federal courts, does not deprive a party of the benefit of a judgment, and does not mandate the outcome of particular cases." Id. Further, since the amendments do not direct a court "to make a certain finding of fact, nor requires them to apply an unconstitutional law, the separation of powers doctrine is not offended." See id.

Plaintiffs' reliance upon United States v. Klein, 80 U.S. (13 Wall.) 128 (1871), to support their separation of powers argument, is also misplaced. Pl. Memo. at 11. Klein prohibits Congress from prescribing a rule of decision in a case pending before the courts in a manner that requires the courts to decide a controversy in the Government's favor. Klein, 80 U.S. at 143-44. To support their interpretation of Klein, plaintiffs direct this Court's attention to the district court opinion in Bank of Denver v. Southeastern Capital Group, Inc., 789 F. Supp. 1092 (D. Co. 1992), claiming that the "key inquiry" is whether "'the prescribed interpretation [of the new legislation is] at odds with prior' court decisions, and whether 'the prescribed interpretation

resolved a question dispositive of the action.'" Pl. Memo. at 15. While these were factors considered by the Bank of Denver court in reaching its ruling, there is no indication that these factors constituted the "key inquiry."[3]

Contrary to plaintiffs' assertions, application of the standard articulated in Bank of Denver actually supports the Government's argument that the clarifying amendments to section 206(d) do not violate separation of powers constraints. Congress amended the language of section 206(d)(1) by adding the words "or by a member of the National guard while not in Federal service." Pub. L. No. 109-163, 119 Stat. 3287 (2006). Congress further amended the language of section 206(d) by adding subsection three, which makes the prohibition in subsection one applicable to "any work or study performed on or after" the enactment of the statute on September 7, 1962, as well as "any claim based on that work or study arising after that date." Pub. L. No. 109-364, § 607, 120 Stat. 2083, * (2006). Such an amendment was clearly within Congress' authority. See Bank of Denver, 789 F. Supp. at 1097.

---

[3] Bank of Denver actually quoted a different standard in applying Klein, noting the "critical distinction" for determining the limits of Congress' authority to affect pending litigation, "is between actual repeal or amendment of the law underlying the litigation, which is permissible, and the actual direction of a particular decision in a case, without repealing or amending the law underlying the litigation, which is not permissible." Id. at 1097. The court further noted that "Congress can 'amend or repeal any law, even for the purpose of ending pending litigation,' but it 'cannot prescribe a rule of decision where no new circumstances have been created by legislation.'" Id. (emphasis in original) (quoting Seattle Audubon Society v. Robertson, 914 F.2d 1311, 1315 (9th Cir. 1990), rev'd on other grounds, Robertson v. Seattle Audubon Society, 503 U.S. 429 (1992)). In Robertson, the Supreme Court unanimously upheld a provision in the appropriations bill that Congress passed in direct response to ongoing litigation involving timber sales. The Court determined that the statute in question did amend applicable law, contrary to the circuit court's ruling. Accordingly, the issue of whether the quoted reading of Klein was correct was not reached. 503 U.S. at 441.

Although plaintiffs would have the Court read Klein very broadly, it has been significantly limited by subsequent Supreme Court decisions. Shawnee Tribe v. United States, 423 F.3d 1204, 1217-18 (10th Cir. 2005) (citing Plaut, 514 U.S. at 218 ("Whatever the precise scope of Klein, however, later decisions have made clear that its prohibition does not take hold when Congress amends applicable law.")). Even though the amendments to section 206(d) were designed to clarify that the prohibition on compensation applied to National Guard members while not in Federal service, S. Rep. No. 109-254, at 331-32 (2006), and were to apply retroactively to any claim since the inception of the statute, they nevertheless constitute a technical change in the law as stated by the Federal Circuit. Clark v. United States, 322 F.3d 1358 , 1365 (Fed. Cir. 2003). By adding the language regarding National Guard members in the Fiscal Year ("FY") 2006 National Defense Authorization Act ("NDAA") amendment to section 206(d), Congress eliminated any doubt as to whether the prohibition upon compensation applied to National Guard members while not in Federal service. Additionally, by adding the language regarding the applicable time frame in subsection three, Congress ensured the prohibition on compensating National Guard members while not in Federal service applied to "any claim" that was based upon work or study arising after the enactment of the statute. These clarifying amendments would necessarily result in a substantive change in the law from the Federal Circuit's perspective, even though the Senate Committee on Armed Services was of the opinion that the amendments did not change, "but rather clarified the meaning and purpose of" section 206(d). S. Rep. No. 109-254, at 331-32 (2006). This clarification simply created new circumstances without directing a particular decision in a case. See Bank of Denver, 789 F. Supp. at 1097.

Referring to the FY 2007 NDAA Senate Report, plaintiffs argue that the FY 2007 NDAA would violate the separation of powers if it is "an interpretive statute that does not change § 206." Pl. Memo. at 13. Plaintiffs also argue, in regard to the Federal general savings statute, that "it is nonsensical for the government to claim the Congress 'expressly extinguished' a liability that it stubbornly denies ever existed in the first place." Pl. Memo. at 35. Plaintiffs' reasoning would create a paradox in which Congress allegedly violates separation of powers constraints if its intent in amending a statute is to restore what it perceives is the correct expression of its intent regarding military pay, yet it would be "nonsensical" if Congress took steps to extinguish any potential entitlement to military pay that was created by a court opinion that it believes misinterpreted a statute. Plaintiffs' reasoning does not withstand scrutiny and is not supported by the relevant case law. See e.g., Shawnee Tribe, 423 F.3d at 1216 ("It is well settled that the enactment of legislation can moot an appeal even thought there may have been a viable issue in the district court. This includes legislation that specifically eliminates the source of the original dispute or changes the law pertaining to a particular lawsuit.") (citations omitted); Bank of Denver, 789 F. Supp. at 1098.[4]

