IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM A. CLARK, JAMES P. DAVERN, ROBERT E. FREEBURG, WILLIE R. JOHNSON, ROBERT A. MUSTIN, JOHN DOES 1 through 4, and JANE DOES 1 through 3, individually, and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | CASE NO. 00-644C (Judge Firestone) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF ITS OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Richard T. Dorman
CUNNINGHAM, BOUNDS, VANCE, CROWDER, and BROWN, LLC
1601 Dauphin Street
Mobile, Alabama 36660
Tel: (334) 471-6191
Fax: (334) 479-1031

Charles J. Cooper
David Thompson
COOPER & KIRK, P.L.L.C.
555 11th St, N.W. Suite 750
Washington, DC 2005
Tel: (202) 220-9600
Fax: (202) 220-9601

Helen K. Michael
Robert H. Shulman
John F. Stanton
Christina Fahmy
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 783-0800
Fax: (202) 383-6610

Counsel for Plaintiffs

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 3

II. THE GOVERNMENT'S JURISDICTIONAL CHALLENGES ARE WITHOUT MERIT ........................................................................................................ 3

III. RETROACTIVE APPLICATION OF THE 2007 NDAA AMENDMENT WOULD OFFEND SEPARATION OF POWERS PRINCIPLES ..................................... 4

A. Congress Cannot Enact Legislation that Effectively Dictates a Judgment in Favor of the Government ........................................................................... 4

B. The Government's Conflicting Arguments about the Effect of the 2007 NDAA Amendment Underscore that Its Position Lacks Merit ............................... 9

C. Congress Cannot Act Permissibly as a "Super-Appellate Court" ......................... 11

1. "Final Judgments" for Separation of Powers Purposes are Not Coterminous with "Final Judgments" for Purposes of Terminating All Further Litigation ................................................................. 11

2. Additional Considerations Counsel Adherence to the Law of the Case Established by the Federal Circuit's 2003 Decision ......................... 12

IV. RETROACTIVE APPLICATION OF THE 2007 NDAA AMENDMENT VIOLATES THE FIFTH AMENDMENT ............................................................ 14

A. Abolishing Plaintiffs' Claims Constitutes an Impermissible "Taking" ................. 14

1. Plaintiffs' Causes of Action Constitute a Protected Property Interest ............................................................................................ 15

2. Plaintiffs' Compensation Claims for Work Already Performed Are a Vested Right that Cannot be Taken Without Just Compensation ........... 17

3. A "Per Se" Takings Analysis Controls ..................................................... 21

B. Retroactive Application of the 2007 NDAA Amendment Would Violate Plaintiffs' Due Process Rights ................................................................... 24

V. ADDITIONAL CONSIDERATIONS PRECLUDE THE 2007 NDAA AMENDMENT FROM BEING APPLIED RETROACTIVELY ....................................25

A. The Federal Savings Statute Preserves the Liabilities ...........................................26

B. The 2007 NDAA Should Be Applied Only Prospectively ....................................27

## TABLE OF AUTHORITIES

### CASES

*Abrahim-Youri v. United States*, 139 F.3d 1462 (Fed. Cir. 1997) ....................16, 22, 24

*Adams v. United States*, 391 F.3d 1212 (Fed. Cir. 2004),
*cert. den.*, 546 U.S. 811 (2005) ....................15, 17, 18

*Alliance of Descends. of Tex. Land Grants v. United States*,
37 F.3d 1478 (Fed. Cir. 1994) ....................15, 16

*Am. Fed. of Gov. Empls. v. Campbell*, 474 F. Supp. 357 (D.D.C. 1979),
*aff'd in part, rev'd in part on other grounds*, 659 F.2d 157 (D.C. Cir. 1980) ....................17

*Armstrong v. United States*, 364 U.S. 40 (1960) ....................16

*Bank of Denver v. S.E.. Cap. Group, Inc.*, 789 F. Supp. 1092 (D. Colo. 1992) ....................8

*Berry v. Beech Aircraft Corp.*, 717 P.2d 670 (Utah 1985) ....................25

*Bowen v. Public Agencies Opposed to Social Security Entrapment*, 477 U.S. 41 (1986) ....................19

*Browning-Ferris, Inc. v. Manchester Borough*, 936 F. Supp. 241 (M.D. Pa. 1996) ....................18

*Califano v. Goldfarb*, 430 U.S. 199 (1977) ....................24

*Cameron v. United States*, 34 Fed. Cl. 422 (1995) ....................3

*Canonica v. United States*, 41 Fed. Cl. 516 (1998) ....................3

*Carleton Screw Products Co. v. Fleming*, 126 F.2d 537 (8th Cir. 1942) ....................19

*Casparian v. Allstate Insurance Co.*, 689 F. Supp. 1009 (N.D. Cal. 1988) ....................20

*Castro-Cortez v. I.N.S.*, 239 F.3d 1037 (9th Cir. 2001) ....................27

*Centre Bev. Co., Inc. v. Miller Brew. Co.*, 779 F.2d 168 (3d Cir. 1985) ....................27

*Cerro Metal Prods. v. Marshall*, 467 F. Supp. 869 (E.D. Pa. 1979),
*aff'd*, 620 F.2d 964 (3d Cir. 1980) ....................11, 12

*Cherry v. United States*, 640 F.2d 1184 (Ct. Cl. 1980) ....................19

*Clark v. United States*, 322 F.3d 1358 (Fed. Cir. 1993) ....................4, 13

*Coe v. Secretary of H.E.W.*, 502 F.2d 1337 (4th Cir. 1974) ....................14

*Cole v. University of Hartford*, 391 F. Supp. 888 (D. Conn. 1975)..............20

*Coltec Industries, Inc. v. United States*, 454 F.3d 1340 (Fed. Cir. 2006), *cert. denied*, 127 S. Ct. 1261 (2007)..............20

*Commonwealth Edison Co. v. United States*, 271 F.3d 1327 (Fed. Cir. 2001)..............21

*Commonwealth Edison Co. v. United States*, 46 Fed. Cl. 29 (2000), *aff'd*, 271 F.3d 1327 (Fed. Cir. 2001)..............4

*In re Consolidated U.S. Atmospheric Testing Litigation*, 820 F.2d 982 (9th Cir. 1987)..............16, 25

*Cook v. United States*, 855 F.2d 848 (Fed. Cir. 1988)..............17

*Coombes v. Getz*, 285 U.S. 434 (1932)..............15

*Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358 (1998)..............14

*DeVolld v. Bailar*, 568 F.2d 1162 (5th Cir. 1978)..............7

*Dockery v. Diguglielmo*, 2006 U.S. Dist. LEXIS 81003 (E.D. Pa. Oct. 19, 2006)..............10

*Donohoe v. Consolidated Operating & Products Corp.*, 30 F.3d 907 (7th Cir. 1994)..............13

*Ducharme v. Merrill-National Labs., Inc.*, 574 F.2d 1307 (5th Cir. 1978)..............25

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59 (1978)..............25

*E. Enters. v. Apfel*, 524 U.S. 498 (1998)..............15, 27

*Edwards v. Aguillard*, 482 U.S. 578 (1987)..............10

*E-Pass Technologies, Inc. v. 3Com Corp.*, 473 F.3d 1213 (Fed. Cir. 2007)..............13

*Ettor v. City of Tacoma*, 228 U.S. 148 (1913)..............15, 16

*Fireman v. United States*, 44 Fed. Cl. 528 (1999)..............4

*Fisk v. Jefferson Police Jury*, 116 U.S. 131 (1885)..............17, 19

*Foley v. Carter*, 526 F. Supp. 977 (D.D.C. 1981)..............19

*Gonzales v. United States*, 48 Fed. Cl. 176 (2000), *aff'd*, 275 F.3d 1340 (Fed. Cir. 2001)..............18, 19

*Greene v. United States*, 376 U.S. 149 (1964)..............16, 19

*Greyhound Food Management, Inc. v. City of Dayton*,
653 F. Supp. 1207 (S.D. Ohio 1986), *aff'd*, 852 F.2d 866 (6th Cir. 1988)............22, 23, 24, 25

*Hamm v. Rock Hill*, 379 U.S. 306 (1964)..........................................................................26

*Henderson v. Scientific-Atlanta, Inc.*, 971 F.2d 1567 (11th Cir. 1992)..........................................5

*Hendricks v. United States*, 210 Ct. Cl. 266 (1976)..........................................................................4

*Highland Supply Corp. v. Reynolds Metal Co.*, 245 F. Supp. 510 (E.D. Mo. 1965)......................20

