IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **WILLIAM A. CLARK, et. al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 00-644** |
| | ) | **(Judge Firestone)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS'**
**MOTION TO COMPEL WITH ACCOMPANYING APPENDIX**

Pursuant to Rule 37 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits this response, opposing plaintiffs' motion to compel discovery.[1]

As we explain below, the United States Department of Defense, the United States Army, the United States Air Force, and the United States National Guard Bureau have been searching for, and producing, responsive documents to plaintiffs since 2004. The produced documents were the result of an exhaustive search effort by hundreds of Department of Defense military and civilian personnel. Indeed, we are unaware of any military pay case in this, or any other Federal court, where DoD has undertaken such efforts to produce documents.

Furthermore, the Department of Defense could have raised valid objections to almost all of plaintiffs' discovery requests during this litigation because plaintiffs' discovery requests are vague, burdensome, or outside the scope of discovery.[2] However, instead of seeking numerous

---

[1] In this response, we will refer to plaintiffs' motion to compel, which was filed electronically on December 7, 2007, as "Pl. Mot." or "plaintiffs' motion."

[2] Given that the sole issue that plaintiffs were allowed to take discovery upon is what, if any, correspondence courses the Secretary of Defense required members of the state militia to complete, and given that is now beyond dispute that plaintiffs' have admitted that they base their

protective orders with the court, defendant has tried to work with plaintiffs' counsel in an attempt to understand and respond reasonably to plaintiffs' discovery requests. Moreover, agency counsel, when reviewing search efforts with subordinate service commands and agencies who were searching for responsive documents, told command and agency personnel to err upon the side of production when a question of whether a document was responsive to one of plaintiffs' discovery requests.

In sum, the United States believes it has reasonably searched for and produced all responsive documents that it found in its possession. We have contacted numerous agencies within the Department of Defense on several separate occasions to inquire about potential responsive documents. Whenever a responsive document was produced to us, we turned it over to plaintiffs. Plaintiffs' motion to compel should be denied, and if discovery is extended, it should be for only a minimum amount of time. DoD has delayed the implementation of critical new training initiatives pending the outcome of this case, and further delay negatively impacts upon training men and women in the Reserve component of our armed forces. Accordingly, we respectfully request that the Court deny plaintiffs' motion, and if discovery is extended, that the period be for as short of period as possible.[3]

---

claims upon their belief that the Secretary of Defense required members of the state militia to complete correspondence courses solely by military regulation, it is difficult to see how any of plaintiffs' request are not objectionable, given that plaintiffs had access to these regulations all along.

[3] Submitted with this brief is defendant's appendix ("DA __") which contains documents that we reference in our response.

## ARGUMENT

### I. The Government Has Conducted A Thorough Search For Responsive Documents And Has Produced Everything Within Its Control

Plaintiffs allegation that the United States has "not conducted a reasonable search to comply with plaintiffs' discovery requests" is without merit. Pl. Br. pp. 14-22. The United States has been searching for documents for nearly four years now, and as we have explained to plaintiffs' counsel upon numerous occasions, we have produced all responsive documents we located during our searches that are within our control.

Current and former agency counsel have set forth the search techniques that they have used to ensure that their agencies have reasonably searched for and produced responsive documents. See DA 01-09 (Declaration of Major Dunlap), DA 10-13 (Declaration of Major Rockenbach), DA 14-52 (Declaration of Mr. Gonzalez), DA 53-55 (Declaration of Lieutenant Colonel Roou), and DA 56-58 (Declaration of Captain Brown). The declarations submitted by agency counsel show that each service searched offices and organizations at the strategic, operational and tactical levels of their agency to obtain potentially responsive documents. Moreover, given that plaintiffs' discovery requests were so broad and vague, agency personnel instructed everyone they contacted to err on the side of production if the person searching for documents was not sure if a document was responsive to a particular discovery request. It is simply not true that plaintiffs "have been able to obtain only minimal discovery from the government." Pl. Mot. p. 14. Indeed, the record shows that plaintiffs have admitted that we have been vigilant in searching for and producing responsive documents. DA 60 (Joint Status Report dated December 13, 2004 noting Government production); DA 62-77 (various e-mails showing Government's cooperation and production).

Plaintiffs' allegation at page 15of their motion that the Government "has not complied with its obligation to make reasonable inquiries in response to Plaintiffs' discovery requests" because Air Force regulations were not available when plaintiffs were given access to the Pentagon Library for a second time is equally with merit. See also Pl. Mot. p. 9. While plaintiffs are correct that Air Force regulations were not available for inspection when they again, recently, visited the Pentagon library,[4] plaintiffs fail to mention that they were granted access to both the Pentagon and the Maxwell Air Force base library on previous occasions. Plaintiffs were given access so that they could have unfettered access to all Air Force regulations. Moreover, plaintiffs were told that after their inspection, they should identify all the regulations or documents that they viewed and that we would copy and produce them. Furthermore, plaintiffs fail to mention that at the conclusion of their previous visits, plaintiffs told Government counsel that they were receiving all the regulations they identified and given that plaintiffs have not complained since, we justifiably assumed that they had access to all the regulations they needed. DA 66, 71 (e-mails of February 23, 2005 and March 4, 2005 from plaintiffs' counsel showing Government's cooperation with providing all requested Air Force documents from Maxwell Air Force Base.). Nevertheless, despite this previous understanding,

[4] Plaintiffs were recently told that the Pentagon Library possessed Air Force regulations. However, we have since learned that these regulations are now stored at Maxwell Air Force Base in Alabama. At the time plaintiffs were told that we would work to get them renewed access to the Pentagon Library, we also told them that they could have access to the Maxwell Air Force Base library if they so desired. This offer regarding access to Maxwell Air Force base was extended again to plaintiffs' counsel prior to the deposition of plaintiff James Davern. However, to date, plaintiffs have not affirmatively responded to our offer. Nonetheless, the offer remains open.

we believe we have made available all of the regulations plaintiffs now state that they need and produced them to plaintiffs.[5]

Similarly, plaintiffs allegation that we have failed to produce state guard documents in our possession is without merit. Pl. Mot. p. 16. We have consistently explained that these documents are within the control of each state's national guard and not the Department of Defense. Nevertheless, we have worked with each state from the outset of discovery in an effort to get them to voluntarily comply with plaintiffs' discovery request. Every document that a state sent to us was produced to plaintiffs. However, to ensure plaintiffs have everything that we have, we have copied these state records again and have produced these duplicate sets to the plaintiffs.

Finally, plaintiffs' concerns that the United States is deliberately obstructing the discovery process is a scandalous accusation made without any support. See Pl. Mot. p. 16. First, as mentioned above, we have been working with the states for nearly four years now to get them to voluntarily cooperate. We also have been urging plaintiffs to subpoena state guard bureaus if they believed they were not receiving documents that they needed. Despite our urging, it was not until November 2007, nearly a month after written discovery closed, that plaintiffs took any steps to obtain information within the control of the states.[6] See DA 21-37. It was plaintiffs' failure to timely request these documents from the states, and not any failure by

---

[5] If plaintiffs disagree with this statement, we will continue to work with plaintiffs' counsel on this matter.

[6] Plaintiffs' failure to seek timely discovery directly from each state's national guard, as it may now belatedly wish it had, does not provide an appropriate basis either to compel the Government to produce additional documents or to justify an extension of the discovery the period.

the United States, that caused this issue. Nevertheless, as before, we have continued to urge the states to comply with plaintiffs' untimely request, and now believe plaintiffs are in possession of all the documents that they recently requested.

Plaintiffs' argument that the United States has not made a complete production of documents responsive to several alleged "key questions" is also without merit. Pl. Mot. pp. 16-19. As the declarations from agency counsel explain, the military has reasonably searched for and produced all responsive documents to the plaintiffs. See DA 5-7, 10-13, 17-19, 53-55. Moreover, the United States has searched for, and produced documents, without consideration that "the burden or expense of the proposed discovery outweighs its likely benefit." For example, plaintiffs have asked for documents from 1970 to the present. However, given that plaintiffs now admit that the authority that they allege as the basis for them to complete correspondence courses is regulatory, the Government maintains that any document that is not regulatory in nature has no benefit in this case. Furthermore, because plaintiffs' complaint was filed in 2000, even if plaintiffs could show that a regulation issued by the Secretary does require members of a state's militia to complete correspondence courses, any requirement before 1994 has no benefit to this litigation because the Court's six-year statute of limitations would preclude recovery. 28 U.S.C. § 2501. Similarly, because plaintiffs maintain that an amendment to 37 U.S.C. § 206 enacted on December 28, 2001 precluded compensation for completing correspondence courses after that date, any regulation that is issued after December 28, 2001 also has no effect in this case. See Pl. Br. in Opp. to Def. MSJ, footnote 11, page 9 (filed under seal June 13, 2005); PACER Document 108-2, page 17 of 48; Plaintiffs' Third Amended Complaint, PACER Doc. 169-2, ¶¶ 50-53.

In regards to plaintiffs' specific allegations set forth at pages 19 through 21 of their motion, the Government has informed plaintiffs that we have searched, and gone back and searched again, those tenant organizations that we believe would have responsive documents to a specific discovery request. DA 7-8, 18-19. After each inquiry, we produced those documents that were found. The Government simply does not believe it has any additional documents to produce.

The Department of Defense cannot produce documents it does not have, and military counsels' declarations cannot state this fact any more fully. Hagemeyer North America, Inc. v. Gateway Data Sciences Corp., 222 F.R.D. 594 (E.D.Wis. 2004)("A party need not produce documents or tangible things that are not in existence or within its control." citing Norman v. Young, 422 F.2d 470 (10th Cir.1970)). Additionally, it is sufficient that counsel for the agency responded by declaring in their affidavits that a document or tangible thing is not in existence. Id. Citing 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure: Civil § 2213 (2d ed.1994). Agency counsel for the Department of Defense, the United States Army and Air Force, and the National Guard Bureau have provided sworn testimony that they supervised the gathering of all records, including all documents and electronic media, from all departments within the Department of Defense that were reasonably known or suspected to have material that was responsive to plaintiffs' discovery requests. Agency counsel have made multiple requests to their agency's various commands and offices as plaintiffs provided necessary focus regarding their specific requests, and all materials located in response to those requests were delivered to plaintiffs' counsel. Moreover, in their declarations, counsel for the Department of Defense go even further and specifically rejects plaintiffs'

inference that the agencies within the Department of Defense improperly withheld or destroyed responsive documents. These statements clearly address the concerns plaintiffs raise here, i,e. that the Department of Defense did not conduct a full and complete search of its records.

At bottom, senior attorneys within the Department of Defense have unequivocally testified that all responsive documents were reasonably searched for, gathered, and produced for plaintiffs. It is long-settled that Government officials, like Lieutenant Colonel Roou, Major Rockenbach, Major Dunlap, Captain Brown, and Mr. Gonzalez are presumed to have carried out their duties in an appropriate manner. See United States v. Chem. Found., Inc., 272 U.S. 1 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."); see also Schism v. United States, 316 F.3d 1259, 1302 (Fed. Cir.2002) (citations omitted) ("This presumption of regularity is the supposition that public officers perform their duties correctly, fairly, in good faith, and in accordance with law and governing regulations, and is valid and binding unless 'well-nigh irrefragable proof rebuts or overcomes it.'"). Plaintiffs have not produced any, let alone "well-nigh irrefragable" proof that these men and women were acting in any other manner when overseeing the Department of Defense's search. Accordingly, this baseless aspect of plaintiffs' motion should be denied.

## II. The Government's Production Complies With All Applicable Discovery Rules

Plaintiffs next argue that the Government's production fails to comply with discovery rules because, among other things, the production was not organized and documents were not bate-stamped. Pl. Mot. 22-23. We disagree with this allegation, and note that we have been producing documents without bates-numbers upon searchable compact discs for the past three

years without complaint. Nevertheless, we have gone ahead and bate-stamped all of the documents that we have previously produced to plaintiffs in response to plaintiffs' second request for documents and have sent these to plaintiffs' counsel, as well.

**III. Discovery Schedule**

As previously stated, we oppose extending the discovery period for any length of time. Plaintiffs have had access to all applicable regulations for at least the past three years, and given that the basis for each plaintiff's claim is that, solely pursuant to regulation, the Secretary of Defense required each of them to complete correspondence courses, there is no need for additional discovery. Furthermore, new training initiatives are being impacted upon pending decision of this case. However, if the Court rejects our request that discovery not be extended, we respectfully request that the time that discovery is extended is brief so that plaintiffs' counsel is allowed to take limited[7] discovery of the Government's proposed RCFC 30(b)(6) witnesses.

**CONCLUSION**

For the foregoing reasons, defendant respectfully requests that this Court deny plaintiffs' motion to compel production of documents.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

---

[7] Plaintiffs' counsel has submitted to the United States a list of over 60 topics that it wants the Government to produce 30(b)(6) witnesses who are capable of responding to matters concerning plaintiffs' proposed topics. The topic areas cover extremely broad subject areas, and we repeatedly have asked plaintiffs' counsel to streamline these topic areas. Otherwise, the Government would have to produce dozens of 30(b)(6) witnesses just to ensure defendant was producing witnesses possessing responsive information covering these broad topic areas.

JEANNE E. DAVIDSON
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Deputy Director

s/ Douglas K. Mickle
DOUGLAS K. MICKLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel. (202) 307-0383
Fax (202) 353-7988

Attorneys for Defendant

OF COUNSEL:
MAJOR JERRETT DUNLAP
United States Army Litigation Division

TIMOTHY MALLOY
LT COL BRIAN ROOU
United States Air Force
General Litigation Division

MAXIMINO GONZALEZ
National Guard Bureau
Office of Chief Counsel

January 4, 2008

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on January 4, 2008, a copy of the foregoing "**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL WITH ACCOMPANYING APPENDIX**" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's System.

s/Douglas K. Mickle
Douglas K. Mickle

**INDEX TO DEFENDANT'S APPENDIX**

Declaration of Major Dunlap . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Declaration of Major Rockenbach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Declaration of Mr. Gonzalez . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Declaration of Lieutenant Colonel Roou . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

Declaration of Captain Brown . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Joint Status Report, December 13, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

E-mail string from March 4, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

E-mail string from March 7, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

E-mail string from March 21, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WILLIAM A. CLARK, et al., | |
| Plaintiff, | |
| v. | No. 00-644C |
| THE UNITED STATES | (Judge Firestone) |
| Defendant. | |

**DECLARATION OF MAJOR JERRETT W. DUNLAP, JR.**

I, Jerrett W. Dunlap, Jr., declare and state the following:

1. I am an officer in the U.S. Army Judge Advocate General's Corps, currently assigned to the U.S. Army Legal Services Agency, Litigation Division, Military Personnel Litigation Branch. I am an attorney duly admitted to the bar of the Court of Federal Claims, currently assigned as agency counsel for the Department of the Army. I am a major in the Regular Army. This declaration is made on personal knowledge of factual matters known to me and if called upon as a witness, I could and would testify competently to them.

