**INDEX TO DEFENDANT'S APPENDIX**

Declaration of Major Dunlap . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Declaration of Major Rockenbach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Declaration of Mr. Gonzalez . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Declaration of Lieutenant Colonel Roou . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

Declaration of Captain Brown . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Joint Status Report, December 13, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

E-mail string from March 4, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

E-mail string from March 7, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

E-mail string from March 21, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WILLIAM A. CLARK, et al., | |
| Plaintiff, | |
| v. | No. 00-644C |
| THE UNITED STATES | (Judge Firestone) |
| Defendant. | |

**DECLARATION OF MAJOR JERRETT W. DUNLAP, JR.**

I, Jerrett W. Dunlap, Jr., declare and state the following:

1. I am an officer in the U.S. Army Judge Advocate General's Corps, currently assigned to the U.S. Army Legal Services Agency, Litigation Division, Military Personnel Litigation Branch. I am an attorney duly admitted to the bar of the Court of Federal Claims, currently assigned as agency counsel for the Department of the Army. I am a major in the Regular Army. This declaration is made on personal knowledge of factual matters known to me and if called upon as a witness, I could and would testify competently to them.

2. I have been responsible for coordinating the Army's response to Plaintiffs' June 22, 2006 Second Set of Document Requests. Upon receipt of plaintiffs' document request, I coordinated and conducted a broad and thorough search for the requested documents within the Department of the Army, as well as within the Department of Defense. I determined I could best conduct the search for documents that were responsive to plaintiffs' document request by undertaking a two pronged approach. This approach would include both a top-down search for responsive documents, as well as a grass-roots search for responsive documents from the subordinate Army units responsible for administering and conducting training.

3. I conducted a top-down search for responsive documents by contacting officials responsible for training and training policy at the Pentagon in the Department of Defense as well as Headquarters, Department of the Army. These Pentagon officials helped me identify the individuals and organizations that would have documents and information related to plaintiffs' document production request. In addition to numerous telephonic discussions with Pentagon officials, I also visited the officials and went through their files with them in order to identify all responsive documents.

4. In addition to contacting Pentagon officials, I conducted the top-down search for responsive documents by contacting officials at the U.S. Army Training and Doctrine Command ("TRADOC"). TRADOC is responsible for recruiting, training, and educating the Army's Soldiers; developing its leaders; supporting training in units; developing Army doctrine, standards, and building the future Army. I began by contacting the TRADOC Staff Judge Advocate, the senior legal advisor in TRADOC, who facilitated the document production search by contacting TRADOC officials involved in administering correspondence course training and policy and ensuring they cooperated with the document production request. I then contacted the TRADOC officials that had been identified as being involved in administering correspondence course training and policy in order to identify all responsive documents.

5. Simultaneous with conducting the search for responsive documents through Pentagon and TRADOC officials, I contacted each of the Army's schools responsible for providing training. Although these schools fall under TRADOC, a two pronged approach was employed to ensure all responsive documents were identified and produced. The various Army schools are located on several different installations throughout the United States. I also employed a two pronged approach with regard to each individual school. In addition to contacting the school directly, I

also contacted the office of the Staff Judge Advocate on each installation to ensure all relevant officials were located and to facilitate identification and production of documents.

6. Use of this multi-pronged approach resulted in the redundant identification and production of many documents. Nevertheless, this method was employed to provide a thorough search in response to plaintiffs' document production request. My records indicate that I communicated with at least fifty-eight Department of Defense and Army officials in my efforts to produce responsive documents. While not all of these officials possessed information regarding plaintiffs' document production request, they assisted in identifying those individuals who could provide assistance. The United States has already informed plaintiffs of the approximately twenty-five Army or Department of Defense officials who were identified as either producing responsive documents or having searched for responsive documents.

7. The responses from Army officials clearly indicated the broad wording of plaintiffs' document production requests resulted in a truly burdensome requirement to search through files for such an expansive range of documents over such a lengthy timeframe. It was also noted that there were not officials available who had sufficient longevity and background to competently speak to the availability of documents back to 1970. Although the Army officials indicated the broad wording of the document production requests made it impossible to provide documents that satisfied all of plaintiffs' document production requests, the Army officials nevertheless conducted an exhaustive and reasonable search for documents responsive to plaintiffs' various requests for discovery, and have now produced these documents that they identified as falling within the broad parameters of plaintiffs' document production requests.

8. On August 1, 2006, Christina Fahmy and Allan Sutton reviewed all responsive, non-privileged, documents that had been collected from Department of Defense and Army officials,

as well as the responsive, non-privileged, documents produced by the United States Air Force and the National Guard Bureau, which were forwarded to my office. Our records indicate that 275 responsive documents were made available to plaintiffs. This is in addition to the numerous documents that were previously produced by the United States and provided to plaintiffs on fourteen CDs with documents in 2004 and 2005 in accordance with the Court's July 15, 2005 order. The documents provided to Mr. Sutton and Ms. Fahmy did not have identification numbers. After Ms. Fahmy and Mr. Sutton had examined the documents, Mr. Sutton asked how the documents would be made available; specifically stating plaintiffs would not require the Army Correspondence Course Catalogs. I informed him that I would have the documents copied and delivered via courier. Mr. Sutton also indicated he was going to send me a letter clarifying plaintiffs' response to the Government's objections regarding plaintiffs' document production request. Mr. Sutton indicated he would send the clarifying letter the next day. I determined that I would wait until Mr. Sutton's clarifying letter arrived before I forwarded the documents, incase the clarifying letter impacted on the nature of the document production.

9. Upon receipt of Mr. Sutton's clarifying letter, I personally copied all documents, less the Army Correspondence Course Catalogs, that had been reviewed by Mr. Sutton and Ms. Fahmy in our office and had those documents delivered via courier. I did not include the approximate 3,950 pages from the Army Correspondence Course Catalogs, consistent with Mr. Sutton's request. In order to speed the production of the documents, I did not affix document identification numbers. Mr. Sutton's clarifying letter did not mention the need for identifying numbers, even though the documents contained no such identifying numbers at the time of inspection.

DA 04

10. I also contacted Major Chris Soucie, who was responsible for document production for the Army pursuant to the Court's July 15, 2005 order, who stated document identification numbers had not been required under the previous document production request, in order to speed production. Major Soucie indicated that our practices for searching for documents were consistent with the practice he employed under the Court's July 15, 2005 order, although the instant document production requests were broader, requiring a broader search.

11. I continued to search for responsive documents and to consolidate them as they were received from officials in the Department of Defense and its subordinate agencies. Plaintiffs' counsel also communicated their belief that there were deficiencies in the Government's document production. Ms. Fahmy stated during a phone call that the lack of identifying number on the documents made it difficult for them to identify the alleged deficiencies. While we were in the process of attempting to resolve the alleged deficiencies, plaintiffs' counsel proposed that discovery be stayed pending enactment of the 2007 National Defense Authorization Act. The Court granted the parties joint motion and stayed discovery on September 8, 2006.

12. After the Court reopened discovery, I directed a legal technician employed by the Army's Litigation Division to attach identification numbers to our copies of the responsive documents and to put them in binders. All of the documents that were in our control that had been provided to plaintiffs were included in the binders. During a teleconference with plaintiffs' counsel on November 29, 2007, I offered to send plaintiffs a copy of the binders with the document identification numbers. During this same teleconference, Plaintiffs' counsel accepted our offer to grant them access to the Pentagon library.

13. On December 3, 2007, and again on December 6, 2007, our paralegal staff escorted Ms. Fahmy and her colleague to the Pentagon library. Our paralegal staff assisted Ms. Fahmy and

her colleague to copy numerous regulations at the Pentagon library. This was the second and third time that Ms. Fahmy had been escorted to the Pentagon library, as our paralegal staff had previously escorted Mr. Sutton and Ms. Fahmy to the Pentagon library to find documents under the Court's July 15, 2005 order. After discussing this issue with Major Soucie and then reviewing his case notes, it is apparent that plaintiffs' counsel also were given full access to United States Air Force documents contained at Maxwell Air Force Base in 2004.

14. After our two paralegal staff members had finished escorting Plaintiffs' counsel to the Pentagon library, they scanned the contents of the numbered documents contained in the binders.