[4] Plaintiffs rely upon several dated district court cases to support their argument that Congress violated the separation of powers through its retroactive amendments. Pl. Memo. at 13. Plaintiffs refer to broad statements of dicta from these cases, but the specific holdings do not support their position. For example, Porto Rico Brokerage Co. v. United States, broadly stated that Congress does not have the authority to state what the law has been, yet actually held that Congress has the authority to retroactively ratify the collection of taxes. Porto Rico Brokerage v. United States, 80 F.2d 521, 264-64 (C.C.P.A. 1936). Likewise, In re Shear, did not deal with the question of retroactive application of a statute, but instead dealt with the limits placed on the judiciary in interpreting a statute by separation of powers principles. In re Shear, 139 F. Supp 217, 223 (N. D. Cal. 1956) ("If the doctrine of separation of power is valid, and judicial supremacy is essential to its preservation, then legislative supremacy in matters of legislative policy is equally necessary. Otherwise under the guise of law enforcement and interpretation, the Court in fact dominates the legislative function."). Finally, plaintiffs' argument runs counter

Plaintiffs' reliance upon In re Rospatch Sec. Litg., 802 F. Supp. 110, 114 (W.D. Mich. 1992), Pl. Memo. at 14, is also fundamentally misplaced. Rospatch is clearly distinguishable from the section 206(d) clarifying amendments, in that Rospatch involved a situation when Congress failed to "adopt or change the law regarding the statute of limitations." Rospatch, 802 F. Supp. at 114. Instead, the statute there attempted "to turn back the clock" to the day before the Supreme Court had enacted the statute of limitations in question. Id.

Here, however, the clarifying amendments to section 206(d) constitute a change in the law as pronounced by the Federal Circuit in Clark by ensuring the prohibition upon compensation applies to National Guard members both retroactively and prospectively, without purporting "to direct any particular findings of fact or applications of law, old or new, to fact." Robertson, 503 U.S. at 437 (holding that congressional amendments that directly named litigation still pending did not direct the court to reach a result in violation of separation of powers). Accordingly, Congress did not "prescribe a rule for decision" when it amended section 206(d) and, so, clearly acted within its constitutional authority. See Klein, 80 U.S. at 143-44.

**B. The Federal Circuit's Opinion Was Not A Final Judgment**

The Government further recognizes that the principle of separation of powers limits Congress' ability to set aside a final judgment of an Article III court. See Plaut v Spendthrift

---

to the well-established case law that allows Congress to enact laws that have retroactive effect upon issues being addressed by the courts, see United States v. Sperry Corp., 493 U.S. 52, 64 (1989) (stating that "retroactive application of the legislation [must itself be] justified by a rational legislative purpose."), and to the rule that courts are to apply the law in effect when a dispute is decided. Landgraf v. Usi Film, 511 U.S. 244 (1994).

Farm, 514 U.S. at 240. Nevertheless, a final judgment[5] has not been entered in this case. Here, the Federal Circuit's 2003 decision clearly was not the final word upon plaintiffs' claims, and this fact alone distinguishes this case from those cited by plaintiffs on page 17 of their brief. This Court, of course, must still rule upon the case and its decision is, thereafter, subject to further appellate review. At each stage of the pending litigation, the courts' obligation is "to give effect to Congress's latest enactment." Plaut, 514 U.S. at 226.

Plaintiffs contend that because the Government did not seek certiorari regarding the Federal Circuit's 2003 opinion in Clark, that opinion amounts to the "last word" from the judiciary regarding the interpretation of section 206(d) and is, therefore, a final judgment. Pl. Memo. at 20-21. In effect, plaintiffs urge that the Government has waived its right to challenge the 2003 decision, even during subsequent appeals in this case.[6] Plaintiffs are mistaken.

---

[5] A final judgment is "[a] court's last action that settles the rights of the parties and disposes of all issues in controversy, except for the award of costs (and, sometimes, attorney's fees) and enforcement of the judgment." Marathon Oil Company v. United States, 374 F.3d 1123, 1128 (Fed. Cir. 2004) (quoting Black's Law Dictionary 847 (7th ed. 1999)). In the context of appellate jurisdiction, a "'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Id. (quoting Catlin v. United States, 324 U.S. 229, 233(1945)). Generally, a remand – which was the relief afforded in Clark, 322 F.3d at 1368 – is not a final judgment. Id. (citing Williams v. Principi, 275 F.3d 1361, 1364 (Fed. Cir. 2002).

[6] See e.g., Major League Baseball Players Assoc. v. Garvey, 532 U.S. 504 (2001) (considering issues decided during first appeal after entire case was remanded both times); Virginia Military Inst. v. United States, 508 U.S. 946 (1993) (Scalia, J., concurring) (denying a petition for certiorari which sought intervention in litigation before final judgment); Hughes Tool Co. v. Trans World Airlines, 409 U.S. 363 (1973); Panama R.R. v. Napier Shipping Co., 166 U.S. 280 (1897) (deciding libel issues affirmed during first appeal after remand for decision on damages); see also Jones v. United States, 526 U.S. 227 (1999); Mercer v. Theriot, 377 U.S. 152 (1964).

Plaintiffs' waiver argument also runs counter to the final judgment rule. A primary purpose of the final judgment rule is to preclude piecemeal appeals, which promotes judicial economy and "reduces the ability of litigants to harass opponents and to clog the courts through a succession of costly and time consuming appeals." 19-202 Moore's Federal Practice-Civil § 202.03 (quoting Flanagan v. United States, 465 U.S. 259, 264 (1984)). While there are limited circumstances in which a ruling by the Federal Circuit could be considered a final judgment, those circumstances are not present in the instant case. See Ulmet v. United States, 19 Cl. Ct. 527, 535 (1990). In Ulmet, this Court ruled that "the decision in which the Federal Circuit reversed, remanded and issued its mandate" could not "be considered a 'final judgment' because it did not fully and completely dispose of the case and was not susceptible to entry of a final judgment, without the need for further proceedings at the trial level." Id.; see also id. at n.11.

As in Ulmet, the Federal Circuit's opinion in Clark was not a final judgment because its mandate did not fully and completely dispose of the case. See Id. at 535. Additionally, the Federal Circuit's mandate did not include a finding that plaintiffs were definitely entitled to compensation, let alone a definite, quantifiable sum. In Clark, the Federal Circuit's mandate was merely that "[o]n remand, of course, Mr. Clark must establish which classes the Secretary of the Army required, **if any**, and which classes he took to satisfy those requirements. Moreover, he must establish the amount of compensation he is due under the statute." Clark, 322 F.3d. at 1368 (emphasis added). Thus, the Federal Circuit simply stated that plaintiffs must establish which required classes they took, noting that they may not have taken any classes required by the Secretary, and clearly implying that these plaintiffs may not be entitled to any compensation.