*Holley v. United States*, 124 F.3d 1462 (Fed. Cir. 1997)..........................................................3

*Home Savings of America, F.S.B. v. United States*, 69 Fed. Cl. 187 (2005)................................13

*Hughes Aircraft Co. v. United States*, 86 F.3d 1566 (Fed. Cir. 1996)..........................................12

*Innovair Aviation, Ltd. v. United States*, 72 Fed. Cl. 415 (2006)..................................................22

*Jacklitch v. Redstone Federal Credit Union*, 463 F. Supp. 1134 (N.D. Ala. 1979)................17, 19

*Johnson v. HUD*, 911 F.2d 1302 (8th Cir. 1990)..........................................................................19

*Larionoff v. United States*, 533 F.2d 1167 (D.C. Cir. 1976), *aff'd*, 431 U.S. 864 (1977).............19

*Lechliter v. United States*, 70 Fed. Cl. 536 (2006)..........................................................................3

*Lee v. Coughlin*, 643 F. Supp. 546 (W.D.N.Y. 1986)..........................................................................19

*Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992)................................................22

*Maine v. Taylor*, 477 U.S. 131 (1986)..........................................................................................24

*Mallow v. United States*, 161 Ct. Cl. 446 (1963)..........................................................................3

*Michels v. United States*, 72 Fed. Cl. 426 (2006)..........................................................................21

*Nat'l Coalition to Save Our Mall v. Norton*, 161 F. Supp. 2d 14 (D.D.C.),
*aff'd*, 269 F.3d 1092 (D.C. Cir. 2001)..........................................................................5, 7

*Plaut v. Spendthrift Farms, Inc.*, 514 U.S. 211 (1995)..........................................................................7

*Pritchard v. Norton*, 106 U.S. 124 (1882)..........................................................................15

*PruneYard Shopping Center v. Robins*, 447 U.S. 74 (1980)..........................................................25

*Robertson v. Seattle Audubon Society*, 503 U.S. 429 (1992)........................................5, 7

*Rogers v. Tennessee*, 532 U.S. 451 (2001)........................................27

*Romstadt v. Apple Computer, Inc.*, 948 F. Supp. 701 (N.D. Ohio 1996)........................................18

*In re Rospatch Securities Litigation*, 802 F. Supp. 110 (W.D. Mich. 1992)........................................5

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984)........................................18

*St. Joseph Lead Co. v. Township of Potter*, 157 A.2d 638 (Pa. 1959)........................................11, 19

*Senate of Puerto Rico v. U.S. D.O.J.*, 1992 U.S. Dist. LEXIS 6380 (D.D.C. May 13, 1992).......13

*Shawnee Tribe v. United States*, 423 F.3d 1204 (10th Cir. 2005)........................................6

*Shelden v. United States*, 7 F.3d 1022 (Fed. Cir. 1993)........................................16

*Steinberg v. United States*, 163 F. Supp. 590 (Ct. Cl. 1958)........................................17, 20

*Suel v. Secretary of HHS*, 192 F.3d 981 (Fed. Cir. 1999)........................................12

*Swanson v. Bates*, 170 F.2d 648 (10th Cir. 1948)........................................25

*Twenty Per Central Cases*, 87 U.S. (20 Wall.) 179 (1874)........................................17, 19

*Ulmet v. United States*, 17 Cl. Ct. 679 (1989), *overruled on other grounds sub nom.* *Wilson v. United States*, 917 F.2d 529 (Fed. Cir. 1990), *aff'd sub nom.*, *Ulmet v. United States*, 935 F.2d 280 (table) (Fed. Cir. 1991)........................................13, 14

*United States v. Heth*, 7 U.S. (3 Cranch) 399 (1806)........................................17, 19

*United States v. Klein*, 80 U.S. (13 Wall.) 128 (1871)........................................4

*United States v. Larionoff*, 431 U.S. 864 (1977)........................................16

*United States v. Nixon*, 418 U.S. 683 (1974)........................................10

*United States v. Rohm & Haas Co.*, 500 F.2d 167 (9th Cir. 1974)........................................26

*United States v. Sioux Nation of Indians*, 448 U.S. 371 (1980)........................................4, 6, 7

*University of Texas v. Camenisch*, 451 U.S. 390 (1981)........................................11, 12

*Vance v. Southern. Bell Telephone & Telegraph Co.*, 983 F.2d 1573 (11th Cir. 1993)................10

*Wallace v. Jaffree*, 472 U.S. 38 (1985) .......... 10

*Weinberger v. Wiesenfeld*, 420 U.S. 636 (1975) .......... 24

*Whitney Benefits, Inc. v. United States*, 926 F.2d 1169 (Fed. Cir. 1991) .......... 15, 23

*Wilson v. United States*, 917 F.2d 529 (Fed. Cir. 1990) .......... 13

## STATUTES

1 U.S.C. § 109 .......... 26

37 U.S.C. § 206 (2006), *amended by* Pub. L. No. 109-364, § 607, 120 Stat. 2083 .......... 1, 2, 27

S. Rep. No. 109-254 (2006) .......... 10

## LAW REVIEW ARTICLES

William A. Fletcher, *Atomic Bowl Testing and the Warner Amendment: A Violation of the Separation of Powers*, 65 WASH. L. REV. 285 (1990) .......... 9

Note, *Is Purely Retroactive Legislation Limited by the Separation of Powers?: Rethinking United States v. Klein*, 79 CORNELL L. REV. 910 (1994) .......... 10, 11

## INTRODUCTION

The government's Response Brief (Doc. 148, filed 3/26/07; hereinafter "Br.") fails to establish that the 2007 NDAA Amendment provides grounds for dismissal of the instant action. Indeed, the government has not cited any case approving retroactive application of a statute in circumstances presented here.

The government continues to pursue unfounded jurisdictional challenges based on the claimed effect of the exclusion now contained in 37 U.S.C. § 206(d), as amended, notwithstanding that the Federal Circuit and Chief Judge Damich already rejected the substantively identical argument. The government's jurisdictional challenge to Plaintiffs' Due Process claim is similarly unsustainable in light of decisions of both the Federal Circuit and this Court.

The government's Response Brief likewise fails to reconcile retroactive application of the 2007 NDAA Amendment with separation of powers principles. Caselaw makes abundantly clear that the legislature may not enact legislation that effectively compels a court to enter a judgment on the merits in favor of the government in a pending case, as would the 2007 NDAA Amendment if applied retroactively. These same principles forbid the legislature from retroactively overruling a controlling appellate decision previously entered in a pending case, which necessarily would be the effect of retroactively applying the 2007 NDAA Amendment.

In addition to separation of powers principles, the government ignores Federal Circuit precedent calling for adherence to the "law of the case" doctrine—even if the underlying law has been changed. Moreover, the government is unable to rebut Plaintiffs'

showing that the "manifest injustice" exception likewise precludes retroactive application of the 2007 NDAA Amendment.

The government also fails to refute Plaintiffs' contentions that retroactive application of the 2007 NDAA Amendment would violate the Fifth Amendment by (1) "taking" Plaintiffs' property without just compensation, and (2) depriving Plaintiffs of Due Process of law. There is no merit to the government's contention that Plaintiffs' causes of action for payment for completing required correspondence coursework do not constitute "property." Because Plaintiffs' property has been completely destroyed, applying the 2007 NDAA Amendment retroactive would result in a "per se" taking without just compensation. The government also has not identified a rational purpose for the 2007 NDAA Amendment for Due Process purposes, and it most certainly has not identified any substitute remedy compensating for the loss of Plaintiffs' claims that could satisfy Due Process requirements.

Finally, the government hardly even attempts to respond to Plaintiffs' showing that the federal savings statute serves to preserve the government's preexisting liabilities to Plaintiffs under the pay statute because the 2007 NDAA Amendment does not expressly extinguish these liabilities. Moreover, the terms of the Amendment themselves do not satisfy the high burdens imposed by the Supreme Court for retroactive application.

Individually and collectively, the principles on which Plaintiffs have relied mandate that the 2007 NDAA Amendment cannot be retroactively applied to extinguish Plaintiffs' claims. Accordingly, the government's motion to dismiss should be denied and Plaintiffs' cross-motion should be granted.