2. I have been responsible for coordinating the Army's response to Plaintiffs' June 22, 2006 Second Set of Document Requests. Upon receipt of plaintiffs' document request, I coordinated and conducted a broad and thorough search for the requested documents within the Department of the Army, as well as within the Department of Defense. I determined I could best conduct the search for documents that were responsive to plaintiffs' document request by undertaking a two pronged approach. This approach would include both a top-down search for responsive documents, as well as a grass-roots search for responsive documents from the subordinate Army units responsible for administering and conducting training.

3. I conducted a top-down search for responsive documents by contacting officials responsible for training and training policy at the Pentagon in the Department of Defense as well as Headquarters, Department of the Army. These Pentagon officials helped me identify the individuals and organizations that would have documents and information related to plaintiffs' document production request. In addition to numerous telephonic discussions with Pentagon officials, I also visited the officials and went through their files with them in order to identify all responsive documents.

4. In addition to contacting Pentagon officials, I conducted the top-down search for responsive documents by contacting officials at the U.S. Army Training and Doctrine Command ("TRADOC"). TRADOC is responsible for recruiting, training, and educating the Army's Soldiers; developing its leaders; supporting training in units; developing Army doctrine, standards, and building the future Army. I began by contacting the TRADOC Staff Judge Advocate, the senior legal advisor in TRADOC, who facilitated the document production search by contacting TRADOC officials involved in administering correspondence course training and policy and ensuring they cooperated with the document production request. I then contacted the TRADOC officials that had been identified as being involved in administering correspondence course training and policy in order to identify all responsive documents.

5. Simultaneous with conducting the search for responsive documents through Pentagon and TRADOC officials, I contacted each of the Army's schools responsible for providing training. Although these schools fall under TRADOC, a two pronged approach was employed to ensure all responsive documents were identified and produced. The various Army schools are located on several different installations throughout the United States. I also employed a two pronged approach with regard to each individual school. In addition to contacting the school directly, I

also contacted the office of the Staff Judge Advocate on each installation to ensure all relevant officials were located and to facilitate identification and production of documents.

6. Use of this multi-pronged approach resulted in the redundant identification and production of many documents. Nevertheless, this method was employed to provide a thorough search in response to plaintiffs' document production request. My records indicate that I communicated with at least fifty-eight Department of Defense and Army officials in my efforts to produce responsive documents. While not all of these officials possessed information regarding plaintiffs' document production request, they assisted in identifying those individuals who could provide assistance. The United States has already informed plaintiffs of the approximately twenty-five Army or Department of Defense officials who were identified as either producing responsive documents or having searched for responsive documents.

7. The responses from Army officials clearly indicated the broad wording of plaintiffs' document production requests resulted in a truly burdensome requirement to search through files for such an expansive range of documents over such a lengthy timeframe. It was also noted that there were not officials available who had sufficient longevity and background to competently speak to the availability of documents back to 1970. Although the Army officials indicated the broad wording of the document production requests made it impossible to provide documents that satisfied all of plaintiffs' document production requests, the Army officials nevertheless conducted an exhaustive and reasonable search for documents responsive to plaintiffs' various requests for discovery, and have now produced these documents that they identified as falling within the broad parameters of plaintiffs' document production requests.

8. On August 1, 2006, Christina Fahmy and Allan Sutton reviewed all responsive, non-privileged, documents that had been collected from Department of Defense and Army officials,

as well as the responsive, non-privileged, documents produced by the United States Air Force and the National Guard Bureau, which were forwarded to my office. Our records indicate that 275 responsive documents were made available to plaintiffs. This is in addition to the numerous documents that were previously produced by the United States and provided to plaintiffs on fourteen CDs with documents in 2004 and 2005 in accordance with the Court's July 15, 2005 order. The documents provided to Mr. Sutton and Ms. Fahmy did not have identification numbers. After Ms. Fahmy and Mr. Sutton had examined the documents, Mr. Sutton asked how the documents would be made available; specifically stating plaintiffs would not require the Army Correspondence Course Catalogs. I informed him that I would have the documents copied and delivered via courier. Mr. Sutton also indicated he was going to send me a letter clarifying plaintiffs' response to the Government's objections regarding plaintiffs' document production request. Mr. Sutton indicated he would send the clarifying letter the next day. I determined that I would wait until Mr. Sutton's clarifying letter arrived before I forwarded the documents, incase the clarifying letter impacted on the nature of the document production.

9. Upon receipt of Mr. Sutton's clarifying letter, I personally copied all documents, less the Army Correspondence Course Catalogs, that had been reviewed by Mr. Sutton and Ms. Fahmy in our office and had those documents delivered via courier. I did not include the approximate 3,950 pages from the Army Correspondence Course Catalogs, consistent with Mr. Sutton's request. In order to speed the production of the documents, I did not affix document identification numbers. Mr. Sutton's clarifying letter did not mention the need for identifying numbers, even though the documents contained no such identifying numbers at the time of inspection.

DA 04

10. I also contacted Major Chris Soucie, who was responsible for document production for the Army pursuant to the Court's July 15, 2005 order, who stated document identification numbers had not been required under the previous document production request, in order to speed production. Major Soucie indicated that our practices for searching for documents were consistent with the practice he employed under the Court's July 15, 2005 order, although the instant document production requests were broader, requiring a broader search.

11. I continued to search for responsive documents and to consolidate them as they were received from officials in the Department of Defense and its subordinate agencies. Plaintiffs' counsel also communicated their belief that there were deficiencies in the Government's document production. Ms. Fahmy stated during a phone call that the lack of identifying number on the documents made it difficult for them to identify the alleged deficiencies. While we were in the process of attempting to resolve the alleged deficiencies, plaintiffs' counsel proposed that discovery be stayed pending enactment of the 2007 National Defense Authorization Act. The Court granted the parties joint motion and stayed discovery on September 8, 2006.

12. After the Court reopened discovery, I directed a legal technician employed by the Army's Litigation Division to attach identification numbers to our copies of the responsive documents and to put them in binders. All of the documents that were in our control that had been provided to plaintiffs were included in the binders. During a teleconference with plaintiffs' counsel on November 29, 2007, I offered to send plaintiffs a copy of the binders with the document identification numbers. During this same teleconference, Plaintiffs' counsel accepted our offer to grant them access to the Pentagon library.

13. On December 3, 2007, and again on December 6, 2007, our paralegal staff escorted Ms. Fahmy and her colleague to the Pentagon library. Our paralegal staff assisted Ms. Fahmy and

her colleague to copy numerous regulations at the Pentagon library. This was the second and third time that Ms. Fahmy had been escorted to the Pentagon library, as our paralegal staff had previously escorted Mr. Sutton and Ms. Fahmy to the Pentagon library to find documents under the Court's July 15, 2005 order. After discussing this issue with Major Soucie and then reviewing his case notes, it is apparent that plaintiffs' counsel also were given full access to United States Air Force documents contained at Maxwell Air Force Base in 2004.

14. After our two paralegal staff members had finished escorting Plaintiffs' counsel to the Pentagon library, they scanned the contents of the numbered documents contained in the binders.

15. On December 21, 2007, plaintiffs' counsel indicated that identification numbers alone would not be sufficient and requested that each individual page be numbered. This required our paralegal staff to again scan the documents in order to attach an identification number. This process took almost two weeks to accomplish. Once the documents had been scanned, they were transferred to a CD-ROM and were delivered to plaintiffs. All responsive Army documents have been provided to plaintiffs.

16. The Army has specifically conducted an exhaustive and reasonable search for documents responsive to plaintiffs' document production request 8, and have now produced these documents. For example, the Army has provided the members of a General Officer Steering Committee chartered to address the way ahead for Army distributed learning. The members of this committee are detailed in a memorandum for Reserve Component Coordination Council (RCCC), dated October 10, 2003, a copy of which was provided to plaintiffs. See Exhibit D to plaintiffs' motion to compel, (publication matrix, document 49). While this document was not a "roster or organization chart" as requested, it nevertheless lists committee members. A specific "roster or organization chart" was not provided, as no such document was discovered. This is

only one example of the numerous responsive documents provided by the Army to plaintiffs. I personally contacted officials at the Pentagon, TRADOC, as well as Army schools requesting all documents responsive to request 8, who_conducted an exhaustive and reasonable search for documents responsive to plaintiffs' various requests for discovery, and have now produced these documents.

17. Regarding requests 12-15, 27, 36, and 37, the Army has conducted an exhaustive and reasonable search for documents responsive to these requests for discovery, and has now produced these documents. I personally contacted officials at the Pentagon, TRADOC, as well as Army schools requesting all documents responsive to requests 12-15, 27, 36, and 37. The majority of responsive documents are contained in Army Regulations, which are publicly available through the Library of Congress. Nevertheless, the Army has provided all documents identified as responsive to requests 12-15 in its possession, as well as assisting plaintiffs on three separate occasions, beginning in 2004, to conduct legal research at the Pentagon library.

18. Regarding requests 41 and 49, I personally requested information relating to these document production requests from officials at the Pentagon, TRADOC, as well as Army schools. After conducting an exhaustive and reasonable search for documents responsive to these requests for discovery, these officials provided no responsive documents. Plaintiffs now refer to an article that is publicly available. The content of the article is not the official position of the Army. This article does not appear to be responsive to plaintiffs' request. Request 41 states: "All documents to, from or relating to the Distance Learning/Training Technology Applications Subcommittee to the Secretary of the Army that relate to its function, mission, and responsibilities, or the approval and/or use of correspondence courses to satisfy mission and/or training needs." While this document does mention the Distance Learning/Training Technology

Applications Subcommittee, it is not "to the Secretary of the Army." Moreover, the article is not "to or by" the subcommittee, as requested in request 49.

19. Plaintiffs' request 42 seeks documents related to the Directorate, Common Leader Training. I spoke with the former director of the Directorate, Common Leader Training, who indicated the organization no longer exists. Nevertheless, the Army has conducted an exhaustive and reasonable search for documents responsive to this request for discovery, and have now produced the identified documents relating to the organization's function, mission, and responsibilities. The former director of the Directorate, Common Leader Training, indicated the organization was not involved in correspondence courses, as its mission was to provide instructors for training.

20. Plaintiffs' request 59 seeks "all documents relating to DOD's justification for its policy and practice of refusing to pay compensation to National Guard members for completion of correspondence courses." It is not DOD's practice to create documents justifying payments it does not make. For example, National Guard Soldiers regularly conduct physical training in their civilian status in order to meet the Army's physical fitness standards. Nevertheless, the Army does not produce documents justifying why these Soldiers are not compensated for running or doing pushups in their civilian status. Similarly, it is not surprising that DOD has not drafted documents to justify its policy to not pay servicemembers for the completion of correspondence courses while not in federal service. I personally contacted officials at the Pentagon and TRADOC requesting all documents responsive to request 59. These officials conducted an exhaustive and reasonable search for documents responsive to these requests for discovery. No responsive documents were discovered.

I declare under penalty of perjury that the foregoing is true and correct in accordance with 28 U.S.C. § 1746. Executed on this 4th day of January 2008.

Jerrett W. Dunlap, Jr.
Major, U.S. Army

DA 09

**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| WILLIAM A. CLARK, et al., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 00-644C |
| THE UNITED STATES | ) | (Judge Firestone) |
| Defendant. | ) | |

**DECLARATION OF MAJOR TRACEY R. ROCKENBACH**

I, Tracey R. Rockenbach, declare and state the following:

1. I am an officer in the U.S. Air Force Judge Advocate General's Corps, currently assigned to the Air Force Legal Operations Agency, Civil Law and Litigation Directorate. I was assigned as agency counsel for the Department of the Air Force from January 2006 through April 2007. I am a major in the Regular Air Force. This declaration is made on personal knowledge of factual matters known to me and if called upon as a witness, I could and would testify competently to them.

2. I was responsible for coordinating the Air Force's response to Plaintiffs' June 22, 2006 Second Set of Document Requests. Upon receipt of Plaintiffs' document request, I coordinated and conducted a broad and thorough search for the requested documents within the Department of the Air Force.

3. I contacted officials in the Air Force Directorate of Manpower and Personnel at the Pentagon. These Pentagon officials helped me identify the individuals and organizations that would have documents and information related to Plaintiffs' document production request. I personally visited the subordinate office within Directorate of Manpower and Personnel which

deals with Enlisted Professional Military Education and searched through their files. All responsive documents were produced.

4. In addition to contacting Pentagon officials, I conducted Air Education and Training Command (AETC). AETC is responsible for recruiting, training, and educating the Air Force's Airmen. I began by contacting the AETC Commander's orderly room. When I indicated that I was searching for information related to specific correspondence course training, they directed me to Air University. Air University (AU) provides the full spectrum of Air Force education, from pre-commissioning to the highest levels of professional military education, including degree granting and professional continuing education for officers, enlisted and civilian personnel throughout their careers. The university's Professional Military Education (PME) programs educate airmen on the capabilities of air and space power and its role in national security. I contacted several offices within AU; the history office ultimately provided the responsive documents.

5. Simultaneous with conducting the search for responsive documents through Pentagon and AETC/AU officials, I contacted each of the Air Force's schools responsible for providing training. Although these schools fall under AU, a two pronged approach was employed to ensure all responsive documents were identified and produced. I also employed a two pronged approach with regard to each individual school. In addition to contacting the school directly, I also contacted the office of the Staff Judge Advocate for AETC and AU to ensure all relevant officials were located and to facilitate identification and production of documents.

6. In addition to contacting Pentagon officials and AETC officials, I also contacted the Air Force Historical Studies Office. The historian conducted a search of all of their holdings using keywords from the document production request. The results of that search were produced to

plaintiffs. Plaintiffs were informed that the documents were all located at Maxwell and that the Air Force would provide access to the documents. The plaintiff responded by providing the call numbers of twenty-four documents and asking us to produce those documents. I went to the Air Force Historical Studies Office at Bolling Air Force Base, Washington, DC, and pulled the twenty-four documents from microfilm.