15. On December 21, 2007, plaintiffs' counsel indicated that identification numbers alone would not be sufficient and requested that each individual page be numbered. This required our paralegal staff to again scan the documents in order to attach an identification number. This process took almost two weeks to accomplish. Once the documents had been scanned, they were transferred to a CD-ROM and were delivered to plaintiffs. All responsive Army documents have been provided to plaintiffs.

16. The Army has specifically conducted an exhaustive and reasonable search for documents responsive to plaintiffs' document production request 8, and have now produced these documents. For example, the Army has provided the members of a General Officer Steering Committee chartered to address the way ahead for Army distributed learning. The members of this committee are detailed in a memorandum for Reserve Component Coordination Council (RCCC), dated October 10, 2003, a copy of which was provided to plaintiffs. See Exhibit D to plaintiffs' motion to compel, (publication matrix, document 49). While this document was not a "roster or organization chart" as requested, it nevertheless lists committee members. A specific "roster or organization chart" was not provided, as no such document was discovered. This is

only one example of the numerous responsive documents provided by the Army to plaintiffs. I personally contacted officials at the Pentagon, TRADOC, as well as Army schools requesting all documents responsive to request 8, who_conducted an exhaustive and reasonable search for documents responsive to plaintiffs' various requests for discovery, and have now produced these documents.

17. Regarding requests 12-15, 27, 36, and 37, the Army has conducted an exhaustive and reasonable search for documents responsive to these requests for discovery, and has now produced these documents. I personally contacted officials at the Pentagon, TRADOC, as well as Army schools requesting all documents responsive to requests 12-15, 27, 36, and 37. The majority of responsive documents are contained in Army Regulations, which are publicly available through the Library of Congress. Nevertheless, the Army has provided all documents identified as responsive to requests 12-15 in its possession, as well as assisting plaintiffs on three separate occasions, beginning in 2004, to conduct legal research at the Pentagon library.

18. Regarding requests 41 and 49, I personally requested information relating to these document production requests from officials at the Pentagon, TRADOC, as well as Army schools. After conducting an exhaustive and reasonable search for documents responsive to these requests for discovery, these officials provided no responsive documents. Plaintiffs now refer to an article that is publicly available. The content of the article is not the official position of the Army. This article does not appear to be responsive to plaintiffs' request. Request 41 states: "All documents to, from or relating to the Distance Learning/Training Technology Applications Subcommittee to the Secretary of the Army that relate to its function, mission, and responsibilities, or the approval and/or use of correspondence courses to satisfy mission and/or training needs." While this document does mention the Distance Learning/Training Technology

Applications Subcommittee, it is not "to the Secretary of the Army." Moreover, the article is not "to or by" the subcommittee, as requested in request 49.

19. Plaintiffs' request 42 seeks documents related to the Directorate, Common Leader Training. I spoke with the former director of the Directorate, Common Leader Training, who indicated the organization no longer exists. Nevertheless, the Army has conducted an exhaustive and reasonable search for documents responsive to this request for discovery, and have now produced the identified documents relating to the organization's function, mission, and responsibilities. The former director of the Directorate, Common Leader Training, indicated the organization was not involved in correspondence courses, as its mission was to provide instructors for training.

20. Plaintiffs' request 59 seeks "all documents relating to DOD's justification for its policy and practice of refusing to pay compensation to National Guard members for completion of correspondence courses." It is not DOD's practice to create documents justifying payments it does not make. For example, National Guard Soldiers regularly conduct physical training in their civilian status in order to meet the Army's physical fitness standards. Nevertheless, the Army does not produce documents justifying why these Soldiers are not compensated for running or doing pushups in their civilian status. Similarly, it is not surprising that DOD has not drafted documents to justify its policy to not pay servicemembers for the completion of correspondence courses while not in federal service. I personally contacted officials at the Pentagon and TRADOC requesting all documents responsive to request 59. These officials conducted an exhaustive and reasonable search for documents responsive to these requests for discovery. No responsive documents were discovered.

DA 08

I declare under penalty of perjury that the foregoing is true and correct in accordance with 28 U.S.C. § 1746. Executed on this 4th day of January 2008.

Jerrett W. Dunlap, Jr.
Major, U.S. Army

DA 09

**UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| WILLIAM A. CLARK, et al., | |
| Plaintiff, | |
| v. | No. 00-644C |
| THE UNITED STATES | (Judge Firestone) |
| Defendant. | |

**DECLARATION OF MAJOR TRACEY R. ROCKENBACH**

I, Tracey R. Rockenbach, declare and state the following:

1. I am an officer in the U.S. Air Force Judge Advocate General's Corps, currently assigned to the Air Force Legal Operations Agency, Civil Law and Litigation Directorate. I was assigned as agency counsel for the Department of the Air Force from January 2006 through April 2007. I am a major in the Regular Air Force. This declaration is made on personal knowledge of factual matters known to me and if called upon as a witness, I could and would testify competently to them.

2. I was responsible for coordinating the Air Force's response to Plaintiffs' June 22, 2006 Second Set of Document Requests. Upon receipt of Plaintiffs' document request, I coordinated and conducted a broad and thorough search for the requested documents within the Department of the Air Force.

3. I contacted officials in the Air Force Directorate of Manpower and Personnel at the Pentagon. These Pentagon officials helped me identify the individuals and organizations that would have documents and information related to Plaintiffs' document production request. I personally visited the subordinate office within Directorate of Manpower and Personnel which

deals with Enlisted Professional Military Education and searched through their files. All responsive documents were produced.

4. In addition to contacting Pentagon officials, I conducted Air Education and Training Command (AETC). AETC is responsible for recruiting, training, and educating the Air Force's Airmen. I began by contacting the AETC Commander's orderly room. When I indicated that I was searching for information related to specific correspondence course training, they directed me to Air University. Air University (AU) provides the full spectrum of Air Force education, from pre-commissioning to the highest levels of professional military education, including degree granting and professional continuing education for officers, enlisted and civilian personnel throughout their careers. The university's Professional Military Education (PME) programs educate airmen on the capabilities of air and space power and its role in national security. I contacted several offices within AU; the history office ultimately provided the responsive documents.

5. Simultaneous with conducting the search for responsive documents through Pentagon and AETC/AU officials, I contacted each of the Air Force's schools responsible for providing training. Although these schools fall under AU, a two pronged approach was employed to ensure all responsive documents were identified and produced. I also employed a two pronged approach with regard to each individual school. In addition to contacting the school directly, I also contacted the office of the Staff Judge Advocate for AETC and AU to ensure all relevant officials were located and to facilitate identification and production of documents.

6. In addition to contacting Pentagon officials and AETC officials, I also contacted the Air Force Historical Studies Office. The historian conducted a search of all of their holdings using keywords from the document production request. The results of that search were produced to

plaintiffs. Plaintiffs were informed that the documents were all located at Maxwell and that the Air Force would provide access to the documents. The plaintiff responded by providing the call numbers of twenty-four documents and asking us to produce those documents. I went to the Air Force Historical Studies Office at Bolling Air Force Base, Washington, DC, and pulled the twenty-four documents from microfilm.

7. My records indicate I communicated with at least twenty Air Force offices in my efforts to produce responsive documents. While not all of these offices possessed information regarding Plaintiffs' document production request, they assisted in identifying those individuals who could provide assistance. The United States has already informed Plaintiffs of the approximately fifteen Air Force officials who were identified as either producing responsive documents or having searched for responsive documents.

8. The responses from Air Force officials clearly indicated the broad wording of Plaintiffs' document production requests resulted in a truly burdensome requirement to search through files for such an expansive range of documents over such a lengthy timeframe. It was also noted that there were not officials available who had sufficient longevity and background to competently speak to the availability of documents back to 1970. Although the Air Force officials indicated the broad wording of the document production requests made it impossible to provide documents that satisfied all of Plaintiffs' document production requests, the Air Force officials nevertheless produced all documents in their control that they identified as falling within the broad parameters of Plaintiffs' document production requests.

9. All documents located during this expansive search were provided to Maj Chris Soucie and/or Maj Jerrett Dunlap of the U.S. Army Litigation Division. In November 2007, I was notified that Plaintiff's indicated they had not received a long list of documents identified on the document

production matrix. I personally searched through the Air Force's copy of the documents and found each of the missing documents. Some documents were duplicated on the matrix. I only produced them once.