Plaintiffs argue that this is "a play on words," stating "the Federal Circuit held that Plaintiffs were entitled to payment for any correspondence courses they took." Pl. Mot. at 20, n.9. Plaintiffs miss the Federal Circuit's first requirement upon remand, namely that they must establish which classes the service secretaries required, "if any." Because plaintiffs have not established they have taken any courses required by the service secretaries in their capacity as members of their state's militia, the issue of compensation is still unresolved. Accordingly, Clark does not constitute a final judgment.

## III. An Exception To The Law Of The Case Doctrine Allows Review Based On The Current Version Of Section 206(d)

Plaintiffs argue that this Court is bound by the Federal Circuit's mandate and "cannot reconsider questions decided by the Federal Circuit." Pl. Memo. at 18. It is true that generally, the mandate rule, as a specific application of the law of the case doctrine,[7] provides that "an inferior court has no power or authority to deviate from the mandate issued by an appellate court." Ulmet v. United States, 17 Cl. Ct. 679, 689 (1989) (quoting Briggs v. Pennsylvania R. Co., 334 U.S. 304, 306 (1948)). The mandate rule, however, is not without exceptions.[8] The circumstances under which an exception to the mandate rule may be warranted are: (1) if "controlling legal authority has changed dramatically," (2) if "significant new evidence, not

[7] See Def. MTD at 20, n.7, for a detailed explanation of the mandate rule.

[8] A trial court has discretion to reopen matters otherwise laid to rest, under certain circumstances. See United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) ("When this court remands for further proceedings, a district court must, except in rare circumstances, implement both the letter and spirit of the mandate, taking into account our opinion and the circumstances it embraces.") (Internal quotation marks and alteration omitted); United States v. Bell, 988 F.2d 247, 251 (1st Cir. 1993) (noting that the mandate rule is not a jurisdictional rule and "may tolerate a modicum of residual flexibility in exceptional circumstances.").

earlier obtainable in the exercise of due diligence, has come to light," or (3) if "a blatant error in the prior decision will, if uncorrected, result in a serious injustice." Bell, 5 F.3d at 67 (citing Bell, 988 F.2d at 251); see also Corus Staal BV v. United States, 279 F. Supp. 2d 1363, 1368 (Ct. Int'l Trade 2003) (applying the three prong mandate rule exception), aff'd 395 F.3d 1343 (Fed. Cir. 2005), cert. denied 126 S. Ct. 1023 (2006)).

Although the Federal Circuit has not discussed these exceptions directly in reference to the mandate rule, it has applied the same three exceptions to similar law of the case issues. "Reasons that may warrant departure from the law of the case, thus providing an exception to the more rigorous requirements of res judicata, include the discovery of new and different material evidence that was not presented in the prior action, or an intervening change of controlling legal authority, or when the prior decision is clearly incorrect and its preservation would work a manifest injustice." Integraph Corp. v. Intel Corp., 253 F.3d 695, 698 (Fed. Cir. 2001) (citing Smith International Inc. v. Hughes Tool Co., 759 F.2d 1572, 1576 (Fed. Cir. 1985)). Indeed, the Federal Circuit has also noted two exceptions to the requirement that a trial court follow its reviewing court's precedent: "[I]f the circuit's precedent is expressly overruled by statute or by a subsequent Supreme Court decision." Strickland v. United States, 423 F.3d 1335, n.3 (Fed. Cir. 2005) (en banc) (citing Bankers Trust N.Y. Corp. v. United States, 225 F.3d 1368, 1372 (Fed. Cir. 2000)).

The exceptions to the mandate rule, coupled with an interest in promoting judicial economy, free a lower court from the restrictions of the mandate rule. Ulmet, 17 Cl. Ct. at 692 (citing Standard Oil Co. of Calif. v. United States, 429 U.S. 17, 19 (1976) (per curiam)). But see In re Roberts, 846 F.2d 1360 (Fed. Cir. 1988) (en banc) (noting that arguments in support of

departure from the appellate court's mandate generally should be addressed to the appellate court). As noted in our opening brief, Ulmet addressed the same procedural issue presented in the instant case, namely "whether or not this court should apply the amended statute which was enacted after the mandate by the Federal Circuit, but before the judgement of this court." Def. MTD at 19-20; Ulmet, 17 Cl. Ct. at 689-90. Ultimately, Ulmet held that the exceptions to the mandate rule allowed the Claims Court to address the issues raised by the Government's motion to dismiss, "[i]n the spirit of promoting judicial economy and because Standard Oil appears broad enough." Id. at 692.

Plaintiffs claim, erroneously, that Ulmet applies here because it "adhered to the 'law of the case' notwithstanding an intervening change in the law following remand from the Federal Circuit." Pl. Memo. at 19-20. While Ulmet is factually similar to the instant case, especially in its procedural posture, there are key distinctions that support the Government's position. First, Ulmet held Congress was silent regarding retroactivity of the changed terms of the statute. 17 Cl. Ct. at 693 ("If Congress intended the application of the amendment to cases such as plaintiff's, it could have, as it has in the past, amended the statute at issue and specified a date from which the amendment was to apply.") In contrast, here, Congress expressly stated that the bar to compensation in section 206(d) applied to "any work or study" and to "any claim" based on work or study performed on or after the inception of the statute on September 7, 1962. Pub. L. No. 109-364, § 607, 120 Stat. 2083, * (2006). As Congress required retroactivity, the current version of section 206(d) must be applied.

The second key distinction between Ulmet and the instant case involves whether the retroactive application of section 206(d) affected substantive rights and liabilities. Citing

Bennett v. New Jersey, 470 U.S. 632, 639 (1985),[9] Judge Horn noted that the Supreme Court stated "a federal court is to apply the law in effect when it renders its decision even if the intervening or new law does not expressly state it applies to pending cases" unless in doing so it would "'infringe upon or deprive a person of a right that had matured or become unconditional.'" Ulmet, 17 Cl. Ct. at 695.