## ARGUMENT

## II. THE GOVERNMENT'S JURISDICTIONAL CHALLENGES ARE WITHOUT MERIT

The government does not dispute that this Court has subject matter jurisdiction over Takings Claims brought against the United States under the Fifth Amendment. Plaintiffs Opening Brief (hereinafter "Pl. Br.") at 9. As previously discussed (Pl. Br at 8-9), the government's argument that 37 U.S.C. § 206(d) as amended precludes compensation to Plaintiffs provides no support for its contention that the statute is not money-mandating. *See* Br. at 2-3. As both the Federal Circuit and Chief Judge Damich have ruled in rejecting this very same argument that this exclusion precludes compensation, such contentions go to the merits of the dispute and have no bearing on the jurisdictional analysis.

In an equally misguided gambit, the government (Br. at 26) now challenges jurisdiction over Plaintiffs' Fifth Amendment Due Process claim. Even if the Due Process Clause is not money-mandating standing alone, this Court has jurisdiction to consider Due Process claims that are "part of" a "money-mandating claim" and "that are relevant to claims for monetary relief." *Lechliter v. United States*, 70 Fed. Cl. 536, 544 (2006) (Firestone, J.) (denying motion to dismiss Due Process claim for lack of jurisdiction), *reconsidered on other grounds,* 72 Fed. Cl. 17 (2006).[1] Section 206(a) is a money-

[1] *See also Holley v. United States,* 124 F.3d 1462, 1465-66 (Fed. Cir. 1997) (considering Due Process claim for military backpay); *Mallow v. United States*, 161 Ct. Cl. 446, 454 (1963) ("it seems that the plaintiff's claim for the recovery of the money that was taken from him by the Government without due process of law may properly be regarded as one 'founded ... upon the Constitution'"); *Canonica v. United States,* 41 Fed. Cl. 516, 524 (1998) ("While we agree that the Due Process Clause, standing alone, is not money-mandating, we nonetheless have jurisdiction over this aspect of plaintiff's cause of action based on his statutory right to pay"); *Cameron v. United States,* 34 Fed. Cl. 422, 427 n.10 (1995) ("[T]he pay statutes are the only necessary requisite to jurisdiction. Once jurisdiction attaches, the serviceman can argue that his deprivation of pay was improper for various reasons, including an infringement of constitutional rights.").

mandating statute. *E.g., See Clark v. United States*, 322 F.3d 1358, 1363 (Fed. Cir. 2003), *aff'g in part and rev'g in part on other grounds*, 50 Fed. Cl. 727, 729 (2001). Because retroactive application of the 2007 NDAA Amendment to that statute violates Due Process, Plaintiffs can pursue their claims for money damages if the Amendment is given retroactive effect. *Cf. Hendricks v. United States*, 210 Ct. Cl. 266, 283 n.16 (1976) (similar).

This Court also has jurisdiction to consider Due Process claims when the government has made an "illegal exaction" of the claimants' money. *See Com. Edison Co. v. United States*, 46 Fed. Cl. 29, 43 (2000) ("this court has jurisdiction to consider whether the special assessment is an illegal exaction violative of the Due Process Clause, despite the fact that that clause does not contain compensation mandating language"), *aff'd*, 271 F.3d 1327 (Fed. Cir. 2001). "[A]n illegal exaction has occurred when the Government has the citizen's money in its pocket." *Fireman v. United States*, 44 Fed. Cl. 528, 536 (1999) (citation omitted). Just such circumstances have occurred here.

## III. RETROACTIVE APPLICATION OF THE 2007 NDAA AMENDMENT WOULD OFFEND SEPARATION OF POWERS PRINCIPLES

### A. Congress Cannot Enact Legislation that Effectively Dictates a Judgment in Favor of the Government

As fully explained in Plaintiffs' Opening Brief (at 10-15), separation of powers principles forbid Congress from enacting legislation that effectively orders a court to enter judgment in the government's favor. *See United States v. Klein*, 80 U.S. (13 Wall.) 128, 146-47 (1871); *accord United States v. Sioux Nation of Indians*, 448 U.S. 371, 405 (1980) (observing that "of obvious importance to the *Klein* holding was the fact that Congress was attempting to decide the controversy at issue in the Government's own favor"). The government acknowledges (as it must) that "*Klein* prohibits Congress from prescribing a rule of decision in a case pending before the courts in a manner that requires the courts to

decide a controversy in the government's favor." (Br. at 5). There is no merit to the government's attempt to avoid application of the separation of powers principles articulated by *Klein* here.

The government erroneously contends (Br. at 6-7) that these principles do not apply to any case in which a statutory amendment or repeal is being challenged. No such limitation is expressed anywhere in *Klein*, and such a limitation would effectively nullify the constitutional constraints delineated in that case by permitting Congress to retroactively overrule a judicially established rule governing resolution of a pending case against the government simply by denominating the statute directing the new rule of decision to be an "amendment."[2]

*Robertson v. Seattle Audubon Soc.*, 503 U.S. 429 (1992), does not support the limitation on separation of powers principles that the government advocates. *Robertson* did not involve a situation in which application of the legislation at issue would require the court to dismiss the action with prejudice, and *Klein* only comes into play when the new legislation requires the court to enter judgment in favor of the government *on the merits* of the case. *See, e.g., Nat'l Coalition to Save Our Mall v. Norton*, 161 F. Supp.2d 14, 22-23 & n.6 (D. D.C.) (explaining that *Klein* is implicated only when legislation requires a court to enter judgment for government on the merits; legislation that requires dismissal of suit on procedural grounds does not offend *Klein*), *aff'd,* 269 F.3d 1092 (D.C. Cir. 2001);

[2] The government also erroneously insinuates (Br. at 7) that *Klein* is no longer good law. *Klein* certainly has never been overruled, and if there is any situation in which *Klein* retains vitality, it is the case *sub judice*. *Cf. In re Rospatch Sec. Litig.*, 802 F. Supp. 110, 114 (W.D. Mich. 1992) (rejecting argument that *Klein* has been overruled); *Henderson v. Scientific-Atlanta, Inc.*, 971 F.2d 1567, 1575-76 (11th Cir. 1992) (Wellford, J., dissenting) (legislation "designed to affect pending litigation and to overrule Supreme Court decisions" violates *Klein*).

*accord Sioux Nation,* 448 U.S. at 406-07. The new legislation in *Robertson* involved a change in statutory logging and harvesting standards that applied prospectively to timber sales that had not yet been made and "***temporarily*** superseded all statutes on which the plaintiffs' challenges had been based." 503 U.S. at 435 (emphasis added). Because the effect of the new legislation was only to vacate a preliminary injunction, the district court retained jurisdiction to address future alleged violations of the harvesting and logging standards. *See id.* at 436. Moreover, the new statute did not "instruct courts" as to the lawfulness of any proposed timber sale. *Id.* at 438-39. For challenges to sales offered before or after fiscal year 1990, the new statute "expressly provided for [a] *judicial* determination" of "lawfulness;" for sales during fiscal year 1990, the statute similarly expressly reserved judgment upon "'the legal and factual adequacy'" of the authorizing administrative documents." *Id.* at 438-49 (emphasis in original). Thus, the *Robertson* legislation left for the merits of the underlying dispute for future judicial determination.

*Shawnee Tribe v. United States,* 423 F.3d 1204 (10th Cir. 2005), also is inapposite. In that case, there had been no judicial decision establishing an entitlement to relief under any preexisting statutory scheme. To the contrary, the trial court had ruled that the claimants were not entitled to the requested transfer of property because their rights had been terminated by a 1854 treaty. *See id.* at 1211. While the case was on appeal, legislation was enacted that gave the Secretary of the Army discretion to convey the property to other specified entities. *Id.* at 1208. Unlike the 2007 NDAA Amendment, this new legislation did not dictate a rule of decision conflicting with a judicial rule already established in the case. Rather than compelling a judgment in the government's favor on

the merits, the challenged legislation established only that there was no longer a live controversy before the court. *See id.* at 1212-13.[3]

*Plaut v. Spendthrift Farms, Inc.*, 514 U.S. 211 (1995), which was quoted in *Shawnee Tribe*, also does not support the government's position. *Plaut* ruled that a statute that sought to reopen a final judgment ***violated separation of powers principles***. *Plaut* certainly did not embrace the government's theory that Congress has carte blanche to override an appellate decision and dictate a contrary result in the government's favor in pending litigation by retroactively amending a statute.