7. My records indicate I communicated with at least twenty Air Force offices in my efforts to produce responsive documents. While not all of these offices possessed information regarding Plaintiffs' document production request, they assisted in identifying those individuals who could provide assistance. The United States has already informed Plaintiffs of the approximately fifteen Air Force officials who were identified as either producing responsive documents or having searched for responsive documents.

8. The responses from Air Force officials clearly indicated the broad wording of Plaintiffs' document production requests resulted in a truly burdensome requirement to search through files for such an expansive range of documents over such a lengthy timeframe. It was also noted that there were not officials available who had sufficient longevity and background to competently speak to the availability of documents back to 1970. Although the Air Force officials indicated the broad wording of the document production requests made it impossible to provide documents that satisfied all of Plaintiffs' document production requests, the Air Force officials nevertheless produced all documents in their control that they identified as falling within the broad parameters of Plaintiffs' document production requests.

9. All documents located during this expansive search were provided to Maj Chris Soucie and/or Maj Jerrett Dunlap of the U.S. Army Litigation Division. In November 2007, I was notified that Plaintiff's indicated they had not received a long list of documents identified on the document

production matrix. I personally searched through the Air Force's copy of the documents and found each of the missing documents. Some documents were duplicated on the matrix. I only produced them once.

9. 10. The Air Force has always maintained that Air Force regulations are maintained at Maxwell AFB, AL and that plaintiff's may visit the library there and search. I personally searched the online catalogue of Air University and produced all responsive documents which I found. In addition, as mentioned in paragraph 6, I had the Air Force Historical Research Office search the Maxwell holdings for any responsive documents. A listing of approximately 125 documents and synopsis of those documents were provided to plaintiff; twenty-four of the documents were retrieved and provided to plaintiff. Each page of the document had to be individually printed from the microfilm. For any documents which were large (over 20 pages), I printed the cover page, table of contents, and any pages which contained enough information to assist the plaintiff's in determining whether they wanted us to produce the entire document. Until the plaintiff's filed this motion to compel, I was never informed that the plaintiff's wanted the entire document produced. Also, plaintiffs were again informed that the documents were available for review at Maxwell AFB, Montgomery, Alabama. Furthermore, I did not produce any Air Force instructions which the plaintiff's previously cited in motions as I was under the impression they had been previously produced in the first document production since plaintiff's had copies of them and were citing to them in motions.

I declare under penalty of perjury that the foregoing is true and correct in accordance with 28 U.S.C. § 1746. Executed on this 28th day of December 2007.

Tracey Rockenbach, Maj, USAF

UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM A. CLARK, et al., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 00-644C |
| THE UNITED STATES | ) | (Judge Firestone) |
| Defendant. | ) | |

**DECLARATION OF MAXIMINO GONZALEZ, JR.**

I, Maximino Gonzalez, Jr., declare and state the following:

1. I am a Department of the Army Attorney Advisor, currently assigned to the National Guard Bureau (NGB), Office of the Chief Counsel, Litigation and Employment Law section (NGB-JA). The National Guard Bureau is not a command or headquarters, but is the channel of communications on all matters pertaining to the National Guard, the Army National Guard of the United States, and the Air National Guard of the United States between the Department of the Army and Department of the Air Force, and the several states. I am an attorney duly admitted to the bar of the state of New York. I am also a judge advocate officer in the District of Columbia Army National Guard (DCARNG) and the Army National Guard of the United States (ARNGUS). This declaration is made on personal knowledge of factual matters known to me and if called upon as a witness, I could and would testify competently to them.

2. Since March, 2006, I have been responsible for coordinating the National Guard Bureau's efforts in assisting the Departments of the Army and Air Force in defense of this action, including assisting the United States in its response to Plaintiffs' second set of document requests dated June 22, 2006. In this capacity, I would receive requests for responsive documents from

the Department of Justice (DoJ), and Army and Air Force and then I would communicate with the various NGB Directorates in an effort to gather all responsive documents and provide them to the DoJ, and the Army and Air Force.

3. Fulfilling our role as a communications channel, I also relayed the active-component's requests for responsive documents to the state Judge Advocates assigned as full time Active Guard & Reserve Judge Advocates (AGR-JA) in the various state National Guards of the named plaintiffs. I did not have the capacity to order the states to comply with the discovery request since the state National Guards are not in federal service (ARNGUS) and are only under the command and control of their respective governors and adjutant generals. However, the states AGR-JAs have historically been responsive to our requests for assistance in this matter without the need for a subpoena.

4. Immediately upon my assignment to this case, I also reviewed the disclosures provided to the plaintiffs' counsel by my predecessor, Major Christopher Brown, to ensure their completeness and to ensure that we met all of our continuing obligations to supplement our prior discovery responses under the applicable rules. I found that MAJ Brown had disclosed a large amount of material, encompassing ninety seven categories of documents, both in hard copy and electronically via CD-ROM. I reviewed plaintiff's first request for documentary discovery, which were very general, and found that MAJ Brown's responses were thorough, complete and that there was no new information which required supplemental disclosures.

5. During my review of the prior disclosures, I noticed that a many of the prior disclosures included Army and Air National Guard regulations which were readily available in the public domain. These documents can be easily obtained via the internet or the Pentagon or Maxwell Air Force Base Libraries.

DA 015

6. After I was notified of plaintiff's second set of document requests, I coordinated and conducted a broad and thorough search for all requested documents within the directorates of NGB and the National Guards of the various states of the named plaintiffs.

7. As a result, twenty three categories of documents were provided in response to plaintiffs' second request. This is in addition to the previous ninety-seven categories of documents provided to plaintiff in response to their first set of document requests.

8. On November 8, 2007, plaintiffs' served subpoena duces tecum upon the adjutants general of the states of North Carolina, Pennsylvania, Alabama, Hawaii, and Minnesota. Attached to each of these non-party subpoenas was a nine page itemized list of definitions and document requests. (See attachment 1 to this declaration). Additionally, the subpoenas each had another four page attachment in which the plaintiff's requested the adjutant general identify 30b(6) witnesses to discuss twenty seven different categories of information. (See attachment 2 to this declaration)

9. In order to avoid unnecessary duplication, the state judge advocates requested that I provide them with an accounting of the documents which they had previously provided to our office voluntarily. On November 27, 2007, I provided them a matrix of all the documents which the states had previously, voluntarily, provided in response to our prior requests to date. (See attachment 3 to this declaration). The documents listed in the matrix had been previously provided to plaintiffs with the exception of supplemental Alabama yearly training guides, which I had just received from Alabama days prior to November 27th.

10. However, later in the day on 27 November I received a message from LTC Donald McKinney, the state judge advocate for Hawaii, who said that plaintiffs' counsel had informed him that they had not received any documents pertaining to Hawaii. I found this surprising

because I knew that all documents pertaining to Hawaii were previously provided to plaintiff. However, out of an abundance of caution, I immediately provided to plaintiff's counsel, all information and documentation pertaining to the Hawaii National Guard (See attachment 4).

11. Furthermore, on November 28, 2007, I provided plaintiff with the recently received Alabama supplemental training guides. (See attachment 5).

12. On November 29, 2007, Mr. Jack Wallace, of the Alabama Attorney General's Office, sent the plaintiffs a copy of the November 27th matrix. (see plaintiffs' exhibit 3) As stated above, our office had previously provided all the items listed on the matrix to plaintiffs' counsel, either in the response to plaintiff's first requests for documents, second requests for documents or in our continuing obligation to provide updated records. However, now in a motion to compel, for the first time plaintiffs' counsel allege NGB-JA failed to provide twenty three documents listed on the November 27th matrix (see page 11 of plaintiffs' motion to compel).

13. Prior to filing their motion to compel, plaintiff did not call me or communicate with me in an effort to resolve the perceived ambiguity regarding the alleged non-production of the twenty three documents mentioned on page eleven of their motion to compel. If they had made the effort to call me prior to filing their motion, I would have informed them that the twenty three documents in question were provided by DoJ in electronic CD-ROM format in response to the first request for documents in Nov-Dec 2004.

14. However, in the spirit of cooperation I provided again on December 21, 2007, via email attachments, the alleged twenty-three categories of missing documents noted in plaintiff's motion to compel (see attachment 6).

15. Regarding plaintiff's request for documents, number 19, the original request was general in nature and stated as follows: "All documents reflecting the use and/or need for individual

training or self development training to support mission and./or deployment requirements". In response, the defendants provided thirty one categories of documents pertaining to the "use and/or need for individual training." As stated, the original request did not ask for state Unit Status Reports. It is only in plaintiff's motion that they clarify, for the first time that request 19 is for state Unit Status Reports. However, state Unit Status Reports pursuant to AR 220-1, para 2-7 are classified Secret/NoForn at the state level.

16. Plaintiff's request number 35 seeks information "given to new enlistees, new non-commissioned officers, new warrant officers, new commissioned officers and new field grade officers regarding training and training requirements." I requested of NGB-ART (Training), any additional documents beyond what had previously been provided in the first documentary requests which did encompass regulations and All State Memos which referenced training and was informed that there were no additional documents. Then plaintiff's counsel recently provided me with a portion of the booklet entitled "How to Succeed in the National Guard by Really Trying" indicated this was the type of document they were seeking. I then inquired of the NGB Directorates in particular NGB-ART (Training), NGB/A-1 and Mr. Thomas McNamara regarding the portion of the booklet provided and similar documents. I received negative responses on the origins of the booklet other than a recollection of it from the early 1990's or 1980's by Mr. Thomas McNamara. To date no similar publications have been discovered.

17. Regarding request number 50, in the original response to plaintiff's first request for documents, then CPT, now MAJ Brown provided from NGB twenty four CNGB All State Memorandums as well as a copy of NGR 351-1, Individual Military Education Training which were responsive to this request. I inquired again of NGB-J5 and NGB-ART if there were any additional documents to satisfy this request and was informed there were none. I also reviewed

DA 018

the NGB database of all NGB Policy Memorandums, All State Memorandums and NGB Information Memorandums from 2000 to 2007.

18. Regarding requests for state documents including Yearly Training Guides and Mission Essential Task Lists, I contacted the following AGR-Judge Advocates: COL Bryan Morgan (ALARNG), COL Richard Fay (NCARNG); LTC Robert Spinelli (PAARNG); LTC Duncan Aukland (OHARNG); LTC John Brossart (MNARNG); LTC Timothy Tomocho (CTARNG), Lt Col Donald Mckinney (HIANG); MAJ Timothy Ryan (PAARNG); MAJ Mathew Christian (MNARNG). I have been given to date and provided to plaintiffs, Yearly Training Guides for the Alabama, North Carolina, Connecticut, Pennsylvania and Ohio National Guards. Also, I have received and provided the Mission Essential Task List for the 151st Band of the ALARNG and the 711 Signal Battalion of the ALARNG.

19. Therefore, based on my review of the non-public and public documents produced by NGB Directorates and voluntarily provided by the state National Guards, I believe that the NGB-JA has conducted an exhaustive and reasonable search for documents responsive to plaintiffs' various requests for discovery, and have now produced these documents to plaintiffs.

20. Further, I have spoken with several AGR-JAs who received subpoenas duces tecum and have been informed that plaintiffs' counsel have not requested any additional records at this time in response to the subpoenas other than what has previously been provided to date.

I declare under penalty of perjury that the foregoing is true and correct in accordance with 28 U.S.C. § 1746.

Executed on this 4th day of January 2008.

Maximino Gonzalez, Jr.
Attorney Advisor, NGB-JA

# ATTACHMENT 1

AO88 (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

MIDDLE DISTRICT DISTRICT OF PENNSYLVANIA

William A. Clark, et. al.

V.

United States of America

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 00-644C
(United States Ct. of Federal Claims)

TO: Pennsylvania National Guard
ATTN: Maj. Gen. Jessica L. Wright
Pennsylvania National Guard Joint Force Headquarters
Bldg S-0-47, Fort Indiantown Gap
Annville, PA 17003

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Rhoads & Sinon, LLP<br>M&T Bank Building<br>Twelfth Floor<br>One South Market Square<br>Harrisburg, PA 17108-1146<br><br>*Please see attached Schedule B for the matters on which examination is requested. | 10 a.m.<br>December 7, 2007 |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

*Please see attached Schedule A for specific documents requested.

| PLACE | DATE AND TIME |
|---|---|
| Rhoads & Sinon, LLP<br>M&T Bank Building<br>Twelfth Floor<br>One South Market Square<br>Harrisburg, PA 17108-1146 | 10 a.m.<br>December 7, 2007 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

American LegalNet, Inc.
www.FormsWorkflow.com

AO88 (Rev. 12/06) Subpoena in a Civil Case

| PREMISES | DATE AND TIME |
| --- | --- |
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| --- | --- |
| Helen Michael (Plaintiffs' Counsel) | November 8, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Helen Michael, Esq.
Howrey LLP
1299 Pennsylvania Ave. NW
Washington, DC 20004
202-783-0800

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.



American LegalNet, Inc.
www.FormsWorkflow.com

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | November 8, 2007 | Bldg S-0-47, Fort Indiantown Gap<br>Annville, PA 17003 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Pennsylvania National Guard | FedEx |
| SERVED BY (PRINT NAME) | TITLE |
| Helen Michael, Esq. | Attorney |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on November 8, 2007
DATE

Helen K. Michael
SIGNATURE OF SERVER
Helen Michael, Esq.

ADDRESS OF SERVER
Howrey LLP
1299 Pennsylvania Ave. NW
Washington, DC 20004

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:



American LegalNet, Inc.
www.FormsWorkflow.com

## SCHEDULE A

### I. DEFINITIONS

For the purposes of this subpoena, terms not specifically defined shall be given their ordinary meaning. Use of the singular is also to be taken to include the plural, and vice-versa. The terms "and" and "or" have both conjunctive and disjunctive meanings. The terms "any" or "each" shall be construed to include and encompass "all" and the use of the word "the" shall not be construed as limiting the scope of any request.

1. "North Carolina National Guard" means all agencies, units, organizations, and instrumentalities of the North Carolina National Guard, and includes both the North Carolina Air National Guard and the North Carolina Army National Guard and all of the, agencies, units, organizations, and instrumentalities thereof.
2. "Correspondence course" means any type of training, instruction or education that is currently or was formerly offered by any means of a self-directed program of study, taken without the presence of an instructor or teacher.
3. "Document" is defined to be synonymous and equal in scope to usage of this term in Federal Court of Claims Rule 34(a). A document refers to a complete original or a true, correct, and complete copy and any non-identical copies of any written, graphic, typed, printed, filmed, recorded or electronic information in the custody and control of the United States or its agencies and instrumentalities no matter how produced, recorded, stored or reproduced, including computer generated or stored data (together with any instructions, programs, or passwords necessary to search and retrieve such data), as well as, without limitation, any writing, letter, telegram, electronic mail or message, statement, book, report, study, analysis, digest, record, handwritten note, working paper, chart, graph, diagram, drawing, photograph, videotape, audio recording, diary, notes of interviews or communications, as well as all applicable statutes, regulations, policy guidance,

directives, pamphlets, field manuals, memoranda, or implementing correspondence or instructions issued by any organization.