9. 10. The Air Force has always maintained that Air Force regulations are maintained at Maxwell AFB, AL and that plaintiff's may visit the library there and search. I personally searched the online catalogue of Air University and produced all responsive documents which I found. In addition, as mentioned in paragraph 6, I had the Air Force Historical Research Office search the Maxwell holdings for any responsive documents. A listing of approximately 125 documents and synopsis of those documents were provided to plaintiff; twenty-four of the documents were retrieved and provided to plaintiff. Each page of the document had to be individually printed from the microfilm. For any documents which were large (over 20 pages), I printed the cover page, table of contents, and any pages which contained enough information to assist the plaintiff's in determining whether they wanted us to produce the entire document. Until the plaintiff's filed this motion to compel, I was never informed that the plaintiff's wanted the entire document produced. Also, plaintiffs were again informed that the documents were available for review at Maxwell AFB, Montgomery, Alabama. Furthermore, I did not produce any Air Force instructions which the plaintiff's previously cited in motions as I was under the impression they had been previously produced in the first document production since plaintiff's had copies of them and were citing to them in motions.

I declare under penalty of perjury that the foregoing is true and correct in accordance with 28 U.S.C. § 1746. Executed on this 28th day of December 2007.

Tracey Rockenbach, Maj, USAF



DA 013

UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WILLIAM A. CLARK, et al., | |
| Plaintiff, | |
| v. | No. 00-644C |
| THE UNITED STATES | (Judge Firestone) |
| Defendant. | |

**DECLARATION OF MAXIMINO GONZALEZ, JR.**

I, Maximino Gonzalez, Jr., declare and state the following:

1. I am a Department of the Army Attorney Advisor, currently assigned to the National Guard Bureau (NGB), Office of the Chief Counsel, Litigation and Employment Law section (NGB-JA). The National Guard Bureau is not a command or headquarters, but is the channel of communications on all matters pertaining to the National Guard, the Army National Guard of the United States, and the Air National Guard of the United States between the Department of the Army and Department of the Air Force, and the several states. I am an attorney duly admitted to the bar of the state of New York. I am also a judge advocate officer in the District of Columbia Army National Guard (DCARNG) and the Army National Guard of the United States (ARNGUS). This declaration is made on personal knowledge of factual matters known to me and if called upon as a witness, I could and would testify competently to them.

2. Since March, 2006, I have been responsible for coordinating the National Guard Bureau's efforts in assisting the Departments of the Army and Air Force in defense of this action, including assisting the United States in its response to Plaintiffs' second set of document requests dated June 22, 2006. In this capacity, I would receive requests for responsive documents from

the Department of Justice (DoJ), and Army and Air Force and then I would communicate with the various NGB Directorates in an effort to gather all responsive documents and provide them to the DoJ, and the Army and Air Force.

3. Fulfilling our role as a communications channel, I also relayed the active-component's requests for responsive documents to the state Judge Advocates assigned as full time Active Guard & Reserve Judge Advocates (AGR-JA) in the various state National Guards of the named plaintiffs. I did not have the capacity to order the states to comply with the discovery request since the state National Guards are not in federal service (ARNGUS) and are only under the command and control of their respective governors and adjutant generals. However, the states AGR-JAs have historically been responsive to our requests for assistance in this matter without the need for a subpoena.

4. Immediately upon my assignment to this case, I also reviewed the disclosures provided to the plaintiffs' counsel by my predecessor, Major Christopher Brown, to ensure their completeness and to ensure that we met all of our continuing obligations to supplement our prior discovery responses under the applicable rules. I found that MAJ Brown had disclosed a large amount of material, encompassing ninety seven categories of documents, both in hard copy and electronically via CD-ROM. I reviewed plaintiff's first request for documentary discovery, which were very general, and found that MAJ Brown's responses were thorough, complete and that there was no new information which required supplemental disclosures.

5. During my review of the prior disclosures, I noticed that a many of the prior disclosures included Army and Air National Guard regulations which were readily available in the public domain. These documents can be easily obtained via the internet or the Pentagon or Maxwell Air Force Base Libraries.

**DA 015**

6. After I was notified of plaintiff's second set of document requests, I coordinated and conducted a broad and thorough search for all requested documents within the directorates of NGB and the National Guards of the various states of the named plaintiffs.

7. As a result, twenty three categories of documents were provided in response to plaintiffs' second request. This is in addition to the previous ninety-seven categories of documents provided to plaintiff in response to their first set of document requests.

8. On November 8, 2007, plaintiffs' served subpoena duces tecum upon the adjutants general of the states of North Carolina, Pennsylvania, Alabama, Hawaii, and Minnesota. Attached to each of these non-party subpoenas was a nine page itemized list of definitions and document requests. (See attachment 1 to this declaration). Additionally, the subpoenas each had another four page attachment in which the plaintiff's requested the adjutant general identify 30b(6) witnesses to discuss twenty seven different categories of information. (See attachment 2 to this declaration)

9. In order to avoid unnecessary duplication, the state judge advocates requested that I provide them with an accounting of the documents which they had previously provided to our office voluntarily. On November 27, 2007, I provided them a matrix of all the documents which the states had previously, voluntarily, provided in response to our prior requests to date. (See attachment 3 to this declaration). The documents listed in the matrix had been previously provided to plaintiffs with the exception of supplemental Alabama yearly training guides, which I had just received from Alabama days prior to November 27th.

10. However, later in the day on 27 November I received a message from LTC Donald McKinney, the state judge advocate for Hawaii, who said that plaintiffs' counsel had informed him that they had not received any documents pertaining to Hawaii. I found this surprising

because I knew that all documents pertaining to Hawaii were previously provided to plaintiff. However, out of an abundance of caution, I immediately provided to plaintiff's counsel, all information and documentation pertaining to the Hawaii National Guard (See attachment 4).

11. Furthermore, on November 28, 2007, I provided plaintiff with the recently received Alabama supplemental training guides. (See attachment 5).

12. On November 29, 2007, Mr. Jack Wallace, of the Alabama Attorney General's Office, sent the plaintiffs a copy of the November 27th matrix. (see plaintiffs' exhibit 3) As stated above, our office had previously provided all the items listed on the matrix to plaintiffs' counsel, either in the response to plaintiff's first requests for documents, second requests for documents or in our continuing obligation to provide updated records. However, now in a motion to compel, for the first time plaintiffs' counsel allege NGB-JA failed to provide twenty three documents listed on the November 27th matrix (see page 11 of plaintiffs' motion to compel).

13. Prior to filing their motion to compel, plaintiff did not call me or communicate with me in an effort to resolve the perceived ambiguity regarding the alleged non-production of the twenty three documents mentioned on page eleven of their motion to compel. If they had made the effort to call me prior to filing their motion, I would have informed them that the twenty three documents in question were provided by DoJ in electronic CD-ROM format in response to the first request for documents in Nov-Dec 2004.

14. However, in the spirit of cooperation I provided again on December 21, 2007, via email attachments, the alleged twenty-three categories of missing documents noted in plaintiff's motion to compel (see attachment 6).

15. Regarding plaintiff's request for documents, number 19, the original request was general in nature and stated as follows: "All documents reflecting the use and/or need for individual

training or self development training to support mission and./or deployment requirements". In response, the defendants provided thirty one categories of documents pertaining to the "use and/or need for individual training." As stated, the original request did not ask for state Unit Status Reports. It is only in plaintiff's motion that they clarify, for the first time that request 19 is for state Unit Status Reports. However, state Unit Status Reports pursuant to AR 220-1, para 2-7 are classified Secret/NoForn at the state level.

16. Plaintiff's request number 35 seeks information "given to new enlistees, new non-commissioned officers, new warrant officers, new commissioned officers and new field grade officers regarding training and training requirements." I requested of NGB-ART (Training), any additional documents beyond what had previously been provided in the first documentary requests which did encompass regulations and All State Memos which referenced training and was informed that there were no additional documents. Then plaintiff's counsel recently provided me with a portion of the booklet entitled "How to Succeed in the National Guard by Really Trying" indicated this was the type of document they were seeking. I then inquired of the NGB Directorates in particular NGB-ART (Training), NGB/A-1 and Mr. Thomas McNamara regarding the portion of the booklet provided and similar documents. I received negative responses on the origins of the booklet other than a recollection of it from the early 1990's or 1980's by Mr. Thomas McNamara. To date no similar publications have been discovered.