In describing the Federal Circuit's opinion in Ulmet, Judge Horn made clear that the Federal Circuit "had indicated that plaintiff was entitled to certain forms of relief." Id. at 687. The relief granted to Lieutenant Colonel Ulmet upon remand included specific guidance to the Claims Court regarding deductions from his back pay, and the determination that it would be a "gross inequity" for the defendant to argue that plaintiff was eight days short of qualifying for "sanctuary" under the relevant statute. Id. at 685. With this mandate from the Federal Circuit, Judge Horn determined the plaintiff was "precisely the type of plaintiff foreseen in the manifest injustice exception to the doctrine which otherwise requires a court to apply the law in effect when it issues its decision." Id. at 696.

---

[9] In Bennett, the Supreme Court considered whether substantive amendments to a funding program could be interpreted to have retroactive application. The Bennett court noted that in Bradley v. School Board of Richmond, 416 U.S. 696 (1973), the Court had held that a statutory provision for attorney's fees applied retroactively to a fee request that was pending when the statute was enacted unless application of the provision "'would infringe upon or deprive a person of a right that had matured or become unconditional,'" 470 U.S. at 639 (quoting Bradley, 416 U.S. at 720). The Bennett court then reasoned that to apply the substantive amendments in question retroactively would be unfair, and concluded that "absent a clear indication to the contrary in the relevant statutes or legislative history, changes in the substantive standards governing federal grant programs do not alter obligations and liabilities arising under earlier grants." Id. at 641. Accordingly, in Bennett, the key to whether retroactive application is allowed is whether Congress has made its intentions clear. This inquiry is unnecessary here, as Congress' intent to apply the section 206(d) retroactively was unambiguous. See Counsel v. Dow, 849 F.2d 731, 736 n.4 (2d Cir. 1988).

Such is not the case with plaintiffs in the instant case. First, as discussed above, the Federal Circuit's mandate did not determine plaintiffs were entitled to relief. Because the issue of whether plaintiffs had taken any required correspondence courses was unresolved, any "right" to compensation had not matured and was conditional. Moreover, as no court to date has determined that plaintiffs have completed correspondence courses required by the service secretaries, the current version of the statute must be used. Second, in Ulmet plaintiff was within eight days of receiving the protection of the "sanctuary" provision for retirement. Plaintiffs do not present such a "manifest injustice."[10] Plaintiffs have never been promised compensation for completing correspondence courses. On the contrary, as plaintiffs admit, the Government has consistently refused to pay compensation to all members of the Reserve and National Guard for correspondence courses based upon its longstanding statutory interpretation – an interpretation that Congress has now made clear was correct all along. See Second Amend. Compl. at 17, ¶ 84.

The congressional clarification of section 206(d) constitutes a change to the controlling legal authority. See United States v. Bell, 5 F.3d at 67. Congress amended 37 U.S.C. § 206(d) twice to clarify its intention regarding the correct meaning and retroactive application of that section and to moot this lawsuit prior to final adjudication of plaintiffs' claims. FY 06 NDAA, Pub. L. No. 109-163, 119 Stat. 3287 (2006); FY 07 NDAA, Pub. L. No. 109-364, § 607, 120 Stat. 2083, * (2006). Accordingly, the circumstances surrounding the instant case qualify as an exception to the mandate rule, freeing this Court to consider this motion.

---

[10] See Def. MTD at 29-30 (discussing the lack of economic impact on plaintiffs and the opportunities available to plaintiffs to advance in grade, etc.)

## IV. Retroactive Application Of Section 206(d) Does Not Violate The Fifth Amendment

Plaintiffs alternative argument, that the amendment to section 206(d) is an unconstitutional taking of their property, Pl. Memo. at. 21-31, fails at the outset, because it is well settled that if the Government acted improperly, then no taking can have occurred, for takings result only from authorized acts of government officials. Tabb Lakes, Ltd. v. United States, 10 F.3d 796, 802-03 (Fed. Cir.1993); Florida Rock Indus. v. United States, 791 F.2d 893, 898-99 (Fed. Cir.1986), cert. denied,479 U.S. 1053 (1987). Thus, given that plaintiffs contend that Congress acted impermissibly when it amended section 206(d), see Pl. Memo at 9-21, plaintiffs' alternative theory for relief fails, and thus, their complaint should be dismissed.

### A. Plaintiffs Do Not Have A Cognizable Property Interest Under The Takings Clause

Plaintiffs' takings' argument also fails because they are not able to establish a cognizable property interest in either compensation for completing required correspondence courses or in a legal claim thereto within the meaning of the Takings Clause of the Fifth Amendment. See Adams v. United States, 391 F.3d 1212, 1214 (Fed. Cir. 2004). As we established in our opening brief, the threshold step for this Court in a takings analysis is to determine whether the plaintiff possesses a valid private property interest subject to the Government action. Def. MTD at 27, (citing Karuk Tribe of Cal. V. Ammon, 209 F.3d 1366, 1374 (Fed. Cir. 2000)). Because plaintiffs fail to establish this threshold issue of a valid property interest, their takings claim fails.

#### 1. Plaintiffs Takings Claim For An Extinguished Cause Of Action Fails

Plaintiffs argue that their takings claim is not for the loss of compensation, but instead is for a taking of their claim for compensation. Pl. Memo. at 23. They further argue that the Court should apply a "per se" rather than a "regulatory takings" analysis, alleging the government

action renders their claim "completely worthless." Id. According to plaintiffs, tampering with their right to compensation might constitute a taking, citing to Cherry v. United States, 640 F.2d 1184, 1887 (Ct. Cl. 1980). Pl. Memo. at 24. However, the Federal Circuit's decision in Adams specifically held that such circumstances do not present a taking.[11] Adams, 391 F.3d at 1225-25 (citing Cities Service Co. V. McGrath, 342 U.S. 330 (1952)). In order to fit within the definition of property recognized under the Takings Clause, a cause of action must protect legally-recognized property interests. Id. Accordingly, plaintiffs takings claim is invalid because the underlying claim for compensation does not qualify as a "recognized property interest under the Takings Clause." Id.