In contrast to the statutes challenged in both *Robertson* and *Shawnee Tribe*, retroactive application of the 2007 NDAA Amendment would require a judgment to be entered in the government's favor on the merits of Plaintiffs' claims. There would be no possibility of any future litigation—the 2007 NDAA Amendment would retroactively eliminate plaintiffs' entitlement to compensation for required correspondence coursework pursuant to the Federal Circuit's decision, and, thereby, would require this Court to enter a judgment in the government's favor dismissing this action with prejudice. This result is precisely what *Klein* prohibits. *See, e.g., Nat'l Coalition to Save our Mall,* 161 F. Supp.2d at 22 (*Klein* violated when Congress tries "to use its authority to force the court to rule in favor of the government"); *accord Sioux Nation,* 448 U.S. at 398 (a "legislative direction to

[3] A dismissal based upon mootness is not a judgment on the merits of a dispute, and the aggrieved party remains free to file another suit on a future date when the controversy becomes live again. *See, e.g., DeVolld v. Bailar,* 568 F.2d 1162, 1165-66 (5th Cir. 1978) ("the holding of mootness is not a judgment on the merits and, as a nonmerits judgment, it does not bar further action on any matters not actually adjudged"). The government is incorrect when it suggests (Br. at 16) that the 2007 NDAA Amendment would "moot" this lawsuit. If the 2007 NDAA Amendment is applied as the government contends, then it would compel a judgment in favor of the government on the merits. For separation of powers purposes, this is an important distinction. *See Nat'l Coalition to Save Our Mall,* 161 F. Supp.2d at 22-23 & n.6.

a court to find a judgment in a certain way would be little less than a judgment rendered directly by Congress") (quotation omitted).

The government erroneously contends that the 2007 NDAA Amendment does not "direct any particular findings of fact or applications of law, old or new, to fact." Br. at 9 (quoting *Robertson*, 503 U.S. at 437). There is no requirement that the direction to enter the judgment in favor of the government be express. *See, e.g., Bank of Denver v. S.E. Capital Group, Inc.*, 789 F. Supp. 1092, 1097 (D. Col. 1992) (rejecting argument that *Klein* is implicated only when "new" legislation explicitly directs court to dismiss lawsuit); Pl. Br. at 15 (additional authorities).[4] Moreover, the government affirmatively argues that Congress specifically targeted the instant lawsuit and intended to dictate a judgment in its own favor when it enacted the 2007 NDAA Amendment.[5]

The Federal Circuit's 2003 decision mandates that Plaintiffs are entitled to compensation under § 206 for completing required correspondence coursework. The 2007 NDAA Amendment conversely dictates that guard members cannot be compensated for precisely such correspondence coursework. The Amendment thereby effectively mandates a judgment in the government's favor in this lawsuit in violation of *Klein*. As Judge

[4] The government also claims (Br. at 7) that *Bank of Denver* somehow supports its contention that Congress can dictate a result in favor of the government in pending litigation so long as it denominates the statute retroactively overruling the contrary judicial decision to be an amendment. But *Bank of Denver*, which invalidated a statute on separation of powers grounds, makes clear that legislation cannot constitutionally target specific litigation for the purpose of directing a particular result. *See* 789 F. Supp. at 1097.

[5] *See* Gov't Opening Br. (Doc. No. 141, filed 1/5/07) at 8 ("Although the Federal Circuit determined that Congress did not intend for section 206(d) to apply to National Guard members, Congress immediately responded to the Federal Circuit's decision by clarifying its intent that that bar did indeed apply to National Guard members"); Br. at 16 ("Congress amended 37 U.S.C. § 206(d) . . . to moot this lawsuit prior to final adjudication of plaintiff's claims"). As discussed *supra* fn 3, the government's suggestion that the 2007 NDAA Amendment would simply "moot" the instant lawsuit is incorrect.

Fletcher observed, when Congress has acted in such a manner, the separation of powers violation is "obvious." *See* Fletcher, *Atomic Bowl Testing and the Warner Amendment: A Violation of the Separation of Powers*, 65 WASH. L. REV. 285, 317 (1990).

**B. The Government's Conflicting Arguments about the Effect of the 2007 NDAA Amendment Underscore that Its Position Lacks Merit**

In previous filings with this Court, the government repeatedly insisted that the 2007 NDAA Amendment did not change the law, but instead merely "clarified" § 206.[6] Plaintiffs' Opening Brief (at 14-15) discussed numerous decisions holding that a separation of powers violation occurs when a statute enacted after a judicial decision attempts, rather than changing the underlying law, to retroactively impose the legislature's statutory interpretation on the judiciary.

The government has not contested this well-settled principle. Instead the government has reversed course and now takes the position that the 2007 NDAA Amendment changed rather than just "clarified" the law. *See, e.g.*, Br. at 4 ("the [2007 NDAA Amendment] is simply a substantive procedural change in the law"); *id* at 7 (the 2007 NDAA Amendment "nevertheless constitute[s] a technical change in the law"); *id.* at 9 ("Here, however, the [2007 NDAA Amendment] constitute[s] a change in the law"); *id.*

[6] *See, e.g.*, Gov't Opening Br. at 5 ("Responding to the Federal Circuit's decision in this case, Congress clarified section 206(d)"), *id.* at 6 (2007 NDAA was a "further clarification"); *id.* at 8 ("Congress clearly stated that the amendments to section 206(d) were technical in nature and were designed to clarify its longstanding legislative intent . . . that such compensation was not authorized"); *id.* at 15 ("Congress made it clear that both the FY 06 NDAA and the FY 07 NDAA were technical amendments that merely clarified the legislative intent of the original unamended version of section 206 at issue in the Federal Circuit's opinion"); *id.* ("The legislative history also demonstrates that the amendments were designed to clarify Congress' intent"); *id.* at 18 (2007 NDAA Amendment was "a clarifying amendment"); *id.* at 31 ("the Government maintains that the FY 06 NDAA and FY 07 NDAA were simply clarifications of the original congressional intent"); *see also* Doc. 130, Defendant's Second Notice of Supplemental Authority (filed 10/18/06) at 1 ("Congress set forth clarifying language regarding section 206, title 37").

at 16 ("The congressional clarification of section 206(d) constitutes a change to the controlling legal authority").

The government attempts to reconcile its inconsistent positions by suggesting that § 206 somehow was changed only "from the Federal Circuit's perspective." Br. at 7; *see also id.* at 9 (similar). But the Federal Circuit's "perspective" did not change § 206 in any way. Rather, the Court interpreted the statute as it existed at the time Plaintiffs' work was performed. *See Dockery v. Digugliemo*, 2006 U.S. Dist. LEXIS 81003, at *24 (E.D. Pa. Oct. 19, 2006) ("The court does not 'change' the law when it interprets a statute for the first time"); *cf. Vance v. S. Bell Tel. & Tel. Co.*, 983 F.2d 1573, 1579 (11th Cir. 1993) (a court's "role in statutory interpretation is to uphold legislative intent, not to make new law").[7]

The government's about-face cannot serve to rehabilitate its argument for retroactive application of the 2007 NDAA Amendment. The Senate Report upon which the government has relied also expressly states that the 2007 NDAA Amendments did not change the law. *See* S. REP. NO. 109-254, at 331-32 (2006) (*quoted in* Pl. Br. at 13). Whether the NDAA is denominated a change or a clarification, the Report evinces an attempt to foist Congress' own interpretation of § 206 onto the judiciary. *Cf. Edwards v. Aguillard*, 482 U.S. 578, 585 (1987) (examining legislative history to find constitutional violations); *Wallace v. Jaffree*, 472 U.S. 38, 57-59 (1985) (same); Note, *Is Purely Retroactive Legislation Limited by the Separation of Powers? Re-thinking United States v.*

[7] The government criticizes (Br. at 8 n.4) Plaintiffs for relying on "dated" cases for the proposition that the judiciary "says what the law is." Plaintiffs relied on those cases (Pl. Br. at 13-14) because they recited bedrock principles that have supported our system of government for over two centuries. *Cf. United States v. Nixon,* 418 U.S. 683, 703 (1974) ("Many decisions of this Court, however, have unequivocally reaffirmed the holding of *Marbury v. Madison* . . . that '[it] is emphatically the province and duty of the judicial department to say what the law is.'") (citation omitted).

*Klein*, 79 CORNELL L. REV. 910, 969 (1994) ("[B]y examining the legislature's motive, the court may assess the degree to which Congress is attempting to usurp the judicial function, as feared by Justice Chase in *Klein*") (footnote omitted). However the 2007 NDAA Amendment is denominated, the retroactive application of such "interpretive" legislation offends separation of powers principles. As one court once cogently explained:

> It is elementary that the legislature cannot create authority retroactively simply by passing "clarifying" legislation. The intent of the legislature must be determined as of the time the original act was passed. If anything, the [clarified] Act indicates that the previous statute meant the exact contrary.