4. The term "functional training" has the same meaning it does in Field Manual 7-0, section 1-29.

5. The term "individual military education" encompasses the educational programs offered by the Army to which certain of the Specified Courses belong, which include, but are not limited to the following: the Officer Education System ("OES"); the Non Commissioned Officer Training System ("NCOES"); the Warrant Officer Education System ("WOES'); Professional Military Education ("PME"); and functional training.

6. The term "in-residence" when used to modify the terms "course," "instruction," or "training" refers to the type of "course," "instruction," or training" that is provided at an approved military training institution where students attend in the presence of an instructor, who conducts the training while in an active duty or inactive duty status.

7. The acronym "METL" stands for "Mission Essential Task List" and refers to the list that defines a particular military unit's operational capabilities. The METL defines the tasks that a unit must perform, the conditions under which the tasks might take place, and the standards to which the tasks must be accomplished in order to complete a mission. The tasks describe activities or objectives to be achieved; the conditions define the environment under which the tasks have to be accomplished; and the standards provide measures of effectiveness for determining whether the tasks have been accomplished successfully.

8. The term "military education system" refers to the education systems or series of courses offered by the Army to which certain of the Specified Courses belong, specifically, the Officer Education System ("OES"); the Non Commissioned

Officer Training System ("NCOES"); and the Warrant Officer Education System ("WOES.")

9. "National Guard" refers to the National Guard of the several states, which is governed by Title 32 of the U.S. Code. The term is defined to include the Air National Guard and Army National Guard.

10. "National Guard of the United States" refers to the National Guard of the United States, which is governed by Title 10 of the U.S. Code. The term is defined to include the Air National Guard of the United States and the Army National Guard of the United States.

11. "Plaintiffs" refers collectively to the parties listed in the Amended Complaint, including William A. Clark, James P. Davern, Robert E. Freeburg, Willie R. Johnson, Robert A. Mustin, Carol Risser, John Does 1 through 4 and Jane Does 2 and 3. At times herein, the term "Plaintiffs" is also used to mean each respective Plaintiff named and listed in the amended complaint.

12. The term "prerequisite" has the same meaning as it does in DA PAM 351-20, Army Correspondence Course Catalog.

13. "Relating to" or "related to" mean addressing, constituting, containing, concerning, discussing, describing, identifying, involving, analyzing, reflecting, regarding, referring to, showing, mentioning, stating, or pertaining to a given subject in whole or in part.

14. "Specified courses" refer to the correspondence courses or any subcourse thereof enrolled in by plaintiffs, which include, but are not limited to the following:

- Advanced Enlisted Professional Development Course ("AEPDC")
- Advanced Non-Commissioned Officer Course ("ANCOC")
- Army War College;
- Associate Logistics Executive Development course;
- Automated Logistical Specialist course;

- Aviation Maintenance Management course;
- Aviation Warrant Officer Advanced Course (or any other Officer Advanced Course)
- Basic Non-Commissioned Officer Course ("BNCOC");
- Basic Enlisted Professional Development Course ("BEPDC")
- Command and General Staff Officer Course ("CGSOC");
- Mechanical Maintenance NCO Course;
- Ordnance Officer Advanced Course (or any other Officer Advanced Course.)

15. "Subcourse" has the same meaning as it does in DA PAM 351-20, Army Correspondence Course Catalog.
16. The term "this litigation" refers to *Clark v. United States*, Case No. 00-644C.
17. "You" or "your" includes the North Carolina National Guard, and all its agencies, units, organizations, and instrumentalities, including but not limited to the North Carolina Air National Guard and North Carolina Army National Guard, and all of the agencies, units, organizations, and instrumentalities thereof.

## II. INSTRUCTIONS

1. All documents shall be produced in the order they are kept in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile thereof.

2. You shall produce the original of each document described below or if the original is not in your custody, then a copy thereof, and in any event, all non-identical copies which differ from the original or from the other copies produced for any reason, including, but not limited to, the making of notes thereon.

3. If production of documents is withheld on the ground of privilege, as to each such withheld document provide the following information no later than the first date on which documents are produced.

    a. which privilege is claimed;

    b. a precise statement of the facts upon which said claim of privilege is based;

    c. the following information describing each purportedly privileged document:

        i. its nature, e.g., agreement, letter, memorandum, tape, etc.;

        ii. the date it was prepared;

        iii. the date it bears;

        iv. the date it was sent;

        v. the date it was received;

        vi. the identity of the person preparing it;

        vii. the identity of the person sending it;

        viii. the identity of each person to whom it was sent or was to have been sent, including all addressees and all recipients of copies; and

        ix. a statement as to whom each identified person represented or purported to represent at all relevant times; and

    d. a description of the place where each copy of that document is kept, including the title or description of the file in which said document may be found and the location of such file.

4. Documents shall be produced in such fashion as to identify the department, branch, or office in whose possession they were located and, where applicable, the natural

person in whose possession they were found and the business address of each document's custodian(s).

5. Whenever a document is not produced in full or is produced in redacted form, so indicate on the document and state with particularity the reasons or reasons it is not being produced in full and describe with particularity those portions of the document which are not being produced.

6. If a document responsive to these requests was at any time in your possession, custody or control but is no longer available for production, as to each such document state the following information:

   a. whether the document is missing or lost;

   b. whether the document has been destroyed;

   c. whether the document has been transferred or delivered to another person and, if so, at whose request;

   d. whether the document has been otherwise disposed of; and

   e. the circumstances surrounding the disposition of the document and the date of its disposition.

## III. TIME PERIOD

These requests refer to the period from September 7, 1962 through the present, unless otherwise specifically indicated.

## IV. DOCUMENT REQUESTS

1. All documents relating to this litigation.
2. All documents concerning, discussing, or relating to plaintiff Willie R. Johnson.
3. The complete personnel file for plaintiff Willie R. Johnson.

4. All documents related to correspondence courses for members of the North Carolina National Guard.
5. All documents related to compensation for completion of correspondence courses by members of the North Carolina National Guard.
6. All documents related to individual military education requirements for members of the North Carolina National Guard.
7. All documents related to correspondence coursework as it relates to federal military education and promotion requirements.
8. All documents related to the standards, requirements, or process for promotion for members of the North Carolina National Guard, including but not limited to standards and requirements for maintaining a member's current rank or advancing in rank.
9. All documents related to reduction in grade for failure to complete any individual military education, including correspondence coursework.
10. All documents relating to the separation policies of the North Carolina National Guard, including, but not limited to, involuntary separation and bars to reenlistment.
11. All documents concerning the function, structure, makeup, relevant regulations and guidance, and decision-making discretion of selective retention boards (SRBs) and qualitative retention boards (QRBs).
12. All documents concerning whether any commissioned officer, warrant officer, or noncommissioned officer in the North Carolina National Guard is subject to an "up and out policy," under which such officer will be involuntarily separated from service if they are not selected for promotion within a specified time period.
13. All documents concerning whether any commissioned officer, warrant officer, or noncommissioned officer in the North Carolina National Guard who has failed to complete the training necessary for promotion and skill qualification, including

but not limited to correspondence courses, may be involuntarily separated from services or barred from reenlistment.

14. All documents relating to the consequences of the North Carolina National Guard members of failing to complete required individual military education and training, including correspondence coursework.
15. All documents related to conditional promotion, where the condition is completion of individual military education, including correspondence coursework.
16. All documents, signed, authored or issued by commanders at any level relating to the need for one or more members of the North Carolina National Guard to complete any Specified Course or Courses, any in residence equivalent(s) or phase(s) of a Specified Course, any prerequisite course for any Specified Course, any courses or subcourses within any of the Military Education Systems, or any functional training.
17. All form orders relating to training of a member of the North Carolina National Guard, including correspondence coursework.
18. All directives, orders, or commands authored or issued by commanders at any level relating to training members of the North Carolina National Guard.
19. All documents identifying any Specified Course, in residence equivalent or phase, any prerequisite course for any Specified Course, any component course or subcourse of a Military Education System, or any functional training as:
    a. a prerequisite for promotion to any rank;
    b. a prerequisite for Military Occupational Specialty ("MOS")
    c. a prerequisite for advancement in any military position, specialty, rank/grade, or career field; and/or
    d. satisfying the training requirements for deployment eligibility;

20. For all in residence courses for which completion of any Specified Course is a prerequisite, all documents identifying such in residence course as:
    a. a prerequisite for promotion to any rank;
    b. a prerequisite for Military Occupational Specialty ("MOS");
    c. a prerequisite for advancement in any military position, rank/grade, specialty, or career field; and/or
    d. satisfying the training requirements for deployment eligibility.
21. All documents relating to any quotas that govern how many North Carolina National Guard or other military service personnel may take in-residence courses at any given point in time.
22. All documents relating to the requirements that must be satisfied for the North Carolina National Guard units to obtain federal recognition and federal funding.
23. All documents relating to the enrollment process for the Specified Courses, including but not limited to, any approvals or authorizations required to enroll in any Specified Course.
24. All documents relating to any process or system, paper or electronic, used to record track, or document the enrollment in or completion of any individual or self-development training by a member of the National Guard.
25. All documents relating to members of the North Carolina National Guard completing individual or self-development training through correspondence courses for any reason, including meeting mission requirements.
26. All documents relating to the MOS training plans or Mission Essential Task Lists ("METL") for units of the North Carolina National Guard.
27. All documents relating to manpower requirements on an annual basis for the North Carolina National Guard, including but not limited to the number of needed service personnel in particular military specialties, and the number of needed non-commissioned and commissioned officers of particular ranks.

# ATTACHMENT 2

## SCHEDULE B

In accordance with Federal Court of Claims Rule 30(b)(6), Plaintiffs request that the North Carolina National Guard designate a representative to testify concerning the following matters, which incorporate by reference the definitions and time period set forth in Schedule A that accompanies this subpoena.

1. All facts related to all documents concerning, discussing, or relating to Plaintiff Willie R. Johnson.
2. All facts related to the complete personnel file for Plaintiff Willie R. Johnson.
3. All facts related to correspondence courses for members of the North Carolina National Guard.
4. All facts related to compensation for completion of correspondence courses by members of the North Carolina National Guard.
5. All facts related to individual military education requirements for members of the North Carolina National Guard.
6. All facts related to correspondence coursework as it relates to federal military education and promotion requirements.
7. All facts related to the standards, requirements, or process for promotion for members of the North Carolina National Guard, including but not limited to standards and requirements for maintaining a member's current rank or advancing in rank.
8. All facts related to reduction in grade for failure to complete any individual military education, including correspondence coursework.
9. All facts related to conditional promotion, where the condition is completion of individual military education, including correspondence coursework.
10. All facts related to all documents, signed, authored or issued by commanders at any level relating to the need for one or more members of the North Carolina National Guard to complete any Specified Course or Courses, any in residence

equivalent(s) or phase(s) of a Specified Course, any prerequisite course for any Specified Course, any courses or subcourses within any of the Military Education Systems, or any functional training.

11. All facts relating to the separation policies of the North Carolina National Guard, including, but not limited to, involuntary separation and bars to reenlistment.
12. All facts concerning the function, structure, makeup, relevant regulations and guidance, and decision-making discretion of selective retention boards (SRBs) and qualitative retention boards (QRBs).
13. All facts concerning whether any commissioned officer, warrant officer, or noncommissioned officer in the North Carolina National Guard is subject to an "up and out policy," under which such officer will be involuntarily separated from service if they are not selected for promotion within a specified time period.
14. All facts concerning whether any commissioned officer, warrant officer, or noncommissioned officer in the North Carolina National Guard who has failed to complete the training necessary for promotion and skill qualification, including but not limited to correspondence courses, may be involuntarily separated from services or barred from reenlistment.
15. All facts relating to the consequences of the North Carolina National Guard members of failing to complete required individual military education and training, including correspondence coursework.
16. All facts related to form orders relating to training of a member of the North Carolina National Guard, including correspondence coursework.
17. All facts related to all directives, orders, or commands authored or issued by commanders at any level relating to training members of the North Carolina National Guard.
18. All facts related to documents identifying any Specified Course, in residence equivalent or phase, any prerequisite course for any Specified Course, any

component course or subcourse of a Military Education System, or any functional training as:

a. a prerequisite for promotion to any rank;

b. a prerequisite for Military Occupational Specialty ("MOS")

c. a prerequisite for advancement in any military position, specialty, rank/grade, or career field; and/or

d. satisfying the training requirements for deployment eligibility;

19. For all in residence courses for which completion of any Specified Course is a prerequisite, all facts relating to all documents identifying such in residence course as:

e. a prerequisite for promotion to any rank;

f. a prerequisite for Military Occupational Specialty ("MOS");

g. a prerequisite for advancement in any military position, rank/grade, specialty, or career field; and/or

h. satisfying the training requirements for deployment eligibility

20. All facts relating to the enrollment process for the Specified Courses, including but not limited to, any approvals or authorizations required to enroll in any Specified Course.

21. All facts relating to any quotas that govern how many North Carolina National Guard personnel may take in-residence courses to any given point in time.

22. All facts relating to the requirements that must be satisfied for the North Carolina National Guard units to obtain federal recognition and federal funding.

23. All facts relating to any process or system, paper or electronic, used to record, track, or document the enrollment in or completion of any individual or self-development training by a member of the National Guard.

24. All facts relating to members of the North Carolina National Guard completing individual or self-development training through correspondence courses for any reason, including meeting mission requirements.
25. All facts relating to the MOS training plans or Mission Essential Task Lists ("METL") for units of the North Carolina National Guard.
26. All facts relating to manpower requirements on an annual basis for the North Carolina National Guard, including but not limited to the number of needed service personnel in particular military specialties, and the number of needed non-commissioned and commissioned officers of particular ranks.
27. All facts relating to the retention, custodian, organization, collection, and selection of all documents reviewed or produced in response to Schedule A that accompanies this subpoena.