17. Regarding request number 50, in the original response to plaintiff's first request for documents, then CPT, now MAJ Brown provided from NGB twenty four CNGB All State Memorandums as well as a copy of NGR 351-1, Individual Military Education Training which were responsive to this request. I inquired again of NGB-J5 and NGB-ART if there were any additional documents to satisfy this request and was informed there were none. I also reviewed

the NGB database of all NGB Policy Memorandums, All State Memorandums and NGB Information Memorandums from 2000 to 2007.

18. Regarding requests for state documents including Yearly Training Guides and Mission Essential Task Lists, I contacted the following AGR-Judge Advocates: COL Bryan Morgan (ALARNG), COL Richard Fay (NCARNG); LTC Robert Spinelli (PAARNG); LTC Duncan Aukland (OHARNG); LTC John Brossart (MNARNG); LTC Timothy Tomocho (CTARNG), Lt Col Donald Mckinney (HIANG); MAJ Timothy Ryan (PAARNG); MAJ Mathew Christian (MNARNG). I have been given to date and provided to plaintiffs, Yearly Training Guides for the Alabama, North Carolina, Connecticut, Pennsylvania and Ohio National Guards. Also, I have received and provided the Mission Essential Task List for the 151st Band of the ALARNG and the 711 Signal Battalion of the ALARNG.

19. Therefore, based on my review of the non-public and public documents produced by NGB Directorates and voluntarily provided by the state National Guards, I believe that the NGB-JA has conducted an exhaustive and reasonable search for documents responsive to plaintiffs' various requests for discovery, and have now produced these documents to plaintiffs.

20. Further, I have spoken with several AGR-JAs who received subpoenas duces tecum and have been informed that plaintiffs' counsel have not requested any additional records at this time in response to the subpoenas other than what has previously been provided to date.

I declare under penalty of perjury that the foregoing is true and correct in accordance with 28 U.S.C. § 1746.

Executed on this 4th day of January 2008.

Maximino Gonzalez, Jr.
Attorney Advisor, NGB-JA

# ATTACHMENT 1

AO88 (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

MIDDLE DISTRICT DISTRICT OF PENNSYLVANIA

William A. Clark, et. al.

V.

United States of America

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 00-644C
(United States Ct. of Federal Claims)

TO: Pennsylvania National Guard
ATTN: Maj. Gen. Jessica L. Wright
Pennsylvania National Guard Joint Force Headquarters
Bldg S-0-47, Fort Indiantown Gap
Annville, PA 17003

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Rhoads & Sinon, LLP<br>M&T Bank Building<br>Twelfth Floor<br>One South Market Square<br>Harrisburg, PA 17108-1146<br><br>*Please see attached Schedule B for the matters on which examination is requested. | 10 a.m.<br>December 7, 2007 |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

*Please see attached Schedule A for specific documents requested.

| PLACE | DATE AND TIME |
|---|---|
| Rhoads & Sinon, LLP<br>M&T Bank Building<br>Twelfth Floor<br>One South Market Square<br>Harrisburg, PA 17108-1146 | 10 a.m.<br>December 7, 2007 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

American LegalNet, Inc.
www.FormsWorkflow.com

AO88 (Rev. 12/06) Subpoena in a Civil Case

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Helen W Michael (Plaintiffs' Counsel) | November 8, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Helen Michael, Esq.
Howrey LLP
1299 Pennsylvania Ave. NW
Washington, DC 20004
202-783-0800

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.



American LegalNet, Inc.
www.FormsWorkflow.com

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | November 8, 2007 | Bldg S-0-47, Fort Indiantown Gap Annville, PA 17003 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Pennsylvania National Guard | FedEx |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Helen Michael, Esq. | Attorney |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on November 8, 2007
DATE

Helen K. Michael
SIGNATURE OF SERVER
Helen Michael, Esq.

ADDRESS OF SERVER
Howrey LLP
1299 Pennsylvania Ave. NW
Washington, DC 20004

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:



American LegalNet, Inc.
www.FormsWorkflow.com

## SCHEDULE A

## I. DEFINITIONS

For the purposes of this subpoena, terms not specifically defined shall be given their ordinary meaning. Use of the singular is also to be taken to include the plural, and vice-versa. The terms "and" and "or" have both conjunctive and disjunctive meanings. The terms "any" or "each" shall be construed to include and encompass "all" and the use of the word "the" shall not be construed as limiting the scope of any request.

1. "North Carolina National Guard" means all agencies, units, organizations, and instrumentalities of the North Carolina National Guard, and includes both the North Carolina Air National Guard and the North Carolina Army National Guard and all of the, agencies, units, organizations, and instrumentalities thereof.
2. "Correspondence course" means any type of training, instruction or education that is currently or was formerly offered by any means of a self-directed program of study, taken without the presence of an instructor or teacher.
3. "Document" is defined to be synonymous and equal in scope to usage of this term in Federal Court of Claims Rule 34(a). A document refers to a complete original or a true, correct, and complete copy and any non-identical copies of any written, graphic, typed, printed, filmed, recorded or electronic information in the custody and control of the United States or its agencies and instrumentalities no matter how produced, recorded, stored or reproduced, including computer generated or stored data (together with any instructions, programs, or passwords necessary to search and retrieve such data), as well as, without limitation, any writing, letter, telegram, electronic mail or message, statement, book, report, study, analysis, digest, record, handwritten note, working paper, chart, graph, diagram, drawing, photograph, videotape, audio recording, diary, notes of interviews or communications, as well as all applicable statutes, regulations, policy guidance,

directives, pamphlets, field manuals, memoranda, or implementing correspondence or instructions issued by any organization.

4. The term "functional training" has the same meaning it does in Field Manual 7-0, section 1-29.
5. The term "individual military education" encompasses the educational programs offered by the Army to which certain of the Specified Courses belong, which include, but are not limited to the following: the Officer Education System ("OES"); the Non Commissioned Officer Training System ("NCOES"); the Warrant Officer Education System ("WOES'); Professional Military Education ("PME"); and functional training.
6. The term "in-residence" when used to modify the terms "course," "instruction," or "training" refers to the type of "course," "instruction," or training" that is provided at an approved military training institution where students attend in the presence of an instructor, who conducts the training while in an active duty or inactive duty status.
7. The acronym "METL" stands for "Mission Essential Task List" and refers to the list that defines a particular military unit's operational capabilities. The METL defines the tasks that a unit must perform, the conditions under which the tasks might take place, and the standards to which the tasks must be accomplished in order to complete a mission. The tasks describe activities or objectives to be achieved; the conditions define the environment under which the tasks have to be accomplished; and the standards provide measures of effectiveness for determining whether the tasks have been accomplished successfully.
8. The term "military education system" refers to the education systems or series of courses offered by the Army to which certain of the Specified Courses belong, specifically, the Officer Education System ("OES"); the Non Commissioned

Officer Training System ("NCOES"); and the Warrant Officer Education System ("WOES.")

9. "National Guard" refers to the National Guard of the several states, which is governed by Title 32 of the U.S. Code. The term is defined to include the Air National Guard and Army National Guard.

10. "National Guard of the United States" refers to the National Guard of the United States, which is governed by Title 10 of the U.S. Code. The term is defined to include the Air National Guard of the United States and the Army National Guard of the United States.

11. "Plaintiffs" refers collectively to the parties listed in the Amended Complaint, including William A. Clark, James P. Davern, Robert E. Freeburg, Willie R. Johnson, Robert A. Mustin, Carol Risser, John Does 1 through 4 and Jane Does 2 and 3. At times herein, the term "Plaintiffs" is also used to mean each respective Plaintiff named and listed in the amended complaint.

12. The term "prerequisite" has the same meaning as it does in DA PAM 351-20, Army Correspondence Course Catalog.

13. "Relating to" or "related to" mean addressing, constituting, containing, concerning, discussing, describing, identifying, involving, analyzing, reflecting, regarding, referring to, showing, mentioning, stating, or pertaining to a given subject in whole or in part.