**2. Compensation For Correspondence Courses Is Not A Legally Recognized Property Interest**

As demonstrated in our opening brief, plaintiffs do not have a vested, legally-recognized, property interest in their claimed compensation for correspondence courses. Def. MTD at 28-29; see also Adams, 391 F.3d at 1212.

In Adams, a group of criminal investigators employed by various federal law enforcement agencies filed a takings complaint related to overtime compensation. Adams, 319 F.3d at 1214. The Adams' plaintiffs argued they owned a valid administrative claim before the General Accounting Office ("GAO") to recover their unpaid overtime compensation. Id. at

[11] Plaintiffs' contention, like that of the Adams' plaintiffs, that their takings claim for an extinguished claim for compensation constitutes property (Pl. Memo. at 23) is without merit because "the underlying subject matter for [their] alleged [claim] fails to qualify as a recognized property interest under the Takings Clause." Adams, 391 F.3d at 1226. As discussed below, the underlying basis for the current suit does not involve a matter of real or personal property, and is not subject to Fifth Amendment protection against takings as an accrued cause of action. Hodel v. Irving, 481 U.S. 704 (1987).

1225. They further argued that when Congress amended the statute of limitations provision applicable to GAO claims, the Government entirely extinguished their administrative claim to unpaid overtime compensation, effecting a per se taking of their private property without just compensation. Id. Like the plaintiffs here, (Pl. Memo. at 22-23), the Adams plaintiffs relied upon Alliance of Descendants of Texas Land Grants v. United States, 37 F.3d 1478 (Fed. Cir. 1984), to support their contention that their GAO claim was "property" within the meaning of the Takings Clause. Adams, 391 F.3d at 1225. The court of appeals disagreed and stated that such reliance was "utterly misplaced because the cause of action [in Alliance of Descendants of Texas Land Grants] was to recover compensation for an interest in land, a property interest cognizable under established takings jurisprudence because land is, beyond question, property under state and common law." Adams, 391 F.2d at 1226 (citation omitted).

Here, as was the case in Adams, plaintiffs' takings claim fails because there is no property interest under the Takings Clause in either the claimed compensation or in the related cause of action. See id. "[A] statutory right to be paid money, at least in the context of federal employee compensation and benefit entitlement statutes, is not a property interest for purposes of the Takings Clause." Id. at 1225. In Commonwealth Edison v. United States, the Federal Circuit held that "the mere imposition of an obligation to pay money . . . does not give rise to a claim under the Takings Clause of the Fifth Amendment." Commonwealth Edison v. United States, 271 F.3d 1327, 1340 (Fed. Cir. 2001) (en banc).[12] Because plaintiffs had no protected property

---

[12] In Adams, the Federal Circuit explained that its holding in Commonwealth Edison was premised upon "the nature of the interest in dispute (i.e., a legally-recognized property interest such as one in real estate, personal property, or intellectual property, versus an ordinary obligation to pay money.)" Adams, 391 F.3d at 1224. The Federal Circuit continued, "[t]he former is protected as property under the Takings Clause, whereas the latter is not because it

interest in compensation for correspondence courses under the Takings Clause, they do not have a vested interest in their claim for compensation. See Adams, 391 F.2d at 1226.[13]

**3. Use of Regulatory Takings Analysis Is Appropriate.**

Plaintiffs also mistakenly argue that the Government's use of regulatory takings analysis is not applicable and urges the Court to apply a "per se" takings analysis to their claim. Pl. Memo. at 23 (citing Abrahim-Youri, 139 F.3d at 1465-66). In Abrahim-Youri, the Federal Circuit commented upon how this Court evaluated plaintiffs' takings claim under the three-factor test enunciated by the Supreme Court in Penn Central Transport Co. V. New York, 438 U.S. 104, 124 (1978), specifically commenting upon "the investment-backed expectations factor." Abrahim-Youri, 139 F.3d at 1465. The Abrahim-Youri plaintiffs made a similar argument to that offered by plaintiffs here, namely that "the Government effected a 'per se' taking of property (i.e., their causes of action against Iran) by espousing and settling their claims . . . and the Court of Federal Claims therefore erred in applying the three-factor Penn Central analysis which applies to regulatory takings, not to 'per se' takings." Id. at 1465.

It is true, that the Federal Circuit agreed with the Abrahim-Youri plaintiffs that "their property rights – their choses in action against Iran – were extinguished when the Government

---

lacks any foundation in property law." Id.

[13] In addition to relying on Alliance of Descendants, plaintiffs also rely, mistakenly, upon Abrahim-Youri v. United States, 139 F.3d 1462, 1465 (Fed. Cir. 1997), to support their taking's claim. Pl. Memo. at 22-23. However, the holding by this Court, which was affirmed by the Federal Circuit in Abrahim-Youri, was that no compensable taking had occurred. 139 F.3d at 1465. Additionally, plaintiffs in Abrahim-Youri claimed the Government had extinguished their right to sue Iran, which resulted in a reduction in interest paid on the awards given by the Iran-United States Claims Tribunal. Id. at 1464-65. These facts are clearly distinguishable from those of the plaintiffs here, who do not have a vested award of damages, as did the plaintiffs in Abrahim-Youri. See Def. MTD at 28-29.

espoused and settled their claims," commenting that "[i]n that sense plaintiffs are correct that this fact pattern does not fit comfortably in the regulatory taking category, the category to which the Penn Central analysis traditionally applies." Id. at 1465-66 (cited at Pl. Memo. at 23). However, plaintiffs fail to note the opinion's next sentence, which provides "[t]o say that, however, does not say that plaintiffs' syllogism necessarily follows, or that the considerations identified by the trial court are not relevant to the proper outcome of the case." Id. at 1466. The Federal Circuit then explained how "takings claims have come in a variety of forms arising from a variety of fact patterns, some of which fit less than comfortably into the regulatory or physical takings dichotomy." Id. By affirming this Court's holding in Abrahim-Youri (which relied upon the Penn Central decision), it is clear that the Federal Circuit considered such factors to be relevant to the analysis of takings claims involving causes of action.[14]

The plaintiffs are mistaken to rely upon a line of cases, including Lucas v. South Carolina Costal Council, Whitney Benefits, Inc. v. United States, Nixon v. United States, to argue that a "per se" taking occurred here. See Pl. Memo. at 23-24. These cases all deal with claims related to legally-recognized property interests, not an obligation to pay money.[15] Cf.