*St. Joseph Lead Co. v. Township of Potter*, 157 A.2d 638, 642 (Pa. 1959); *see also* Pl. Br. at 14-15 (discussing additional authorities).

### C. Congress Cannot Act Permissibly as a "Super-Appellate Court"

#### 1. "Final Judgments" for Separation of Powers Purposes are Not Coterminous with "Final Judgments" for Purposes of Terminating All Further Litigation

The government erroneously contends (Br. at 9-10) that the Federal Circuit's 2003 decision does not qualify as final for separation of powers principles. In essence, the government contends that a "final judgment" for purposes of separation of powers analysis necessarily must be a final judgment for purposes of disposing of an action.

Contrary to that contention, an interlocutory judgment that does not dispose of an entire action is also subject to separation of powers analysis. *See, e.g., Cerro Metal Prods. v. Marshall,* 467 F. Supp. 869, 876-79 (E.D. Pa. 1979), *aff'd,* 620 F.2d 964 (3d Cir. 1980). In *Cerro Metal,* the district court entered a preliminary injunction precluding the Secretary of Labor from conducting warrantless searches of workplaces. *Id.* at 872. This judgment, by its nature, did not dispose of the entire controversy. *Cf. Univ. of Tex. v. Camenisch,* 451 U.S. 390, 394 (1981) (noting that grant of a preliminary injunction is not dispositive in later

stages in proceeding). Rather than appealing that judgment, the Secretary of Labor promulgated a regulation effectively overruling the judgment and the Supreme Court decision upon which it was based. *Cerro Metal,* 467 F. Supp. at 872-73. The court held in no uncertain terms: "If the Secretary were able (a) to issue a regulation which purported to overrule an inconsistent judicial ruling, and (b) insist that the ex post administrative interpretation was entitled to 'controlling' weight with retrospective force, the finality and independence of judicial action would be in jeopardy." *Id.* at 877 (citation omitted). The same reasoning applies here with respect to the 2007 NDAA Amendment.

### 2. Additional Considerations Counsel Adherence to the Law of the Case Established by the Federal Circuit's 2003 Decision

The government insists (Br. at 10) that it may still seek Supreme Court review of the Federal Circuit's 2003 decision. The government's argument ignores contrary Supreme Court precedents. *See* Pl. Br. at 21 (citing cases). But even if there were some theoretical possibility of Supreme Court review at some later date of the 2003 decision, compelling reasons remain for adhering to the law of the case doctrine established by that decision.

The government ignores Federal Circuit authority establishing that new legislation does not constitute a "sufficient justification" for departing from the law of the case when the Court is presented with "a close case" in which "reasonable minds could differ on the proper outcome[.]" *Hughes Aircraft Co. v. United States,* 86 F.3d 1566, 1577 (Fed. Cir. 1996); *see also Suel v. Sec'y of HHS,* 192 F.3d 981, 985 (Fed. Cir. 1999) (following *Hughes Aircraft*). The government also has no response to Federal Circuit precedent counseling in favor of adherence to the "law of the case" when the disappointed party chose not to exhaust appellate remedies. *See Suel,* 192 F.3d at 986 & n.2. Indeed, the government admits (Br. at 12 & n.8) that "an inferior court" generally "has no power or

authority to deviate from the mandate issues by an appellate court," and that only "exceptional circumstances" justify deviating from the mandate rule.[8]

It is equally clear that this Court may also adhere to previous rulings notwithstanding new legislation to prevent a "manifest injustice." *See Ulmet,* 17 Cl. Ct. at 696 ("the plaintiff in the instant case strikes this court as precisely the type of plaintiff foreseen in the manifest injustice exception"). The instant case presents a paradigmatic one for applying the "manifest injustice" rule.

The government devotes nearly four pages of its reply brief (at 13-16) to an unsuccessful attempt to show that the considerations calling for application of the "manifest injustice" rule applied in *Ulmet* are supposedly absent from this case. The government invokes an irrelevancy in arguing that the 2003 Federal Circuit decision did not determine that Plaintiffs took required correspondence courses: the Federal Circuit's mandate in that decision unequivocally remanded the case for a determination of that issue and directed that § 206(a) requires compensation for such required correspondence coursework. *See Clark,* 322 F.3d at 1368; *see also* Pl. Br. at 20 n.9. There is equally no merit to the government's contention that retroactive application of the 2007 NDAA

[8] Accordingly, this Court unquestionably retains the power to deny the government's motion to dismiss and to direct the government to pursue its purported "appellate rights" from this Court's decision. *See, e.g., Home Sav. of Am., F.S.B. v. United States*, 69 Fed. Cl. 187, 192 (2005) (employing similar procedure). *Cf. Ulmet v. United States,* 17 Cl. Ct. 679, 690 (1989) (noting that "arguments in support of departure from the appellate court's judgment issued as a mandate generally should be addressed to the appellate court"), *overruled on other grounds, Wilson v. United States,* 917 F.2d 529 (Fed. Cir. 1990), *aff'd, Ulmet v. United States*, 935 F.2d 280 (table) (Fed. Cir. 1991); *Senate of Puerto Rico v. U.S. Dep't of Justice*, 1992 U.S. Dist. LEXIS 6380, at *13 n.7 (D.D.C. May 13, 1992) (same); *accord E-Pass Techs., Inc. v. 3Com Corp.,* 473 F.3d 1213, 1217-18 (Fed. Cir. 2007) ("Once a case has been decided on appeal, the rule adopted is to be applied, right or wrong, absent exceptional circumstances, in the disposition of the lawsuit."); *Donohoe v. Consolidated Operating & Prods. Corp.,* 30 F.3d 907, 910 (7th Cir. 1994) (lower court should carry out the mandate, even if it believes the mandate is wrong).

Amendment would not result in a manifest injustice. The government cannot dispute that retroactive application of this Amendment would deprive Plaintiffs of the right to compensation for required correspondence coursework that was long ago completed, and *Ulmet* and other cases make clear that such a deprivation of rights would cause in a manifest injustice. *See* 17 Cl. Ct. at 695-96; *Coe v. Sec. H.E.W.,* 502 F.2d 1337, 1340 (4th Cir. 1974) ("Application of the current regulations in this instance constitutes a prohibited interference with Mrs. Coe's antecedent right to reimbursement at the time the services were rendered. Divestiture of this matured right is a type of manifest injustice which the exception is designed to prevent.") (citation omitted); Pl. Br. at 31-32 & n.16 (additional authorities).

## IV. RETROACTIVE APPLICATION OF THE 2007 NDAA AMENDMENT VIOLATES THE FIFTH AMENDMENT

### A. Abolishing Plaintiffs' Claims Constitutes an Impermissible "Taking"

Plaintiffs' Opening Brief fully explained why retroactive application of the 2007 NDAA Amendment presents all of the factors establishing a taking. The government's contrary arguments are premised either upon caselaw that is inconsistent with U.S. Supreme Court and Federal Circuit precedent or a mischaracterization of the "property" at issue.[9]

[9] The government suggests (Br. 17) that there can be no takings in this case because the 2007 NDAA Amendment is "unauthorized." The very cases cited by the government make clear that the "unauthorized conduct" exception only applies "when a government official engages in ultra vires conduct." *See, e.g., Del-Rio Drilling Programs, Inc. v. United States,* 146 F.3d 1358, 1365, 1362 (1998) (explaining that it is difficult to imagine a more authorized government action than duly enacted Congressional legislation. The fact that retroactive application of the 2007 NDAA Amendment would be unconstitutional certainly does not mean that the Amendment was "unauthorized." Takings claims, by definition, arise when Congress has unconstitutionally deprived a claimant of its property without just compensation.

### 1. Plaintiffs' Causes of Action Constitute a Protected Property Interest

The government cannot dispute that the Federal Circuit and the Supreme Court both unequivocally have ruled that a vested cause of action constitutes "property" under the Fifth Amendment that cannot be taken without just compensation. *See, e.g., Alliance of Descendants of Tex. Land Grants v. United States,* 37 F.3d 1478, 1481 (Fed. Cir. 1994) ("Because a legal cause of action is property within the meaning of the Fifth Amendment, claimants have properly alleged possession of a compensable property interest") (citations omitted).[10] *See also Coombes v. Getz,* 285 U.S. 434, 442 (1932) (statute that repeated the statutory basis for accrued causes of action of corporate creditors for debts was unconstitutional); *Ettor v. City of Tacoma,* 228 U.S. 148, 155-56 (1913) (legislation that repealed act authorizing payment for grading work after railroad filed suit demanding payment for work was unconstitutional); *Pritchard v. Norton,* 106 U.S. 124, 132 (1882) ("[A] vested right of action is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference"); Pl. Br. at 22-23 (citing additional authorities).[11]

---

[10] Contrary to the government's contention (Br. at 22 n.16), *Alliance of Descendants* expressly held that causes of action constitute compensable property under the Fifth Amendment.