# ATTACHMENT 3

## Gonzalez, Maximino MAJ - NGB-JA

**From:** Gonzalez, Maximino MAJ - NGB-JA
**Sent:** Tuesday, November 27, 2007 12:51 PM
**To:** McKinney, Donald LtCol NGHI/HIANG; Morgan, Bryan COL NGAL; Guise, Dennis CIV NGPA; Spinelli, Robert C LTC NGPA; Ryan, Timothy J MAJ NGPA; Fay, Richard COL NGNC; Tomcho, Timothy J MAJ NGCT; Aukland, Duncan D LTC NGOH; 'Wallace, Jack'; Michael.S.Vincent@hawaii.gov; Christian, Matthew CPT NGMN
**Cc:** Young, Charles Lt Col - NGB-JA; Zevitz, Daniel S Capt - NGB-JA
**Subject:** Clark v US (UNCLASSIFIED)

**Attachments:** Gonzalez, Maximino MAJ - NGB-JA.vcf; State Documents Received Matrix.xls

Gonzalez, Maximino MAJ - NGB-J... State Documents Received Matri...

Classification: UNCLASSIFIED
Caveats: FOUO

As requested by many of you in response to the subpoena's you have received, please find attached the Matrix of the documents received to date from the States in this action so far.

Max

Maximino Gonzalez, Jr.
Attorney Advisor
National Guard Bureau
Office of Chief Counsel
1411 Jefferson Davis Highway
Suite 11300
Arlington, VA 22202
(Office) 703-607-2701 DSN 327-2701
(Fax) 703-607-3682
(E-mail) maximino.gonzalez@us.army.mil

FOR OFFICIAL USE ONLY - This electronic transmission may contain information protected from release under the Freedom of Information Act. Do not release outside of DOD without the authority of NGB-JA. If you received this message in error, please notify the sender by reply e-mail, and then delete all copies of the message.

Classification: UNCLASSIFIED
Caveats: FOUO

# ATTACHMENT 4

## Gonzalez, Maximino MAJ - NGB-JA

**From:** Gonzalez, Maximino MAJ - NGB-JA
**Sent:** Tuesday, November 27, 2007 5:01 PM
**To:** 'MichaelH@howrey.com'
**Cc:** McKinney, Donald LtCol NGHI/HIANG; Dunlap, Jerrett W MAJ OTJAG; 'Mickle, Douglas (CIV)'; Roou Brian Lt Col AFLOA/JACL; Young, Charles Lt Col - NGB-JA; Michael.S.Vincent@hawaii.gov
**Subject:** Clark v US (UNCLASSIFIED)

**Attachments:** Gonzalez, Maximino MAJ - NGB-JA.vcf; HING Information Paper on ANG Officer Promotions 24 Aug 2004.PDF; HING Special Order MB-3 Appointment of Selective Retention Board & Instructions 23 May 1995.pdf; HING Seletive Retention Board Instructions 23 May 1995.pdf; Military Personnel Records of Robert Freeburg Sent 15 Nov 2004.pdf; Air force Correspondence info-Student History Query Robert Freeburg & James Davern 23 Nov 2004.pdf

Gonzalez, Maximino MAJ - NGB-J... | HING Information Paper on ANG ... | HING Special Order MB-3 Appoin... | HING Seletive Retention Board ... | Military Personnel Records of ... | Air force Correspondence info-...

Classification: UNCLASSIFIED
Caveats: FOUO

Ms. Michael:

Attached are documents forwarded by the Hawaii National Guard.

Maximino Gonzalez, Jr.
Attorney Advisor
National Guard Bureau
Office of Chief Counsel
1411 Jefferson Davis Highway
Suite 11300
Arlington, VA 22202
(Office) 703-607-2701 DSN 327-2701
(Fax) 703-607-3682
(E-mail) maximino.gonzalez@us.army.mil

FOR OFFICIAL USE ONLY - This electronic transmission may contain information protected from release under the Freedom of Information Act. Do not release outside of DOD without the authority of NGB-JA. If you received this message in error, please notify the sender by reply e-mail, and then delete all copies of the message.

Classification: UNCLASSIFIED
Caveats: FOUO

DA 041

# ATTACHMENT 5

## Gonzalez, Maximino MAJ - NGB-JA

**From:** Gonzalez, Maximino MAJ - NGB-JA
**Sent:** Wednesday, November 28, 2007 9:05 AM
**To:** 'MichaelH@howrey.com'
**Cc:** 'Dunlap, Jerrett W MAJ OTJAG'; Zevitz, Daniel S Capt - NGB-JA; Young, Charles Lt Col - NGB-JA; 'Mickle, Douglas (CIV)'; Roou Brian Lt Col AFLOA/JACL
**Subject:** Clark v US (UNCLASSIFIED)

**Attachments:** TRNG YR 99-00.pdf; TRNG YR 06-07.pdf; TRNG YR 95-96.pdf; TRNG YR 96-98.pdf; TRNG YR 97-98.pdf; Gonzalez, Maximino MAJ - NGB-JA.vcf

TRNG YR 99-00.pdf (306 KB) TRNG YR 06-07.pdf (402 KB) TRNG YR 95-96.pdf (667 KB) TRNG YR 96-98.pdf (178 KB) TRNG YR 97-98.pdf (290 KB) Gonzalez, Maximino MAJ - NGB-J...

Classification: UNCLASSIFIED
Caveats: FOUO

Ms Michael:

Attached are additional TAG Yearly Training Guides for Alabama.

Max

Maximino Gonzalez, Jr.
Attorney Advisor
National Guard Bureau
Office of Chief Counsel
1411 Jefferson Davis Highway
Suite 11300
Arlington, VA 22202
(Office) 703-607-2701 DSN 327-2701
(Fax) 703-607-3682
(E-mail) maximino.gonzalez@us.army.mil

FOR OFFICIAL USE ONLY - This electronic transmission may contain information protected from release under the Freedom of Information Act. Do not release outside of DOD without the authority of NGB-JA. If you received this message in error, please notify the sender by reply e-mail, and then delete all copies of the message.

Classification: UNCLASSIFIED
Caveats: FOUO

DA 043

# ATTACHMENT 6

## Gonzalez, Maximino MAJ - NGB-JA

**From:** Gonzalez, Maximino MAJ - NGB-JA
**Sent:** Friday, December 21, 2007 4:09 PM
**To:** 'MichaelH@howrey.com'
**Cc:** 'Mickle, Douglas (CIV)'; Roou Brian Lt Col AFLOA/JACL; Dunlap, Jerrett W MAJ OTJAG; Zevitz, Daniel S Capt - NGB-JA; Young, Charles Lt Col - NGB-JA
**Subject:** Clark v US (UNCLASSIFIED)

**Attachments:** Gonzalez, Maximino MAJ - NGB-JA.vcf; CTARNG-SR350-1 Operations & Training-Conneticut Army National Guard 19 July 1994.pdf; CTARNG-SR 350-1 Part II-Operations & Training-Conneticut Army National Guard 19 July 1994.pdf

Gonzalez, Maximino MAJ - NGB-J... CTARNG-SR350-1 Operations & Tr... CTARNG-SR 350-1 Part II-Operat...

Classification: UNCLASSIFIED
Caveats: FOUO

Ms. Michael:

Part 3 and final of the CT documents.

Max

Maximino Gonzalez, Jr.
Attorney Advisor
National Guard Bureau
Office of Chief Counsel
1411 Jefferson Davis Highway
Suite 11300
Arlington, VA 22202
(Office) 703-607-2701 DSN 327-2701
(Fax) 703-607-3682
(E-mail) maximino.gonzalez@us.army.mil

FOR OFFICIAL USE ONLY - This electronic transmission may contain information protected from release under the Freedom of Information Act. Do not release outside of DOD without the authority of NGB-JA. If you received this message in error, please notify the sender by reply e-mail, and then delete all copies of the message.

Classification: UNCLASSIFIED
Caveats: FOUO

DA 045

## Gonzalez, Maximino MAJ - NGB-JA

**From:** Gonzalez, Maximino MAJ - NGB-JA
**Sent:** Friday, December 21, 2007 4:08 PM
**To:** 'MichaelH@howrey.com'
**Cc:** 'Mickle, Douglas (CIV)'; Roou Brian Lt Col AFLOA/JACL; Dunlap, Jerrett W MAJ OTJAG; Zevitz, Daniel S Capt - NGB-JA; Young, Charles Lt Col - NGB-JA
**Subject:** Clark v US (UNCLASSIFIED)

**Attachments:** Gonzalez, Maximino MAJ - NGB-JA.vcf; CTARNG-SR 350-1 Part II-Training Change 6-Operations & Training Conneticut Army National Guard 19 July 1994.pdf; CTARNG-SR 350-1 Training Change 6-Operations & Training Conneticut Army National Guard 19 July 1994.pdf

Gonzalez, Maximino MAJ - NGB-J... | CTARNG-SR 350-1 Part II-Traini... | CTARNG-SR 350-1 Training Chang...

Classification: UNCLASSIFIED
Caveats: FOUO

Ms. Michael:

Part 2 of the CT documents.

Max

Maximino Gonzalez, Jr.
Attorney Advisor
National Guard Bureau
Office of Chief Counsel
1411 Jefferson Davis Highway
Suite 11300
Arlington, VA 22202
(Office) 703-607-2701 DSN 327-2701
(Fax) 703-607-3682
(E-mail) maximino.gonzalez@us.army.mil

FOR OFFICIAL USE ONLY - This electronic transmission may contain information protected from release under the Freedom of Information Act. Do not release outside of DOD without the authority of NGB-JA. If you received this message in error, please notify the sender by reply e-mail, and then delete all copies of the message.

Classification: UNCLASSIFIED
Caveats: FOUO

## Gonzalez, Maximino MAJ - NGB-JA

| | |
|---|---|
| **From:** | Gonzalez, Maximino MAJ - NGB-JA |
| **Sent:** | Friday, December 21, 2007 4:07 PM |
| **To:** | 'MichaelH@howrey.com' |
| **Cc:** | 'Mickle, Douglas (CIV)'; Roou Brian Lt Col AFLOA/JACL; Dunlap, Jerrett W MAJ OTJAG; Zevitz, Daniel S Capt - NGB-JA; Young, Charles Lt Col - NGB-JA |
| **Subject:** | Clark v. US (UNCLASSIFIED) |
| **Attachments:** | Gonzalez, Maximino MAJ - NGB-JA.vcf; CTNG Cir 350-01-01 Training Year 2002 & Training Year 2003 Command Training Guidance & Five Year Training Calendar 1 Oct 2000.pdf; CTNG Cir 350-01-01 Part II Training Year 2002 and Training Year 2003 Command Training Guidance & Five Year Training Calendar 1 Oct 2000.pdf |

Gonzalez, Maximino MAJ - NGB-J... CTNG Cir 350-01-01 Training Ye... CTNG Cir 350-01-01 Part II Tra...

Classification: UNCLASSIFIED
Caveats: FOUO

Ms. Michael:

I am resending the CT documents because I received a message that it could not be delivered to all recipients because it was too large so I will break up the transmission into 3 parts.

Max

Maximino Gonzalez, Jr.
Attorney Advisor
National Guard Bureau
Office of Chief Counsel
1411 Jefferson Davis Highway
Suite 11300
Arlington, VA 22202
(Office) 703-607-2701 DSN 327-2701
(Fax) 703-607-3682
(E-mail) maximino.gonzalez@us.army.mil

FOR OFFICIAL USE ONLY - This electronic transmission may contain information protected from release under the Freedom of Information Act. Do not release outside of DOD without the authority of NGB-JA. If you received this message in error, please notify the sender by reply e-mail, and then delete all copies of the message.

Classification: UNCLASSIFIED
Caveats: FOUO

## Gonzalez, Maximino MAJ - NGB-JA

**From:** Gonzalez, Maximino MAJ - NGB-JA
**Sent:** Friday, December 21, 2007 4:00 PM
**To:** 'MichaelH@howrey.com'
**Cc:** 'Mickle, Douglas (CIV)'; Roou Brian Lt Col AFLOA/JACL; Dunlap, Jerrett W MAJ OTJAG; Zevitz, Daniel S Capt - NGB-JA; Young, Charles Lt Col - NGB-JA
**Subject:** Clark v US (UNCLASSIFIED)

**Attachments:** Gonzalez, Maximino MAJ - NGB-JA.vcf; ALARNG Training Year Guidance 06-07.pdf; ALARNG EPPS Enlisted Personnel Promotion System PPT.ppt; ALARNG Training Year Guidance 97-98.pdf; ALARNG Training Year Guidance 96-98.pdf; ALARNG Training Year Guidance 95-96.pdf

Gonzalez, Maximino MAJ - NGB-J... | ALARNG Training Year Guidance ... | ALARNG EPPS Enlisted Personnel... | ALARNG Training Year Guidance ... | ALARNG Training Year Guidance ... | ALARNG Training Year Guidance ...

Classification: UNCLASSIFIED
Caveats: FOUO

Ms. Michael:

Part 4 and last of the transmission of state documents.

You should have a total of 23 documents and they should match the list of documents from my State document Matrix which do not have document numbers.

If not, then please let me know and I will retransmit them.

Max

Maximino Gonzalez, Jr.
Attorney Advisor
National Guard Bureau
Office of Chief Counsel
1411 Jefferson Davis Highway
Suite 11300
Arlington, VA 22202
(Office) 703-607-2701 DSN 327-2701
(Fax) 703-607-3682
(E-mail) maximino.gonzalez@us.army.mil

FOR OFFICIAL USE ONLY - This electronic transmission may contain information protected from release under the Freedom of Information Act. Do not release outside of DOD without the authority of NGB-JA. If you received this message in error, please notify the sender by reply e-mail, and then delete all copies of the message.

Classification: UNCLASSIFIED
Caveats: FOUO

DA 048

**Gonzalez, Maximino MAJ - NGB-JA**

**From:** Gonzalez, Maximino MAJ - NGB-JA
**Sent:** Friday, December 21, 2007 3:57 PM
**To:** 'MichaelH@howrey.com'
**Cc:** 'Mickle, Douglas (CIV)'; Roou Brian Lt Col AFLOA/JACL; Dunlap, Jerrett W MAJ OTJAG; Zevitz, Daniel S Capt - NGB-JA; Young, Charles Lt Col - NGB-JA
**Subject:** Clark v US (UNCLASSIFIED)

**Attachments:** Gonzalez, Maximino MAJ - NGB-JA.vcf; HING Special Order MB-3 Appointment of Selective Retention Board & Instructions 23 May 1995.pdf; HING Seletive Retention Board Instructions 23 May 1995.pdf; HING Information Paper on ANG Officer Promotions 24 Aug 2004.pdf; ALNG Memorandum of Instruction for Qualitative Retention Board 22 March 2004.pdf; ALARNG Training Year Guidance 99-00.pdf

Gonzalez, Maximino MAJ - NGB-J... | HING Special Order MB-3 Appoin... | HING Seletive Retention Board ... | HING Information Paper on ANG ... | ALNG Memorandum of Instruction... | ALARNG Training Year Guidance ...