14. "Specified courses" refer to the correspondence courses or any subcourse thereof enrolled in by plaintiffs, which include, but are not limited to the following:

- Advanced Enlisted Professional Development Course ("AEPDC")
- Advanced Non-Commissioned Officer Course ("ANCOC")
- Army War College;
- Associate Logistics Executive Development course;
- Automated Logistical Specialist course;

DA 026

- Aviation Maintenance Management course;
- Aviation Warrant Officer Advanced Course (or any other Officer Advanced Course)
- Basic Non-Commissioned Officer Course ("BNCOC");
- Basic Enlisted Professional Development Course ("BEPDC")
- Command and General Staff Officer Course ("CGSOC");
- Mechanical Maintenance NCO Course;
- Ordnance Officer Advanced Course (or any other Officer Advanced Course.)

15. "Subcourse" has the same meaning as it does in DA PAM 351-20, Army Correspondence Course Catalog.
16. The term "this litigation" refers to *Clark v. United States*, Case No. 00-644C.
17. "You" or "your" includes the North Carolina National Guard, and all its agencies, units, organizations, and instrumentalities, including but not limited to the North Carolina Air National Guard and North Carolina Army National Guard, and all of the agencies, units, organizations, and instrumentalities thereof.

## II. INSTRUCTIONS

1. All documents shall be produced in the order they are kept in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile thereof.

2. You shall produce the original of each document described below or if the original is not in your custody, then a copy thereof, and in any event, all non-identical copies which differ from the original or from the other copies produced for any reason, including, but not limited to, the making of notes thereon.

3. If production of documents is withheld on the ground of privilege, as to each such withheld document provide the following information no later than the first date on which documents are produced.

   a. which privilege is claimed;

   b. a precise statement of the facts upon which said claim of privilege is based;

   c. the following information describing each purportedly privileged document:

      i. its nature, e.g., agreement, letter, memorandum, tape, etc.;

      ii. the date it was prepared;

      iii. the date it bears;

      iv. the date it was sent;

      v. the date it was received;

      vi. the identity of the person preparing it;

      vii. the identity of the person sending it;

      viii. the identity of each person to whom it was sent or was to have been sent, including all addressees and all recipients of copies; and

      ix. a statement as to whom each identified person represented or purported to represent at all relevant times; and

   d. a description of the place where each copy of that document is kept, including the title or description of the file in which said document may be found and the location of such file.

4. Documents shall be produced in such fashion as to identify the department, branch, or office in whose possession they were located and, where applicable, the natural

person in whose possession they were found and the business address of each document's custodian(s).

5. Whenever a document is not produced in full or is produced in redacted form, so indicate on the document and state with particularity the reasons or reasons it is not being produced in full and describe with particularity those portions of the document which are not being produced.

6. If a document responsive to these requests was at any time in your possession, custody or control but is no longer available for production, as to each such document state the following information:

   a. whether the document is missing or lost;

   b. whether the document has been destroyed;

   c. whether the document has been transferred or delivered to another person and, if so, at whose request;

   d. whether the document has been otherwise disposed of; and

   e. the circumstances surrounding the disposition of the document and the date of its disposition.

## III. TIME PERIOD

These requests refer to the period from September 7, 1962 through the present, unless otherwise specifically indicated.

## IV. DOCUMENT REQUESTS

1. All documents relating to this litigation.
2. All documents concerning, discussing, or relating to plaintiff Willie R. Johnson.
3. The complete personnel file for plaintiff Willie R. Johnson.

DA 029

4. All documents related to correspondence courses for members of the North Carolina National Guard.
5. All documents related to compensation for completion of correspondence courses by members of the North Carolina National Guard.
6. All documents related to individual military education requirements for members of the North Carolina National Guard.
7. All documents related to correspondence coursework as it relates to federal military education and promotion requirements.
8. All documents related to the standards, requirements, or process for promotion for members of the North Carolina National Guard, including but not limited to standards and requirements for maintaining a member's current rank or advancing in rank.
9. All documents related to reduction in grade for failure to complete any individual military education, including correspondence coursework.
10. All documents relating to the separation policies of the North Carolina National Guard, including, but not limited to, involuntary separation and bars to reenlistment.
11. All documents concerning the function, structure, makeup, relevant regulations and guidance, and decision-making discretion of selective retention boards (SRBs) and qualitative retention boards (QRBs).
12. All documents concerning whether any commissioned officer, warrant officer, or noncommissioned officer in the North Carolina National Guard is subject to an "up and out policy," under which such officer will be involuntarily separated from service if they are not selected for promotion within a specified time period.
13. All documents concerning whether any commissioned officer, warrant officer, or noncommissioned officer in the North Carolina National Guard who has failed to complete the training necessary for promotion and skill qualification, including

but not limited to correspondence courses, may be involuntarily separated from services or barred from reenlistment.

14. All documents relating to the consequences of the North Carolina National Guard members of failing to complete required individual military education and training, including correspondence coursework.
15. All documents related to conditional promotion, where the condition is completion of individual military education, including correspondence coursework.
16. All documents, signed, authored or issued by commanders at any level relating to the need for one or more members of the North Carolina National Guard to complete any Specified Course or Courses, any in residence equivalent(s) or phase(s) of a Specified Course, any prerequisite course for any Specified Course, any courses or subcourses within any of the Military Education Systems, or any functional training.
17. All form orders relating to training of a member of the North Carolina National Guard, including correspondence coursework.
18. All directives, orders, or commands authored or issued by commanders at any level relating to training members of the North Carolina National Guard.
19. All documents identifying any Specified Course, in residence equivalent or phase, any prerequisite course for any Specified Course, any component course or subcourse of a Military Education System, or any functional training as:
    a. a prerequisite for promotion to any rank;
    b. a prerequisite for Military Occupational Specialty ("MOS")
    c. a prerequisite for advancement in any military position, specialty, rank/grade, or career field; and/or
    d. satisfying the training requirements for deployment eligibility;

20. For all in residence courses for which completion of any Specified Course is a prerequisite, all documents identifying such in residence course as:
    a. a prerequisite for promotion to any rank;
    b. a prerequisite for Military Occupational Specialty ("MOS");
    c. a prerequisite for advancement in any military position, rank/grade, specialty, or career field; and/or
    d. satisfying the training requirements for deployment eligibility.
21. All documents relating to any quotas that govern how many North Carolina National Guard or other military service personnel may take in-residence courses at any given point in time.
22. All documents relating to the requirements that must be satisfied for the North Carolina National Guard units to obtain federal recognition and federal funding.
23. All documents relating to the enrollment process for the Specified Courses, including but not limited to, any approvals or authorizations required to enroll in any Specified Course.
24. All documents relating to any process or system, paper or electronic, used to record track, or document the enrollment in or completion of any individual or self-development training by a member of the National Guard.
25. All documents relating to members of the North Carolina National Guard completing individual or self-development training through correspondence courses for any reason, including meeting mission requirements.
26. All documents relating to the MOS training plans or Mission Essential Task Lists ("METL") for units of the North Carolina National Guard.
27. All documents relating to manpower requirements on an annual basis for the North Carolina National Guard, including but not limited to the number of needed service personnel in particular military specialties, and the number of needed non-commissioned and commissioned officers of particular ranks.

# ATTACHMENT 2

**SCHEDULE B**

In accordance with Federal Court of Claims Rule 30(b)(6), Plaintiffs request that the North Carolina National Guard designate a representative to testify concerning the following matters, which incorporate by reference the definitions and time period set forth in Schedule A that accompanies this subpoena.

1. All facts related to all documents concerning, discussing, or relating to Plaintiff Willie R. Johnson.
2. All facts related to the complete personnel file for Plaintiff Willie R. Johnson.
3. All facts related to correspondence courses for members of the North Carolina National Guard.
4. All facts related to compensation for completion of correspondence courses by members of the North Carolina National Guard.
5. All facts related to individual military education requirements for members of the North Carolina National Guard.
6. All facts related to correspondence coursework as it relates to federal military education and promotion requirements.
7. All facts related to the standards, requirements, or process for promotion for members of the North Carolina National Guard, including but not limited to standards and requirements for maintaining a member's current rank or advancing in rank.
8. All facts related to reduction in grade for failure to complete any individual military education, including correspondence coursework.
9. All facts related to conditional promotion, where the condition is completion of individual military education, including correspondence coursework.
10. All facts related to all documents, signed, authored or issued by commanders at any level relating to the need for one or more members of the North Carolina National Guard to complete any Specified Course or Courses, any in residence

equivalent(s) or phase(s) of a Specified Course, any prerequisite course for any Specified Course, any courses or subcourses within any of the Military Education Systems, or any functional training.