---

[14] Plaintiffs also argue (Pl. Memo. at n.10) "the Federal Circuit most likely deemed the regulatory takings factors 'relevant' in Abrahim-Youri because the claimants still retained some benefit from the government's settling of their claims against Iran." (Citation omitted). First, this argument is pure speculation by plaintiffs. Additionally, plaintiffs do retain some benefits from any correspondence courses taken, as they concede in their Second Amended Complaint. Compl. at 1, ¶ 1 (acknowledging plaintiffs gain opportunities to "advance in grade, enter or advance in military occupational specialities or speciality codes; or to obtain or retain certain positions of responsibility" by completing correspondence courses).

[15] In Lucas, a per se taking occurred because a government action deprived a piece of real property of value. Lucas v. South Carolina Costal Council, 505 U.S. 1003, 1019-20 n.8 (1992). In Nixon, the property at issue involved personal property in the form of Presidential papers and recordings. Nixon v. United States, 978 F.2d 1269 (D.C. Cir. 1992). The Whitney

Adams, 391 F.3d at 1224. The Government could not locate any jurisprudence applying a "per se" takings analysis to an allegation that the Government "took" a cause of action.[16] Even if plaintiffs' argument that regulatory takings analysis is not applicable to this case were correct, that alone does not resurrect plaintiffs' takings claim. At bottom, because plaintiffs "do not possess any cognizable property interest within the meaning of the Takings Clause," the Government cannot "commit a per se taking without just compensation any more than it could commit a regulatory or any other kind of taking." See id. at 1226.[17]

Moreover, because plaintiffs own no protected property interest in their claims for compensation, as discussed above, retroactive application of the clarifying amendments to section 206(d) do not impermissibly destroy plaintiffs' causes of action, as argued by plaintiffs. Pl. Memo. at 24.[18] Plaintiffs claim that a "property right in a cause of action that is 'protected' by the Fifth Amendment vests upon 'satisfaction of conditions precedent to suing.'" Pl. Memo.

---

Benefits case concerned a Government taking where economic development of land was prevented and mineral rights were acknowledged as a property interest. Whitney Benefits, Inc. v. United States, 926 F.2d 1169, 1172 (Fed. Cir. 1991).

[16] In Alliance of Descendants of Tex. Land Grants v. United States, 37 F.3d 1478, 1481 (Fed. Cir. 1994), the court of appeals did not expressly analyze whether a legal cause of action was property within the meaning of the Fifth Amendment.

[17] Plaintiffs' argument that the Government did not provide "just compensation" also fails due to the lack of a cognizable property interest in their cause of action. See Pl. Memo. at 27-28.

[18] To support their general contention that retroactive application of the amendments to section 206(d) would impermissibly destroy their causes of action, plaintiffs rely upon a Vietnam era prisoner of war ("POW") pay case, where the Claims Court held the Air Force had improperly transferred the POW's pay to his unfaithful spouse, while he was detained. Cherry v. United States, 225 Ct. Cl. 312, 640 F.2d 1184, 1185 (Ct. Cl. 1980). However, the language quoted by plaintiffs (Pl. Memo. at 24) is dicta, as no taking claim was presented. Id. Furthermore, the facts in Cherry are in no way similar to the instant case.

at 24 (citing Jacklitch v. Redstone Federal Credit Union, 463 F. Supp. 1134, 1139 n.2 (N.D. Ala. 1979)). This contention is meaningless in light of the Federal Circuit precedent that a statutory obligation to pay money compensation does not create a "property interest" within the meaning of the Takings Clause. Adams, 391 F.3d at 1226. Additionally, the quotation cited by plaintiffs at page 26 of their brief refers to an argument that was expressly not adopted by the district court. Jacklitch, 463 F. Supp. at 1139 n.2 ("this Court, refrains from specifically basing its opinion on constitutional grounds"). Clearly such a hypothetical argument, expressly not adopted by the court, carries no weight. Plaintiffs further argue that their "protected property rights vested when they 'first could have maintained [their] action to a successful result.'" Pl. Memo. at 24-25, (citing, Ducre v. Mine Safety Appliances, 573 F. Supp. 388, 391 (E.D. La. 1983). However, Ducre involved state tort causes of action, not a takings claim, and relies upon the Fourteenth Amendment and Louisiana state law, which are irrelevant, let alone even helpful, in the instant case. Ducre, 573 F. Supp. at 391. In fact, the majority of the cases cited by plaintiffs (Pl. Memo. at 24-25) to support their contention that a cause of action need not be a final judgment to be vested do not involve takings claims at all.[19]

Finally, the two cases plaintiffs cite for support that do involve takings claims involve a property interest that is cognizable under state law, a key distinguishing fact from the instant case. See Armstrong v. United States, 364 U.S. 40, 44 (1960) (valid property lien based on state

---

[19] See, e.g., Horne v. Firemen's Retirement Sys., 69 F.3d 233, 236 (8th Cir. 1995) (age discrimination action); Kelley v. United States, 792 F. Supp. 793, 795 (M.D. Fla. 1992) (Federal Tort Claims Act action); Opdyke Inv. Co. v. Detroit, 883 F.2d 1265, 1274 (6th Cir. 1989) (holding that appellant had no constitutionally protected property interest under the Fifth Amendment Due Process in a meritless antitrust action); Hutton v. Autoridad Sobre Hogares De La Capital, 78 F. Supp. 988, 999 (D. P.R. 1948) (statutorily based condemnation cause of action).

law); Shelden v. United States, 7 F.3d 1022, 1028 (Fed. Cir. 1993) (mortgage lien). The protected property interest at issue there were legally recognized ones, which is not the case here. See Adams, 391 F.3d at 1225.