[11] The government's suggestion (Br. at 18 n.11) that the underlying property interest must be "real or personal" is baseless. Indeed, *Adams v. United States*, upon which the government heavily relies, states that "[p]roperty interests may be real and personal, tangible and intangible, possessory and nonpossessory." 391 F.3d 1212, 1219 (Fed. Cir. 2004), *cert. denied,* 546 U.S. 811 (2005); *see also E. Enters. v. Apfel,* 524 U.S. 498, 523 (1998) (plurality opinion) (company's "assets" [i.e., money] constituted property within the meaning of Takings Clause). Moreover, the government misstates the holding of *Whitney Benefits, Inc. v. United States,* 926 F.2d 1169 (Fed. Cir. 1991). The recognized Fifth Amendment property interest in that case was not "mineral rights." Rather, it was the right to perform the act of mining. *See id.* at 1172 ("the *only* property here involved is the right to surface mine a particular deposit of coal") (emphasis in original).

The Ninth Circuit case upon which the government relies to argue that a cause of action does not vest until final judgment has been entered for the claimant is of no assistance. *See* Br. at 27 (citing *In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982 (9th Cir. 1987)); *see also* Br. at 24-25 (noting existence of split on issue). That decision is contrary to controlling Federal Circuit and the Supreme Court precedent establishing that a final judgment is not required for the vesting of a cause of action. *See Ettor*, 228 U.S. at 156 (Plaintiffs' claim "was in every sense a property right . . . . [It] was fixed by the law in force when their property was damaged for public purposes, and the right so vested cannot be defeated by subsequent legislation."); *Alliance of Descendants*, 37 F.3d at 1481 (claims were "compensable property interest" even though they were barred by statute of limitations); *Abrahim-Youri v. United States*, 139 F.3d 1462, 1465 (Fed. Cir. 1997) (causes of action were "property rights" even though they had not been resolved by final judgment); Pl. Br. at 24-25 (citing numerous additional cases holding that final judgment is not necessary for cause of action to vest); *see also Shelden v. United States*, 7 F.3d 1022, 1028 (Fed. Cir. 1993) (noting that "[t]he Supreme Court found a compensable taking in *Armstrong* [*v. United States*, 364 U.S. 40 (1960)] even though the plaintiffs had never attached the property in question").

Under the principles employed in this Supreme Court and Federal Circuit precedent, Plaintiffs' causes of action accrued and, therefore, vested for Fifth Amendment purposes as early as the time when they were not paid for completing particular required correspondence courses. *See, e.g., United States v. Larionoff*, 431 U.S. 864, 877, 879 (1977) (holding that service members had a vested right to statutory reenlistment bonus in effect at the time they agreed to reenlist); *Greene v. United States*, 376 U.S. 149, 160

(1964) (government employee's rights to compensation "matured and were asserted" prior to implementation of regulation reducing payment); *Fisk v. Jefferson Police Jury,* 116 U.S. 131, 133-34 (1885) (state workers possessed vested interest in compensation after services performed); *Twenty Per Cent Cases,* 87 U.S. 179, 186 (1873) (government employees' right to compensation became vested when work was performed); *United States v. Heth,* 7 U.S. 399, 414 (1806) (Cushing, J.) (customs collectors must receive their commissions at prior rate for goods that were bonded before Congress lowered the rate); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988).[12] The law is crystal clear that legislation that retroactively abolishes vested (i.e. accrued) causes of action violates the Fifth Amendment. *See* Pl. Br. at 24-26 (citing authorities). Accordingly, the retroactive elimination of Plaintiffs' causes of action constitutes an unlawful taking without just compensation.

### 2. Plaintiffs' Compensation Claims for Work Already Performed Are a Vested Right that Cannot be Taken Without Just Compensation

There also is no merit to the government's alternative argument that Plaintiffs' causes of action here do not constitute protected property rights because no protectable interest underlying those causes of action supposedly exists. That argument depends upon a misreading of the Federal Circuit's decision in *Adams*.

---

[12] *See also Am. Fed'n of Gov't Employees v. Campbell,* 474 F. Supp. 357, 360 (D.D.C. 1979) ("for this Court to allow defendants to deprive plaintiffs of pay due for services already performed but still owing would present serious Constitutional questions"), *aff'd in part, rev'd in part on other grounds,* 659 F.2d 157 (D.C. Cir. 1980); *Steinberg v. United States,* 163 F. Supp. 590, 594 (Ct. Cl. 1958) (Whitaker, J., concurring) (compensation for work already performed is a vested right and Congress cannot retroactively eliminate the right to pay for such work); Pl. Br. 29-30 (citing additional cases).

The government seeks to discount (Br. at 23) similar reasoning in *Jacklitch v. Redstone Fed. Credit Union,* 463 F. Supp. 1134 (N.D. Ala. 1979) as dicta. While *Jacklitch* based its non-retroactivity decision on other grounds, it expressed approval of the constitutional grounds. *See id.* at 1139 n.2.

*Adams* addressed a very different situation in which there had been no adjudication of plaintiffs' administrative claim for overtime compensation at the time the challenged legislation was passed shortening the statute of limitations for bringing such administrative claims. *See* 391 F.3d at 1215, 1225. The *Adams* court's ruling that plaintiffs had no protected property right in an unadjudicated administrative claim provides no support for the government's contention that Plaintiffs have no protected property right in their adjudicated cause of action. Indeed, unlike the scores of cases recognizing that causes of action do constitute protected property rights, *Adams* emphasized the absence of "precedent finding such a property interest in a claim of Government liability before an administrative agency." *Id.* at 1226.[13] Also unlike *Adams*, the Federal Circuit's 2003 decision holding that § 206(a) mandates payment for required correspondence coursework served to confirm that Plaintiffs have a protected property right in their causes of action under § 206(a). *See, e.g., Romstadt v. Apple Computer, Inc.*, 948 F. Supp. 701, 704 (N.D. Ohio 1996) (judicial decision in plaintiff's favor constitutes a property interest that elevates claim beyond unilateral expectation); *Browning-Ferris, Inc. v. Manchester Borough*, 936 F. Supp. 241, 247 (M.D. Pa. 1996) (recognizing that court opinions interpreting law create property interests). *Cf. Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001 (1984) (Fifth Amendment property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source").

In contrast to *Adams*, this case accordingly involves "service member[s]" who were, "by statute, given a vested right to payment that was then revoked." *Gonzales v. United States*, 48 Fed. Cl. 176, 180 (2000) (Firestone, J.), *aff'd*, 275 Fed Cir. 1340 (Fed. Cir.

---

[13] *Adams* also noted that the appellants "devoted little attention to this issue" and that the Court considered it a "secondary argument." 391 F.3d at 1225 n.8.

2001). To the extent that the government continues to insist that § 206(a) was never intended to entitle Plaintiffs to compensation, and that the 2007 NDAA Amendment is somehow proof of such intent, the government overlooks that a change to legislation "indicates that the previous statute meant the exact contrary." *St. Joseph Lead,* 157 A.2d at 642; *see also Johnson v. H.U.D.*, 911 F.2d 1302, 1310-11 (8th Cir. 1990) ("if Congress intended to change the law rather than clarify it, the previous statute meant exactly the contrary of the amended provision") (citation omitted).

*Adams* also is inapposite because it involved an attempt to recover "gratuity" compensation (specifically, overtime pay). *See* 391 F.3d at 1220 n.4. There is a fundamental difference between regular compensation for work already performed, such as required military duty (which is a vested interest in the circumstances presented here), and governmental gratuities (which are not). *See, e.g., Larionoff v. United States,* 533 F.2d 1167, 1189 (D.C. Cir. 1976) (opinion denying rehearing) (holding that, unlike "gratuities," a government worker's "salary" becomes protected property after work is performed), *aff'd,* 431 U.S. 864 (1977); *Greene,* 376 U.S. at 160; *Fisk,* 116 U.S. at 133-34; *Twenty Per Cent Cases,* 87 U.S. at 186; *Heth,* 7 U.S. at 414; *Foley v. Carter,* 526 F. Supp. 977, 984-85 (D. D.C. 1981) (Congress cannot retroactively reduce payment for work already performed by federal employees)); Pl. Br. at 30 (additional authorities). *Cf. Carleton Screw Prods. Co. v. Fleming,* 126 F.2d 537, 541 (8th Cir. 1942) (distinguishing employees' "regular compensation" from "gratuities" under federal labor laws). Indeed, the government itself acknowledges (Br. at 27) that "military pay already earned . . . may not be withheld."