Classification: UNCLASSIFIED
Caveats: FOUO

Ms. Michael:

Part 3 of my transmission of state documents.

Maximino Gonzalez, Jr.
Attorney Advisor
National Guard Bureau
Office of Chief Counsel
1411 Jefferson Davis Highway
Suite 11300
Arlington, VA 22202
(Office) 703-607-2701 DSN 327-2701
(Fax) 703-607-3682
(E-mail) maximino.gonzalez@us.army.mil

FOR OFFICIAL USE ONLY - This electronic transmission may contain information protected from release under the Freedom of Information Act. Do not release outside of DOD without the authority of NGB-JA. If you received this message in error, please notify the sender by reply e-mail, and then delete all copies of the message.

Classification: UNCLASSIFIED
Caveats: FOUO

DA 049

## Gonzalez, Maximino MAJ - NGB-JA

**From:** Gonzalez, Maximino MAJ - NGB-JA
**Sent:** Friday, December 21, 2007 3:55 PM
**To:** 'MichaelH@howrey.com'
**Cc:** 'Mickle, Douglas (CIV)'; Dunlap, Jerrett W MAJ OTJAG; Roou Brian Lt Col AFLOA/JACL; Zevitz, Daniel S Capt - NGB-JA; Young, Charles Lt Col - NGB-JA
**Subject:** Clark v. US (UNCLASSIFIED)

**Attachments:** Gonzalez, Maximino MAJ - NGB-JA.vcf; CTARNG-SR350-1 Operations & Training-Conneticut Army National Guard 19 July 1994.pdf; CTNG Cir 350-01-01 Training Year 2002 & Training Year 2003 Command Training Guidance & Five Year Training Calendar 1 Oct 2000.pdf; CTNG Cir 350-01-01 Part II Training Year 2002 and Training Year 2003 Command Training Guidance & Five Year Training Calendar 1 Oct 2000.pdf; CTARNG-SR 350-1 Training Change 6-Operations & Training Conneticut Army National Guard 19 July 1994.pdf; CTARNG-SR 350-1 Part II-Training Change 6-Operations & Training Conneticut Army National Guard 19 July 1994.pdf; CTARNG-SR 350-1 Part II-Operations & Training-Conneticut Army National Guard 19 July 1994.pdf

Gonzalez, Maximino MAJ - NGB-J... | CTARNG-SR350-1 Operations & Tr... | CTNG Cir 350-01-01 Training Ye... | CTNG Cir 350-01-01 Part II Tra... | CTARNG-SR 350-1 Training Chang... | CTARNG-SR 350-1 Part II-Traini... | CTARNG-SR 350-1 Part II-Operat...

Classification: UNCLASSIFIED
Caveats: FOUO

Ms. Michael:

Here is part two of the transmission of discovery from my State documents Matrix.

Maximino Gonzalez, Jr.
Attorney Advisor
National Guard Bureau
Office of Chief Counsel
1411 Jefferson Davis Highway
Suite 11300
Arlington, VA 22202
(Office) 703-607-2701 DSN 327-2701
(Fax) 703-607-3682
(E-mail) maximino.gonzalez@us.army.mil

FOR OFFICIAL USE ONLY - This electronic transmission may contain information protected from release under the Freedom of Information Act. Do not release outside of DOD without the authority of NGB-JA. If you received this message in error, please notify the sender by reply e-mail, and then delete all copies of the message.

Classification: UNCLASSIFIED
Caveats: FOUO

## Gonzalez, Maximino MAJ - NGB-JA

**From:** Gonzalez, Maximino MAJ - NGB-JA
**Sent:** Friday, December 21, 2007 3:52 PM
**To:** 'MichaelH@howrey.com'
**Cc:** 'Mickle, Douglas (CIV)'; Dunlap, Jerrett W MAJ OTJAG; Roou Brian Lt Col AFLOA/JACL; Zevitz, Daniel S Capt - NGB-JA; Young, Charles Lt Col - NGB-JA
**Subject:** Clark v. US (UNCLASSIFIED)

**Attachments:** Gonzalez, Maximino MAJ - NGB-JA.vcf; AL ARNG SMDR600-100 Officer Promotion & Career Managment 6 June 2003.doc; CTNG Cir 350-03-06 Training Year 2005 & Training Year 2006 Command Training Guidance and Five Year Training Calender 1 Oct 2003.doc; CTNG Cir 350-02-08 Training Year 2004 and Training Year 2005 Command Training Guidance and Five Year Training Calender 1 Oct 2002.doc; ALNG QRB Letter Templates.doc; ALNG Organization Bulletin No. 2-03 Administrative Chain of Command 1 Jan 2003.doc; ALARNG SMDR 600-200 Enlisted Personnel Promotion System with changes 1 & 2 1 Feb 2003.doc; ALARNG SMDR 600-200 Enlisted Personnel Promotion System (EPPS) 1 Feb 2005.doc

Gonzalez, Maximino MAJ - NGB-J... | AL ARNG SMDR600-100 Officer F | CTNG Cir 350-03-06 Training Ye... | CTNG Cir 350-02-08 Training Ye... | ALNG QRB Letter Templates.doc ... | ALNG Organization Bulletin No.... | ALARNG SMDR 600-200 Enlisted P.. | ALARNG SMDR 600-200 Enlisted P..

Classification: UNCLASSIFIED
Caveats: FOUO

Ms. Michael:

After the discussion today regarding discovery, I am sending you in several emails, the documents listed in my matrix of documents received from the state which were provided to you on CD ROM in 2004 which were not bates stamped. This should encompass the 23 documents you refer in your motion to compel which you claim are missing and I am sending them to you in an abundance of caution and since they are in electronic form, they can easily be sent via email

If these are not the 23 items you note are missing, please let me know.

As always, as we receive additional materials, like the updated records of SSG Clark, we will provide them to you as soon as we receive them.

I am also sending this to MAJ Dunlap so he can have the items copied and bates stamped.

Have a Happy Holiday.

Max

Maximino Gonzalez, Jr.
Attorney Advisor
National Guard Bureau
Office of Chief Counsel
1411 Jefferson Davis Highway
Suite 11300
Arlington, VA 22202
(Office) 703-607-2701 DSN 327-2701
(Fax) 703-607-3682
(E-mail) maximino.gonzalez@us.army.mil

DA 051

FOR OFFICIAL USE ONLY - This electronic transmission may contain information protected from release under the Freedom of Information Act. Do not release outside of DOD without the authority of NGB-JA. If you received this

message in error, please notify the sender by reply e-mail, and then delete all copies of the message.

Classification: UNCLASSIFIED
Caveats: FOUO

UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM A. CLARK, et al., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 00-644C |
| THE UNITED STATES | ) | (Judge Firestone) |
| Defendant. | ) | |

**DECLARATION OF LIEUTENANT COLONEL BRIAN M. ROOU**

I, Brian M. Roou, declare and state the following:

1. I am an officer in the US Air Force Judge Advocate General's Corps, currently assigned to the US Air Force Legal Operations Agency, General Litigation Division, Military Personnel Litigation Branch. This declaration is made on personal knowledge of factual matters known to me and if called upon as a witness, I could and would testify competently to them.

2. I was assigned as the lead counsel in this case for the Air Force on August 1, 2007. Upon my assignment to the case, I was briefed by the former counsel, Major Tracey Rockenbach, on her search for the requested documents and on what she had obtained. She told me that she conducted a broad and thorough search within the Department of the Air Force, as well as within the Department of Defense, in response to Plaintiffs' June 22, 2006 Second Set of Document Requests. In her declaration, Major Rockenbach details her efforts to obtain the requested documents.

3. The Air Force has searched reasonably and exhaustively and has produced nothing more than the documents responsive to plaintiffs' requests, including Requests 8, 12-15, 21, 27 and 28,

which plaintiffs specifically request to be compelled in their Motion to Compel Discovery and Extend Discovery Deadlines. Requests were sent to at least 20 different agencies and all responsive documents have been provided to plaintiffs, including the aforementioned documents, or plaintiffs have had access to responsive documents at Maxwell Air Force Base.

4. Plaintiffs assert in their motion that the "government has failed to produce a single document" for "Requests 34, 35, 41 ….," specifically regarding 34, for "all documents relating to the Career Field Education and Training Plans ("CFETP") for Air Force Specialty Code ("AFSC") 2FOX1 at the time the Air National Guard enlisted Plaintiffs completed the Specified Courses." This request was initially brought to my attention in a footnote to a letter from plaintiffs' counsel to Mr. Douglas Mickle, Department of Justice, dated August 20, 2007. On Oct 23, 2007, I contacted Master Sergeant (MSgt) William D. Brown, the Air Force Fuels Career Field Manager at Sheppard Air Force Base, Texas, to ask him for the requested documents. MSgt Brown conducted a thorough search of his files and could only locate the Specialty Training Standards (STS) for 1987 and 1990, as well as the CFTEPs for 1995, 1997 and 2001, which I forwarded to Major Jerry Dunlap, US Army Legal Services Agency, for him to forward to plaintiffs' counsel. About one month later, I again contacted MSgt Brown to inquire as to whether he was able to locate any more responsive documents. MSgt Brown informed me that he had found in a personal reference folder some more CFTEPs and STSs, which he forwarded to me, and I, in turn, forwarded to Major Dunlap.

5. The aforementioned documents were the only ones MSgt Brown or the regulation's proponent were able to produce. MSgt Brown knew of no other place in the Air Force that might have additional responsive documents. He told me that this is because pursuant to the Air Force Records Information Management System (AFRIMS) records disposition schedule,

CFETPs/STSs are destroyed upon revision, discontinuance of related courses, or when obsolete. MSgt Brown's office just happened to find the older copies of CFETPs/STSs in personal files that he kept for himself to use as reference, rather than destroy.

I declare under penalty of perjury that the foregoing is true and correct in accordance with 28 U.S.C. § 1746. Executed on this 4th day of January 2008.

Brian M. Roou
Lieutenant Colonel, U.S. Air Force

**DA 055**

**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| WILLIAM A. CLARK, et al., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 00-644C |
| THE UNITED STATES | ) | (Judge Firestone) |
| Defendant. | ) | |

**DECLARATION OF MAJOR CHRISTOPHER R. BROWN.**

I, Christopher R. Brown, declare and state the following:

1. I am an officer in the Alabama Army National Guard (ALARNG) and the Army National Guard of the United States (ARNGUS), currently serving in my ARNGUS capacity as a member of U.S. Army Judge Advocate General's Corps. I am a Major in the ALARNG and the ARNGUS. I am currently assigned to the U.S. Army Judge Advocate General's Legal Center and School as an Associate Professor in the International and Operational Law Department. I am an attorney duly admitted to the bar of the State of Alabama. This declaration is made on personal knowledge of factual matters known to me and if called upon as a witness, I could and would testify competently to them.

2. I was responsible for coordinating the National Guard Bureau's efforts in assisting the Departments of the Army and Air Force in the defense of the subject case during the approximate period of September of 2003 to July 2005 when I relocated to my current duty assignment. The case was somewhat dormant until approximately January 2004 when I was contacted by MAJ Gary Corn, US Army Litigation Division, about the case and his impending

efforts to draft a Motion for Summary Judgment. MAJ Corn, Mr. Doug Mickle, and myself worked on the Motion for Summary Judgment that was later filed.

3. To the best of my recollection, approximately in April 2004, I began communicating with the States and directorates at the National Guard Bureau in response to Plaintiff's request for documents. As I recall, this request was extremely broad in that it requested all documents in the areas of "training" of the National Guard, promotions, and "required" training. Upon receipt of Plaintiffs' document request, I conducted and coordinated a broad and thorough search for the requested documents within the regulations and documents of the National Guard Bureau and within the various states that had named plaintiffs. Although most, if not all of these National Guard Bureau regulations are available to the public through the internet, we personally reviewed and provided all applicable regulations by CD ROM to the Plaintiffs.

4. In order to conduct a more thorough search for National Guard Bureau regulations and documentation, I coordinated a meeting with all NGB (Army and Air Force) division chiefs that would conceivably have information in these areas, among those being the personnel and training divisions. At this meeting, Mr. Mickle, MAJ Corn and I discussed with them the basis of the case, explained the motion for discovery, and requested assistance from these division chiefs in providing the requested information. I further coordinated the preparation of affidavits with various NGB personnel, namely from the training division, as well as a retired CSM McNamara as expert with institutional knowledge in this area.

5. In order to coordinate a search of documents within the various states, I contacted and coordinated with a Judge Advocate (usually the Active Guard/Reserve (AGR) Judge Advocate) in each state with a named plaintiff. I provided to them a copy of the discovery request, and also provided a suspense. The states were requested to provide any regulations, documentation or

other guidance within their particular states (not National Guard Bureau, Army or Air Force regulations) relating to the request. When this information was received, it was provided to Plaintiffs' counsel in either hard copy or by CD ROM depending on the format in which it was provided. I also coordinated the affidavit of Mr. Clark's former commander, CW2 Mark Mills.

6. I also assisted in providing applicable US Army and Air Force regulations to the Plaintiffs' counsel. Although most, if not all of the regulations were available through the internet, we provided all relevant regulations in hard copy or CD ROM. We also coordinated with The Pentagon Library and, I believe, the US Air Force Library for the Plaintiff's counsels' access.

I declare under penalty of perjury that the foregoing is true and correct in accordance with 28 U.S.C. § 1746. Executed on this 18th day of December 2007.

Christopher R. Brown
Major, ARNGUS

DA 058

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM A. CLARK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 00-644C<br>(Chief Judge Damich) |

## JOINT STATUS REPORT REGARDING THE REMAINING BRIEFING SCHEDULE ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to this Court's November 18, 2003 Order, the parties hereby submit this Joint Status Report Regarding The Remaining Briefing Schedule On The Government's Motion For Summary Judgment ("JSR"). The parties propose that Plaintiffs file their opposition to the motion for summary judgment by February 11, 2005. The parties propose that Defendant file its reply to Plaintiffs' opposition by March 14, 2005.