11. All facts relating to the separation policies of the North Carolina National Guard, including, but not limited to, involuntary separation and bars to reenlistment.
12. All facts concerning the function, structure, makeup, relevant regulations and guidance, and decision-making discretion of selective retention boards (SRBs) and qualitative retention boards (QRBs).
13. All facts concerning whether any commissioned officer, warrant officer, or noncommissioned officer in the North Carolina National Guard is subject to an "up and out policy," under which such officer will be involuntarily separated from service if they are not selected for promotion within a specified time period.
14. All facts concerning whether any commissioned officer, warrant officer, or noncommissioned officer in the North Carolina National Guard who has failed to complete the training necessary for promotion and skill qualification, including but not limited to correspondence courses, may be involuntarily separated from services or barred from reenlistment.
15. All facts relating to the consequences of the North Carolina National Guard members of failing to complete required individual military education and training, including correspondence coursework.
16. All facts related to form orders relating to training of a member of the North Carolina National Guard, including correspondence coursework.
17. All facts related to all directives, orders, or commands authored or issued by commanders at any level relating to training members of the North Carolina National Guard.
18. All facts related to documents identifying any Specified Course, in residence equivalent or phase, any prerequisite course for any Specified Course, any

component course or subcourse of a Military Education System, or any functional training as:

a. a prerequisite for promotion to any rank;

b. a prerequisite for Military Occupational Specialty ("MOS")

c. a prerequisite for advancement in any military position, specialty, rank/grade, or career field; and/or

d. satisfying the training requirements for deployment eligibility;

19. For all in residence courses for which completion of any Specified Course is a prerequisite, all facts relating to all documents identifying such in residence course as:

e. a prerequisite for promotion to any rank;

f. a prerequisite for Military Occupational Specialty ("MOS");

g. a prerequisite for advancement in any military position, rank/grade, specialty, or career field; and/or

h. satisfying the training requirements for deployment eligibility

20. All facts relating to the enrollment process for the Specified Courses, including but not limited to, any approvals or authorizations required to enroll in any Specified Course.

21. All facts relating to any quotas that govern how many North Carolina National Guard personnel may take in-residence courses to any given point in time.

22. All facts relating to the requirements that must be satisfied for the North Carolina National Guard units to obtain federal recognition and federal funding.

23. All facts relating to any process or system, paper or electronic, used to record, track, or document the enrollment in or completion of any individual or self-development training by a member of the National Guard.

24. All facts relating to members of the North Carolina National Guard completing individual or self-development training through correspondence courses for any reason, including meeting mission requirements.
25. All facts relating to the MOS training plans or Mission Essential Task Lists ("METL") for units of the North Carolina National Guard.
26. All facts relating to manpower requirements on an annual basis for the North Carolina National Guard, including but not limited to the number of needed service personnel in particular military specialties, and the number of needed non-commissioned and commissioned officers of particular ranks.
27. All facts relating to the retention, custodian, organization, collection, and selection of all documents reviewed or produced in response to Schedule A that accompanies this subpoena.

# ATTACHMENT 3

## Gonzalez, Maximino MAJ - NGB-JA

**From:** Gonzalez, Maximino MAJ - NGB-JA
**Sent:** Tuesday, November 27, 2007 12:51 PM
**To:** McKinney, Donald LtCol NGHI/HIANG; Morgan, Bryan COL NGAL; Guise, Dennis CIV NGPA; Spinelli, Robert C LTC NGPA; Ryan, Timothy J MAJ NGPA; Fay, Richard COL NGNC; Tomcho, Timothy J MAJ NGCT; Aukland, Duncan D LTC NGOH; 'Wallace, Jack'; Michael.S.Vincent@hawaii.gov; Christian, Matthew CPT NGMN
**Cc:** Young, Charles Lt Col - NGB-JA; Zevitz, Daniel S Capt - NGB-JA
**Subject:** Clark v US (UNCLASSIFIED)

**Attachments:** Gonzalez, Maximino MAJ - NGB-JA.vcf; State Documents Received Matrix.xls

Gonzalez, Maximino MAJ - NGB-J... State Documents Received Matri...

Classification: UNCLASSIFIED
Caveats: FOUO

As requested by many of you in response to the subpoena's you have received, please find attached the Matrix of the documents received to date from the States in this action so far.

Max

Maximino Gonzalez, Jr.
Attorney Advisor
National Guard Bureau
Office of Chief Counsel
1411 Jefferson Davis Highway
Suite 11300
Arlington, VA 22202
(Office) 703-607-2701 DSN 327-2701
(Fax) 703-607-3682
(E-mail) maximino.gonzalez@us.army.mil

FOR OFFICIAL USE ONLY - This electronic transmission may contain information protected from release under the Freedom of Information Act. Do not release outside of DOD without the authority of NGB-JA. If you received this message in error, please notify the sender by reply e-mail, and then delete all copies of the message.

Classification: UNCLASSIFIED
Caveats: FOUO

DA 039

# ATTACHMENT 4

## Gonzalez, Maximino MAJ - NGB-JA

**From:** Gonzalez, Maximino MAJ - NGB-JA
**Sent:** Tuesday, November 27, 2007 5:01 PM
**To:** 'MichaelH@howrey.com'
**Cc:** McKinney, Donald LtCol NGHI/HIANG; Dunlap, Jerrett W MAJ OTJAG; 'Mickle, Douglas (CIV)'; Roou Brian Lt Col AFLOA/JACL; Young, Charles Lt Col - NGB-JA; Michael.S.Vincent@hawaii.gov
**Subject:** Clark v US (UNCLASSIFIED)

**Attachments:** Gonzalez, Maximino MAJ - NGB-JA.vcf; HING Information Paper on ANG Officer Promotions 24 Aug 2004.PDF; HING Special Order MB-3 Appointment of Selective Retention Board & Instructions 23 May 1995.pdf; HING Seletive Retention Board Instructions 23 May 1995.pdf; Military Personnel Records of Robert Freeburg Sent 15 Nov 2004.pdf; Air force Correspondence info-Student History Query Robert Freeburg & James Davern 23 Nov 2004.pdf

Gonzalez, Maximino MAJ - NGB-J... | HING Information Paper on ANG ... | HING Special Order MB-3 Appoin... | HING Seletive Retention Board ... | Military Personnel Records of ... | Air force Correspondence info-...

Classification: UNCLASSIFIED
Caveats: FOUO

Ms. Michael:

Attached are documents forwarded by the Hawaii National Guard.

Maximino Gonzalez, Jr.
Attorney Advisor
National Guard Bureau
Office of Chief Counsel
1411 Jefferson Davis Highway
Suite 11300
Arlington, VA 22202
(Office) 703-607-2701 DSN 327-2701
(Fax) 703-607-3682
(E-mail) maximino.gonzalez@us.army.mil

FOR OFFICIAL USE ONLY - This electronic transmission may contain information protected from release under the Freedom of Information Act. Do not release outside of DOD without the authority of NGB-JA. If you received this message in error, please notify the sender by reply e-mail, and then delete all copies of the message.

Classification: UNCLASSIFIED
Caveats: FOUO

DA 041

# ATTACHMENT 5

## Gonzalez, Maximino MAJ - NGB-JA

**From:** Gonzalez, Maximino MAJ - NGB-JA
**Sent:** Wednesday, November 28, 2007 9:05 AM
**To:** 'MichaelH@howrey.com'
**Cc:** 'Dunlap, Jerrett W MAJ OTJAG'; Zevitz, Daniel S Capt - NGB-JA; Young, Charles Lt Col - NGB-JA; 'Mickle, Douglas (CIV)'; Roou Brian Lt Col AFLOA/JACL
**Subject:** Clark v US (UNCLASSIFIED)

**Attachments:** TRNG YR 99-00.pdf; TRNG YR 06-07.pdf; TRNG YR 95-96.pdf; TRNG YR 96-98.pdf; TRNG YR 97-98.pdf; Gonzalez, Maximino MAJ - NGB-JA.vcf

TRNG YR 99-00.pdf (306 KB) TRNG YR 06-07.pdf (402 KB) TRNG YR 95-96.pdf (667 KB) TRNG YR 96-98.pdf (178 KB) TRNG YR 97-98.pdf (290 KB) Gonzalez, Maximino MAJ - NGB-J...