Plaintiffs further argue that vested rights created by statute cannot be abridged by a subsequent statute that effectively takes away accrued causes of action to enforce those rights. Pl. Memo. at 25 (citing Greyhound Food Mgmt. V. City of Dayton, 653 F. Supp. 1207, 1215 (S.D. Ohio 1986)). However, the "vested rights" discussed in Greyhound Food Mgmt. were under the Due Process Clause of the Fourteenth Amendment, not the Fifth Amendment's Takings Clause.[20] Greyhound Food Mgmt., 653 F. Supp. at 1215. As noted above, property rights under the Fifth Amendment's Due Process Clause, let alone under the Fourteenth Amendment, have no relevance to whether they are "property" under the Taking Clause. Adams, 391 F.3d at 1220, n.4. Although the district court in Greyhound Food Mgmt. did analyze the retroactive application of the Ohio statute in question under the Taking Clause,[21] it

---

[20] In Adams, the Federal Circuit noted plaintiffs confused a property right cognizable under the Takings Clause of the Fifth Amendment with a due process right to payment under a compensation statute. 391 F.3d 1212, 1220. Entitlements to government conferred benefits are often referred to as "property interests" within the meaning of the Due Process Clause, but that has no relevance to whether they are "property" under the Takings Clause. Id. at 1220, n.4. Entitlements are considered to be government conferred benefits, safeguarded exclusively by procedural due process. Id. (citing Bd. Of Regents v. Roth, 408 U.S. 564, 577 (1972)). Likewise, other cases cited by plaintiffs to support this argument (Pl. Memo. at 25-26) also relied upon due process analysis, not takings analysis. See, e.g., Smith v. Travis Co. Ed. Dist., 791 F. Supp. 1170, 1178 (W.D. Tex. 1992) (discussing Fifth and Fourteenth Amendment due process); Barr v. Preskitt, 389 F. Supp. 469, 498 (M.D. Ala. 1975) ("destruction of such a vested right is a violation of the due process clause").

[21] Noteworthy is that the district court analyzed the takings issue using the Penn Central three factor test, finding retroactive application of the Ohio statute interfered "with distinct investment-backed expectations." Greyhound Food Mgmt., 653 F. Supp. at 1220.

noted "[c]ourts which have addressed the specific issue of whether causes of action constitute property for purposes of the Taking Clause have split their conclusions." Greyhound Food Mgmt., 653 F. Supp. at 1218. In reaching its holding, the district court relied upon Sixth Circuit and Ohio law, which indicated that a cause of action based in tort is property. Id. at 1218-19. The Federal Circuit's holding that "a statutory right to be paid money, as least in the context of federal employee compensation and benefit entitlement statutes, is not a property interest for purposes of the Takings Clause," compels a different outcome than that reached by the district court in Greyhound Food Mgmt. See Adams, 391 F.2d at 1225.

As established in our opening brief, even if this Court were to determine plaintiffs had a vested property interest, the three Penn Central factors counsel against classifying the clarifying amendments to section 206(d) as a taking. Def. MTD at 29-31. Plaintiffs argue they have demonstrated a reasonable investment-backed expectation by pursuing the instant cause of action, relying on Patlex Corp. V. Mossinghoff, 758 F.2d 594, 602 (Fed. Cir. 1985). Pl. Memo. at 26-27. However, the Federal Circuit determined such an expectation was insufficient when it upheld the retroactive application of the patent statute in question, holding "that the overriding public purposes Congress articulated in enacting the reexamination law with retroactive effect are entitled to great weight, and that Congress did not act in an arbitrary and irrational way to achieve its desired purposes." Patlex Corp., 758 F.2d at 603. Furthermore, unilateral expectations of compensation are insufficient to justify a takings. See Adams, 391 F.3d at 1221 (rejecting plaintiffs takings claims because they "had nothing more than a unilateral expectation to receive" statutory compensation).

Because the Congress and the respective Service Secretary's consistent position has been that members of the Reserve Component, to include National Guard members, are not entitled to monetary benefits for completing correspondence courses, plaintiffs only had a unilateral expectation that they would receive compensation. See also S. Rep. No. 109-254, at 331-32 (2006). Plaintiffs argue that to determine they had no "'expectancy' in these circumstances would improperly reward the government for its own statutory breaches." Pl. Memo. at 27. In doing so, plaintiffs misquote a passage in Ulmet because their cited quotation has nothing to do with reasonable, investment-backed expectations. Pl. Memo. at 27 (quoting Ulmet v. United States, 17 Cl. Ct. at 697). The key distinguishing fact between this case and Ulmet was noted by the trial court directly following the language quoted by plaintiffs – whether Congress directed retroactive application. See id. Because the clarifying amendments to section 206(d) do contain such express language directing retroactive application of its provisions, a different result must be reached here.

**B. The Court Lacks Jurisdiction To Entertain Plaintiffs' Due Process Claims, And The Clarifying Amendments To Section 206(d) That Expressly Require Plaintiffs' Claims To Be Barred Are Consistent With Due Process Requirements**

Plaintiffs' response also asserts that retroactive application of the clarifying amendments would violate plaintiffs' due process rights. Pl. Memo. at 28-32. This argument fails because it is well-settled that the Due Process Clause of the Fifth Amendment is not money-mandating, and thus the Court must dismiss plaintiffs' Due Process claims for lack of jurisdiction. See Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997); Collins v. United States, 67 F.3d 284, 288 (Fed. Cir. 1995); Webster v United States, 74 Fed. Cl. 439, 445 (2006).

Moreover, even if the Court could consider these claims, plaintiffs argument here fails for several reasons. While defendant does not dispute that compensation for military pay already earned generally may not be withheld, Pl. Memo at 30 (citing Gonzales v. United States, 48 Fed. Cl. 176 (2000)), we strongly dispute that plaintiffs, here, have a vested right to pay. Instead, all they have is a potential cause of action. A cause of action however is, "inchoate and affords no definite or enforceable property right until reduced to final judgment." In re Consolidated United States Atmospheric Testing Litig., 820 F.2d at 989. A cause of action simply "represents a right to assert a claim" and "[i]ts value is contingent on successful prosecution to judgment" and "to the extent it is entitled to due process protection, that protection focuses on assuring access to fair procedures for its prosecution." Id. at 989-990 (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)). First, in this case, there is no final judgment in plaintiffs' favor. Second, plaintiffs have an opportunity, and in fact, are taking it now, to present their case before this Court.