For this very reason, the Federal Circuit's predecessor court unequivocally stated that "tamper[ing] with [service members' right to pay] by legislation, *especially with*

*respect to pay already accrued*, would raise [such] serious fifth amendment issues, as . . . might be held to constitute a taking." *Cherry v. United States,* 640 F.2d 1184, 1187 (Ct. Cl. 1980) (emphasis added). The government argues (Br. at 22 n.18) that the relevant passage from *Cherry* was "dicta" and, therefore, should be disregarded. Even if the government's characterization were correct, it would not follow that this Court can ignore *Cherry*'s pronouncement that legislation affecting a service member's payment for past services implicates the Fifth Amendment.[14] Indeed, this Court noted essentially the same principle in *Gonzales,* 48 Fed. Cl. at 180 (Firestone, J.).

The other cases cited by the government are equally distinguishable. For example, *Bowen v. Public Agencies Opposed to Soc. Sec. Entrap.*, 477 U.S. 41 (1986) (cited in Br. at 27) involved legislation that repealed provisions of an earlier statute that had allowed states to withdraw state employees from the Social Security system. The Supreme Court held that the alleged "contractual rights" in *Bowen* were not Fifth Amendment property rights because they did not constitute "a debt of the United States[.]" 477 U.S at 55. The numerous cases cited by Plaintiff demonstrate that compensation due for work performed does indeed constitute a debt of the United States.

The government repeats its baseless assertion (Br. at 16, 26) that Plaintiffs had no expectation in payment for their work. Plaintiffs have demonstrated their expectation of

[14] This Court is bound by decisions of the Federal Circuit's predecessor courts. *See, e.g., Coltec Indus., Inc. v. United States,* 454 F.3d 1340, 1353 (Fed. Cir. 2006), *cert. denied,* 127 S.Ct. 1261 (2007). "[A]bsent a Supreme Court ruling, federal district courts [also] are required to give great weight to the pronouncements of their courts of appeals, even where the statements appear by way of dictum." *Casparian v. Allstate Ins. Co.*, 689 F. Supp. 1009, 1013 (N.D. Cal. 1988); *see also Highland Supply Corp. v. Reynolds Metal Co.,* 245 F. Supp. 510, 512 (E.D. Mo. 1965) (similar sentiments). *Cf. Cole v. Univ. of Hartford,* 391 F. Supp. 888, 890 n.3 (D. Conn. 1975) (arguments that language from appellate court's decision was only dicta are generally better made to the appellate court itself).

payment by filing the instant suit, and vigorously prosecuting their claims over the last seven years. Moreover, "[w]hen an employee enters the Government service he does so relying upon the statute or regulations fixing the current compensation of the office[.]" *Steinberg,* 163 F. Supp. at 594 (Whitaker, J., concurring). As demonstrated in Plaintiffs' Opening Brief (at 27, 29-30), by arguing against any expectation of payment, the government seeks a reward for its failure to honor its obligations. The Federal Circuit's 2003 Opinion unequivocally establishes that the pay statute in effect at the time the work was performed mandated payment for correspondence coursework. The government's stubborn insistence to the contrary is nothing more than an attempt to re-litigate a battle it lost in the Federal Circuit.

The government's reliance (Br. at 19-20) on *Commonwealth Edison Co. v. United States,* 271 F.3d 1327 (Fed. Cir. 2001) (en banc), is misplaced. In *Edison,* an electric utility challenged the legality of a special monetary assessment imposed by the Energy Policy Act. The Federal Circuit ruled that the "imposition of an obligation to pay money" (i.e., the assessment against the utility) cannot be a "taking." *Id.* at 1340. That ruling has nothing to do with whether a claim challenging the repudiation of the *government's obligation* for compensation for services already performed can constitute a taking. *Cf. Michels v. United States*, 72 Fed. Cl. 426, 429-30 (2006) (rejecting similar attempt by government to apply *Commonwealth Edison* language out of its proper context). The "obligation to pay money" in *Commonwealth Edison* was that of the citizen—not the government.

**3. A "Per Se" Takings Analysis Controls**

The government's insistence that a "regulatory takings" analysis applies here is untenable and unsupported by caselaw. In seeking to defend its regulatory takings

argument, the government relies heavily on the erroneous contention that the Plaintiffs do not have a property interest in their cause of action. *See, e.g.*, Br. at 21-22 & n.15. For the reasons discussed above, that contention is baseless.

The government also contends (Br. at 22) that a *per se* takings analysis should not apply to Plaintiffs' taking of causes of action even if these causes of action for payment for required correspondence coursework are property rights. The government does not, however, even attempt to explain why causes of action should be treated differently than other protected property rights. Nor does it contest that the Supreme Court and the Federal Circuit have recognized that a *per se* takings approach is appropriate when, as the 2007 NDAA Amendment is asserted to do here, a statute completely destroys a property right. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019-20 n.8 (1992). *Accord Innovair Aviation, Ltd. v. United States*, 72 Fed. Cl. 415, 423 (2006) ("The *Penn Central* [regulatory takings] approach deals with government action which reduces the value of property, generally by regulation. Here, we have the total destruction of the Plaintiff's property."). *Compare Abrahim-Youri*, 139 F.3d at 1466 (applying regulatory takings analysis when plaintiffs contended that government settled their claims for too low an amount).[15]

The government speciously suggests (Br. 21 n.14) that Plaintiffs' property has not been completely destroyed because Plaintiffs retained some benefits from their

[15] The government correctly notes (Br. at 24 n.21) that *Greyhound Food Management, Inc. v. City of Dayton*, 653 F. Supp. 1207, 1220 (S.D. Ohio 1986) employed the "regulatory takings" analysis in reaching its conclusion that the plaintiffs' causes of action had been "taken" by retroactive legislation. Because the *Greyhound Food Management* court found that the legislation "constitute[d] a complete deprivation of any enjoyment of that property by the [plaintiffs]" (*id.*), Plaintiffs submit that the *per se* approach should have been employed by the court, even though the court reached the correct result in finding a taking. *See Lucas*, 505 U.S. at 1019-20 n.8; *Innovair Aviation* 72 Fed. Cl. at 423.

correspondence work, such as advancement in military grade. The government made a similar argument in *Whitney Benefits*, 926 F.2d at 1174, arguing that no "*per se*" takings had occurred because the claimants retained the benefit of using of their land and equipment, and could find alternative uses for their property (such as farming). The Federal Circuit flatly rejected this argument as "completely off the mark," because the claimants' right to operate a mine had been altogether abolished. *Id.* The government's argument here that Plaintiffs still retained benefits from their correspondence course work, notwithstanding the 2007 NDAA Amendment's abolition of their causes of action, fails for the same reason as did the government's argument in *Whitney Benefits* that the claimants still retained use of their picks, shovels, and land notwithstanding the legislation abolishing the claimants' right to mine. Because Plaintiffs' causes of action have been destroyed, the government must provide just compensation for that taking pursuant to the Fifth Amendment regardless of whatever incidental benefits Plaintiffs may have realized from completing correspondence courses.

The government does not dispute that no "just compensation" has been offered to the Plaintiffs in exchange for the complete destruction of their causes of action. *See* Pl. Br. at 27-28; *see also Greyhound Food Mgmt.*, 653 F. Supp. at 1221 ("In light of the fact that no alternative remedy is made available to Plaintiffs under these statutes for their loss, it is clear that no just compensation has been paid for the takings made by the State"). Accordingly, retroactive application of the 2007 NDAA Amendment would effect an unconstitutional taking.

**B. Retroactive Application of the 2007 NDAA Amendment Would Violate Plaintiffs' Due Process Rights**

The government ignores clear authority holding that "stricter scrutiny" is required to justify retroactive application of legislation for Due Process purposes. *See* Pl. Br. at 28-29; *see also Greyhound Food Mgmt.*, 653 F. Supp. at 1216-17 (same point). Even if the desire, invoked by the government (Br. at 28), to "correct" a judicial decision with which the legislature disagrees could suffice as a rational purpose for the prospective application of legislation, more is needed for retroactive application of a statute. *See Greyhound Food Mgmt.*, 653 F. Supp. at 1217 ("the rational basis test is not meaningless").