### I. Parties' Statement Regarding Discovery

On July 15, 2004 the Court granted Plaintiffs leave to submit document requests to Defendant seeking certain specified categories of information necessary to oppose the government's summary judgment motion. The Court denied Plaintiffs' request to propound interrogatories and requests for admission and to conduct deposition discovery. On September 8, 2004, the Court issued an order to the parties originally setting September 17, 2004, as the due date for this JSR. However, on September 10, 2004, Defendant asked the Court for an enlargement of time to file the JSR because more time was needed to locate and produce documents from various agencies throughout the government. In response, the Court issued an

Order on September 15, 2004 extending discovery to October 4, 2004, and extending the deadline to file the JSR to October 15, 2004.

Defendant produced additional documents responsive to Plaintiffs' document requests on October 4, 2004. Plaintiffs thereafter identified several deficiencies in Defendants' production and, in a letter dated October 12, 2004, asked Defendant to cure these deficiencies. The parties then exchanged a series of letters and had several discussions regarding additional material related to Plaintiffs' document requests.

During these on-going discussions, the parties filed two motions for enlargement of time to file the JSR, dated October 15, 2004 and November 16, 2004, respectively. The Court granted these motions, ultimately extending the deadline to file the JSR to December 13, 2004.

Defendant produced documents on October 4, 2004, November 1, 2004, November 19, 2004, November 30 2004, and December 3, 2004, respectively. The government's November 30, 2004 production alone contained well over 2,000 pages of documents. Plaintiffs are continuing to request specific documentation from various document repositories maintained by Defendant. Additionally, Plaintiffs have asked the government to provide evaluation reports for Plaintiffs Davern and Johnson. These documents were not included in the personnel files produced by Defendant.[1] To the extent there is a dispute regarding any such discovery, it may be necessary to seek guidance of the Court.

---

[1] The Government contends that all available personnel records in the possession of the Department of Defense pertaining to all plaintiffs, to include Davern and Johnson, have been provided to plaintiffs' counsel. The Plaintiffs also respectfully submit that they are entitled to propound interrogatories and requests for admission and to conduct deposition discovery to obtain a full and accurate understanding of many of the documents that Defendant has produced. As an example of needed deposition discovery, Defendant's November 30, 2004 production contained several databases relating to quotas for various training courses. Without the ability to conduct depositions, Plaintiffs have been unable to ascertain the significance of all of the data contained in these documents. The Government contends that depositions, interrogatories and requests for admissions are not warranted here, because the "databases" are neither relevant nor responsive to the Court's discovery order.

The parties are also in the process of meeting and conferring about an appropriate protective order to protect the identity of the anonymous class representatives. We ask the assistance of the Court in the event that the parties are unable to come to an agreement in advance of Plaintiffs' filing date.

II. **Proposal for Further Proceedings on the Government's Summary Judgment Motion**

The parties propose that Plaintiffs file their opposition to the motion for summary judgment by February 11, 2005. The parties believe 60 days will provide sufficient time for Defendant to produce the documents described above and for Plaintiffs to review these documents and prepare the opposition. The parties also propose that Plaintiffs' Opposition Brief be limited to 40 pages, the same length as the government's motion for summary judgment. The parties propose that Defendant file its reply to Plaintiffs' opposition by March 14, 2005. For the Court's convenience, the parties attach a proposed order.

Respectfully submitted,

ROBERT SHULMAN
HELEN K. MICHAEL
HOWREY SIMON ARNOLD
& WHITE, L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 783-0800

RICHARD T. DORMAN
CUNNINGHAM, BOUNDS,
YANCE, CROWDER &
BROWN, LLC
1601 Dauphin Street
Mobile, AL 36604
(251) 471-6191

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JAMES M. KINSELLA
Deputy Director

DA 061

CHARLES J. COOPER
COOPER & KIRK, P.L.L.C.
1500 K Street, N.W., Ste. 200
Washington, DC 2005
(202) 220-9600

*Counsel for Plaintiffs*

DOUGLAS K. MICKLE
Department of Justice
Commercial Litigation Branch
Civil Division
Attn: Classification Unit, 8th Floor
1100 L St., N.W.
Washington, D.C. 20530

*Attorneys for Defendant*

Dated: December 13, 2004

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

No. 00-644C
(Filed: ____________)

| | |
|---|---|
| WILLIAM A. CLARK, individually and on behalf of all others similarly situated, | * |
| Plaintiff, | * |
| v. | * |
| THE UNITED STATES, | * |
| Defendant. | * |

**ORDER**

On December 13, 2004 the parties submitted a Joint Status Report regarding the remaining briefing schedule on the Government's motion for summary judgment. The parties proposed that Plaintiffs file their opposition to the motion for summary judgment by February 11, 2005. The parties proposed that Defendant file its reply to Plaintiffs' opposition by March 14, 2005. Finally, the parties proposed that Plaintiffs' Opposition Brief be limited to 40 pages.

It is hereby ORDERED that Plaintiffs will file their opposition to Defendant's motion for summary judgment on or before **February 11, 2005** and that Defendant will file its reply to Plaintiffs' opposition by on or before **March 14, 2005**. It is further ORDERED that Plaintiffs' Opposition Brief will be limited to 40 pages in length.

______________________
EDWARD J. DAMICH
Chief Judge

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing **Joint Status Report** were served by regular United States mail, postage prepaid, December 13, 2004 upon the party listed below:

Douglas Mickle
U.S, Department of Justice
Civil Division
Commercial Litigation Branch
Room 11050
1100 L St. NW
Washington, DC. 20530

Peter Cento
Peter Cento

**Mickle, Douglas (CIV)**

**From:** AdamsR@howrey.com
**Sent:** Friday, March 04, 2005 9:44 AM
**To:** Christopher.Soucie@hqda.army.mil
**Cc:** Mickle, Douglas (CIV); FahmyC@howrey.com
**Subject:** Re: Outstanding discovery issues (UNCLASSIFIED)

Thanks.

Rachel A. Adams
Howrey Simon Arnold & White, LLP
202.383.6691

-----Original Message-----
From: Soucie, Christopher P MAJ USALSA <Christopher.Soucie@hqda.army.mil>
To: 'Adams, Rachel' <AdamsR@howrey.com>
CC: 'douglas.mickle@usdoj.gov' <douglas.mickle@usdoj.gov>; Fahmy, Christina <FahmyC@howrey.com>
Sent: Fri Mar 04 08:51:52 2005
Subject: RE: Outstanding discovery issues (UNCLASSIFIED)

Classification: UNCLASSIFIED

Caveats: NONE

Rachel:

I just got back but will get a status update to you later today.

Chris

Christopher P. Soucie

Major, U.S. Army

Litigation Attorney, Litigation Division

Military Personnel Branch

901 N. Stuart St., Ste, 400

Arlington, VA 22203-1837

Tel: 703-696-1626

Fax: 703-696-8126

Christopher.Soucie@hqda.army.mil

DA 065

CONFIDENTIALITY NOTICE

The information contained in this e-mail and any accompanying attachments constitute confidential information which may be legally privileged. This information is the property of the U.S. Government. If you are not the intended recipient of this information, any disclosure, copying, distribution, or the taking of any action in reliance on this information is strictly prohibited. If you received this e-mail in error, please notify us

immediately by return e-mail or by calling (703) 696-2515.

-----Original Message-----
From: Adams, Rachel [mailto:AdamsR@howrey.com]
Sent: Wednesday, March 02, 2005 12:40 PM
To: Soucie, Christopher P MAJ USALSA
Cc: 'douglas.mickle@usdoj.gov'; Fahmy, Christina
Subject: FW: Outstanding discovery issues

Chris-

I wanted to follow up on some of the remaining discovery issues. Alan is out of the office right now and we would like to know where you are with regard to producing further documents and responding the the remaining discovery issues set forth below.

You can reach me on email or please feel free to call me at 202.383.6691 so we can discuss this matter.

Rachel A. Adams

-----Original Message-----
From: Sutton, Alan
Sent: Wednesday, February 23, 2005 7:26 PM
To: 'Soucie, Christopher P MAJ USALSA'
Cc: 'Douglas.Mickle@usdoj.gov'; Fahmy, Christina
Subject: Outstanding discovery issues

Chris - I do not expect to propound additional document requests at this point. However, I do need to follow up on the outstanding discovery issues.

First, please let me know what you want to do with respect to the ATRRS materials. You sent a series of emails to me re ATRRS information and then recalled them. I believe I still have the information on my computer. Am I to use this or do you intend to send something else instead?

Second, I am in the process of confirming that Alabama counsel has received all of the documents they have requested through Maxwell. I should know more by tomorrow or Friday.

Third, you sent one of two DA messages re the Commander's Safety Course. Thank you. I believe the remaining message is HQDA WASHINGTON DC//DAMO-TRZ//1512242 AUG 02//SAB.

Fourth, you have sent the METL information for the 151st Army Band, Alabama ARNG. Based on this, and your statement that the Air Guard has METL and YTG documents, I have modified the message below to account for outstanding METL and YTG documents.

Please copy Ms. Fahmy (copied above) in your response to this email.

Thank you again,

Alan

-----Original Message-----
From: Sutton, Alan
Sent: Wednesday, February 02, 2005 6:21 PM
To: 'Soucie, Christopher P MAJ USALSA'
Cc: 'Douglas.Mickle@usdoj.gov'; Fahmy, Christina; Michael, Helen
Subject: METL and YTGs

Chris,

Training guidance documents based on unit and organization METLs identify training requirements and METLs themselves are responsive to Plaintiffs' document requests.

We need METLs for:

* HQ, 60th Troop Command, NCARNG
* HHC 711 SIG BN (MSE), Alabama ARNG
* 148 FW, Duluth, MN, ANG
* 154 WG, Hawaii Air National Guard

We also need the training guidance documents (YTGs) issued by state Guard headquarters for 1995 to 2002 for the following organizations:

Alabama Army National Guard

Connecticut Army National Guard

Hawaii Air National Guard

Minnesota Air National Guard

Mississippi Army National Guard

North Carolina Air National Guard

North Carolina Army National Guard

Ohio Army National Guard

Pennsylvania Air National Guard

Pennsylvania Army National Guard

DA 067

Thank you,

Alan

Alan Sutton

Howrey Simon Arnold & White, LLP

1299 Pennsylvania Avenue, N.W.

Washington, DC 20004

Tel: 202.383.6599

Fax: 202.383.6610

Email: suttona@howrey.com

*********************************************************

Classification: UNCLASSIFIED

Caveats: NONE

---------------------------------------------------------------------------
---------------------

This email and any attachments contain information from the law firm of Howrey Simon Arnold & White, LLP, which may be confidential and/or privileged.
The information is intended to be for the use of the individual or entity named on this email.
If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this email is prohibited.
If you receive this email in error, please notify us by reply email immediately so that we can arrange for the retrieval of the original documents at no cost to you.

Classification: UNCLASSIFIED

Caveats: NONE

DA 068

## Mickle, Douglas (CIV)

**From:** Christopher.Soucie@hqda.army.mil
**Sent:** Monday, March 07, 2005 5:03 PM
**To:** AdamsR@howrey.com
**Cc:** Mickle, Douglas (CIV); Christopher.Brown@ngb.ang.af.mil; FahmyC@howrey.com; SuttonA@howrey.com; Christopher.Soucie@hqda.army.mil
**Subject:** RE: Outstanding discovery issues (UNCLASSIFIED)

**Attachments:** tmp.htm; 1986Aviation011.txt; 1994SelfDevelopmentSchool553.txt; 1995SelfDevelopmentSchool553.txt; 1996SelfDevelopmentSchool553.txt; 1997SelfDevelopmentSchool553.txt; 1998SelfDevelopmentSchool553.txt; 1999SelfDevelopmentSchool553.txt; 2000to2002SelfDevelopmentSchool553.txt; 1997InfantrySchool071.txt; 1996InfantrySchool071.txt; 1995InfantrySchool071.txt; 1994InfantrySchool071.txt; 1993InfantrySchool071.txt; 1999AdjutantGeneralSchool121805C.txt; 1996AdjutantGeneralSchool121805C.txt; 1993SupplAdjutantGeneralSchool121805C.txt; 1993AdjutantGeneralSchool121805C.txt; 1999Supply101.txt; 1998Supply101.txt; 1995Supply101.txt; 1994Supply101.txt; 1993Supply101.txt; 2001Armor171.txt; 1998Ordnance091.txt; 1997Ordnance091.txt; 2001School of Packaging908.txt; 1987Aviation011.txt; 1993SelfDevelopmentSchool553.txt; AviationLogiticsMGR011Q13.txt; Army Courses - ATRRS self.development.xls; Army Courses - ATRRS self.development.553.xls; Army Courses - ATRRS packaging.xls; Army Courses - ATRRS ordnance.and.packaging.xls; Army Courses - ATRRS music.xls; Army Courses - ATRRS lvnworth.and.warcollege.xls; Army Courses - ATRRS infantry.xls; Army Courses - ATRRS avn 011 bravo.xls; Army Courses - ATRRS armor.xls; Army Courses - ATRRS AG.xls; 1999SchoolofMusic514.txt; 1997SchoolofMusic514.txt; 1995SchoolofMusic514.txt; 1985Aviation011.txt; 1999Leavenworth701.txt; 1998Leavenworth701.txt; 2002SchoolofMusic514.txt; 2000SchoolofMusic514.txt; 1995Leavenwoth701.txt; 1994Leavenwoth701.txt; 1993Leavenwoth701.txt; 1997WarColleg217.txt; 1999Aviation011.txt; 1989Aviation011.txt; 1988Aviation011.txt; 2001Leavenworth701.txt; 2000Leavenworth701.txt; 2000Aviation011.txt; Army Courses - ATRRS AVN 011.xls; AMEDD1993.txt; AMEDD1992.txt; AMEDD1996.txt; 1989AMEDD081.txt; Army Courses - ATRRS AMEDD.xls; Army Courses - ATRRS maint.leader.xls; MaintenaceLeader.txt; Army Courses - ATRRS cdrs safety course.xls; CDRSafetyCourse .txt; Army Courses - ATRRS Avn logistics.xls; AviationLogiticsMGR552D11.txt; Army Courses - ATRRS supply.xls