Classification: UNCLASSIFIED
Caveats: FOUO

Ms Michael:

Attached are additional TAG Yearly Training Guides for Alabama.

Max

Maximino Gonzalez, Jr.
Attorney Advisor
National Guard Bureau
Office of Chief Counsel
1411 Jefferson Davis Highway
Suite 11300
Arlington, VA 22202
(Office) 703-607-2701 DSN 327-2701
(Fax) 703-607-3682
(E-mail) maximino.gonzalez@us.army.mil

FOR OFFICIAL USE ONLY - This electronic transmission may contain information protected from release under the Freedom of Information Act. Do not release outside of DOD without the authority of NGB-JA. If you received this message in error, please notify the sender by reply e-mail, and then delete all copies of the message.

Classification: UNCLASSIFIED
Caveats: FOUO

DA 043

# ATTACHMENT 6

**Gonzalez, Maximino MAJ - NGB-JA**

**From:** Gonzalez, Maximino MAJ - NGB-JA
**Sent:** Friday, December 21, 2007 4:09 PM
**To:** 'MichaelH@howrey.com'
**Cc:** 'Mickle, Douglas (CIV)'; Roou Brian Lt Col AFLOA/JACL; Dunlap, Jerrett W MAJ OTJAG; Zevitz, Daniel S Capt - NGB-JA; Young, Charles Lt Col - NGB-JA
**Subject:** Clark v US (UNCLASSIFIED)

**Attachments:** Gonzalez, Maximino MAJ - NGB-JA.vcf; CTARNG-SR350-1 Operations & Training-Conneticut Army National Guard 19 July 1994.pdf; CTARNG-SR 350-1 Part II-Operations & Training-Conneticut Army National Guard 19 July 1994.pdf

Gonzalez, Maximino MAJ - NGB-J... CTARNG-SR350-1 Operations & Tr... CTARNG-SR 350-1 Part II-Operat...

Classification: UNCLASSIFIED
Caveats: FOUO

Ms. Michael:

Part 3 and final of the CT documents.

Max

Maximino Gonzalez, Jr.
Attorney Advisor
National Guard Bureau
Office of Chief Counsel
1411 Jefferson Davis Highway
Suite 11300
Arlington, VA 22202
(Office) 703-607-2701 DSN 327-2701
(Fax) 703-607-3682
(E-mail) maximino.gonzalez@us.army.mil

FOR OFFICIAL USE ONLY - This electronic transmission may contain information protected from release under the Freedom of Information Act. Do not release outside of DOD without the authority of NGB-JA. If you received this message in error, please notify the sender by reply e-mail, and then delete all copies of the message.

Classification: UNCLASSIFIED
Caveats: FOUO

DA 045

## Gonzalez, Maximino MAJ - NGB-JA

| | |
|---|---|
| **From:** | Gonzalez, Maximino MAJ - NGB-JA |
| **Sent:** | Friday, December 21, 2007 4:08 PM |
| **To:** | 'MichaelH@howrey.com' |
| **Cc:** | 'Mickle, Douglas (CIV)'; Roou Brian Lt Col AFLOA/JACL; Dunlap, Jerrett W MAJ OTJAG; Zevitz, Daniel S Capt - NGB-JA; Young, Charles Lt Col - NGB-JA |
| **Subject:** | Clark v US (UNCLASSIFIED) |
| **Attachments:** | Gonzalez, Maximino MAJ - NGB-JA.vcf; CTARNG-SR 350-1 Part II-Training Change 6-Operations & Training Conneticut Army National Guard 19 July 1994.pdf; CTARNG-SR 350-1 Training Change 6-Operations & Training Conneticut Army National Guard 19 July 1994.pdf |

Gonzalez, Maximino MAJ - NGB-J... CTARNG-SR 350-1 Part II-Traini... CTARNG-SR 350-1 Training Chang...

Classification: UNCLASSIFIED
Caveats: FOUO

Ms. Michael:

Part 2 of the CT documents.

Max

Maximino Gonzalez, Jr.
Attorney Advisor
National Guard Bureau
*Office of Chief Counsel*
1411 Jefferson Davis Highway
Suite 11300
Arlington, VA 22202
(Office) 703-607-2701 DSN 327-2701
(Fax) 703-607-3682
(E-mail) maximino.gonzalez@us.army.mil

FOR OFFICIAL USE ONLY - This electronic transmission may contain information protected from release under the Freedom of Information Act. Do not release outside of DOD without the authority of NGB-JA. If you received this message in error, please notify the sender by reply e-mail, and then delete all copies of the message.

Classification: UNCLASSIFIED
Caveats: FOUO

## Gonzalez, Maximino MAJ - NGB-JA

**From:** Gonzalez, Maximino MAJ - NGB-JA
**Sent:** Friday, December 21, 2007 4:07 PM
**To:** 'MichaelH@howrey.com'
**Cc:** 'Mickle, Douglas (CIV)'; Roou Brian Lt Col AFLOA/JACL; Dunlap, Jerrett W MAJ OTJAG; Zevitz, Daniel S Capt - NGB-JA; Young, Charles Lt Col - NGB-JA
**Subject:** Clark v. US (UNCLASSIFIED)

**Attachments:** Gonzalez, Maximino MAJ - NGB-JA.vcf; CTNG Cir 350-01-01 Training Year 2002 & Training Year 2003 Command Training Guidance & Five Year Training Calendar 1 Oct 2000.pdf; CTNG Cir 350-01-01 Part II Training Year 2002 and Training Year 2003 Command Training Guidance & Five Year Training Calendar 1 Oct 2000.pdf

Gonzalez, Maximino MAJ - NGB-J... CTNG Cir 350-01-01 Training Ye... CTNG Cir 350-01-01 Part II Tra...

Classification: UNCLASSIFIED
Caveats: FOUO

Ms. Michael:

I am resending the CT documents because I received a message that it could not be delivered to all recipients because it was too large so I will break up the transmission into 3 parts.

Max

Maximino Gonzalez, Jr.
Attorney Advisor
National Guard Bureau
Office of Chief Counsel
1411 Jefferson Davis Highway
Suite 11300
Arlington, VA 22202
(Office) 703-607-2701 DSN 327-2701
(Fax) 703-607-3682
(E-mail) maximino.gonzalez@us.army.mil

FOR OFFICIAL USE ONLY - This electronic transmission may contain information protected from release under the Freedom of Information Act. Do not release outside of DOD without the authority of NGB-JA. If you received this message in error, please notify the sender by reply e-mail, and then delete all copies of the message.

Classification: UNCLASSIFIED
Caveats: FOUO

## Gonzalez, Maximino MAJ - NGB-JA

**From:** Gonzalez, Maximino MAJ - NGB-JA
**Sent:** Friday, December 21, 2007 4:00 PM
**To:** 'MichaelH@howrey.com'
**Cc:** 'Mickle, Douglas (CIV)'; Roou Brian Lt Col AFLOA/JACL; Dunlap, Jerrett W MAJ OTJAG; Zevitz, Daniel S Capt - NGB-JA; Young, Charles Lt Col - NGB-JA
**Subject:** Clark v US (UNCLASSIFIED)

**Attachments:** Gonzalez, Maximino MAJ - NGB-JA.vcf; ALARNG Training Year Guidance 06-07.pdf; ALARNG EPPS Enlisted Personnel Promotion System PPT.ppt; ALARNG Training Year Guidance 97-98.pdf; ALARNG Training Year Guidance 96-98.pdf; ALARNG Training Year Guidance 95-96.pdf

Gonzalez, Maximino MAJ - NGB-J... | ALARNG Training Year Guidance ... | ALARNG EPPS Enlisted Personnel... | ALARNG Training Year Guidance ... | ALARNG Training Year Guidance ... | ALARNG Training Year Guidance ...

Classification: UNCLASSIFIED
Caveats: FOUO

Ms. Michael:

Part 4 and last of the transmission of state documents.

You should have a total of 23 documents and they should match the list of documents from my State document Matrix which do not have document numbers.

If not, then please let me know and I will retransmit them.