Plaintiffs' cited cases do not support their argument that their right to pay for correspondence courses has vested. Pl. Memo. at 29-30. Unlike this case, Foley did not involve a dispute as to whether there was a right to pay, the dispute centered upon the amount of pay due and its holding offers no probative value to the issues in this case. Foley v. Carter, 526 F. Supp. 977 ( D.D.C. 1981). Moreover, the Supreme Court in Bowen found that there was no contractual right to withdraw from the social security system. Instead, the right was predicated upon the language of the statute itself and Congress had the right to change the statute. Bowen v. Public Agencies Opposed to Soc. Sec. Entrapment, 477 U.S. 41, 55 (U.S. 1986).

Plaintiffs misstate the rational purpose regarding due process requirements advanced by the Government in support of the clarifying amendments to section 206(d), arguing that the advanced purpose related to "Congress' 'authority to regulate military benefits.'" Pl. Memo. at 29. As we previously established, Congress has made clear that the amendments to section 206(d) were designed to remedy judicial rulings that would require inconsistent pay practice across military service components. See Def. MTD at 30, 31. Congress not only possessed a rational basis for the amendments, it was imperative for them to do so. See 10 U.S.C. § 10209. Additionally, we established that a clarification designed to remedy judicial rulings constituted a valid, rational purpose. Def. MTD at 27, (citing United States v. Sperry Corp., 493 U.S. at 64; Landgraf v. Usi Film Prods., 551 U.S. at 280). The service secretaries' consistent practice has been to deny compensation for correspondence courses to members of the Reserve Component, to include National Guard members not in Federal service. S. Rep. No. 109-254, at 331-32. Congress amended section 206(d) to state that the bar applied to National Guard members, and that this bar applied from the inception of the statute in 1962. It is a rational purpose to ensure all members of the Reserve Component are treated the same. Plaintiffs fail to address this rational purpose, but instead attempt to create a "straw-man" argument by misrepresenting the Government's argument concerning the passage of the FY 07 NDAA. Pl. Memo. at 29-30. Accordingly, the clarifying amendments to section 206(d) satisfy due process requirements.

Plaintiffs' argument that this amounts to the Government saying "[t]he joke is on you. You shouldn't have trusted us," is entirely off base. Pl. Memo. at 30-31 (citation omitted). As discussed above, the service secretaries have never represented that plaintiffs were entitled to compensation for the correspondence courses and have never promised compensation through

implementing regulations setting the requirements for such compensation. Cf. United States v. Larionoff, 431 U.S. 864 (1977) (discussing the repeal of a statute authorizing a reenlistment bonus after plaintiffs relied upon the availability of the bonus in reenlisting). Congress did not take away a vested right by clarifying that such a right was never intended and, therefore, never existed. Indeed, plaintiffs concede that a different conclusion might be reached if Congress had provided an alternative remedy for plaintiffs, Pl. Memo. at 31, but this also ignores that the Government has consistently provided plaintiffs benefits resulting from completing correspondence courses, including advancement, technical training, and retirement points. Pl. Compl. at 1, ¶ 1. Without the clarifying amendments to section 206(d), a small group of National Guard servicemembers would be treated differently than all other members of the Armed Forces, because they would receive compensation exclusively as a result of completing correspondence courses where all others do not. Cf. 10 U.S.C. § 10209 (requiring both Regular and Reserve servicemembers to be treated without discrimination). Contrary to plaintiffs' arguments, by restoring Congress' intent and the service secretaries' consistent practice, and ensuring all members of the Reserve Component are treated the same with regard to correspondence courses, Congress prevented a "manifest injustice."

## V. Section 206(d)'s Express Language Requires This Court To Bar Plaintiffs' Claims

In amending section 206(d) in the FY07 NDAA, contrary to plaintiffs' assertions (Pl. Memo. at 36-37), Congress added a retroactive provision that applied the bar to compensation amended in the FY06 NDAA. Pub. L. No. 109-364, § 607, 120 Stat. 2083, * (2006). This retroactive provision requires that the prohibition in section 206(d)(1) be applied to not only any work or study performed after the enactment of 37 U.S.C. § 206, but also to "any claim based on

work or study arising after that date." Id. It is not necessary to use the word "retroactive," because part (B) of paragraph three applies to "any claim" arising after the enactment of the original statute and is necessarily retroactive. If Congress had intended for the prohibition on compensation to apply "to any lawsuits asserting claims for compensation for correspondence coursework 'performed on or after September 7, 1962' that may be filed in the future," as claimed by plaintiffs (Pl. Memo. at 37) then there would have been no need to add part (B) of paragraph (3). Plaintiffs reading of the statute violates traditional rules of statutory interpretation as it makes part (B) of paragraph three entirely superfluous. See Goodman Mfg., L.P. v. United States, 69 F.3d 505, 510 (Fed. Cir. 1995) ("Congress is presumed not to have used superfluous language.").

Furthermore, as established in our opening brief, the Federal general savings statute, 1 U.S.C. § 109, does not rescue plaintiffs' claims, because: (1) by amending section 206(d), Congress did not repeal any statute, and (2) the clarifying amendments to section 206(d) included a retroactive provision which, thus, expressly provided that any liability incurred under the statute is extinguished. By prohibiting "any claim" since the enactment of the statute, the clarifying amendments necessarily extinguish plaintiffs' claims, and any liability that would result therefrom.

## CONCLUSION

For the reasons stated in our motion to dismiss, and above, we respectfully request the Court grant the Government's motion and dismiss plaintiffs' complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Deputy Director

s/ Douglas K. Mickle
DOUGLAS K. MICKLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel. (202) 307-0383
Fax (202) 353-7988

Attorneys for Defendant

OF COUNSEL:
LT. COL. JOSEPH FETTERMAN
MAJOR JERRETT DUNLAP
United States Army Litigation Division
Arlington, VA 22203-1837

TIMOTHY MALLOY
MAJOR TRACEY ROCKENBACH
United States Air Force
General Litigation Division

MAXIMINO GONZALEZ
National Guard Bureau
Office of Chief Counsel

March 26, 2007

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on March 26, 2007, a copy of the foregoing "**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS, AND OPPOSITION AND RESPONSE TO PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's System.

s/Douglas K. Mickle
Douglas K. Mickle