The government also suggests (Br. at 28) that the 2007 NDAA Amendment was enacted "to ensure all members of the Reserve Component are treated the same." It is well-established that courts are not required to accept asserted legislative purposes at face value. *See, e.g., Weinberger v. Wiesenfeld,* 420 U.S. 636, 648 n.16 (1975); *accord Maine v. Taylor,* 477 U.S. 131, 149 (1986) (legislative purpose cannot be "merely a sham"); *Califano v. Goldfarb,* 430 U.S. 199, 212-13 (1977) (rejecting government-proffered purposes after "inquiry into the actual purposes"). There can be no doubt that retroactive application of the 2007 NDAA Amendment would serve the purpose of avoiding the government's obligation to compensate Plaintiffs for work already performed—the government acknowledges that fact in its brief. *See* Br. at 28 (stating that 2007 NDAA Amendment was "designed to remedy judicial rulings that would require inconsistent *pay practice* across military service components") (emphasis added). Such a purpose of enabling the government to repudiate established obligations cannot justify the retroactive destruction of Plaintiffs' causes of action. Pl. Br. at 29.

As explained in Plaintiffs' Opening Brief (at 31), the situation might be different if the 2007 NDAA Amendment bore some semblance of remedial legislation, and provided Plaintiffs with an alternative remedy and/or benefit in exchange for eliminating their claims for compensation for work already performed. Courts recognize that Due Process may be satisfied in such circumstances.[16] Due Process protections, however, forbid the 2007 NDAA Amendment from being given retroactive effect because Plaintiffs' compensation claims would be extinguished and Plaintiffs would not be provided with any alternative remedy. *See Greyhound Food Mgmt.* 653 F. Supp. at 1217-18 (lack of alternative remedy violates due process when legislature completely abolishes causes of action).[17]

## V. ADDITIONAL CONSIDERATIONS PRECLUDE THE 2007 NDAA AMENDMENT FROM BEING APPLIED RETROACTIVELY

The government (Br. at 29-30) barely responds to the additional reasons why the 2007 NDAA Amendment may not be applied retroactively. The Court should deny the

---

[16] *See, e.g., Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 87-93 (1978) (due process satisfied when statute limiting liability for nuclear accident created reasonable substitutes for abolished tort claims); *Abrahim-Youri,* 139 F.3d at 1468 ("though the choses in action were extinguished, the Government provided an alternative tailored to the circumstances which produced a result as favorable to plaintiffs as could reasonably be expected"); *Consol. U.S. Atmospheric Testing,* 820 F.2d at 991 (Due Process satisfied when legislation substituted federal government as defendant in tort claims against contractors); *Ducharme v. Merrill-National Labs., Inc.*, 574 F.2d 1307, 1309 (5th Cir. 1978) (Swine Flu Act that abolished state torts provided alternative federal remedies).

[17] *See also* Pl. Br. at 31 & n.15 (citing numerous authorities); *accord PruneYard Shopping Ctr. v. Robins,* 447 U.S. 74, 94 (1980) (Marshall, J., concurring) (government must make "a compelling showing of necessity or a provision for a reasonable alternative remedy" to justify retroactive legislation that impairs rights); *Swanson v. Bates*, 170 F.2d 648, 650-51 (10th Cir. 1948) ("so long as a substantial and efficient remedy is provided, due process of law is not denied by a change in remedy"); *Berry v. Beech Aircraft Corp.,* 717 P.2d 670, 676 n.3 (Utah 1985) ("if the Legislature were to abolish all negligence actions against employers and provide no substitute remedy, the Workmen's Compensation Act would be unconstitutional").

government's motion to dismiss and grant Plaintiffs' cross-motion for these reasons as well.

**A. The Federal Savings Statute Preserves the Liabilities**

The government repeats its erroneous position (Br. at 30) that the federal savings statute, 1 U.S.C. § 109, only applies when the previous statute has been repealed. Plaintiffs' Brief (at 33) cited numerous cases holding that § 109 applies to all forms of statutory modifications, not just repealing statutes. *See also United States v. Rohm & Haas Co.,* 500 F.2d 167, 171 (9th Cir. 1974) (noting that statutory savings clauses are generally construed broadly). The government has no answer to these cases, and none exists. The government also has no response to Plaintiffs' showing that *Hamm v. Rock Hill,* 379 U.S. 306, 314 (1964), which created a limited exception when the government substitutes a "right for a crime," is irrelevant here. *See* Pl. Br. at 33-34.

There is equally no merit to the government's alternative contention (Br. at 30) that, "[b]y prohibiting 'any claim' since the enactment of the statute, the clarifying amendments *necessarily* extinguish plaintiffs' claims, and any liability that would result therefrom." (emphasis added). As pointed out in Plaintiffs' Opening Brief (at 36), courts reject such arguments under the federal savings statute that liabilities have been extinguished "by implication." By its very terms, § 109 requires that the extinguishment of the liability be stated "expressly." *See* 1 U.S.C. § 109. The 2007 NDAA Amendment contains no explicit terms prescribing that the government's earlier liabilities have been extinguished. *See* Pl. Br. at 34-35. Indeed, the government stubbornly continues to insist that no liability ever existed in the first place. That is not enough to satisfy § 109.

### B. The 2007 NDAA Should Be Applied Only Prospectively

The government does not dispute the well-settled maxim that statutes are presumed to apply prospectively absent indisputable evidence calling for retroactive application. *See* Pl. Br. 36-37 (citing cases). These presumptions exist because retroactive laws generally undermine public confidence in government by defeating expectations of the rule of law. *See Rogers v. Tennessee*, 532 U.S. 451, 471 (2001) (Scalia, J., dissenting); *cf. E. Enters.*, 524 U.S. at 549 (Kennedy, J., concurring in the judgment). The government also does not dispute that Congress is presumed to know this longstanding presumption against retroactivity. *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1052 (9th Cir. 2001); *Centre Bev. Co., Inc. v. Miller Brew. Co.*, 779 F.2d 168, 170 (3d Cir. 1985).

Plaintiffs' Opening Brief (at 37-38) fully explained why the 2007 NDAA fell short of this standard. The Amendment prescribes only that the prohibition denying compensation for completion of correspondence coursework to members of the National Guard, which was added in 2002, applies to:

> (3)(A) any work or study performed on or after September 7, 1962, unless that work or study is specifically covered by the exception in paragraph (2); and
>
> (3)(B) any claim based on that work or study arising after that date.

37 U.S.C. § 206(d)(3) (2006), *amended by* PUB. L. NO. 109-364, § 607, 120 Stat. 2083. When read with the presumption against retroactivity in mind, the language only forecloses "any claim" arising "since September 7, 1962" that was not brought before the enactment of the Amendment.

Contrary to the government's assertion (Br. at 30), this reading of the 2007 NDAA Amendment does not render paragraph (B) superfluous. Paragraph (A) absolves the government from compensating Guard members for completing required coursework going

forward, whereas paragraph (B) removes Guard members' right to sue for compensation for these courses going forward. The paragraphs address different rights (i.e., the right to compensation, and the right to legal action for failure to compensate). Accordingly, neither section is superfluous when read prospectively. Because the statute does not demonstrate the requisite indisputable evidence that it be applied retroactively to prior claims, the statute may only be applied prospectively.

**CONCLUSION**

For the foregoing reasons and those stated in Plaintiffs' Opening Brief, the government's motion to dismiss should be denied, and the Plaintiffs' cross-motion for partial summary judgment on the government's affirmative defense based on the 2007 NDAA Amendment should be granted.

Respectfully submitted,

/s Helen K. Michael

Helen K. Michael
Robert H. Shulman
John F. Stanton
Christina Fahmy
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 783-0800
Fax: (202) 383-6610

Richard T. Dorman
CUNNINGHAM, BOUNDS, VANCE, CROWDER, and BROWN, LLC
1601 Dauphin Street
Mobile, Alabama 36660
Tel: (334) 471-6191
Fax: (334) 479-1031

Charles J. Cooper
David Thompson
COOPER & KIRK, P.L.L.C.
555 11th St, N.W. Suite 750
Washington, DC 2005
Tel: (202) 220-9600
Fax: (202) 220-9601

Counsel for Plaintiffs