| | | | | | | |
|---|---|---|---|---|---|---|
| tmp.htm (37 KB) | 1986Aviation011.txt (5 KB) | 1994SelfDevelopmentSchool553.t... | 1995SelfDevelopmentSchool553.t... | 1996SelfDevelopmentSchool553.t... | 1997SelfDevelopmentSchool553.t... | 1998SelfDevelopmentSchool553.t... |
| 1999SelfDevelopmentSchool553.t... | 2000to2002SelfDevelopmentSchoo... | 1997InfantrySchool071.txt (28 ... | 1996InfantrySchool071.txt (24 ... | 1995InfantrySchool071.txt (25 ... | 1994InfantrySchool071.txt (12 ... | 1993InfantrySchool071.txt (8 K... |
| 1999AdjutantGeneralSchool12180... | 1996AdjutantGeneralSchool12180... | 1993SupplAdjutantGeneralSchool... | 1993AdjutantGeneralSchool12180... | 1999Supply101.txt (28 KB) | 1998Supply101.txt (29 KB) | 1995Supply101.txt (61 KB) |
| 1994Supply101.txt (48 KB) | 1993Supply101.txt (10 KB) | 2001Armor171.txt (14 KB) | 1998Ordnance091.txt (60 KB) | 1997Ordnance091.txt (66 KB) | 2001School of Packaging908.txt... | 1987Aviation011.txt (6 KB) |
| 1993SelfDevelopmentSchool553.t... | AviationLogiticsMGR011Q13.txt ... | Army Courses - ATRRS self.deve... | Army Courses - ATRRS self.deve... | Army Courses - ATRRS packaging... | Army Courses - ATRRS ordnance.... | Army Courses - ATRRS music.xls... |

| | | | | | | |
|---|---|---|---|---|---|---|
| Army Courses - ATRRS lvnworth.... | Army Courses - ATRRS infantry.... | Army Courses - ATRRS avn 011 b... | Army Courses - ATRRS armor.xls... | Army Courses - ATRRS AG.xls (2... | 1999SchoolofMusic 514.txt (4 KB... | 1997SchoolofMusic 514.txt (4 KB... |
| 1995SchoolofMusic 514.txt (3 KB... | 1985Aviation011.txt (6 KB) | 1999Leavenworth701.txt (9 KB) | 1998Leavenworth701.txt (9 KB) | 2002SchoolofMusic 514.txt (4 KB... | 2000SchoolofMusic 514.txt (4 KB... | 1995Leavenwoth701.txt (47 KB) |
| 1994Leavenwoth701.txt (32 KB) | 1993Leavenwoth701.txt (4 KB) | 1997WarColleg217.txt (2 KB) | 1999Aviation011.txt (17 KB) | 1989Aviation011.txt (8 KB) | 1988Aviation011.txt (7 KB) | 2001Leavenworth701.txt (10 KB)... |
| 2000Leavenworth701.txt (9 KB) | 2000Aviation011.txt (17 KB) | Army Courses - ATRRS AVN 011.x... | AMEDD1993.txt (41 KB) | AMEDD1992.txt (42 KB) | AMEDD1996.txt (55 KB) | 1989AMEDD081.txt (43 KB) |
| Army Courses - ATRRS AMEDD.xls... | Army Courses - ATRRS maint.lea... | MaintenaceLeader.txt (14 KB) | Army Courses - ATRRS cdrs safe... | CDRSafetyCourse.txt (2 KB) | Army Courses - ATRRS Avn logis... | AviationLogiticsMGR 552D11.txt ... |
| Army Courses - ATRRS supply.xl... | | | | | | |

Classification: UNCLASSIFIED

Caveats: NONE

All: (discovery)

1. Attached are the ATRRS reports.

Notes from Mr. Steinway in reading them: Step 1 - See the spreadsheet (for example, see the line 9 Aviation Logistics Manager Course). It has two primary course numbers 552 D11 and 011 Q13. I've attached two text files for the requested FY. The Program of Instruction (POI) Proponent list for each course is attached with the data requested. Scroll down the text file and look for the course number.

2. Nothing needed.

3. and 4. No change.

We also delivered a CD today to you that contained some of the documents that you requested, and also a couple that you did not request but related.

Chris

Christopher P. Soucie

Major, U.S. Army

Litigation Attorney, Litigation Division

Military Personnel Branch

901 N. Stuart St., Ste, 400

Arlington, VA 22203-1837

Tel: 703-696-1626

Fax: 703-696-8126

HYPERLINK "mailto:Christopher.Soucie@hqda.army.mil"Christopher.Soucie@hqda.army.mil

CONFIDENTIALITY NOTICE

The information contained in this e-mail and any accompanying attachments constitute confidential information which may be legally privileged. This information is the property of the U.S. Government. If you are not the intended recipient of this information, any disclosure, copying, distribution, or the taking of any action in reliance on this information is strictly prohibited. If you received this e-mail in error, please notify us immediately by return e-mail or by calling (703) 696-2515.

-----Original Message-----
From: Adams, Rachel [mailto:AdamsR@howrey.com]
Sent: Friday, March 04, 2005 4:14 PM
To: Soucie, Christopher P MAJ USALSA
Cc: 'Brown, Christopher R CPT NGB-JA'; Fahmy, Christina; Sutton, Alan; douglas.mickle@usdoj.gov
Subject: RE: Outstanding discovery issues (UNCLASSIFIED)

Chris-

I look forward to hearing from you on the outstanding issues as soon as possible. With regard to item no 2, we have received a few documents from Maxwell. Apparently, the library is copying more and we will be receiving them as they are copied. Let's plan on touching base sometime Monday. I am in the office all day so let's talk.

Rachel Adams

-----Original Message-----
From: Soucie, Christopher P MAJ USALSA [mailto:Christopher.Soucie@hqda.army.mil]
Sent: Friday, March 04, 2005 4:06 PM
To: 'Adams, Rachel'
Cc: Soucie, Christopher P MAJ USALSA; 'Brown, Christopher R CPT NGB-JA'
Subject: RE: Outstanding discovery issues (UNCLASSIFIED)

Classification: UNCLASSIFIED

Caveats: NONE

Rachel:

Response to the email below:

1. Will have this finalized early next week.

2. Waiting on word from Alan.

3. To date, no one has tracked this down. I am waiting on 2 other inquiries - will let you know by Tuesday.

4. National Guard Litigation Attorney working this issue will be back Monday.

If there are other outstanding issues, please let me know. Thanks.

Chris

Christopher P. Soucie

Major, U.S. Army

Litigation Attorney, Litigation Division

Military Personnel Branch

901 N. Stuart St., Ste, 400

Arlington, VA 22203-1837

Tel: 703-696-1626

Fax: 703-696-8126

HYPERLINK "mailto:Christopher.Soucie@hqda.army.mil"Christopher.Soucie@hqda.army.mil

CONFIDENTIALITY NOTICE

The information contained in this e-mail and any accompanying attachments constitute confidential information which may be legally privileged. This information is the property of the U.S. Government. If you are not the intended recipient of this information, any disclosure, copying, distribution, or the taking of any action in reliance on this information is strictly prohibited. If you received this e-mail in error, please notify us immediately by return e-mail or by calling (703) 696-2515.

-----Original Message-----

From: Adams, Rachel [mailto:AdamsR@howrey.com]
Sent: Wednesday, March 02, 2005 12:40 PM
To: Soucie, Christopher P MAJ USALSA
Cc: 'douglas.mickle@usdoj.gov'; Fahmy, Christina
Subject: FW: Outstanding discovery issues

Chris-

I wanted to follow up on some of the remaining discovery issues. Alan is out of the office right now and we would like to know where you are with regard to producing further documents and responding the the remaining discovery issues set forth below.

You can reach me on email or please feel free to call me at 202.383.6691 so we can discuss this matter.

Rachel A. Adams

-----Original Message-----
From: Sutton, Alan
Sent: Wednesday, February 23, 2005 7:26 PM
To: 'Soucie, Christopher P MAJ USALSA'
Cc: 'Douglas.Mickle@usdoj.gov'; Fahmy, Christina
Subject: Outstanding discovery issues

Chris - I do not expect to propound additional document requests at this point. However, I do need to follow up on the outstanding discovery issues.

First, please let me know what you want to do with respect to the ATRRS materials. You sent a series of emails to me re ATRRS information and then recalled them. I believe I still have the information on my computer. Am I to use this or do you intend to send something else instead?

Second, I am in the process of confirming that Alabama counsel has received all of the documents they have requested through Maxwell. I should know more by tomorrow or Friday.

Third, you sent one of two DA messages re the Commander's Safety Course. Thank you. I believe the remaining message is HQDA WASHINGTON DC//DAMO-TRZ//1512242 AUG 02//SAB.

Fourth, you have sent the METL information for the 151st Army Band, Alabama ARNG. Based on this, and your statement that the Air Guard has METL and YTG documents, I have modified the message below to account for outstanding METL and YTG documents.

Please copy Ms. Fahmy (copied above) in your response to this email.

Thank you again,

Alan

DA 073

**Mickle, Douglas (CIV)**

| | |
|---|---|
| **From:** | SuttonA@howrey.com |
| **Sent:** | Monday, March 21, 2005 4:55 PM |
| **To:** | Mickle, Douglas (CIV); Christopher.Soucie@hqda.army.mil |
| **Cc:** | Christopher.Brown@ngb.ang.af.mil; Christopher.Brown@ngb.ang.af.mil; FahmyC@howrey.com |
| **Subject:** | Discovery Matters (UNCLASSIFIED) & PO |
| **Attachments:** | tmp.htm |

tmp.htm (16 KB)

Unfortunately I left the CD at home so I will have to get back to you tomorrow on the Yearly Training Guidance materials.

We should probably also talk about the ATRRS materials produced by Steinway. I don't know if you have had a chance to look at it, but, in comparing it with my notes on the previous ATRRS materials, I am not sure this breaks out the way Steinway suggested it would.

Helen is looking at the draft PO. It contains the provisions Doug mentioned in his email last week, but we will need to discuss details. Helen should complete her review tomorrow and I will send it then.

We are free except for a 4:00pm meeting tomorrow. Let me know if there is a better time for you.

Thank you,
Alan

-----Original Message-----
From: Soucie, Christopher P MAJ USALSA [mailto:Christopher.Soucie@hqda.army.mil]
Sent: Monday, March 21, 2005 9:21 AM
To: 'Sutton, Alan'
Cc: Christopher.Brown@ngb.ang.af.mil; 'Douglas.Mickle@usdoj.gov'; 'Brown, Christopher R CPT NGB-JA'
Subject: RE: Discovery Matters (UNCLASSIFIED)

Classification: UNCLASSIFIED

Caveats: NONE

Alan:

Which ones did you not receive? That was intended to be all of the ones that you requested.

Chris

DA 074

Christopher P. Soucie

Major, U.S. Army

Litigation Attorney, Litigation Division

Military Personnel Branch

901 N. Stuart St., Ste, 400

Arlington, VA 22203-1837

Tel: 703-696-1626

Fax: 703-696-8126

Christopher.Soucie@hqda.army.mil <mailto:Christopher.Soucie@hqda.army.mil>

CONFIDENTIALITY NOTICE

The information contained in this e-mail and any accompanying attachments constitute confidential information which may be legally privileged. This information is the property of the U.S. Government. If you are not the intended recipient of this information, any disclosure, copying, distribution, or the taking of any action in reliance on this information is strictly prohibited. If you received this e-mail in error, please notify us immediately by return e-mail or by calling (703) 696-2515.

-----Original Message-----
From: Sutton, Alan [mailto:SuttonA@howrey.com]
Sent: Friday, March 18, 2005 6:30 PM
To: Soucie, Christopher P MAJ USALSA
Cc: Christopher.Brown@ngb.ang.af.mil; 'Douglas.Mickle@usdoj.gov'
Subject: RE: Discovery Matters (UNCLASSIFIED)

Chris - I received the CD. However, it does not appear to contain all YTGs for all states. Is it supposed to or is there another on the way?

-----Original Message-----
From: Soucie, Christopher P MAJ USALSA
[mailto:Christopher.Soucie@hqda.army.mil]
Sent: Friday, March 18, 2005 4:00 PM
To: SuttonA@howrey.com
Cc: Christopher.Brown@ngb.ang.af.mil; Soucie, Christopher P MAJ USALSA; 'Douglas.Mickle@usdoj.gov'
Subject: RE: Discovery Matters (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

Alan:

Please email me when you receive the CD today with the remaining discovery information.

Also, regarding the gathering of records, we also need the following information to expedite the process (more important for courses taken prior to 1991):

- courses
- timeframe of when they took/completed the course
- ideally, ask the students for a completion notice

Hope this helps.

Chris

Christopher P. Soucie
Major, U.S. Army
Litigation Attorney, Litigation Division Military Personnel Branch
901 N. Stuart St., Ste, 400
Arlington, VA 22203-1837
Tel: 703-696-1626
Fax: 703-696-8126
Christopher.Soucie@hqda.army.mil
CONFIDENTIALITY NOTICE
The information contained in this e-mail and any accompanying attachments constitute confidential information which may be legally privileged. This information is the property of the U.S. Government. If you are not the intended recipient of this information, any disclosure, copying, distribution, or the taking of any action in reliance on this information is strictly prohibited. If you received this e-mail in error, please notify us immediately by return e-mail or by calling (703) 696-2515.

-----Original Message-----
From: Douglas.Mickle@usdoj.gov [ mailto:Douglas.Mickle@usdoj.gov <mailto:Douglas.Mickle@usdoj.gov> ]
Sent: Tuesday, March 15, 2005 6:02 PM
To: SuttonA@howrey.com
Cc: Christopher.Brown@ngb.ang.af.mil; Soucie, Christopher P MAJ USALSA
Subject: Discovery Matters

Alan:

As we discussed today after the hearing, I will ask Major Soucie to make what I think will be a final document production this Monday. If Major Soucie can't make that deadline, he'll contact you directly, and at least give you all that we now have on hand.

Reference the Court's discovery order, we will gather up names and offices of individuals within DoD who will need access to the plts' identity in order to evaluate and produce the records you seek. I believe all names will be from agencies that are echelons above Corps level, with no ties to the state AG's office. As we discussed, we will need to have each plt's name, SSN, unit of assignment or service, and MOS or AFSI to expedite the search process. You will also need to tell us what records you want. I believe today you said you only wanted their on-line records that listed their correspondence courses.

As for the confidentiality agreement, anyone we need to have access to the plts' identity will sign a confidentiality agreement. I suggest we use the model agreement set forth in the Court's rules (usually for POs in CDA cases).

To avoid having you produce PA waivers, lets include no more than two sentences that ensure production of these records is pursuant to Court Order and thus complies with the requirements of the PA. I don't think this is needed -- but it might help speed up the process because we have had same people balk at giving us records absent an "order."

Lastly, I think we'll need language that states either party can seek leave of Court to modify this discovery agreement if a party thinks it needs to share plts ID information with other sources.

I'll be back Monday to discuss the order. Please fell free to contact Chris Soucie directly if you want to start working the details of the order.

Thx

Doug

Classification: UNCLASSIFIED

Caveats: NONE

Classification: UNCLASSIFIED

Caveats: NONE

DA 077