Max

Maximino Gonzalez, Jr.
Attorney Advisor
National Guard Bureau
Office of Chief Counsel
1411 Jefferson Davis Highway
Suite 11300
Arlington, VA 22202
(Office) 703-607-2701 DSN 327-2701
(Fax) 703-607-3682
(E-mail) maximino.gonzalez@us.army.mil

FOR OFFICIAL USE ONLY - This electronic transmission may contain information protected from release under the Freedom of Information Act. Do not release outside of DOD without the authority of NGB-JA. If you received this message in error, please notify the sender by reply e-mail, and then delete all copies of the message.

Classification: UNCLASSIFIED
Caveats: FOUO

## Gonzalez, Maximino MAJ - NGB-JA

**From:** Gonzalez, Maximino MAJ - NGB-JA
**Sent:** Friday, December 21, 2007 3:57 PM
**To:** 'MichaelH@howrey.com'
**Cc:** 'Mickle, Douglas (CIV)'; Roou Brian Lt Col AFLOA/JACL; Dunlap, Jerrett W MAJ OTJAG; Zevitz, Daniel S Capt - NGB-JA; Young, Charles Lt Col - NGB-JA
**Subject:** Clark v US (UNCLASSIFIED)

**Attachments:** Gonzalez, Maximino MAJ - NGB-JA.vcf; HING Special Order MB-3 Appointment of Selective Retention Board & Instructions 23 May 1995.pdf; HING Seletive Retention Board Instructions 23 May 1995.pdf; HING Information Paper on ANG Officer Promotions 24 Aug 2004.pdf; ALNG Memorandum of Instruction for Qualitative Retention Board 22 March 2004.pdf; ALARNG Training Year Guidance 99-00.pdf

Gonzalez, Maximino MAJ - NGB-J... HING Special Order MB-3 Appoin... HING Seletive Retention Board ... HING Information Paper on ANG ... ALNG Memorandum of Instruction... ALARNG Training Year Guidance ...

Classification: UNCLASSIFIED
Caveats: FOUO

Ms. Michael:

Part 3 of my transmission of state documents.

Maximino Gonzalez, Jr.
Attorney Advisor
National Guard Bureau
Office of Chief Counsel
1411 Jefferson Davis Highway
Suite 11300
Arlington, VA 22202
(Office) 703-607-2701 DSN 327-2701
(Fax) 703-607-3682
(E-mail) maximino.gonzalez@us.army.mil

FOR OFFICIAL USE ONLY - This electronic transmission may contain information protected from release under the Freedom of Information Act. Do not release outside of DOD without the authority of NGB-JA. If you received this message in error, please notify the sender by reply e-mail, and then delete all copies of the message.

Classification: UNCLASSIFIED
Caveats: FOUO

## Gonzalez, Maximino MAJ - NGB-JA

**From:** Gonzalez, Maximino MAJ - NGB-JA
**Sent:** Friday, December 21, 2007 3:55 PM
**To:** 'MichaelH@howrey.com'
**Cc:** 'Mickle, Douglas (CIV)'; Dunlap, Jerrett W MAJ OTJAG; Roou Brian Lt Col AFLOA/JACL; Zevitz, Daniel S Capt - NGB-JA; Young, Charles Lt Col - NGB-JA
**Subject:** Clark v. US (UNCLASSIFIED)

**Attachments:** Gonzalez, Maximino MAJ - NGB-JA.vcf; CTARNG-SR350-1 Operations & Training-Conneticut Army National Guard 19 July 1994.pdf; CTNG Cir 350-01-01 Training Year 2002 & Training Year 2003 Command Training Guidance & Five Year Training Calendar 1 Oct 2000.pdf; CTNG Cir 350-01-01 Part II Training Year 2002 and Training Year 2003 Command Training Guidance & Five Year Training Calendar 1 Oct 2000.pdf; CTARNG-SR 350-1 Training Change 6-Operations & Training Conneticut Army National Guard 19 July 1994.pdf; CTARNG-SR 350-1 Part II-Training Change 6-Operations & Training Conneticut Army National Guard 19 July 1994.pdf; CTARNG-SR 350-1 Part II-Operations & Training-Conneticut Army National Guard 19 July 1994.pdf

| | | | | | | |
|---|---|---|---|---|---|---|
| Gonzalez, Maximino MAJ - NGB-J... | CTARNG-SR350-1 Operations & Tr... | CTNG Cir 350-01-01 Training Ye... | CTNG Cir 350-01-01 Part II Tra... | CTARNG-SR 350-1 Training Chang... | CTARNG-SR 350-1 Part II-Traini... | CTARNG-SR 350-1 Part II-Operat... |

Classification: UNCLASSIFIED
Caveats: FOUO

Ms. Michael:

Here is part two of the transmission of discovery from my State documents Matrix.

Maximino Gonzalez, Jr.
Attorney Advisor
National Guard Bureau
Office of Chief Counsel
1411 Jefferson Davis Highway
Suite 11300
Arlington, VA 22202
(Office) 703-607-2701 DSN 327-2701
(Fax) 703-607-3682
(E-mail) maximino.gonzalez@us.army.mil

FOR OFFICIAL USE ONLY - This electronic transmission may contain information protected from release under the Freedom of Information Act. Do not release outside of DOD without the authority of NGB-JA. If you received this message in error, please notify the sender by reply e-mail, and then delete all copies of the message.

Classification: UNCLASSIFIED
Caveats: FOUO

## Gonzalez, Maximino MAJ - NGB-JA

**From:** Gonzalez, Maximino MAJ - NGB-JA
**Sent:** Friday, December 21, 2007 3:52 PM
**To:** 'MichaelH@howrey.com'
**Cc:** 'Mickle, Douglas (CIV)'; Dunlap, Jerrett W MAJ OTJAG; Roou Brian Lt Col AFLOA/JACL; Zevitz, Daniel S Capt - NGB-JA; Young, Charles Lt Col - NGB-JA
**Subject:** Clark v. US (UNCLASSIFIED)

**Attachments:** Gonzalez, Maximino MAJ - NGB-JA.vcf; AL ARNG SMDR600-100 Officer Promotion & Career Managment 6 June 2003.doc; CTNG Cir 350-03-06 Training Year 2005 & Training Year 2006 Command Training Guidance and Five Year Training Calender 1 Oct 2003.doc; CTNG Cir 350-02-08 Training Year 2004 and Training Year 2005 Command Training Guidance and Five Year Training Calender 1 Oct 2002.doc; ALNG QRB Letter Templates.doc; ALNG Organization Bulletin No. 2-03 Administrative Chain of Command 1 Jan 2003.doc; ALARNG SMDR 600-200 Enlisted Personnel Promotion System with changes 1 & 2 1 Feb 2003.doc; ALARNG SMDR 600-200 Enlisted Personnel Promotion System (EPPS) 1 Feb 2005.doc

Gonzalez, Maximino MAJ - NGB-J... | AL ARNG SMDR600-100 Officer P... | CTNG Cir 350-03-06 Training Ye... | CTNG Cir 350-02-08 Training Ye... | ALNG QRB Letter Templates.doc ... | ALNG Organization Bulletin No.... | ALARNG SMDR 600-200 Enlisted P.. | ALARNG SMDR 600-200 Enlisted P..

Classification: UNCLASSIFIED
Caveats: FOUO

Ms. Michael:

After the discussion today regarding discovery, I am sending you in several emails, the documents listed in my matrix of documents received from the state which were provided to you on CD ROM in 2004 which were not bates stamped. This should encompass the 23 documents you refer in your motion to compel which you claim are missing and I am sending them to you in an abundance of caution and since they are in electronic form, they can easily be sent via email

If these are not the 23 items you note are missing, please let me know.

As always, as we receive additional materials, like the updated records of SSG Clark, we will provide them to you as soon as we receive them.

I am also sending this to MAJ Dunlap so he can have the items copied and bates stamped.

Have a Happy Holiday.

Max

Maximino Gonzalez, Jr.
Attorney Advisor
National Guard Bureau
Office of Chief Counsel
1411 Jefferson Davis Highway
Suite 11300
Arlington, VA 22202
(Office) 703-607-2701 DSN 327-2701
(Fax) 703-607-3682
(E-mail) maximino.gonzalez@us.army.mil

DA 051

FOR OFFICIAL USE ONLY - This electronic transmission may contain information protected from release under the Freedom of Information Act. Do not release outside of DOD without the authority of NGB-JA. If you received this

message in error, please notify the sender by reply e-mail, and then delete all copies of the message.

Classification: UNCLASSIFIED
Caveats: FOUO

DA 052